**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                                                    Chapter 11

**LIBERTY POWER HOLDINGS, LLC,**                        Case No. 21-13797-PDR

          **Debtor.**
_____/

**DEBTOR'S EMERGENCY MOTION TO COMPEL (I) TURNOVER OF
ALL BOOKS, RECORDS, SYSTEMS AND PROCESSES RELATED TO THE DEBTOR
AND ITS OPERATIONS IN THE POSSESSION AND CONTROL OF LIBERTY
POWER CORP, LLC, (II) ACCESS TO CORPORATE PREMISES
AND (III) FOR RELATED RELIEF**

**(Emergency Hearing Requested on Thursday, April 22, 2021)**

**Statement of Exigent Circumstances**

The Debtor requests emergency consideration of this Motion seeking to compel turnover of all books, records, systems and processes of the Debtor in the possession and control of Liberty Power Corp, LLC, the Debtor's parent company (the "ParentCo"), and for ParentCo to provide immediate access to the Debtor's corporate premises in order to enable the Debtor to continue its operations and preserve and protect the going concern value of the Debtor.  Pursuant to Local Rule 9075-1(B), the Debtor has made a bona fide effort to resolve the issues raised in this Motion prior to the Petition Date, but ParentCo refused to agree to the Debtor's requests.  As a result, the Debtor was required to file this Chapter 11 case and seek the relief herein.  The Debtor requests that this matter be scheduled on an emergency basis for hearing on Thursday April 22, 2021.

**LIBERTY POWER HOLDINGS, LLC (**the "Debtor" or "Holdings"), by and through its proposed undersigned counsel, and pursuant to 11 U.S.C. §§ 105, 541 and 542, and other applicable law, files this *Debtor's Emergency Motion to Compel (I) Turnover Of the Debtor's Books, Records, Systems and Processes In the Possession of Liberty Power Corp., LLC, (II) Access to Corporate Premises, and (III) For Related Relief* (the "Motion") and respectfully requests entry of an order of the Court (i) compelling Liberty Power Corp, LLC, the Debtor's parent company ("ParentCo") and all principals of and persons in control of ParentCo to

immediately turnover all books, records, systems and processes of and related to the operation of the Debtor's business (the "Books and Records"), (ii) compelling ParentCo to provide the Debtor, through its Chief Restructuring Officer ("CRO"), Mr. Bob Butler and Berkeley Research Group, LLC ("BRG"), immediate access to the corporate premises under the control of ParentCo at which the Debtor's operations are conducted, (iii) compelling ParentCo to cooperate and comply with any and all other requests of the Debtor (through the CRO) for documents and information necessary for the Debtor to continue its operations and comply with its obligations under the Bankruptcy Code, and (iv) compelling ParentCo and all principals of and persons in control of ParentCo to comply with the automatic stay under section 362(a) of the Bankruptcy Code, including preventing ParentCo and its principals from taking any action against property of the Debtor's estate.  In support thereof, the Debtor states as follows:

## PRELIMINARY STATEMENT

As discussed below, for several years through Sunday evening, April 18, 2021, ParentCo provided a fulsome array of management and operating services to the Debtor on a 24/7 basis pursuant to the terms of a certain Management Agreement (defined below).  Pursuant to the Management Agreement, the Debtor relied almost exclusively on ParentCo to be able to conduct its business, manage its customers' accounts, deal with regulatory matters and perform several other critical business functions and operations on a daily basis.  In order to provide those critical services to the Debtor, ParentCo employed in excess of 80 employees.

After an event of default was issued by the Debtor's senior secured creditor, Boston Energy Trading and Marketing LLC ("BETM"), BETM exercised certain rights and remedies in order to reconstitute the board of managers of the Debtor as of April 15, 2021.  On Friday evening, April 16, 2021, the newly reconstituted board of managers of the Debtor appointed Bob Butler as the

Debtor's CRO.  Over the weekend of April 16th and 17th, Mr. Butler took immediate steps to assess the situation and the status of the Debtor's operations with the intent of communicating with ParentCo first thing Monday morning to coordinate the continued provision of management services.  Mr. Butler also engaged in discussions with BETM to confirm BETM's agreement and willingness to provide funding to ParentCo to continue providing services to the Debtor under and through the Management Agreement.

