**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,**              **Case No. 21-13797-PDR**

         **Debtor.**
_____/

**DEBTOR'S *EXPEDITED* APPLICATION FOR AUTHORITY TO EMPLOY AND**
**RETAIN, ON AN INTERIM AND FINAL BASIS, PAUL J. BATTISTA AND THE LAW**
**FIRM OF GENOVESE JOBLOVE & BATTISTA, P.A. AS GENERAL BANKRUPTCY**
**COUNSEL FOR DEBTOR-IN POSSESSION EFFECTIVE AS OF APRIL 20, 2021**

**(Expedited Hearing Requested on Thursday, April 22, 2021 at 2:30 p.m.**

     **LIBERTY POWER HOLDINGS, LLC** (the "Debtor" or "Liberty"), pursuant to 11 U.S.C.

§327(a), Fed. R. Bankr. P. 2014 and 2016, and Local Rules 2014-1(A) and 2016-1(A), hereby files

this *Expedited Application for Authority to Employ and Retain Paul J. Battista and the Law Firm of*

*Genovese Joblove & Battista, P.A. Effective as of April 20, 2021* (the "Application") seeking

approval, on an interim and final basis, of the employment of Paul J. Battista ("Battista") and the law

firm of Genovese, Joblove & Battista ("GJB"), to represent the Debtor as its general bankruptcy

counsel in this Chapter 11 case.  In support of this Application, the Debtor relies upon the

*Declaration of Paul J. Battista, on behalf of GJB, as Proposed Counsel for the Debtor-In-Possession*

attached hereto as **Exhibit "A"** (the "Battista Declaration") and the *Declaration of Bob Butler in*

*Support of the Chapter 11 Petition and First Day Motions* [ECF No. 10] (the "First Day

Declaration")[1]  filed with the Court.  In further support of this Application, the Debtor respectfully

represents as follows:

_____

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the First Day
Declaration.

## I.     **JURISDICTION**

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).  Venue is proper in this District pursuant to 28 U.S.C. §1408.

2.      The statutory predicate for the relief requested herein are 11 U.S.C. §327(a), Fed. R. Bankr. P. 2014 and 2016, and Local Rules 2014-1(A) and 2016-1(A).

## II.     **BACKGROUND AND BUSINESS OPERATIONS**

3.      On April 20, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.       As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

5.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§1107(a) and 1108.

6.      For a detailed description of the Debtor, its operations and assets and liabilities, the Debtor respectfully refers the Court and parties-in-interest to the First Day Declaration.

## III.     **RELIEF REQUESTED**

7.      By this Application, the Debtor seeks to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its general restructuring and bankruptcy counsel with regard to the filing of its Chapter 11 petition and the prosecution of its Chapter 11 case.  A copy of GJB's Engagement Letter is attached hereto as **Exhibit "B."**  Accordingly, the Debtor respectfully requests the entry of an interim order on an expedited basis, followed by the entry of a final order to be entered at a hearing to be held twenty-one (21) days after the Petition Date, pursuant to Section 327(a) of the Bankruptcy Code authorizing it to employ and retain Paul J. Battista, Esq. and the law firm of GJB

as its general bankruptcy counsel under a general retainer to perform the legal services that will be necessary during its Chapter 11 case as more fully described below.

8.     The Debtor sought the services of GJB three (3) days prior to the Petition Date principally with respect to advice regarding restructuring matters in general, and the preparation for and potential commencement and prosecution of a Chapter 11 case for the Debtor.  The Debtor believes that the continued representation by GJB is critical to the Debtor's efforts to restructure its business because GJB has extensive experience and expertise in complex commercial reorganization cases and has already become familiar with many aspects of the Debtor's business, legal and financial affairs.  Accordingly, GJB is well-suited to guide the Debtor through the Chapter 11 process.

