**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flmb.uscourts.gov**

**In re:** **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,** **Case No. 21-13797-PDR**

**Debtor.**
______________________________/

**DEBTOR'S *EXPEDITED* MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY AND RETAIN BERKELEY RESEARCH GROUP, LLC TO PROVIDE BOB BUTLER AS CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL FOR THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

**(Expedited Hearing Requested on Thursday, April 22, 2021 at 2:30 p.m.)**

**LIBERTY POWER HOLDINGS, LLC** (the "Debtor"), by and through its proposed undersigned counsel, pursuant to 11 U.S.C. §105(a) and §363(b), files the *Debtor's Expedited Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authorization to Employ and Retain Berkeley Research Group, LLC to Provide Bob Butler as Chief Restructuring Officer and Additional Personnel for the Debtor Effective as of the Petition Date* (the "Motion"). The Motion seeks entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit "C"** authorizing the Debtor to retain Berkeley Research Group, LLC ("BRG"), pursuant to the terms and conditions of that certain letter agreement between BRG and the Debtor, dated April 16, 2021 (the "Engagement Letter"),[1] a copy of which is attached hereto as **Exhibit "B"** to provide Bob Butler to serve as the Debtor's chief restructuring officer (the "CRO") and provide additional staff (the "Additional Personnel" and, together with the CRO, the "BRG

1 Any references to, or summaries of, the Engagement Letter in this Motion are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein. Additionally, any capitalized terms used in this Motion and not otherwise defined herein shall have the meanings given to them in the Engagement Letter.

Professionals") to support the CRO in the exercise of his duties hereunder and perform financial advisory services effective as of the Petition Date. In support of the Motion, the Debtor relies upon the *Declaration of Bob Butler* (the "Butler Declaration") attached hereto as **Exhibit "A"** in support of the Motion. In addition, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 363(b) and 105(a), of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND AND BUSINESS OPERATIONS**

4. On April 20, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under the Bankruptcy Code (the "Chapter 11 Case"). Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. As of the date hereof, no creditors' committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

6. For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to the *Declaration of Bob Butler, Proposed Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and First Day Motions* [Docket No. 10] (the "First Day Declaration") filed April 21, 2021.

**BRG'S QUALIFICATIONS**

7. The Debtor has determined that obtaining the ongoing services of a CRO will substantially enhance its ability to (a) operate and meet its administrative obligations in this Chapter 11 case, (b) preserve and maximize the value of its assets, and (c) review and analyze strategic alternatives as part of the Debtor's restructuring plan, including through the marketing and sale of its assets under Section 363 of the Bankruptcy Code. Accordingly, the Debtor seeks permission to employ BRG. The Debtor has determined that the retention of BRG is necessary and appropriate and is in the best interests of the Debtor's estate due to BRG's expertise and qualifications in performing the analyses required in this particular Chapter 11 Case and for the reasons enumerated herein.

8. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. BRG serves troubled companies, debtors, and secured and unsecured creditors, equity holders, and other parties in both in-court and out-of-court engagements.

9. BRG provides expert services, including economic and financial analyses, expert testimony, litigation support, and strategic management consulting to a range of public and private enterprises. BRG delivers independent expert testimony, original authoritative studies, and strategic advice to legislative, judicial, regulatory, and business decision makers. BRG's other services include factual and statistical analyses, report preparation and presentation and data collection.

10. Mr. Butler has over 35 years of diverse financial consulting, executive management, and public accounting experience in public and private companies across a variety of industries, including almost 20 years of experience in the bankruptcy and restructuring field.

11. Mr. Butler has extensive energy experience, including his substantial involvement in the successful restructuring of NRG Energy and Mirant Corporation. Mr. Butler also recently provided Debtor services to a large midstream pipeline company. Additionally, he provided litigation support and assisted in the expert testimony in connection with the Enron Class Action and Mega Claims litigation.

12. For California ISO, Mr. Butler and his team were engaged by the Independent System Operator ("ISO") Board of Governors to provide consulting and financial advisory services with respect to the ISO's Market Redesign and Technology Upgrade (MRTU) program. The MRTU is central to providing the framework for reliable operations of the California high-voltage power grid in the long run.

13. Mr. Butler also has experience providing restructuring services to companies encountering operational and financial difficulties. Mr. Butler served as Chief Restructuring Officer of Spheris Inc. in its complex bankruptcy matter and has served as an advisor on other complex bankruptcy matters, including, Mirant Corporation, SunEdison, Westinghouse, Dynegy, Enron, NRG Energy, Tropicana Entertainment New Enterprise Stone & Lime Co., Inc., Foresight Energy, Nobilis Health Corp., Neighbors Global Holdings, and Egalet Corporation. His out-of-court restructuring experience includes serving as a financial advisor on matters in the investment management, residential real estate, consumer products, professional services, and chemical manufacturing industries. Additionally, he has significant experience in mergers and acquisitions,

post-merger integration, initial public offerings, and a wide range of financial and accounting issues for both publicly and privately held companies.

14.    Prior to joining BRG, Mr. Butler was an Executive Director with Capstone Advisory Group, LLC, and a Managing Director at the Policano & Manzo legacy practice of FTI Consulting. Prior to his restructuring experience, he was Executive Vice President of a beverage manufacturer and was Vice President - Business Development with a professional services provider. He has also worked for PricewaterhouseCoopers, BDO Seidman, and Touche Ross. He holds a B.S. in Accounting from the University of Arizona and is a Certified Public Accountant and a member of the American Institute of Certified Public Accountants.

15.    The Additional Personnel who will work on this matter have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtor under the Proposed Order.  The Additional Personnel will work closely with the Debtor's management and professionals throughout these Chapter 11 Cases.  By virtue of the expertise of its restructuring personnel, BRG is well qualified to provide services to and represent the Debtor's interests in these Chapter 11 Cases.

16.    The Debtor believes that Mr. Butler and BRG are well qualified and able to advise it in a cost-effective, efficient, and timely manner. The Debtor has been advised by BRG that it will endeavor to coordinate with the other professionals retained in this case to eliminate unnecessary duplication of work. Therefore, the Debtor submits that the retention and employment of Butler as its chief restructuring officer, with the Additional Personnel, is in the best interests of its estate.

