**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                                              **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,**                          **Case No. 21-13797-PDR**

      **Debtor.**

_____/

**NOTICE OF FILING**

      **LIBERTY POWER HOLDINGS, LLC** (the "Debtor" or "Holdings"), by and through

undersigned counsel hereby files the Second Amended and Restated Management Services

Agreement dated July 6, 2020 attached hereto as Exhibit "A".

                                Respectfully Submitted,

                                **GENOVESE JOBLOVE & BATTISTA, P.A.**
                                *Proposed Attorneys for Debtors-in-Possession*
                                100 Southeast Second Street, Suite 4400
                                Miami, Florida 33131
                                Telephone: (305) 349-2300
                                Facsimile: (305) 349-2310

                              By:   /s/    *Mariaelena Gayo-Guitian*
                                    Paul J. Battista, Esq.
                                    Florida Bar No. 884162
                                    pbattista@gjb-law.com
                                    Mariaelena Gayo-Guitian, Esq.
                                    Florida Bar No. 813818
                                    mguitian@gjb-law.com
                                    Heather L. Harmon
                                    Florida Bar No. 13192
                                    hharmon@gjb-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a copy of the foregoing Notice was served via electronic mail and CM/ECF Notification upon all interested parties registered to receive electronic notification and/or via U.S. Mail or e-mail as indicated on the Service List below on the 22nd day of April, 2021.

## SERVICE LIST

***Served Via CM/ECF Notification***

Scott Andron on behalf of Creditor Broward County
sandron@broward.org, swulfekuhle@broward.org

Paul J. Battista, Esq on behalf of Debtor Liberty Power Holdings, LLC
pbattista@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;jzamora@gjb-law.com;gjbecf@ecf.courtdrive.com;vlambdin@gjb-law.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

**Served via U.S. Mail/E-Mail upon:**

Victoria Dusch, Chief Financial Officer vdusch@libertypowercorp.com
David Hernandez, Chief Executive Officer - dhernandez@libertypowercorp.com
Alberto Daire past president adaire@libertypowercorp.com
Derik Viner, President  dviner@libertypowercorp.com
Marty Halpern  - Manager - United TranzActions mhalpern@unitedtranzactions.com
Stephen Gray -  Independent  Director ssg@grayandcompanyllc.com
Stephen Gibelli, General In house counsel  sgibelli@libertypowercorp.com
Breton Leone-Quick, Esq BLeone-Quick@mintz.com
Audrey Louison, Esq  ALouison@mintz.com

# **<u>EXHIBIT A</u>**

Execution Copy

# SECOND AMENDED AND RESTATED

# MANAGEMENT SERVICES AGREEMENT

This Second Amended and Restated Management Services Agreement is made as of July 6, 2020 ("Agreement"), by and among Liberty Power Corp, L.L.C., a Delaware limited liability company ("Parent") and Liberty Power Holdings LLC, a Delaware limited liability company ("Holdings"). Parent and Holdings are sometimes referred to in this Agreement individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, the Parties entered into that certain Management Services Agreement, dated as of August 8, 2006, as amended by First Amendment to Management Services Agreement, dated January 27, 2009, and as further amended by Amended and Restated Management Services Agreement, dated January 27, 2014 (collectively, the "Original MSA");

WHEREAS, Holdings is a special purpose, wholly-owned, downstream subsidiary of Parent;

WHEREAS, Holdings is the holder of 100% of the membership interests in each of LPT, LLC, a Delaware limited liability company (authorized to do business in Texas as LPT SP, LLC) ("LPT"), Liberty Power Maryland LLC, a Delaware limited liability company ("LPMD") and Liberty Power District of Columbia LLC, a Delaware limited liability company ("LPDC") (the "OpCos");

WHEREAS, Holdings is a party to (i) that certain Supply and Services Agreement, dated as of July 6, 2020 (the "Supply Agreement"), by and among Boston Energy Trading and Marketing LLC ("BETM") and Holdings and (ii) that certain Pledge and Security Agreement, dated as of July 6, 2020 (the "Security Agreement"), by and among BETM, Holdings, Liberty Power Super Holdings LLC, LPT, LPMD and LPDC;

WHEREAS, each of the OpCos are engaged in the business of marketing and selling electricity and related energy products to commercial and/or industrial customers in the States of Texas and Maryland, and in the District of Columbia, respectively, as retail energy providers; and

WHEREAS, the Parties now desire to amend and restate the Original MSA in its entirety, upon the terms and conditions set forth in this Agreement and to obtain from Parent certain management and administrative services, including without limitation those services identified on the attached Schedule A (collectively, the "Management Services"), which Holdings intends to provide in turn to each of the OpCos pursuant to a separate Subsidiary Services Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, representations and warranties set forth in this Agreement, the Parties do hereby state and agree as follows:

# AGREEMENT

1.    <u>Provision of Management Services</u>.  On and subject to the terms, conditions, covenants and agreements herein, Parent hereby agrees to provide the Management Services to Holdings during the Term of this Agreement.

