**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                          Chapter 11 Case

**LIBERTY POWER HOLDINGS, LLC,**          Case No. 21-13797-SMG

     Debtor.
_____/

**DEBTOR'S *EXPEDITED* MOTION FOR THE ENTRY OF AN ORDER (1)**
**APPROVING COMPETITIVE BIDDING PROCEDURES FOR THE SALE OF**
**SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (2) SCHEDULING DATES TO**
**CONDUCT AUCTION AND SALE HEARING, (3) APPROVING THE FORM AND**
**MANNER OF NOTICES, (4) APPROVING THE SALE OF SUBSTANTIALLY ALL OF**
**THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,**
**ENCUMBRANCES AND INTERESTS, (5) APPROVING ASSUMPTION AND**
**ASSIGNMENT PROCEDURES FOR EXECUTORY CONTRACTS,**
**AND (6) GRANTING RELATED RELIEF**

**(Expedited Hearing Requested for May 24, 2021 at 11:00 a.m.)**

**Statement of Exigent Circumstances**

The Debtor requests that the Court conduct an expedited hearing on this Motion on May 24, 2021 at 11:00 a.m. Pursuant to the requirements of the Interim DIP Financing Order (defined below), the Debtor is required to commence a marketing and sale process for substantially all of its assets by filing this Motion on May 18, 2021 and obtaining an Order from the Court approving competitive bidding procedures on or before June 4, 2021. To that end, the Debtor has developed a set of competitive bidding and sale procedures in consultation with its senior secured creditor, BETM (as defined below), and, through this Motion, seeks the approval thereof.

     **LIBERTY POWER HOLDINGS, LLC** (the "Debtor"), by and through its undersigned

counsel, files this Motion pursuant to 11 U.S.C. §§105, 363 and 365 and Fed. R. Bankr. P. 2002,

6004, 6006 and 9014, and Local Rule 6004-1(B) for the entry of an Order (the "Bid Procedures

Order"), in substantially the form attached hereto as **Exhibit "A"**: (1) approving the competitive

bidding procedures for the sale of substantially all of Debtor's assets attached as **Exhibit "1,"** to

the Bid Procedures Order, (2) scheduling dates to conduct auction and sale hearing, (3) approving the form and manner of notices, including the Sale Notice attached as **Exhibit "2"** to the Bid Procedures Order and the Cure Notice attached as **Exhibit "3"** to the Bid Procedures Order, (4) approving the sale of substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances and interests, (5) approving procedures for the assumption and assignment of executory contracts and unexpired leases, and (6) granting related relief  (the "Motion").   In support thereof, the Debtor respectfully states as follows:

### Disclosures Under Bankruptcy Rules, Local Rules and Guidelines

Pursuant to Local Rule 6004-1(B), the Debtor submits the following summary of the material terms of the proposed sale.

| Material Provisions | Summary Description |
|---|---|
| Purchaser | The ultimate purchaser of the Debtor's Assets is unknown at this time.  The Debtor and its advisors will market the Debtor's Assets for sale and will seek to procure Qualified Bids. The Debtor reserves the right to enter into a Stalking Horse Purchase Agreement as discussed below. |
| Competitive Bidding | The proposed sale of the Debtor's Assets is subject to the receipt of one or more Qualified Bids, and, if applicable, the conduct of an Auction. |
| Initial Indication of Interest Deadline | July 16, 2021 at 5:00 p.m. (EST) |
| Bid Deadline | August 16, 2021 at 5:00 p.m. (EST). |
| Selection of Highest and Best Offer for Auction | August 19, 2021  at 5:00 p.m. (EST) |
| Auction | August 20, 2021 at 10:00 a.m. (EST) (either live/zoom auction). |
| Sale Objection Deadline | August 23, 2021 at 4:00 p.m. (EST) |
| Proposed Sale Hearing | August 26, 2021 at TBD a.m./p.m. (EST) |
| Entry of Sale Order | August 31, 2021 |
| Good Faith Deposit | Ten percent (10%) of the bid amount. |
| Stalking Horse Selection | The Debtor reserves the right, following consultation with and the consent of BETM, to enter into a Stalking Horse Purchase Agreement and to offer a Qualified Bidder an Expense Reimbursement and/or a Breakup Fee, in each case to be negotiated and subject to approval of the Bankruptcy Court. |

| Transfer of Personally Identifiable Information | The Debtor maintains certain personally identifiable information with respect to its customers, and will take all appropriate measures to insure and maintain the confidentiality of such information in connection with the sale hereunder. |
| --- | --- |
| Potential Lienholders | Boston Energy Trading and Marketing, LLC ("BETM"); Mr. David Hernandez and Mr. Martin Halpern (the "Mezzanine Lenders"); Shell Energy North America (US), L.P. ("Shell Energy") |

## JURISDICTION

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtor's bankruptcy case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, and Rule 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 6004-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").

## RELEVANT BACKGROUND

3.        On April 20, 2021 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under the Bankruptcy Code.  Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.        As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

5.        For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[ECF No. 10].

6.        The Debtor is a retail energy provider (an "REP") that is active in competitive

electricity markets in over a dozen jurisdictions operating in five organized markets.  In general, the Debtor sells electricity to residential, commercial and industrial customers, wherein it competes in price and terms with other REPs and the public utility in a given market area. Specifically, Holdings and its subsidiaries are certified and licensed to provide retail electric service by the Public Utilities Commissions or Public Service Commissions in each of California, Connecticut, District of Columbia, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Texas and Virginia. The Debtor currently services hundreds of thousands of customer accounts in the foregoing 15 states.

7.    On May 10, 2021, the Court entered an Interim Order [ECF No. 86] (the "Interim DIP Financing Order") granting the Debtor's *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364, (II) Granting Liens and Superpriority Administrative Claims In Connection Therewith, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection In Connection Therewith Pursuant to 11 U.S.C. §§ 361, 363, and 507, and (V) Scheduling a Final Hearing Under Bankruptcy Rule 4001.*

## RELIEF REQUESTED

8.    Pursuant to the Interim DIP Financing Order and in order to maximize the value of its assets for the benefit of all stakeholders in this Chapter 11 case, the Debtor intends to proceed with the sale of all or substantially all of its assets, including without limitation, retail customer contracts and associated receivables (collectively, the "Assets")[1] pursuant to Sections 363 and 365 of the Bankruptcy Code to the highest and best bidder.  The Debtor believes, in the exercise of its

---

[1] Certain of the Assets are owned by one or more of the Debtor's wholly owned subsidiaries.  The Debtor intends to seek approval from the Court to file chapter 11 bankruptcy petitions for such subsidiaries and seek to consolidate such bankruptcy cases with and into the Debtor's chapter 11 case, including to facilitate the sale of such Assets.

business judgment, that the competitive bidding procedures proposed herein will result in the Debtor achieving the highest and best value for its Assets.

9.    As a result, pursuant to this Motion, the Debtor seeks the entry of an order (i) approving the Bidding Procedures (defined below) and certain notice procedures in connection with the proposed sale of substantially all of the Assets, (ii) authorizing and approving the sale, the assumption and assignment of executory contracts and unexpired leases, and (iii) granting related relief as set forth below.

## MARKETING AND SALE PROCESS

10.    Since the filing of this Chapter 11 case, the Debtor has received a number of inquiries from parties who have expressed an interest in engaging in a transaction with the Debtor and/or acquiring the Assets.  At this time, the Debtor is not in a position to present a stalking horse buyer to the Court for approval in connection with the proposed bidding and sale procedures contained herein.  The Debtor intends to continue to work towards an agreement for a stalking horse buyer and reserves the right to seek approval of one or more stalking horse transactions and related protections for the stalking horse buyers. The Debtor believes it is in the best interest of all stakeholders to proceed with an auction sale of its Assets at this time, with or without a stalking horse, so that a sale can be completed by the end of August 2021 as required by the Interim DIP Financing Order.[2]

11.    The Debtor is also party to certain executory contracts and unexpired leases, including its contracts with its retail customers (each a "Contract" and, collectively, the "Contracts").  In order to facilitate a sale of the Assets, the Debtor seeks to establish certain procedures outlined below in connection with the assumption and assignment of such Contracts in

---

[2] The Debtor also reserves the right to file a plan of liquidation in this Chapter 11 case leading up to the proposed sale of the Assets and incorporate such sale into the plan as a means of implementing such plan.

anticipation of one or more Qualified Bids requiring the assumption and assignment of certain of the Contracts in connection with an offer to purchase the Assets, all in accordance herewith.

12.     The Debtor, in consultation with BETM,[3] has developed a set of competitive bidding and sale procedures set forth below that are designed to maximize the value of the Debtor's Assets.  At the initial hearing on this Motion, the Debtor will seek approval of the Bidding Procedures (as defined below), as well as the Sale Notice and the Cure Notice (each as defined below) proposed in connection therewith.

13.     The Debtor, through its chief restructuring officer, Bob Butler (the "CRO"), is establishing a virtual  data room ("VDR") which will be populated with due diligence information on the Debtor, its operations, assets, contracts and liabilities.  Due diligence access may include management presentations as may be scheduled by the CRO and on-site inspections of the Assets and such other matters which a Potential Bidder may request and as to which the CRO, in his sole discretion, may agree.  The Debtor will make the VDR available to those potential purchasers who sign a return a confidentiality and non-disclosure agreement that the Debtor, together with its professionals, has prepared (the "NDAs") and otherwise comply with the Bidding Procedures (as defined herein).

14.     In addition to the parties who have already contacted the Debtor with an interest in entering into a transaction with the Debtor in regard to the Assets, the Debtor, through the CRO and its senior management team, is compiling a list of potential third parties who the Debtor believes may have an interest in acquiring the some or all of the Assets.  The Debtor, through its CRO and the management team, will continue to market the Assets, will continue to identify

---

[3] In the event BETM submits a credit bid for the Assets, then the Debtor will no longer consult with BETM in connection with the sale proposed herein, or be required to obtain BETM's consent on any aspect of any other bid or bidder save and except the Debtor granting a Break-Up Fee or Expense Reimbursement, which remain subject to BETM's consent.

potentially interested parties for the Assets and will contact and engage with such parties in respect of the opportunity to acquire the Assets.

15.     The Debtor and the CRO will provide interested parties with a form of NDA and will assist such parties in the conduct of their due diligence for the Assets.    In connection therewith, the Debtor will encourage all such parties to develop and make (i) an initial indication of interest by the Interest Deadline (as defined below), and (ii) a bid for the Assets prior to the Bid Deadline (as defined below).  In addition, the Debtor and the CRO will offer any interested party the opportunity to enter into stalking horse asset purchase agreement in advance of the Bid Deadline.  In such event, the Debtor reserves the right to bring such stalking horse agreement to the Court for approval, along with any negotiated protections in connection therewith.

