### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In re:                                                    **Chapter 11**

**LIBERTY POWER HOLDINGS, LLC,**                          **Case No. 21-13797-PDR**

     **Debtor.**

_____/

### NOTICE OF FILING

    **LIBERTY POWER HOLDINGS, LLC (**the "Debtor" or "Holdings"), by and through

undersigned counsel, hereby files the redlined version of the *Final Order Under Bankruptcy Code*

*Sections 105, 361, 362, 363, 364 and 507(B) and Bankruptcy Rules 2002, 4001, 6004 and 9014*

*(I) Authorizing Debtor (A) to Use Cash Collateral, and (B) to Obtain Senior Secured Post-Petition*

*Financing, and (II) Granting Related Relief* attached hereto as Exhibit "A," marked against the

Interim Order entered by the Court [ECF No. 86].

                          Respectfully Submitted,

                          **GENOVESE JOBLOVE & BATTISTA, P.A.**
                          *Attorneys for Debtors-in-Possession*
                          100 Southeast Second Street, Suite 4400
                          Miami, Florida 33131
                          Telephone: (305) 349-2300
                          Facsimile: (305) 349-2310

                          By:    /s/    *Paul J. Battista*
                                Paul J. Battista, Esq.
                                Florida Bar No. 884162
                                pbattista@gjb-law.com
                                Mariaelena Gayo-Guitian, Esq.
                                Florida Bar No. 813818
                                mguitian@gjb-law.com
                                Heather L. Harmon
                                Florida Bar No. 13192
                                hharmon@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing Notice was served via electronic mail and CM/ECF Notification upon all interested parties registered to receive electronic notification and/or via U.S. Mail or e-mail as indicated on the Service List below on the 26th day of May, 2021.

### SERVICE LIST

***Served Via CM/ECF Notification***

Scott Andron on behalf of Creditor Broward County
sandron@broward.org, swulfekuhle@broward.org

Stephen J Bagge on behalf of Creditor Lynne Rhodes
sbagge@baggelaw.com

Stephen J Bagge on behalf of Creditor Samuel Katz
sbagge@baggelaw.com

Jeffrey P. Bast, Esq. on behalf of Creditor Philip J. von Kahle
jbast@bastamron.com,
jdepina@bastamron.com;kjones@bastamron.com;jmiranda@bastamron.com;mdesvergunat@bastamron.com

Paul J. Battista, Esq on behalf of Debtor Liberty Power Holdings, LLC
pbattista@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;jzamora@gjb-law.com;gjbecf@ecf.courtdrive.com;vlambdin@gjb-law.com

Jason B Binford on behalf of Interested Party State of Texas
jason.binford@oag.texas.gov

Albert A Ciardi on behalf of Creditor BLT Fish LLC BLT Steak LLC
aciardi@ciardilaw.com, sfrizlen@ciardilaw.com;dtorres@ciardilaw.com

Jonathan F Dinerstein on behalf of Creditor Commonwealth of Massachusetts
jonathan.dinerstein@mass.gov

Alexandra A Fahringer on behalf of Creditor PJM Interconnection, LLC
afahringer@schnader.com

Robert C Folland on behalf of Interested Party Midcontinent Independent System Operator ("MISO")
rob.folland@btlaw.com, courtney.dunham@btlaw.com

Mariaelena Gayo-Guitian on behalf of Debtor Liberty Power Holdings, LLC
mguitian@gjb-law.com, gjbecf@gjb-law.com;vlambdin@gjb-law.com;cesser@gjb-law.com;chopkins@gjb-law.com;gjbecf@ecf.courtdrive.com

Eric Goldstein on behalf of Creditor ISO New England Inc.
egoldstein@goodwin.com, bankruptcy@goodwin.com;bankruptcyparalegal@goodwin.com

Daniel N Gonzalez, Esq on behalf of Interested Party Liberty Power Corp., LLC
dgonzalez@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;gonzalez@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com

Daniel N Gonzalez, Esq on behalf of Interested Party Liberty Power Corporation
dgonzalez@melandbudwick.com,
ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;gonzalez@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com

Jordi Guso, Esq. on behalf of Creditor Boston Energy Trading and Marketing, LLC
jguso@bergersingerman.com,
fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com

Heather L Harmon, Esq on behalf of Debtor Liberty Power Holdings, LLC
HHarmon@gjb-law.com, gjbecf@gjb-law.com;ecastellanos@gjb-law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com

Michael S Hoffman on behalf of Interested Party 2100 West Cypress Creek Road Associates, LLC
Mshoffman@hlalaw.com,
hlaecf@gmail.com;kszolis@hlalaw.com;mshoffman@ecf.courtdrive.com

Kevin M Lippman on behalf of Interested Party Electric Reliability Council of Texas
klippman@munsch.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Deborah M Perry on behalf of Interested Party Electric Reliability Council of Texas
dperry@munsch.com

Ethan M Preston on behalf of Creditor Lynne Rhodes
ep@eplaw.us

Ethan M Preston on behalf of Creditor Samuel Katz
ep@eplaw.us

Dana R Quick on behalf of Creditor Philip J. von Kahle
dquick@bastamron.com,
jdepina@bastamron.com;jmiranda@bastamron.com;mdesvergunat@bastamron.com

Timothy J Reppucci on behalf of Creditor Commonwealth of Massachusetts
timothy.reppucci@mass.gov

Abigail R Ryan on behalf of Interested Party State of Texas
abigail.ryan@oag.texas.gov

