

**ORDERED in the Southern District of Florida on September 13, 2021.**

_Scott M. Grossman_
_____
**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| LIBERTY POWER HOLDINGS, LLC, | Case No. 21-13797-SMG |
| LPT, LLC, | Case No. 21-15537-SMG |
| LIBERTY POWER MARYLAND, LLC, | Case No. 21-15539-SMG |
| LIBERTY POWER DISTRICT OF COLUMBIA, LLC, | Case No. 21-15540-SMG |
| Debtors. | (Jointly Administered 21-13979-SMG) |

-------------------------------------------------------------/

**ORDER (I) APPROVING SALE OF THE PURCHASED ASSETS FREE AND CLEAR**
**OF LIENS, CLAIMS, ENCUMBRANCES,**
**AND OTHER INTERESTS, (II) AUTHORIZING ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court for hearing on September 10, 2021 at 1:30 p.m.

(the "**Sale Hearing**") upon the _Expedited Motion For The Entry Of An Order (1) Approving_

_Competitive Bidding Procedures For The Sale Of Substantially All Of The Debtor's Assets, (2)_

_Scheduling Dates To Conduct Auction And Sale Hearing, (3) Approving The Form And Manner_

*Of Notices, (4) Approving The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests, (5) Approving Assumption And Assignment Procedures For Executory Contracts, And (6) Granting Related Relief* [ECF No. 98] (the "**Motion**")[1] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Sale Order**") (i) approving the sale of all or substantially all of the Debtors' assets (collectively, the "**Assets**")[2] free and clear of all liens, claims, encumbrances, and other interests, (ii) authorizing the assumption and assignment of certain of the Debtors' executory contracts and unexpired non-residential real property leases, and (iii) granting related relief, all as more fully set forth in the Motion; and this Court (a) having entered the *Order Granting the Debtor's Expedited Motion for Entry of an Order (1) Approving Competitive Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (2) Scheduling Dates to Conduct Auction and Sale Hearing, (3) Approving the Form and Manner of Notices, (4) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (5) Approving Assumption and Assignment Procedures for Executory Contracts, and (6) Granting Related Relief* [ECF No. 156] (as modified and supplemented by the *Order Granting Debtors' Expedited Motion for the Entry of a Supplemental Order (I) Approving the Sale of Assets of the Subsidiary Debtors through the Court's Bid Procedures Order, (II) Approving Revised Form of Notices, (III) Authorizing Notice of Sale by Email and Publication, and (IV) Granting Related Relief* [ECF No. 264], the *Order Granting Debtors' Ex-Parte Motion to Extend Deadline to Serve*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein), or if not defined therein, in the Motion or the Bidding Procedures Order (as defined herein), as applicable.

[2] While the Motion sought authority to sell all or substantially all of the Debtors' Assets, this Sale Order addresses only the Purchased Assets.  Nothing in this Sale Order in any way transfers, sells or otherwise conveys title to any assets other than the Purchased Assets.

*Certain Cure Notices* [ECF No. 282], the *Order Granting Debtors' Ore Tenus Motion to Continue Sale Hearing and to Extend All Related Objection Deadlines* [ECF No. 320], and the *Notice of (I) Extension of Bid Deadline, (II) Change of Date and Location of Auction, and (III) Continuance of Sale Hearing* [ECF No. 323]) (collectively, the "**Bidding Procedures Order**"); (b) having entered the Stalking Horse Order (as defined below) on August 25, 2021, and NRG Retail LLC having been selected as the Successful Bidder as noted in the *Notice of (I) Cancellation Of Auction Scheduled For September 1, 2021 At 9:00 a.m., and (II) Designation Of Stalking Horse Bidder As The Purchaser* [ECF No. 352] (the "**Notice of Successful Bidder**") filed with this Court on August 31, 2021; (c) upon the Buyer and the Debtors having entered into that certain Asset Purchase Agreement, dated as of August 20, 2021, as modified by that certain *Notice of Filing Modifications to Stalking Horse Agreement* [ECF No. 339] (the "**Notice of Modifications**") (as may be further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Asset Purchase Agreement**"), a copy of which was attached to the Notice of Modifications; (d) having reviewed the Motion and the Asset Purchase Agreement; (e) having considered the evidence proffered and presented by the Debtors and accepted into evidence at the Hearing, including specifically (i) the testimony of Bob Butler, the Debtors' Chief Restructuring Officer, set forth on the record at the Sale Hearing and as set forth in that certain *Declaration of Bob Butler, Chief Restructuring Officer in Support of the Sale Order*, dated September 8, 2021 [ECF No. 370], which was admitted into evidence as the Debtors' Exhibit 4, (ii) the testimony of Harold Marx, a Director of NRG Energy Inc., set forth on the record at the Sale Hearing and as set forth in that certain *Declaration of Harold Marx in Support of the Sale Order*, dated September 8, 2021 [ECF No. 371], which was admitted into evidence as the Debtors' Exhibit 5, and (iii) the fully executed Asset Purchase Agreement,

