

**ORDERED in the Southern District of Florida on October 1, 2021.**

*Scott M. Grossman*
_____
**Scott M. Grossman, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| Liberty Power Holdings, LLC, *et al.*,[1] | |
| | Case No. 21-13797-SMG |
| Debtors. | (Jointly administered) |
| _____/ | |

**ORDER GRANTING IN PART AND DENYING IN PART
THE ILLINOIS ATTORNEY GENERAL'S MOTION FOR AN
ORDER DECLARING THE AUTOMATIC STAY INAPPLICABLE
TO THE ILLINOIS ATTORNEY GENERAL'S ACTION, OR IN
THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

Kwame Raoul, Attorney General of the State of Illinois (the "Illinois AG"), seeks a determination that the automatic stay of 11 U.S.C. § 362(a) does not apply to the action styled *People of the State of Illinois v. Liberty Power Holdings, LLC*, Case No. 2020-CH-1954 (Circuit Court of Cook County, Illinois, Chancery Division) (the

---

[1] The Debtors in these jointly administered cases are Liberty Power Holdings, LLC; LPT, LLC; Liberty Power Maryland, LLC; and Liberty Power District of Columbia, LLC.

"Illinois Action"), or, alternatively, requests relief from the automatic stay to pursue the Illinois Action.[2] Debtors Liberty Power Holdings, LLC ("Liberty Power Holdings"), LPT, LLC ("LPT"), Liberty Power Maryland, LLC ("Liberty Power Maryland"), and Liberty Power District of Columbia, LLC ("Liberty Power DC," and together with Liberty Power Holdings, LPT, and Liberty Power Maryland, the "Debtors") oppose the Motion.[3]

## Background

Liberty Power Holdings filed a chapter 11 bankruptcy petition on April 20, 2021.[4] A few weeks later, the Court entered an order approving procedures for a process to sell substantially all of Liberty Power Holdings' assets.[5] On September 14, 2021, the Court entered an order approving the sale of certain assets of the Debtors, free and clear of all interests under 11 U.S.C. § 363(f) (the "Sale"), to NRG Retail LLC (the "Buyer") or its permitted designees.[6] As represented on the record at the September 10, 2021 sale hearing, the Sale includes all of the Debtors' residential customer contracts, including those of their Illinois customers.

---

[2] *The Illinois Attorney General's Motion for an Order Declaring the Automatic Stay Inapplicable to the Illinois Attorney General's Action, or in the Alternative, for Relief from the Automatic Stay* (ECF No. 195) (the "Motion").

[3] *Debtors' Objection to the Illinois Attorney General's Motion for Order Declaring the Automatic Stay Inapplicable to the Illinois Attorney General's Action, or in the Alternative, for Relief from the Automatic Stay* (ECF No. 259) (the "Objection"). Secured creditor Boston Energy Trading and Marketing, LLC filed a Joinder in the Objection (ECF No. 260).

[4] ECF No. 1.

[5] Shortly thereafter, LPT, Liberty Power Maryland, and Liberty Power DC each filed their own chapter 11 petitions. The Court ordered their cases to be jointly administered with Liberty Power Holding's case, and then entered an order including their assets in the sale process.

[6] *Order (I) Approving Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and (III) Granting Related Relief* (ECF No. 385) (the "Sale Order").

2

## The Illinois Action

The Illinois Action arises from a *Verified Complaint for Permanent Injunction and Other Equitable Relief* (the "Complaint") brought by the Illinois AG against Liberty Power Holdings on February 18, 2020, under the Illinois Consumer Fraud and Deceptive Business Practices Act[7] (the "Consumer Fraud Act") and the Illinois Telephone Solicitations Act[8] (the "Telephone Solicitations Act"). The Consumer Fraud Act prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of trade or commerce.[9] The Illinois AG is empowered to enforce the act in Illinois state court, and may seek civil penalties and other relief "including but not limited to: injunction; revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority of any person to do business in this State; appointment of a receiver; dissolution of domestic corporations or association suspension or termination of the right of foreign corporations or associations to do business in [Illinois]; and restitution."[10]

The Telephone Solicitations Act[11] prohibits telephone solicitations by a live operator without the consent of the called party.[12] Any violation of the Telephone Solicitations Act is an unlawful practice under Section 2Z of the Consumer Fraud Act,[13] which may be enforced by the Illinois AG. All remedies, penalties, and

---

[7] 815 Ill. Comp. Stat. §§ 505/1 *et. seq.*
[8] 815 Ill. Comp. Stat. §§ 413/1 *et. seq.*
[9] *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 575 (7th Cir. 2001) (quoting 815 Ill. Comp. Stat. § 505/2).
[10] 815 Ill. Comp. Stat. § 505/7.
[11] 815 Ill. Comp. Stat. § 413/1 *et. seq.*
[12] *Wkly. v. Fifth Third Bank, Nat'l Ass'n*, 2020 WL 7626737, at *5 (N.D. Ill. 2020) (quoting 815 Ill. Comp. Stat. § 413/25(b)).
[13] 815 Ill. Comp. Stat. § 413/25(e).

