**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:** | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | Case No. 21-13797-SMG |
| **LPT, LLC,** | Case No. 21-15537-SMG |
| **LIBERTY POWER MARYLAND, LLC,** | Case No. 21-15539-SMG |
| **LIBERTY POWER DISTRICT OF COLUMBIA, LLC,** | Case No. 21-15540-SMG |
| **Debtors.** _____/ | (Jointly administered 21-13797-SMG) |

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM**
**THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(D) [ECF No. 551]**

Liberty Power Holdings, LLC ("Holdings"), Liberty Power District of Columbia, LLC ("Liberty District of Columbia"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty Maryland")(collectively, the "Debtors"), by and through their undersigned counsel, file this objection (the "Objection") to the *Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d)* filed by BLT Steak LLC and BLT Fish LLC, individually and as the appointed representative of the class certified in the Class Action (defined below)(the "Stay Relief Motion") [ECF No. 551][1] and state as follows:

**RELEVANT BACKGROUND**

1. On April 20, 2021 (the "Petition Date"), Holdings filed a voluntary petition in this Court for relief under the Bankruptcy Code.

2. On June 4, 2021, Liberty District of Columbia, LPT and Liberty Maryland, each a wholly-owned subsidiary of Holdings, filed chapter 11 bankruptcy petitions and thereafter obtained joint administration of such bankruptcy cases with the chapter 11 case of Holdings,

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Stay Relief Motion.

1

including to facilitate the sale of all or substantially all of the Debtors' assets, including without limitation, retail customer contracts and associated receivables pursuant to Sections 363 and 365 of the Bankruptcy Code.

3. Since their respective bankruptcy filings, the Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. As of the date hereof, no creditors' committee has been appointed in these cases. In addition, no trustee or examiner has been appointed.

5. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [ECF No. 10].

## PRELIMINARY STATEMENT

In the Stay Relief Motion, BLT Steak, LLC and BLT Fish, LLC (collectively, the "Plaintiffs") assert that they are the appointed representatives of the class certified in a case pending in the Supreme Court of New York, County of New York, Case No. 151293 / 2013 styled *BLT Steak, LLC and BLT Fish, LLC v. Liberty Power Corp., LLC d/b/a Liberty Power New York and Liberty Power Holdings, LLC* (the "Class Action"), and seek entry of an order granting relief from the automatic stay so that the Plaintiffs can resume their litigation against Holding's and the Debtors parent company, Liberty Power Corp., LLC d/b/a Liberty Power New York ("Corp."). Although the Class Action case was originally commenced on February 11, 2013, as of the Petition Date, the New York Court had not entered an order certifying the class or appointing class counsel because the parties could not reach agreement on the language of the proposed order.

Among other things, the Plaintiffs allege that the class of commercial energy consumers

2

suffered damages because of the Debtors and Corp's alleged breach of certain commercial contracts by charging exorbitant rates for electricity.  In connection with the foregoing, the Motion seeks relief from stay to "*continue their litigation against the Defendants to the extent there are insurance proceeds available to the Plaintiffs and to liquidate the class claim.*"

The Debtors are not aware of any insurance policies that would cover the claims asserted by Plaintiffs in the Class Action.  Regardless of the availability of insurance coverage, however, the Debtors would still be required to participate and defend the claims asserted against the Debtors by Plaintiffs and expend significant amounts in legal fees and costs.   The Plaintiffs assert, "*Any amount unsatisfied from insurance will be a claim against the estate.*" As such, the Debtors would be required to participate in the Class Action to avoid the very real chance of the Debtors being bound by collateral estoppel and/or record taint in respect of rulings that may be made in the Class Action.  Next, Plaintiffs assert that judicial economy favors the relief they seek, that they are likely to prevail on the merits, that the stay imposes a hardship on them, and that relief from stay does not prejudice the Debtors because the claims ultimately need to be liquidated.  Moreover, Plaintiffs assert they will be able to conduct discovery on non-debtors to investigate any direct claims they may have against non-debtor entities.

Among other compelling reasons outlined below, there is no need to upend the entire claims allowance process established under the Bankruptcy Code simply because Plaintiffs want to rush to liquidate their claims before another court.   Importantly, on June 24, 2021, the Plaintiffs filed Proof of Claim (Claim No. 17) in the Holdings' chapter 11 case asserting an unsecured claim in the amount of $383,112,952.00, thereby submitting themselves to the jurisdiction of this Court to liquidate their claims.

