**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:** | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | Case No. 21-13797-SMG |
| **LPT, LLC,** | Case No. 21-15537-SMG |
| **LIBERTY POWER MARYLAND, LLC,** | Case No. 21-15539-SMG |
| **LIBERTY POWER DISTRICT OF COLUMBIA, LLC,** | Case No. 21-15540-SMG |
| | **(Jointly administered 21-13797-SMG)** |

_____/

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE TERMS OF A SETTLEMENT BY AND BETWEEN THE DEBTORS AND THE COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF ENERGY RESOURCES AND DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Liberty Power Holdings, LLC ("Holdings"), Liberty Power District of Columbia, LLC ("Liberty District of Columbia"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty Maryland")(collectively, the "Debtors"), in these chapter 11 cases (these "Chapter 11 Cases"), hereby submit this motion (the "Motion") for entry of an order pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the terms of that certain Settlement Agreement, dated May 12, 2022 (the "Settlement Agreement") attached hereto as **Exhibit B**, between Holdings and each of the Commonwealth of Massachusetts Department of Energy Resources ("DOER"), and the Commonwealth of Massachusetts Department of Environmental Protection ("MassDEP") (the MassDEP and DOER, together with Holdings, the "Settlement Parties"), which Settlement Agreement provides for, among other things, the allowance of a chapter 11 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in the aggregate amount of Four Hundred and

Seventy Thousand Dollars ($475,000) to and in favor of MassDEP and DOER in satisfaction of the claims asserted in the MassDEP Application [ECF No.410] and the DOER Application [ECF No. 411] as described in more detail below. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' bankruptcy cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are section 105(a) of Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

3. On April 20, 2021 (the "Holdings Petition Date"), Holdings filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Since that time, Holdings has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. On June 4, 2021 (the "Subsidiary Petition Date"), each of Liberty District of Columbia, LPT and Liberty Maryland filed chapter 11 bankruptcy petitions, which bankruptcy cases were jointly administered with the chapter 11 case of Holdings, including to facilitate the sale of all or substantially all of the Debtors' assets, including without limitation, retail customer contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code.

5. As of the date hereof, no creditors' committee has been appointed in these cases. In addition, no trustee or examiner has been appointed.

6. For a detailed description of the Debtors and their operations, the Debtors

respectfully refer the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[ECF No. 10].

## RELEVANT BACKGROUND

7. On October 18, 2021, MassDEP filed its *Application for Administrative Expenses on Behalf of the Commonwealth of Massachusetts' Department of Environmental Protection* (the "DEP Application") [ECF No. 410] seeking allowance of a chapter 11 administrative expense claim against Holdings for alternative compliance payments ("ACPs") totaling $1,232,655.34 that Holdings allegedly owes to MassDEP based on the Debtors' retail energy sales in Massachusetts between April 21, 2021 and October 18, 2021. The MassDEP Application further asserts that pursuant to certain regulations promulgated by the MassDEP known as the CES Regulations, Holdings owes the MassDEP alternative compliance payments because Holdings has not acquired the requisite amount of renewable energy credits ("RECs") and clean energy certificates ("CECs") required for a particular compliance year.

8. On October 18, 2021, DOER filed its *Application for Administrative Expenses of the Massachusetts Department of Energy Resources* ("DOER Application") [ECF No. 411] seeking allowance of a chapter 11 administrative expense claim against Holdings for ACPs totaling approximately $4,347,164.00 that Holdings allegedly owes to DOER based on Holdings' retail energy sales in Massachusetts between April 30, 2021 and October 18, 2021.

9. On November 8, 2021, the Debtors filed *Debtors' Omnibus Objection to Applications For Administrative Expenses Filed by Commonwealth of Massachusetts' Department of Energy Resources And Department of Environmental Protection* [ECF No. 445] objecting to the MassDEP Application and DOER Application (collectively, the "Applications").

10. On December 3, 2022, the Commonwealth of Massachusetts, on behalf of MassDEP and DOER filed its *Reply to Debtors' Omnibus Objection to Massachusetts Departments of Energy Resources and Environmental Protection's Application for Administrative Expenses* (the "Reply") [ECF No. 489].

11. On December 17, 2022, the Debtors' filed the *Debtors' Sur-Reply in Support of Omnibus Objection to Applications for Administrative Expenses filed by the Massachusetts' Department of Energy Resources and the Massachusetts' Department of Environmental Protection* (the "Sur-Reply") [ECF No. 498].

