**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | **Case No. 21-13797-SMG** |
| **LPT, LLC,** | **Case No. 21-15537-SMG** |
| **LIBERTY POWER MARYLAND, LLC,** | **Case No. 21-15539-SMG** |
| **LIBERTY POWER DISTRICT OF** | **Case No. 21-15540-SMG** |
| **COLUMBIA, LLC,** | |
| | **(Jointly administered 21-13797-SMG)** |

_____/

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (I) APPROVING PRIVATE
SALE OF THE DEBTORS' CHARGED-OFF CUSTOMER ACCOUNTS PURSUANT TO
11 U.S.C. §363 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS; (II) APPROVING THE TERMS OF PURCHASE AND SALE
AGREEMENT (III) APPROVING  PAYMENT OF FEE TO MONTICELLO
CONSULTING GROUP LIMITED; AND (IV) GRANTING RELATED RELIEF**

**(Expedited hearing requested for July 6, 2022 at 2:30 p.m.)**[1]

**LIBERTY POWER HOLDINGS, LLC** ("Holdings"), **LIBERTY POWER DISTRICT**

**OF COLUMBIA, LLC** ("Liberty District of Columbia"), **LPT, LLC** ("LPT") and **LIBERTY**

**POWER MARYLAND, LLC** ("Liberty Maryland")(collectively, the "Debtors"), by and through

their undersigned counsel, file this motion (the "Sale Motion") pursuant to sections 105 and 363

of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9013 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1(B) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the Southern District of Florida (the "Local Rules") for the entry of an Order (the "Sale Order"),

in substantially the form attached hereto as **Exhibit "A":** (1) approving the sale of those certain

---

[1] Contemporaneously with the filing of this Motion, the Debtors filed _Debtors' Ex-Parte Motion for An Order
Shortening the Notice Period for Hearing on the Sale Motion_ seeking the entry of an order shortening the notice period
on the Sale Motion and requesting a hearing on July 6, 2022 at 2:30 p.m.

delinquent customer account receivables that have been charged-off by one or more of the Debtors in connection with the operation of the Debtors' business (collectively, the "Accounts") free and clear of all liens, claims, encumbrances and interests in accordance with that certain *Purchase and Sale Agreement,* dated as of June 15, 2022, by and between the Debtors, as sellers, and Orion Portfolio Services, LLC, ("Orion") as purchaser (the "Purchase Agreement"),[2] a fully executed copy of which Purchase Agreement is attached hereto as **Exhibit "B;"** (2) approving the terms of the Purchase Agreement; (3) approving payment of a broker's fee to Monticello Consulting Group Limited ('MCG") associated with the sale of the Accounts proposed herein, and (4) granting related relief. In support thereof, the Debtors respectfully state as follows:

### Disclosures Under Bankruptcy Rules, Local Rules and Guidelines

Pursuant to Local Rule 6004-1(B), the Debtors submit the following summary of the material terms of the proposed sale of the Accounts.

| Material Provisions | Summary Description |
|---|---|
| **Purchaser** | Orion Portfolio Services, LLC (the "Purchaser"). The Purchaser is not an insider or affiliate of the Debtors. |
| **Purchase Price** | $187,762.43. <br><br> The purchase price to be paid by Purchaser to Seller for the Accounts is determined by multiplying the current aggregate balance of the Accounts, which is currently $23,470,304, by the price of 0.8%. The Purchase Price is subject to a final reconciliation based on the Final Electronic File (as defined in the Purchase Agreement). |
| **Closing /Transfer Date** | The Closing/Transfer Date shall occur on a date to be agreed to by Purchaser and Seller but in no event later than ten (10) days after the entry of the Sale Order by the Bankruptcy Court. |
| **"As Is" Sale** | The purchase and sale of the Accounts is "**as is, where is**" without any representation or warranty on the part of the Debtors other than the Debtors have title to the Accounts and the Debtors' books and records reflect that the Accounts are valid obligations of the Debtors' customers. |
| **Post-Closing Conditions** | For a period of forty-five (45) days after the Transfer Date, the Debtors agree to and shall remit or transfer to Purchaser all direct payments received by the Debtors with respect to the Accounts being sold and assigned to Purchaser hereunder in the same |

---

[2] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Purchase Agreement.

| | |
|---|---|
| | form received by the Debtors, including if applicable properly endorsed to Purchaser.  In addition to remitting such payments to Purchaser, the Debtors agree to and shall also provide Purchaser with: (a) information on the Account and Accountholder making each such payment; and (b) the amount of the payment. |
| **Good Faith Deposit** | $20,000.00 |
| **Transfer of Personally Identifiable Information** | The Debtors maintain certain personally identifiable information with respect to the customers' Accounts.  Pursuant to Section 13 of the Purchase Agreement, the Purchaser has agreed that (i) any and all personally identifiable information with respect to any Accountholder shall only be used for purposes of collecting the Accounts, (ii) Purchaser will not use, sell, transfer or utilize any such data for any other purpose without the express written consent of the Debtors, (iii) Purchaser acknowledges that such personally identifiable information constitutes confidential information of Sellers and the Accountholders, and (iv) Purchaser will maintain the confidentiality of such information by not disclosing any such information to any person or entity, except to the employees and subcontractors of Purchaser that need to review and process such information to collect the Accounts. |
| **Potential Lienholders** | Boston Energy Trading and Marketing, LLC ("BETM"); Mr. David Hernandez and Mr. Martin Halpern (the "Mezzanine Lenders"); Shell Energy North America (US), L.P. ("Shell Energy"). |

## Jurisdiction and Venue

1.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtor's bankruptcy case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, and Rule 2002, 6004 and 9013 of the Bankruptcy Rules and Rule 6004-1(B) of the Local Rules.

## Relevant Background

3.       On April 20, 2021 (the "Petition Date"), Holdings filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.       On June 4, 2021 (the "Subsidiary Petition Date"), the Subsidiary Debtors each filed chapter 11 bankruptcy petition, which bankruptcy cases were jointly administered with the Chapter

11 case of Holdings, including to facilitate the sale of all or substantially all of the Debtors' assets, including without limitation, retail customer contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code.

5.      As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

6.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§1107(a) and 1108.

7.      For a detailed description of the Debtor, its operations and assets and liabilities, the Debtor respectfully refers the Court and parties-in-interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [ECF No. 10].

### Sale of Assets to NRG Energy, Inc. and Rejection/Termination of Contracts

8.      On September 10, 2021 the Court conducted an evidentiary hearing on the proposed sale of substantially all of the Debtors' active customer accounts (the "Purchased Assets") to NRG Energy, Inc. ("NRG"), pursuant to the Debtors' *Expedited Motion For The Entry Of An Order (1) Approving Competitive Bidding Procedures For The Sale Of Substantially All Of The Debtor's Assets, (2) Scheduling Dates To Conduct Auction And Sale Hearing, (3) Approving The Form And Manner Of Notices, (4) Approving The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests, (5) Approving Assumption And Assignment Procedures For Executory Contracts, And (6) Granting Related Relief* [ECF No. 98].

9.      On September 14, 2021, the Court entered its *Order (I) Approving Sale of Purchased As Free and Clear of Liens, Claims, Encumbrances, and Other Interests (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in*

4

*Connection Therewith and (III) Granting Related Relief* [ECF No. 385](the "NRG Sale Order").