Unfortunately, instead of working cooperatively with the Debtor and Mr. Butler, on Sunday evening, April 18, 2021, ParentCo, under the direction of its Chief Executive Officer, David Hernandez and its President, Derik Viner, took precipitous action against the interests of the Debtor to terminate all of ParentCo's approximately 80+ employees effective immediately, thereby ceasing the orderly operation of the Debtor's business, causing severe and unrepairable harm to the value of the Debtor.  ParentCo took this action notwithstanding the commitment that had been made by BETM to ParentCo on Friday April16, 2021 to fund ParentCo's payroll for the next two (2) week period through April 30, 2021 in order to facilitate a transition to the CRO.  Mr. Hernandez is also a member of the board of managers of the Debtor,

Since being advised of the termination of ParentCo's employees on Monday morning, April 19, 2021, the Debtor, through the CRO, has attempted to resolve the issues with ParentCo without success.  Moreover, the ParentCo has refused to cooperate with and has imposed unacceptable conditions in regards to the Debtor's requests for turnover of the Debtors' Books and Records and access to the corporate premises at which the Debtor's operations were conducted.  Each day that passes during which the Debtor does not have access to its Books and Records or corporate premises, the going concern value of the Debtor's business is seriously and irreparably harmed.  Given the drastic measures taken by ParentCo in terminating all of the employees and its

failure to cooperate with the Debtor, good cause exists for the entry of an Order compelling turnover of the Debtor's Books and Records and granting the Debtor, through the CRO and BRG, immediate access to the corporate premises and the unimpaired ability to resurrect the Debtor's business.

**I.     JURISDICTION**

1.     This Court has jurisdiction 28 U.S.C. §1334(b).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E ), and (O).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 541(a), and 542(a).

**II.    BACKGROUND**

4.     On April 20, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under the Bankruptcy Code.  Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.     As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

6.     For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration") filed contemporaneously herewith.

**III.   BUSINESS STRUCTURE, OPERATIONS AND SECURED DEBT**

7.     The Debtor is a wholly-owned subsidiary of Liberty Power Super Holdings, LLC, which in turn is a wholly owned subsidiary of ParentCo.  The Debtor in turn owns and holds 100%

of the outstanding membership interests in each of three subsidiaries, namely LPT, LLC, a Delaware limited liability company (authorized to do business in Texas as LPT SP, LLC) ("LPT"), Liberty Power Maryland LLC, a Delaware limited liability company ("LPMD") and Liberty Power District of Columbia LLC, a Delaware limited liability company ("LPDC").

8.  The Debtor was founded in 2001 by David Hernandez, CEO ("Hernandez") and Alberto Daire, President ("Daire"). On or about September 15, 2020, ParentCo appointed Derik Viner ("Viner") as President of Holdings.

9.  The Debtor is a retail energy provider (an "REP") that is active in competitive electricity markets in over a dozen jurisdictions operating in five organized markets. In general, the Debtor sells electricity to residential, commercial and industrial customers, wherein it competes in price and terms with other REPs and the public utility in a given market area. Specifically, Holdings and its subsidiaries are certified and licensed to provide retail electric service by the Public Utilities Commissions or Public Service Commissions in each of California, Connecticut, District of Columbia, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Texas and Virginia. The Debtor currently services hundreds of thousands of customer accounts in 14 states.

10. ParentCo provides all management and operating services seven (7) days a week to the Debtor pursuant to the terms of that certain Management Services Agreement, dated as of August 8, 2006, as amended by First Amendment to Management Services Agreement, dated January 27, 2009, and as further amended by the Amended and Restated Management Services Agreement, dated January 27, 2014, and by the Second Amended and Restated Management Services Agreement dated as of July 6, 2020 (the "Management Agreement"). As such, the Debtor relied on ParentCo to be able to conduct its business, manage customers' accounts, deal with

regulatory matters and perform other critical business operations on a daily basis. ParentCo employed in excess of 80 employees in order to provide these management services to the Debtor. Pursuant to the Management Agreement, the Debtor provides funding to ParentCo on a weekly basis in order to cover the actual expenses incurred by ParentCo in providing the Management Services.