### A.     Services to be Provided

9.     The services of GJB are necessary to enable the Debtor to execute faithfully its duties as debtor-in-possession.  Subject to order of this Court, the law firm of GJB will be required to render, among others, the following services to the Debtor:

(a)     advise the Debtor with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business and properties;

(b)     attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the cases, including all of the legal and administrative requirements of operating in Chapter 11;

(c)     advise the Debtor in connection with any contemplated sales of assets or business combinations, including the negotiation of sales promotion, liquidation, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtor in connection with the closing of such sales;

(d)     advise the Debtor in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-

3

petition financing arrangements, and provide advice to the Debtor in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

(e)     advise the Debtor on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f)     provide advice to the Debtor with respect to legal issues arising in or relating to the Debtor's ordinary course of business including attendance at senior management meetings;

(g)     take all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the estates, negotiations concerning all litigation in which the Debtor may be involved and objections to claims filed against the estate;

(h)     prepare on behalf of the Debtor all motions, applications, answers, orders, reports and papers necessary to the administration of the estate;

(i)     negotiate and prepare on the Debtor's behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

(j)     attend meetings with third parties and participate in negotiations with respect to the above matters;

(k)     appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee; and

(l)     perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

10.     The firm of GJB is willing to act on behalf of the Debtor as set forth above.

**B.     Terms of Retention**

11.     As is set forth more fully in the Battista Declaration, prior to the filing of the voluntary petition herein, GJB received a retainer from and on behalf of the Debtor in the amount of $140,000 (the "Retainer").  GJB applied an amount equal to $65,000.00 of such Retainer to an estimate of its pre-petition fees and expenses incurred through April 20, 2021 (the "Prepetition

4

Payment"). As a result, GJB will have a balance of $75,000 to be held as a postpetition retainer (the "Postpetition Retainer"), subject to an adjustment depending on the final reconciliation of pre-petition fees and expenses against the Prepetition Payment (the "Postpetition Retainer"). To that end, promptly after the Petition Date, GJB will reconcile the amounts incurred for fees and expenses pre-petition and to the extent such fees and expenses do not exceed Prepetition Payment, then GJB shall return such excess to and increase the Postpetition Retainer accordingly. To the extent that such prepetition fees and expenses exceed the Prepetition Payment, then GJB shall waive such excess.

12.     GJB intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this Chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court. GJB will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtor in this case at the then-current rate charged for such services.

13.     Consistent with the firm's policy with respect to its other clients, GJB will continue to charge the Debtor for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

14.     GJB has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among others, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity,

5

importance and nature of the problems, issues or tasks addressed in this case.

15.     Other than as set forth herein and in the Battista Declaration, no arrangement is proposed between the Debtor and GJB for compensation to be paid in this case, and no agreement or understanding exists between GJB and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

16.     No previous request for the relief sought in this Application has been made to this Court or any other Court.

## IV.     BASIS FOR RELIEF REQUESTED

17.     Continued representation of the Debtor by its restructuring counsel, GJB, is critical to the success of the Debtor's reorganization efforts because GJB is and has become familiar with the Debtor's business, financial and legal affairs.

18.     The Debtor has selected the firm of GJB as its attorneys because of GJB's experience with and knowledge of the Debtor and its business, as well as its extensive experience, knowledge and expertise in the field of debtor and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

19.     The Debtor desires to employ the firm of GJB under a general retainer because of the extensive legal services that will be required in connection with its Chapter 11 case and the firm's familiarity with the business of the Debtor.

## V.     DISINTERESTEDNESS OF PROFESSIONALS

20.     Except as set forth in the Battista Declaration, to the best of the Debtor's knowledge, the shareholders, counsel and associates of GJB: (a) do not have any connection with the Debtor, its affiliates, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are "disinterested

persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or

represent any interest adverse to the Debtor's estate.

21.     More specifically, as set forth in the Battista Declaration:

(a)     Neither GJB nor any attorney at the firm holds or represents an interest adverse to the Debtor's estate.

(b)     Neither GJB nor any attorney at GJB is or was a creditor, an equity holder, or an insider of the Debtor, except that GJB previously rendered legal services to the Debtor for which it was compensated.

(c)     Neither GJB nor any attorney at GJB is or was, within two years before the Petition Date, a director, officer or employee of the Debtor.

(d)     GJB does not have an interest materially adverse to the interests of the Debtor's estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

## VI.     REQUEST FOR INTERIM RELIEF

22.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

23.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

24.     Pursuant to the Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 21 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 21 days of a chapter 11 cases. *See, e.g., First NLC Fin. Servs, LLC,* Case No. 08-10632 (Bankr. S.D. Fla. Jan. 28, 2008); *In re TOUSA, Inc., et al.*, Case No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008)(approving interim retentions of financial advisor and legal counsel on interim basis within first 20 days of chapter 11 case).