**SERVICES TO BE PROVIDED**

17. As provided in the Engagement Letter, BRG has agreed that Mr. Butler will serve as the Debtor's CRO and will assist the Debtor in evaluating and implementing strategic and tactical options. In addition, BRG has agreed to provide the Additional Personnel to assist the CRO and perform financial advisory services for the Debtor. The BRG Professionals' rates, and other related information, is set forth in the Engagement Letter and summarized herein.

18. The Debtor has requested that the CRO and the Additional Personnel provide the following professional services as independent consultants ("Services"):

a) In consultation with management of the Company and subject to the approval of the Board of Directors of the Company, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders;

b) Oversee the activities of the Company in consultation with other advisors and the management team to effectuate the selected course of action;

c) Advise and assist the Company in preparing and analyzing cash flow (weekly and monthly) and financial projections related to liquidity and borrowing needs, including related budget to actual variance analysis;

d) Assist the Company with contingency planning and the assessment of strategic alternatives including a possible Chapter 11 filing;

e) Assist as requested by management in connection with the Company's development of its business plan, and such other related forecasts as may be required by creditor constituencies in connection with negotiations.

f) Assist with data collection and information gathering related third-party due diligence relating to potential transactions with financial and strategic buyers

g) Advice and assist the Company and other professionals retained by the Company in developing, negotiating and executing chapter 11 strategy, Section 363 sales or other potential sales of all or portion of the Company

h) Provide information deemed by the CRO to be reasonable and relevant to stakeholders and consult with key constituents, as necessary.

i) To the extent reasonably requested by the Company, offer testimony before the Bankruptcy Court with respect to the services provided by the CRO and the

Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto.

j) If requested, assist in preparation of reports to the Board and the status of implementation of restructuring initiatives;

k) Render such other general business consulting or such other assistance as the management or its counsels may deem necessary, including expert testimony, that are consistent with the role of a financial advisor;

l) Such other services as mutually agreed upon by the CRO, Company's counsel, BRG and the Company.

19. The services that BRG will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estate. The services provided by BRG will complement, and not duplicate, the services to be rendered by any other professional retained in this Chapter 11 Case. Further, the services will not duplicate the services that other professionals will be providing to the Debtor in this Chapter 11 Case.

**TERMS OF RETENTION**

20. BRG's decision to advise and assist the Debtor in connection with this Chapter 11 Case is conditioned upon its ability to be retained in accordance with BRG's customary terms and conditions of employment, as set forth in the Fees & Expenses section of the Engagement Letter (the "Fee and Expense Structure"). The fees charged by the BRG Professionals, will be based on the actual hours worked at BRG's standard hourly rates which are in effect when the Services are rendered ("Professional Fees"). BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business. Hourly rates may change in the future from time to time and are typically adjusted annually. Rate changes will be noted on the invoice for the first time period in which the revised rates become effective. The current (2021) standard hourly rates for the BRG Professionals

anticipated to be assigned to this case are as follows:

| | |
|---|---|
| Managing Director | $860 - $1,150 |
| Director | $600 - $895 |
| Professional Staff | $250 - $770 |
| Support Staff | $125 - $275 |

21. In addition to Professional Fees, BRG also will be entitled to reimbursement for its reasonable costs and expenses incurred in connection with these Chapter 11 Cases, including, but not limited to, reasonable travel expenses (including lodging expenses and business meals), costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes and other direct expenses.

22. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by BRG and other comparable firms that render similar services under similar circumstances. The Debtor believes that the Fee and Expense Structure is reasonable, market-based, and designed to compensate BRG fairly for its work and to cover fixed and routine overhead expenses.

23. Prior to the filing of the voluntary petition herein, BRG received cash on account ("Cash on Account") from the Debtor in the amount of $300,000.00.BRG applied an amount equal to $71,926.00 of such Cash on Account to its pre-petition fees and expenses incurred through April 20, 2021. The remainder of the Cash on Account ($228,074.00) is being held as a as a general retainer as security for postpetition services and expenses.

24. The Debtor and BRG have agreed that any portion of the Cash on Account not used to compensate BRG for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final post-petition billing and will not be placed in a separate account. Upon the termination of BRG's engagement, BRG will return any unused

portion of the Cash on Account to the Debtor.

25.    Because BRG is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtor requests, on behalf of BRG, that BRG not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, BRG will file reports of staffing, compensation earned, and expenses incurred on a monthly basis (each a "**Staffing Report**") with the Court and provide notice to (i) the U.S. Trustee, (ii) Eversheds Sutherland (US) LLP as Counsel to Boston Energy Trading & Marketing LLC, and (iii) counsel to any official committee appointed in these Chapter 11 Cases (collectively, the "**Notice Parties**").  Each Staffing Report shall contain summary charts which describe the services provided, including the number of hours worked by category, identify the compensation earned by each BRG Professional, and itemize the expenses incurred for the relevant period.  Time records shall (i) be appended to the Staffing Report, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in tenths of an hour (0.1).  All compensation shall be subject to review by the Court in the event an objection is filed.  BRG's Staffing Reports shall be filed by the last day of the month for the previous month.  BRG's first Staffing Report shall be filed by May 31, 2021 for the month of April.  Objections or responses to the Staffing Reports shall be filed and served within 14 days of filing of the Staffing Report.  For the avoidance of doubt, the Debtor submits that Mr. Butler and the BRG Professionals are not, and shall not, be required to comply with Local Rule 2016-1.

**BRG'S CONNECTIONS WITH THE DEBTOR AND PARTIES IN INTEREST**

26. The Debtor does not believe that BRG is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. However, BRG has nonetheless provided information with respect to its connections with the Debtor, its creditors, and other related parties, as more specifically described herein and in the Butler Declaration. BRG has undertaken this conflicts review on the basis of limited information provided and will make supplemental disclosure promptly following the receipt and conflicts review of additional information.

27. The Debtor understands that, except as set forth in the Butler Declaration, to the best of BRG's knowledge, information, and belief, BRG has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of the foregoing, or the United States Trustee for the Southern District of Florida (the "U.S. Trustee") or any person employed in the Office of the United States Trustee for the Southern District of Florida and does not hold any interest adverse to the Debtor's estate.