2.    <u>Term</u>.

    2.1    <u>Term</u>.  The term of this Agreement shall be perpetual (the "<u>Term</u>").

    2.2    <u>Termination for Breach</u>.  If, during the Term of this Agreement, Holdings fails to observe any covenant or condition of this Agreement, including without limitation failing to make a payment as directed by Parent, and such failure continues for fifteen (15) business days after written notice of such failure is received by Holdings, then Parent may terminate this Agreement by providing written notice to Holdings and BETM in accordance with <u>Section 2.3</u>. If during the Term of this Agreement, Parent fails to observe any covenant or condition of this Agreement and such failure continues for fifteen (15) business days after written notice of such failure is received by Parent, then Holdings may terminate this Agreement by providing written notice to Parent and BETM in accordance with <u>Section 2.3</u>.

    2.3    <u>Notice of Termination</u>.  Any notice of termination provided by Parent to Holdings or BETM, or provided by Holdings to Parent or BETM, pursuant to <u>Section 2.2</u> hereof must be in writing and must state the date upon which the Agreement will terminate, which date must be not less than 45 days after the written notice is provided by the terminating Party.

3.    <u>Payments for Services</u>.

    3.1    <u>Amount</u>.  Holdings shall pay to Parent on a monthly basis in arrears an amount equal to the actual expenses incurred by Parent in providing the Management Services during the prior month. Except as set forth in <u>Section 3.3</u> below, each payment shall be paid within five (5) business days after Parent requests the payment from Holdings and provides sufficient detail as may be reasonably requested by Holdings to determine the basis for the requested payment; <u>provided</u> that Parent and Holdings acknowledge that such payments by Holdings to Parent shall be made as permitted and in accordance with the priority set forth in <u>Section 6.3</u> of the Supply Agreement.

    3.2    <u>Records</u>.  Parent shall at all times during the Term of this Agreement keep true and accurate records for each calendar month of all costs and expenses related to the Management Services provided to Holdings in such form and manner that all amounts payable to Parent under <u>Section 3.1</u> may be readily and accurately determined.

    3.3    <u>Advanced Funding of Obligations</u>.  As and when necessary, Parent may request in writing a payment (a "<u>Funding Request</u>") from Holdings specifying the amount of such payment and providing sufficient detail as may be reasonably requested by Holdings to determine the basis for such payment. The amount of each Funding Request shall equal (a) 100% of the reasonable estimate of the amount that Parent is required to make on account of the Management Services to be provided to Holdings, as determined in a commercially reasonable manner by Parent, or (b) such other amount as is agreed upon by Parent and Holdings. Each Funding Request

2

shall be paid to Parent on the business day following the day on which the Funding Request was made.

        3.4    <u>Reconciliation</u>.  No later than thirty (30) days after the end of the Term of this Agreement, Parent and Holdings shall reconcile the payments made by Holdings with the actual expenses incurred by Parent for the Management Services received by Holdings during the Term of this Agreement. Any amounts owed by Holdings to Parent for Management Services provided by Parent, or any amounts owed by Parent to Holdings as a result of an over-payment, shall be paid within five (5) business days after the conclusion of such reconciliation or at such other time as may be agreed to by Parent and Holdings.

        4.    <u>Parent's Representations, Warranties and Covenants</u>.  As an inducement to Holdings to enter into this Agreement, Parent covenants that Parent will comply in all material respects with all applicable federal, state and local laws, rules, regulations and ordinances applicable to Management Services to be provided pursuant to this Agreement.

        5.    <u>Holdings' Representations, Warranties and Covenants</u>.  As an inducement to Parent to enter into this Agreement, Holdings covenants that it will comply in all material respects with all applicable federal, state and local laws, rules, regulations and ordinances applicable to the Management Services provided by Parent to Holdings.

        6.    <u>Miscellaneous</u>.

        6.1    <u>Applicable Law Construction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof, and, to the extent applicable, the federal laws of the United States of America. The Parties acknowledge and agree that they have been represented by counsel and that each of the Parties has participated in the drafting of this Agreement. Accordingly, it is the intention and agreement of the Parties that the language, terms and conditions of this Agreement are not to be construed in any way against or in favor of any Party hereto by reason of the responsibilities in connection with the preparation of this Agreement.

        6.2    <u>Rights And Duties On Termination</u>.  Upon termination of this Agreement, each Party shall in good faith assist and cooperate with the other Party to facilitate the transfer or performance of the services to Holdings or to any third party designated by Holdings. Parent agrees to provide Holdings (or its designee) originals or copies of all books and records pertaining to Holdings and the services received by Holdings up to and including the date of such termination of this Agreement; provided, that any such designee has agreed to enter into a confidentiality agreement with respect to such books and records acceptable to both Holdings and Parent.