## BIDDING PROCEDURES

16.     In connection with the sale of the Debtor's Assets proposed herein, the Debtor seeks the entry of the Bid Procedures Order approving the following competitive sale and bidding procedures (the "Bidding Procedures"):

- **Qualification.**  In order to perform due diligence and be allowed to submit a bid for the Debtor's Assets (the "Assets"), a party expressing an interest in the Assets (a "Potential Bidder") must provide to the Debtor (a) an executed Non-Disclosure and Confidentiality Agreement ("NDA") in form and substance satisfactory to the Debtor, and (b) a statement demonstrating to the Debtor's satisfaction a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction. A Potential Bidder that satisfies these requirements will become a "Qualified Bidder."

- **Initial Indication of Interest.**  No later than 5:00 p.m. (prevailing Eastern Time) on July 16, 2021 (the "Interest Deadline"), each Potential Bidder shall submit an initial indication of interest in connection with the potential acquisition of some of all of the Assets, which shall include (i) an indication of which Assets the Potential Bidder is interested in, (ii) an indication of value or proposed price that the Potential Bidder is considering for its bid, and (iii) sufficient written evidence which in the sole and absolute discretion of the Debtor establishes that the Bidder has the financial ability to consummate the purchase of the Assets should such Bidder submit the highest and best bid, which the Debtor agrees to keep confidential as set

forth below.

- **Bid Deadline and Requirements**.  No later than **5:00 p.m. (prevailing Eastern Time) on August 16, 2021** (the "Bid Deadline"), each Potential Bidder interested in maintaining its participation in the bidding process and making a proposal or offer for the Assets (each a "Bid"),[4] regardless of whether such Potential Bidder submitted an initial indication of interest on or before the Interest Deadline, must deliver copies of the Bid and supporting materials described in the Bidding Procedures to: (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com); and (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com).

- **Form and Content of Bid**.  The Bid shall consist of a signed letter from a Qualified Bidder stating that:

  a.    The Qualified Bidder offers to purchase all or a specified portion of the Assets; and

  b.    The Qualified Bidder's offer is irrevocable until two (2) business days after the earlier of: (i) the closing of the sale of the applicable Assets, whether or not to such Qualified Bidder; or (ii) 45 days after the Sale Hearing (subject to any requirements relating to a Successful Bid or a Backup Bid).

- **Required Supporting Materials**.  A Qualified Bidder's Bid for the proposed purchase transaction with the Debtor (the "Transaction") shall be accompanied (or preceded) by:

  a.    a signed "clean" version of an asset purchase agreement, substantially in the form proposed by the Debtor (the "APA"),[5] together with a marked version to reflect any proposed changes to the APA from the form proposed by the Debtor and detailing all of the terms and conditions of the proposed Transaction; provided that all asset purchase agreements must contain (i) provisions allowing the Debtor reasonable access to the Debtor's books and records those of the Debtor's subsidiaries purchased by the purchaser for the purpose of administering its bankruptcy case and wind down of the

---

[4] If a Bid includes Assets which relate to customers served in the ERCOT Region, in order for such Bid to constitute a Qualified Bid, such Potential Bidder must provide evidence that such Potential Bidder is ERCOT qualified, including, but not limited to registering with ERCOT as a Market Participant in accordance with the ERCOT Protocols and executing ERCOT's Standard Form Market Participant Agreement.

[5] The Debtor will make available  a copy of the APA form in the Virtual Data Room for submission by a Potential Bidder.

bankruptcy proceedings; (ii) the purchaser's acknowledgement and representation that the purchaser (A) is purchasing the Assets on an "as is, where is" basis, (B) has had an opportunity to conduct any and all due diligence regarding the Assets, (C) has relied solely upon its own independent review, investigation, and/or inspection of all documents and Assets, and (D) did not rely on any written or oral statements, representations or warranties whatsoever, regarding the assets, except as specifically set forth in the APA; and (iii) a waiver of any requirement that the Sale Order (as defined below) be final and non-appealable. Consummation of the Transaction shall not be contingent on the purchaser obtaining financing or any internal approvals, or on the outcome or review of due diligence.  If the Debtor selects a Stalking Horse Bidder prior to the Bid Deadline, then other Qualified Bidders must submit a signed "clean" version of the asset purchase agreement comprising the Stalking Horse Bid, together with a marked version to reflect any changes to the Stalking Horse Bid; provided that any such asset purchase agreement submitted by a Qualified Bidder other than the Stalking Horse Bidder may not contain representations and warranties, covenants, termination rights, financing, or due diligence contingencies other than as are included in the Stalking Horse Bid (it being agreed and understood that such Bid shall modify the Stalking Horse Bid as needed to comply in all respects with the Bid Procedures Order (including removing any termination rights in conflict with the Bid Procedures Order) and will remove provisions that apply only to the Stalking Horse Bidder);

b. an affidavit under penalty of perjury from a corporate officer of the proposed Bidder identifying (i) the corporate structure of the proposed Bidder, (ii) the identity of the officers, directors, managers, members and equity holders of the proposed Bidder, (iii) disclosing any relationship between any of such parties and the Debtor or any or the Debtor's direct or indirect owners, and (iv) disclosing any relationship between any of such parties and any other interested Bidder and its principals;

c. a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable Bid on the terms proposed; provided that if the Qualified Bidder is an entity specially formed for the purpose of consummating a Transaction, the Qualified Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the owner of such Qualified Bidder; and

d. to the extent that the Qualified Bidder proposes to include in its Bid the assumption and assignment of executory contracts or unexpired leases, a schedule showing such contracts and/or leases to be assumed and assigned, together with evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of such contracts and/or leases, such as, but not limited to, audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, and

information allowing the Debtor to evaluate the value of any guaranties being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory (collectively, the "<u>Adequate Assurance Package</u>").

- **<u>Good Faith Deposit</u>**.  By the Bid Deadline, a Qualified Bidder must provide a good faith deposit (the "<u>Good Faith Deposit</u>") in an amount equal to 10% of such Qualified Bidder's purchase price.  The Good Faith Deposit must be made by wire transfer and will be held in the trust account of the Debtor's counsel.

- **<u>Proof of Financial Wherewithal</u>**:  Each Bid must include written evidence, combined with any such written evidence provided in connection with an initial indication of interest as set forth above, which in the sole and absolute discretion of the Debtor establishes that the Bidder has the financial ability to consummate the purchase of the Assets should such Bidder submit the highest and best bid.  The Bidder's financial ability to consummate the transaction shall include evidence related to the initial purchase price as well as any increased purchase price that such Bidder submits in connection with the Auction.  If so requested, the Debtor agrees to keep such information confidential, provided however that in the event of a dispute related to such financial wherewithal, the Debtor reserves the right to disclose such financial wherewithal to the Bankruptcy Court in connection with any such dispute.

- **<u>As is/where is</u>**:  The Assets will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.  The Assets will be sold free and clear of any and all liens, claims, encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, encumbrances and interests attaching to the proceeds of the sale.

- **<u>Stalking Horse Bidder, Breakup Fee and Expense Reimbursement</u>**.  Prior to or after the submission of Bids, the Debtor, after consultation with and the consent of BETM, may enter into an agreement ("<u>Stalking Horse Bid</u>"), subject to higher and better offers at the Auction (as defined below), providing for a breakup fee (the "<u>Breakup Fee</u>") and/or reimbursement of documented out-of-pocket expenses incurred in connection with the negotiation of the Stalking Horse Agreement (the "<u>Expense Reimbursement</u>"), in each case in amounts to be agreed by the Debtor and BETM.

- **<u>Notification of Qualified Bid</u>**:  The Debtor shall use its best efforts to review all Bids submitted by the Bid Deadline, and prior to **12:00 noon (prevailing Eastern Time) on August 18, 2021**, notify each Bidder whether their Bid constitutes a Qualified Bid for purposes of the Auction.  If the Debtor concludes (in consultation with BETM) that a Bid submitted does not constitute a Qualified Bid, the Debtor will identify the deficiencies in such Bid and provide such Bidder an opportunity to correct such deficiencies.  Only Bidders who submit Qualified Bids, and their authorized representative(s), will be allowed to attend and participate in the Auction.

- **Pre-Auction Designation of Highest and Best Bid**.  If the Debtors receive more than one Qualified Bid prior to the Bid Deadline, then on or before **August 19, 2021 at 5:00 p.m. (prevailing Eastern Time)**, the Debtor, in consultation with BETM, shall select the Qualified Bid that is the highest and/or best Qualified Bid received by the Debtor by the Bid Deadline, and shall notify the other Qualified Bidders of such selection prior to or at the commencement of the Auction.

- **Auction.**  If one or more Qualified Bids are received by the Bid Deadline, the Auction will be conducted commencing at **10:00 a.m. (prevailing Eastern Time) on August 20, 2021**, at the offices of Genovese Joblove & Battista, P.A., 200 East Broward Blvd., Suite 1110, Fort Lauderdale, FL 33301, or, at Debtor's election, by video conference in virtual meeting room(s), or at such other time and place as the Debtor shall determine and notify the Qualified Bidders and counsel for BETM.  If the Debtor receives only one Qualified Bid or no Qualified Bids by the Bid Deadline, the Debtor shall file a notice cancelling the Auction.

- **Bidding Increment**.  The minimum bidding increment at the auction shall be $100,000 or such other amount as the Debtor determines is appropriate, plus the amount of any Breakup Fee and/or Expense Reimbursement if the Debtor has entered into a Stalking Horse Bid, provided, however, that the Debtor reserves the right to change the bidding increments at the Auction.

- **Designation of Successful Bidder**. Immediately prior to the conclusion of the Auction, the Debtor will: (a) review each Bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed sale; (b) in its discretion (after consultation with BETM), identify the highest and best bid for the Assets at the Auction (the "Successful Bid") which may include multiple Bids to the extent that one or more Successful Bidders submit Bids for certain discreet Assets; and (c) notify all Qualified Bidders participating in the Auction, prior to their adjournment, of the name or names of the Qualified Bidder(s) making the Successful Bid for the applicable Assets (the "Successful Bidder"), and the amount and other material terms of the Successful Bid.