J. Steven Wilkes on behalf of U.S. Trustee Office of the US Trustee
steven.wilkes@usdoj.gov

**Served via U.S. Mail/E-Mail upon:**

Victoria Dusch, Chief Financial Officer vdusch@libertypowercorp.com
David Hernandez, Chief Executive Officer - dhernandez@libertypowercorp.com
Alberto Daire past president adaire@libertypowercorp.com
Derik Viner, President  dviner@libertypowercorp.com
Marty Halpern  - Manager - United TranzActions mhalpern@unitedtranzactions.com
Stephen Gray -  Independent  Director ssg@grayandcompanyllc.com
Stephen Gibelli, General In house counsel  sgibelli@libertypowercorp.com
Breton Leone-Quick, Esq BLeone-Quick@mintz.com
Audrey Louison, Esq  ALouison@mintz.com

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Chapter 11 Case

LIBERTY POWER HOLDINGS, LLC,                Case No. 21-13797-SMG

      Debtor.
_____/

**~~INTERIM~~FINAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364~~(c)(1), 364(c)(2), 364(c)(3), 364(d)~~ AND ~~364(e~~507(B) AND BANKRUPTCY RULES 2002, 4001, 6004 and 9014 (I) AUTHORIZING DEBTOR ~~TO~~ (A) TO USE CASH COLLATERAL, AND (B) TO OBTAIN SENIOR SECURED POST-PETITION FINANCING, AND (II) GRANTING RELATED RELIEF ~~AND (III) SCHEDULING FINAL HEARING~~**

     **THIS CAUSE** came before the Court on  May ~~6~~24, 2021 at ~~9:30~~11:00 a.m. (the "~~Interim~~Final Hearing") upon the motion, dated May 5, 2021 [ECF No. 72] (the "Motion~~")~~"),[1]~~,~~ of Liberty Power Holdings, LLC (the "Borrower" or the "Debtor"), as debtor-in-possession in the above-captioned case (the "Case") for interim and final orders under sections 105, 361, 362, 363,

---

[1] Capitalized terms used in this ~~Interim~~Final Order and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

364~~(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e)~~ and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Bankruptcy Rules"), seeking:

(a)    authorization to use the Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) to fund its day-to-day operating expenses, including to retain employees;

(b)    authorization for the Borrower to obtain up to $40,000,000 in amount of post-petition financing (inclusive of any interest or fees) (collectively, the "DIP Financing"), all on the terms and conditions set forth in this ~~Interim~~Final Order and the Preliminary Debtor-In-Possession (DIP) Financing Term Sheet, dated as of April 29, 2021, presented by Boston Energy Trading and Marketing, LLC or its designee or assignee (the "DIP Lender") (substantially in the form attached to this ~~Interim~~Final Order as Exhibit A, and as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Term Sheet"); together with all agreements, documents, instruments and/or amendments delivered in connection therewith, including the Post-Petition Supply and  Services Agreement between the Debtor and DIP Lender (collectively, the "DIP Documents~~")~~"),[2]~~,~~ and the budget annexed hereto as Exhibit B, as the same may be amended from time to time by the Debtor with the consent and approval of the DIP Lender (the "Budget");

---

[2] ~~The ~~On May 20, 2021, the Debtor ~~will file any additional~~filed the final form of DIP Documents ~~no later than two business days prior to the Final Hearing.~~[ECF No. 114].

(c)    authorization for the Debtor to execute and deliver the DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith, including the replacement of certain credit-support arrangements;

(d)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") authorizing the Borrower, on an interim basis, to use Cash Collateral and incur new indebtedness under this Interim Order and the DIP Documents up to $4,000,000,[3] plus interest and fees as described in paragraph 6(a) below, and

(e)    to schedule, pursuant to Bankruptcy Rule 4001, ~~a final hearing (~~the "Final Hearing~~")~~ on the Motion to be held before this Court to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the transactions described in the foregoing clauses (a) through (d) pursuant to the Final Order.

~~The Interim~~On May 10, 2021, the Court entered the *Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 And 9014 (I) Authorizing Debtor to (A) Use Cash Collateral, and (B) Obtain Senior Secured Post-Petition Financing, (II) Granting Related Relief, and (III) Scheduling Final Hearing* [ECF No. 86] (the "Interim Order") granting the Motion on an interim basis and scheduling the Final Hearing.  The Interim and Final Hearing having been held by the Court to consider the relief sought in the Motion, and upon the record of the ~~Interim Hearing~~Final Hearing, including consideration of the *Limited Objection to Interim Order* filed by BLT Steak, LLC and BLT Fish, LLC [ECF No. 107] (the "BLT Objection"), and after due deliberation and

---

[3] ~~For purposes of this Interim Order, the DIP Financing shall not exceed $4,000,000, which subject to entry of the Final Order and the DIP Lender's sole discretion, may be increased to $40,000,000.~~

consideration and sufficient cause appearing therefor, and the Debtor and the DIP Lender having stipulated as follows:

I.   *STIPULATIONS*.

A.     On April 20, 2020 (the "Petition Date"), the Debtor filed a voluntary petition commencing this Case.

B.     The Debtor is a retail energy provider (an "REP") that is active in competitive electricity markets in over a dozen jurisdictions operating in five organized markets. The Debtor and its subsidiaries are certified and licensed to provide retail electric service by the Public Utilities Commissions or Public Service Commissions in each of California, Connecticut, District of Columbia, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Texas and Virginia. The Debtor currently services hundreds of thousands of customer accounts in 14 states.

C.     The Debtor sells electricity to residential, commercial and industrial customers, wherein it competes in price and terms with other REPs and the public utility in a given market area. The Debtor typically makes a profit in the form of a margin between the price it charges a customer under a sales contract for electricity and the cost at which the Debtor sources such electricity in the wholesale markets. However, that margin must also account for the costs associated with hedging, financing, and commercial operating expenses, among other things.