which was admitted into evidence as the Debtors' Exhibit 1, the *Amended Notice of Buyer's Designation of Affiliate Assignees Under the Asset Purchase Agreement for Regulatory Purposes*, dated September 9, 2021 [ECF No. 377], which was admitted into evidence as the Debtors' Exhibit 2, and the *Notice of Filing Proposed Draft Sale Order*, dated September 3, 2021 [ECF No. 357], which was admitted into evidence as the Debtors' Exhibit 3 solely for the purpose of providing notice of the agreed form of proposed Sale Order as between the Debtors and the Buyer; (f) having entered an Order (the "**New Customer Notice Order**") contemporaneously herewith granting the *Debtors' Expedited Motion (I) to Establish Noticing Procedures for the Assumption and Assignment of New Customer Accounts, (II) to Approve Form of Notice to Holders of New Customer Accounts, (III) to Extend Deadline for the Cure Notice in Connection Therewith, and (IV) For Related Relief* [ECF No. 358] (the "**New Customer Notice Motion**"); (g) having reviewed and considered (i) the *Reservation of Rights and Limited Objection of PJM Interconnection. LLC* [ECF No. 355] (the "**PJM Objection**"), (ii) the *Postal Center International's Limited Objection to the Sale of Debtors' Assets* [ECF No. 364] and the *Postal Center International's Objection to Debtors' Intent to Assume and Assign Certain Executory Contracts* [ECF No. 356] (collectively, the "**Postal Center Objections**"), (iii) the *Objection to the Debtor's Stated Cure Amount* served on Debtors' counsel and not filed with the Court by National Utilities Services, Inc. (the "**NUS Informal Objection**"), (iv) the informal limited objection received from the Electric Reliability Council of Texas ("**ERCOT**") (the "**ERCOT Objection**"), (v) the *Objection to Debtors' Sale of Substantially All Debtors' Assets and Debtors' Proposed Sale Order* filed by BLT Steak LLC and BLT Fish LLC [ECF No. 366] (the "**BLT Objection**"), (vi) the *Objection and Reservation of Rights to Sale of Substantially All Debtors' Assets and Debtors' Proposed Draft Sale Order* filed by Samuel Katz and Lynne

4

Rhoades [ECF No. 365] (the "**Katz Objection**"), (vii) the *Commonwealth of Massachusetts's Limited Objection to Debtor's Anticipated Sale of Substantially All of Its Assets* (the "**Massachusetts Objection**") [ECF No. 345], and (viii) *The Illinois Attorney General's Limited Objection to Debtor's Sale of All or Substantially All of its Assets* [ECF No. 362] (the "**Illinois Objection**"), (h) having reviewed and considered the *Debtors' Omnibus Response to Objections to Sale Motion and Related Matters* [ECF No. 374], (i) it appearing that proper and adequate notice of the Motion, the Bidding Procedures Order, the Bidding Procedures and the Sale Hearing having been given to all parties entitled thereto, and that no other or further notice need be given; and (j) this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and upon the record of the Sale Hearing and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

**Jurisdiction, Final Order, and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006,

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "**Local Rules**").  The consummation of the transactions contemplated by the Asset Purchase Agreement and this Sale Order (collectively, the "**Transactions**") is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and the Debtors, on the one hand, and the Buyer and its affiliates, on the other hand, have complied with all of the applicable requirements of such sections and rules in respect of the Transactions.

<u>**Notice of the Sale, Auction and the Cure Payments**</u>

A.    As evidenced by the certificates of service filed with this Court,[4] proper, timely, adequate, and sufficient notice of, inter alia, the Motion, the Bidding Procedures Order, the potential Auction (although cancelled pursuant to the Bidding Procedures Order and the Notice of Successful Bidder), the Sale Hearing, the sale of the Purchased Assets, and the transactions described in the Asset Purchase Agreement, and all deadlines related to the foregoing, has been provided to all parties entitled to receive such notice under the Bidding Procedures Order and applicable rules and provisions of the Bankruptcy Code, including sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, and Local Rule 6004-1, and the orders of this Court.  Such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object and be in heard with respect to the foregoing.  Accordingly, no other or further notice with respect to such matters is necessary or shall be required.