3

authority available under the Consumer Fraud Act are also available to the Illinois AG under the Telephone Solicitations Act. In addition, in any action brought by the Illinois AG to enforce the Telephone Solicitations Act, "the court may order that persons who incurred actual damages be awarded the amount at which actual damages are assessed."[14]

Although the Complaint contains nine counts,[15] the relief sought as to each count appears substantially similar, essentially requesting the following:

> a) Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a preliminary injunction and the appointment of a receiver;
>
> b) Enter a permanent injunction to prevent future violations of the Telephone Solicitations Act and Consumer Fraud Act by Defendant;
>
> c) Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the Telephone Solicitations Act and Consumer Fraud Act, including but not limited to, restitution as to all claims in the amount of at least $77,191,092 (accurate as of Liberty's November 2019 billings), rescission of contracts entered into between the Defendant and Illinois consumers, the refund of monies paid, and the disgorgement of ill-gotten monies;
>
> d) Revoke Defendant's Certificate of Service Authority to operate as an alternative retail electric supplier in the State of Illinois;
>
> e) Assess a civil penalty as provided in Section 7 of the Consumer Fraud Act, 815 ILCS 505/7, of up to $50,000 per deceptive act or practice and an additional $50,000 for each act or practice found to have been committed with intent to defraud;

---

[14] *Id.*
[15] The nine counts are: (I) Misrepresentations Regarding Savings; (II) Misrepresentations Regarding "Price Protection"; (III) Misrepresentations Regarding Affiliation with Utility; (IV) Misrepresentations Regarding a State "Program"; (V) Slamming; (VI) Failure to Drop Off the Call During Third-Party Verification; (VII) Misrepresentations Regarding Affiliation with Utility; (VIII) Telemarketing Without Immediately Disclosing Liberty's Name; and (IX) Telemarketing Without Consent.

f) Assess a civil penalty as provided in Section 2FF of the Consumer Fraud Act, 815 ILCS 505/2FF, of $50,000 for each violation against an elderly consumer, defined as a person 60 years of age or older;

g) Assess a civil penalty as provided in Section 2FF of the Consumer Fraud Act, 815 ILCS 505/2FF, of $50,000 for each violation against a person with a disability;

h) Require Defendant to pay all costs for the prosecution and investigation of this action, as provided by Section 10 of the Consumer Fraud Act, 815 ILCS 505/10; and

i) Provide such other and further equitable relief as justice and equity may require.

## **The Automatic Stay and the Police and Regulatory Power Exception**

Upon the filing of a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) arises and prohibits – among other acts – "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the case."[16] But there are certain exceptions to the automatic stay, including the "police and regulatory power exception" of 11 U.S.C. § 362(b)(4), which excepts from the automatic stay:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;[17]

To determine whether an action falls within the police and regulatory power exception, "courts have applied two related, and somewhat overlapping tests: the

---

[16] 11 U.S.C. § 362(a)(1).
[17] 11 U.S.C. § 362(b)(4).

5

pecuniary purpose test and the public policy test."[18] Under the pecuniary purpose test, the Court must determine "whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health."[19] Under the public policy test, the Court must evaluate "whether the government is effectuating public policy rather than adjudicating private rights."[20] The police and regulatory power exception applies "if the purpose of the law is to promote public safety and welfare or to effectuate public policy."[21] But if "the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception" does not apply.[22] Thus, these two tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors."[23]

The Debtors candidly acknowledge that bankruptcy courts in the Eleventh Circuit have "set a strong precedent that lawsuits filed by states alleging violations of consumer protection statutes fall within the 'police and regulatory power exception' found in 11 U.S.C. § 362(b)(4)."[24] The Debtors also acknowledge that bankruptcy courts have held that the police and regulatory power exception includes not only