While a new motion with mostly new movants, the Stay Relief Motion is similar in form

and substance to the *Motion for Relief from the Automatic Stay* [ECF No. 159] filed by Plaintiffs Samuel Katz and Lynn Rhodes, seeking stay relief to liquidate their claims and seek certification of a class in the case pending in the United States District Court for the District of Massachusetts, under the caption *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (the "TCPA Case"). In connection with the foregoing, this Court entered an *Order Denying Without Prejudice denied the Stay Relief Motion (I) Motion For Relief From The Automatic Stay Pursuant To 11 U.S.C. §362(D)* [ECF No. 159] *And (II) All Other Relief Requested In Connection Therewith* [ECF No. 222] and correctly found that by filing a proof of claim the movants submitted themselves to the jurisdiction of this Court to liquidate their claims and proceeding in another forum would be wasteful and unnecessarily deplete the Debtors' limited resources. The same holds true in this case.

As outlined in detail below, the Stay Relief Motion should be denied because Plaintiffs have not met their heavy burden to show "cause" for relief from stay under the facts and circumstances of the present case.

**DEBTORS' OBJECTIONS**

**A. The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.**

"The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986); *see also In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012). ("Congress considered the automatic stay one of the fundamental debtor protections provided by the bankruptcy laws when it was instituted."). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection' (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re*

4

*Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). This expansive scope serves the cardinal purposes of bankruptcy: namely, to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (internal quotation marks omitted)); *Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan").

In light of this fundamental protection, an order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).

**B. A Party Seeking Relief from the Automatic Stay Must Demonstrate "Cause."**

A court may grant relief from the automatic stay imposed by 11 U.S.C. § 362(a) only "for cause," 11 U.S.C. § 362(d)(1), and the burden of establishing a prima facie case of "cause" falls squarely on the movant. *See, e.g., In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-RBR, 2011 Bankr. LEXIS 591, at *6 (S.D. Fla. Bankr. Jan. 24, 2011). "The party asserting that cause exists has the burden of establishing the legally sufficient basis for such relief." *In re Louis*, 20-62841-JWC, 2020 WL 2843013, at *2 (Bankr. N.D. Ga. May 29, 2020). The Bankruptcy Code does not provide a definition of "cause" and "so courts often analyze cause by considering the totality of the circumstances in each case." *In re Honh-Yin Chan*, Case No. 6:18-bk-03297-KSJ, 2019 WL 3948202 at *2 (Bankr. M.D. Fla. June 3, 2019); *In re Bryan Road, LLC*, 382 B.R. 844,

5

854 (S.D. Fla. Bankr. 2008). Therefore, the court must determine whether discretionary relief from the stay is appropriate on a case-by-case basis. *In re Errico*, 618 B.R. 41, 48 (Bankr. M.D. Fla. 2020). "Generally, the court should balance the potential hardship that will be incurred by the moving party if the stay is not lifted against the potential prejudice to the debtor and the debtor's estate. *In re Gulfstream Crane, LLC*, Case No. 09-37091-BKC-RBR, 2010 Bankr. LEXIS 5665, at *4 (S.D. Fla. Bankr. Mar. 4, 2010).

While there is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) "cause" exists to lift the automatic stay, the Eleventh Circuit has considered: (1) whether the debtor has acted in bad faith; (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code"; and (3) the status of pending state court proceedings. *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013); *Barclays–Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.),* 871 F.2d 1023, 1026 (11th Cir.1989); *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 6:20-BK-01346-KSJ, 2020 WL 6803154, at *2 (Bankr. M.D. Fla. Oct. 16, 2020); *Honh-Yin Chan*, 2019 WL 3948202 at *2; *Siewe v. Locci (In re Siewe)*, 730 Fed. App'x 871, 877 (11th Cir. 2018).

It is the *Plaintiffs' burden* to show "cause" for relief from the automatic stay under this test. *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 6:20-BK-01346-KSJ, 2020 WL 6803154, at *2 (Bankr. M.D. Fla. Oct. 16, 2020). Should the Plaintiffs "fail[] to make an initial showing of cause, [] the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285-86 (2d Cir. 1990); *see also Capital Comm. Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."). "[T]he general rule is that claims that are not viewed

6

as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also In re Motors Liquidation Co.*, 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