12. The Settlement Parties' opinions differ regarding Holdings' liability for, and amount and priority of, the claims asserted in the MassDEP Application and DOER Application. The claims asserted by MassDEP and DOER are complex, involving the intersection of federal bankruptcy law and state regulatory programs. Some issues raised by the Applications have yet to be fully addressed by any bankruptcy court. Accordingly, the Debtors recognize that further litigation of such issues would almost certainly be protracted and costly and potentially jeopardize the Debtors ability to confirm a plan, including the possibility that the Applications could be granted, thereby burdening these bankruptcy estates with in excess of $5.7 million in allowed chapter 11 administrative expense claims.

13. As a result, the Debtors engaged in good faith, arms' length settlement discussions with MassDEP and DOER. Those settlement discussions resulted in the Settlement Parties reaching an agreement resolving the Applications, subject to Bankruptcy Court approval, the terms of which are set forth in the Settlement Agreement.

14. Pursuant to the terms of the Settlement Agreement[1] and subject to the approval of

---

[1] The description of the terms of the Settlement Agreement herein is in summary form. All parties in interest are encouraged to read the Settlement Agreement in its entirety. In the event of an inconsistency between

4

this Court, Holdings has agreed to an allowed aggregate chapter 11 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in the amount of Four Hundred Seventy-Five Thousand dollars ($475,000.00) in favor of MassDEP and DOER, which will be paid only if and when Holdings files and confirms a chapter 11 plan of reorganization/liquidation in these Chapter 11 Cases.

## RELIEF REQUESTED

15. By this Motion, the Debtors request that the Court enter the Proposed Order (a) approving the Settlement Agreement pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(b), (b) granting MassDEP and the DOER an allowed chapter 11 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in the aggregate amount of Four Hundred and Seventy-Five Thousand dollars ($475,000.00")(the "Settlement Claim"), with the Settlement Claim to be treated in accordance with the terms of any chapter 11 plan confirmed in these Chapter 11 Cases; *provided however* such Settlement Claim will not be subject to payment unless and until Holdings files and confirms a chapter 11 plan of reorganization/liquidation in these Chapter 11 Cases.

## BASIS FOR RELIEF

### A. The Settlement Agreement Should be Approved.

16. Fed. R. Bankr. P. 9019(a) provides that: "*On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.*" Fed. R. Bankr. P. 9019(a).

17. Compromises and settlements are looked upon favorably in bankruptcy cases

---

the terms of the Settlement Agreement described in this Motion and the Settlement Agreement itself, the terms of the Settlement Agreement shall control.

5

because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017) ("Compromises are favored in bankruptcy.").

18. Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). The standards for approval are well settled and require the Court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983); *Fla. Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See W.T. Grant Co.*, 699 F.2d at 608.

19. In the Eleventh Circuit, the Court must consider the following factors in determining whether to approve the settlement: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, 498 U.S. 959 (1990) (establishing the legal standard for approval of settlements).

20. In evaluating the settlement, the Court "need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the

disputes that are proposed to be compromised … rather, the Court may, and should, make a pragmatic decision on the basis of all equitable factors." *In re Holywell Corp.*, 93 B.R. 291 (Bankr. S.D. Fla. 1988) (emphasis in original, citations omitted).

### B. Application of Relevant Factors to the Settlement Agreement.

21. The Settlement Agreement contemplated herein is in essence a straightforward resolution of disputed claims. Notwithstanding the complexity of the facts and legal issues related to this matter, there is no novel or innovative mechanisms proposed or required to faithfully carry out the terms of the Settlement Agreement. No such mechanics are necessary because the Settlement Agreement calls for nothing more than the allowance of a chapter 11 administrative expense claim and releases between the parties. Similar settlements have been approved by other courts. *See e.g.*, *In re Agera Energy LLC*, Case No. 19-23802 (RDD) [Docket No. 592] (Bankr. S.D.N.Y. March 30, 2020) (approving settlement of claims in return for payment); *In re 1515-GEEnergy Holding Co. LLC*, Case No. 19-10303 (LSS) [Docket No. 561] (Bankr. D. Del. January 13, 2020) (approving settlement of civil dispute in return for one-time payment); *In re Cocoa Serv., L.L.C.*, Case No. 17-11936 (JLG) [Docket No. 280] (Bankr. S.D.N.Y. November 30, 2018) (approving settlement of civil dispute in return for an allowed general unsecured claim); *In re SunEdison, Inc*, Case No. 16-10992 (SMB) [Docket No. 4363] (Bankr. S.D.N.Y. November 27, 2017) (approving settlement in return for one-time payment); *In re AVAYA Inc,* Case No. 17-10089 (SMB) [Docket No. 1351] (Bankr. S.D.N.Y. October 16, 2017) (approving settlement in return for an allowed general unsecured claim).