10.     On September 22, 2021, the Debtors and NRG closed on the sale of the Purchased Assets pursuant to the terms of the NRG Sale Order.  In connection therewith and with the exception of a limited number of remaining customers in Illinois whose transfer is in progress, the Debtors have transferred to NRG all of the customer accounts required to be sold to NRG pursuant to the NRG Sale Order, including providing all required notices to customers and regulatory agencies, and complying with all applicable laws related thereto.  In connection therewith, NRG has paid the Debtors substantially all of the purchase price for the Purchased Assets, with the exception of certain remaining amounts that are the subject of a final reconciliation being performed by the parties in respect of the transfer of customer accounts in the East.

11.     As part of the transition process to NRG and after evaluating their remaining customer accounts, the Debtors filed six separate motions to reject and/or terminate certain of their customer accounts not being sold to the Buyer, which motions were approved by separate orders of the Court. [ECF Nos. 431, 459, 460, 525, 590 and 691] (collectively, the "Rejection/Termination Orders").  In addition, the Debtors recently filed *Debtors' Expedited Motion for Entry of an Order (I) Authorizing the Rejection or  Termination of all Remaining Executory Customer Contracts in the State of Texas, (II) Authorizing and Directing the Orderly Transition of such Customer Accounts to the "Provider of Last Resort" in Texas, and (III) Setting a Bar Date for the Filing of Claims Related Thereto* [ECF No. 716] (the "Texas Motion"), which Texas Motion is set for hearing on July 6, 2022.

### Retention of Monticello Consulting Group Limited and Marketing of the Portfolio of Accounts

12.     On March 11, 2022, the Debtors filed *Debtors' Expedited Application Pursuant To 11 U.S.C. §§ 105(A) And 363(B) For Entry Of An Order (I) Authorizing And  Approving The*

*Engagement Of Monticello Consulting Group, Limited, And (II) Granting Related Relief* [ECF No. 584] seeking the entry of an Order authorizing the employment of MCG to perform specialized advisory services related to all aspects of marketing and selling the Debtors' portfolio of charged-off customer receivables.  On March 17, 2022, the Court entered an Order authorizing the employment of MCG and approving the compensation to MCG for the services to be performed for and on behalf of the Debtors [ECF No. 592] (the "MCG Retention Order").

13.     Shortly after its retention, MCG worked with the Debtors to compile the portfolio of Accounts and related information that would be marketed for sale.  MCG's marketing process included identifying and soliciting various parties, including debt buyers and collection agencies, that would be interested in the purchase of the Debtors' Accounts, which consist of delinquent residential and commercial customer account receivables that have been charged-off by one or more of the Debtors in connection with the operation of the Debtors' business.  As a result of that process, approximately 24 potential bidders expressed an interest in bidding on the Accounts.  Of those parties, thirteen (13) potential bidders signed Confidentiality and Nondisclosure Agreements with the Debtors.

14.     On April 18, 2022, MCG issued a Request for Proposal ("RFP") to the 13 potential bidders.  The RFP included a file containing the portfolio of Accounts, which consisted of 65,225 residential and commercial accounts with an aggregate charged-off balance of approximately $24 million.  The Accounts included the charged-off receivables for 2019, 2020, and January thru March of 2022.  The RFP also included detailed information on the collection efforts made by the Debtors, and a proposed draft Purchase and Sale Agreement (the "Draft PSA").  In addition, MCG provided the potential bidders with documentation to validate every Account.

15.     MCG received four (4) bids in response to the RFP by the deadline of May 11,

2022. In addition, each bidder submitted background information on their companies. MCG also requested that each bidder submit proposed revisions to the Draft PSA proposed by the Debtors. In response, two of the bidders submitted proposed redlined changes to the Draft PSA. The other two bidders officially withdrew their bids due to the fact this was a one-time sale and not a forward flow or an ongoing relationship. MCG and the Debtors entered into direct negotiations with the remaining two bidders. After extensive negotiations, one of the remaining bidders withdrew its bid and the Debtors proceeded to enter into the Purchase Agreement with the Purchaser.

16.     In connection with finalizing the Purchase Agreement, the Debtors updated the portfolio of Accounts, which ultimately consisted of 64,859 residential and commercial accounts with an aggregate charged-off balance of $23,470,304. As a result, Purchaser's percentage bid of .080% resulted in a purchase price in the amount of $187,762.43. The Purchase Price is subject to a final reconciliation once the Debtors provide the Final Electronic File to the Purchaser in accordance with the Purchase Agreement.

17.     The Debtors, in the exercise of their best business judgment, believe that the process outlined above generated the highest and best price for the Accounts.

### The Proposed Private Sale

18.     Through the robust marketing efforts of MCG described above and after exchanging several drafts of the Draft PSA, the Debtors and Purchaser entered into the Purchase Agreement for the purchase and sale of the Accounts. The Debtors believe that the Purchase Agreement was negotiated in good faith and at arms-length, and that neither Purchaser, nor any of its member(s), are insiders of any of the Debtors. Further, no separate or side agreements have been entered into by and between the Purchaser and the Debtors.

19.     The closing and transfer of the Accounts under the terms of the Purchase

7

Agreement is to occur on a date to be agreed to by the Purchaser and the Debtors but in no event later than ten (10) days after the entry of the Sale Order by the Bankruptcy Court (the "Transfer Date").  On the Transfer Date, the Debtors have agreed to sell, convey, transfer, assign and deliver to Purchaser free and clear of all liens, claims, encumbrances and interests, on an "**As Is, Where Is**" basis and, except as expressly set forth in the Purchase Agreement, without any representation or warranty on the part of the Debtors, and Purchaser has agreed to purchase from the Debtors, all of the Debtors' right, title, and interest in and to the Accounts.

20.    The Purchase Agreement provides for the Purchaser to pay the sum of $187,762.43 (the "Purchase Price") for the Accounts, which amount is equal to 0.8% of the updated balance of the Accounts, which equals $23,470,304. The Debtors have agreed to provide the "Final Electronic File" to Purchaser on July 1, 2022.  The Parties have agreed that the Final Electronic File shall be used to determine the final list of Accounts being sold and assigned under the Purchase Agreement and the final calculation of the Purchase Price.

21.    In addition, pursuant to the terms of the Purchase Agreement, for a period of forty-five (45) days after the Transfer Date, the Debtors have agreed to remit or transfer to Purchaser all direct payments received by the Debtors with respect to the Accounts being sold and assigned to Purchaser in the same form received by the Debtors, including if applicable properly endorsed to Purchaser.  In addition to remitting such payments, the Debtors have agreed to provide Purchaser with: (a) information on the Account and Accountholder making each such payment; and (b) the amount of the payment.

22.    The only limited representation and warranties being made by the Debtors in the Purchase Agreement are that the Debtors have title to the Accounts and the Debtors' books and records reflect that the Accounts are valid obligations of the Debtors' customers.

23.     The Purchase Agreement is not subject to financing or any additional due diligence on the part of the Purchaser.   In addition, the Purchaser has made the good faith deposit of $20,000.