11. In July 2020, the Debtor completed a restructuring of its capital structure and transitioned its wholesale energy supply arrangement from Shell Energy North America (US), L.P ("Shell Energy") to BETM. In that transaction, Shell agreed to take a third-tier note in lieu of outstanding debt that the Debtor owed to Shell at that time in the amount of $63,492,663 (the "Shell Loan"). In addition, Hernandez and Mr. Martin Halpern provided the Debtor with a $10 million second-tier mezzanine loan (the "Mezzanine Loan").

12. On February 14 and 15th, 2021, winter storm Uri hit North America and in particular the state of Texas hard. As a result of this winter storm and a concurrent cold wave, power grids—which were unable to sustain the higher-than-normal energy and heating demand from residential and business customers—failed across the Texas. At the peak of the outages, at least 4.5 million Texas residents were left without electricity. Primarily because of this storm event, the Debtor became unable to pay its debts when due and had liabilities in excess of its assets.

13. On March 26, 2021, BETM provided the Debtor with a Notice of Potential Event of Default for Failure to Pay (the "Potential Event of Default Notice"). In the Potential Event of Default Notice, BETM advised the Debtor that BETM's invoice dated February 22, 2021 (the "February Invoice") in the amount of $85,908,252.15 had not been paid in full and that the Debtor continued to owe BETM $81,284,305 (the "Unpaid Amount"). BETM notified the Debtor that its failure to pay to BETM the Unpaid Amount by March 31, 2021 would constitute an Event of

6

Default under the Supply and Services Agreement between BETM and the Debtor, among others. The Debtor failed to pay the Unpaid Amount. On March 31, 2021, BETM provided the Debtor with a Notice of Event of Default.

14. Following a protracted set of negotiations in which BETM and the Debtor were unable to agree on the terms of a forbearance, BETM terminated the supply facility by notice to the Debtor on Monday, April 12, 2021. Even though BETM terminated its obligations to the Debtor under its various transaction documents, BETM did not and has not withdrawn its credit support to the Debtor, which credit support is critical to the continued operations of the Debtor. Specifically, the continued credit support provided by BETM has allowed the Debtor to continue its retail operations to date despite the pendency of the default.

15. In connection with the foregoing, BETM exercised certain of its rights and remedies under its documents and, among other things, reconstituted the Debtor's board of managers. Thereafter, on April 16, 2021, the newly constituted board of managers held a meeting and engaged Mr. Butler as CRO to provide certain financial advisory and restructuring services to the Debtor.

16. Thereafter, on Sunday evening April 18, 2021, ParentCo, under the direction of Messrs. Viner and Hernandez, took precipitous action to terminate all of ParentCo's approximately 80+ employees effective immediately, thereby ceasing the orderly operation of the Debtor's business causing severe and irreparable harm to the value of the Debtor . ParentCo's action was taken notwithstanding the commitment made by BETM to fund ParentCo's payroll for the next two (2) week period through April 30, 2021.

17. The termination of ParentCo's employees was communicated to counsel to the Debtor in the morning of April 19, 2021 via email. No attempt was made to discuss such termination of employees with the CRO or counsel prior to taking this serious and damaging

action. News of the employee termination was immediately leaked and disseminated to various media sources, causing more harm to the Debtor.

18. Immediately upon learning of the termination, attempts were made by the CRO to negotiate a solution that would include immediately rehiring the employees and granting the CRO access to the Debtor's books, records, systems and processes that were in the possession and control of ParentCo. ParentCo refused to cooperate with the CRO's request for access. Additionally, demand was made on ParentCo, its management, owners, professionals and employees to preserve any and all books and records in their possession, custody or control involving or related in any way to the Debtor, including without limitation all financial records (and related servers) and all emails (and related servers). To date, no response nor access has been provided to the Debtor or access to the corporate premises.

19. Faced with the lack of management services from ParentCo due to the termination of all of its employees and a refusal by ParentCo to provide access to the Debtor's books, records, systems and processes, the Debtor was forced to file the within Chapter 11 proceedings to preserve and protect the going concern value of the Debtor for the benefit of all of its stakeholders.