25.     First, according to the Advisory Committee note to Bankruptcy Rule 6003, the standard employed in Bankruptcy Rule 6003 is taken from Bankruptcy Rule 4001(b)(2) and (c)(2), and decisions under those provisions should provide guidance for the application of Bankruptcy Rule 6003.  Bankruptcy Rules 4001(b)(2) and (c)(2) are well understood and are the model for numerous first-day motions, such as obtaining credit and seeking use of cash collateral. That process is well established: if the court is so disposed, the partial relief is granted for the interim before the final hearing can be conducted. Later, after further opportunity for other parties in interest to consider the application and to object, the court, if so disposed will grant the balance of the relief requested.

26.     Second, Bankruptcy Rule 6003 is entitled "Interim and Final Relief Immediately Following the Commencement of the Case…." Thus, the very title of the Bankruptcy Rule contemplates that relief may be granted on an interim basis.

27.     Interim relief is clearly justified and appropriate in the context of this Application.

28.     It is well recognized in this district and others that a corporation must be represented

by counsel to appear in court because it is merely an artificial entity that can only act through its agents and thus may not appear pro se. *See, e.g., Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir. 1985) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally . . . they must be represented by licensed counsel."); *see also In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed pro se."). This requirement is further established by Local Rule 1074-1, which provides that "[c]orporations, partnerships, trusts and other non-individual parties may appear and be heard only through counsel permitted to practice in the Court pursuant to Local Rule 2090-1."

29.     Accordingly, without general bankruptcy counsel, the Debtor is technically unable to proceed with this case.   GJB will play an integral role in the first 21 days of this chapter 11 case. Among other things, the Debtor will need GJB's assistance in preserving and protecting its property, negotiating with key creditor constituencies, addressing issues related to the "first day" hearing and related orders, addressing post-petition financing, constructing a business plan and plan of reorganization and defining the Debtor's path post-restructuring.

30.     Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support entry of an order, authorizing the Debtor to retain and employ GJB on an interim basis and to compensate GJB for any services rendered during that interim period in accordance with the Bankruptcy Code and any interim compensation procedures that may be established in these cases. This interim form of relief ensures the availability of GJB's full resources to the Debtor during a critical period in these cases, while preserving the ability of all parties in

interest, including the U.S. Trustee, to object to this application on a final basis.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an interim order, substantially in the form attached hereto as **Exhibit "C"**: (i)  authorizing the Debtor's retention of Paul J. Battista, Esq. and the law firm of GJB upon the terms outlined in this Application on an interim basis effective April 20, 2021; (ii) setting a final hearing on this Application at least twenty-one (21) days after the Petition Date, and (iii) granting such other and further relief as is just and proper.

Dated this 22nd day of April, 2021.

**LIBERTY POWER HOLDINGS, LLC**.

By:   /s/ *Bob Butler*
Name:  Bob Butler
Title:   Chief Restructuring Officer

# EXHIBIT "A"

**(BATTISTA DECLARATION)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                  Chapter 11

**LIBERTY POWER HOLDIGNS, LLC**                          Case No. 21-13797-PDR

              Debtor.
_____/

**DECLARATION OF PAUL J. BATTISTA, ESQ. IN SUPPORT OF**
**THE DEBTOR'S *EXPEDITED* APPLICATION FOR AUTHORITY TO RETAIN,**
**ON AN INTERIM AND FINAL BASIS, GENOVESE JOBLOVE & BATTISTA, P.A., AS**
**GENERAL BANKRUPTCY COUNSEL FOR**
**DEBTOR-IN-POSSESSION EFFECTIVE AS OF APRIL 20, 2021**

PAUL J. BATTISTA makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1.      I am an attorney and shareholder of the law firm of Genovese Joblove & Battista, P.A. ("GJB").  GJB maintains offices for the practice of law at the 100 Southeast Second Street, Suite 4400, Miami, Florida 33131, 200 East Broward Boulevard, Suite 1110 Fort Lauderdale, Florida 33301 and 100 N. Tampa Street, Suite 2600, Tampa, FL 33602.  I am familiar with the matters set forth herein and make this Declaration in support of the *Debtor's Expedited Application for Authority to Retain, on an Interim and Final Basis, Genovese Joblove & Battista, P.A. as General Bankruptcy Counsel for the Debtors-in-Possession Effective as of April 20, 2021* (the "Application").