28. As set forth in further detail in the Butler Declaration, the Debtor does not owe BRG any amount for services performed or expenses incurred prior to the commencement of this Chapter 11 Case, and, thus, BRG is not a prepetition creditor of the Debtor.

29. The Debtor attaches the Butler Declaration, which discloses, among other things, any relationship that BRG, Mr. Butler, or any of the other BRG Professionals engaged on this matter have with the Debtor, and other parties in interest known to BRG. In addition, as set forth in the Butler Declaration, if any new material facts or relationships are discovered or arise, during the period of BRG's retention, BRG will use reasonable efforts to promptly provide the Court with a supplemental declaration.

30. As stated above and in the Butler Declaration, the Debtor does not believe that BRG holds or represents any interest adverse to the Debtor's estate. Accordingly, the Debtor submits that the retention of BRG is in the best interests of the Debtor, its estates, and its creditors, and should be approved by the Court.

**LIMITATION OF LIABILITY AND INDEMNITY**

31. Pursuant to the Engagement Letter, the Debtor agrees to indemnify the CRO and BRG to the extent as the most favorable indemnification it extends to the members of its Board of Managers pursuant to the Second Amended and Restated Operating Agreement dated January 17, 2018, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to BRG and the CRO. The indemnification provisions contained in the Engagement Letter are in the nature of contractual obligations and no change in applicable law or the Debtor's Operating Agreement or policies shall affect the CRO's or BRG's rights under the Engagement Letter.

32. The Debtor and BRG believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for BRG and comparable firms providing restructuring services.

33. The terms and conditions of the indemnification provisions were negotiated by the Debtor and BRG at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of the Proposed Order, are reasonable and in the best interest of the Debtor, its estate, and creditors in light of the fact that the Debtor requires BRG's services to successfully reorganize.

34. The Debtor submits that the employment of the CRO under the terms and

conditions contained in the Engagement Letter will benefit the Debtor's estate and its creditors.

**Applicable Authority**

35. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides in part that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See*, *e.g.*, *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996)(citing *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991)(courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

36. The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. Courts in this district have authorized retention of temporary employees to provide restructuring services and interim management services under

363 of the Bankruptcy Code. *See In re Adinath Corp, et al.*, Case No. 15-16885-BKC-LMI (Bankr. S.D. Fla. May 8, 2015) (Isicoff, J.); *In re SMF Energy Corporation, et al.*, Case No. 12-19084-BKC-RBR (Bankr. S.D. Fla. May 21, 2012)(Ray, J.); *In re Ruden McClosky P.A.*, Case No. 11-40603-BKC-RBR (Bankr. S.D. Fla. December 5, 2011) (Ray, J.); *In re Medical Staffing Network Holdings, Inc., et al.*, Case No. 10-29101-BKC-EPK (Bankr. S.D. Fla. July 22, 2010) (Kimball, J.); *In re Puig, Inc., et al.*, Case No. 07-14026-BKC-RAM, (Bankr. S.D. Fla. June 20, 2007) (Mark, J.); *In re AT&T Latin America Corp., et al.*, Case No. 03-13538-BKC-RAM, (Bankr. S.D. Fla. June 11, 2003) (Mark, J.); *In re Piccadilly Cafeterias*, Case No. 03-27976-BKC-RBR (Bankr. S.D. Fla. October 31, 2003) (Ray, J.)

37.    The Debtor requests that the retention of Mr. Butler as the CRO and other professionals at BRG to provide advisory services to the CRO be approved effective as of April 20, 2021.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (i) granting this Motion, (ii) authorizing the Debtor to engage the CRO and other personnel from BRG to provide advisory services to the CRO upon the terms and conditions contained in the Engagement Letter, (iii) designating Bob Butler as the Debtor's chief restructuring officer, (v) approving the retention of CRO and BRG effective as of April 20, 2021, and (vi) granting such other and further relief as is just and proper.

Dated this 22nd day of April, 2021

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Proposed Attorneys for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131

Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: /s/ *Paul J. Battista*
Paul J. Battista, Esq.
Florida Bar No. 884162
pbattista@gjb-law.com
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 0813818
mguitian@gjb-law.com
Heather L. Harmon
Florida Bar No. 13192
hharmon@gjb-law.com

**EXHIBIT "A"**

**(BUTLER DECLARATION)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flmb.uscourts.gov**

**In re:** **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,** **Case No. . 21-13797-PDR**

**Debtor.**
_______________________________/

**DECLARATION OF BOB BUTLER IN SUPPORT OF DEBTOR'S *EXPEDITED* MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY AND RETAIN BERKELEY RESEARCH GROUP TO PROVIDE BOB BUTLER AS CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL FOR THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

I, Bob Butler, make this declaration pursuant to 28 U.S.C. § 1746 and hereby declare under penalty of perjury as follows:

1. I am a Managing Director with Berkeley Research Group, LLC ("BRG") a financial services advisory firm, with numerous offices throughout the country and I am duly authorized to make this declaration (this "Declaration") on behalf of BRG.

2. I submit this Declaration in support of the *Debtor's Expedited Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authorization to Employ and Retain Berkeley Research Group, LLC to Provide Bob Butler as Chief Restructuring Officer and Additional Personnel for the Debtor Effective as of the Petition Date* (the "Motion")[1] for entry of an order: (i) authorizing the Debtor to retain BRG, pursuant to the terms and conditions of that certain letter agreement between BRG and the Debtor dated April 16, 2021, (the "Engagement Letter") to (a) provide Bob Butler to serve as Chief Restructuring Officer (the "CRO"), and (b)

[1] All terms not otherwise defined herein have the meanings ascribed to them in the Motion.

provide additional staff (the "Additional Personnel" and, together with the CRO, the "BRG Professionals"); (ii) providing that the employment of the CRO and the Additional Personnel is effective as of the Petition Date; and (iii) granting certain related relief. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.[2]

**QUALIFICATIONS**

3. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. BRG serves troubled companies, debtors, and secured and unsecured creditors, equity holders, and other parties in both in-court and out-of-court engagements.