        6.3    <u>Remedies Cumulative</u>.  Except as herein expressly provided, the remedies provided herein are cumulative and do not preclude the assertion by any Party of any other rights it may have or the seeking of any other remedies against the other Party.

        6.4    <u>Amendment and Restatement</u>.  This Agreement amends and restates the Original MSA in its entirety, effective as of the date of this Agreement. Upon execution and

delivery of this Agreement by the Parties, the Original MSA shall be null and void and of no further effect.

6.5    Amendments.    At any time this Agreement may be amended or supplemented by an instrument containing such additional agreements or provisions as the Parties determine to be necessary, desirable or expedient to further the purposes of this Agreement, to modify the provisions hereof or for such other reasons as the Parties may determine. Any such instrument must be in writing and must be signed by Parent and Holdings.

6.6    Entire Agreement.    This Agreement sets forth the entire agreement and understanding of the Parties with respect to the transactions contemplated hereby and supersede any prior discussions, agreements and understandings relating to the subject matter hereof.

6.7    Assignment.    Neither Parent nor Holdings may assign, transfer or otherwise convey their respective interests in this Agreement, or any part thereof, during the Term without the other Party's prior written consent.

6.8    Binding Effect.    This Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns.

6.9    Waiver.    No failure on the part of any Party hereto to exercise, and no delay in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy by any such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. No express waiver or assent by any Party hereto to any breach of or default in any term or condition of this Agreement shall constitute a waiver of or an assent to any succeeding breach of or default in the same or any other term or condition hereof.

6.10    Sections, Headings.    Unless otherwise stated, all reference herein to sections are to articles and sections of this Agreement. The article and section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation hereof.

6.11    Severability.    All rights and restrictions contained in this Agreement may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement illegal, invalid or unenforceable. If any term of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the Parties that the remaining terms hereof shall constitute their agreement with respect to the subject matter hereof, and all of such remaining terms shall remain in full force and effect.

6.12    Counterparts.    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall be considered one and the same instrument.

6.13    Non-Petition.    Notwithstanding any other provision of this Agreement, the Parent covenants and agrees that it shall not, prior to the date which is one year and one day (or, if longer, any applicable preference period plus one day) after the payment in full of the obligations

under the Supply Agreement and Security Agreement, institute against, or join any other person in instituting against, Holdings any bankruptcy, reorganization, arrangement, insolvency or liquidation proceeding, or any similar proceeding under any federal or state bankruptcy or similar law; provided, that nothing in this provision shall preclude, or be deemed to stop, the Parent from taking any action prior to the expiration of the aforementioned one year and one day period in (i) any case or proceeding voluntarily filed or commenced by Holdings or (ii) any involuntary insolvency proceeding filed or commenced against Holdings by a person other than the Parent. The provisions of this <u>Section 6.13</u> shall survive the termination of this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by a duly authorized officer of each Party hereto as of the date first above written,

**LIBERTY POWER CORP., L.L.C.**

By: _____
Name:    David Hernandez
Title:     Member

**LIBERTY POWER HOLDINGS LLC**

By:    Liberty Power Super Holdings LLC, its sole
        manager

By: _____
Name:    David Hernandez
Title:     Chief Executive Officer

*Signature Page to Management Services Agreement*

Execution Copy

## SCHEDULE A
## MANAGEMENT SERVICES

1.    **Sales**.  Dedicated National/Key account sales personnel as well as external, third party sales channels are functions performed by Parent for the benefit of all subsidiaries.

2.    **Marketing**.  Promotional campaigns to include print and other media. Participation in trade shows, industry events and forums. Design, production and development of collateral sales materials such as brochures and Master Customer Contracts.

3.    **Energy Operations**.  Development and analysis of market data, customer load profiles, products and risk analysis. Risk pricing of customer products.

4.    **Supplier Relations**.  Development of energy hedge supplier and financial counterparty relationships. Execution of hedging strategy commensurate with energy operations pricing and products.

5.    **Regulatory Affairs**.  Cultivate and maintain regulatory relationships with Public Service Commissions, Independent System Operators, national and state bodies to ensure regulatory compliance and legislative monitoring.

6.    **Customer Care Operations**.  Manage higher echelon customer care calls. Ensure business continuity. Perform customer portfolio analysis and monitoring to include retention.

7.    **Information Technology**.  Evaluation, purchasing and installation of company-wide operational systems, business unit level software and hardware. On-going systems support and training.

8.    **Finance and Accounting**.  Financial accounting, budgeting, payments to/from customers, outside service providers and vendors. Financial forecasting, modeling and business unit projections.

9.    **Human Resources**.  Personnel screening, hiring, training, evaluation and, when required, termination. Liaison between managed services that are outsourced and Liberty employees.

10.    **Other**.  Administrative and any other shared services such as project or general consultants, administrative assistants, travel, lodging, event planning, etc.