- **Backup Bidder**.  Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest Qualified Bid after the Bid made by the Successful Bidder or otherwise next best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment and in consultation with BETM, will be designated as a backup bidder (the "Backup Bidder").  The Backup Bidder shall be required to keep its initial Bid, if any (or if the Backup Bidder submitted one or more overbids at the Auction, its final overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is 45 days after the date of the Sale Hearing (the "Outside Backup Date"), or (ii) the date of closing of a transaction with the Successful Bidder or with the Backup Bidder.  Following the Sale Approval Hearing, if the Successful Bidder fails to consummate an approved Transaction, because of a breach or failure to perform on the part of such Successful

11

Bidder, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtor. The deposit of the Backup Bidder shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

- **Sale Hearing**:  After the conclusion of the Auction, the Debtor shall (i) submit the Successful Bid for approval by the Bankruptcy Court at a hearing to be held **August [26], 2021 at ___ a.m./p.m.** (the "Sale Hearing"), and seek entry of an order approving the sale of the Assets pursuant to the Successful Bid (the "Sale Order").[6] The closing of the transaction (the "Closing") shall take place promptly after entry of the Sale Order or as otherwise set forth in the APA (the "Closing Date"), provided that the Sale Order waives the 14-day stay pursuant to Fed. R. Bankr. P. 6004(h), provided further that in the event the 14-day stay is not waived, then the Closing Date shall be on the first business day after the expiration of such 14-day stay. The Debtor shall also have the right to seek Bankruptcy Court approval, at or after the Sale Hearing, for one or more Qualified Bids to serve as a Backup Bid (as defined below), to close in the event that a Successful Bid shall fail to close. At the closing of the Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. Absent irregularities occurring in the course of the Auction, no further bids will be accepted after the close of the Auction.

- **Reservation of Rights**.  The Debtor (i) may determine which qualified bid(s), if any, is the highest or otherwise best offer, and (ii) may reject at any time, any bid(s) that the Debtor determines in its sole discretion to be: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the sale transaction, or (c) contrary to the best interests of the Debtor, its estate and creditors

- **Return of Deposits**.  The Good Faith Deposit of a Qualified Bidder that is not the Successful Bidder or a Backup Bidder shall be returned to such Qualified Bidder within three business days after the Sale Hearing. The Good Faith Deposit (to the extent not to be delivered to Debtor pursuant to the terms of the APA) of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.  The Good Faith Deposit of the Successful Purchaser shall be returned to the Successful Purchaser or retained by the Debtor in accordance with the terms of the APA.  If the Successful Bidder timely closes the Transaction, its Good Faith Deposit shall be credited towards its purchase price.

- **Credit Bid Reservation**.  BETM may exercise its right to credit bid the amount of

---

[6] The Debtor shall file with the Court a draft of the proposed Sale Order within five (5) days prior to the Bid Deadline.

the amount of the Pre-Petition Indebtedness and the outstanding DIP Obligations (as each is defined in the Interim DIP Financing Order) under Section 365(k) of the Bankruptcy Code.  Notwithstanding anything contained to the contrary in the Bidding Procedures, BETM shall be deemed a Qualified Bidder and if it submits a credit bid, BETM shall not be required to provide any Good Faith Deposit or an Adequate Assurance Package.

- **Broker's Commissions**:  The Debtor's bankruptcy estate shall not be liable for any broker's commissions related to the sale of the Debtor's Assets.[7]

17.    The Bidding Procedures provide a flexible process where the Debtor will be soliciting bids for some or all of the Assets.  This flexible process will allow the Debtor to maximize the value of its Assets.  The Debtor expressly reserves the right to modify the relief requested in this Motion prior to or at the applicable hearings, including modifying the proposed Bidding Procedures.  Moreover, the Debtor reserves the right, following consultation with BETM, to adjourn the Auction or the Sale Hearing or remove any Assets from the sale if the Debtor determines that such action will maximize value to its estate.

18.    Notwithstanding anything in the Bidding Procedures to the contrary, in order to be a Qualified Bid, the Bid must provide for purchase, via assumption and assignment of all customer or other Contracts related to the Assets entered into by the Debtor from or after the Petition Date, including any renewals of any pre-petition customer Contracts.

## BASIS FOR RELIEF REQUESTED

### A.    Approval of the Bidding Procedures and the Sale of the Assets is Warranted

19.    The Debtor seeks to sell the Assets to the highest and best bidder following the Auction, free and clear of liens, claims, encumbrances and interests pursuant to Sections 363(b) and (f) of the Bankruptcy Code, which sale shall include the assumption and assignment of the Contracts (including the determination of any cure costs in connection therewith), pursuant to

---

[7] Broker's Commissions defined herein does not include reference to those certain Brokers approved as Critical Vendors by Order of this Court entered on May 3, 2021 [ECF No. 63].

Section 365 of the Bankruptcy Code.

20.     In connection therewith, the Debtor seeks approval of the Bidding Procedures set forth above.  Bidding procedures should be approved when they provide a benefit to the debtor's estate by maximizing the value of the debtor's assets. *See In re Edwards*, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

21.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics, Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").

22.     To that end, courts uniformly recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999); *see also Official Comm. of Subordinated Bondholders v. Integrated Res. Inc.* (*In re Integrated Res. Inc.*), 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "encourage bidding . . . maximize the value of the debtor's assets").

23.     The Debtor believes that the Bidding Procedures will promote active bidding from any seriously interested parties that may exist and will dispel any doubt as to the highest and best offer reasonably available for the Assets. The Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially

capable bidders who demonstrate the ability to close on a purchase of the Assets.  In summary, the

Debtor believes that the Bidding Procedures will encourage bidding, that they are consistent with

other procedures previously approved by courts in this and other districts and that the Bidding

Procedures are appropriate under the relevant standards governing auction proceedings and

bidding incentives in bankruptcy proceedings. *See In re Friendly's Ice Cream Corp.*, No. 11-13167

(Bankr. D. Del. Oct. 5, 2011).

24.     Thus, the Bidding Procedures are reasonable, appropriate and within the Debtor's

sound business judgment under the circumstances because the Bidding Procedures are designed to

maximize the value to be received by the Debtor's estate.

25.     With respect to the proposed sale of the Assets, under section 363 of the Bankruptcy

Code, a debtor in possession may sell property of its estate outside of the ordinary course of its

business, subject to the approval of the court after notice and a hearing.  *See* 11 U.S.C. § 363(b)(1).

Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is

appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation

of a plan.  However, courts have required that the decision to sell assets outside the ordinary course

of business be based upon the sound business judgment of the debtor.  *See Licensing By Paolo,*

*Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a

Chapter 11 estate may be conducted if a good business reason exists to support it."); *Comm. of*

*Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983);

*In re Chateaugay Corp.,* 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus. v.  McClung*, 789 F.2d

386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets

under [section] 363(b)(1) when a sound business purpose dictates such action.").

26.     Courts typically consider four factors in determining whether a proposed sale

satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith. *See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

27.    Here, each of these four factors has been satisfied. First, sound business reasons exist for the Debtor's efforts to sell its assets.  A condition to the DIP financing provided by BETM under the Interim DIP Financing Order is that the Debtor engage in an orderly marketing and sale process with respect to its Assets.  An orderly sale of the Assets will minimize the liquidity the Debtor needs to continue operations while providing a way for the Debtor to monetize the Assets for the benefit of its creditors. Second, as discussed above, the Debtor will be providing adequate and reasonable notice to interested parties of the opportunity to bid on the Assets and of the opportunity to object to the sale of those assets. *See, e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property").  Third, the proposed Bidding Procedures provide for an open and competitive bidding process for the Assets.  Fourth, the Debtor is proceeding in good faith and will make a showing at the Sale Hearing that the purchaser or purchasers of the Assets have acted in good faith. Accordingly, the Auction and sale of the Assets pursuant to the proposed Bidding Procedures should be approved.

**B.      Sale of Assets Free and Clear of Certain Liens, Claims and Encumbrances**

28.    Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property

under Bankruptcy Code Section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). *See In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers ... to acquire assets [from a debtor] without any accompanying liabilities"); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

29.     To facilitate the sale of the Assets, the Debtor requests that the Court authorize the sale of the Assets free and clear of certain liens, claims, encumbrances, and other interests (collectively, "Liens"). In addition, the Debtors submit that the Assets may be sold free and clear of all successor liability claims (collectively, with the Liens, the "Liens and Claims"). Notwithstanding reference to the conveyance free and clear of "any interest" in Section 363(f) of the Bankruptcy Code, that section has been interpreted to allow the sale of a debtor's assets free and clear of successor liability claims as well. *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) of the Bankruptcy Code barred successor liability claims for employment discrimination and rights under travel voucher program); *Am. Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986) (sale pursuant to section 363(1)

17

barred successor liability for products defect claim).

30.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of all liens, claims, encumbrances and interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) of the Bankruptcy Code is met).

31.     The Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code will be satisfied with respect to the sale and transfer of the Assets. In particular, the Debtor believes that at least section 363(f)(2) of the Bankruptcy Code will be met because each of the parties holding liens on the Assets, if any, will consent, are contractually bound to consent, or absent any objection to this Motion, will be deemed to have consented to, the sale and transfer of the Assets. Accordingly, section 363(f) of the Bankruptcy Code authorizes the sale and transfer of the Assets free and clear any such Liens and Claims.

32.     In the present case, BETM has not only consented to the sale of the Assets, but has required such sale as a condition to the Interim DIP Financing Order. In addition, the Debtor understands that each of the Mezzanine Lenders and Shell Energy are contractually prohibited from objecting to such sale pursuant to the terms of that certain Intercreditor Agreement by and among the Debtor, BETM, the Mezzanine Lenders and Shell Energy and other parties thereto dated as of July 6, 2020.  As a result, the Debtor asserts that it can satisfy Section 363(f)(2) for a sale of

the Assets free and clear of all Liens and Claims.

33.     The Debtor also asserts that a sale can be approved by the Bankruptcy Court over objections free and clear of all Liens and Claims pursuant to Sections 363(f)(3), (4) and/or (5). Pursuant to Section 363(f)(3), if the sale price for the Assets achieved at the Auction is greater than the aggregate value of the liens on the Assets, then the Assets can be sold free and clear of all such liens and claims.

34.     In addition, pursuant to Section 363(f)(4), if a "bona fide" dispute exists with respect to any such lien, claim, encumbrance or interest, then the Bankruptcy Court has the power to approve the sale of the Assets free and clear of such lien, claim, encumbrance or interest.  *See In re Robotics Vision System, Inc*., 322 B.R. 502, 506 (Bankr. D.N.H. 2005)(pursuant to section 363(f)(4), "a bona fide dispute exists when there is an objective basis for either factual or legal dispute as to the validity of an interest in property").  *See also In re Clark*, 266 B.R. 163 (9th Cir. BAP 2001)(sale of property free and clear need not be delayed pending the resolution of bona fide dispute); *In re Oneida Lake Development, Inc*., 114 B.R. 352 (Bankr. N.D.N.Y 1990)(allegations are sufficient to raise a bona fide dispute when a sale needs to occur before the dispute can be resolved by evidentiary hearing).