D.     Each organized market is operated by an independent system operator (each, an "ISO"), including the Electric Reliability Council of Texas ("ERCOT"), Pennsylvania, Jersey Maryland Power Pool ("PJM"), New York ISO, or ISO-New England. As the Debtor's customers consume electricity, each ISO balances that consumption with generation, and this balancing is treated as a purchase by the Debtor in the wholesale markets and a resale to the customer. Typically, on a monthly basis, the ISO settles accounts and, in doing so, invoices the Debtor for

the power collectively consumed by its customers as a purchase in the wholesale market. Because the ISO is effectively taking counterparty credit exposure to the Debtor as any month progresses, the ISO demands that the Debtor provide it with credit assurance.

E.       In July 2020, the Debtor completed a restructuring of its capital structure. In connection thereafter, the Debtor and Boston Energy Trading and Marketing, LLC ("BETM") executed the following documents:

     i.   Supply and Service Agreement, by and among Boston Energy Trading and Marketing LLC, and Liberty Power Holdings LLC, dated as of July 6, 2020 (the "Supply and Services Agreement");

    ii.   ISDA (International Swap and Derivatives Association, Inc.) 2002 Master Agreement by and among Boston Energy Trading and Marketing LLC, and Liberty Power Holdings LLC, dated as of July 6, 2020;

   iii.   Pledge and Security Agreement, by and among Liberty Power Holdings LLC, Liberty Power District of Columbia LLC, Liberty Power Maryland LLC, LPT, LLC, and Liberty Power Super Holdings LLC, and Boston Energy Trading and Marketing LLC, dated as of July 6, 2020 (the "Pledge Agreement");

   iv.   Parent Agreement, by and between Liberty Power Holdings LLC, Liberty Power Super Holdings LLC, and Boston Energy Trading and Marketing LLC, dated as of July 6, 2020;

    v.   Consent and Acknowledgement Letter, by and between Liberty Power Holdings, LLC and Boston Energy Trading and Marketing LLC, dated July 6, 2020; and

   vi.   Intercreditor Agreement by and among Boston Energy Trading and Marketing LLC, David Hernandez, Martin Halpern, Shell Energy North America (US), L.P., Liberty Power Holdings LLC, and the other Grantors party hereto dated as of July 6, 2020 (the "Intercreditor Agreement").

(collectively, the "Pre-Petition Agreements").

F.       Pursuant to the Supply and Services Agreement, BETM provides, among others, the following services to the Debtor:

     i.   Provision of credit support to the ISOs and other key service providers or regulators for the operation of an REP like the Debtor;

    ii.    Hedges, either as financial instruments (e.g., a fixed/float swap) or as physical trades (e.g., selling power to the REP in the wholesale market);

    iii.    Working capital in the form of payment provisions that, among other things, bridges the gap between when the REP collects invoices from its customers and when the REP must pay the ISO, and allow certain amounts above in excess of available funds to be deferred to following month;

    iv.    Access to third-party sellers in the wholesale markets and or financial hedge provider through intermediation trades; and

    v.    Supports the REP through various operational services, like risk management and scheduling.

G.    BETM also provides a unique form of credit support to the ISOs in order to support the Debtor's activities. In essence, BETM provided a guaranty to each ISO for payments due to the ISOs in respect of electricity that the Debtor's customers consumed. In addition, BETM provided collateral to the ISOs in order to secure the Debtor's payment obligation prior to any settlement cycle (this financial support is known as "ISO Credit Support").

H.    As of the Petition Date, the Debtor was justly indebted to BETM in the amount of $121,031,960.56, plus interest, costs and attorneys' fees for advances and other financial accommodations extended by BETM to or for the benefit of the Debtor (the "Pre-Petition Indebtedness"). The Pre-Petition Indebtedness is due to BETM without deduction, setoff, defense or counterclaim.

I.    To secure their obligations under the Pre-Petition Agreements including repayment of the Pre-Petition Indebtedness (collectively, the "Pre-Petition Obligations"), pursuant to the Pledge Agreement the Debtor and the Pledgors granted BETM a first priority security interest in substantially all of their tangible and intangible personal property (the "Pre-Petition Collateral").

J.    On July 6, 2020, BETM protected its first-priority security interest by filing a UCC-

1 Financing Statement with the Delaware Secretary of State (U.C.C. Initial Filing No: 2020 4653442). As acknowledged in the Intercreditor Agreement, BETM holds a properly perfected, duly enforceable, first-priority lien on substantially all of the assets of the Debtor and its subsidiaries, and a perfected first-priority lien on all of the equity interests of the Debtor (the "Pre-Petition Liens").

K.      Subject in all respects to paragraph 10 below, the Debtor and the Debtor's estate on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries and assigns hereby unconditionally, irrevocably, and fully forever releases, remises, acquits, relinquishes, irrevocably waives, and discharges the DIP Lender, and each of its affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such (collectively, the "Representatives"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations (as defined below), the Post-Petition Liens (as defined below), the DIP Documents, the Pre-Petition Agreement or the Pre-Petition Liens including, without limitation, (i) any and all claims and causes of action arising under the Bankruptcy Code, (iii) any and all claims arising from or relating to the Pre-Petition Agreements

or any transaction or occurrence prior to the Petition Date and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Lender.

L.       The Debtor's foregoing acknowledgments, stipulations, waivers, and releases (solely with respect to the releases, once they become effective) shall be binding on the Debtor and its respective representatives, successors, and assigns, and on the Debtor's estate and all entities and persons, including any creditors of the Debtor, and each of its respective representatives, successors, and assigns, including, without limitation, but subject in all respects to paragraph 10, any trustee or other representative appointed in the Case, or upon conversion to chapter 7, whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code.