---

[4] *See* ECF Nos. 100, 157, 257, 269, 272, 280, 291, 298, 299, 300, 306, 314, 341, 346, 360, 361, 367, 380 and 381.

B.      On or before July 22, 2021, the Debtors served on each of the counterparties to the Contracts an Assumption Notice in accordance with the Bidding Procedures Order.[5]  The service of the Assumption Notices was sufficient under the circumstances and in full compliance with the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of any Contracts (excluding any contracts that become Excluded Assets in accordance with the Asset Purchase Agreement after the date hereof, collectively, the "**Assigned Contracts**") or the Cure Costs for any Assigned Contract.   All counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the Assigned Contracts and the Cure Costs.   Service of the Assumption Notices was appropriate and reasonably calculated to provide all counterparties to the Assigned Contracts with timely and proper notice of the potential assumption and assignment of the Assigned Contracts in connection with the sale of the Purchased Assets and the related Cure Costs.

C.      On July 16, 2021, the Debtors served the *Notice of Auction and Sale* (the "**Auction and Sale Notice**") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules.   On July 20, 2021 the Debtors published a substantially similar form of such Auction and Sale Notice in the national edition of *USA Today*[6] and the website maintained by the Debtors' claims and noticing agent, Stretto.   Such publication of the Auction and Sale Notice conforms in all material respects to the requirements of the Bidding Procedures Order and Bankruptcy Rules 2002(l) and 9008 and was reasonably calculated to provide notice to any affected party and afford any affected party the opportunity to exercise any rights related to the

---

[5] *See* ECF Nos. 299, 300, 306, 314, 380 and 381.

[6] *See* ECF No. 272.

Motion and the relief granted by this Sale Order. Service and publication of the Auction and Sale Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Assets, including the proposed sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests, the Transactions, the Bidding Procedures, the Auction, and the Sale Hearing.

D.    The Debtors filed the Notice of Successful Bidder with this Court on August 31, 2021 and served such notice on all parties required to receive such notice under the Bidding Procedures Order and applicable law. Such notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the cancellation of the Auction and the identity of the Successful Bidder.

**Final DIP Financing**

E.    On May 27, 2001, the Court entered the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364 and 507(b) and Bankruptcy Rules 2002, 4001, 6004 and 9014, (I) Authorizing Debtor (A) to Use Cash Collateral, and (B) to Obtain Senior Secured Post-Petition Financing, and (II) Granting Related Relief* [ECF No. 153] (the "**Final DIP Financing Order**") authorizing Liberty Power Holdings, LLC ("**LPH**" or "**Debtor**") to, *inter alia*, obtain secured post-petition financing from Boston Energy Trading and Marketing, LLC ("**BETM**") and grant BETM adequate protection. Pursuant to the Final DIP Financing Order, (i) LPH acknowledged the amount of the Pre-Petition Indebtedness (as defined in the Final DIP Financing Order) due to BETM, and (ii) the validity, priority and extent of BETM's first priority, senior liens securing repayment of the Pre-Petition Obligations[7]. The Final DIP Financing Order granted creditors and

---

[7] "Pre-Petition Obligations" are the Pre-Petition Indebtedness and all other obligations of the Debtor to BETM under the Pre-Petition Agreements (as defined in the Final DIP Financing Order).

parties-in-interest through July 26, 2021 within which to object or otherwise challenge the stipulations made by LPH in the Final DIP Financing Order, or to assert any other claim or cause of action against BETM (the "**Challenge Deadline**").  No creditor or party-in-interest filed an objection, claim or cause of action on or before the Challenge Deadline.  The stipulations and acknowledgements made by LPH in the Final DIP Financing Order are binding on all creditors and parties-in-interest, including any subsequently appointed trustee for the Debtors.  BETM holds a first priority, properly perfected and duly enforceable security interest in the Purchased Assets, which such security interest will attach the sale proceeds at the applicable Closings but shall not encumber, be attached to, or otherwise burden the Purchased Assets in any way from and after the applicable Closings.

### The Stalking Horse Bid

F.     Pursuant to the Bidding Procedures Order, the Debtors were authorized (but not required) to exercise their business judgment, in consultation and with the consent of BETM, to (i) select and designate one or more Potential Bidders to act as a Stalking Horse Bidder for up to substantially all of the Assets, (ii) negotiate the terms of, and enter into a Stalking Horse Agreement, and (iii) agree to certain bid protections for the benefit of such Stalking Horse Bidder, subject to approval of the Court after notice and an opportunity to object.