---

[18] *In re Halo Wireless, Inc.*, 684 F.3d 581, 588 (5th Cir. 2012) (cleaned up); *In re Nortel Networks, Inc.*, 669 F.3d 128, 139 (3d Cir. 2011); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005); *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385 (6th Cir. 2001).
[19] *Nortel,* 669 F.3d at 139-40.
[20] *Id.* at 140.
[21] *Id.*
[22] *Id.*
[23] *Chao*, 270 F.3d at 389.
[24] Objection at 8 (citing *In re Berry*, 2019 WL 3992719, at *2 (Bankr. S.D. Fla. 2019); *In re Guardia*, 522 B.R. 734, 735 (Bankr. S.D. Fla. 2014); *In re Steffy*, 494 B.R. 574, 585 (Bankr. N.D. Ga. 2012)).

requests for injunctive relief, but also requests for monetary relief, including claims for restitution and civil penalties.[25] But in this case the Debtors claim the Sale largely moots much of the relief sought in the Illinois Action. For that reason, the Debtors argue this Court should deny the Motion altogether and just let the Illinois AG file a proof of claim in this case, which would be deemed allowed[26] unless a party in interest objects.

Although the Sale may have rendered moot much of the relief sought in the Illinois Action, that is a determination for the Illinois state court to make and is not a basis for this Court to deny the Motion. Rather, this Court must determine whether the Illinois Action falls within the police and regulatory power exception of 11 U.S.C. § 362(b)(4), and if it does not, whether to grant relief from the automatic stay to allow that action to proceed. To determine whether the Illinois Action falls within the police and regulatory power exception, the Court must evaluate each claim for relief. To aid in this analysis, the Court will separate the requests for relief into two categories: (1) those that do not request monetary (or "pecuniary") relief, and (2) those that do request monetary relief.

The following requests for relief in the Complaint do not seek monetary relief:

(a) preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a preliminary injunction and the appointment of a receiver;

---

[25] Objection at 9; (citing *Berry*, 2019 WL 3992719, at *2).
[26] 11 U.S.C. § 502(a).

>   (b) request for a permanent injunction to prevent future violations of the Telephone Solicitations Act and Consumer Fraud Act; and
>
>   (c) revocation of Liberty Power Holdings' Certificate of Service Authority to operate as an alternative retail electric supplier in the State of Illinois.

These requests clearly seek to protect the public, promote public safety and welfare, and effectuate public policy, and do not serve a primarily pecuniary purpose. Accordingly, these requests for relief fall within the police and regulatory power exception to the automatic stay, and may proceed in Illinois state court.[27]

The second category of relief consists of those requests that seek monetary relief, as follows:

>   (a) restitution of at least $77,191,092;[28]
>
>   (b) rescission of contracts entered into between Liberty Power Holdings and Illinois consumers;
>
>   (c) the refund of monies paid;
>
>   (d) disgorgement of ill-gotten monies;
>
>   (e) civil penalties as provided in Section 7 of the Consumer Fraud Act, 815 ILCS 505/7, of up to $50,000 per deceptive act or practice and an

---

[27] This includes the request to appoint a receiver. Although a request to appoint a receiver in state court would appear to be at odds with Bankruptcy Code policy, the police and regulatory power exception of Section 362(b)(4) clearly states that it applies to paragraphs (1), (2), (3) and (6) of Section 362(a). Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." In the absence of the police and regulatory power exception, Section 362(a)(3) would clearly prohibit the appointment of a receiver (or even seeking appointment of a receiver). But Section 362(b)(4) is clear that if the police and regulatory power exception applies – which it does here – then the filing of a bankruptcy petition does not operate as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," including seeking appointment of a receiver. 11 U.S.C. §§ 362(a)(3); 362(b)(4). That being said, upon the closing of the Sale, all of Liberty Power Holdings' Illinois residential contracts will have been sold, likely rendering moot any request to appoint a receiver in the Illinois Action.

[28] Under Illinois law, an award of restitution under the Consumer Fraud Act has priority over civil penalties. 815 Ill. Comp. Stat. § 505/7(c).

 additional $50,000 for each act or practice found to have been committed with intent to defraud;

 (f) Civil penalties as provided in Section 2FF of the Consumer Fraud Act, 815 ILCS 505/2FF, of $50,000 for each violation against an elderly consumer, defined as a person 60 years of age or older;

 (g) Civil penalties as provided in Section 2FF of the Consumer Fraud Act, 815 ILCS 505/2FF, of $50,000 for each violation against a person with a disability;

 (h) costs for the prosecution and investigation of this action, as provided by Section 10 of the Consumer Fraud Act, 815 ILCS 505/10; and

 (i) such other and further equitable relief as justice and equity may require.