At the outset, the cardinal purposes of bankruptcy protection outlined above overwhelmingly support denial of the Stay Relief Motion, and the continued enforcement of the automatic stay. *See supra SCO Grp., Unisys Corp., Jefferson Cnty.* In this case, BLT Steak LLC and BLT Fish LLC, as Class Representatives filed on June 24, 2022, a proof of claim in these Chapter 11 cases asserting a claim in the amount of $383,112,952.00 [POC No. 17] which claim constitutes *prima facie* evidence of the validity and amount of such claim unless and until the Debtors object to it. *See* Bankruptcy Rule 3001(f). The Debtors submit that continuation of the Class Action would inequitably burden the Debtors by forcing them to expend, time, resources and funds of the estate engaging in discovery and litigation, and it will prejudice other similarly situated creditors of the Debtors who must wait for their claims to be addressed in the claims resolution process. To be clear, lifting the stay to require the Debtors to defend Plaintiffs' claims separately in a different forum would undermine the claims process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for

adjudicating and liquidating claims."). Worse, allowing Plaintiffs to proceed will open the floodgates to all other putative plaintiffs seeking to liquidate their claims in another court. *In re Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"). Plaintiffs cannot be allowed to "gain a preference" over other creditors for their claims against the Debtors.

Further, granting stay relief will force the Debtors to expend substantial amounts on legal fees and costs, which will deplete its limited resources. Plaintiffs make light of this factor by suggesting that they only want to pursue their claims to "*the extent insurance coverage exists ...*" In doing so, Plaintiffs have failed to even address whether or not the Debtors have insurance coverage available to cover the claims asserted. Any proceeds flowing from the insurance policy amounts to property of the estate pursuant to 11 U.S.C. § 541. "[The] definition [of the bankruptcy estate] is intended to be broadly construed, and courts are generally in agreement that an insurance policy will be considered property of the estate. Insurance policies are property of the estate . . . . Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate." *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1023 (5th Cir. 2012); citing *In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993). More importantly, regardless of the availability of insurance coverage, the Debtors would still be required to participate and defend the claims asserted against the Debtors by Plaintiffs and expend significant amounts in legal fees and costs. Specifically, the Plaintiffs assert "*Any amount unsatisfied from insurance will be a claim against the estate.*" As such, the Debtors would be required to participate in the Class Action to avoid the

very real chance of the Debtors being bound by collateral estoppel and/or record taint in respect of rulings that may be made in the Class Action.

Prior to the Petition Date, the Debtors had to engage the law firm of Greenberg Traurig and Eckert Seamans and have already incurred substantial legal fees and costs defending the Class Action over the course of the past 8 years. If stay relief is granted the Debtors will have to incur additional legal fees and costs to defend the Class Action. Moreover, the Debtors' senior secured creditor, Boston Energy Trading & Marketing, LLC ("BETM"), has not authorized the use of its cash collateral or debtor-in-possession financing to pay any fees to any counsel to defend the Class Action. As a result, it is clear that denying the Stay Relief Motion will protect the Debtors from depleting their limited resources.

Moreover, if the Stay Relief Motion were granted, the Debtors' limited number of personnel will be forced to spend a substantial amount of time in the discovery and trial process, taking valuable time away from their efforts in liquidating the business, complying with the Bankruptcy Code, advancing the transition and transfer of the customer contracts to the buyer in the East and to the various state utilities, and advancing the claims review process. As a result, it is clear that denying the Stay Relief Motion will avoid interference with the orderly and value-maximizing liquidation of the Debtors' assets.

In addition, under the factors established by the Eleventh Circuit and discussed below, it is likewise clear that "cause" does not exist under section 362(d)(1) for relief from the automatic stay because, *e.g.*, (i) the Debtors acted in good faith in exercising their right to seek relief under the Bankruptcy Code, including unrelated to the Class Action, (ii) granting stay relief would significantly prejudice the Debtors and their ability to successfully reorganize/liquidate their

9

assets; and (iii) while there are pending proceedings outside of the Bankruptcy Court, those proceedings are not final, are not near completion, and judicial economy favors the Debtors.

### 1. The Debtors filed their petitions in good faith and have complied with their duties and obligations as debtors-in-possession.

There is no particular test for determining whether a debtor has filed a petition in good faith or in bad faith. Courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions or, in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re 412 Boardwalk, Inc.*, 520 B.R. 126, 132-33 (Bankr. M.D. Fla. 2014) (quoting *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988)); *In re Blue Eagle Farming, LLC*, 18-02395-TOM-11, D.E. 303, at 3-5 (Bankr. N.D. Ala. Nov. 15, 2018) (applying *Feingold / Siewe* factors and concluding that debtor filed case in good faith where, despite having been actively participating in pre-petition litigation when it was in its infancy and in the discovery planning stage, "the Debtors have availed themselves of the relief provided by the Bankruptcy Code, consistent with the underlying purpose of the Code, as it appears to this Court that the Debtors face some financial challenges").