22. The Settlement Agreement is the product of arms' length, good faith negotiations between the Settlement Parties. Other than the terms set forth in the Settlement Agreement, there are no side agreements, arrangements, or understandings between the Debtors, MassDEP or

DOER. The compromise contained in the Settlement Agreement presents the most efficient resolution of this dispute. Considering all the circumstances as a whole, the consensual resolution of the parties' dispute is in the best interest of the Debtors and its creditors.

23. First, approval of the Settlement Agreement will allow the parties to avoid costly, time-consuming, and distracting litigation. The underlying litigation between the Settlement Parties involves complex factual and legal issues, hence there is no question that substantial litigation risk exists. The Debtors cannot guarantee that they will prevail on the underlying litigation, and even if they did, there is no question that substantial costs must be incurred to do so, not the least of which are time and legal fees. If MassDEP and DOER pursue their claims through to judgment, such litigation would take considerable time, could involve potential appeals and potentially jeopardize the Debtors' ability to pay other stakeholders in this case.

24. Second, if the Debtors were not successful, then the allowance of the MassDEP and/or DOER's asserted chapter 11 administrative expense claim would almost certainly bring these Chapter 11 Cases to an abrupt end. The DOER Application seeks an administrative expense claim of $4,347,164.00 against Holdings' estate. The MassDEP Applications seeks an administrative expense claim between $379,289.13 and $1,232,655.34. Therefore, if MassDEP and/or DOER's claims were to be allowed in whole or in part, then the Debtors would likely be unable to confirm a chapter 11 plan, to the detriment of all creditors of the Debtors' estates. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full in cash of all administrative expense claims upon plan confirmation). In contrast, the Settlement Agreement provides certainty in the amount that will be paid to MassDEP and DOER on account of their asserted chapter 11 administrative expense claims and thereby allows the potential to confirm a plan in these chapter 11 cases. Therefore, there should be no question that *Justice Oaks* Factors Nos. 1, 2 and 3 strongly favor the

approval of the Settlement Agreement.

25. Furthermore, it is self-evident that, by agreeing to the Settlement Agreement, the Debtors believe that the Settlement Agreement is fair and favorable. This belief is a sound exercise of the Debtors' business judgment, formed after lengthy negotiations with the Debtors' advisors. Given the uncontroverted reasonableness of the Debtors' business judgment, the Court may give weight to the Debtors' opinion that the settlement is fair and equitable. The Debtors respectfully submit that an exercise of discretion to do so is warranted for purposes of this Motion. Moreover, the Debtors' secured lender, Boston Energy Trading and Marketing, LLC, fully supports the Settlement Agreement.

26. In consideration of the foregoing factors, the Debtors respectfully submit that the settlement and compromise contained in the Settlement Agreement falls well above the lowest point in the "range of reasonableness," and satisfies the legal standard set forth in *Justice Oaks*. While the professionals for each of the Settlement Parties all feel strongly about their respective litigation positions, it is in the best interests of the bankruptcy estates to seek approval of the Settlement Agreement under the facts and circumstances of these cases.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order attached hereto as Exhibit A (i) approving the terms of the Settlement Agreement, and (ii) granting such other relief as the Court deems appropriate under the circumstances.

**Dated: June 14, 2022.**

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Debtors-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: /s/ *Paul J. Battista*
Paul J. Battista, Esq.
Florida Bar No. 884162
pbattista@gjb-law.com
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 813818
mguitian@gjb-law.com
Heather L. Harmon, Esq.
Florida Bar No. 13192
hharmon@gjb-law.com

**EXHIBIT "A"**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:** | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | Case No. 21-13797-SMG |
| **LPT, LLC,** | Case No. 21-15537-SMG |
| **LIBERTY POWER MARYLAND, LLC,** | Case No. 21-15539-SMG |
| **LIBERTY POWER DISTRICT OF COLUMBIA, LLC,** | Case No. 21-15540-SMG |
| _____/ | **(Jointly administered 21-13797-SMG)** |