24.     Lastly, the Purchaser has agreed to maintain the confidentiality of the personal identifiable information of the customers who are the subject of the Accounts.  Specifically, section 13 of the Purchase Agreement provides that (i) any and all personally identifiable information with respect to any Accountholder shall only be used for purposes of collecting the Accounts, (ii) Purchaser will not use, sell, transfer or utilize any such data for any other purpose without the express written consent of the Debtors, (iii) Purchaser acknowledges that such personally identifiable information constitutes confidential information of Sellers and the Accountholders, and (iv) Purchaser will maintain the confidentiality of such information by not disclosing any such information to any person or entity, except to the employees and subcontractors of Purchaser that need to review and process such information to collect the Accounts.

25.     In connection with the proposed transaction in the Purchase Agreement, MCG is entitled to compensation for its services as described and approved by this Court in the MCG Retention Order. Based upon the Purchase Price set forth above, MCG is entitled to a fee in the amount of $15,000 (the "MCG Fee").

26.     The Debtors' senior secured creditor, BETM, has consented to the sale of the Accounts pursuant to the terms of the Purchase Agreement.

**RELIEF REQUESTED**

27.     Pursuant to this Motion, the Debtors seek entry of the Sale Order, in the form attached hereto as **Exhibit "A"**: (i) approving the proposed sale of the Accounts to Purchaser pursuant to the terms of the Purchase Agreement under Sections 363(b), (f) and (m) of the Bankruptcy Code free and clear of any and all liens, claims, encumbrances and interests, (ii)

approving the terms of the Purchase Agreement, (iii) authorizing the payment of MCB's Fee; and

(iv) granting related relief as set forth in the Sale Order.

**BASIS FOR RELIEF REQUESTED**

A.    **The Sale of the Accounts is Authorized by Section 363 of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment.**

28.    Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not specify a

standard for determining when it is appropriate for a court to authorize the use, sale, or lease of

property of the estate, courts routinely authorize sales of a debtor's assets if such sale is based upon

the sound business judgment of the debtor. *See Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*,

126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be

conducted if a good business reason exists to support it."); *Meyers v. Martin (In re Martin)*, 91

F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del.

1999); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus. v. McClung*,

789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11

debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action.");

*Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d

Cir. 1983).

29.    A debtor in possession is entitled to exercise its business judgment in managing its

sale process. *See In re Philips*, 2013 WL 1899611, at *10 (M.D. Fla. 2013) (determining trustee's

sale  "are ultimately a matter of discretion that depends upon the dynamics of the particular

situation."). "The Bankruptcy Court evaluates whether the Trustee exercised sound and reasonable

business judgment, but without substituting its own judgment for that of the Trustee." *Philips*,

10

2013 WL 1899611, at *10.

30.     Importantly, the Bankruptcy Rules do not require public auctions, and, in fact, expressly contemplate private sales. Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by *private sale* or by public auction.") (emphasis added); *In re 160 Royal Palm, LLC*, 600 B.R. 119, 127 (S.D. Fla. 2019), *aff'd,* 785 Fed. Appx. 829 (11th Cir. 2019) ("[P]rivate sales are not unheard of in bankruptcy proceedings, and are in fact expressly contemplated by the bankruptcy rules."); *In re Brumfiel*, 11-39881 HRT, 2015 WL 1339837, at *7 (Bankr. D. Colo. Mar. 20, 2015);  *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("Section 363(b) is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth procedures for Section 363(b) transfers, expressly provides for private sales.").

31.     Thus, a large measure of discretion is accorded a bankruptcy court in deciding whether a private sale of a debtor's assets should be approved. *See In re Nicole Energy Servs.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *see also In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (citing *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994)).  Furthermore, evidence that a transaction involving estate property under section 363 of the Bankruptcy Code will be at fair market value permits the conclusion that the transaction is in the best interest of the estate. *See In re Planned Sys., Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988) (finding sufficient evidence of fair market value and adequate exposure where property was listed with a broker since the prior year); *In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016) (providing that, subject to additional disclosures as to why the debtor proposes a private sale and why such a sale is likely to maximize the sale price, the court does not "express a preference for public sales over private sales as a means to maximize the sale price").

32.     Bankruptcy courts have approved private sales where the benefit of the private sale

outweighs the delay and expense of conducting a public auction. *See In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. Nov. 29, 2012) [Docket No. 857] (authorizing private sale under Rule 6004(f)(1) where public auction would require estate to incur substantial additional costs, but would result in no additional value to the estate); *In re Dewey & Leboeuf LLP*, 12-12321 MG, 2012 WL 5386276, at *6 (Bankr. S.D.N.Y. Nov. 1, 2012) (finding a good business reason to sell assets pursuant to a private sale where a public sale would be more costly); *In re Sonix Med. Res. Inc.*, Case No. 09-77781 (DTE), 2010 Bankr. LEXIS 5471 (Bankr. E.D.N.Y. March 19, 2010) (authorizing private sale of debtors' assets and approving asset purchase agreement where there was substantial risk that value of assets would deteriorate if sale was not consummated and purchase agreement was best opportunity to realize value of assets on going-concern basis and avoid decline and devaluation of debtors' business).

33.     The "business judgment standard is satisfied if a debtor 'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *In re Wildwood Villages, LLC*, No. 3:20-bk-02569-RCT, 2021 WL 1784074, at *3 (Bankr. M.D Fla. Feb. 22, 2021) quoting *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992). In connection therewith, Courts "should not generally interfere with business decisions absent a showing of 'bad faith, self-interest, or gross negligence.'" *Id.* quoting *In re Borders Grp., Inc*., 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011).  Moreover, "[a] debtor's business judgment should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim or caprice."  *In re 160 Royal Palm*, 600 B.R. at 126.

34.     In addition to the above, Courts also typically consider four factors in determining whether a proposed sale satisfies the business judgment standard: (a) whether a sound business

justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith. *See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

35.    In the present case, the Debtors believe that it is appropriate to proceed with a private sale of the Accounts.  After a robust marketing effort by MCG, the Debtors did not receive any offers for the Accounts that were higher or better that the one received from the Purchaser. There is no reason to assume that the additional cost and delay of undertaking an auction process would generate a different result.  Under these circumstances, the Debtors, in consultation with MCG, believe that the best course of action is to sell the Accounts to the Purchaser in a private sale.  As such, the Debtors believe they have demonstrated a sufficient basis to sell the Accounts under 11 U.S.C. §§ 363(b) and (f), and that such actions are appropriate and reasonable exercise of the Debtors' business judgment and are in the best interests of the Debtors, the estates and their creditors.

36.    A valid business purpose exists for approval of the transactions contemplated by the Motion pursuant to section 363(b) of the Bankruptcy Code.  The Debtors have not been able to collect the Accounts and have written them off.  Moreover, the Debtors are liquidating and winding down their business operations, and therefore will not have the ability to pursue such collection in the future.  Given the age of the Accounts and lack of collection activity over a period of several years, the Debtors in consultation with MCB believe that the proposed sale to the Purchaser is supported by a valid business purpose.  Moreover, the Debtors believe that the Purchase Price is fair and reasonable, is in the best interest of the Debtors' estates and constitutes

13

full and adequate consideration and reasonably equivalent value for the Accounts.