## IV.   RELIEF REQUESTED

20. The Debtor requests that the Court enter an order (i) compelling ParentCo and all principals of and persons in control of ParentCo to immediately provide access to and turnover to the Debtor, through the CRO and BRG, all books, records, systems and processes of and related to the operation of the Debtor's business (the "Books and Records"), (ii) compelling ParentCo to provide the Debtor, through the CRO and BRG immediate access to the corporate premises under the control of ParentCo at which the Debtor's operations are conducted, (iii) compelling ParentCo to cooperate and comply with any and all other requests of the Debtor (through the CRO) for

documents and information necessary for the Debtor to continue its operations and comply with its obligations under the Bankruptcy Code, and (iv) compelling ParentCo and all principals of and persons in control of ParentCo to comply with the automatic stay under section 362(a) of the Bankruptcy Code, including preventing ParentCo and its principals from taking any action against property of the Debtor's estate.

21. The relief requested herein is necessary and urgent in order to allow the Debtor, through the CRO, to, among other things, (i) evaluate and implement a course of action to continue the Debtor's operations so as to preserve asset value and maximize recoveries to stakeholders; (ii) advise and assist the Debtor in preparing and analyzing cash flow (weekly and monthly) and financial projections related to liquidity and borrowing needs, including related budget to actual variance analysis, and (iii) prepare the schedules and statement of financial affairs related to this bankruptcy proceeding.

22. ParentCo has refused to turnover of the Books and Records to date and has denied access to the corporate premises, thereby leaving the Debtor no option but to seek the relief requested in this Motion.

23. Accordingly, the Debtor requires the immediate cooperation of ParentCo to turn over the Debtor's Books and Records or provide access to the corporate premises.

24. In addition, as part of the relief requested herein, the Debtor seeks an order compelling ParentCo to cooperate and comply with any and all other requests of the Debtor (through the CRO) for documents and information necessary for the Debtor to continue its operations and comply with its obligations under the Bankruptcy Code.

IV. **LEGAL AUTHORITY**

9

25. A debtor's Chapter 11 bankruptcy estate includes "all legal or equitable interests of the debtor in property as of commencement of the case." 11 U.S.C. § 541(a)(1). Pursuant to 11 U.S.C. § 542(a) "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." Section § 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Further, actions taken in violation of the automatic stay are void. *See United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("It is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'").

26. A party who knowingly refuses to turnover property of an estate following request violates the automatic stay. *In re Underground, LLC*, 2010 WL 4642054, at *1 (Bankr. D. Wyo. 2010) ("[A] refusal to turn over property is a violation of the automatic stay."); *In re Williams*, 316 B.R. 534, 543 (Bankr. E.D. Ark. 2004) (finding that GMAC's failure to turn over the debtor's property, once it became aware of the bankruptcy filing, constituted a willful violation of the automatic stay); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 490 (Bankr. S.D. N.Y. 2003) ("This Court agrees with those decisions holding that refusal to turn over property of a debtor's estate to the debtor upon demand constitutes an "exercise of control" over the debtor's property within the scope of § 362(a)(3)"); *see also In re B-Line Carriers, Inc.*, Case No. 8:20-bk-6034-CED, D.E. 57 (Bankr. M.D. Fla. Aug. 26, 2020) (Delano, J.) (granting debtor's emergency motion to compel bank to turn over property of the debtor's estate).

27. Accordingly, bankruptcy courts in this District and Circuit routinely order turnover of estate property to protect the twin protections of § 362 and § 541. *See, e.g.*, *In re European Foreign Domestic Auto Repair Centre, Inc. Boca East*, Case No. 19-22870-EPK, D.E. 33 (Bankr. S.D. Fla. Oct. 15, 2019) (Kimball, J.) (ordering accounting firm to turnover "all books and records of the Debtor in the Accountant's possession within seven days of the date of the entry of this order"); *B-Line Carriers*, Case No. 8:20-bk-6034-CED, D.E. 57; *In re Barker Boatworks, LLC*, Case No. 8:19-bk-03138-MGW, D.E. 125 (Bankr. M.D. Fla. June 13, 2019) (Williamson, J.) (granting emergency motion for turnover of estate property, holding that creditor was required to grant debtor access to the creditor's facility to enable the debtor to remove estate property); *In re UTS Underground Trenchless Solutions, LLC*, Case No. 20-22675-AJC, D.E. 30 (Bankr. S.D. Fla. Dec. 8, 2020) (Cristol, J.) (directing Wells Fargo to turnover funds in debtor's pre-petition bank account).