2.      In support of the Application, I disclose the following:

       a.      Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

b. In preparing this Affidavit, I have reviewed the preliminary list of creditors and equity security holders of the Debtor provided to us by the Debtor and as otherwise gathered by GJB. GJB maintains a computerized conflicts check system. GJB has compared the information obtained thereby with the information contained in its client and adverse party conflict check system. As additional information becomes available to GJB concerning the identity of other creditors, then GJB will supplement its conflict check and if appropriate, I will supplement my Declaration accordingly.

c. The facts stated in this Declaration as to the relationship between GJB and the Debtor, the Debtor's creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of GJB's conflict check system. Based upon the foregoing, GJB does not represent any entity in any matter involving or adverse to the Debtor or which would constitute a conflict of interest or impair the disinterestedness of GJB in respect of its representation of the Debtor herein.

3. GJB's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by GJB, and it is the regular practice of GJB to make and maintain these records. The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I am one of the persons who is responsible for the supervision of the department of GJB which keeps this system up-to-date, and I regularly use and rely upon the information contained in the system in the performance of my duties with GJB and in my practice of law.

4. GJB neither holds nor represents any interest adverse to the Debtor and is a "disinterested person" within the scope and meaning of Section 101(14) of the Bankruptcy Code.

2

5.      Neither I nor GJB has or will represent any other entity in connection with this case, and neither I nor GJB will accept any fee from any other party or parties in this case, except the Debtor, unless otherwise authorized by the Court.

6.      According to GJB's records, prior to the filing of the voluntary petition herein, GJB received an aggregate retainer from the Debtor in the amount of $140,000 (the "Retainer").  GJB applied an amount equal to $65,000 of such Retainer to its pre-petition fees and expenses incurred through April 20, 2021 (the "Prepetition Payment").  As a result, GJB will have a balance of $75,000 to be held as a postpetition retainer (the "Postpetition Retainer"), subject to an adjustment depending on the final reconciliation of pre-petition fees and expenses against the Prepetition Payment (the "Postpetition Retainer").  To that end, promptly after the Petition Date, GJB will reconcile the amounts incurred for fees and expenses pre-petition and to the extent such fees and expenses do not exceed Prepetition Payment, then GJB shall return such excess to and increase the Postpetition Retainer accordingly.  To the extent that such prepetition fees and expenses exceed the Prepetition Payment, then GJB shall waive such excess.

7.      The professional fees and costs to be incurred by GJB in the course of its representation of the Debtor in this case shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

8.      There is no agreement of any nature as to the sharing of any compensation to be paid to GJB, except between the attorneys of GJB.  No promises have been received by GJB, nor any member or associate thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

9.      No attorney at GJB holds a direct or indirect equity interest in the Debtor, including stock or stock warrants, or has a right to acquire such an interest.  No attorney at GJB is or has

served as an officer, director or employee of the Debtor within two years before the Petition Date. No attorney at GJB is in control of the Debtor or is a relative of a director, officer or person in control of the Debtor.  No attorney at GJB is a general or limited partner of a partnership in which any of the Debtor is also a general or limited partner.  No attorney at GJB is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtor in connection with the offer, sale or issuance of a security of the Debtors, within two years before the Petition Date.  No attorney at GJB has represented a financial advisor of the Debtors in connection with the offer, sale or issuance of a security of the Debtor within three years before the Petition Date.

10.     No attorney at GJB has any other interest, direct or indirect, that may be affected by the proposed representation.

11.     No attorney at GJB has had or presently has any connection with the above-captioned Debtor or the estate on any matters in which GJB is to be engaged, except that I, GJB and our attorneys: (i) may have appeared in the past and may appear in the future in other cases in which one or more of said parties may be involved; and (ii) may represent or may have represented certain of the Debtor's creditors in matters unrelated to these cases.  In addition and for purposes of full disclosure, the proposed chief restructuring officer of the Debtor, Bob Butler, is employed by Berkeley Research Group, LLC ("BRG"), a global consulting firm with approximately 1,200 employees.  One of BRG's employees is Rachel Battista, who is my niece.  Lastly, two years ago on April 26, 2019, David Hernandez ("Hernandez"), one of the Debtor's principals, had a meeting with 2 partners of GJB for a preliminary and general discussion of certain financial issues related to the Debtor and its affiliates.  GJB was not retained by the Debtor, Hernandez or any other affiliate of the Debtor.  I do not believe such discussion two years ago presents any conflict of

interest for GJB or otherwise impairs the disinterestedness of GJB in respect of its representation of the Debtor herein.