4. BRG provides expert services, including economic and financial analyses, expert testimony, litigation support, and strategic management consulting to a range of public and private enterprises. BRG delivers independent expert testimony, original authoritative studies, and strategic advice to legislative, judicial, regulatory, and business decision makers. BRG's other services include factual and statistical analyses, report preparation and presentation and data collection.

5. I have over 35 years of diverse financial consulting, executive management, and public accounting experience in public and private companies across a variety of industries, including almost 20 years of experience in the bankruptcy and restructuring field.

6. I have extensive energy experience, including substantial involvement in the

[2] Certain of the disclosures contained herein relate to matters within the knowledge of other professionals at BRG, and are based on information provided to me by them.

successful restructuring of NRG Energy and Mirant Corporation. I also recently provided Debtor services to a large midstream pipeline company. Additionally, I provided litigation support and assisted in the expert testimony in connection with the Enron Class Action and Mega Claims litigation.

7. For California ISO, my team and I were engaged by the Independent System Operator ("ISO") Board of Governors to provide consulting and financial advisory services with respect to the ISO's Market Redesign and Technology Upgrade ("MRTU") program. The MRTU is central to providing the framework for reliable operations of the California high-voltage power grid in the long run.

8. I also have experience providing restructuring services to companies encountering operational and financial difficulties. I served as Chief Restructuring Officer of Spheris Inc. in its complex bankruptcy matter and have served as an advisor on other complex bankruptcy matters, including, Mirant Corporation, SunEdison, Westinghouse, Dynegy, Enron, NRG Energy, Tropicana Entertainment New Enterprise Stone & Lime Co., Inc., Foresight Energy, Nobilis Health Corp., Neighbors Global Holdings, and Egalet Corporation. My out-of-court restructuring experience includes serving as a financial advisor on matters in the investment management, residential real estate, consumer products, professional services, and chemical manufacturing industries. Additionally, I have significant experience in mergers and acquisitions, post-merger integration, initial public offerings, and a wide range of financial and accounting issues for both publicly and privately held companies.

9. Prior to joining BRG, I was an Executive Director with Capstone Advisory Group, LLC, and a Managing Director at the Policano & Manzo legacy practice of FTI Consulting. Prior to my restructuring experience, I was Executive Vice President of a beverage manufacturer and

was Vice President - Business Development with a professional services provider. I have also worked for PricewaterhouseCoopers, BDO Seidman, and Touche Ross. I hold a B.S. in Accounting from the University of Arizona and am a Certified Public Accountant and a member of the American Institute of Certified Public Accountants.

10. The Additional Personnel who will work on this matter have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtor under the Proposed Order. The Additional Personnel will work closely with the Debtor's management and professionals throughout this Chapter 11 Case. By virtue of the expertise of its restructuring personnel, BRG is well qualified to provide services to and represent the Debtor's interests in this Chapter 11 Case.

**SERVICES TO BE PROVIDED**

11. As provided in the Engagement Letter, BRG has agreed that I will serve as the Debtor's CRO and will assist the Debtor in evaluating and implementing strategic and tactical options. In addition, BRG has agreed to provide the Additional Personnel to assist the CRO and perform financial advisory services for the Debtor. The BRG Professionals' rates, and other related information, is set forth in the Engagement Letter and summarized herein.

12. The Debtor has requested that the CRO and the Additional Personnel provide the following professional services as independent consultants ("Services"):

a) In consultation with management of the Company and subject to the approval of the Board of Directors of the Company, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders;

b) Oversee the activities of the Company in consultation with other advisors and the management team to effectuate the selected course of action;

c) Advise and assist the Company in preparing and analyzing cash flow (weekly and monthly) and financial projections related to liquidity and borrowing needs, including related budget to actual variance analysis;

d) Assist the Company with contingency planning and the assessment of strategic alternatives including a possible Chapter 11 filing;

e) Assist as requested by management in connection with the Company's development of its business plan, and such other related forecasts as may be required by creditor constituencies in connection with negotiations.

f) Assist with data collection and information gathering related third-party due diligence relating to potential transactions with financial and strategic buyers

g) Advice and assist the Company and other professionals retained by the Company in developing, negotiating and executing chapter 11 strategy, Section 363 sales or other potential sales of all or portion of the Company

h) Provide information deemed by the CRO to be reasonable and relevant to stakeholders and consult with key constituents, as necessary.

i) To the extent reasonably requested by the Company, offer testimony before the Bankruptcy Court with respect to the services provided by the CRO and the Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto.

j) If requested, assist in preparation of reports to the Board and the status of implementation of restructuring initiatives;

k) Render such other general business consulting or such other assistance as the management or its counsels may deem necessary, including expert testimony, that are consistent with the role of a financial advisor;

13. Such other services as mutually agreed upon by the CRO, Company's counsel, BRG and the Company. The services that BRG will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estates. The services provided by BRG will complement, and not duplicate, the services to be rendered by any other professional retained in this Chapter 11 Case. Further, the services will not duplicate the services that other professionals will be providing to the Debtor in this Chapter 11 Case.

**TERMS OF RETENTION**

14. BRG's decision to advise and assist the Debtor in connection with this Chapter 11 Case is conditioned upon its ability to be retained in accordance with BRG's customary terms and conditions of employment, including the compensation arrangement set forth in the Engagement

Letter (the "Fee and Expense Structure").

15. Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, BRG will seek payment for compensation for the services outlined in the Application, and reimbursement of actual and necessary expenses incurred by BRG, including legal fees, pursuant to the Fee and Expense Structure and the terms outlined in the Application. BRG's customary hourly rates, and fees as charged in bankruptcy and non-bankruptcy matters of this type, by the professionals assigned to this engagement, are referenced in the Application. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by BRG and other comparable firms that render similar services under similar circumstances.

16. Prior to the filing of the voluntary petition herein, BRG received cash on account ("Cash on Account") from the Debtor in the amount of $300,000.00. BRG applied an amount equal to $71,926.00 of such Cash on Account to its pre-petition fees and expenses incurred through April 20, 2021. The remainder of the Cash on Account ($228,074.00) is being held as a general retainer as security for postpetition services and expenses

17. The Debtor and BRG have agreed that any portion of the Cash on Account not used to compensate BRG for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final post-petition billing and will not be placed in a separate account. Upon the termination of BRG's engagement, BRG will return any unused portion of the Cash on Account to the Debtor.