35.     Finally, pursuant to Section 363(f)(5), if the holder of a lien or interest can be compelled to accept a money satisfaction, then the Assets can be sold free and clear of such lien, claim, encumbrance or interest.  Courts have held that "money satisfaction" does not mean "fully money satisfaction."  *See In re Levitt and Sons, LLC*, 384 B.R. 630 (Bankr. S.D. Fla. 2008).  Moreover, there is no requirement in Section 363(f)(5) that an actual "legal or equitable proceeding" actually occur prior the sale of property free and clear under Section 363(f)(5).  *Id*. at 648.  Lastly, if the holder of a lien could be compelled to accept a money satisfaction through a

cramdown in a chapter 11 plan or through the "judicial or non-judicial foreclosure of the senior liens," then the property could be sold free and clear of such liens or interests under Section 363(f)(5).  *See In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 508-509 (Bankr. N.D. Ala. 2002).

C.    **The Successful Bidder Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser.**

36.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) was later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] ... does not affect the validity of a sale ... to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal

11 U.S.C. § 363(m).  *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

37.    Although the Bankruptcy Code does not define "good faith," one court has held that:

> the good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

126 F.3d at 390 (quoting *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Andy Frain Services, Inc.,* 798 F.2d 1113, 1125 (7th Cir. 1986).

38.     Here, the selection of the Successful Bidder will be the result of a marketing process and extended arm's-length, good-faith negotiations.  The Debtor will be advised by its legal and financial advisors throughout the process.  The Successful Bidder will be selected by the Debtor after the Debtor's review of indications of interest by all potential purchasers, negotiations, and the Debtor's determination that the offer of the Successful Bidder is the most favorable offer submitted for the Assets.  Accordingly, the Debtor requests that the Court make a finding that the Successful Bidder is entitled to the protections of section 363(m) of the Bankruptcy Code.

**D.      The Court Should Waive or Reduce the Periods Required By Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.**

39,     Pursuant to Rule 6004(h) (formerly Rule 6004(g)) of the Bankruptcy Rules), all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order, unless the court orders otherwise.  Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).

40.     Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or

other transaction to close immediately if there is a showing of a sufficient need to close the sale within the 10-day period.  10 *Collier on Bankruptcy* § 6004.10 (15th ed. 2007).

      41.     In light of the requirement of the Interim DIP Financing Order that the Sale Order be entered prior to August 31, 2021 and to limit the costs of administering the Debtor's estate, it is critical that the Debtor closes the sale of the Assets as soon as possible thereafter.  Accordingly, the Debtor hereby requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**E.**      **Assumption And Assignment of Executory Contracts and Unexpired Leases**

      42.     The assumption and assignment of the Debtor's Contracts is an integral part of the proposed sale and should be approved by the Court.   Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). By enacting section 365(a) of the Bankruptcy Code, Congress intended to allow a debtor to assume those leases/contracts that benefit the estate, and to reject those that are of no value or are burdensome to the estate.  *See Cinicloa v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *Leland v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 976 n.2 (11th Cir. 1987); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983); *Chira v. Saal (In re Chira)*, 367 B.R. 888, 898 (S.D. Fla. 2007); *In re Sandman Assocs.*, LLC, 251 B.R. 473, 481 (W.D. Va. 2000) (noting that "[t]he authority granted by section 365 allows the trustee or debtor in possession to pick and choose among contracts, assuming those that are favorable and rejecting those that are not").

      43.     It is well established that decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor.  *See Gardinier,*

*Inc.*, 831 F.2d at 976 n.2; *Chira*, 367 B.R. at 898; *In re G. Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (noting that "[i]n determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test.  Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citations omitted); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel Corp. v. National Fuel Gas Dist Corp.*, 872 F.2d 36, 40 (3d Cir. 1989). Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied,* 475 U.S. 1057 (1986).

44.     Adequate business justification exists to merit judicial approval of the proposed assumption and assignment of the Debtors' executory contracts and unexpired leases.  The Debtor's Contracts are valuable assets of the Debtor's estate and represent an integral part of any proposed transaction for the sale of the Assets.  To the extent that the Debtor can sell them as part of the sale, the sales will generate cash which the estate can use to satisfy claims and reduce potential claims against the estate.

45.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign an executory contract if the Debtor:

> (A)     cures, or provides adequate assurance that [it] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an expired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in

accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)    provides adequate assurance of future performance under such contract or lease. . . .

(f)(2)  The trustee may assign an executory contract or unexpired lease of the debtor only if —

(A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

*See* 11 U.S.C. §§ 365(a), (b)(1), (f)(2).  Accordingly, section 365 of the Bankruptcy Code authorizes the proposed assumptions and assignments of executory contracts and unexpired leases, provided that the defaults under such contracts are cured and adequate assurance of future performance is provided.

46.    It is well settled that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but that a contract counterparty is not required to receive an absolute guarantee of future performance.  *See, e.g., In re Glycogensys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y.

1985) (same).  As set forth above, any bid that is conditioned upon the assumption and assignment of executory contracts and unexpired leases must (a) be submitted with Adequate Assurance Packages containing the identity of such contracts and leases and (b) provide evidence of such bidder's ability to provide adequate assurance of future performance.  The Debtor will provide all parties to executory contracts and unexpired leases to be assumed and assigned pursuant to the Motion with such Adequate Assurance Packages and an opportunity to be heard, and in connection with the Sale Hearing, the Debtor will provide evidence that all requirements for the assumption and assignment of the executory contracts and unexpired leases proposed to be assigned to the purchaser(s) of the assets will be satisfied.  Thus, the Debtor respectfully submits that, by the conclusion of the Sale Hearing, assumption and assignment of the executory contracts and unexpired leases should be approved.

47.    Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

48.    Section 365(f)(l) of the Bankruptcy Code, by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g.*, *Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904, 910-11 (9th Cir. 1997) ("no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365") *cert. denied*, 522 U.S. 1148 (1998). Section 365(f)(3) of the Bankruptcy Code goes beyond the scope of section 365(f)(1) of the Bankruptcy Code by prohibiting enforcement of any clause creating a right to modify or terminate

the contract or lease upon a proposed assumption or assignment thereof. *See, e.g.*, *In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (section 365(f)(3) of the Bankruptcy Code prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

49.    Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced. *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f) [sic], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."). Similarly, in *In re Mr. Grocer, Inc.*, the court noted that:

> [the] case law interpreting § 365(f)(l) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.

77 B.R. 349, 354 (Bankr. D.N.H. 1987).

50.    Thus, the Debtor requests that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Potential Assumed and Assigned Contracts and be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

51.    As set forth above, notwithstanding anything in the Bidding Procedures to the contrary, in order to be a Qualified Bid, the Bid must provide for purchase, via assumption and

assignment of all customer or other Contracts related to the Assets entered into by the Debtor from or after the Petition Date, including any renewals of any pre-petition customer Contracts.

### F.    **Procedures Regarding Cure Amounts**

52.    To facilitate the sale and the assumption and assignment of the Debtor's Contracts, the Debtor proposes to serve a notice of assumption and assignment and of the proposed cure amounts relating to such assumed agreements ("Assumed Agreements") in the form of the Cure Notice annexed hereto as Exhibit 3 to the Bid Procedures Order no later than July 16, 2021 and request that the Court approve the following procedure for fixing any cure amounts owed on all Assumed Agreements.

53.    The Debtor will attach to the Cure Notice its calculation of the undisputed cure amounts that the Debtor believes must be paid to cure all defaults under all Assumed Agreements (the "Cure Amount").   The Debtor requests that if a non-debtor party to any Assumed Agreements disputes the Cure Amount or objects to the assumption and/or assignment of an Assumed Agreement for any other reason that such party be required to file an objection (the "Cure Amount Objection") on or before **4:00 p.m. (prevailing Eastern Time) on August 23, 2021** (the "Cure Objection Deadline") and serve a copy of the Cure Amount Objection so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com);   and (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com).

54.     In the event any such party fails to timely file and serve a Cure Amount Objection by the Cure Objection Deadline, such party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Agreements and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Assumed Agreements and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or any other assignee of the relevant Assumed Agreements that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Assumed Agreements.

55.     In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Cure Amount.  After receipt of the Cure Amount Objection, the Debtor will attempt to reconcile any differences in the Cure Amount believed by the non-debtor party to exist.  In the event, however, that the Debtor and the non-debtor party are unable to consensually resolve the Cure Amount Objection, the Debtor will segregate any disputed Cure Amount pending the resolution of any such disputes by this Court or mutual agreement of the parties.

56.     Based on the foregoing, the Debtor respectfully requests that the Bankruptcy Court approve the assumption and assignment of the Assumed Agreements.

**G.     Proposed Notice of the Sale Hearing**

57.     Pursuant to Bankruptcy Rule 2002(a), the debtor is required to provide its creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must

include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested.

58.     On or before July 16, 2021, the Debtor will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Assets or have any known interest in the relief requested by the Motion; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bid Procedures Order; (e) all parties to any litigation involving the Debtor; (f) all counterparties to any executory contract or unexpired lease of the Debtor; (h) all other known creditors and interest holders of the Debtor; and (g) all potential bidders, previously identified or otherwise known to the Debtor.

59.     Objections, if any, to the relief requested in the Motion in respect of the sale of the Assets, the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Bankruptcy Court on or before 4:00 p.m. (prevailing Eastern time) on August 23, 2021 (the "Sale Objection Deadline"), and (iv) served upon (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com); (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-

sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern time) on the same day.

60.     The Debtor proposes that the failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Assets to the Successful Bidder or Back-Up Bidder, as applicable, and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Assets, and the assumption or assumption and assignment of the Contracts.

61.     The Debtor submits that the methods of notice described in this Motion comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed Bidding Procedures and the sale of the Assets.  Therefore, the Debtor respectfully requests that this Court approve the notice procedures proposed above.

**H.**      **Scheduling Sale Hearing**

62.     Pursuant to the proposed Bidding Procedures, the Debtor requests that the Court set a Sale Hearing, which the Debtor requests be on or about August 26, 2021.

<u>**CONCLUSION**</u>

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in substantially the form of the Bid Procedures Order attached as **Exhibit "A"** hereto (1) approving competitive bidding procedures for the sale of substantially all of Debtor's Assets attached as **Exhibit "1"** to the Bid Procedures Order, (2) scheduling dates to conduct an Auction and the Sale Hearing, (3) approving the form and manner of notices, including the Sale Notice attached as **Exhibit "2"** to the Bid Procedures Order and the Cure Notice attached as **Exhibit "3"** to the Bid Procedures Order, (4) approving the sale of substantially all of the Debtor's Assets free and clear

of all liens, claims, encumbrances and interests, (5) approving assumption and assignment procedures, and (6) granting related relief as is proper.