## II.      *FINDINGS REGARDING THE DIP FINANCING.*

M.       This Court has core jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 and the Local Bankruptcy Rules.

N.       Notice of the Motion, the relief requested therein and the relief sought at the Interim Hearing was served by the Debtor by either electronic mail, facsimile or overnight mail to: (a) the Office of the United States Trustee, 51 SW First Avenue, Room 1204 Miami, FL 33130; (b) the creditors known to the Debtor holding the twenty largest unsecured claims against the Debtor's estate; (c) Eversheds Sutherland (US) LLP, 700 6th Street, NW, Suite 700, Washington, DC 20001-3980, Attn: David T. McIndoe, Esq., attorneys for the DIP Lender; (d) Eversheds Sutherland (US) LLP, 101 Fannin Street, Suite 3700, Houston, TX 77002-6760, Attn: Mark D. Sherrill, Esq.,

attorneys to the DIP Lender; (e) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso, Esq., attorneys for the DIP Lender, (f) any creditor known to the Debtor asserting a pre-petition lien and/or security interest in any of the Debtor's assets, and (g) all parties who have filed a request for notice in this Case.  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein and the Final Hearing, including by and through the Interim HearingOrder, constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the InterimFinal Hearing and the relief granted herein is necessary or required.

O.      As evidenced by the Certificate of Service dated May 10, 2021 [ECF No. 87], the Debtor served the Interim Order via CM/ECF, electronic mail or U.S. Mail on the parties listed therein.

O.P.    Good and sufficient cause has been shown for the entry of this InterimFinal Order.

P.Q.    The Debtor has an immediate need to obtain use Cash Collateral to preserve its assets, including its valuable contracts, and to pay its ordinary and necessary operating expenses, including to its vendors and employees.  The Debtor also requires access to the DIP Financing in order to continue to support its retail energy business.   The DIP Financing, which similar to the supply and financing arrangements in place between the Debtor and DIP Lender prior to the commencement of this Case ("Pre-Petition Supply Facility"), will provide the Debtor:

(i)      credit support to each ISO that operate the organized markets in which the Debtor is active and other key service providers or regulators for the operation of a retail energy provider similar to the Debtor;

(ii)    hedges, either as financial instruments (e.g., a fixed/float swap) or as physical trades (e.g., selling power to the Debtor in the wholesale market);

(iii)    working capital in the form of payment provisions that, among other things, bridges the gap between when the Debtor collects payment from its customers and when the Debtor must pay the applicable ISO, and allow certain amounts in excess of available funds to be deferred to following month;

(iv)    access to third-party sellers in the wholesale markets and/or financial hedge providers through intermediation trades; and

(v)    various operational services, like risk management and scheduling.

Q.R.    Access to such DIP Financing is necessary and vital to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of its estate and to facilitate a sale of the Debtor's assets.

R.S.    The Debtor has proffered that under the facts and circumstances of this Case it is unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting the DIP Liens (as defined in paragraph 85 below) and the Superpriority Claims (as defined in paragraph 74 below) under the terms and conditions set forth in this InterimFinal Order and the DIP Documents.

S.T.    The Debtor has proffered that the terms of the DIP Documents pursuant to this InterimFinal Order are fair and reasonable, reflect the Debtor's exercise of prudent business

judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

~~T.~~U.    The DIP Documents and the DIP Financing have been the subject of negotiations conducted in good faith and at arms'-length among the Debtor, the DIP Lender, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Financing, including, without limitation, (i) all advances made or credit support provided to the Debtor pursuant to the DIP Documents and (ii) all other obligations of the Debtor under the DIP Documents or this ~~Interim~~Final Order owing to the DIP Lender, including any obligations to indemnify the DIP Lender and to pay any interest, fees, expenses (collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the DIP Lender and its affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

~~U.~~V.    ~~The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed.~~ Consummation of the DIP Financing in accordance with the terms of this ~~Interim~~Final Order and the DIP Documents is ~~therefore~~ in the best interests of the Debtor's estate and is consistent with the Debtor's exercise of its fiduciary duties.

Accordingly,

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.    *Disposition*.  The Motion is granted ~~on an interim basis~~ in accordance with the terms

of this ~~Interim~~Final Order.  ~~Any~~The BLT Objection and any other objections to the ~~interim~~ relief sought in the Motion with respect to the entry of this ~~Interim~~Final Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    *Authorization to Use Cash Collateral.*  Subject to the terms and conditions of this ~~Interim~~Final Order, the Debtor is authorized to use Cash Collateral for ~~the period from the Petition Date through the date of the Final Hearing (as defined below) for~~ those purposes of and in the amounts set forth in the Budget~~.~~

3.    *Authorization of the DIP Financing and the DIP Documents.*

a.    The Debtor is hereby authorized to execute, enter into and perform under the DIP Documents and to incur new indebtedness thereunder up to an aggregate amount of $~~4~~40,000,000 (including interest, fees and other expenses provided for in the DIP Documents), ~~pending entry of the Final Order,~~ all of the foregoing in accordance with the terms of this ~~Interim~~Final Order and the other DIP Documents (collectively, the "DIP Obligations").  All of the indebtedness incurred by the Debtor shall be used solely for the purposes permitted under this ~~Interim~~Final Order and the other DIP Documents and in accordance with the Budget.

b.    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all reasonable fees and expenses that the DIP Lender incurs in connection with the preparation, execution and delivery of the DIP Documents, or the Debtor's performance of its obligations under the DIP Documents and the DIP Financing, including without limitation:

12

(i)    the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications are material; and

(iii)    the performance of all other acts required under or in connection with the DIP Documents.

c.   Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this ~~Interim~~Final Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this ~~Interim~~Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

d.   In connection with the execution and delivery of the DIP Documents and to support future obligations of the Debtor to third parties, the Debtor is authorized and directed to facilitate the modification of any outstanding credit support provided under the Pre-Petition Supply Facility with credit support to third parties provided under the DIP Documents, with such changes as set forth in the DIP Term Sheet, including the DIP Lender providing the Borrower with collateral to

13

deliver to an ISO in lieu of the DIP Lender acting as a party directly responsible to an ISO in respect of the obligations of the Debtor.