G.     After extensive, arm's length, good faith negotiations among the Debtors and the Buyer, and their respective advisors, in accordance with the Bidding Procedures Order, on August 20, 2021, the Debtors and the Buyer finalized the Asset Purchase Agreement wherein the Debtors and the Buyer agreed that the Buyer would serve as the stalking horse bidder for the Purchased Assets, and the Transactions contemplated by the Asset Purchase Agreement would serve as the Stalking Horse Bid, subject to entry of the Stalking Horse Order.

H.     On August 20, 2021, the Debtors filed with the Court and appropriately served the *Debtors' Expedited Motion (I) To Approve Designation Of Stalking Horse Bidder, (II) To Approve Asset Purchase Agreement And Related Bid Protections, (III) To Clarify/Modify Bidding Procedures, And (IV) For Related Relief* [ECF No. 324] (the "**Stalking Horse Motion**").   On August 26, 2021, this Court entered the *Order Granting Debtors Expedited Motion (I) To Approve Designation Of Stalking Horse Bidder, (II) To Approve Asset Purchase Agreement And Related Bid Protections, (III) To Clarify/Modify Bidding Procedures, And (IV) For Related Relief* [ECF No. 349] (the "**Stalking Horse Order**"), approving, among other things, (i) the designation of the Buyer as the stalking horse bidder for the Purchased Assets, and (ii) the Bid Protections (as defined and further described in the Stalking Horse Order).

### Business Judgment

I.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale of the Purchased Assets under the Asset Purchase Agreement, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts pursuant to sections 105, 363, and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of each Debtor's business judgment and in the best interests of the Debtors, their estates, and their creditors.  The Debtors have determined that entry into the Asset Purchase Agreement and the sale of the Purchased Assets to the Buyer present the best opportunity to maximize the value of the Debtors' estates.

### Marketing and Sale Process

J.     The Debtors and their professionals, agents, and other representatives have marketed the Purchased Assets and conducted all aspects of the sale process at arm's length, in good faith, and in compliance with the Bidding Procedures Order.  The marketing process

undertaken by the Debtors and their professionals, agents and other representatives with respect to the Purchased Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders. The Bidding Procedures and sale process contemplated thereby were duly noticed, were substantively and procedurally fair to all parties, and were conducted in a diligent, non-collusive, fair and good-faith manner. The Asset Purchase Agreement constitutes the best and highest offer for the Purchased Assets.

### Good Faith of the Buyer; No Collusion

K.    The Buyer is acquiring the Purchased Assets for value and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. It is entitled to and granted pursuant to paragraph 29 below, the full rights, benefits, privileges, immunities and protections of that provision. The Buyer has proceeded in good faith in all respects in connection with the Transaction in that, among other things: (i) the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied in good faith in all respects with the provisions in the Bidding Procedures and the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding process set forth in the Bidding Procedures; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the sale of the Purchased Assets have been disclosed; and (v) the negotiation and execution of the Asset Purchase Agreement was at arm's length and in good faith.

L.    None of the Debtors, the Buyer, any other party in interest, or any of their respective representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement, or the consummation of the Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in any improper or collusive manner with any Person in connection therewith.

**Highest or Otherwise Best Offer**

M.     The Debtors and their advisors adequately marketed the Purchased Assets, and the process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets. Pursuant to the Stalking Horse Order, the Bid submitted by the Buyer was deemed a Qualified Bid.  The Debtors, with the consent of BETM, cancelled the Auction and the Buyer was deemed to be the Successful Bidder in accordance with the Bidding Procedures.  No other Person has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Buyer. The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets.

**No Fraudulent Transfer**

N.     The Asset Purchase Agreement was not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement are consummating the Transactions with any improper purpose.  The consideration to be provided by the Buyer under the Asset Purchase Agreement is fair and reasonable, and constitutes reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law for each of the applicable Purchased Assets.

**Validity of Transfer**

O.     The Debtors have complied in all material respects with the Bidding Procedures Order.  The Debtors have full corporate power and authority (i) to perform all of their obligations

under the Asset Purchase Agreement and (ii) to consummate the Transactions.  Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transactions or otherwise perform their obligations under the Asset Purchase Agreement, except as otherwise expressly set forth in the Asset Purchase Agreement.

P.      As of each Closing Date, the transfer of the applicable Purchased Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the applicable Assigned Contracts, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Interests (other than Assumed Liabilities) accruing or arising any time prior to such Closing Date.