As for these requests, the Court must determine whether the Illinois AG is acting primarily in furtherance of the government's own or certain private parties' interest in obtaining a pecuniary advantage over other creditors,[29] or whether he is seeking to effectuate public policy.[30]

Courts have held that claims for rescission, restitution, and disgorgement primarily serve public purposes of justice and deterrence.[31] Indeed, the Eleventh Circuit has stated that "the purpose of [disgorgement] is not to compensate the victims of fraud but to deprive the wrongdoer of his ill-gotten gain."[32] Likewise, courts treat civil penalties and attorneys' fees as being within the scope of the section 362(b)(4) exception.[33] Thus, while the claims for restitution, refunds, disgorgement,

---

[29] *Chao*, 270 F.3d at 389.
[30] *See Nortel,* 669 F.3d at 139-40.
[31] *F.T.C. v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 458–59 (D. Md. 2004).
[32] *FTC v. Gem Merch. Corp.,* 87 F.3d 466, 470 (11th Cir. 1996).
[33] *In re First All. Mortg. Co.*, 263 B.R. 99, 109 (B.A.P. 9th Cir. 2001) (citing *In re Dunbar*, 235 B.R. 465, 474 (9th Cir. BAP 1999), *aff'd,* 245 F.3d 1058 (9th Cir.2001); *In re Poule*, 91 B.R. 83, 87 (9th Cir. BAP 1988); *In re Charter First Mortg., Inc.*, 42 B.R. 380, 384 (Bankr. D. Or. 1984)).

civil penalties and costs are certainly pecuniary claims, based on the foregoing authority, the Court concludes that these claims in the Illinois Action *primarily* seek to protect public safety and health[34] and to effectuate public policy.[35] These claims therefore fall within the police and regulatory power exception of 11 U.S.C. § 362(b)(4) and may proceed without violating the automatic stay of 11 U.S.C. § 362(a).

Thus, for the reasons discussed above, nearly all of the relief sought by the Illinois AG may proceed, with one exception: the claim for rescission of contracts. As a result of the Sale, the Debtors will no longer own any Illinois residential customer contracts that are the subject of the Illinois Action, likely rendering that request for relief moot. But more importantly, under the terms of the Sale Order all governmental entities are "prohibited from attempting or seeking to rescind, terminate or otherwise cause the cancellation of any Assigned Contracts, and from asserting or seeking to collect any fines, fees or other monetary awards against the Buyer or its affiliated designees, in each case that are based in whole or in part upon any act, omission or event occurring prior to the applicable Closing."[36] So, while the police and regulatory power exception generally does not prohibit the continued prosecution of the Illinois Action, the Illinois AG is prohibited under the terms of the Sale Order from pursuing his claims for rescission.

---

[34] *See Nortel,* 669 F.3d at 139-40.
[35] *See id.* at 140.
[36] Sale Order, ¶ 33.

### Request for Stay Relief

As an alternative to a determination that the automatic stay does not apply, the Illinois AG seeks relief from the automatic stay to pursue the Illinois Action. Because the Court has determined that – except for the rescission claims – the Illinois Action may proceed, the alternative request for stay relief is moot.[37]

### Conclusion

Accordingly, for the reasons discussed above, it is

**ORDERED** as follows:

1. The Motion is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

2. The Illinois Action falls within the police and regulatory power exception of 11 U.S.C. § 362(b)(4) and accordingly, the automatic stay of 11 U.S.C. § 362(a) does not stay the Illinois Action.

3. As to any claims for rescission of contracts entered into between Liberty Power Holdings and Illinois consumers, however, upon the closing of the Sale, Liberty Power Holdings will no longer own any Illinois consumer customer contracts, and, under the terms of the Sale Order, the Illinois AG (as well as all other government entities) are barred from seeking to rescind those contracts. Accordingly, the Illinois

---

[37] Had the police and regulatory power exception not applied, however, the Court would not have found cause for relief from the automatic stay. As a result of the Sale, Liberty Power Holdings will no longer own any Illinois residential customer contracts and will no longer be engaging in the alleged conduct detailed in the Complaint. Moreover, because the Sale will generate insufficient proceeds to pay all secured creditors (whose liens no party has timely challenged) in full, the prospect of any recovery for unsecured creditors (including the Illinois AG) remains uncertain. A more efficient resolution – given the economics of this case – would have been for the Illinois AG to just file a proof of claim in this case.

AG may not proceed on any claims for rescission of any customer contracts in the Illinois Action.

###

Copies to:

Michele Casey, Esq.
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601

*Attorney Casey is directed to serve a copy of this Order on all parties entitled to service thereof, and to file a certificate of service with the Court.*