The Court is well aware of the circumstances leading up to the filing of the within chapter 11 cases, including the devastating impact that Winter Storm Uri had on the Debtors and their senior secured creditor BETM. Since filing their chapter 11 cases, the Debtors have complied with the Bankruptcy Code and have efficiently and effectively advanced these chapter 11 cases towards a value-maximizing sale process, including, among other things, obtaining access to and use of the systems of Corp so as to operate the business, obtaining the consensual use of cash collateral from BETM, obtaining debtor-in-possession financing from BETM, and obtaining approval to pay critical vendors to preserve the value of the business. Most importantly, after conducting a fulsome

10

marketing and sale process pursuant to bidding procedures approved by the Court, the Debtors entered into a stalking horse agreement with the Buyer, obtained approval from the Court to sell the Purchased Assets to the Buyer over the objection of several interested parties and successfully closed on the sale of the Purchased Assets to the Buyer. In connection therewith, the Debtors and the Buyer have been working diligently to effect a transition and transfer of the customer contracts, including providing all required notices to customers and regulatory agencies, and by complying with all applications laws related thereto. The Debtors have also obtained orders of the Court authorizing the rejection and termination of a substantial portion of the remaining customer contracts that are not being sold to the Buyer.  Further, the Debtors have obtained an extension of their DIP Loan with BETM through the end of February and have requested and recently obtained a further extension through the end of March 2022.  The Debtors also obtained the Administrative Claims Bar Date for February 9, 2022, and are presently reviewing and considering the four (4) applications for the allowance of Chapter 11 administrative claims seeking in excess of $9.0 million in the aggregate. Lastly, the Debtors have commenced an investigation into potential claims and causes of action available to the Debtors' estates and have issued subpoenas in connection therewith [ECF Nos. 527, 528].

The filing of these chapter 11 cases and the actions of the Debtors, their professionals, management and employees were done in the utmost good faith.  The Plaintiffs have not suggested any facts that would show that the Debtors acted in bad faith in connection therewith.  To be clear, the filing of these chapter 11 cases had nothing to do with the Class Action.  Therefore, this factor overwhelmingly supports denial of the Stay Relief Motion.

    **2. The balance of hardships to the parties considering the overall goals of the Bankruptcy Code.**

11

Courts applying this factor begin with an analysis of the applicable *goals* of the Bankruptcy Code at play. *E.g.*, *Blue Eagle Farming, LLC*, 18-02395-TOM-11, D.E. 303, at 5. As highlighted *supra*, a primary goal of the Bankruptcy Code is the "fresh start" for the debtor, which permits the debtor a *new opportunity* and a "clear field for future effort, unhampered by the pressure and discouragement" of pre-existing obligations. *United States v. Jones (In re Jones)*, 230 B.R. 875, 880 (M.D. Ala. 1999). That is why the stay is so expansive—this fresh start should enable the debtor preserve its assets from, *inter alia*, the legal costs of defending proceedings against it and avoid interference with the debtor's orderly rehabilitation. *E.g.*, *SCO Grp., Inc.*, 395 B.R. at 856.

As outlined above, the Debtors are advancing the goals of the Bankruptcy Code by focusing on operating their business, complying with the Bankruptcy Code and advancing the transition and transfer of the customer contracts to the buyer in the East and to utilities in the various states, and advancing the claims review process. Forcing the Debtors to re-focus their limited resources on the Class Action (especially when the Plaintiffs have already filed a proof of claim in these proceedings) will present a substantial hardship on the Debtors and unnecessary legal fees and costs. The very size of the claim ($383 million) suggests that litigation over it will be complex and prohibitively expensive. On the other hand, enforcing the automatic stay and denying the Stay Relief Motion will not impose a hardship on the Plaintiffs, certainly not one that outweighs the hardship imposed on the Debtors. The Plaintiffs' claim – assuming it is objected to - can be resolved through the claims process in these proceedings without the need to expend additional legal fees and costs in the Class Action.