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND FED. R. BANKR. P. 9019 TO APPROVE THE TERMS OF A SETTLEMENT BY AND BETWEEN THE DEBTORS AND THE COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF ENERGY RESOURCES AND DEPARTMENT OF ENVIRONMENTAL PROTECTION**

**THIS MATTER** came before the Court on June ____ 2022, at __ am/pm (the "Hearing") upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an Order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019, approving the terms of that certain settlement agreement (the "Settlement Agreement"), dated May 12, 2022, attached to the Motion as **Exhibit B**, between Holdings and each of the Commonwealth of Massachusetts Department of Energy Resources (the "DOER"), and the Commonwealth of Massachusetts Department of Environmental Protection (the "MassDEP") [ECF No. ____]; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C.

§§ 157(a) and 1334; having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and having reviewed the Motion and heard the statements in support of the relief requested therein at the Hearing; and having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, it is

**ORDERED THAT:**

1. The Motion is **GRANTED** in its entirety.

2. The Settlement Agreement is approved pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(b) in its entirety.

3. The Debtors are authorized and empowered to take such actions as may be reasonably necessary to implement and effectuate the terms of the Settlement Agreement.

4. This Court shall retain jurisdiction with respect to all matters, claims, rights, and obligations arising from or related to the implementation of this Order.

###

**Submitted By:**
Paul J. Battista, Esq.
Genovese Joblove & Battista, P.A.
*Counsel for Debtors-in-Possession*
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
pbattista@gjb-law.com

**Copies to:**
Paul J. Pattista, Esq. [Attorney Battista is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the court within 3 days]

**EXHIBIT "B"**
**(SETTLEMENT AGREEMENT)**

Case 21-13797-SMG    Doc 701    Filed 06/14/22    Page 14 of 20

14

**EXHIBIT "B"**
**(SETTLEMENT AGREEMENT)**

**SETTLEMENT AGREEMENT**

This SETTLEMENT AGREEMENT (the "Settlement Agreement"), dated May 12, 2022, is by and between Liberty Power Holdings, LLC ("Holdings"), and each of the Massachusetts Department of Energy Resources ("DOER"), and the Massachusetts Department of Environmental Protection ("MassDEP") (Holdings, together with DOER and MassDEP are collectively referred to here as the "Settlement Parties").

**Recitals**

A.  On April 20, 2021, Holdings filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") under Case No. 21-13797-SMG (the "Holdings Chapter 11 Case").

B.  On June 4, 2021, each of Liberty Power District of Columbia, LLC ("Liberty District of Columbia"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty Maryland")(collectively with Holdings, the "Debtors") filed chapter 11 bankruptcy petitions in the Bankruptcy Court under Case Nos. 21-15550-SMG, 21-15537-SMG and 21-15539-SMG (collectively with the Holdings Chapter 11 Case, the "Chapter 11 Cases").

C.  On October 18, 2021, MassDEP filed its *Application for Administrative Expenses on Behalf of the Commonwealth of Massachusetts' Department of Environmental Protection* (the "MassDEP Application") in the Chapter 11 Cases seeking allowance of a chapter 11 administrative expense claim against Holdings for alternative compliance payments ("ACPs") totaling $1,232,655.34 that Holdings allegedly owes to MassDEP based on Holdings' retail energy sales in Massachusetts between April 21, 2021 and October 18, 2021 because Holdings had not acquired the requisite amount of renewable energy credits ("RECs") and clean energy certificates ("CECs") required for a the post-petition period.

D.  On October 18, 2021, DOER filed its *Application for Administrative Expenses of the Massachusetts Department of Energy Resources* ("DOER Application") in the Chapter 11 Cases seeking allowance of a chapter 11 administrative expense claim against Holdings for ACPs totaling approximately $4,347,164.00 that Holdings allegedly owes to DOER based on Holdings' retail energy sales in Massachusetts between April 30, 2021 and October 18, 2021.

E.  On November 8, 2021, the Debtors filed *Debtors' Omnibus Objection to Applications For Administrative Expenses Filed by Commonwealth of Massachusetts' Department of Energy Resources And Department of Environmental Protection* (the "Omnibus Objection") objecting to the MassDEP Application and the DOER Application (collectively, the "Applications").

F.  On December 3, 2021, the Commonwealth of Massachusetts, on behalf of MassDEP and DOER filed its *Reply to Debtors' Omnibus Objection to Massachusetts Departments of Energy Resources and Environmental Protection's Application for Administrative Expenses* (the "Reply").