37.    The Purchaser is a purchaser in good faith, as that term is used in the Bankruptcy Code and the decisions appurtenant thereto, and is entitled to the protections of sections 363(m) of the Bankruptcy Code with respect to the purchase of the Accounts. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of 11 U.S.C. § 363(m). Specifically, the Purchase Agreement has been negotiated by the Debtors and the Purchaser (and their respective affiliates, professionals and representatives) in good faith, at arm's length and without collusion or fraud. The terms and conditions of the Purchase Agreement are fair and reasonable, and the sale of the Accounts pursuant to such terms is in the best interest of the Debtors, the estates and their creditors.  The Purchaser is not an insider of the Debtors.  Accordingly, Purchaser should be deemed a "good faith purchaser" entitled to the full benefits and protections of 11 U.S.C. § 363(m) with respect to the sale of the Accounts.

38.    Based on the above, it is clear that the Debtors' business judgment to proceed with Purchase Agreement is not "manifestly unreasonable" and is not based on "bad faith, whim or caprice."

39.     In addition, each of the above four factors has been satisfied in the present case. First, the facts and circumstances of this case establish that sound business reasons exist for the Debtor's efforts to sell the Accounts as part of the Debtors wind-down.  The Debtors will be providing adequate and reasonable notice to all interested parties of the opportunity to object to the sale of the Accounts. *See, e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property").  Lastly, the Debtors

are proceeding in good faith and will make a showing that the Purchaser has acted in good faith.

40.    Accordingly, the sale of the Accounts to Purchaser pursuant to the Purchase Agreement should be approved.

**B.    The Debtors' Request that the Sale of the Accounts be Free and Clear of all Liens, Claims, Encumbrances and Interests.**

41.    Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code Section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f).  *See In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers ... to acquire assets [from a debtor] without any accompanying liabilities"); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

42.    To facilitate the sale of the Accounts, the Debtors request that the Court authorize the sale of the Accounts free and clear of certain liens, claims, encumbrances, and other interests of any type, including the liens asserted by BETM, as secured creditor and DIP lender, and any other putative creditor who has asserted a lien on the Accounts (collectively, "Liens").  All of the Liens will attach to the Purchase Price (after payment of MCG's Fee) in the same order of priority as existed on the Accounts.

43.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the property "free and clear" of all liens, claims, encumbrances and interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) of the Bankruptcy Code is met).

44.     The Debtors believe that one or more of the tests of section 363(f) of the Bankruptcy Code will be satisfied with respect to the sale and transfer of the Accounts.  In particular, the Debtors believe that at least section 363(f)(2) of the Bankruptcy Code will be met because each of the parties holding liens on the Accounts, if any, have consented, are contractually bound to consent, or absent any objection to this Motion, will be deemed to have consented to, the sale and transfer of the Accounts.

45.     Specifically, BETM has consented to the sale of the Accounts pursuant to the Purchase Agreement.  In addition, the Debtor understands that each of the Mezzanine Lenders and Shell Energy are contractually prohibited from objecting to such sale pursuant to the terms of that certain Intercreditor Agreement by and among the Debtor, BETM, the Mezzanine Lenders and Shell Energy and other parties thereto dated as of July 6, 2020.  As a result, the Debtors assert that they can satisfy Section 363(f)(2) for a sale of the Accounts free and clear of all Liens.

## C.     The Purchaser Should be Afforded All Protections Under Section 363(m) as a Good Faith Purchaser.

46.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest

in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) was later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] ... does not affect the validity of a sale ... to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal

11 U.S.C. § 363(m).  *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

47.    Although the Bankruptcy Code does not define "good faith," one court has held that:

> the good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

126 F.3d at 390 (quoting *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Andy Frain Services, Inc.,* 798 F.2d 1113, 1125 (7th Cir. 1986).

48.    Here, the Purchase Agreement is the result of arm's-length and good-faith negotiations between the Debtors and the Purchaser.  The Debtors and the Purchaser were each advised and represented by legal advisors throughout the process.  In addition, the Purchaser is not related to, affiliated with or an insider of the Debtors.  Accordingly, the Debtors submit that

providing Purchaser with the "good faith" protections of section 363(m) of the Bankruptcy Code is warranted.

**D.**      **The Court Should Waive or Reduce the Periods Required By Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.**

49.      Pursuant to Rule 6004(h) (formerly Rule 6004(g)) of the Bankruptcy Rules), all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order, unless the court orders otherwise.  Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).

50.      Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately if there is a showing of a sufficient need to close the sale within the 10-day period.  10 *Collier on Bankruptcy* § 6004.10 (15th ed. 2007).

51.      In light of the facts and circumstances of these Chapter 11 cases, it is critical that the Debtors close the sale of the Accounts as soon as reasonably possible. Accordingly, the Debtors hereby request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order in

substantially the form of the Sale Order attached as **Exhibit "A"** hereto (i) granting the Motion

(ii) authorizing the sale of the Accounts to the Purchaser free and clear of any and all liens, claims,

encumbrances and interests pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code, (iii)

authorizing the Debtors to consummate the sale transaction set forth in the Purchase Agreement

pursuant to the terms thereof, (iv) approving payment of the MCG Fee associated with the sales

transaction in the amount of $15,000.00; (v) waiving the 14 day stay, and (vi) granting any and all

such further relief as this Court deems  proper.

  Dated this 30<u>th</u> day of June 2022.

       Respectfully Submitted,

       **GENOVESE JOBLOVE & BATTISTA, P.A.**
       *Counsel for Debtors-in-Possession*
       100 Southeast Second Street, Suite 4400
       Miami, Florida 33131
       Telephone: (305) 349-2300
       Facsimile: (305) 349-2310

     By:   /s/  *Paul J. Battista*
       Paul J. Battista, Esq.
       Florida Bar No. 884162
       pbattista@gjb-law.com
       Mariaelena Gayo-Guitian, Esq.
       Florida Bar No. 813818
       mguitian@gjb-law.com
       Heather L. Harmon
       Florida Bar No. 13192
       hharmon@gjb-law.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF Notification and/or U.S. Mail to all parties on the attached service list on this 30th day of June 2022.

By: /s *Paul J. Battista*
　　　　Paul J. Battista, Esq.

**EXHIBIT A**

**PROPOSED SALE ORDER**

**[PROPOSED DRAFT ORDER]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                          Chapter 11 Cases

**LIBERTY POWER HOLDINGS, LLC,**          **Case No. 21-13797-SMG**
**LPT, LLC,**                                                 **Case No. 21-15537-SMG**
**LIBERTY POWER MARYLAND, LLC,**          **Case No. 21-15539-SMG**
**LIBERTY POWER DISTRICT OF**                 **Case No. 21-15540-SMG**
**COLUMBIA, LLC,**

                                                                      **(Jointly administered 21-13797-SMG)**

_____/

**ORDER APPROVING PRIVATE SALE OF THE DEBTORS' CHARGED-OFF**
**CUSTOMER ACCOUNTS PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) APPROVING THE**
**TERMS OF PURCHASE AND SALE AGREEMENT; (III) APPROVING  PAYMENT OF**
**FEE TO MONTICELLO CONSULTING GROUP LIMITED;**
**AND  (IV) GRANTING RELATED RELIEF**

        **THIS MATTER** came before the Court for hearing on July __, 2022 at ___ am/pm (the

"Hearing") on the *Debtors' Motion For The Entry Of An Order (I) Approving Private Sale Of The*

*Debtors' Charged-Off Customer Accounts Pursuant To 11 U.S.C. §363 Free And Clear Of All*