28. Section 105 also provides a mechanism to both acknowledge a debtor's turnover rights and hold violators of the automatic stay accountable. First, that section authorizes the Court to grant a trustee's request for issuance of a writ of assistance. The Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Orders for possession of property may be enforced through writs and orders under section 105(a). *Stone v. White (In re Stone)*, 1998 WL 1819081, at *4 (Bankr. D.C. Nov. 4, 1998) (addressing writs of possession issued to enforce turnover orders); *Toledano v. Kittay (In re Toledano )*, 299 B.R. 284, 299 (Bankr. S.D.N.Y. 2003) (holding that the trustee may direct the United States Marshals Service to effectuate the terms of the court's order by evicting all occupants from the premises where the debtor or any other individuals occupying property of the estate did not voluntarily vacate in accordance with the order). Second, the Court may, under §

105, hold violators of the automatic stay to account with an appropriate order, award of damages, or sanctions. *E.g.*, *In re Jove Eng'g. Inc. v. IRS*, 92 F.3d 1539 (11th Cir. 1996)("If the automatic stay provision is violated, courts generally award damages under the separate statutory contempt power of § 105."). That is because § 105(a) "grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are "necessary or appropriate" to carry out the provisions of the Bankruptcy Code," and courts liberally allow discretionary sanctions under § 105(a) of the Bankruptcy Code. *Unlimited Homes*, 2018 Bankr. LEXIS 494, at *6-7 (citing *Jove*, 92 F.3d at 1554); *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 195 (Bankr. M.D. Fla. 2003).

29. Based upon the foregoing, there is clear authority in this District and Circuit for this Court to enter an order granting the Debtor's relief and compelling ParentCo and all persons in control of ParentCo to (i) immediately turnover the Books and Records, (ii) provide the Debtor, through its CRO and BRG, immediate access to the corporate premises and (iii) compel ParentCo to cooperate and comply with any and all other reasonable requests of the Debtor (through the CRO) for documents and information necessary for the Debtor to continue its operations and comply with its obligations under the Bankruptcy Code.

### Certification under Local Rule 9075-1(B)

30. The undersigned counsel certifies that a good faith attempt was made to resolve the issues raised in this Motion without a hearing. Direct, immediate and substantial harm will occur to the bankruptcy estate, and the Debtor's ability to reorganize if the parties are not able to obtain an immediate resolution of this dispute.

**WHEREFORE**, the Debtor respectfully requests the entry of an order (i) compelling ParentCo, its principals and persons in control of ParentCo to provide immediate access to and to

turnover to the Debtor all books, records, systems and processes of and related to the operation of the Debtor's business (the "Books and Records"), (ii) compelling ParentCo to provide the Debtor, through the CRO and BRG, immediate access to the corporate premises under the control of ParentCo at which the Debtor's operations are conducted, (iii) compelling ParentCo to cooperate and comply with any and all other requests of the Debtor (through the CRO) for documents and information necessary for the Debtor to continue its operations and comply with its obligations under the Bankruptcy Code, (iv) compelling ParentCo and all principals of and persons in control of ParentCo to comply with the automatic stay under section 362(a) of the Bankruptcy Code, including preventing ParentCo and its principals from taking any action against property of the Debtor's estate, and (v) granting such other and further relief as is proper.

DATED this 21st day of April, 2021.

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Proposed Attorneys for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: ____/s/ *Paul J. Battista*____
Paul J. Battista, Esq.
Florida Bar No. 884162
pbattista@gjb-law.com
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 813818
mguitian@gjb-law.com
Heather L. Harmon
Florida Bar No. 13192
hharmon@gjb-law.com