12.    This concludes my declaration.

### 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2021.


_____/s/ Paul J. Battista_____
PAUL J. BATTISTA, ESQ.

**EXHIBIT "B"**

**(ENGAGEMENT LETTER)**



Paul J. Battista, Esq.
Telephone: 305-349-2300
Email:pbattista@gjb-law.com

April 17, 2021

**VIA EMAIL bbutler@thinkbrg.com**
Liberty Power Holdings, LLC
Attn: Bob Butler
Chief Restructuring Officer
Berkley Research Group
3350 Riverwood Parkway
Suite 1900
Atlanta, GA 30339

   Re: Engagement of Genovese, Joblove & Battista, P.A. (the "Firm")

Dear Bob:

   We are pleased that Liberty Power Holdings, LLC (the "Company") has engaged our firm to represent the Company as its general bankruptcy counsel in connection with evaluating, preparing for, filing and prosecuting a chapter 11 bankruptcy proceeding. Consistent with the rules of professional responsibility that govern all attorneys, it is the Firm's practice to advise clients in writing of the terms and conditions under which we undertake a representation.

   First, to protect both of us and to comply with our professional obligations, this engagement is subject to clearance of any conflicts of interest with present or former clients of the Firm. We have performed a conflict check regarding those parties that we are aware of who are presently involved in this matter and have determined that no conflict exists at this time. As additional parties are identified, we will update our conflict check and advise you of any issues. In order to help us in the future, if you become aware of additional potential adverse parties, then please provide us with the names of any such persons or entities as soon as possible.

   My law partner, Mariaelena Gayo-Guitian, and I will have primary responsibility for this engagement, and will use other attorneys and legal assistants in our Firm in the best exercise of our professional judgment. My standard hourly rate is $745.00 and Ms. Gayo-Guitian's standard hourly rate is $550.00. Where possible and applicable, we will utilize other attorneys and paraprofessionals with lower billing rates. The Firm's engagement is subject to and based on the provisions set forth herein and in our Standard Terms and Conditions, which are annexed to and made a part of this letter agreement. Upon the filing of a chapter 11 bankruptcy for the Company,

if and to the extent our Standard Terms and Conditions conflict with the provisions of the Bankruptcy Code or the Local Rules of the Bankruptcy Court, then the provisions of the Bankruptcy Code and/or Local Rules shall govern.

We want to assure you that we will endeavor to serve you effectively and strive to represent your interests efficiently. To advance these goals, the Company agrees to disclose fully and accurately all pertinent facts and keep us apprised of all developments in this matter. The Company further agrees to cooperate fully with us and to be available to attend such meetings as are appropriate. During the course of our representation, we may express opinions regarding issues for which we are being engaged or various courses of action and the results that might be anticipated. Any such statement made by myself or by any partner, associate, of counsel or employee or agent of our Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed as a promise or guarantee. Needless to say, there can be no assurances that our efforts on your behalf will be successful.

As with all new clients, the Firm requires an initial retainer. Based on our discussions to date, our initial retainer will be in the amount of $140,000 (the "Retainer"). We will hold this amount in trust in accordance with this letter. We will bill the Company monthly for the fees and expenses that we incur on your behalf and apply the Retainer to such fees and expenses. In the event and at such time as the Company files a chapter 11 bankruptcy, then we will draw on the Retainer to pay all outstanding fees and expenses at that time. As you know, upon the filing of a chapter 11 bankruptcy, it is imperative that our Firm not be a creditor so that we remain disinterested as required by the Bankruptcy Code. Upon the Company's filing for chapter 11, the unused portion of the Retainer will become our retainer for the chapter 11 case. We also understand that the Company is arranging debtor-in-possession financing in order to fund its operations and pay its professional fees during the chapter 11. We will work with you and the proposed lender to determine the appropriate amount of attorneys' fees and expenses to be included in the budget for the loan, which budgeted fees will supplement our Retainer. Upon the filing of the chapter 11 case, we are required to file fee applications with, and obtain an order from, the Bankruptcy Court prior to being able to draw on our retainer to pay our fees and expenses. The Bankruptcy Code limits the period during which we can apply for an award and payment of fees and expenses to every 120 days. We anticipate that we will seek relief from the Bankruptcy Court in order to allow our Firm and all professionals retained by the Company to be paid on a monthly basis. If you have any questions on or issues with any of our invoices at any time, then please let me know and we will use our best efforts to answer such questions and/or resolve any issues.