18. No promises have been received by BRG, nor any employee or exclusive independent contractor thereof, as to payment or compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements

among the employees and exclusive independent contractors of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees or exclusive independent contractors has entered into an agreement or understanding to share compensation as described in Bankruptcy Rule 2016.

19. To the extent BRG uses the services of independent contractors (the "Contractors") in this Chapter 11 Case, BRG shall: (a) pass through the cost of such Contractors to the Debtor at the same rate that BRG pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

20. To the extent BRG requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

**BRG'S CONNECTIONS WITH THE DEBTOR AND PARTIES IN INTEREST**

21. In connection with the proposed employment and retention of BRG by the Debtor, BRG[3] undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor. BRG has undertaken this conflicts review on the basis of limited information provided and will make supplemental disclosure promptly following the receipt and conflicts review of additional information. Specifically, BRG obtained from the Debtor and/or its representatives the names of individuals and entities that may be parties in interest in this Chapter 11 Case (collectively, the "Potential Parties in Interest"). Such parties are listed on Schedule 1 attached to this Declaration.

[3] All disclosures herein pertaining to relationships with the Potential Parties in Interest or other elements of BRG's disinterestedness encompass both Berkeley Research Group, LLC and its affiliate, subsidiary, and parent entities

BRG's internal conflict check procedures consist of the querying of the Potential Parties in Interest within an internal computer database containing names of individuals and entities that are present or former clients of BRG. The database that BRG queries to determine its lack of conflicts and disinterestedness incorporates the names of individuals and entities that are present and former clients both of BRG and all of its affiliates, subsidiary, and parent entities. Additionally, new matters are circulated to all Directors and Managing Directors of BRG with a request to review and advise of any potential conflict of interest concerns. All responses are reviewed and addressed by an attorney on BRG's conflicts team.

22. Based on the results of its review, BRG does not have a relationship with any of the parties listed in Schedule 1 in matters related to these proceedings. As set forth in Schedule 2, BRG has relationships with certain parties in interest in this Chapter 11 Case, but such relationships are unrelated to either the Debtor or this Chapter 11 Case. To the best of my knowledge, no services have been provided to these parties-in-interest which involve their rights in the Debtor's case, nor does BRG's involvement in this case compromise its ability to continue such financial consulting services.

23. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry by myself or other BRG employees, other than disclosed herein, neither I, nor BRG, nor any members of the BRG engagement team, have any connection with the Debtor, its creditors, the United States Trustee for the Southern District of Florida, any United States Bankruptcy Judge for the Southern District of Florida, or any other party with an actual or potential interest in this Chapter 11 Case, or their respective attorneys or accountants, except as set forth below.

24. BRG is not employed by, and has not been employed by, any entity other than the

Debtor in matters related to this Chapter 11 Case, except as described herein.  In particular, prior to the Petition Date, BRG provided CRO and Additional Personnel services to the Debtor.

25.     Further, as part of its diverse practice, BRG appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in this Chapter 11 Case.  Also, BRG has performed, in the past, and may perform in the future, consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, BRG has in the past, may currently, and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this case.  Based on BRG's current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which BRG is to be employed, and none are in connection with this case.

26.     From time to time, BRG has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters wholly unrelated to this Chapter 11 Case.  As described herein, however, BRG has undertaken a detailed search to determine, and to disclose, whether it either is providing or has provided services to any significant creditor, equity security holder, insider, or other party-in-interest in such unrelated matters.

27.     From time to time, BRG may be asked to value and manage the liquidation of assets of investment funds.  Such investment funds could, from time to time, take positions in debt or equity of the Debtor, without BRG's knowledge or consent.  BRG has no pecuniary interest in such investment funds, nor will BRG profit from the value realized from the sale of their interests

in the Debtor. Under such circumstances, if BRG is providing valuation work on any debt or equity securities of the Debtor for any investment fund for the duration of this engagement, then the BRG employee undertaking such work will be restricted and have no access to the confidential information of the Debtor. Moreover, to the extent any employee of BRG is utilized by the Debtor for valuation expertise (and, accordingly, given access to confidential information of the Debtor), for the duration of this engagement, that employee will not perform any valuation work on any debt or equity securities of the Debtor for any investment fund.

28. To the best of my knowledge, BRG is not a "creditor" of the Debtor within the meaning of section 101(1) of the Bankruptcy Code. Further, neither BRG, nor any of the BRG Professionals, is a holder of any of the Debtor's outstanding debt, equity, or preferred stock investments. As a result, I believe BRG is disinterested.

29. To the extent that BRG discovers any additional facts or information bearing on matters described in this Declaration that require disclosure, during the period of the Debtor's retention of BRG, I will file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.

30. This concludes my declaration.

**28 U.S.C. § 1746 Declaration**

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 22nd day of April, 2021.

*/s/ Bob Butler*
BOB BUTLER, Managing Director
Berkeley Research Group, LLC and
Chief Restructuring Officer for the Debtor

# Schedule 1

## List of Potential Parties in Interest

**Debtor**
Liberty Power Holdings LLC

**Debtor Affiliates**
Liberty Power Corp.
Liberty Power Maine LLC
Liberty Power Pennsylvania LLC
Liberty Power New Hampshire LLC
Liberty Power New Jersey LLC
Liberty Power California LLP
Liberty Power Virginia LLC
Liberty Power Texas LLC
Liberty Power Ohio LLC
Liberty Power Oregon LLC
Liberty Power Connecticut
Liberty Power Rhode Island LLC
Liberty Power Massachusetts LLC
Liberty Power Arizona LLC
Liberty Power Montana LLC
Liberty Power Michigan LLC
Liberty Power Super Holdings LLC

**Shareholders**
David Hernandez

**Lenders**
David Hernandez
Shell

**Schedule 2**

**List of parties-in-interest, or affiliates thereof, that currently or formerly engage(d) BRG, sorted by their relationship to the Debtor, that are unrelated to these Cases**

**Lenders**
Shell

**EXHIBIT "B"**

**(ENGAGEMENT LETTER)**

 INTELLIGENCE THAT WORKS

**CONFIDENTIAL**

April 16, 2021

Via Email

Liberty Power Holdings, LLC
2100 W. Cypress Creek Rd.
Suite 130
Fort Lauderdale, FL 33309
Attention: Victoria Dusch, Chief Financial Officer
Louis Martinsen, Temporary Resolution Officer

**Re: Liberty Power – Interim Management Services**

To Whom it May Concern:

This letter confirms the engagement of Bob Butler of Berkeley Research Group, LLC ("BRG") as Chief Restructuring Officer ("CRO") for Liberty Power Holdings, LLC (collectively with its designated affiliates, the "Company"). The CRO's engagement team will include professional staff from BRG (the "Additional Personnel"). This letter and any attachments set forth the agreement ("Agreement") between the parties.