Respectfully submitted on May 18, 2021.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for Debtors-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:    /s/      *Paul J. Battista*
            Paul J. Battista, Esq.
            Florida Bar No. 884162
            pbattista@gjb-law.com
            Mariaelena Gayo-Guitian, Esq.
            Florida Bar No. 813818
            mguitian@gjb-law.com
            Heather L. Harmon
            Florida Bar No. 13192
            hharmon@gjb-law.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 18th day of May, 2021 via CM/ECF upon all parties registered to receive notices of electronic filing in this case.  Upon the issuance of a notice of hearing hereon, the Debtor will serve a copy of this Motion and such notice of hearing via U.S. mail upon all creditors and parties in interest listed on the creditor mailing matrices in this case, and file a further certificate of service.

By:  ___/s/____*Paul J. Battista*_____
        Paul J. Battista, Esq.
        Florida Bar No. 884162

**<u>EXHIBIT A</u>**

**<u>PROPOSED BID PROCEDURES ORDER</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

**In re:**                                          **Chapter 11 Case**

**LIBERTY POWER HOLDINGS, LLC,**          **Case No. 21-13797-SMG**

  **Debtor.**
_____/

**ORDER GRANTING DEBTOR'S *EXPEDITED* MOTION FOR THE ENTRY OF AN
ORDER (1) APPROVING COMPETITIVE BIDDING PROCEDURES FOR THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (2) SCHEDULING DATES
TO CONDUCT AUCTION AND SALE HEARING, (3) APPROVING THE FORM AND
MANNER OF NOTICES, (4) APPROVING THE SALE OF SUBSTANTIALLY ALL OF
THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS, (5) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES FOR EXECUTORY CONTRACTS,
AND (6) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court in on May \_\_\_, 2021 at \_\_\_\_ a.m./p.m. (the

"Hearing") upon the (i) *Debtor's Expedited Motion for Entry of an Order (1) Approving*

*Competitive Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (2)*

*Scheduling Dates to Conduct an Auction and Sale Hearing, (3) Approving the Form and Manner*

10571916-1

*of Notices, (4) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (5) Approving Assumption and Assignment Procedures for Executory Contracts, and (6) Granting Related Relief* [ECF No. ___] (the "Motion")[1] filed by Liberty Power Holdings, LLC (the "Debtor").   The Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor, does for the reasons stated in the Motion and on the record of the Hearing, all of which are incorporated herein:

**IT IS FOUND AND DETERMINED THAT:**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[1] Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the Motion, and (ii) the Bidding Procedures attached hereto as **Exhibit "1"**.

B.     This Court has jurisdiction over the Motion and the transactions contemplated thereby pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief requested in the Motion are: (i) sections 105, 363, and 365 of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014.

D.     Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required except as set forth herein with respect to the hearing to be conducted to approve the transactions contemplated by the Sale (the "Sale Hearing").  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

E.     The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of substantially all of the Debtors' assets (the "Assets"), the auction (the "Auction") for the Assets, and the Bidding Procedures to be employed in connection therewith.

F.     The Debtor has articulated good and sufficient reasons on behalf of the Debtor's estate for the Court to: (i) approve the Bidding Procedures and certain notice procedures in connection with the sale of substantially all of the Debtors' assets; (ii) authorize the sale and the assumption and assignment of executory contracts and unexpired leases; and (iii) grant the related relief requested in the Motion.

3

G.     The entry of this Order is in the best interests of the Debtor, its estate, creditors and other parties in interest.

H.     The Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value to be achieved for the Assets.

I.     The procedures for the assumption and assignment of the executory contracts and unexpired leases are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code.

**BASED ON THE ABOVE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is **GRANTED** to the extent set forth herein.

2.     The Bidding Procedures attached hereto as **Exhibit "1"** are hereby approved in their entirety, are incorporated herein by reference and shall govern the bids and proceedings related to the marketing and sale of the Assets and the Auction.  The failure to recite or reference any particular provision of the Bidding Procedures in this Order shall not diminish the effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

3.     The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures.

4.     The Bid Deadline is **August 16, 2021 at 5:00 p.m. (prevailing Eastern Time)**.

5.     If the Debtor receives more than one Qualified Bid (as defined in the Bidding Procedures) by the Bid Deadline, an Auction shall take place on **August 20, 2021 at 10:00 a.m. (prevailing Eastern Time)** via Zoom, teleconference or at the offices of Genovese Joblove & Battista, P.A., 200 East Broward Blvd., Suite 1110, Fort Lauderdale, FL 33301, or, at Debtor's election, by video conference in virtual meeting room(s), or at such other time and place as the

4

Debtor shall determine and notify the Qualified Bidders and counsel for BETM.  If the Debtor receives only one Qualified Bid or no Qualified Bids by the Bid Deadline, the Debtor shall file a notice cancelling the Auction, and for the avoidance of any doubt, the Auction is subject to the right of the Debtor, in the exercise of the reasonable business judgment of the Debtor and following consultation with BETM, to adjourn the Auction to a later date.  The Auction shall be conducted in accordance with the Bidding Procedures.  Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of this Court.

6.      The Sale Hearing shall be held before this Court on **August [26], 2021 at TBD (prevailing Eastern Time) by VIDEO CONFERENCE** and may be adjourned from time to time by the Debtor, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtor, in the exercise of the reasonable business judgment of the Debtor, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.  **To register for the video conference, manually enter the following registration link in a browser:** [INSERT LINK]

7.      Objections, if any, to the relief requested in the Motion in respect of the sale of the Assets, the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Bankruptcy Court on or before 4:00 p.m. (prevailing Eastern time) on August 23, 2021 (the "Sale Objection Deadline"), and (iv) served upon (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com);  (iii) the attorneys for BETM, c/o Eversheds

5

Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern time) on the same day (together, the "Notice Parties").

8.     The sale notice, substantially in the form attached hereto as **Exhibit "2"** (the "Sale Notice"), is hereby approved.

9.     The procedures related to the assumption and assignment of the unexpired leases and executory contract are approved as follows.  The Debtors shall serve a notice of assumption and assignment and of the proposed cure amounts relating to such assumed agreements ("Assumed Agreements") in the form annexed hereto as **Exhibit 3** (the "Assumption Notice") no later than July 16, 2021.

10.     Objections, if any, to the Cure Amount or the assumption and/or assignment of an Assumed Agreement for any other reason (the "Cure Amount Objection") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Bankruptcy Court on or before on or before **4:00 p.m. (prevailing Eastern Time) on August 23, 2021** (the "Cure Objection Deadline") and served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Notice Parties.

11.     In the event any such party fails to timely file and serve a Cure Amount Objection by the Cure Objection Deadline, such party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Contracts and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Assumed Agreements and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder

6

10571916-1

or any other assignee of the relevant Assumed Agreements that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Assumed Agreements. Within five (5) calendar days of the sale closing date, the Debtor shall pay all Cure Amounts to the non-debtor parties to the Assumed Agreements.

12.     In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Cure Amount. After receipt of the Cure Amount Objection, the Debtor will attempt to reconcile any differences in the Cure Amount believed by the non-debtor party to exist. In the event, however, that the Debtor and the non-debtor party are unable to consensually resolve the Cure Amount Objection, the Debtor will segregate any disputed Cure Amount pending the resolution of any such disputes by this Court or mutual agreement of the parties.

13.     On or before July 16, 2021, the Debtor will cause the Sale Notice and this Order to be served by ECF notification (where applicable) and by first-class mail, to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Assets, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Assets or have any known interest in the relief requested by the Motion; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bid Procedures Order; (e) all parties to any litigation involving the Debtor; (f) all counterparties to any executory contract or unexpired lease of the Debtor; (h) all other known

7

creditors and interest holders of the Debtor; and (g) all potential bidders, previously identified or otherwise known to the Debtor.

14.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed sale of the Assets free and clear of certain liens, claims, interests and encumbrances, pursuant to Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Debtor.

15.     The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or announced by the Debtor in open court.

16.     Except as otherwise provided in this Order, the Debtor further reserves the right as it may reasonably determine to be in the best interests of the Debtor's estate, and following consultation with BETM, to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; and (g) continue or cancel the Auction and/or Sale Hearing in open court without further notice or by filing a notice on the docket.

17.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction and any transaction contemplated herein.

8

18.     To the extent that any order confirming any chapter 11 plan in this Chapter 11 Case or any other order in this Chapter 11 Case (including any order entered after any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control.   The Debtor's obligations under this Order and the provisions of this Order shall survive conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtor, any chapter 7 trustee, the reorganized or reconstituted debtor, as the case may be, after the effective date of a confirmed plan or plans in the Chapter 11 Case (including any order entered after any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code).

19.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.

20.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

22.     In the event there is any inconsistency between the Motion, the Bidding Procedures, or this Order, this Order shall govern.

23.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

#   #   #

9

Submitted by:
Paul J. Battista, Esq.
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL  33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: pbattista@gjb-law.com

*(Paul J. Battista, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)*

## EXHIBIT "1"

**Bidding Procedures**

11

## BIDDING PROCEDURES

By motion dated May 18, 2021 (the "**Motion**"), **LIBERTY POWER HOLDINGS, LLC** (the "**Debtor**"), as debtor and debtor-in-possession, sought, among other things, approval of certain competitive bidding procedures by which the Debtor will seek proposals for a transaction or transactions that alone or in combination will allow the Debtor to maximize the value of its assets (the "**Transaction**").  On June __, 2021, the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division (the "**Bankruptcy Court**") entered its order (the "**Bidding Procedures Order**"), which, among other things, authorized and directed the Debtor to market its assets to one or more persons that may be interested in acquiring substantially all of its assets including, without limitation, the interests of the Debtor and its wholly owned subsidiaries in retail customer contracts and associated receivables (collectively, the "**Assets**"), all under the procedures described below (the "**Bidding Procedures**").