4.      *Superpriority Claims*.  Subject to the Carve-Out (as defined in paragraph 12 below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "<u>Superpriority Claims</u>") against the Debtor with priority over any and all administrative expenses and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Debtor and all proceeds thereof.

5.      *DIP Liens; Deposit Accounts*.  As security for the DIP Obligations, and subject to the Carve-Out (as defined in paragraph 12 below), effective and perfected upon the date of this ~~Interim~~<u>Final</u> Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any Post-Petition Collateral (as defined in this paragraph 5), the following security interests and liens are hereby granted by the Debtor to DIP Lender (all property identified in clauses (a), (b) and (c) below

being collectively referred to as the "Post-Petition Collateral"[4], and all such liens and security interests granted to the DIP Lender, pursuant to this ~~Interim~~Final Order and the DIP Documents, the "DIP Liens"):

     a. *Priming Liens on Pre-Petition Collateral.*  Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority senior lien (*pari passu* with the Pre-Petition Liens) on, and security interest in, all tangible and intangible prepetition and post-petition property of the Debtor, whether existing on or as of the Petition Date or thereafter acquired, including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing.  Notwithstanding anything in this ~~Interim~~Final Order to the contrary, the DIP Liens shall not attach to any claims and causes of action arising under state or federal law under chapter 5 of the Bankruptcy Code or any proceeds thereof (the "Avoidance Actions").

     b. *Liens Senior To Certain Other Liens.*  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code, (B) any liens or security interests arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court

---

[4] The Pre-Petition Collateral and the Post-Petition Collateral are, collectively, the "Collateral."

for any liability of the Debtor, or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise.

      c.  *Deposit Accounts.*  With the exception of the Debtor's Money Market Account (x3760), each of the bank accounts maintained by the Debtor (collectively, the "<u>Bank Accounts</u>") is subject to an account control agreement (each, a "<u>Control Agreement</u>") among the Debtor, JP Morgan, and DIP Lender.  Notwithstanding the commencement of this Case and Section 552 of the Bankruptcy Code, each Control Agreement shall remain in full force and effect and  DIP Lender's perfected security interest shall continue to attach to the Bank Accounts and the proceeds thereof, including as to funds deposited in the Bank Accounts from and after the Petition Date.

      6.  *Adequate Protection for Use of Cash Collateral.*  As adequate protection for the use of its Cash Collateral, DIP Lender is hereby granted a security interest in and lien upon all the personal property of the Debtor, whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products, rents, revenues, or profits of such property, excluding, however, the Avoidance Actions (the "<u>Replacement Liens</u>"). The Replacement Liens shall be junior and subordinate to the DIP Liens and the Carve Out.  The Replacement Liens shall be deemed attached, perfected, and enforceable against the Debtor and all other persons, including without limitation, any subsequently appointed trustee for the Debtor, without the filing of any financing statements or other compliance with non-bankruptcy law.

      7.  *Milestones.*  The DIP Lender is hereby entitled to performance of the following milestones by the dates set forth below (or such later date as may be agreed by the DIP Lender) (the "<u>Milestones</u>"), and for the avoidance of doubt, the failure of the Debtor to comply with any of the Milestones shall constitute an immediate Event of Default under the DIP Documents and this ~~Interim~~<u>Final</u> Order and permit DIP Lender to exercise the rights and remedies provided for in

this ~~Interim~~Final Order and the DIP Documents:

   a. On or before May 18, 2021, the Debtor shall have filed a motion seeking approval of sale and bidding procedures for the sale of substantially all the Debtor's assets (the "Bidding Procedures Motion")  in the Bankruptcy Court;

   b. On or before June 4, 2021, the Bankruptcy Court shall have entered an order granting the Bidding Procedures Motion, in form reasonably acceptable to the DIP Lender (the "Bidding Procedures Order");

   c. No later than fifteen (15) calendar days after entry of the Bidding Procedures Order, Debtor shall deliver a draft confidential information memorandum (the "CIM") to DIP Lender along with a proposed draft purchase agreement for the sale;

   d. No later than forty-five (45) calendar days after entry of the Bidding Procedures Order, Debtor shall deliver a final version of the CIM and a final version of the draft purchase agreement (together with the related disclosure schedules) to prospective purchasers, including those prospective purchasers that Debtor believes in good faith could submit a binding bid, and such final version of the CIM, together with a list of such prospective purchasers, shall be delivered to DIP Lender;

   e. On or before August ~~16~~19, 2021, the Bid Deadline (as defined in the Bidding Procedures Order) shall have occurred;

   f. On or before August ~~19~~24, 2021, the Debtor, in consultation with the DIP Lender, will select a bid that it believes represents the highest and best offer for the sale received by the Bid Deadline;

   g. On or before August ~~20~~25, 2021, the Debtor shall have commenced the Auction (as defined in the Bidding Procedures Order), if necessary;

   h. On or before August ~~26~~31, 2021, a hearing shall have occurred in the Bankruptcy Court to consider approval of the sale contemplated by the Bidding Procedures Order;

   i. On or before ~~August 31~~September 3, 2021, the Bankruptcy Court shall have entered the Sale Order (as defined in the Bidding Procedures Order).