## Section 363(f) Is Satisfied

Q.      The Debtors may sell or otherwise transfer the Purchased Assets free and clear of all Interests (other than Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the sale of the Purchased Assets or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object, if any, fall within one or more of the other subsections of section 363(f) and are adequately protected by the terms of this Sale Order, including, as applicable, by having their Interests, if any, attach to the proceeds of the sale attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Purchased Assets immediately prior to consummation of the sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

13

R.        The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Transaction contemplated thereby if (i) the sale, including the assumption, assignment, and transfer of the Assigned Contracts to the Buyer, was not free and clear of all Interests of any kind or nature whatsoever (other than Assumed Liabilities), or (ii) the Buyer or any of its Affiliates, past, present and future members or shareholders, lenders, subsidiaries, parents, divisions, agents, Representatives, insurers, attorneys, successors and assigns, or any of its or their respective directors, managers, officers, employees, agents, Representatives, attorneys, advisors, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (each a "**Buyer Party**") would, or in the future could, be liable for any of such Interests, including any successor or transferee liability (other than Assumed Liabilities).  Not transferring the Purchased Assets free and clear of all Interests of any kind or nature whatsoever (other than Assumed Liabilities) would adversely impact the Debtors' efforts to maximize the value of their estates.

S.        As used in this Sale Order the term "**Interest**" and "**Interests**" include all of the following:

> i.        any encumbrances, charges, liens (whether consensual, statutory, possessory, judicial, or otherwise, including any lien arising under the DIP Supply Agreement or Final Order of the Bankruptcy Court), claims, mortgages, leases, subleases, licenses, hypothecations, deeds of trust, pledges, levies, security interests or similar interest, title defect, options, hypothecations, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), profit sharing interests, rights of consent, restrictive covenants, encroachments, servitude, restrictions on transferability of any type, charge, easement, right of way, restrictive covenant, transfer restriction under any shareholder agreement, judgment, conditional sale or other title retention agreement, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Sellers' or Buyer's interest in the Purchased Assets, or any similar rights, or other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever;

14

ii.       any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including, without limitation: (1) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act of 1938, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "**COBRA**"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Sellers or any of their predecessors, or (l) the WARN Act; (2) any rights under any pension or multiemployer plan (as such term is defined in ERISA Laws), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Sellers or any multiemployer plan to which the Sellers have at any time contributed to or had any liability or potential liability; (3) any and all claims or causes of action based upon or relating to any putative successor or transferee liability; (4) any rights related to intercompany loans and receivables between the Sellers and any non-Seller affiliate; (5) any and all claims or causes of action based upon or relating to any Excluded Assets; (6) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease that is not an Assigned Contract that will be assumed and assigned pursuant to this Sale Order and the Asset Purchase Agreement; (7) any and all claims or causes of action based upon or relating to any bulk sales, transfer taxes or similar law; (8) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to any Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority; (9) personal injury claims; (10) any and all claims for product liability, false advertising or unlawful promotional statements or marketing; (11) any other Excluded Liabilities; and (12) any

and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff, recoupment, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Sellers or any of their respective affiliates, directors, officers, agents, successors or assigns in connection with or relating to the Sellers, their operations, their business, their liabilities, the Sellers' marketing and bidding process with respect to the Purchased Assets, the Assigned Contracts, or the transactions contemplated by the Asset Purchase Agreement; and

iii.    without limiting any of the forgoing, any other interest that the Sellers may sell property free and clear of pursuant to section 363(f) of the Bankruptcy Code (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and whether imposed by agreement, understanding, Applicable Law, equity, or otherwise

### Not a Successor; Not a Sub Rosa Plan

T.      The Buyer and the Buyer Parties are not, and shall not be deemed to, as a result of any action taken in connection with the Transactions: (1) be a successor to or a mere continuation or substantial continuation (or other such similarly situated party) to the Debtors or their estates (other than with respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into the Debtors. Neither the Buyer nor any Buyer Party shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, other than to the extent expressly provided in the Asset Purchase Agreement or in this Sale Order.

U.      The sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtors, as it does not and does not propose to: (i) impair or

16

restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any current or future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

**Assumption, Assignment and/or Transfer of the Assigned Contracts**

V.      The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyer, in each case, in connection with the consummation of the Transaction and (ii) that the assumption and assignment of the Assigned Contracts to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assigned Contracts are reasonable and enhance the value of the Debtors' estates.  Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.  Any non-Debtor counterparty to an Assigned Contract that has not filed with this Court an objection to such assumption and assignment in accordance with the terms of the Bidding Procedures Order is deemed to have consented to such assumption and assignment.