In the present case as outlined above, forcing the Debtors to participate in the Class Action will have an adverse and detrimental impact on the administration of these Chapter 11 cases and the ultimate recovery to creditors. Moreover, despite Plaintiffs' assertion that they will seek to

minimize the impact and expense of continued litigation, such efforts are completely illusory and lifting the stay would seriously and adversely impact the Debtors' administration of its estate and rehabilitation efforts. *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect of such litigation on the administration of the estate."). In fact, diverting the Debtors' attention to ancillary litigation at this critical juncture in the Debtors' chapter 11 case "is precisely the type of activity and burden to the estate which § 362 of the Code was intended to alleviate." *In re Swallen's, Inc.*, 205 B.R. 879, 884 (Bankr. S.D. Ohio 1997).

Consistent with *W.R. Grace*, courts have routinely denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)); *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit

13

would force [debtor] to expend estate resources to defend that action" and thus "would prejudice the interests of other creditors").

In contrast to the substantial harm that would befall the Debtors and their estates outlined above, the Plaintiffs have failed to articulate any significant harm that would result if the relief requested in the Stay Relief Motion was denied especially in light of the fact that they have filed a proof of claim in these proceedings. Absent such a showing, the Plaintiffs cannot carry their "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) (internal quotation omitted); *see also In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003) (stating that the movants must show that "the balance of hardships from not obtaining relief tips significantly in [its] favor") (citation omitted). One alleged hardship advanced by the Plaintiffs is financial hardship to the consumers who will be forced to absorb the costs associated with a delay in litigating their claims. It is unclear how a delay in litigating the claim in the Class Action will result in additional costs to the consumers in light of the filing of a claim in these proceedings. This delay, if true, is only that—delay. "Relief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights . . . ." *In re Madison Hotel Assocs.*, 18 B.R. 218, 219 (Bankr. W.D. Wis. 1982).

Based on the above, the balancing of hardships weighs heavily in favor of denying the Stay Relief Motion.

### 3. Status of Pending Court Proceedings

In addition to the above factors, the Eleventh Circuit looks to the status of the pending proceedings in the non-bankruptcy forum. As set forth above, the Class Action, although

14

commenced in 2013, has not advanced rapidly. An order certifying the class has not been entered, and discovery is in the preliminary stages. The Plaintiffs seek to use the Class Action against the Debtors primarily as a vehicle to assert and pursue claims against non-debtor third parties. The Plaintiffs know that obtaining a judgment against the Debtors for an unsecured claim will likely have little to no value in these Chapter 11 cases. If the Plaintiffs have claims against non-debtor parties, then they are free to pursue such claims. However, they cannot use the prosecution of claims against the Debtors as a method to do so. Such motivation is simply not "cause" to grant relief from the stay.

As a result, this factor weighs heavily in favor of denying the Stay Relief Motion.

### 4. Probability of Success on the Merits

Ignoring the factors considered by the Eleventh Circuit in both *Feingold* and *Siewe*, Plaintiffs cite instead to the *Rexene Products* decision to argue that the Court should grant relief from stay because the movant's probability of success on the merits is substantially greater than "*very slight.*" *See Izzarelli v. Rexene Products Co* (*In re Rexene Prod. Co*), 141 B.R. 574, 576 (Bankr. D. Del. 1992). In support of this proposition, Plaintiffs argue that because the class has been certified "*there can be no dispute the Plaintiffs probability of success passes muster under the equitable balancing test.*" See, Stay Relief Motion ¶20. As stated above, as of the Petition Date, the New York Court had not entered an order certifying the class or appointing class counsel because the parties could not reach agreement on the language of the proposed order. Moreover, even if the class is certified the Plaintiffs are taking a gigantic leap and equating that with overall success on the merits of a case that is highly complex. As such, the Plaintiffs have not carried their burden. The Class Action has is still in the initial stages of discovery and as such there is simply no meaningful way for this Court to evaluate the merits of that litigation. Moreover, the

Plaintiffs have filed a proof of claim in this case of over $383 million, which has not been objected to by the Debtors and is therefore *prima facie* allowed at this time. As a result, this factor alone supports denial of the Stay Relief Motion.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Stay Relief Motion, and grant such other and further relief as is proper.

Dated this 28th day of February 2022.

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:  /s/   *Paul J. Battista*
Paul J. Battista, Esq.
Florida Bar No. 884162
pbattista@gjb-law.com
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 813818
mguitian@gjb-law.com
Heather L. Harmon
Florida Bar No. 13192
hharmon@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 28, 2022, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF. I also certify that the foregoing Objection is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

*/s/ Paul J. Battista.*
Paul J. Battista