G.      On December 17, 2022, the Debtors' filed the *Debtors' Sur-Reply in Support of Omnibus Objection to Applications for Administrative Expenses filed by the Massachusetts' Department of Energy Resources and the Massachusetts' Department of Environmental Protection* (the "Sur-Reply").

H.      As set forth in the Omnibus Objection, Holdings disputes its liability for, as well as the amount and priority of, the chapter 11 administrative expense claims asserted by MassDEP and DOER against Holdings in the Applications (collectively, the "Asserted Claims").

I.      The Settlement Parties recognize that further litigation related to the Asserted Claims could be protracted, costly, complex and involve risk. As a result, the Settlement Parties have engaged in good faith, arms' length negotiations in an effort to resolve the disputes related to the Asserted Claims, and as a result thereof have agreed to enter into this Settlement Agreement to document the terms of a settlement and compromise between them (the "Settlement").

**NOW, THEREFORE**, in consideration of the mutual covenants, promises, and releases set forth herein, and with the intent to be legally bound thereby, subject to Bankruptcy Court approval, the Settlement Parties agree as follows:

1.      The Settlement.

   a.      *Allowed Administrative Expense Claim.*

      i.      DOER shall have an allowed chapter 11 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in an amount equal to Three Hundred and Seventy Thousand and Five Hundred dollars ($370,500.00) (the "DOER Admin. Claim").

      ii.      MassDEP shall have an allowed chapter 11 administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in an amount equal to One Hundred and Four Thousand and Five Hundred dollars ($104,500.00) (the "MassDEP Admin. Claim" and together with the DOER Admin. Claim, the "Settlement Claims").

   b.      *Treatment of Administrative Claim.*

   The Settlement Claims shall receive the same treatment as all other allowed chapter 11 administrative expense claims under any chapter 11 plan that may be filed and confirmed by the Debtors in these Chapter 11 Cases (the "Chapter 11 Plan"); provided however, that Holdings will not be required to make any payment or distribution on account of the Settlement Claims unless and until the Debtors confirm a chapter 11 plan of reorganization or liquidation in these Chapter 11 Cases. For the avoidance of doubt, in no event shall the Settlement Claims be paid after the effective date of any such plan(s).

2.      Bankruptcy Court Approval. The Settlement contained in this Settlement Agreement is and shall be subject to the approval of the Bankruptcy Court in the Chapter 11

Cases. Promptly after the full execution hereof, Holdings shall file a motion (the "Rule 9019 Motion") seeking approval of the Settlement and the terms of this Settlement Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Settlement Parties agree to cooperate with each other in seeking approval of the Settlement before the Bankruptcy Court. If the Bankruptcy Court enters an order denying the Rule 9019 Motion, then this Settlement Agreement shall be void and have no further force and effect, and each Settlement Party's respective interests, rights, remedies and defenses shall be fully restored. If the Bankruptcy Court enters an order granting the Rule 9019 Motion and approving the Settlement pursuant to the terms of this Settlement Agreement (the "Approval Order"), then this Settlement Agreement shall be immediately enforceable against each of the Settlement Parties without further action by any Settlement Party.

3. <u>DOER and MassDEP Release.</u> Upon the entry of the Approval Order by the Bankruptcy Court, DOER and MassDEP, and their successors and assigns, shall be deemed to fully release, acquit, and forever discharge Holdings' bankruptcy estates, along with any of its respective members, managers, officers, directors, attorneys, employees, and agents of and from any and all claims or causes of action in connection with its compliance obligation under the DOER and MassDEP's RPS/APS/CPS and CES regulations, respectively, as set forth in 225 CMR 14.00, 225 CMR 15.00, 225 CMR 16.00, 225 CMR 21.00 and 310 CMR 7.75 and the underlying authorizing statutes at M.G.L. ch. 25A, §§ 11F, 11F1/2, M.G.L. c. 21N, §§ 2(a)(5), 3(c), 4 and 7, M.G.L. c. 21A, §§ 2, 8 and 16 and M.G.L. c. 111, §§ 2C and 142A through 142E prior to the Effective Date (the "DOER/DEP Released Claims"); *provided, however*, that the DOER/DEP Released Claims shall not include any claims that may be brought by the Commonwealth of Massachusetts pursuant to Mass. Gen. Laws ch. 12, § 5A, which claims, if any, do not and will not constitute Chapter 11 administrative expense claims in the Chapter 11 Cases. Nothing in this Settlement Agreement shall effect a release of the obligations hereunder, and nothing in this Settlement Agreement resolves, settles, or otherwise affects any claim or action that has been or could be brought against Debtors by any person or administrative or regulatory agency other than DOER or MassDEP. Nor does this Settlement Agreement resolve any claims, civil or criminal, except as expressly set forth in this paragraph; *provided, however*, that notwithstanding anything to the contrary herein, the DOER and MassDEP shall have no allowed claims or administrative expenses against Holdings or its estates except as provided in paragraph 1(a) above.