*Liens, Claims, Encumbrances And Interests; (II) Approving The Terms Of Purchase And Sale Agreement; (III) Approving  Payment Of Fee To Monticello Consulting Group Limited; And (IV) Granting Related Relief* [ECF No.      ] (the "<u>Sale Motion</u>") filed by LIBERTY POWER HOLDINGS, LLC ("<u>Holdings</u>"), LIBERTY POWER DISTRICT OF COLUMBIA, LLC ("<u>Liberty District of Columbia</u>"), LPT, LLC ("<u>LPT</u>") and LIBERTY POWER MARYLAND, LLC ("<u>Liberty Maryland</u>")(collectively, the "<u>Debtors</u>") seeking entry of an order (this "<u>Sale Order</u>"): (i) approving the sale of those certain delinquent customer account receivables that have been charged-off by one or more of the Debtors in connection with the operation of the Debtors' business (collectively, the "<u>Accounts</u>") free and clear of all liens, claims, encumbrances and interests in accordance with that certain *Purchase and Sale Agreement,* dated as of June 15, 2022, by and between the Debtors, as sellers, and Orion Portfolio Services, LLC, ("<u>Orion</u>") as purchaser (the "<u>Purchase Agreement</u>"),[1] a fully executed copy of which Purchase Agreement is attached hereto as **Exhibit "B"** to the Sale Motion; (ii) approving the terms of the Purchase Agreement; (iii) approving payment of a broker's fee to Monticello Consulting Group Limited ('<u>MCG</u>") associated with the sale of the Accounts proposed herein, and (iv) granting related relief.  This Court having determined that  proper and adequate notice of the Sale Motion has been given to all parties entitled thereto, and that no other or further notice need be given, and that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest, having considered the representations and arguments of counsels and after due deliberation thereon; and good and sufficient cause appearing therefor,

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Sale Motion.

**IT IS HEREBY FOUND AND DETERMINED THAT**: [2]

### Jurisdiction, Final Order, and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the above captioned chapter 11 cases (the "Chapter 11 Cases") and the Sale Motion is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Sale Motion are sections 11 U.S.C. §§105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1(B) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"). The consummation of the sale contemplated by the Purchase Agreement and this Sale Order (collectively, the "Transaction") is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and the Debtors, on the one hand, and the Purchaser, on the other hand, have complied with all of the applicable requirements of such sections and rules in respect of the Transactions.

### Notice of the Sale Motion

C.      The notice of the Sale Motion, including based on the Court's Order shortening time [ECF No. ____], was proper, adequate, and sufficient and in accordance with 11 U.S.C. § 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, and applicable local rules. The Court finds that notice was proper under the circumstances and that cause exists to

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

shorten the notice period required under the applicable bankruptcy rules, and specifically Bankruptcy Rules 2002(a), 6004, and Local Rule 2002-1(K) and Local Rule 6004.

D.      Notice of the Sale Motion was duly and properly served on all required persons and entities in accordance with applicable Bankruptcy Rules.

### Business Judgment

E.      The Debtors have demonstrated good, sufficient and sound business purpose and justification for the sale of the Accounts (as defined herein) under the Purchase Agreement under 11 U.S.C. §§ 363(b) and (f)(3), and such actions are appropriate and reasonable exercise of the Debtors' business judgment and are in the best interests of the Debtors, the estates and their creditors.   Under the facts and circumstances of these Chapter 11 cases, the Debtors have determined that entry into the Purchase Agreement and the sale of the Accounts to Purchaser presents the best opportunity to maximize the value of the Debtors' estate and a valid business purpose exists for approval of the transactions contemplated by the Sale Motion pursuant to section 363(b) of the Bankruptcy Code.

### Marketing Process

F.      The Debtors and their professionals, agents, and other representatives, including Monticello Consulting Group Limited ("MCG"), have marketed the Accounts and conducted all aspects of the sale process at arm's length and in good faith.  The marketing process undertaken by Debtors, and its professionals, agents and other representatives, including MCG, with respect to the Accounts have been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders. The Purchase Agreement constitutes the best and highest offer for the Accounts.

G.      The purchase price of $187,762.43 for the Accounts, subject to the final reconciliation as provided in the Purchase Agreement, is fair and reasonable, is in the best interest of the Debtors' estates and constitutes full and adequate consideration and reasonably equivalent value for the Accounts.

H.      The terms of the Purchase Agreement attached to the Sale Motion as Exhibit "B" are fair, reasonable and approved.

## Good Faith of the Purchaser

I.      The Purchaser is not an insider of the Debtors, as that term is defined in 11 U.S.C. § 101(31) and the decisions thereunder. The Purchaser is a purchaser in good faith, as that term is used in the Bankruptcy Code and the decisions appurtenant thereto, and is entitled to the protections of sections 363(m) of the Bankruptcy Code with respect to the Accounts and the purchase of the Accounts. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of 11 U.S.C. § 363(m). Specifically, the Purchase Agreement has been negotiated by the Debtors and Purchaser (and their respective affiliates, professionals and representatives) in good faith, at arm's length and without collusion or fraud. The terms and conditions of the Purchase Agreement are fair and reasonable, and the sale of the Accounts pursuant to its terms is in the best interest of the Debtors, the estates and their creditors. Accordingly, Purchaser is deemed a "good faith purchaser" entitled to the full benefits and protections of 11 U.S.C. § 363(m) with respect to the sale of the Properties.

## Highest or Otherwise Best Offer

J.      The Debtors and MCG adequately marketed the Accounts and afforded a full, fair and reasonable opportunity for any party to make a higher or otherwise better offer to purchase the Accounts. No other party has offered to purchase the Accounts for greater economic value to the

Debtors' estates than the Purchaser. The Purchase Agreement constitutes the highest or otherwise best offer for the Accounts.

## Validity of Transfer; Corporate Authority; Binding Effect

K.    The Debtors have full corporate power and authority (i) to perform all of their obligations under the Purchase Agreement, and (ii) to consummate the Transactions. The Purchase Agreement has been duly authorized, executed and delivered by the Debtors, and (ii) all documents that are to be executed by the Debtors and delivered to Purchaser on the Closing Date have been, or on the Closing Date will be, duly executed, authorized and delivered by the Debtors.  This Purchase Agreement and all related documents are, and on the Closing Date will be, legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms and do not, and, at the time of the Closing Date will not, violate any provisions of any agreement or judicial or administrative order to which the Debtors are a party or to which the Debtors or the Accounts (or any portion thereof) is subject. Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transactions or otherwise perform their obligations under the Purchase Agreement, except as otherwise expressly set forth in the Purchase Agreement.

## Section 363(f) Is Satisfied

L.    The Debtors may sell or otherwise transfer the Accounts free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens") because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of the Liens against the Debtors, their estates, or any of the Accounts who did not object, or who withdrew their objections, to the sale of the Accounts or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such

Liens who did object, if any, fall within one or more of the other subsections of section 363(f) and are adequately protected by the terms of this Sale Order, including, as applicable, by having their Liens, if any, attach to the proceeds of the sale attributable to the Accounts in which such creditor alleges or asserts a Lien, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Accounts immediately prior to consummation of the sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

### Compelling Circumstances for an Immediate Sale

M.    To maximize the value of the Accounts, it is essential that the sale of the Accounts be approved and consummated promptly. Accordingly, there is cause to waive the stay requirements contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order and the Purchase Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:**

1.    The Motion, and the relief requested herein is granted and approved and the Transaction contemplated thereby and by the Purchase Agreement is approved, in each case as set forth in this Sale Order.