Please review this agreement carefully, and if you have any questions concerning the foregoing terms and conditions, please do not hesitate to contact me. If this agreement is acceptable, then please acknowledge that you have reviewed it, understand it, and desire to retain us based on the terms of this letter and attachment by signing and delivering to us the enclosed copy, together with the initial retainer via wire instructions included with this letter. We recommend that you keep a copy of this letter and our Standard Terms in your file.

Thank you for allowing us to be of service.

Sincerely,

**GENOVESE JOBLOVE & BATTISTA, P.A.**

By: _____/s/ _Paul J. Battista_____
        Paul J. Battista

**THE ABOVE IS ACCEPTED AND AGREED TO:**

**LIBERTY POWER HOLDINGS, LLC**

By: _____
Name: Bob Butler
Title:   Chief Restructuring Officer

## <u>STANDARD TERMS AND CONDITIONS OF ENGAGEMENT</u>

1.      <u>**Costs**</u>:  It is usually necessary for us to incur, as agent for our clients, expenses for items such as filing fees, travel, lodging, meals, toll telephone calls, photocopying, facsimiles ("fax"), and courier services.  Many engagements require substantial amounts of costly ancillary services such as outside duplication services and computerized legal research.  The client is responsible for all costs incurred on the client's behalf.  In order to allocate these expenses fairly and to keep our hourly rates as low as possible for those matters which do not involve such expenditures, these items are separately itemized on our statements as "costs advanced" or "disbursements".

        Major out-of-pocket expenses, including outside fees and expenses (such as printing costs, filing fees, etc.), will not be advanced by us unless special arrangements are made in advance.  They will be billed directly or forwarded to our client.

2.      <u>**Billing**</u>: Costs and expenses will be billed monthly.  Payment is due promptly upon presentation of the statement, unless we agree otherwise in writing.

3.      <u>**Late Payments**</u>:  We are confident that our clients make every effort to pay us promptly.  Occasionally, however, a client has difficulty in making timely payment.  To avoid burdening those clients who pay their statements promptly with higher fees reflecting the added costs we incur as a result of clients who are delinquent, we reserve the right to impose an interest/service charge of one percent per month for late payments.  In no event will the service charge be greater than permitted by applicable law.

4.      <u>**Non-Payment of Fees and Costs**</u>:  Failure to pay any statement rendered when due will constitute a default.  In the event of a default, you agree that in our discretion we may immediately cease all legal services on your behalf or discontinue our representation (subject to our ethical obligations and any other applicable provision of law).  In the unlikely event that we are required to institute legal proceedings to collect fees and costs owed by the client, the prevailing party will be entitled to reimbursement of its reasonable attorneys' fees and other costs of collection.

5.      <u>**Termination**</u>:  The client has the right to terminate our representation by written notice at any time.  In that case, the client is not relieved of the obligation to pay for all services rendered and costs incurred on its behalf prior to receipt of such notice in accordance with the terms hereof.  We have the same right to terminate our engagement, subject to an obligation to give the client reasonable notice to arrange alternative representation.

6.      <u>**Applicable Law**</u>:  The laws of the State of Florida will govern the interpretation of this agreement, including all rules or codes of ethics which apply to the provision of services by us.  Any legal action or proceeding with respect to this engagement agreement may be brought in the federal or state courts in and for Dade County, Florida, and by the execution and delivery of this engagement agreement you and the Company hereby consents to the non-exclusive personal jurisdiction of such courts, and waives any objection to such venue based on any grounds,

including forum non conveniens which it may have to the bringing of any action in such courts based on this engagement agreement.

7.    **Payment by Others:**  Sometimes another party to a transaction agrees to pay our client's legal fees, or a court may order our client's adversary to pay all or a part of its legal fees and costs.  However, in such case our client remains primarily liable for payment of all fees and costs.  Any amounts received from others will be credited to the client's account.

8.    **Jury Trial Waiver**.  The client and the Firm hereby unconditionally waive their respective rights to a jury trial of any claims or causes of action based upon or arising out of or in connection with, directly or indirectly, this agreement or the engagement of the firm contemplated herein, and any dealings between client(s) and Firm relating to the subject matter of this agreement or the Firm's fees.  This waiver shall encompass any and all disputes that may be filed in any Court (including, without limitation, contract claims, tort claims, malpractice claims, breach of duty claims, and all other common law and statutory legal and equitable claims).  This waiver is irrevocable, meaning that it may not be modified either orally or in writing.  This waiver shall apply to any subsequent amendments, renewals, supplements or modifications to this agreement, as well as to all other matters for which the client(s) engages the Firm.  This waiver is knowingly, willingly and voluntarily made by the parties.