**SCOPE OF SERVICES**

a) The Company has requested that the CRO and Additional Personnel provide the following professional services as independent consultants ("Services"):

b) In consultation with management of the Company and subject to the approval of the Board of Directors of the Company, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders.

c) Oversee the activities of the Company in consultation with other advisors and the management team to effectuate the selected course of action.

d) Advise and assist the Company in preparing and analyzing cash flow (weekly and monthly) and financial projections related to liquidity and borrowing needs, including related budget to actual variance analysis;

e) Assist the Company with contingency planning and the assessment of strategic alternatives including a possible Chapter 11 filing;

f) Assist as requested by management in connection with the Company's development of its business plan, and such other related forecasts as may be required by creditor constituencies in connection with negotiations.

 g) Assist with data collection and information gathering related third-party due diligence relating to potential transactions with financial and strategic buyers

h) Advise and assist the Company and other professionals retained by the Company in developing, negotiating and executing chapter 11 strategy, Section 363 sales or other potential sales of all or portion of the Company

i) Provide information deemed by the CRO to be reasonable and relevant to stakeholders and consult with key constituents, as necessary.

j) To the extent reasonably requested by the Company, offer testimony before the Bankruptcy Court with respect to the services provided by the CRO and the Additional Personnel, and participate in depositions, including by providing deposition testimony, related thereto.

k) If requested, assist in preparation of reports to the Board and the status of implementation of restructuring initiatives;

l) Render such other general business consulting or such other assistance as the management or its counsels may deem necessary, including expert testimony, that are consistent with the role of a financial advisor;

m) Such other services as mutually agreed upon by the CRO, Company's counsel, BRG and the Company.

The Company agrees that (i) Mr. Butler will provide Services as CRO as required, and (ii) the CRO may retain as consultants on behalf of the Company other members or employees of BRG. The Company agrees that the CRO will continue as an employee of BRG and may continue to provide his services to other companies during the term of this Agreement. The Company acknowledges that since the CRO is an employee of BRG, BRG must release the CRO from his full-time obligations to BRG in order for the CRO to perform Services hereunder, and therefore to compensate BRG for the loss of full-time access to the CRO or any Additional Personnel providing Services hereunder, all payments for the time charges of the CRO or Additional Personnel providing Services hereunder to Company shall be made to BRG.

The CRO and Additional Personnel who provide Services to the Company under this Agreement are independent contractors and are not and will not be deemed to be employees of the Company.

**COMPANY RESPONSIBILITIES**

The Company will undertake responsibilities to (a) provide reliable and accurate detailed information, materials, and documentation and (b) make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by the CRO in connection with this Agreement. BRG's delivery of services and the fees charged are dependent on the Company's timely and effective completion of its responsibilities and timely decisions and approvals made by the Company's management.



In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of the CRO and BRG under the terms of this Agreement. The form of retention application and proposed order shall be reasonably acceptable to BRG. BRG shall have no obligation to provide any further Services if the Company becomes a debtor under the Bankruptcy Code unless BRG's retention under the terms of this Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to BRG. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to BRG's fee and expense applications. The CRO and BRG reserve the right to request approval of additional compensation in circumstances where extraordinary results may warrant such additional compensation.

**CONFIDENTIALITY**

BRG shall not disclose any confidential or privileged information to any third party; provided, however, that BRG may disclose confidential or privileged information (a) to BRG's employees, affiliates, vendors or agents who provide Services in connection with this engagement, (b) with Client's written consent, or (c) when legally required to do so. Both parties agree that confidential and proprietary information will not be construed to include information that is available from public sources or sources not subject to obligations of confidentiality to Client. Work papers associated with BRG's consulting Services are the confidential property of BRG.

**FEES AND EXPENSES**

The CRO's professional fees, and fees for the Additional Personnel, will be based on the actual hours charged at BRG's standard hourly rates which are in effect when the Services are rendered ("Professional Fees"). Hourly rates may change in the future from time to time and are typically adjusted annually. BRG's current hourly rates are as follows:

| | |
|---|---|
| Managing Director | $860 - $1,150 |
| Director | $600 - $895 |
| Professional Staff | $250 - $770 |
| Support Staff | $125 - $275 |

In addition to Professional Fees, BRG will be reimbursed for direct out-of-pocket expenses including, but not limited to, travel, costs of reproduction, typing, research, communications, computer usage, legal counsel, any applicable sales or excise taxes, and other direct expenses.

The Company and BRG acknowledge and agree that a success fee is a customary and integral component of compensation in engagements of this type, and that the terms and conditions of such an arrangement will be negotiated promptly and in good faith.

We will send the Company invoices periodically, typically monthly, for services rendered and charges and disbursements incurred, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. In some cases, invoices can be sent more regularly. Our invoices are due upon receipt.



Without liability, BRG reserves the right to withhold delivery of Services, testimony, reports or data (written or oral), or suspend work, if the account on this engagement is not current. A late payment charge of one percent (1%) per month (or the maximum rate permitted by law, whichever is less) may be added to any outstanding invoices that are past due.

Please remit payments by wire to:
Account Name: Berkeley Research Group, LLC
Account No: 8026286672
Bank: PNC Bank, N.A.
ABA No: 031207607
remitadvice@thinkbrg.com

**CASH ON ACCOUNT**

Initially, the Company will forward to BRG the amount of $300,000, which funds will be held "on account" to be applied to BRG's Professional Fees, charges and disbursements for the engagement (the "Initial Cash on Account"). To the extent that this amount exceeds BRG's fees, charges and disbursements upon the completion of the engagement, BRG will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the engagement in such amounts as the Company and BRG mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Professional Fees, charges, and disbursements to be incurred.