### Important Dates

In connection with the solicitation of proposals for the Assets, the Debtor shall:

- Assist Potential Bidders (as defined herein) in concluding their respective due diligence investigations and accept initial indications of interest in connection with the potential acquisition of some of all of the Assets no later than **5:00 p.m.** (prevailing Eastern Time) on **July 16, 2021** (the "Interest Deadline");

- Assist Potential Bidders (as defined herein) in concluding their respective due diligence investigations and accept Bids (as defined below) and Adequate Assurance Packages (as defined herein) from Potential Bidders until **5:00 p.m.** (prevailing Eastern Time) on **August 16, 2021**;

- Negotiate first with Potential Bidders and then with Qualified Bidders (as defined herein) in preparation for an auction (the "**Auction**") to be held on **August 20, 2021**, commencing at **10:00 a.m.** (prevailing Eastern Time);

- Select the Successful Bidder (as defined herein), after consultation with the secured lender, Boston Energy Trading and Marketing, LLC ("**BETM**"), at the conclusion of the Auction (if an Auction occurs), and seek authority to sell the Assets, in whole or in part, to such Successful Bidder at a hearing (the "**Sale Hearing**") to be held by the Bankruptcy Court on **August 26, 2021,** at TBD (prevailing Eastern Time); and

- Close and consummate the Transaction with the Successful Bidder by the close of business, prevailing Eastern Time, on or before _____**, 2021**, unless the Debtor, in the exercise of its reasonable business judgment and following consultation with BETM, agrees to a later date.

## Marketing Process and Access to Diligence Materials

**Contact Parties**.

The Debtor, in consultation with BETM, has developed a set of competitive bidding and sale procedures set forth below that are designed to maximize the value of the Debtor's Assets. The Debtor, through its chief restructuring officer, Bob Butler (the "**CRO**"), is establishing a virtual data room ("**VDR**") which will be populated with due diligence information on the Debtor, its operations, assets, contracts and liabilities. Due diligence access may include management presentations as may be scheduled by the CRO and on-site inspections of the Assets and such other matters which a Potential Bidder may request and as to which the CRO, in his sole discretion may agree  The Debtor will make the VDR available to those potential purchasers who sign and return a Non-Disclosure and Confidentiality Agreement ("**NDA**") that the Debtor, together with its professionals, has prepared, and otherwise complies with these Bidding Procedures. In addition to the parties who have already contacted the Debtor with an interest in entering into a transaction with the Debtor in regard to the Assets, the Debtor, through the CRO and its senior management team, are compiling a list of potential third parties who the Debtor believes may have an interest in acquiring the Assets (each a "**Potential Bidder**"). The Debtor, through its CRO and the management team, will continue to market the Assets, will continue to identify potentially interested parties for the Assets and will contact and engage with such parties in respect of the opportunity to acquire the Assets.

Following the entry of the Bidding Procedures Order, the Debtor and BRG intend to contact Potential Bidders to explore their interest in pursuing a Transaction. Potential Bidders may include parties whom the Debtor or its advisors have previously contacted regarding a potential transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtor and BRG will continue to discuss and may supplement its list of Potential Bidders throughout the marketing process, as they deem appropriate.

**Access to Diligence Materials and Initial Indications of Interest**.

To participate in the bidding process and to receive access to due diligence information (the "**Diligence Materials**"), a Potential Bidder must deliver to the Debtor (i) an executed NDA, in form and substance satisfactory to the Debtor, and (ii) a statement demonstrating to the Debtor's satisfaction a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction.

No later than **5:00 p.m.** (prevailing Eastern Time) on **July 16, 2021** (the "Interest Deadline"), each Potential Bidder shall submit an initial indication of interest in connection with the potential acquisition of some of all of the Assets, which shall include (i) an indication of which Assets the Potential Bidder is interested in, (ii) an indication of value or proposed price that the Potential  Bidder is considering for its bid, and (iii) sufficient written evidence which in the sole and absolute discretion of the Debtor establishes that the Bidder has the financial ability to consummate the purchase of the Assets should such Bidder submit the highest and best bid, which the Debtor agrees to keep confidential as set forth below, including, without limitation, evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder.

A Potential Bidder who qualifies for access to Diligence Materials, as determined by the Debtor, may proceed to conduct due diligence for a Transaction. All diligence requests must be directed to BRG. Diligence Materials may be provided through access to the VDR, which may be maintained by a third party provider. All due diligence will end on the Bid Deadline (as defined below). Neither the Debtor nor any of its representatives (including BRG) will have any obligation to furnish any information relating to the Assets to any party that is not a Potential Bidder who has qualified for access to the Diligence Materials. Neither the Debtor nor BRG make any representations or warranties as to the Diligence Materials or otherwise, except to the extent set forth in a definitive agreement between the Debtor and the Successful Bidder relating to a Transaction.

For any Potential Bidder or Qualified Bidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right to withhold, or to delay providing, any Diligence Materials that the Debtor, in its sole discretion, determines is business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder or Qualified Bidder at such time.

All Potential Bidders and Qualified Bidders are prohibited form communicating with any of the Debtor's employees, managers, members, officers, landlords, vendors, suppliers, agents, lenders or any other Potential Bidder or Qualified Bidder with respect to any Bid or a Transaction absent the prior written consent of the Debtor; provided that if such consent is given, a representative of the Debtor shall, at the request of the Debtor, be present for or a party to any such communications.

## **Bid Requirements**

### **Delivery of Bids**.

No later than **5:00 p.m. (prevailing Eastern Time)** on **August 16, 2021** (the "**Bid Deadline**"), each Potential Bidder interested in maintaining its participation in the bidding process and making a proposal or offer for some or all of the Assets (each a "**Bid**")[1] must deliver copies of the Bid and supporting materials described herein to: (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com); and (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com) (collectively, the "**Service Parties**").

---

[1] If a Bid includes Assets which relate to customers served in the ERCOT Region, in order for such Bid to constitute a Qualified Bid, such Potential Bidder must provide evidence that such Potential Bidder is ERCOT qualified, including, but not limited to registering with ERCOT as a Market Participant in accordance with the ERCOT Protocols and executing ERCOT's Standard Form Market Participant Agreement.

**Form and Content of Bid.**

A Bid shall consist of a signed letter from a Qualified Bidder stating that:

      a.      The Qualified Bidder offers to purchase all or a specified portion of the Assets; and

      b.      The Qualified Bidder's offer is irrevocable until two business days after the earlier of: (i) the closing of the sale of the applicable Assets, whether or not to such Qualified Bidder; or (ii) 45 days after the Sale Hearing (subject to any requirements relating to a Successful Bid or a Backup Bid).

**Required Supporting Materials.**

A Qualified Bidder's Bid for the proposed purchase transaction with the Debtor (the "Transaction") shall be accompanied (or preceded) by:

      a.      a signed "clean" version of an asset purchase agreement, substantially in the form proposed by the Debtor (the "APA"),[2] together with a marked version to reflect any proposed changes to the APA from the form proposed by the Debtor and detailing all of the terms and conditions of the proposed Transaction; provided that all asset purchase agreements must contain (i) provisions allowing the Debtor reasonable access to any books and records purchased by the purchaser for the purpose of administering its bankruptcy case; (ii) the purchaser's acknowledgement and representation that the purchaser (A) is purchasing the Assets on an "as is, where is" basis, (B) has had an opportunity to conduct any and all due diligence regarding the Assets, (C) has relied solely upon its own independent review, investigation, and/or inspection of all documents and Assets, and (D) did not rely on any written or oral statements, representations or warranties whatsoever, regarding the assets, except as specifically set forth in the APA; and (iii) a waiver of any requirement that the Sale Order (as defined below) be final and non-appealable.  Consummation of the Transaction shall not be contingent on the purchaser obtaining financing or any internal approvals, or on the outcome or review of due diligence.  If the Debtor selects a Stalking Horse Bidder (defined below) prior to the Bid Deadline, then other Qualified Bidders must submit a signed "clean" version of the asset purchase agreement comprising the Stalking Horse Bid, together with a marked version to reflect any changes to the Stalking Horse Bid; provided that any such asset purchase agreement submitted by a Qualified Bidder other than the Stalking Horse Bidder may not contain representations and warranties, covenants, termination rights, financing, or due diligence contingencies other than as are included in the Stalking Horse Bid (it being agreed and understood that such Bid shall modify the Stalking Horse Bid as

---

[2] The Debtor will make available a copy of the APA form in the Virtual Data Room for submission by a Potential Bidder.

needed to comply in all respects with the Bid Procedures Order (including removing any termination rights in conflict with the Bid Procedures Order) and will remove provisions that apply only to the Stalking Horse Bidder);

b.  an affidavit under penalty of perjury from a corporate officer of the proposed Bidder identifying (i) the corporate structure of the proposed Bidder, (ii) the identity of the officers, directors, managers, members and equity holders of the proposed Bidder, (iii) disclosing any relationship between any of such parties and the Debtor or any or the Debtor's direct or indirect owners, and (iv) disclosing any relationship between any of such parties and any other interested Bidder and its principals;

c.  a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable Bid on the terms proposed; provided that if the Qualified Bidder is an entity specially formed for the purpose of consummating a Transaction, the Qualified Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the owner of such Qualified Bidder;

d.  to the extent that the Qualified Bidder proposes to include in its Bid the assumption and assignment of executory contracts or unexpired leases, a schedule showing such contracts and/or leases to be assumed and assigned, together with evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of such contracts and/or leases, such as, but not limited to, audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, and information allowing the Debtor to evaluate the value of any guaranties being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory (collectively, the "Adequate Assurance Package"); and

e.  Notwithstanding anything in these Bidding Procedures to the contrary, a Qualified Bid must provide for the assumption and assignment of any customer or other contracts entered into by the Debtor from and after the Petition Date, including any renewals of any pre-petition customer contracts.

**Required Good Faith Deposit.**

By the Bid Deadline, a Qualified Bidder must provide a good faith deposit (the "**Good Faith Deposit**") in an amount equal to 10% of such Qualified Bidder's purchase price.  The Good Faith Deposit must be made by wire transfer and will be held in the trust account of the Debtor' counsel.

**Proof of Financial Wherewithal**,

Each Bid must include written evidence, combined with any such written evidence provided in connection with an initial indication of interest as set forth above, which in the sole

and absolute discretion of the Debtor establishes that the Bidder has the financial ability to consummate the purchase of the Assets should such Bidder submit the highest and best bid.  The Bidder's financial ability to consummate the transaction shall include evidence related to the initial purchase price as well as any increased purchase price that such Bidder submits in connection with the Auction.  If so requested, the Debtor agrees to keep such information confidential, provided however that in the event of a dispute related to such financial wherewithal, the Debtor reserves the right to disclose such financial wherewithal to the Bankruptcy Court in connection with any such dispute

## As is/where is.

The Assets will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.  The Assets will be sold free and clear of any and all liens, claims, encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, encumbrances and interests to attaching to the proceeds of the sale.