   8.  *Event of Default.*  The occurrence of any of the following events shall constitute an

"Event of Default" under this ~~Interim~~Final Order:

   a. the granting of relief from the automatic stay to foreclose a lien or the taking of control or possession of, or the exercise of any right of setoff with respect to, any

17

Post-Petition Collateral;

b.   the failure to obtain the entry of the Final Order with terms satisfactory to the DIP Lender on or before  June 1, 2021, unless agreed to otherwise in writing by the DIP Lender in its sole discretion;

c.   the failure to achieve or perform any of the Milestones set forth in paragraph 7 of this ~~Interim~~Final Order;

d.   the entry by the Bankruptcy Court or another court of competent jurisdiction of an order disallowing any of the DIP Obligations or determining that any provision of the DIP Documents is not enforceable according to its terms;

e.   the entry by the Bankruptcy Court of an order determining that the DIP Liens are invalid or do not have the priority and extent provided in the DIP Documents, ~~this~~the Interim Order or ~~the~~this Final Order;

f.   the expiration or termination of the Debtor's exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof; and

g.   the occurrence of an Event of Default under the DIP Documents (and the expiration of any period of cure, grace or notice, if any, set forth in such agreement relating to such default).

9.    *Remedies after Event of Default*.  Immediately upon the occurrence of an Event of Default or the Maturity Date (as defined in the DIP Documents), the DIP Lender's commitment to lend shall terminate and the DIP Lender shall be under no further obligation to provide credit under the DIP Documents. Upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtor (with a copy to counsel to the United States Trustee), the DIP Lender may seek relief from the automatic stay on an emergency basis and obtain authority to exercise all other rights and remedies against the Collateral.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default or Maturity Date has occurred and is continuing.  Subject only to and effective upon entry of the Final Order, the Debtor shall waive any right to seek relief, including without limitation, under section 105 of

the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this ~~Interim~~Final Order or the DIP Documents.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  The DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this ~~Interim~~Final Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Term Sheet.

10.     *Effect of Stipulations on Third Parties*.  The Debtor's stipulations, admissions, releases, and agreements contained in this ~~Interim~~Final Order, shall be binding upon the Debtor and any successor thereto (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor) in all circumstances and for all purposes.  The Debtor's stipulations, admissions, releases, and agreements contained in this ~~Interim~~Final Order, shall be binding upon all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Case (including any official committee appointed in the Case) and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes unless:  (a) such committee, or any other party in interest, with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter by no later than 60 calendar days after entry of ~~the~~this Final Order, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Pre-Petition Obligations, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests

19

or defenses (collectively, the "Challenges") against the DIP Lender in connection with matters related to the Pre-Petition Agreements; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified before the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If (a) no such Challenge is timely and properly filed during the Challenge Period, or (b) the Court does not rule in favor of the plaintiff in any such proceeding then: (i) the Debtor's stipulations, admissions, releases, and agreements contained in this ~~Interim~~Final Order, shall be binding on all parties in interest; (ii) the obligations of the Debtor under the Pre-Petition Agreements, shall constitute allowed claims (without the need to file a proof of claim) not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Case, and any subsequent chapter 7 case; (iii) the Pre-Petition Liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens on the Pre-Petition Collateral, not subject to recharacterization, subordination, avoidance or other defense; and (iv) the Pre-Petition Indebtedness and the Pre-Petition Liens on the Pre-Petition Collateral shall not be subject to any other or further claim or challenge by any statutory committee appointed or formed in the Case or any other party in interest acting or seeking to act on behalf of the Debtor's estate, including any successor thereto (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtor) and any defenses, claims, causes of action, counterclaims and offsets by any non-statutory committee appointed or formed in the Case, or any other party acting or seeking to act on behalf of the Debtor's estate, including any successor thereto (including any chapter 7

trustee or chapter 11 trustee or examiner appointed or elected for the Debtor), whether arising under the Bankruptcy Code or otherwise, against the DIP Lender, its officers, directors, managers, parent, subsidiaries, affiliates, professionals and representatives arising out of or relating to any of the Pre-Petition Agreements, the commencement or administration of the Case or any transactions between the Debtor and BETM shall be deemed forever waived, released and barred.  Nothing in this ~~Interim~~Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any non-statutory committee appointed or formed in the Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate.

11.    *Limitation on Charging Expenses Against Collateral.*  ~~Subject only to and effective upon entry of the Final Order, notwithstanding~~Notwithstanding anything to the contrary contained herein, no costs or expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and nothing contained in this ~~Interim~~Final Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.    *Carve-Out.* The Superpriority Claims, the Replacement Liens and DIP Liens granted to the DIP Lender pursuant to this ~~Interim~~Final Order shall be junior and subordinate to (a) all fees required to paid by the Debtor to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) all fees due the Clerk of the Court, (c) with respect to the Debtor's professionals, the allowed fees and disbursements as may be awarded to such professionals from

21

time to time pursuant to Bankruptcy Code § 330, in the aggregate amount set forth in the Budget (including monies on deposit in the Professional Expense Escrow (as defined below)) and only to the extent such fees were incurred prior to an Event of Default but not yet paid, (d) up to $100,000 in fees and expenses incurred by the Debtor's professionals following an Event of Default, and (e) amounts to pay post-petition "trust fund" obligations (collectively, the "Carve-Out").    The DIP Liens shall be junior and subordinate to the liens, if any, of (a) the Broward County Tax Collector on account of ad valorem taxes assessed against the tangible personal property of the Debtor.; and (b) ISO New England on the collateral posted by or for the benefit of the Debtor.