W.      To the extent necessary or required by applicable law, the Debtors have or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or

adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default with respect to such Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The respective amounts set forth on Schedule 1 attached to each of the cure notices sent in accordance with the Bidding Procedures are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure any and all defaults under the Assigned Contracts under section 365(b) of the Bankruptcy Code and, upon payment of the Cure Costs the Debtors shall have no further liability under the Assigned Contracts whatsoever.

X.      The promise of the Buyer to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts.  Any objections to the foregoing, the determination of any Cure Cost, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assigned Contracts to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those non-Debtor counterparties to Assigned Contracts who did not object to the assumption, assignment, or transfer of their applicable Assigned Contract, or to their applicable Cure Cost, are deemed to have consented thereto for all purposes of this Sale Order.  The notice and opportunity to object provided to counterparties to the Assigned Contracts and to other parties in interest, as set forth in the Bidding Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to such Contracts.

**Compelling Circumstances for an Immediate Sale**

Y.      To maximize the value of the Purchased Assets and resources in these Chapter 11 Cases, it is essential that the sale of the Purchased Assets be approved and consummated promptly. Accordingly, there is cause to waive the stay requirements contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order and the Asset Purchase Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.      The Motion, and the relief requested therein, is granted and approved, and the Transaction contemplated thereby and by the Asset Purchase Agreement is approved, in each case as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order and the Stalking Horse Order are incorporated herein by reference.

3.      The PJM Objection, the Postal Center Objections and the NUS Informal Objection are denied as moot based on the terms of the Asset Purchase Agreement. The ERCOT Objection is resolved by the addition of certain agreed language to this Order. The BLT Objection, the Katz Objection, the Massachusetts Objection and the Illinois Objection are overruled for the reasons stated on the record at the Sale Hearing. All other objections to the Motion or the relief requested therein, including the assumption and assignment of the Assigned Contracts and the Cure Costs related thereto, that have not been withdrawn, waived, resolved, adjourned, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the

19

merits. Those parties who did not object to the Motion or the entry of this Sale Order in accordance with the Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

### Approval of Asset Purchase Agreement; Binding Nature

4.     The Asset Purchase Agreement and all of the terms and conditions thereof, are hereby approved as set forth herein.

5.     The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected by any Person, or costs or damages imposed or awarded against the Buyer or any Buyer Party, under section 363(n) or any other provision of the Bankruptcy Code.

6.     Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and otherwise comply with the terms of this Sale Order, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement, in each case without further notice to or order of this Court. The Transactions authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are

formed or authorized to transact business.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

7.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Purchased Assets, all non-Debtor parties to the Assigned Contracts, the Buyer, the Buyer Parties, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' bankruptcy cases, or any other Person.

**Transfer of Purchased Assets Free and Clear of Interests; Injunction**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets, including but not limited to the Assigned Contracts, to the Buyer at the applicable Closing in accordance with the Asset Purchase Agreement.  As of the applicable Closing such transfer shall constitute a legal, valid, binding, and effective transfer of, and shall vest the Buyer with all right, title and interest to such Purchased Assets free and clear of any and all Interests of any kind or nature whatsoever (other than Assumed Liabilities).  Promptly upon receipt, the Debtors shall

21

deliver all Net Proceeds of the sale to BETM to be applied by BETM to reduce the Post-Petition Obligations and the Pre-Petition Obligations.  For purposes of this Sale Order, "Net Proceeds" shall mean gross proceeds of the sale, less (x) Cure Costs with respect to Assumed Contracts, and (y) any other amount which BETM, in its sole and absolute direction, authorizes the Debtors to retain.

9.      All other Interests (excluding Assumed Liabilities) shall attach solely to the proceeds of the sale with the same validity, priority, force, and effect that they now have as against the Purchased Assets, which, except as provided in the Final DIP Financing Order, shall be subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the applicable Closing, all Interests of any kind or nature whatsoever (other than Assumed Liabilities) have been unconditionally released, discharged, and terminated in, on, or against the Purchased Assets (but not the proceeds thereof).  The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10.     All Persons holding Interests (other than Assumed Liabilities) of any kind or nature whatsoever existing as to the Purchased Assets prior to the applicable Closing are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Buyer or any Buyer Party, and each of its or their respective property and assets, including, without limitation, the Purchased Assets.

11.     On and after the applicable Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest (other than Assumed Liabilities) to release, discharge, and terminate such Interests in, on and against the Purchased Assets (but not the proceeds thereof) as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the applicable Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements, mortgage releases or lien terminations, or any other such comparable documents in any required jurisdiction to remove any mortgage, record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.

12.     On and after the applicable Closing, the Persons holding an Interest (other than Assumed Liabilities) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which any of the Debtors are incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the applicable Closing.  All Persons that are in possession of any portion of the Purchased Assets on the applicable Closing Date shall promptly surrender possession thereof to the Buyer at the applicable Closing.