4. <u>Debtors' Release.</u> Upon the entry of the Approval Order by the Bankruptcy Court, the Debtors and the Debtors' bankruptcy estates, and their successors and assigns, shall be deemed to fully release, acquit, and forever discharge the DOER and MassDEP, along with any of their respective members, managers, officers, management, directors, attorneys, employees, Commissioners, and agents from any and all claims or causes of action of any kind or character whatsoever, whether known or unknown based upon any action taken or not taken in respect of the Debtors prior to the Effective Date (the "Estate Released Claims").

## Miscellaneous Provisions

5. <u>Arms' Length and Voluntary Settlement.</u> The Settlement Parties have carefully read and understand, the full contents of this Settlement Agreement, and agree that the terms of

3

this Settlement Agreement were negotiated at arms' length in good faith by the Settlement Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

6. <u>Further Assurances.</u>  Each Settlement Party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments, and documents, as the other Settlement Parties may reasonably request in order to carry out the intent and accomplish the purposes of this Settlement Agreement.

7. <u>Modifications or Amendments.</u>  This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Settlement Parties or their successors in interest.

8. <u>Headings</u>.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9. <u>Choice of Law.</u>  The terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of Florida without regard to its choice of law or conflict of laws principles.  To the extent that the Bankruptcy Court has, and agrees to exercise, subject matter jurisdiction, any action regarding the enforcement or breach of this Settlement Agreement shall be filed in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to resolve any dispute arising out of or relating to this Settlement Agreement.  To the extent that the Bankruptcy Court has, and agrees to exercise, subject matter jurisdiction over any question related to the underlying ACPs claimed by MassDEP and DOER, such a dispute shall be governed by and interpreted according to the substantive laws of the Commonwealth of Massachusetts.

10. <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts. Facsimile and/or electronic signatures in portable document format (.pdf) shall constitute acceptable, binding signatures for purposes of this Settlement Agreement.

11. <u>Authorization and Binding Effect.</u>  Subject to the entry of the Approval Order, each of the undersigned signatories represents to the other Settlement Parties that:  (i) they are authorized to execute and deliver this Settlement Agreement on behalf of any Settlement Party they purport to represent, and its subsidiaries and affiliates, and (ii) all claims waived or released pursuant to this Settlement Agreement have not been assigned or otherwise transferred and that the releases contained herein are binding on that Settlement Party, its successors, assigns, and any other persons or entities claiming by, through, or under that Settlement Party.

12. <u>No Admission of Liability.</u>  None of the Settlement Parties intend this Settlement Agreement to be or be construed as an admission of liability or to be construed to deny the legitimacy or priority of the DOER and MassDEP's claims set forth in the Applications.

13. <u>Entire Agreement.</u>  This Settlement Agreement contains the entire agreement and understanding between the Settlement Parties concerning the subject matter hereof, and supersedes any prior or contemporaneous discussion or agreements thereon.  The Settlement

Parties acknowledge that no Settlement Party, or any agent, representative, attorney, or client of a Settlement Party, has made any promise, representation, or warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce any other Settlement Party to execute the Agreement. The Settlement Parties acknowledge that they have not executed the Settlement Agreement in reliance on any promise, representation, or warranty not contained herein.

[Signatures on the next page]

| | |
|---|---|
| LIBERTY POWER HOLDINGS, LLC<br>LIBERTY POWER DISTRICT OF COLUMBIA, LLC<br>LPT, LLC<br>LIBERTY POWER MARYLAND, LLC<br><br>By: *Bob Butler*<br>Name: Bob Butler<br>Title: Chief Restructuring Officer | MASSACHUSETTS DEPARTMENT OF ENERGY RESOURCES<br><br>By: *[signature]*<br>Name: Robert H. Hoaglund II<br>Title: General Counsel<br><br>MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION<br><br>By: *[signature]*<br>Name: Benjamin Ericson<br>Title: General Counsel |