2.    The Purchase Agreement and all of the terms and conditions thereof, are hereby approved as set forth herein.

3.    The consideration provided by the Purchaser for the Accounts under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected

by any person, or costs or damages imposed or awarded against the Purchaser, under section 363(n) or any other provision of the Bankruptcy Code

4.      Pursuant to sections 105, 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Transactions pursuant to and in accordance with the terms and conditions of the Purchase Agreement and otherwise comply with the terms of this Sale Order, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Purchase Agreement, in each case without further notice to or order of this Court. The Transactions authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.

5.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Accounts, the Purchaser, the Purchaser Parties, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' bankruptcy cases, or any other person.

6.      Subject to the delivery of the Purchase Price in accordance with the Purchase Agreement and completing all other deliveries required under the Purchase Agreement, effective

as of the Closing (as defined in the Purchase Agreement), the sale and transfer of the Accounts to Purchaser "as is, where is" without any representation of warranty on the part of the Debtors (other than as set forth in the Purchase Agreement) shall constitute a legal, valid and effective transfer of the Accounts notwithstanding any requirement for approval or consent by any person and shall vest Purchaser with all right, title and interest in and to the Accounts free and clear of all Liens pursuant to 11 U.S.C. § 363(f) with all Liens to attach to the sale proceeds. The sale of the Accounts to Purchaser under the Purchase Agreement will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and all applicable law. Further, for avoidance of doubt, any and all creditors of the Debtors shall be forever barred, estopped and enjoined from taking any action of any kind against Purchaser or the Accounts on account of any claim against the Debtors or the Accounts.

7.     The Transaction contemplated by this Sale Order and the Purchase Agreement, is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale and the Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale or Transaction unless such authorization and consummation are duly stayed pending such appeal. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.

8.     The notice for the Sale Motion and hearing on the Sale Motion on shortened noticed is appropriate, pursuant to Bankruptcy Rules 2002(a), 6004, and Local Rule 2002-1(K) and Local Rule 6004 under the circumstances.

9.      Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof but shall be effective and enforceable immediately upon entry. The stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. This is a final order within the meaning of 28 U.S.C. § 158(a), and there is no just reason for delay in the implementation of this Sale Order. Accordingly, the Debtors are authorized and empowered to close the sale and Transaction immediately upon entry of this Sale Order.

10.     The MCG Fee associated with the Transaction in the amount of $15,000.00 is approved, including the right of MCG to be paid out of the proceeds from the Closing.

11.      Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

12.     The failure to specifically include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

13.     The Purchase Agreement may be modified, amended, or supplemented in a written instrument signed by the parties thereto, without further notice to or order of this Court; provided that no such modification, amendment, or supplement may be made without further order of this Court if it is materially adverse to the Debtors.

14.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase Agreement, and any amendments thereto and any waivers and

consents given thereunder, (ii) compel delivery of the Accounts to the Purchaser, and (iii) compel

payment of the MCG Fee.

15.    To the extent that this Sale Order is inconsistent with any prior order or pleading

with respect to the Motion, the terms of this Sale Order shall govern.

16.    To the extent there are any inconsistencies between the terms of this Sale Order, on

the one hand, and the Purchase Agreement on the other hand, the terms of this Sale Order shall

govern.

# # #

**Submitted by**:
Paul J. Battista, Esq.
*Counsel for the Debtors*
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: pbattista@gjb-law.com

(Paul J. Battista, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)

**EXHIBIT B**

**<u>PURCHASE AND SALE AGREEMENT</u>**



### PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of June 15, 2022 (the "Effective Date"), is made and entered into by and between Liberty Power Holdings, LLC, a Delaware limited liability company ("LPH"), Liberty Power District of Columbia, LLC, a Delaware limited liability company ("Liberty DC"), LPT, LLC, a Delaware limited liability company ("LPT") and Liberty Power Maryland, LLC, a Delaware limited liability company ("Liberty Maryland", LPH, Liberty DC, LPT and Liberty Maryland are collectively referred to herein as the "Sellers"), and Orion Portfolio Services, LLC, a Georgia limited liability company (the "Buyer").

WHEREAS, each Seller is a retail electric provider engaged in the business of providing retail electric services to residential and commercial customers in jurisdictions open to retail electric competition (the "Business").

WHEREAS, during the course of operating their Business, the Sellers have accumulated, own and desire to sell certain charged-off customer Accounts (as defined below) to Buyer as set forth in and pursuant to the terms of this Agreement.

WHEREAS, the Buyer desires to purchase certain charged-off customer Accounts from Sellers as set forth in and pursuant to the terms of this Agreement.

WHEREAS, on April 20, 2021, LPH filed a voluntary petition for reorganization under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), commencing its case captioned *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (the "LPH Bankruptcy Case").

WHEREAS, on June 4, 2021, Liberty DC, LPT and Liberty Maryland, each a wholly-owned subsidiary of LPH, filed chapter 11 bankruptcy petitions and thereafter obtained joint administration of such bankruptcy cases with the LPH Bankruptcy Case (collectively with the LPH Bankruptcy Case, the "Bankruptcy Cases").

WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court in the Bankruptcy Cases and will be consummated under Sections 105(a), 363 and other applicable provisions of the Bankruptcy Code.

NOW, THEREFORE, in consideration of mutual promises in this Agreement and other valuable consideration, Seller and Buyer intending to be legally bound agree as follows:

### Definitions

"Accounts" mean those certain delinquent customer account receivables that are owed to the Sellers and that have charged off by one or more of the Sellers in connection with the operation of the Sellers' Business, which account receivables are set forth in detail and described on the Electronic File.

"Accountholder" means the person and/or their guarantors, sureties, or other persons or entities liable for a particular Account.

"Approval Order" means an order of the Bankruptcy Court authorizing the Sellers to sell, assign and transfer the Accounts to the buyer pursuant to the terms of this Agreement free and clear of any and all liens, claims, encumbrances and interests pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code.

"Current Balance" means the aggregate unpaid balance of the Accounts as of the date of the Electronic File.

"Electronic File" means that certain electronic file created by the Sellers on April 15, 2022 and attached hereto as Exhibit A which contains a listing of the Accounts and other related information on such Accounts to be transferred and assigned to the Buyer hereunder.

"Final Electronic File" means the Electronic File that will be updated by the Sellers with the most current information on the Accounts available to the Sellers as of five (5) business days prior to the Transfer Date, which Final Electronic File shall be provided to the Buyer prior to the Transfer Date. Sellers represent that the Final Electronic File will be in the identical record format as the Electronic File attached hereto as Exhibit A.

"Ineligible Accounts" means those Accounts included in the Electronic File for which (a) the Accountholder is deceased as evidenced by the Buyer providing a death certificate, credit report, or BANKO report to the Sellers; (b) the obligation represented by the Account was discharged in bankruptcy as documented by Buyer to the Sellers via an order of discharge from the United States Bankruptcy Court, credit report, or BANKO report; (c) the Accountholder is a debtor in a pending chapter 7 bankruptcy proceeding; (d) the Accountholder paid or otherwise satisfied the Account prior to the Transfer Date; or (e) the Accountholder has asserted a valid counterclaim or defense alleging that the Accountholder had no responsibility for any aspect of the Account.