**EXHIBIT "C"**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                          **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC**           **Case No. 21-13797-PDR**

                    **Debtor.**
_____/

**INTERIM ORDER PURSUANT TO 11 U.S.C. § 327(a) AUTHORIZING**
**THE EMPLOYMENT OF PAUL J. BATTISTA AND THE LAW FIRM OF**
**GENOVESE JOBLOVE & BATTISTA, P.A., AS GENERAL BANKRUPTCY**
**COUNSEL FOR THE DEBTOR-IN-POSSESSION**
**EFFECTIVE AS OF APRIL 20, 2021 AND SETTING FINAL HEARING**

      **THIS CASE** came before the Court on **April ___, 2021 at __:00 a.m./p.m.** upon the

application (the "Application") of Liberty Power Holdings, LLC (the "Debtor"), for entry of an

interim and final order, pursuant to 11 U.S.C. §§ 327(a) and 330 and Bankruptcy Rules 2014(a),

2016 and 6003, authorizing the Debtor to employ and retain Paul J. Battista, Esq. ("Battista") and

the law firm of Genovese Joblove & Battista ("GJB") under a general retainer as its restructuring

and general bankruptcy attorneys in this Chapter 11 case effective as of April 20, 2021 [ECF No.

__] and the Court, finding that good, adequate and sufficient cause has been shown to justify the entry of this order; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Application and the Declaration of Paul J. Battista, a shareholder of GJB, attached to the Application (the "Battista Declaration"); and the Court being satisfied based on the representations made in the Application and the Battista Declaration that (a) Battista and GJB do not hold or represent an interest adverse to the Debtor's estate, and (b) GJB is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** as follows:

1.      The Application is **GRANTED** on an interim basis effective as of April 20, 2021.

2.      The Debtor is authorized to employ and retain GJB as general counsel in this Chapter 11 case in accordance with the terms and conditions set forth in the Application and this Interim Order.

3.      GJB shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 case in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines for Fee Applications and the orders of this Court.

4.      The Court shall conduct a final hearing (the "Final Hearing") on the Application on

_____, 2021, at __:00 a.m. (Eastern Time), via Video Conference.

5.      The hearing scheduled by this order is a public matter. The general public is invited to listen to the hearing by telephone.

6.      Any party in interest objecting to the relief sought in the Application shall serve and file written objections which objections shall be served upon (a) the Debtor, (b) GJB, (c) the Office of the United States Trustee for the Southern District of Florida, (d) the entities listed on the Master Service List, if any, filed pursuant to Local Rule 2002-1(K), and (e) counsel to any Official Committee of Unsecured Creditors, to the extent one is appointed prior to the Final Hearing (collectively, the "Notice Parties"), and shall be filed with the Clerk of the United States Bankruptcy Court for the Southern District of Florida, to allow actual receipt by the foregoing Notice Parties by no later than 4:30 p.m., prevailing Eastern Time, two (2) business days prior to the Final Hearing.

7.      Notice will be provided to all parties by mailing a copy of this Interim Order setting the Final Hearing.

8.      In the event the Application is not granted on a final basis, GJB shall be authorized to submit a fee application with this Court for compensation for services rendered in the period between the Petition Date and the Final Hearing.  Any party in interest may object to the fee application; provided, however, that such party shall file such objection with this Court and serve a copy of the objection upon the Notice Parties.

9.      The requirements for emergency motions set forth in Local Rule 9075-1 and for entry of the relief requested earlier than the period set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Application.

10.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Application and the record.

11.     Entry of this Interim Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* basis at the Final Hearing.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Interim Order

# # #


**SUBMITTED  BY:**
Paul J. Battista, Esq
Genovese Joblove & Battista, P.A.
Counsel to Debtor-in-Possession
100 S.E. Second Street, 44th Floor
Miami, FL 33131
(305) 349-2300 (p)
(305) 349- 2310 (f)
pbattista@gjb-law.com

**Copies Furnished to:**
Paul J. Battista, Esq.
[Attorney Battista is directed to serve a conformed copy of this Order on all parties in interest]