Upon transmittal of an invoice, BRG may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to BRG as replenishment of the Initial Cash on Account (together with any supplemental amount to which BRG and the Company mutually agree), without prejudice to the Company's right to advise BRG of any differences it may have with respect to such invoice. BRG has the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review BRG's invoices.

**INDEMNIFICATION AND LIMITATION OF LIABILITY**

The Company shall indemnify, hold harmless and defend the CRO, Additional Personnel, and BRG and its affiliates partners, directors, officers, employees and agents (collectively, the "BRG Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of the CRO and BRG that is the subject of this Agreement. The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.

In addition to the above indemnification and advancement, any BRG employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise.



The Company shall specifically include and cover the CRO and any other employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O insurance"). The Company has specifically authorized the CRO to procure such D&O insurance. Upon the Company obtaining such insurance, prior to accepting any officer position other than the CRO, the Company shall, at the request of BRG, provide BRG a copy of Company's current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other documents as BRG may reasonably request evidencing the appointment and coverage of the indemnitees. Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. In the event that the Company is unable to include BRG employees and agents under the Company's policy or does not have first dollar coverage acceptable to BRG in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), BRG may, at its option, attempt to purchase a separate D&O insurance policy that will cover BRG employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If BRG is unable or unwilling to purchase such D&O insurance, then BRG reserves the right to terminate the Agreement.

Notwithstanding any other provision in this Agreement to the contrary, the Company's indemnification and advancement obligations shall be primary to (and without allocation against) any similar indemnification and advancement obligations of BRG, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by BRG or otherwise).

IN NO EVENT SHALL THE COMPANY, THE CRO, ADDITIONAL PERSONNEL, BRG OR BRG PERSONNEL WHO SERVE AS OFFICERS OF THE COMPANY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE CRO AND BRG SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE BAD FAITH, SELF-DEALING, OR INTENTIONAL MISCONDUCT OF BRG. BRG'S AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO BRG FOR SERVICES UNDER THIS AGREEMENT (THE "LIABILITY CAP"). THE LIABILITY CAP IS THE TOTAL LIMIT OF BRG'S AGGREGATE LIABILITY FOR ANY AND ALL CLAIMS OR DEMANDS BY ANYONE PURSUANT TO THIS AGREEMENT, INCLUDING LIABILITY TO THE COMPANY, TO ANY OTHER PARTIES HERETO, AND TO ANY OTHERS MAKING CLAIMS RELATING TO THE WORK PERFORMED BY BRG PURSUANT TO THIS AGREEMENT. ANY SUCH CLAIMANTS SHALL ALLOCATE ANY AMOUNTS PAYABLE BY BRG AMONG THEMSELVES AS APPROPRIATE, BUT IF THEY CANNOT AGREE ON THE ALLOCATION IT WILL NOT



AFFECT THE ENFORCEABILITY OF THE LIABILITY CAP. UNDER NO CIRCUMSTANCES SHALL THE AGGREGATE OF ALL SUCH ALLOCATIONS OR OTHER CLAIMS AGAINST BRG PURSUANT TO THIS AGREEMENT EXCEED THE LIABILITY CAP.

**CONFLICTS OF INTEREST**

BRG is engaged by many other companies and individuals. It is possible that some of BRG's past, current or future clients had, have or may have disputes or other matters that are adverse to or may not be consistent with the interests of Client. BRG reserves the right to undertake unrelated adverse engagements during and after this engagement by Client, consistent with BRG's internal policies. BRG will not be required to disclose any such unrelated adverse engagements to Client. BRG will institute procedures to protect the confidentiality of information provided by Client in the course of this engagement.

**OTHER TERMS**

The Company agrees that if any members or employees of BRG are required to testify at any administrative or judicial proceeding relating to this engagement, whether during or after the term, the CRO and BRG will be compensated by the Company for associated time charges at the regular hourly rates for such personnel, in effect at the time, and reimbursed for reasonable out-of-pocket expenses, including counsel fees and expenses.

The interpretation and application of the terms of this Agreement shall be governed and construed in accordance with the laws of the state of Delaware. The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in any litigation brought in connection with this Agreement, as well as reasonable attorneys' fees and costs incurred in appealing or in connection with any action to enforce any judgment entered in any court having jurisdiction.

The waiver by any party and the breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, legal representatives, executors, administrators and heirs. The parties may not assign this Agreement or any rights or obligations hereunder to any party without the prior written consent of the other parties. Each of the provisions of this Agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof. No amendment or modification of this Agreement shall be effective unless in writing and signed by both parties hereto.

The Company warrants that it has all necessary right, power and authority to enter into and perform this Agreement and that the execution, delivery and performance by the Company of this Agreement will not, with or without the giving of notice or the passage of time or both, (a) violate the provisions of any law, rule or regulation applicable to the Company, (b) violate any judgment, decree, order or award of any court, governmental body or arbitrator applicable to the Company or (c) conflict with or violate any agreement to which the Company is a party or by which it is bound.



* * * *

We look forward to working with you on this matter. Please sign and return a copy of this agreement signifying your agreement with the terms and provisions herein.

Sincerely,

Christopher Kearns
Managing Director
Berkeley Research Group, LLC

By________________________ Dated 4/16/21
Christopher Kearns
Managing Director

AGREED AND ACCEPTED:

Liberty Power Holdings, LLC

By________________________ Dated 4/16/21
Louis Martinsen
Temporary Resolution Officer

**EXHIBIT "C"**

**(PROPOSED INTERIM ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flmb.uscourts.gov**

**In re:** **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,** **Case No. 21-13797-PDR**

**Debtor.**
**______________________________/**

**INTERIM ORDER APPROVING DEBTOR'S EXPEDITED MOTION, PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE, FOR AUTHORIZATION TO EMPLOY AND RETAIN BERKELEY RESEARCH GROUP, LLC TO PROVIDE BOB BUTLER AS CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL FOR THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