## Qualified Bid.

A Bid received from a Potential Bidder that meets the requirements set forth above (as determined by the Debtor after consultation with the Agent) is considered a "**Qualified Bid**" and the Potential Bidder making a Qualified Bid is considered a "**Qualified Bidder**."  The Debtor reserves the right, in its discretion, to waive noncompliance with any one or more of such requirements and to deem an otherwise not qualified Bid to be a Qualified Bid.  The Debtor will advise all Qualified Bidders of any such waiver at the Auction.

### Stalking Horse Bidder, Break Up Fee and Expense Reimbursement

Prior to or after the submission of Bids, the Debtor, after consultation and with the consent of BETM, may enter into an agreement ("Stalking Horse Bid"), subject to higher and better offers at the Auction (as defined below), providing for a breakup fee (the "Breakup Fee") and/or reimbursement of documented out-of-pocket expenses incurred in connection with the negotiation of the Stalking Horse Agreement (the "Expense Reimbursement"), in each case in amounts to be negotiated by the Debtor in consultation with, and subject to the approval of, BETM.

### Conduct and Termination of Bidding Process

The Debtor may, in its reasonable discretion (after consultation with BETM): (a) determine whether any Potential Bidder satisfies the requirements specified above to become a Qualified Bidder; (b) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Offered Assets; (c) with the consent of BETM, determine whether to remove any of the Offered Assets from the sale process under these Bidding Procedures; (d) evaluate Bids from Potential Bidders and determine whether any such Bid is a Qualified Bid; (e) negotiate any Bid made to purchase some or all of the Offered Assets, and negotiate any related Transaction issues; (f) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtor and its estate; (g) with the consent of BETM, waive any terms and conditions set forth in the APA with respect to all Potential Bidders; (h) with the consent of BETM, impose additional terms and conditions with respect to all Potential Bidders; (i)

with the consent of BETM, extend the deadlines set forth herein; (j) with the consent of BETM, continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (k) make such other determinations as are provided in these Bidding Procedures.

### Auction Participation – Qualified Participants and Baseline Bid

Only a Qualified Bidder that has submitted a Qualified Bid, as determined by the Debtor, is eligible to participate in the Auction. If the Debtor receives one or more Qualified Bids, and there is no Stalking Horse Bid, then on or before **August 19, 2021 at 5:00 p.m. (prevailing Eastern Time)**, the Debtor will select, in its reasonable discretion (after consultation with BETM), the highest or otherwise best bid (the "**Baseline Bid**") to serve as the starting point for the Auction. The Debtor and its counsel shall preside over and conduct the Auction. Each Qualified Bidder participating in the Auction must confirm (and by its attendance shall be deemed to have confirmed) that (i) it has not engaged in any collusion with respect to the bidding or sale of the Offered Assets, (ii) it has complied and will continue to comply with the Bidding Procedures, including, but not limited to, refraining from, after the conclusion of the Auction, either submitting a Bid or seeking to reopen the Auction, and (iii) it waives any substantial contribution and any other administrative expense claims under Bankruptcy Code section 503(b) related to bidding for the Offered Assets. At the Debtor's request, each Qualified Bidder shall disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

### The Auction

**Time and Place**.

If one or more Qualified Bids are received by the Bid Deadline, the Auction will be conducted commencing at **10:00 a.m. (prevailing Eastern Time) on August 20, 2021**, at the offices of Genovese Joblove & Battista, P.A., 200 East Broward Blvd., Suite 1110, Fort Lauderdale, FL 33301, or, at Debtor's election, by video conference in virtual meeting room(s), or at such other time and place as the Debtor shall determine and notify the Qualified Bidders and counsel for BETM. If the Debtor receives only one Qualified Bid or no Qualified Bids by the Bid Deadline, the Debtor shall file a notice cancelling the Auction.

**Competitive Bidding**.

At the Auction, Qualified Bidders will be permitted to increase their Qualified Bids and will be permitted to bid based only upon the terms of the Baseline Bid or the Stalking Horse Bid, as applicable (except to the extent otherwise authorized by the Debtor). Unless there is a Stalking Horse Bid, the bidding will start at the purchase price and terms proposed in the Baseline Bid, and continue in increments of at least $100,000.00 in cash or cash equivalents (or such other increment announced by the Debtor prior to the start of or during the Auction); provided, however, that if there is a Stalking Horse Bid that includes an Expense Reimbursement and/or Breakup Fee, the initial overbid must exceed the approved Expense Reimbursement and Breakup Fee by at least $100,000. Overbids shall not include non-cash consideration until there are no further overbids in the form of cash or reduction to cure costs payable by the Debtor, but thereafter may include non-

cash consideration valued by the Debtor at not less than $100,000.  Any overbid shall remain open and binding on the Qualified Bidder until and unless the Debtor accept a higher overbid.

**Evaluation of Qualified Bids.**

For the purpose of determining the Baseline Bid and whether a Qualified Bid submitted at the Auction is higher or otherwise better, the Qualified Bid will be valued based upon factors such as: (a) the purported amount of the Qualified Bid; (b) the fair value to be provided to the Debtor under the Qualified Bid; (c) the ability to consummate any proposed sale transaction; (d) the type and nature of any requested changes to the APA; and (e) any other factors that the Debtor (after consultation with BETM) may deem relevant.  Upon the submission of any Qualified Bid at the Auction, the Debtor (after consultation with BETM) shall announce to all participants whether the bid submitted is higher or otherwise better than the previously submitted Qualified Bid.

**Adoption of Auction Rules**.

The Debtor may adopt rules for the bidding process at the Auction that, in its discretion (after consultation with BETM), will best promote the goals of the bidding process and are not inconsistent with any of the provisions of the Bidding Procedures described herein.  Nothing herein will prevent the Debtor from having separate negotiations with bidders during the Auction provided that the announcement of any bids actually made will be made in one room, on an open basis.  The Auction shall be transcribed by a court reporter retained by the Debtor.

**Designation of Successful Bidder**.

Immediately prior to the conclusion of the Auction, the Debtor will: (a) review each Bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed sale; (b) in its discretion (after consultation with BETM), identify the highest and best bid for the Assets at the Auction (the "Successful Bid"); and (c) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the name or names of the Qualified Bidder(s) making the Successful Bid for the applicable Assets (the "Successful Bidder"), and the amount and other material terms of the Successful Bid.

**Backup Bidder.**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest Qualified Bid after the Bid made by the Successful Bidder or otherwise next best Qualified Bid at the Auction, as determined by the Debtor, in the exercise of its reasonable business judgment and in consultation with BETM, will be designated as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid, if any (or if the Backup Bidder submitted one or more overbids at the Auction, its final overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern time) on the date which is 45 days after the date of the Sale Hearing (the "Outside Backup Date"), or (ii) the date of closing of a transaction with the Successful Bidder or with the Backup Bidder. Following the Sale Approval Hearing, if the Successful Bidder fails to consummate an approved Transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtor may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit, if any, shall be forfeited to the Debtor. The deposit of the Backup Bidder shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

**Notice of Successful Bid.**

Promptly after the conclusion of the Auction, the Debtor will file a notice on the Bankruptcy Court's docket in the lead case for the Debtor identifying the Successful Bidder and any applicable Backup Bidders.

**Presentation of Successful Bids to the Bankruptcy Court.**

At the Sale Hearing, the Debtor will present each Successful Bid (and may in its discretion present one or more Backup Bids) to the Bankruptcy Court for approval.

**Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the APA, the Auction or the construction and enforcement of any documents delivered in connection with a Bid.

## Acceptance of Qualified Bids

The Debtor presently intend to sell the Offered Assets to the Qualified Bidder(s) that submit(s) the highest and best bid(s). The Debtor's presentation to the Bankruptcy Court for approval of any Successful Bid does not constitute the Debtor' acceptance of such bid. The Debtor will be deemed to have accepted a bid only when it has been approved by the Bankruptcy Court at the Sale Hearing. If the Successful Bidder does not close the approved sale, then (in addition to any Backup Bid previously approved by the Bankruptcy Court) the Debtor will have the right to present any other bid, whether made prior to or at the Auction, to the Bankruptcy Court for approval.

### Return of Good Faith Deposit

The Good Faith Deposit of a Qualified Bidder that is not the Successful Bidder or a Backup Bidder shall be returned to such Qualified Bidder within three business days after the Sale Hearing. The Good Faith Deposit (to the extent  not to be delivered to Debtor pursuant to the terms of the APA) of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.  The Good Faith Deposit of the Successful Purchaser shall be returned to the Successful Purchaser or retained by the Debtor in accordance with the terms of the APA.  If the Successful Bidder timely closes the Transaction, its Good Faith Deposit shall be credited towards its purchase price.

### Reservation of Rights

The Debtor reserves the right to make changes in these Bidding Procedures (in consultation with BETM) to promote the realization of the highest and best offers for the Offered Assets and as they may determine to be in the best interests of its estate or to withdraw the Motion at any time with or without prejudice. The Debtor reserves the right, in its reasonable business judgment (after consultation with BETM), to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing overbid amount.

### The Sale Hearing

Objections, if any, to the sale of the Offered Assets to the Successful Bidder (other than an objection to the assignment and assumption of any executory contracts or unexpired leases) must be in writing and filed with the Bankruptcy Court no later than **4:00 p.m., prevailing Eastern Time**, on **August _____ 2021** (the "**Sale Objection Deadline**").    Objections, if any, to the assignment and assumption of any executory contracts or unexpired leases, on the basis of either (i) failure to provide adequate assurance of future performance or (ii) the intended use by the Successful Bidder or the Backup Bidder of the space subject to an unexpired lease, must be in writing and filed with the Bankruptcy Court no later than **12:00 p.m. (noon), prevailing Eastern Time**, on **August ____, 2021** (the "**Assumption Objection Deadline**").  All objections to the sale and the assignment and assumption of executory contracts and unexpired leases must be served on the Service Parties such that they are actually received by the Service Parties prior to the Sale Objection Deadline and the Assumption Objection Deadline, as applicable.  The Sale Hearing is scheduled to be conducted following the Auction (or if no Auction occurs but Debtor, upon consultation with Agent, have selected a Successful Bidder) on **August __ 2021**, at **9:30 a.m.** (prevailing Eastern Time) **by Video Conference.  To register for the video conference, manually enter the following registration link in a browser: [TO BE INSERTED]**  The Sale hearing is subject to the right of the Debtor, in the exercise of its reasonable business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Bankruptcy Court.

If any Successful Bidder is selected by the Debtor, the Debtor will seek the entry of an order from the Bankruptcy Court at the Sale Hearing approving and authorizing the proposed sale to the Successful Bidder(s) on the terms and conditions of the Successful Bid (a "**Sale Order**").