13.    *Professional Expense Escrow.*  As part of the Carve-Out, the Debtor is authorized to use (a) proceeds of the DIP Financing in accordance with the Budget, and (b) proceeds of the Post-petition Collateral up to the amount set forth in the Carve-Out (as defined in paragraph 12 of this Final Order), to pay such compensation and expense reimbursements of professional persons retained by the Debtor, including Berkeley Research Group, LLC and Mr. Bob Butler (the "Debtor Professionals") as may be awarded by the Court pursuant to Section 328, 330 or 331 of the Bankruptcy Code (the "Professional Expenses").  For so long as an Event of Default does not exist, the DIP Lender shall permit the Debtor's use of proceeds of the DIP Financing and Post-Petition Collateral, and allocated for the fees and expenses of the Debtor Professionals; said funds shall be advanced or transferred to and segregated and escrowed in an escrow account maintained by counsel for the Debtor for payment to the Debtor Professionals pursuant to the Budget, in accordance with the procedures which may be approved by the Court for the payment of professionals (the "Professional Expense Escrow").  Funds deposited in the Professional Expense Escrow shall be available and may be used by the Debtor solely for the payment of the Professional Expenses.  Neither the Debtor nor any creditor of the Debtor (except for the DIP Lender) shall

have a claim or interest in the funds on deposit in the Professional Expense Escrow, other than the entitlement of the Debtor or a successor trustee to receive any balance remaining in the Professional Expense Escrow after payment in full of (a) the Professional Expenses that have accrued and that are allowed by final order of the Court, (b) the Pre-Petition Obligations and (c) the DIP Obligations.

13.14.  *Fees & Expenses*.   The Debtor is authorized and directed to pay any and all reasonable and documented fees and expenses of the DIP Lender in connection with the DIP Documents, including the fees and expenses of attorneys, advisors, accountants and other consultants, whether incurred before, on or after the Petition Date, including, but not limited to fees and expenses incurred in connection with (a) the preparation, negotiation and execution of this ~~Interim~~Final DIP Order, and the DIP Documents; (b) the creation, perfection or protection of the DIP Liens and the Replacement Lien (including all search, filing and recording fees); (c) the on-going administration of the DIP Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Case (including the filing of any proofs of claim); (d) the enforcement of the DIP Documents or this ~~Interim~~Final Order; and (e) any legal proceeding relating to or arising out of the DIP Facility or the other transactions contemplated by the DIP Documents or this ~~Interim~~ ~~DIP~~Final  Order including this Case and any credit bid of the DIP Obligations and/or the Pre-Petition Obligations. Payment of all such professional fees and expenses shall not be subject to allowance by the Bankruptcy Court or to the U.S. Trustee guidelines; provided that requests for payment of such professional fees and expenses shall be provided to the Debtor, the U.S. Trustee and any statutory committee appointed in the Case on a 10 days' notice.

14.15.  *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this InterimFinal Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.  DIP Lender shall apply the proceeds of the Pre-Petition Collateral to reduce the Pre-Petition Obligations and shall apply proceeds of the Post-Petition Collateral to reduce the DIP Obligations.

15.16.  *Perfection of DIP Liens and Adequate Protection Liens*.

a.    The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of this InterimFinal Order.  The Debtor shall execute and deliver to the DIP Lender, all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

b.    A certified copy of this InterimFinal Order may, in the discretion of the DIP Lender,

24

be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this ~~Interim~~Final Order for filing and recording.

c.    Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties or requires the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof or other Collateral, is hereby and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting the DIP Lender a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrower in favor of the DIP Lender in accordance with the terms of the DIP Documents and this ~~Interim~~Final Order.

~~16.~~17.  *Preservation of Rights Granted Under the Order.*

a.    Subject to the Carve-Out (as defined in paragraph 12 above), no claim or lien having a priority senior to or *pari passu* with those granted by this ~~Interim~~Final Order or the DIP Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding and the DIP Documents have not been terminated, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

b.    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitment shall have been terminated (i) the Debtor shall not seek, and it shall constitute an

immediate Event of Default under the DIP Documents if the Debtor seeks, or if there is entered, any modification of this ~~Interim~~Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender or (ii) it shall constitute an immediate Event of Default under the DIP Documents if any order is entered converting or dismissing the Case.  If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (w) the Superpriority Claims, the Replacement Liens and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~Final Order until all DIP Obligations shall have been indefeasibly paid in full in cash, and the Commitment shall have been terminated, (x) such Superpriority Claims, the Replacement Liens and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, (y) the other rights granted by this ~~Interim~~Final Order shall not be affected and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this ~~Interim~~Final Order.

c.  If any or all of the provisions of this ~~Interim~~Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation, as applicable, or (ii) the validity, priority or enforceability of the DIP Liens. Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects

26

by the original provisions of this ~~Interim~~Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this ~~Interim~~Final Order and pursuant to the DIP Documents with respect to all DIP Obligations.

d.  Except as expressly provided in this ~~Interim~~Final Order or in the DIP Documents, the DIP Liens, the Replacement Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this ~~Interim~~Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Case, or (ii) the entry of an order confirming a plan of reorganization in the Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this ~~Interim~~Final Order and the DIP Documents shall continue in the Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the Replacement Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this ~~Interim~~Final Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash, and the Commitment has been terminated.