13.     The transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement does not require any consents other than specifically provided for in the Asset Purchase Agreement or as provided for herein.

14.     As of each Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the applicable Purchased Assets and the Debtors' interests in the Purchased Assets acquired by the Buyer under the Asset Purchase Agreement.  This Sale Order is and shall be effective as a determination that, on each Closing Date, all Interests of any kind or nature whatsoever existing as to the applicable Purchased Assets prior to such Closing Date (other than Assumed Liabilities), shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order or the Asset Purchase Agreement.

### Assigned Contracts; Payment of Cure Costs

15.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the applicable Closing, the Debtors' assumption, assignment and transfer to

the Buyer of the Assigned Contracts is hereby authorized and approved in full subject to the terms set forth below.  For all purposes of and under this Sale Order, the Assigned Contracts shall include and be comprised of those contracts set forth on the Final Designated Contracts Schedule to be filed by the Debtors under and pursuant to the New Customer Notice Order.

16.     Upon and as of the applicable Closing, the Debtors are authorized and empowered to, and shall, assume, assign, and/or transfer each of the Assigned Contracts to the Buyer free and clear of all Interests (other than Assumed Liabilities); *provided, however*, to the extent that the Buyer exercises its right under the Asset Purchase Agreement to remove any Assigned Contract prior to the applicable Closing, such contract shall not be assumed or assigned by the Debtors.  The payment of the applicable Cure Costs (if any), or the reservation by the Debtors of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable counterparty to such Assigned Contract as required under section 365 of the Bankruptcy Code or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "**Alleged Cure Claim**") shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the applicable Closing and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, as of the applicable Closing, other than such payment or reservation, neither the Debtors nor the Buyer shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the non-Debtor parties to the Assigned Contracts shall be forever barred, estopped and permanently enjoined from seeking, any additional amounts or claims that arose, accrued, or were incurred at any time on or prior to the applicable Closing on account of the Debtors' cure or compensation obligations arising under section 365 of the

25

Bankruptcy Code.  The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code, and the Buyer shall not be required to provide any additional deposit or security with respect to any of the Assigned Contracts.

17.    To the extent any provision in any Assigned Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption or assignment or (b) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases, (iii) the Debtors' assumption or assumption and assignment (as applicable) of such Assigned Contract, or (iv) the consummation of the Transaction, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption or assignment, to modify or terminate such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

18.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts

have been satisfied.  Upon the applicable Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contracts free and clear of any Interest (other than Assumed Liabilities), and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the applicable Closing, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.  The Buyer shall have no liability arising or accruing under the Assigned Contracts on or prior to the applicable Closing Date, except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order, and no Assigned Contract shall be subject to any purported claim or remedy of recission, cancellation or similar remedy based on any act, omission or event occurring prior to the applicable Closing.

19.     To the extent a non-Debtor party to an Assigned Contract failed to timely object to a Cure Amount in accordance with the Bidding Procedures Order, such Cure Amount shall be deemed to be finally determined and any such non-Debtor party shall be prohibited from challenging, objecting to, or denying the validity and finality of the payment of the Cure Cost at any time, and such Cure Cost, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assigned Contract to which it relates.  Unless as otherwise set forth in this Sale Order or the Asset Purchase Agreement, the non-Debtor parties to the Assigned Contracts are barred from asserting against the Debtors, their estates, the Buyer and the Buyer Parties, any default or unpaid obligation allegedly arising or occurring before the applicable Closing, any pecuniary loss resulting from such default, or any other obligation under the Assigned Contracts

arising or incurred prior to the Closing Date, other than payment of the applicable Cure Costs. Upon the payment of the applicable Cure Costs or the reservation of the Alleged Cure Claims, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the applicable Closing nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.     The Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

21.     Upon payment of the Cure Costs, no default or other obligations arising prior to the applicable Closing shall exist under any Assigned Contract, and each non-Debtor party is forever barred and estopped from (a) declaring a default by the Debtors or the Buyer under such Assigned Contract, (b) raising or asserting against the Debtors or the Buyer (or any Buyer Party), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts or arising by reason of the closing of the sale, or (c) taking any other action against the Buyer or any Buyer Party as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case, in connection with the sale or the Transactions.

22.     The assignment of any Assigned Contract to Buyer shall not constitute an alteration, limitation, modification, waiver, or release of any rights, remedies and/or defenses of Buyer with respect to any such Assigned Contract.