"Transfer Date" means the date to be agreed upon by Buyer and Sellers that is not more than ten (10) days after entry of the Approval Order of the Bankruptcy Court, on which date the Buyer shall tender payment of the Purchase Price to the Sellers via wire transfer pursuant to instructions to be provided by the Sellers, and the Sellers shall transfer and assign the Accounts to the Buyer.

### Agreement

SECTION 1.    Upon the terms and subject to the conditions of this Agreement, on the Transfer Date, the Sellers hereby agree to sell, convey, transfer, assign and deliver to Buyer free and clear of all liens, claims, encumbrances and interests, on an **"AS IS, WHERE IS"** basis and, except as expressly set forth in this Agreement, without any representation or warranty on the part of the Sellers except as expressly set forth in this Agreement, and Buyer hereby agrees to purchase from the Sellers, all of the Sellers' right, title, and interest in and to the Accounts. This Agreement and the transactions contemplated hereunder are subject to approval by the Bankruptcy Court. Within three (3) business days after the Effective Date and assuming the Buyer has made the Good Faith Deposit (as defined below), then the Sellers agree to and shall file a motion with the Bankruptcy Court seeking the approval of this Agreement and the entry of the Approval Order. The Sellers shall use their best efforts to obtain the entry of the Approval Order. Buyer agrees to cooperate with the Sellers in connection therewith.

SECTION 2.    Sellers hereby agree to provide the Final Electronic File to Buyer prior to the Transfer Date. Sellers and Buyer agree that for all purposes of this Agreement, including the calculation of the Purchase Price, the Final Electronic File shall be used to determine the Accounts being sold and assigned hereunder.

SECTION 3.    If any of the Accounts for which Buyer has paid a Purchase Price hereunder are Ineligible Accounts as of the Transfer Date, then Sellers agree to return and repay to Buyer a pro-rata portion of the Purchase Price that is attributable to the Ineligible Accounts, which pro-rata portion shall be determined by multiplying the Purchase Price by a fraction, the numerator of which is the balance of such Ineligible Accounts as reflected on the Final Electronic File and the denominator of which is the aggregate balance of all Accounts on the Final Electronic File (the "Refund Payment"). Buyer shall have a period of sixty (60) days from the Transfer Date to submit to Sellers the listing of Ineligible Accounts that Buyer asserts are to be repurchased by Sellers, and shall supply Sellers with reasonable supporting

evidence that each such Account is an Ineligible Account. Sellers shall have thirty (30) days from receipt of the Ineligible Accounts list from Buyer to review said list and supporting evidence and either: (1) reimburse Buyer the Refund Payment for each Ineligible Account which Sellers do not dispute; or (2) provide the basis for which Sellers dispute any such Ineligible Account. For a period of fifteen (15) business days after Sellers provide their list of disputed Ineligible Accounts, the Buyer and Sellers agree to negotiate and attempt to resolve any such disputes in good faith. If Buyer and Sellers are not able to resolve any such disputes at the expiration of such fifteen (15) business day period, then either party may submit such dispute to the Bankruptcy Court for resolution.

### Sellers' Limited Representations and Warranties

SECTION 4. Sellers represent and warrant to Buyer that as of the Transfer Date, Sellers own and have clear title to the Accounts and the proceeds thereof, and that Sellers are transferring the Accounts and the proceeds thereof to Buyer free and clear of any and all liens, claims, encumbrances and interests pursuant to the Approval Order. In addition, Sellers represent and warrant to Buyer that the books and records of the Sellers reflect that each Account on the Final Electronic File is a valid obligation of the respective Accountholder due and owing to one or more of the Sellers as of the date of the Final Electronic File.

SECTION 5. Subject to and conditioned on the entry of the Approval Order, Sellers represent and warrant to Buyer that they have the power and authority to enter into this Agreement and to sell and convey the Accounts and proceeds thereof to Buyer pursuant to the terms hereof.

### Buyer's Representations and Warranties

SECTION 6. Buyer represents and warrants to Sellers that: (a) at all times, Buyer and those who assist Buyer in the collection efforts with respect to the Accounts (collectively, "Buyer's Agents") will conduct themselves in a professional manner consistent with and in full compliance with all applicable laws, orders and regulations; (b) at no time will Buyer or Buyer's Agents represent or imply to any person or entity that they are acting on behalf of, or at the instruction of, Sellers; and (c) Buyer has the power and authority to enter into this Agreement and to purchase Sellers' interest in the Accounts and all proceeds thereof.

### Purchase Price, Good Faith Deposit And Transfer Procedures

SECTION 7. Pursuant to the Electronic File attached hereto as Exhibit A, there are 64,859 Accounts representing a current aggregate balance of $23,470,304 (the "Balance"), which Accounts and Balance will be updated by and through the Final Electronic File (the "Updated Balance"). The purchase price (the "Purchase Price") to be paid by Buyer to Sellers for the Accounts contained in the Final Electronic File shall equal 0.8% of the Updated Balance.

SECTION 8. Within one (1) business day after the Effective Date of this Agreement, Buyer shall deposit cash in immediately available federal funds by wire transfer in an amount equal to $20,000.00 (the "Good Faith Deposit") to the Sellers by deposit into the attorneys' trust account of Genovese Joblove & Battista, P.A., bankruptcy counsel to the Sellers. If the transactions contemplated hereunder are consummated, then the Good Faith Deposit shall be applied by the Sellers as a credit against the Purchase Price. If the transactions contemplated hereunder are not consummated as a result of a default by the Buyer hereunder, then the Sellers shall be entitled to retain the Good Faith Deposit as their sole remedy against the Buyer for such default. If the transactions contemplated hereunder are not consummated for any reason other than a default by the Buyer, then the Sellers shall return the Good Faith Deposit to Buyer within five (5) business days thereafter, and the parties shall be relieved of any further obligations hereunder to each other.

SECTION 9.  For a period of forty-five (45) days after the Transfer Date, Sellers agree to and shall remit or transfer to Buyer all direct payments received by the Sellers with respect to the Accounts being sold and assigned to Buyer hereunder in the same form received by Sellers, including if applicable properly endorsed to Buyer.  In addition to remitting such payments to Buyer, Sellers agree to and shall also provide Buyer with: (a) information on the Account and Accountholder making each such payment; and (b) the amount of the payment.

SECTION 10  The Transfer Date shall occur on a date to be agreed to by Buyer and Sellers not more than ten (10) days after the entry of the Approval Order by the Bankruptcy Court.

SECTION 11.  On the Transfer Date, Buyer shall pay the Purchase Price to Sellers by wire transfer (or other method agreed upon by the parties) in immediately available funds.

SECTION 12.  On the Transfer Date, Sellers shall execute and deliver to Buyer one Bill of Sale and Assignment (attached hereto as Exhibit B) for all of the Accounts executed by an authorized representative of Sellers, which Bill of Sale and Assignment of Accounts shall sell, transfer, assign, setover, quitclaim and convey to Buyer, without recourse, warranty or representation, all right, title and interest of Sellers in and to each of the Accounts sold, and the right to collect all principal and/or interest and/or other amounts thereon from and after the Transfer Date.