**THIS MATTER** came before the Court on April __, 2021 at _:00 p.m. upon the *Debtor's Expedited Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authorization to Employ and Retain Berkeley Research Group, LLC to Provide Bob Butler as Chief Restructuring Officer and Additional Personnel for the Debtor Effective as of the Petition Date* (the "Motion") [ECF No. ____] filed by Liberty Power Holdings, LLC (the "Debtor"). The Motion seeks entry of an order authorizing the retention of Berkeley Research Group, LLC ("BRG") to provide Bob Butler as the Debtor's chief restructuring officer (the "CRO") and provide additional staff (the "Additional Personnel" and, together

with the CRO, the "BRG Professionals") to support the CRO in the exercise of his duties in this Chapter 11 case, effective as of the Petition Date, and upon the terms and conditions set forth in the Engagement Letter attached as Exhibit "B" to the Motion. Upon the Motion,[1] the Butler Declaration attached as Exhibit "A" to the Motion; and it appearing that neither BRG nor Mr. Butler holds nor represents any interest adverse to the Debtor's estate; and this Court having jurisdiction to consider the Motion and the relief requested herein pursuant to 28 U.S.C §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceedings pursuant to 28 U.S.C § 157(b); and venue being proper before this Court pursuant 28 U.S.C §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other and further notice is necessary; and the relief requested in the Motion being in the best interest of the Debtor, the estate and creditors; and this Court having reviewed the Motion and having heard the arguments in support of the relief requested therein at the hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief approved herein; and upon all of the proceedings had before this Court and after due deliberation thereon; and good and sufficient cause appearing , it is

**ORDERED** that:

1. The Motion is **GRANTED** on an interim basis.

2. The Debtor is authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b), effective as of the Petition Date, to employ BRG and the BRG Professionals to provide services in accordance with and upon the terms and conditions contained in the Engagement Letter, as modified herein, effective as of the Petition Date.

3. Pursuant to the Motion, the Engagement Letter and this Order, Bob Butler shall have the

1 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

full authority to act for and on behalf of the Debtor in all aspects of the Debtor's business and its assets, and any and all creditors, parties in interest and/or other persons or entities with notice of this Order shall be authorized to deal with the Debtor through Mr. Butler as the Debtor's chief restructuring officer.

4. BRG shall be compensated on the terms and conditions set forth in the Engagement Letter and the Motion.

5. BRG shall file with the Court and serve by email or first class mail on: (i) the U.S. Trustee, (ii) Eversheds Sutherland (US) LLP as Counsel to Boston Energy Trading & Marketing LLC; and (iii) counsel to any official committee appointed in this Chapter 11 Case, a Staffing Report by the last day of each month for the previous month, which shall include the names and functions filled by BRG Professionals assigned to the engagement as well as compensation earned and expenses incurred for the relevant period. Each Staffing Report shall contain summary charts which describe the services provided, including the number of hours worked by category, identify the compensation earned by each BRG Professional, and itemize the expenses incurred. Time records shall (i) be appended to the Staffing Report, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in tenths of an hour (0.1). All compensation shall be subject to review by the Court in the event an objection is filed. BRG's first Staffing Report shall be filed by May 31, 2021 for the month of April 2021. For the avoidance of doubt, the Debtor submits that Mr. Butler and the BRG Professionals are not, and shall not, be required to comply with Local Rule 2016-1.

6. Objections or responses to the Staffing Reports shall be filed and served within 14 days of filing of the report.

7. BRG shall follow the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding limitations on reimbursement of expenses.

8. The CRO and BRG and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned case.

9. In the event the Debtor seeks to have BRG Professionals assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of executive officers, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

10. No principal, employee, or independent contractor of BRG and its affiliates shall serve as a director of the Debtor during the pendency of the case.

11. For a period of three years after the conclusion of the engagement, neither the CRO, BRG nor any of its affiliates shall make any investments in the Debtor or the Reorganized Debtor.

12. BRG shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

13. The Debtor shall indemnify, hold harmless and defend the CRO, Additional Personnel, and BRG and its affiliates partners, directors, officers, employees and agents (collectively, the "BRG Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of the CRO and BRG that is the subject of the Engagement Letter provided however that the Debtor shall not have any liability or obligations for claims, liabilities, expenses, damages, or costs resulting from claims that are determine by the Court to have resulted from bad faith, gross negligence, self-dealing, will misconduct or violations of law by the CRO, or partners,

members, or employees of BRG.

14. The Debtor shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. In addition to the above indemnification and advancement, any BRG employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Debtor to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise.

15. To the extent that there may be inconsistency between the terms of the Motion the Engagement Letter, the Butler Declaration, or this Interim Order, the terms of this Interim Order shall govern.

16. Entry of this Interim Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Motion, and any such objection will be considered on a de novo basis at the Final Hearing.

17. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

18. The Court shall conduct a final hearing (the "Final Hearing") on the Application on ___________, 2021 at __:00 p.m., prevailing Eastern Time, at the United States Bankruptcy Court for the Southern District of Florida, via Zoom appearance. Any party in interest objecting to the relief sought in the Application shall serve and file written objections which objections shall be served upon (a) the Debtor, (b) BRG, (c) the Office of the United States Trustee for the Southern District of Florida, (d) the entities listed on the Master Service List filed pursuant to Local Rule 1007-2, and (e) counsel to any Official Committee of Unsecured Creditors, to the extent one is appointed prior to the final hearing (collectively, the "Notice Parties"), and shall be filed with the Clerk of the United States Bankruptcy

Court for the Southern District of Florida, to allow actual receipt by the foregoing Notice Parties by no later than 4:30 p.m., prevailing Eastern Time, two (2) business days prior to the Final Hearing.

19. Notice will be provided to all parties by mailing a copy of this Interim Order setting the Final Hearing.

20. In the event the Application is not approved on a final basis, BRG shall be authorized to submit a fee application with this Court for compensation for services rendered in the period between the Petition Date and the Final Hearing. Any party in interest may object to the fee application; provided, however, that such party shall file such objection with this Court and serve a copy of the objection upon the Notice Parties.

21. The Debtor is authorized and empowered to take all actions necessary to implement the relief approved in this Interim Order.

22. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Interim Order.

###

**Copies to:**
Paul J. Battista, Esq.
Attorney Battista is directed to serve copies of this Order on all parties in interest and file a proof of service within 3 days of entry of the order.