### <u>Miscellaneous</u>

BETM may exercise its right to credit bid all or any portion of the Pre-Petition Indebtedness under Section 365(k) of the Bankruptcy Code.  Notwithstanding anything contained to the contrary in the Bidding Procedures, BETM shall be deemed a Qualified Bidder and BETM shall not be required to provide any Good Faith Deposit or an Adequate Assurance Package if BETM submits a credit bid.

**<u>EXHIBIT "2"</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    **Chapter 11 Case**

**LIBERTY POWER HOLDINGS, LLC,**          **Case No. 21-13797-SMG**

     Debtor.

_____/

## NOTICE OF AUCTION AND SALE HEARING

PLEASE TAKE NOTICE OF THE FOLLOWING:

    1.    On May 18, 2021, Liberty Power Holdings, LLC (the "***Debtor***"), filed a Motion for entry of an order (the "***Bid Procedures Order***"), among other things, (a) approving certain competitive bidding and sale procedures (the "***Bid Procedures***") for the sale of substantially all of the Debtor's assets (the "***Assets***"); (b) scheduling dates to conduct an auction (the "***Auction***") and sale hearing (the "***Sale Hearing***") to consider the sale of the Assets, (c) approving the form and manner of notices; and (d) establishing procedures for the assumption and assignment of executory contracts and unexpired leases. The Motion additionally requests entry of an order (the "***Sale Order***") approving (i) the sale of the Assets free and clear of liens, claims, encumbrances and interests; (ii) the assumption and assignment of executory contracts and unexpired leases with the Debtor, and (iii) certain related relief.

    2.    On June ___, 2021, the United States Bankruptcy Court for the Southern District of Florida entered the Bid Procedures Order [ECF No. ____]. Pursuant to the Bid Procedures Order, the Auction for the Assets shall take place on **August 20, 2021 at 10:00 a.m**. (prevailing Eastern Time) virtually through an online platform (such as Zoom), or through such other means or such other place and time as the Debtor shall notify all Qualified Bidders and other invitees.  Only parties that have submitted a Qualified Bid in accordance with the Bid Procedures, by no later than **August 16, 2021 at 5:00 p.m**. (Eastern Time) (the "***Bid Deadline***") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bid Procedures. Parties interested in receiving information regarding the sale of the Assets should contact undersigned counsel.

    3.    The Sale Hearing to consider approval of the sale of the Assets and the assumption and assignment of the Assumed Agreements to the Successful Bidder free and clear of all liens, claims, encumbrances and interests will be held before the Honorable Scott M. Grossman, United States Bankruptcy Court, by video conference using the services of Zoom Video Communications, Inc. on **August [26], 2021 at TBD** (prevailing Eastern Time).  The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).  For instructions regarding the video conference, please refer to the *General Procedures for Hearings By Video Conference* on Judge Scott M. Grossman's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-scott-grossman. (the "***Video Hearing General Procedures***"). To register for the video conference, click on the following link or manually enter the following link in a browser [TO BE INSERTED].

4.      Objections, if any, to the relief requested in the Motion in respect of the sale of the Assets, the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Bankruptcy Court on or before **4:00 p.m. (prevailing Eastern time) on August 23, 2021** (the "***Sale Objection Deadline***"), and (iv) served upon: (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com); (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern time) on the same day.

5.      The failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Assets to the Successful Bidder or Back-Up Bidder, as applicable, and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Assets, and the assumption or assumption and assignment of the Assumed Agreements.

6.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety. Copies of the Motion, the Bid Procedures, and/or the Bid Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Genovese Joblove & Battista, P.A., 100 S.E. 2nd Street, 44th Floor, Miami, Florida 33131, Attn:  Paul J. Battista, Esq.; Tel. (305) 349-2300; e-mail at pbattista@gjb-law.com.  In addition, copies of the aforementioned pleadings may be found on the Pacer website, http://ecf.flsb.uscourts.gov.

Respectfully submitted on May ___, 2021.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:    /s/      *Paul J. Battista*
        Paul J. Battista, Esq.
        Florida Bar No. 884162
        pbattista@gjb-law.com
        Mariaelena Gayo-Guitian, Esq.
        Florida Bar No. 813818
        mguitian@gjb-law.com
        Heather L. Harmon, Esq.
        Florida Bar No. 013192
        hharmon@gjb-law.com

## **EXHIBIT "3"**

### **Cure Notice**

2

10571916-1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                        **Chapter 11 Case**

**LIBERTY POWER HOLDINGS, LLC,**          **Case No. 21-13797-SMG**

      **Debtor.**

_____/

**NOTICE OF DEBTOR'S INTENT TO ASSUME AND ASSIGN**
**CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**AND SETTING FORTH THE CURE AMOUNTS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On May 18, 2021, Liberty Power Holdings, LLC (the "***Debtor***"), filed a Motion for entry of an order (the "***Bid Procedures Order***"), among other things, (a) approving certain competitive bidding and sale procedures (the "***Bid Procedures***") for the sale of substantially all of the Debtor's assets (the "***Assets***"); (b) scheduling dates to conduct an auction (the "***Auction***") and sale hearing (the "***Sale Hearing***") to consider the sale of the Assets, (c) approving the form and manner of notices; and (d) establishing procedures for the assumption and assignment of executory contracts and unexpired leases.  The Motion additionally requests entry of an order (the "***Sale Order***") approving (i) the sale of the Assets free and clear of liens, claims, encumbrances and interests; (ii) the assumption and assignment of executory contracts and unexpired leases with the Debtor, and (iii) certain related relief.

2.      On June ___, 2021, the United States Bankruptcy Court for the Southern District of Florida entered the Bid Procedures Order [ECF No. ____]. Pursuant to the Bid Procedures Order, the Auction for the Assets shall take place on **August 20, 2021 at 10:00 a.m.** (prevailing Eastern Time) virtually through an online platform (such as Zoom), or through such other means or such other place and time as the Debtor shall notify all Qualified Bidders and other invitees. Only parties that have submitted a Qualified Bid in accordance with the Bid Procedures, by no later than **August 16, 2021 at 5:00 p.m.** (Eastern Time) (the "***Bid Deadline***") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bid Procedures. Parties interested in receiving information regarding the sale of the Assets should contact undersigned counsel.

3.      The Sale Hearing to consider approval of the sale of the Assets and the assumption and assignment of the Assumed Agreements to the Successful Bidder free and clear of all liens, claims, encumbrances and interests will be held before the Honorable Scott M. Grossman, United States Bankruptcy Court, by video conference using the services of Zoom Video Communications,

Inc. on **August [26], 2021 at TBD** (prevailing Eastern Time).  The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).  For instructions regarding the video conference, please refer to the *General Procedures for Hearings By Video Conference* on Judge Scott M. Grossman's web page on the Court's website,  https://www.flsb.uscourts.gov/judges/judge-scott-grossman.  (the "*Video Hearing General Procedures*").  To register for the video conference, click on the following link or manually enter the following link in a browser [TO BE INSERTED].

4.      The Debtor is a party to various executory contracts and unexpired leases (collectively, the "*Contracts*") and, pursuant to the Bid Procedures Order, the Debtor may assume or assume and assign certain of such Contracts to the Successful Bidder or Back-Up Bidder, as applicable (collectively, the "*Assumed Agreements*").

5.      You have been identified as a counterparty to an Assumed Agreement. The Assumed Agreement with respect to which you have been identified as a counterparty, and the corresponding proposed cure amount (the "*Cure Amount*") are set forth on **Schedule 1** annexed hereto.

6.      The Debtor believes that any and all defaults (other than the filing of this chapter 11 case) and actual pecuniary losses under the Assumed Agreement can be cured by the payment of the Cure Amount.

7.      The assumption and assignment of any Assumed Agreement shall result in the full release and satisfaction of any claims or defaults relating to the Assumed Agreement, whether monetary or non-monetary.

8.      Objections, if any, to the Cure Amount or the assumption and/or assignment of an Assumed Agreement for any other reason (the "*Cure Amount Objection*") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Bankruptcy Court on or before on or before **4:00 p.m. (prevailing Eastern Time) on August 23, 2021** (the "*Cure Objection Deadline*") and served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon: (i) Liberty Power Holdings, LLC, c/o Bob Butler (email: bbutler@thinkbrg.com); (ii) the attorneys for the Debtor, Genovese Joblove & Battista, P.A., c/o Paul J. Battista, Esq. (email: pbattista@gjb-law.com) and Mariaelena Gayo-Guitian, Esq. (email: mguitian@gjb-law.com);  (iii) the attorneys for BETM, c/o Eversheds Sutherland (US) LLP, c/o David T. McIndoe, Esq. (email: davidmcindoe@eversheds-sutherland.com), and Berger Singerman LLP, c/o Jordi Guso, Esq. (email: jguso@bergersingerman.com), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern time) on the same day (together, the "*Notice Parties*").

9.      Any counterparty to an Assumed Agreement that fails to timely file a Cure Amount Objection by the Cure Objection Deadline, such party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Contracts and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Assumed Agreements and

shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or any other assignee of the relevant Assumed Agreements that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Assumed Agreements.

10.     Where a counterparty to an Assumed Agreement files a timely Cure Amount Objection, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Cure Amount.  After receipt of the Cure Amount Objection, the Debtor will attempt to reconcile any differences in the Cure Amount believed by the non-debtor party to exist.  In the event, however, that the Debtor and the non-debtor party are unable to consensually resolve the Cure Amount Objection, the Debtor will segregate any disputed Cure Amount pending the resolution of any such disputes by this Court or mutual agreement of the parties.

11.     If no Cure Amount is due under the Assumed Agreement, or the counterparty to such agreement does not otherwise object to the assumption and assignment of such agreement, no further action needs to be taken on the part of that counterparty.

12.     The Debtor's decision to assume and assign the Assumed Agreement is subject to Bankruptcy Court approval and consummation of the Sale. Absent consummation of the Sale, each Assumed Agreement may not be deemed assumed and assigned and shall in all respects be subject to further administration under the Bankruptcy Code. The designation of any agreement as an Assumed Agreement shall not constitute or be deemed to be a determination or admission by the Debtor that such document is, in fact, an executory Contract or unexpired Lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).
.

Respectfully submitted this _____day of May 2021.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: ___/s/___ *Paul J. Battista*_____
      Paul J. Battista, Esq.
      Florida Bar No. 884162
      pbattista@gjb-law.com
      Mariaelena Gayo-Guitian, Esq.
      Florida Bar No. 813818
      mguitian@gjb-law.com
      Heather L. Harmon, Esq.
      Florida Bar No. 013192
      hharmon@gjb-law.com

## Schedule 1