~~17.~~18.  *Limitation on Use of DIP Financing Proceeds, Cash Collateral and Collateral*. The Debtor shall use the proceeds of the DIP Financing and the Cash Collateral solely as provided in this ~~Interim~~Final Order and in the DIP Documents (including, but not limited to, the Budget). Notwithstanding anything herein or in any other order of this Court to the contrary, no credit extensions under the DIP Documents, Cash Collateral or Carve-Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise) against the DIP Lender or for the purpose of

27

objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender or asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations or the security interests in or liens on the Collateral or against the DIP Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Documents or this ~~Interim~~Final Order, (c) to seek to modify any of the rights granted to the DIP Lender under this ~~Interim~~Final Order or under the DIP Documents, without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its sole discretion, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents (including, but not limited to, the Budget).

~~18.~~19.  *Subsequent Financing.*   So long as any portion of the DIP Obligations remains in effect, absent the prior written consent of DIP Lender (which consent may be withheld in DIP Lender's sole discretion) the Debtor shall not seek (a) an order dismissing or converting the Case, or (b) any order which authorizes under any section of the Bankruptcy Code the granting of any lien or security interest in any Post-Petition Collateral in favor of any party other than the DIP Lender or the obtaining of any credit or the incurring of any indebtedness that is entitled to superpriority administrative status superior to that granted to the DIP Lender pursuant to this Order.

~~19.~~20.  *Plan of Reorganization or Other Subsequent Orders.*  The validity, priority and extent of the liens and security interests granted by the Debtor to DIP Lender pursuant to this ~~Interim~~Final Order or the DIP Documents shall not be modified, altered, or affected in any manner,

absent prior written consent of DIP Lender, by (i) any plan of reorganization in this case, whether filed by the Debtor or a party in interest; (ii) any order confirming such a plan for the Debtor; (iii) by any other financing or extensions of credit, whether made pursuant to section 364 of the Bankruptcy Code or otherwise; or (iv) any other order of this Court.  This ~~Interim~~Final Order (i) does not waive, modify or release any obligation of the Debtor to the ISOs, including under any tariff, or (ii) alter, impair or prime the validity or priority of any properly perfected liens of any ISO in existence as of the Petition Date.

~~20.~~21.  *Termination Date.*   The DIP Obligations shall mature and become due and payable on the earliest of: (i) the effective date of a chapter 11 plan, (ii) the closing of sale of all or a substantial part of the Debtor's assets, (iii) December 1, 2021, or (iv) the occurrence and declaration of an Event of Default by the DIP Lender (the "Maturity Date").

~~21.~~22.  *Exculpation.*  Nothing in this ~~Interim~~Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the prepetition or post-petition activities of the Debtor in the operation of its business or maintenance of assets, or in connection with its restructuring and sale efforts.  So long as the DIP Lender complies with its obligations under the DIP Documents and its obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtor.

~~22.~~23.  *Order Governs.*  In the event of any inconsistency between the provisions of this

~~Interim~~Final Order and the DIP Documents, the provisions of this ~~Interim~~Final Order shall govern.

~~23.~~24.  *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this ~~Interim~~Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

~~24.~~25.  *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this ~~Interim~~Final Order, including all findings herein, shall be binding upon all parties in interest in the Case, including without limitation, the DIP Lender, the Debtor and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor  or with respect to the property of the estate of any of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtor and its respective successors and assigns, *provided* that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.

~~25.~~26.  *Credit Bid.*  Subject to ~~and effective upon entry of the Final Order, and further subject to the~~ the rights of holders of ~~Existing~~properly perfected and duly enforceable liens that are senior to the Pre-Petition Liens and the DIP Liens, the DIP Lender shall have the right to credit bid all or any portion of the outstanding DIP Obligations and the Pre-Petition Obligations in any sale of the Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for ~~any~~the Debtor under section 725 of the Bankruptcy Code.

26.27. *Effectiveness*.    This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

27.28.  *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this ~~Interim~~Final Order.

~~28.    *Final Hearing*. The Final Hearing will be held by this Court on **May 24, 2021 at 11:00 a.m.** (prevailing Eastern time).  The Debtor shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon (a) Genovese Joblove & Battista, PA, 100 SE 2nd Street, Suite 4400, Miami, FL 33131, Attn: Paul J. Battista, Esq., attorneys for the Debtor; (b) Genovese Joblove & Battista, PA, 200 East Broward Blvd., Suite 1110, Fort Lauderdale, FL 33301, Attn: Mariaelena Gayo-Guitian, Esq., attorneys for the Debtor; (c) Eversheds Sutherland (US) LLP, 700 6th Street, NW, Suite 700, Washington, DC 20001-3980, Attn: David T. McIndoe, Esq., attorneys for the DIP Lender; (d) Eversheds Sutherland (US) LLP, 101 Fannin Street, Suite 3700, Houston, TX 77002-6760, Attn: Mark D. Sherrill, Esq., attorneys to the DIP Lender; (e) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso, Esq., attorneys for the DIP Lender; (f) the Office of the United States Trustee, 51 SW First Avenue, Room 1204 Miami, FL 33130, and (g) all parties who have filed a request for notice in this Case, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of Florida, to allow actual receipt by the foregoing no later than **May 19, 2021** at **4:30 p.m.** (prevailing Eastern time).~~

# # #

Submitted by:
Paul J. Battista, Esq.

Genovese Joblove & Battista, PA
100 SE 2ⁿᵈ Street, Suite 4400
Miami, FL 33131
Tel. (305) 349-2300
Fax (305) 349-2310
E-mail:  pbattista@gjb-law.com

*(Paul J. Battista, Esq. shall serve a copy of the signed order on all interested parties and file with the Court a Certificate of Service conforming with Local Rule 2002-1(F).*

~~10498971-1~~10575845-4