**Additional Injunction; No Successor Liability**

23.     Effective as of the applicable Closing, and except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities, all Persons are forever barred, estopped, and permanently enjoined from asserting against the Buyer or any Buyer Party any Interest of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, or the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover, (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order, (iii) creating, perfecting, or enforcing any Interest, (iv) asserting any right of subrogation, setoff or recoupment of any kind, (v) commencing or continuing any action in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of this Court, the Asset Purchase Agreement, or any other agreements or actions contemplated or taken in respect thereof, or (vi) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets in connection with the sale, in each case, as against the Buyer or any Buyer Party or any of its or their respective property or assets, including the Purchased Assets.

24.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Transactions.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and

all documents and instruments necessary and appropriate to consummate the Transactions set forth in the Asset Purchase Agreement.

25.     Subject to the terms, conditions, and provisions of this Sale Order, all Persons are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order, and (b) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

26.     Notwithstanding any action taken in connection with the Transactions contemplated by the Asset Purchase Agreement, or the operation and use of the Purchased Assets acquired from the Debtors, it shall be deemed that the Buyer (i) is not the successor of the Debtors, (ii) has not, *de facto*, or otherwise, merged with or into the Debtors, (iii) is not a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, (iv) is not a successor employer as defined in the Code or by the U.S. National Labor Relations Board or under other applicable law, and (v) is not liable for any acts or omissions of the Debtors in the conduct of the its business or arising under or related to the Purchased Assets other than as set forth in the Asset Purchase Agreement.  Except as otherwise provided in the Asset Purchase Agreement or this Sale Order, the Buyer shall not be liable for any Interests in respect of the Debtors or any of the Debtors' predecessors or Affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the applicable Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business, the Purchased Assets or any Interests in respect of the Debtors arising prior to the applicable Closing.

27.     Except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment, and transfer of any Assigned Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer or any Buyer Party having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, tort, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the applicable Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the applicable Closing, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment or otherwise.  No Buyer or Buyer Party shall be deemed to have expressly or implicitly assumed any of the Debtors' liabilities (other than an Assumed Liability expressly set forth in the Asset Purchase Agreement).

28.     Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer, the Buyer Parties, or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Interests (other than Assumed Liabilities).

## **Good Faith**

29.     The Transaction contemplated by this Sale Order and the Asset Purchase Agreement, is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale and the Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale or Transaction (including the assumption, assignment, and/or transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed pending such appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.

## **Other Provisions**

30.     Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof but shall be effective and enforceable immediately upon entry.  The stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  This is a final order within the meaning of 28 U.S.C. § 158(a), and there is no just reason for delay in the implementation of this Sale Order.  Accordingly, the Debtors are authorized and empowered to close the sale and Transaction immediately upon entry of this Sale Order.

31.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

32.     Without limiting the effectiveness and force of the free and clear provisions of this Sale Order in any way, with regard to the Buyer, its Affiliates, and any of their respective assignees or successors in interest, the ERCOT Nodal Protocols and the policies, rules, guidelines, procedures, standards, and criteria of ERCOT, shall apply and be of full force and effect solely with respect to events, occurrences and actions occurring or arising after the Closing of the sale of the Texas Residential Contracts.

33.     Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any Person would be subject to as the post-Closing owner or operator of the Purchased Assets after the date of entry of this Sale Order, including without limitation the applicable public utilities commissions; *provided, however*, that: (i) the foregoing shall not limit, diminish or otherwise alter the Debtors' or the Buyer's defenses, claims, causes of action, or other rights under any applicable law with respect to any liability claimed by any Governmental Entity and (ii) Governmental Entities are hereby prohibited from attempting or seeking to rescind, terminate or otherwise cause the cancellation of any Assigned Contracts, and from asserting or seeking to collect any fines, fees or other monetary awards against the Buyer or its affiliated designees, in each case that are based in whole or in part upon any act, omission or event occurring prior to the applicable Closing.  Nothing in this Sale Order authorizes the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

34.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

35.    With the consent of BETM (which consent shall not be unreasonably withheld), the Asset Purchase Agreement may be modified, amended, or supplemented in a written instrument signed by the parties thereto, without further notice to or order of this Court; provided that no such modification, amendment, or supplement may be made without further order of this Court if it is materially adverse to the Debtors.

36.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Purchased Assets to the Buyer, (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

37.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

39.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.

34

40.    To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement on the other hand, the terms of this Sale Order shall govern.

41.    The provisions of this Sale Order are non-severable and mutually dependent.

###

Submitted by:
Paul J. Battista, Esq.
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL  33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: pbattista@gjb-law.com
Counsel to the Debtors

(Paul J. Battista, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)