## Collection Practices

SECTION 13.  <u>Confidential Information.</u>  Buyer agrees that any and all demographic data or personally identifiable information provided by Sellers to Buyer with respect to any Accountholder pursuant to this Agreement shall only be used by Buyer for purposes of collecting the Accounts.  Buyer agrees that it and Buyer's Agents will not use, sell, transfer or utilize any such data for any other purpose without the express written consent of Sellers.  Buyer acknowledges that such demographic data or personally identifiable information constitutes confidential information of Sellers and Accountholders.  Buyer agrees to maintain the confidentiality of such information by not disclosing any such information to any person or entity, except to the employees and subcontractors of Buyer that need to review and process such information so as to enable Buyer to collect the Accounts.  Buyer agrees to and will instruct those employees and subcontractors to keep all such information confidential.

SECTION 14.  <u>Notice to Customers.</u>  Buyer agrees to notify each Accountholder in writing that the Sellers have transferred such Accountholder's Account(s) to Buyer

SECTION 15.  <u>Post-Sale Support.</u>  The Buyer and Sellers agree that Sellers are not obligated to provide any post sale support to Buyer for any reason, including to collect on the Accounts or to validate any data, contracts, statements and other documents related to the Accounts.

SECTION 16.  <u>Notice of Claims.</u>  Buyer and Sellers shall immediately notify the other party in writing of any claim, threatened claim, pending or threatened obligation or other legal proceeding or governmental action against the other party that may come to their attention with respect to the Accounts.

SECTION 17.  <u>Interest and/or Late Fees</u>.  Buyer agrees not to assess or collect additional late payment charges or interest on the Accounts.

## Indemnification

SECTION 18.  <u>Buyer Indemnification.</u>  Buyer agrees to and shall indemnify, defend and hold Sellers harmless from and against any and all claims, demands, suits, judgments, damages, attorneys' fees

and expenses that arise out of Buyer's or Buyer's Agents' collection or other activities related to the Accounts on or after the Transfer Date.

SECTION 19. Buyer and Sellers further agree that Buyer will have the right to defend or settle any such claim subject of an indemnity in Section 18 above.

SECTION 20. The indemnity of Buyer to Sellers hereunder shall survive termination and expiration of this Agreement, and delivery of the Bill of Sale and Assignment

### **Miscellaneous Provisions**

SECTION 21. <u>Notices.</u> All notices and documents that are required to be sent under this Agreement shall go to the following addresses:

<u>To Buyer:</u>

Orion Portfolio Services, LLC
10375 Old Alabama Rd. Conn, Ste. 302
Alpharetta, GA 30022
c/o Anurag Sett, CEO
Email: asett@orion-ps.com

With a copy to (which shall not constitute notice):

David A. Kleber, Esq.
Bedard Law Group, P.C.
4855 River Green Parkway, Suite 310
Duluth, GA 30096
Email: dkleber@bedardlawgroup.com

<u>To Sellers:</u>

Liberty Power Holdings, LLC
Liberty Power District of Columbia, LLC
LPT, LLC
Liberty Power Maryland, LLC
c/o Bob Butler, Chief Restructuring Officer
Email: bbutler@thinkbrg.com

With a copy to (which shall not constitute notice):

Paul J. Battista, Esq.
Genovese Joblove & Battista, P.A.
100 S.E. Second Street, 44th Floor
Miami, Florida 33131
Email: pbattista@gjb-law.com

Notices and documents that are to be sent under this Agreement shall be sent, as appropriate, either via email, certified mail, postage prepaid, Federal Express, postage prepaid, or by telecopy, transmission confirmed.

SECTION 22.  Binding Effect.  This Agreement shall be binding upon the parties hereto and their respective successors and assigns.

SECTION 23.  Modification.  This Agreement and the documents referred to herein, contain the entire agreement and understanding between the Sellers and the Buyer as to the subject matter of the Agreement and merges and supersedes all prior agreements, commitments, representations, and discussions between the Sellers and Buyer pertaining to this Agreement.  No modification or amendment of this Agreement will be binding unless such modification or amendment is incorporated within a signed, written agreement between the parties.

SECTION 24.  Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to its conflicts of laws principles or rules.

SECTION 25.  Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same Agreement.

SECTION 26.  No Beneficiaries.  Except as provided herein, no provision of this Agreement shall in any way inure to the benefit of any third person (including the public at large) so as to constitute any such person a third party beneficiary of the Agreement or of any one or more of the terms hereof, or otherwise give rise to any cause of action in any person not a party hereto.

SECTION 29.  Further Sale Of Accounts.  Buyer represents and agrees that it shall not sell any of the Accounts from and after the Transfer Date.  The foregoing provision, however, shall not prevent Buyer from placing, delegating and/or assigning the Accounts to legal counsel or a collection agency. The placement and/or assignment of such Accounts will be under the supervision of Buyer.  Buyer shall notify Seller the name of company servicing accounts through a period of forty-five (45) days after the Transfer Date.

SECTION 30.  Damages.  In no event and under no circumstances shall either party be liable for any special, incidental, indirect, or consequential damages, including but not limited to lost profits and good will.

As evidenced by their signatures below, the parties to this Agreement agree to be bound by the terms of this Agreement.

Sellers:

Liberty Power Holdings, LLC
Liberty Power District of Columbia, LLC
LPT, LLC
Liberty Power Maryland, LLC

By: _Bob Butler_
Name: _BOB BUTLER_
Its: _CHIEF RESTRUCTURING OFFICER_

Date: _06.29.2022_

Buyer:

Orion Portfolio Services, LLC (Buyer)

By: _____
Name: Anurag Setu
Its: CEO

Date: 06.29.2022

## EXHIBIT A
## ELECTRONIC FILE

LPH will deliver an electronic file to Orion effective July 1st, 2022

## EXHIBIT B
## BILL OF SALE AND ASSIGNMENT AGREEMENT

THIS BILL OF SALE AND ASSIGNMENT AGREEMENT is dated as of [Month, Day], 2022, and is by and between Liberty Power Holdings, LLC, Liberty Power District of Columbia, LLC, LPT, LLC, and Liberty Power Maryland, LLC (collectively, the "Sellers"), and Orion Portfolio Services, LLC, a Georgia limited liability company (the "Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated as of June 15, 2022, between Buyer and the Sellers (the "Purchase Agreement"), (to which this Bill of Sale and Assignment Agreement is Attachment B-1), the Sellers do hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts specifically listed in Final Electronic File attached hereto as Exhibit "A".

This Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectability, except as expressly stated in the Purchase Agreement.

| Current Balance | # of Accounts | Purchase Price Factor | Purchase Price | Date of Electronic File |
|---|---|---|---|---|
| $23,470,304 | 64,859 | %0.8 | $187,762.43 | |

The terms of this Bill of Sale and Assignment of Accounts are hereby accepted.

**Sellers:**

**Liberty Power Holdings, LLC**
**Liberty Power District of Columbia, LLC**
**LPT, LLC**
**Liberty Power Maryland, LLC**

By: _Bob Butler_
Name: _BOB BUTLER_
Its: _CHIEF RESTRUCTURING OFFICER_

Date: _06.29.2022_

**Buyer:**

**Orion Portfolio Services, LLC (Buyer)**

By: _____
Name: Anurag Sett
Its: CEO

Date: 06.29.2022