**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | **Case No. 21-13797-SMG** |
| **LPT, LLC,** | **Case No. 21-15537-SMG** |
| **LIBERTY POWER MARYLAND, LLC,** | **Case No. 21-15539-SMG** |
| **LIBERTY POWER DISTRICT OF** | |
| **COLUMBIA, LLC,** | **Case No. 21-15540-SMG** |
| **Debtors.** | **(Jointly administered 21-13797-SMG)** |

_____/

**MOTION TO ENFORCE SECOND BAR DATE ORDER [ECF NO. 752] AND**
**TO COMPEL PAUL SAPAN AND PRATO & REICHMAN, APC**
**TO COMPLY THEREWITH**

Liberty Power Holdings, LLC ("Holdings"), Liberty Power District of Columbia, LLC

("Liberty District of Columbia"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty

Maryland")(collectively, the "Debtors"), by and through their undersigned counsel, file this *Motion*

*to Enforce Second Bar Date Order [ECF No. 752] and to Compel Paul Sapan and Prato & Reichman,*

*APC to Comply Therewith* (the "Motion") and in support thereof state as follows:

**I.     JURISDICTION**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant

to 28 U.S.C. § 157(b).

2.      This Court has personal jurisdiction over Paul Sapan and Prato & Reichman, APC,

including because the Debtors will be serving this Motion in the same manner as provided in

Bankruptcy Rule 7004. *See In re DBSI, Inc.*, 451 B.R. 373, 376 (Bankr. D. Del. 2011).

3.      The statutory predicates for the relief sought herein are §§105(a) and 503(a) of the

Bankruptcy Code.

## II.    <u>BACKGROUND</u>

4.    On April 20, 2021 (the "<u>Holdings Petition Date</u>"), Holdings filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Since that time, Holdings has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    On June 4, 2021 (the "<u>Subsidiary Petition Date</u>"), the Subsidiary Debtors each filed chapter 11 bankruptcy petitions, which bankruptcy cases (the "<u>Bankruptcy Cases</u>") were jointly administered with the chapter 11 case of Holdings, including to facilitate the sale of all or substantially all of the Debtors' assets, including without limitation, retail customer contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code.

6.    As of the date hereof, no creditors' committee has been appointed in these cases. In addition, no trustee or examiner has been appointed.

7.    For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "<u>First Day Declaration</u>")[ECF No. 10].

## III.    <u>THE ADMINISTRATIVE CLAIMS BAR DATES AND THE COURT'S RELATED ORDERS</u>

8.    On December 29, 2021, the Debtors filed the *Debtors' Expedited Motion (I) To Establish a Bar Date for the Filing of Motions Seeking the Allowance and/or Payment of Administrative Expense Claims, and (II) to Designate the Form and Manner of Notice of Administrative Claims Bar Date* (the "<u>First Bar Date Motion</u>") [ECF No. 510].

9.      On January 12, 2022, the Court entered its *Order Granting the Administrative Claim Motion* (the "First Bar Date Order")[ECF No. 526] establishing a bar date of February 9, 2022 as the deadline for the filing of administrative expense claims in these Bankruptcy Cases under section 503(b) of the Bankruptcy Code.[1]

10.     On July 13, 2022, the Debtors filed the *Debtors' Motion (I) To Establish a Second Administrative Claims Bar Date for Certain Putative Creditors to File (I) Motions Seeking the Allowance and/or Payment of Administrative Expense Claims, and (II) to Designate the Form and Manner of Notice of Second Administrative Claims Bar Date* (the "Second Bar Date Motion") [ECF No. 735].

11.     As set forth therein, the Debtors filed the Second Bar Date Motion in part to deal with any potential administrative claims of Mr. Paul Sapan ("Sapan"), who had filed and was prosecuting a class action lawsuit against Holdings (among others) in the United States District Court for the Central District of California, Southern Division (the "California District Court") styled *Paul Sapan v. Liberty Power Corp., L.L.C., Liberty Power Super Holdings, LLC, Liberty Power Holdings, LLC*, Case No. 8:21-cv-01749-MEMF-KES (the "Sapan Class Action Lawsuit").

12.     On July 27, 2022, the Court held a hearing on the Second Bar Date Motion. A copy of the transcript of such hearing is attached hereto as Exhibit "A" (the "Transcript"). At such hearing, Christopher Reichman, Esq. of Prato & Reichman, APC ("Mr. Reichman"), who is counsel to Sapan in the Sapan Class Action Lawsuit, made an appearance and asserted several objections to the Second Bar Date Motion.[2] *See* Transcript at p. 4, lines 3-6. The Court overruled

---

[1] The Debtors have since confirmed that the First Bar Date Order was served on Paul Sapan through his counsel, Prato & Reichman, APC, who was listed as one of the 1,199 confidential parties that were set forth on that certain Certificate of Service, dated January 14, 2022 and filed at ECF 541, with an address c/o Prato & Reichman, APC, 8555 Aero Drive, Suite 303, San Diego, CA 92123. Notwithstanding, Sapan, though his counsel, has claimed that they never received the First Bar Date Order. If needed, the Debtors will provide evidence of such service.

[2] Mr. Reichman made his appearance as follows: "Good afternoon, your Honor, Chris Reichman, appearing for the Sapan versus Liberty Power class action case. I am the class counsel in the Central District of California."

such objections and made clear to Mr. Reichman that he could file a motion or request for an administrative expense claim on behalf his client on or before the deadline that the Court was establishing in connection with the Second Bar Date Motion.

13.     At the July 27th hearing, the Court also explained to Mr. Reichman that there was no prejudice or lack of due process to his client by the Court granting the Second Bar Date Motion, which would allow Sapan twenty-five (25) days from its entry to file a request for an administrative expense claim.  Further, in response to Mr. Reichman's questions about needing to take discovery in respect of any such administrative claim, the Court outlined for Mr. Reichman that under Rule 9014 of the Bankruptcy Rules, litigation of an administrative claim triggers a contested matter that allows discovery to take place in the Bankruptcy Cases without any prejudice to Sapan.

14.     Thereafter, on July 29, 2022, the Court entered its *Order Granting the Second Administrative Claim Motion* (the "Second Bar Date Order")[ECF No. 752] establishing a second bar date of August 23, 2022 (25 days from the date of the Second Bar Date Order) (the "Second Claims Bar Date") as the deadline for the filing of administrative expense claims in these Bankruptcy Cases under section 503(b) of the Bankruptcy Code.

15.     On July 29, 2022, the Debtors served the Second Bar Date Order via first-class mail, through their noticing agent Stretto, on (i) Paul Sapan, c/o Prato & Reichman, APC, 8555 Aero Dr., Suite 303, San Diego CA 92123, and (ii) Paul Sapan, c/o Prato & Reichman, APC. 3675 Ruffin Rd., Suite 220, San Diego, CA 92123.  *See* Certificate of Service at ECF No. 758. Additionally, upon the request by Mr. Reichman to undersigned counsel, undersigned counsel emailed a copy of the Second Bar Date Order directly to Mr. Reichman on August 5, 2022.  *See* Email, dated August 5, 2022, from Paul J. Battista, Esq. to Christopher Reichman, Esq. attached hereto as Exhibit "B."

16.     Notwithstanding providing actual and formal notice of the Second Bar Date Order as set forth above, Sapan did not file a motion or request for the allowance and/or payment of an administrative expense on or before the Second Claims Bar Date.

17.     Moreover, contrary to and in violation of the express terms of the Second Bar Date Order, Sapan and his counsel Prato & Reichman, APC, have continued their aggressive prosecution of the Sapan Class Action Lawsuit in the California District Court in an effort to liquidate Sapan's post-petition claim against Holdings, which conduct has and continues to cause the Debtors to expend substantial resources in defense thereof.

18.     Worse, as set forth below, undersigned counsel attempted to avoid the filing of this Motion and confronted Mr. Reichman with the fact that his continued prosecution of the Sapan Class Action Lawsuit was in violation of the Second Bar Date Order.  In response, Mr. Reichman took the position that neither he nor Mr. Sapan are bound by this Court's Second Bar Date Order and therefore have intentionally failed and refused to comply with it.

## IV.    THE SAPAN CLASS ACTION LAWSUIT.

19.     The Complaint in the Sapan Class Action Lawsuit alleges one cause of action against Holdings, among other non-debtor entities, for an alleged post-petition violation of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA"). A copy of Complaint in the Sapan Class Action Lawsuit is attached hereto as Exhibit "C" (the "Sapan Complaint").[3]

20.     As set forth in the Sapan Complaint, Mr. Reichman and the law firm of Prato & Reichman, APC, are counsel for "Plaintiff Paul Sapan."  In subsequent pleadings filed in the Sapan Class Action Lawsuit, Mr. Reichman and Prato & Reichman, APC appear as "Attorneys for

---

[3] References to pleadings in the Sapan Class Action Lawsuit are cited as [CA Dkt.___].

Plaintiff [Paul Sapan] and the Proposed Class." The putative class, however, has not been certified by the California District Court as of the date hereof. Moreover, no motion to certify a class is pending before the California District Court.

21.    The Debtors assert that Sapan is known as a prolific TCPA litigant who has been a plaintiff in approximately 74 TCPA lawsuits, mostly in the State of California.

22.    Moreover, at the time of the filing of the Sapan Class Action Lawsuit, Sapan, Mr. Reichman and Prato & Reichman, APC had actual knowledge of the Holdings' Bankruptcy Case. *See* Sapan Complaint at ¶¶21 & 22.

23.    Notwithstanding having failed to file a motion or request for an administrative expense claim as required by the Second Bar Date Order, as discussed above, Sapan, through his counsel Prato & Reichman, APC, continued their prosecution of the Sapan Class Action Lawsuit. In connection therewith and among other things, on August 29, 2022, a mere six (6) days after the Second Claims Bar Date, Sapan filed a *Notice of Motion and Motion for Joint Discovery Dispute* (the "Motion to Compel Discovery") moving to compel Holdings to respond to Sapan's Interrogatories and Request for Production. [CA Dkt. 57]. A copy of the Motion to Compel Discovery is attached hereto as Exhibit "D." In response, Holdings moved to reschedule the hearing on the Motion to Compel Discovery for the same date as a hearing on Holdings' separate motion to stay the Sapan Class Action Lawsuit based on this Court's Second Bar Date Order (the "Motion to Stay").[4]

24.    On September 2, 2022, undersigned counsel to the Debtors sent a demand (the "Demand") to Mr. Reichman advising him that the continued prosecution of the Sapan Class

---

[4] In its Motion to Stay, Holdings also raised Sapan's failure to comply with this Court's First Bar Date Order, although Sapan, through his counsel, Mr. Reichman, has taken the position that he did not receive the First Bar Date Order. Holdings' Motion to Stay remains pending before the California District Court, that Court having continued the hearing on such Motion to December 15, 2022.

Action Lawsuit violated the Second Bar Date Order and demanding that he dismiss the Sapan

Class Action Lawsuit as against Holdings.  The Demand made specific reference to paragraph 3

of the Second Bar Date Order, which states as follows:

> "Any holder of an Administrative Claim who fails to comply with the terms of this Order **shall be and is hereby barred from pursuing such Administrative Claim in these chapter 11 cases or otherwise**.  In addition, any such Administrative Claim not subject of an appropriate motion by the Second Administrative Claims Bar Date **shall be and is hereby denied with prejudice**."

(emphasis added).

25.     On the same day, September 2, 2022, Mr. Reichman responded to the Demand and

made a number of statements, including among other things, that he was not a bankruptcy lawyer,

that he was not representing Mr. Sapan when he appeared at the hearing on the Second Bar Date

Motion, that he was only representing the yet uncertified class in the Sapan Class Action Lawsuit,

that he never accepted service of anything on behalf of Sapan in the bankruptcy case, that he is not

pursuing an Administrative Claim in the Sapan Class Action Lawsuit and that this Court does not

have and cannot exercise jurisdiction over Sapan or Prato & Reichman, APC.  Based on these

positions, Mr. Reichman refused to comply with the Demand and refused to dismiss the Sapan

Class Action Lawsuit as to Holdings.  A copy of the Demand and Mr. Reichman's response is

attached hereto as Composite Exhibit "E."

26.     Consistent with that position, on September 6, 2022, Mr. Reichman filed an

Objection [CA Dkt. 59] (the "Sapan Objection") in the Sapan Class Action Lawsuit opposing

Holdings' request to continue the hearing on the Motion to Compel Discovery being prosecuted

by Sapan.  A copy of such Sapan Objection is attached hereto as Exhibit "F."  In the Sapan

Objection, Mr. Reichman makes a number of incorrect and inaccurate statements and arguments

concerning bankruptcy law and these Bankruptcy Cases, including that this Court does not have

the power to extinguish Sapan's alleged post-petition class action claim against Holdings.

27.     On September 14, 2022, the California District Court granted Sapan's Motion to Compel Discovery, but specifically noted that "***if the bankruptcy court rules that Plaintiff's TCPA claim is barred by some missed deadline in that court, then Defendant can use that ruling here.***" *See Order Granting Plaintiff's Motion to Compel Discovery* [CA Dkt. 64] attached hereto Exhibit "G."

28.     Sapan continues to pursue discovery aggressively in the California District Court proceeding.  Through counsel, he is demanding numerous supplemental interrogatory answers and additional documents.  *See* Discovery Dispute Letter, dated November 4, 2022 attached hereto as Exhibit "H."   In addition, Sapan is seeking to depose a corporate representative and numerous other witnesses associated with the Debtors.  *See* Email, dated November 14, 2022 and Notice of Deposition, dated November 18, 2002 attached hereto as Exhibits "I" and "J" respectively.[5]

29.     As set forth below, the Debtors seek an Order of this Court determining that Sapan's TCPA claim is barred by his failure to comply with this Court's Second Bar Date Order and that such claim has been denied, which Order the Debtors will file with the California District Court in the Sapan Class Action Lawsuit.

## V.     <u>RELIEF REQUESTED</u>

30.     The Debtors request that the Court enforce its Second Bar Date Order by (i) finding that Sapan's failure to file an appropriate motion with this Court for the allowance and payment of an Administrative Claim by the deadline set forth therein bars Sapan from pursuing any claims against Holdings (or the other Debtors) in the Sapan Class Action Lawsuit, including because such

---

[5] As the Court is aware, the Debtors have been winding down their operations and have limited cash collateral remaining and limited resources to continue to respond to Sapan's aggressive tactics in violation of the Second Bar Date Order.

claims are subject of the Second Bar Date Order, and (ii) finding that Sapan's claims against the Debtors are denied with prejudice.

31.    To be clear and as set forth above, the Second Bar Date Order provides that "***any holder of an Administrative Claim who fails to comply with the terms of the Bar Date Order shall be and is hereby barred from pursuing such Administrative Claim in these chapter 11 cases or otherwise.*" *See* ¶3 of the Second Bar Date Order (emphasis added).  Moreover, the Second Bar Date Order provides that "any such Administrative Claim not subject of an appropriate motion by the Second Administrative Claims Bar Date shall be and *is hereby denied with prejudice*." *Id.*  (emphasis added).

32.    In this case, Sapan has had more than ample opportunity to present his claims against Holdings to this Court for allowance and payment, and yet has intentionally failed and refused to do so.  Accordingly, because Sapan has failed to comply with the Second Bar Date Order, he not only is barred from continuing to pursue his claims against Holdings in the Sapan Class Action Lawsuit, but any such claims should be denied with prejudice.

## VI.    BASIS FOR RELIEF REQUESTED

### A.    Bankruptcy Courts have Authority to Set and Enforce Bar Dates for Chapter 11 Administrative Expense Claims.

33.    Bankruptcy courts have broad discretion to establish and enforce bar dates under sections 105 and 503 of the Bankruptcy Code "for cause." *See Ellis v. Westinghouse Electric Co., LLC,* 11 F.4th 221, 226 (3d Cir. 2021) ("We hold that section[] 503…of the Bankruptcy Code authorize bankruptcy courts to set and enforce bar dates for administrative expense claims…."); *see also Hall Fin. Group, Inc., v. DP Partners, Ltd., Partnership* (*In re DP Partners Ltd. Partnership*), 106 F.3d 667, 672 (5th Circ. 1997).  This discretion furthers the ultimate goals of Chapter 11 bankruptcy proceedings.  *See In re Isis Foods, Inc.*, 27 B.R. 156, 158 (W.D. Mo. 1982).

34.     First, section 503 of the Bankruptcy Code allows the payment of administrative expenses, including 'the actual, necessary costs and expenses of preserving the estate….'" *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 41 (3d Cir. 1989) (citing 11 U.S.C. § 503(b)).    In addition, claims for a debtor's post-petition violation of law are subject to administrative claim priority status.  *See In re N.P. Mining Co., Inc.*, 963 F.2d 1449 (11th Cir. 1992).

35.     "Given that the Court has discretion to determine when administrative claims are to *be paid*, it naturally follows that it has the discretion as to when such claims should *be presented*."  *In re Reams Broadcasting Corp.*, 153 B.R. 520, 522 (Bankr. N.D. Ohio 1993).

36.     Second, section 105 of the Bankruptcy Code sets forth a bankruptcy court's power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11.  Courts have interpreted this section, as they have for section 503, to include the power to set and enforce bar dates. *See In re PT-1 Communications, Inc*., 386 B.R. 402, 409 (Bankr. E.D.N.Y. 2007).

37.     Placing the discretion of setting and enforcing bar dates within the hands of bankruptcy courts is consistent with the "underlying tenets of modern bankruptcy law which encourages the rehabilitation of an honest Chapter 11 entity." *See In re Isis Foods, Inc*., 27 B.R. 156, 158 (W.D. Mo. 1982).  Having the discretion to impose deadlines insures the smooth administration of Chapter 11 reorganization. *See In re Reams Broadcasting Corp*., 153 B.R. at 523; *In re Holywell Corp*., 68 B.R. 134, 137 (Bankr. S.D. Fla. 1986) ("It is essential that administrative expense claims, which are entitled to first priority in a bankruptcy distribution, be established with finality before any distribution may be made to any subordinate classes of creditors.").

38.     Setting and enforcing bar dates also "establishes a flexible system which allows consideration of such factors as the particular needs of each administrative claimant, the length and expense of the case's administration, and the amount of available assets, in determining fair and equitable interim distributions pending final resolution of the case." *In re Reams Broadcasting Corp.*, 153 B.R. at 522 (quoting *In re Isis Foods, Inc.*, 27 B.R. at 158).

**B.     The Bankruptcy Court has Jurisdiction to Enforce its Own Orders.**

39.     Having entered the Second Bar Date Order, this Court has subject matter jurisdiction to enforce such order in these Bankruptcy Cases under the court's "arising in" jurisdiction.  *See Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012); *In re: Motors Liquidation Company*, 514 BR 377, 381 (Bankr. S.D.N.Y. 2014); affirmed sub nom *In the Matter of Motors Liquidation Company,* 829 F.3d 135 (2nd Cir. 2016); *In Re: New River Dry Dock, Inc*., 497 BR 359, 361 (Bankr. S.D. Fla. 2013).

40.     Under the facts and circumstances of these Bankruptcy Cases, the Debtors assert that Sapan and his counsel, Mr. Reichmann, are not prejudiced by the Debtors seeking to enforce this Court's Second Bar Date Order by and through this Motion as opposed to instituting an adversary proceeding under Bankruptcy Rules 7001 and 7065 for injunctive relief, including because (i) Mr. Reichman, as counsel to Sapan, attended the July 27th hearing on the Second Bar Date Motion and objected to the entry of the Second Bar Date Order, (ii) Sapan had ample opportunity to assert his claims in this Court, (iii) undersigned counsel to the Debtors communicated with counsel to Sapan in an effort to avoid the filing of this Motion to no avail, and (iv) Sapan, through his counsel Mr. Reichmann, continues to aggressively prosecute his claim outside of this Court despite being barred by the Second Bar Date Order from doing so.  *See, for example, In re: Hayden* 477 B.R. 260 at 264, n. 3 (Bankr. N.D. Ga. 2012); *In re:  Braniff*

11

*International Airlines, Inc.,* 164 B.R. 820 at 831 (Bankr. E.D.N.Y 1994); *In re: Seatco, Inc.*, 257

BR 469 at 478 (Bankr. N.D. Tex. 2001); *In re: Service Merchandise Company*, 256 B.R. 755 at

765-66 (Bankr. M.D. Tenn. 2000).

41.    In addition, the Debtors are serving this Motion pursuant to Bankruptcy Rule 7004

so as to avoid any issues with notice of the relief sought herein.

**C.    Sapan's Arguments to Avoid Compliance with, and the Effect of, the Second Bar Date Order are Misplaced and Should be Overruled.**

42.    In his response to the Demand set forth above, Mr. Reichman asserts several bases

for trying to avoid the effect of the Second Bar Date Order, all of which are without merit.  First,

Mr. Reichman asserts that he is not a lawyer in Florida, he is not a bankruptcy lawyer and he did

not and has never represented Sapan in any Florida court or in the bankruptcy court.  Based on

those assertions, Mr. Reichman argues that notice of the Second Bar Date Motion was not valid as

to Sapan.  Mr. Reichman also suggests that he made his appearance at the July 27th hearing as

"lead class counsel," implying that he was not counsel to Sapan when he made such an appearance.

Mr. Reichman's arguments are without merit.  First, Mr. Reichman did not have an issue appearing

at and arguing against the Second Bar Date Motion at the July 27th hearing even though he is not

a Florida lawyer and even though he is not a bankruptcy lawyer.

43.    Second, Mr. Reichman and his law firm are listed on the pleadings in the Sapan

Class Action Lawsuit as either "Attorney for Plaintiff Paul Sapan" [*See* Sapan Complaint attached

hereto as Exhibit "A"] or as "Attorneys for Plaintiff and the Proposed Class" [*See* Sapan Objection

attached hereto aa Exhibit "F"].  To be clear, Paul Sapan is the plaintiff in the Sapan Class Action

lawsuit.  Unless and until a motion for class certification is granted by the California District Court,

Mr. Reichman and his law firm are counsel to Paul Sapan only.

44.     Third, by and through the Sapan Class Action Lawsuit, Sapan was and is asserting a claim against Holdings, which is exactly the reason the Second Bar Date Motion and ultimately the Second Bar Date Order was served on Sapan by and through his counsel in the Sapan Class Action lawsuit, Mr. Reichman.  Mr. Reichman misses the issue when he claims that he never agreed to accept service of the Second Bar Date Motion or the Second Bar Date Order on behalf of Sapan.  The relevant inquiry is whether Sapan, as the holder of a putative Administrative Claim against Holdings, had sufficient notice of the bar date in the Second Bar Date Order to be bound by such order and the bar date therein.

45.     The answer is an unequivocal yes.  Mr. Reichmann is counsel to Sapan in the very matter in which Sapan is asserting his claim against Holdings.  Moreover, Sapan, through such counsel, showed up and opposed the Second Bar Date Motion.  Still further, the Second Bar Date Order was served on Sapan through his counsel, Mr. Reichman, by first class mail and by email. There is no due process issue here because Sapan had both formal and actual notice of the Second Bar Date Order and the terms thereof.  *See In re: LeCentre on Fourth, LLC*, 17 F.4th 1326 (11th Cir. 2021)(concluding that actual notice is sufficient to satisfy due process even if the debtor violates procedural requirements for providing notice under the Bankruptcy Rules). Moreover, notice served on a party's attorney satisfies the requirement to provide notice to such party. *In re Residential Cap.*, LLC, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015). Specifically, in bankruptcy cases notice to an attorney who is representing a client in a claim against the debtor is generally proper. *Id.; see also Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (finding that notice of a bankruptcy sent to a creditor's attorney imparts notice of the bankruptcy to the creditor when the attorney is representing the creditor in its claim against the debtor).

13

46.    In both the Sapan Objection filed in the California District Court and the response to the Demand Letter, Mr. Reichman asserts for the first time[6] that Sapan's claim is not an Administrative Claim and therefore the claim he is asserting in the Sapan Class Action Lawsuit is not barred by the Second Bar Date Order.  Once again, Mr. Reichman's argument is misplaced.  In the Sapan Class Action Lawsuit, Sapan asserts that Holdings violated the TCPA after the Petition Date, and is seeking damages as a result thereof.  If Sapan were to prove such violation and the damages resulting therefrom, then such damages would constitute an administrative claim under the Bankruptcy Code.[7]  In the case of *In re N.P. Mining Co., Inc.*, 963 F.2d 1449 (11th Cir. 1992), the Eleventh Circuit, focused on the federal policy outlined in 28 U.S.C. § 959(b) and concluded that a bankruptcy estate must be operated in compliance with state law.  *Id.*, at 1453. "[C]ompliance with the law in operation of the estate is important enough to impose the burden of paying penalties for non-compliance on the estate as a first priority expense."  *In re Motel Investments, Inc.*, 172 B.R. 105, 107 (M.D. Fla. 1994) (where debtor operates in a highly regulated industry, "where compliance with regulations and payment of penalties for non- compliance is a necessary incident of doing business, penalties for non-compliance may be administrative expenses of the estate"). *See also, In re Kmart Corp.*, No. 08 C 2101, 2008 WL 5070306, at *4 (N.D. Ill. Nov. 20, 2008) (holding a post-petition employment discrimination and defamation claim was an administrative expense subject to the administrative claims bar date).

47.    Therefore, the claims asserted by Sapan in the Sapan Class Action Lawsuit are subject to the Second Bar Date Order.

**WHEREFORE**, the Debtors respectfully request the entry of an Order (i) enforcing the Second Bar Date Order and barring Sapan from continuing to pursue his claims against Holdings

---

[6] Mr. Reichman did not make this argument at the July 27th hearing on the Second Bar Date Motion.
[7] The Debtors reserve all rights in connection therewith.

in the Sapan Class Action Lawsuit, including any discovery in connection therewith; (ii) denying

any claims of Sapan against Holdings, and (iii) awarding any other or further relief that this Court

deems just and proper.

Dated: November 21, 2022.

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for Debtors-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: ___/s/_____*Paul J. Battista*_____
      Paul J. Battista, Esq.
      Florida Bar No. 884162
      pbattista@gjb-law.com
      Mariaelena Gayo-Guitian, Esq.
      Florida Bar No. 813818
      mguitian@gjb-law.com
      Heather L. Harmon
      Florida Bar No. 13192
      hharmon@gjb-law.com

**Page 1**

```
 1        UNITED STATES BANKRUPTCY COURT
          SOUTHERN DISTRICT OF FLORIDA
 2
 3  IN RE:        CASE NO. 21-13797-SMG
 4  LIBERTY POWER HOLDINGS, LLC,
 5        Debtor.
                               /
 6
 7        ECF #701, 735, 746
 8           July 27, 2022
 9    The above-entitled cause came on for hearing
10  before the Honorable SCOTT M. GROSSMAN, one of the Judges
11  in the UNITED STATES BANKRUPTCY COURT, in and for the
12  SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,
13  Fort Lauderdale, Broward County, Florida, on July 27,
14  2022, commencing at or about 2:30 p.m., and the following
15  proceedings were had.
16
17
18
19
20
21
22
23
24        Transcribed from a digital recording by:
             Cheryl L. Jenkins, RPR, RMR
25
```

**Page 2**

```
 1
 2    APPEARANCES VIA ZOOM VIDEOCONFERENCE:
 3
 4    GENOVESE JOBLOVE & BATTISTA, by
         PAUL J. BATTISTA, Esquire
 5      MARIAELENA GAYO-GUITIAN, Esquire
         On behalf of the Debtors
 6
 7       BERGER SINGERMAN, by
            JORDI GUSO, Esquire
     On behalf of Boston Energy Trading and Marketing, LLC
 8
 9         PRATO & REICHMAN, by
         CHRISTOPHER REICHMAN, Esquire
10      On behalf of Paul Sapan, et al.
11
       JACQUELYN BIHRLE, Esquire
12       Assistant Attorney General
        Commonwealth of Massachusetts
13
14      ARIEL RODRIGUEZ, Trial Attorney
          Office of the U.S. Trustee
15           Department of Justice
16
         ALSO PRESENT
17
         BOB BUTLER
18
         MICHAEL BLASIK
19
     ECRO - Electronic Court Reporting Operator
20
          - - - - - - -
21
22
23
24
25
```

**Page 3**

```
 1        THE COURT:  Okay.  Good afternoon everybody.
 2  On the 2:30 calendar I have Liberty Power Holdings, LLC.
 3  I will take appearances.  Mr. Battista.
 4        MR. BATTISTA:  Good afternoon, Judge.  I'm
 5  Paul Battista, of Genovese Joblove & Battista, and I'm joined
 6  by my law partner Mariaelena Gayo-Guitian, and we
 7  represent the debtors in these cases, and I'm also joined
 8  in the Zoom courtroom by Mr. Bob Butler, the debtors'
 9  chief restructuring officer.
10        THE COURT:  Okay.  Good afternoon everybody.
11  Mr. Guso.
12        MR. GUSO:  Sir, good afternoon, your Honor.
13  Jordi Guso, of Berger Singerman, on behalf of Boston
14  Energy Trading and Marketing, LLC, whom we refer to as
15  BETAM, and I am joined by my client representative,
16  your Honor, Michael Blasik.
17        THE COURT:  Okay.  Good afternoon.
18  Mr. Rodriguez.
19        MR. RODRIGUEZ:  Good afternoon, your Honor.
20  Ariel Rodriguez on behalf of the United States.
21        THE COURT:  Okay.  Good afternoon.
22  Ms. Bihrle.
23        MS. BIHRLE:  Good afternoon, your Honor,
24  Assistant Attorney General Jacquelyn Bihrle, on behalf of
25  the Commonwealth of Massachusetts.
```

**Page 4**

```
 1        THE COURT:  Okay.  Good afternoon.
 2  Mr. Reichman.
 3        MR. REICHMAN:  Good afternoon, your Honor.
 4  Chris Reichman, appearing for the Sapan versus Liberty
 5  Power class action case.  I am the class counsel in the
 6  Central District of California.
 7        THE COURT:  Okay.  Good afternoon.
 8        Other appearances, would anybody else like
 9  to appear in Liberty Power today?
10        (No verbal response.)
11        THE COURT:  Okay.  Mr. Battista, we have
12  three matters on.  We have a motion to compromise
13  controversy with Massachusetts, a motion to establish a
14  second administrative claims bar date, and an expedited
15  third motion to extend the DIP financing.
16        How would you like to proceed?
17        MR. BATTISTA:  Yes, sir.  Thank you, Judge.
18  Again, Paul Battista for the debtors.
19        We can start with Court Paper 701, which is
20  the motion to settle with the Commonwealth of
21  Massachusetts, if that pleases the Court.
22        THE COURT:  Yes, go ahead.
23        MR. BATTISTA:  Thank you, Judge.
24        This is the debtors' motion to approve a
25  settlement and compromise with two agencies in the
```

Page 5

1  Commonwealth of Massachusetts, one is the Department of
2  Energy Resources, the other is the Department of
3  Environmental Protection.
4       The Court is very familiar with the history
5  of the issues between the debtors' estates and the
6  Commonwealth. This arises out of two administrative
7  expense claims, applications filed by the Commonwealth
8  prior to the Court's first admin claim bar date of
9  February 9th, in which the Department of Energy Resources
10  filed a claim of just over $4.3 million, and the
11  Department of Environmental Protection, a claim of over
12  1.2 million.
13       The debtor objected to that claim,
14  Massachusetts replied, and the debtors filed a sur-reply.
15  The Court knows how complicated the factual and legal
16  issues are.
17       While we were rolling into oral argument on
18  that, Ms. Bihrle and I, on behalf of our respective
19  clients, negotiated, over the course of several weeks, a
20  settlement of those issues, which resulted in the
21  settlement agreement that's attached to the motion at
22  Court Paper 701. It's a fairly straightforward agreement.
23  The debtor has agreed to allow a Chapter 11 administrative
24  expense claim to the Department of Energy Resources in the
25  amount of $370,500, and to allow an administrative expense

Page 6

1  claim, a Chapter 11 administrative expense claim to the
2  Department of Environmental Protection in the amount of
3  $104,500, for a total of $475,000.
4       The agreement provides that those will be
5  allowed Chapter 11 administrative expense claims, but no
6  payment will be made on them unless and until the debtor
7  files and confirms a plan of reorganization or liquidation
8  in this case.
9       The settlement agreement also provides for
10  mutual releases between the estate and the Commonwealth.
11  There is a couple of carve-outs that I think are mostly
12  statutory for the Commonwealth, that the debtor has no
13  issue with. We don't think we have any additional
14  exposure to the Commonwealth in connection with this case.
15       In the motion we walked through the Justice
16  Oaks factors, and explained to the Court why we believe,
17  the debtor believes that all of those factors are
18  satisfied.
19       I have not received any objections, either
20  formal or informal. Unless the Court has any questions of
21  me, I'd ask the Court to approve the settlement under
22  Bankruptcy Rule 9019.
23       THE COURT: Okay. Thank you very much,
24  Mr. Battista. I don't have any questions of you at this
25  time.

Page 7

1       But let me hear from others. First, I'll
2  hear from Ms. Bihrle.
3       Ms. Bihrle.
4       MS. BIHRLE: Nothing further from the
5  Commonwealth, your Honor.
6       THE COURT: Okay. Thank you.
7       Mr. Guso.
8       MR. GUSO: Thank you, your Honor.
9       BETAM, your Honor, has no objection and
10  supports the relief that's before the Court this
11  afternoon.
12       THE COURT: Okay. Very good.
13       Mr. Rodriguez.
14       MR. RODRIGUEZ: No objection, your Honor.
15       THE COURT: Okay. Mr. Reichman, do you care
16  to be heard on this issue?
17       MR. REICHMAN: No, your Honor. We're only
18  here for the second administrative claims bar matter.
19       THE COURT: Okay. Very good.
20       Are there any objections to the motion to
21  approve this settlement with the Commonwealth of
22  Massachusetts?
23       (No verbal response.)
24       THE COURT: Hearing no objections, I find
25  that the settlement satisfies the Justice Oaks II factors

Page 8

1  and should be approved. Therefore, I will grant the
2  motion. You may submit an order, Mr. Battista.
3       MR. BATTISTA: Yes, sir. Thank you, Judge.
4       THE COURT: Okay. Thank you.
5       MR. BATTISTA: If it pleases the Court, I'd
6  like to move on to the next matter in the order in which
7  they were filed, and that's Court Paper 735, which is the
8  debtors' motion to establish a second administrative
9  claims bar date.
10       THE COURT: So, go ahead.
11       MR. BATTISTA: Thank you, Judge.
12       As the Court knows, based on a prior motion
13  that the debtors filed, your Honor established a first
14  administrative claims bar date of February 9th, 2022. A
15  number of requests for administrative expense claims were
16  filed in connection with that deadline.
17       As you now approved the one that we had with
18  Massachusetts, we are in settlement discussions with the
19  State of Connecticut, we are in settlement discussions
20  with the City of New York, and we are, unfortunately at
21  this point in time, involved in some discovery with the
22  O'Briens, who also filed a motion for administrative
23  expense claims. We'll see where that leads us, but
24  hopefully it can get resolved.
25       Over the past several months we became aware

Page 9

1  after a lawsuit that Mr. Reichman, I guess on behalf of
2  his client, Mr. Paul Sapan, filed in California under the
3  TCPA Act. As we navigated through that lawsuit, it's
4  clear to us that of the eight -- as I understand it, the
5  18 alleged violations of the TCPA Act that are alleged in
6  that lawsuit, one of them postpetition, and as a result
7  may give rise to a potential administrative expense claim.
8       So we have filed this motion to establish a
9  further deadline for Mr. Sapan, and any, I guess, class
10  that is ultimately certified. I don't know if one has
11  been certified now or not, would come to this Court to
12  establish an administrative expense claim with respect to
13  postpetition conduct only.
14       At this point in time we're just asking the
15  Court to set that bar date. If the Court grants the
16  motion, we will then serve the order, and give parties
17  25 days to file an application for an administrative
18  expense claim, and ultimately deal with whatever is filed
19  at that point in time, but at this point in time we're
20  simply asking for the Court to enter an order, establish
21  the date, and then we'll address anything that gets filed
22  later.
23       If the Court has any questions, I'm pleased
24  to answer it, but that's our presentation, Judge.
25       THE COURT: Okay. So, I am concerned about

Page 10

1  how you're going to identify and provide notice to other
2  potential postpetition administrative claimants.
3       Obviously we had an initial bar date, you
4  presumably provided appropriate notice there, and this one
5  either didn't pop up or slipped through the cracks, and I
6  understand the nature of the business, and the number of
7  customers, but have you given some thought to whether some
8  type of constructive notice is appropriate here, or some
9  type of email notice, notice on the company's website,
10  some way of casting a wide net so that this doesn't happen
11  again, or are you confident that this motion and this
12  second bar date, if I grant this motion, should do it?
13       MR. BATTISTA: So, Judge, thank you for
14  that.
15       This is a litigation claim that popped up
16  postpetition to my knowledge. We -- Mr. Sapan was not a
17  creditor prebankruptcy. He was not a customer
18  prebankruptcy, to my knowledge. He was not on the
19  creditor matrix, and so we were not aware of him. That's
20  how that slipped through. We only became aware of him
21  based on the litigation that was filed.
22       In terms of our customers, as your Honor
23  knows, that for the customers that have been transitioned
24  to NRG, we have no issue, we have no expectation of any
25  administrative expense claim that would arise from them.

Page 11

1       For those customers in which your Honor has
2  approved the rejection or the termination of their
3  contracts, we've already established the administrative
4  expense bar dates for the termination of contracts, and so
5  I think we feel very comfortable that this will do it at
6  this point in time. Although I do reserve the right that
7  if we have -- if we can, over the next few days, if the
8  Court were to grant this motion, identify any additional
9  parties who started to do business with us, or potentially
10  could have claims against us after the February 9th bar
11  date, then we will add them.
12       There may be one, and that is a company
13  called Lebco (phonetic), which was a broker that we were
14  doing business with, that principally worked in
15  Connecticut, and as the Court knows, Connecticut did not
16  approve the transfer of the contracts to NRG.
17       It's possible that Lebco may assert a
18  postpetition claim. In fact, I think they will assert a
19  postpetition claim, and so that's the only other party
20  that I'm aware of that, from and after the February 9th
21  bar date, could give rise to a potential Chapter 11
22  administrative expense claim. So at this point we'd only
23  have two parties that we would be providing notice to.
24       Of course, if we come up with any others in
25  the next couple of days, we'll just put them on the

Page 12

1  service list, and then they'll be subject to the order.
2       We've not thought about constructive notice,
3  Judge. I'm trying to save money in terms of publication,
4  because that would be fairly expensive, and I do feel
5  confident that but for these couple, we've captured the
6  universe.
7       THE COURT: Was the Sapan case filed in
8  federal or state court?
9       MR. BATTISTA: I would have to defer to
10  Mr. Reichman on that. I think it was federal court, but
11  I'll defer to him.
12       THE COURT: Mr. Reichman.
13       MR. REICHMAN: The U.S. District Court for
14  the Central District of California, your Honor.
15       THE COURT: Okay. Mr. Battista, is it
16  possible to run a nationwide PACER search for the debtors'
17  name and see if anything pops up that way? I'm just
18  trying to think of ways to capture anything that is just
19  not in the books and records, and given the nature of the
20  debtors' business, that maybe if you can do that, you
21  might identify more, I don't know.
22       MR. BATTISTA: So, there is, Judge, we can
23  certainly do that in the federal system.
24       THE COURT: Right.
25       MR. BATTISTA: There is a way to search the

3 (Pages 9 to 12)

Page 13

1  federal databases.
2      I actually was actually dealing with this
3  just a couple of days ago for purposes of a seminar.  So,
4  yes, I do understand that we can actually -- Lexis, or
5  Nexus, or Westlaw does have a system that allows you to
6  search even the state databases, and so we can certainly
7  do that, and if we come up with any that we're not aware
8  of, we will add them to the list.  That's a great
9  suggestion.
10      THE COURT:  Okay.  I think that's certainly
11  a cost-effective way to try and put some belt and
12  suspenders on this.  Okay.
13      MR. BATTISTA:  Yes, sir.
14      THE COURT:  All right.  Let me hear from
15  Mr. Reichman.  Mr. Reichman.
16      MR. REICHMAN:  Your Honor, we actually
17  strenuously object to this motion.  As a preliminary
18  matter, we received no notice, and the motion was never
19  served on us.  We only learned about this proceeding two
20  days ago.  We haven't had an opportunity to file a written
21  opposition, or objections, or anything else.  That's just
22  a preliminary matter.
23      As we tried to getting to the subject
24  matter, such as we can with two-days' notice, Mr. Battista
25  is factually incorrect about a primary issue in this case.

Page 14

1  This case deals entirely with postpetition conduct.  There
2  is no claim.  There were some prepetition calls, but there
3  is no claim in this case for it.  The class action
4  complaint is abundantly clear that it only concerns the
5  postpetition violations of the TCPA.  I mean, class
6  definition is dated one day after the bankruptcy filing
7  date.  So it could not be more clear that this is
8  postpetition conduct only.
9      And as postpetition conduct, we have
10  Title 1(a), which I don't claim to be a bankruptcy
11  attorney.  I'm working the best I can on two days here,
12  and not a lot of familiarity with the legal area, it's my
13  understanding that 501(a) is a permissive, not mandatory
14  statute, and this claim, we feel, is not an administrative
15  claim.  This is not a reimbursement for any business done
16  with the company.  This is not a contribution situation.
17  This is a civil penalty situation under the TCPA.
18  Congress sets the TCPA penalty.
19      So, you know, that's kind of the preliminary
20  legal issues we see, and then there is an issue of
21  pragmatic -- you know, pragmatic organization or
22  feasibility.  This is really an attempt to flip what
23  should have been a motion to remove in adversarial
24  proceeding into a claims objection process, and a pretty,
25  you know, streamlined one at that.

Page 15

1      This is, you know, an actively litigated
2  case.  The size of the class, the amount of the claim
3  isn't even known at this point, without the discovery.
4  The discovery is necessary to make an estimate of the
5  claim amount, and we can't get that discovery without an
6  adversarial proceeding, be it in the Central District of
7  California or in the Bankruptcy Court.  Obviously we'd
8  prefer the Central District of California.  Frankly, they
9  have a lot of experience with civil class actions.
10      Plaintiff has been moving this case along
11  expeditiously.  It's been opposed by defendant since
12  January of this year.  This is the first time that this
13  motion has appeared in the Bankruptcy Court that we're
14  aware of, for an attempt to move this case into the
15  bankruptcy, and in the meantime, all of the pleadings
16  phase requirements have been done, all the motion work has
17  been done.  We are in active discovery.
18      As a matter of fact, we had written
19  discovery and a deposition request set for July 20th.  A
20  couple of days before -- yeah, a few days before
21  Mr. Zadebski (phonetic), who works for Liberty Power,
22  asked us for an extension.  He asked us for that extension
23  two days after this motion, this motion here was filed in
24  this Court, did not serve us with this motion, did not
25  make us aware of the gravamen of this motion, and we gave

Page 16

1  him a courtesy extension of two weeks, and now we're, you
2  know, somewhat blindsided with, you know, with hearing
3  about this two days before the hearing.
4      All of the attempts to delay the process in
5  the civil litigation have been on defendant's part.
6  Plaintiff has never asked for a continuance of any
7  deadline at all, and we've met every deadline of the
8  Court, you know, and the local rules in the Central
9  District of California.
10      Also as to feasibility, there is a real
11  question of due process here as to the unnamed class
12  members.  We have not certified the case yet.  We're in
13  the certification discovery.  Notice has not been provided
14  to the unnamed class members.  So, even with an estimate,
15  without the, you know, certification and the notice, you
16  know, how do I distribute that money to somebody?
17      At this point we believe given the advanced
18  nature of the case, that we're in discovery, that we are,
19  you know, near three to six months away from class
20  certification motion, the case is better served to just be
21  left in the Central District at least during the notice
22  phase, and that would serve the due process rights of the
23  unnamed class members who, again, have a right to have
24  their case litigated, have a right to have a notice -- you
25  know, a certification to say you're made and notice

4 (Pages 13 to 16)

Page 17

1   provided, and bring them properly into, you know, the
2   class for recovery here.
3            Thank you very much, your Honor.
4            THE COURT: Okay. Thank you, Mr. Reichman.
5   Mr. Guso.
6            MR. GUSO: Yes, sir. Thank you, your Honor.
7   Jordi Guso on behalf of BETAM, your Honor.
8            The relief the debtors seek this afternoon
9   is actually quite tailored and narrow. It is to set a
10  second administrative expense claim bar date, which in the
11  circumstances, from my perspective, your Honor, is
12  reasonable and appropriate.
13           If there is a claim that's filed, the Court
14  can then decide whether, on a request of a party in
15  interest it should abstain, or lift the automatic stay, or
16  grant the claimant some other relief, but in terms of the
17  relief that's before you today, your Honor, we support the
18  debtors, and respectfully request that the Court enter an
19  order granting the motion that's before you.
20           THE COURT: Thank you.
21  Mr. Rodriguez.
22           MR. RODRIGUEZ: Your Honor, we've got no
23  objection to the motion. We're just simply seeking an
24  extension of time. Whether this applies to a lawsuit in
25  California is a separate issue. The debtor is just simply

Page 18

1   seeking an extension. I don't think it has any effect on
2   anybody. Any other issues can be dealt with later.
3            THE COURT: Okay. I'll hear from
4   Mr. Battista in a second.
5            But, Mr. Reichman, do you understand we have
6   a Chapter 11 case here, the debtor is proceeding along,
7   and right now has an exclusive period to file a plan? I
8   forget when that runs out, but it runs out pretty soon,
9   and they may seek a further extension of that.
10           The debtors are also proceeding forward with
11  use of their lender's cash collateral and DIP financing,
12  and we'll hear more about that. They've liquidated nearly
13  all of their assets, and the endgame of a Chapter 11 case
14  is a Chapter 11 plan. One of the requirements of a
15  Chapter 11 plan is all administrative expense claims be
16  paid in full on the effective date of a plan. The only
17  way a debtor can propose a feasible plan is to know what
18  the universe of administrative expense claims are.
19           I don't see how you, or any class action
20  plaintiff are prejudiced in any way by having 25 days
21  after the date of entry of this order, if I grant the
22  motion, from filing an administrative expense claim, and
23  so while the procedure doesn't line up exactly the same as
24  it does with a prepetition claim, that is essentially how
25  I have been treating the administrative expense claims in

Page 19

1   this case, putting aside Massachusetts, which we just
2   dealt with, which is, I set a bar date, someone files a
3   claim, and then the debtor has to deal with it.
4            Now, if you file a $100 million
5   administrative expense claim, well, I suspect the debtors
6   don't have $100 million to pay that claim on the effective
7   date of a plan, so I suspect Mr. Battista would pick up
8   the phone and start discussing potential resolution with
9   you.
10           And either can you get it resolved, or
11  you'll come to me to resolve it, or you'll propose some
12  other way to resolve it, but all this motion does is ask
13  me to set a deadline for your clients, and any other
14  parties that didn't get notice of the last deadline, to
15  say, hey, this is our claim, and put it in so that they
16  know what it is so that they can deal with it in helping
17  formulate a plan. That's all the relief they are seeking
18  here today.
19           So, I don't understand any due process
20  concerns, even any short notice concerns. If you want to
21  share in the distribution in this estate on the effective
22  date of a plan, you're going to have a deadline to file a
23  claim that says this is what we are asserting for
24  postpetition conduct, and then the debtors and you will
25  deal with it, okay?

Page 20

1            Go ahead, Mr. Reichman, and then I'll hear
2   last from Mr. Battista.
3            MR. REICHMAN: Your Honor, with all due
4   respect, that is not all it does. The other thing it's
5   going to do is create an automatic stay as to the civil
6   case, where we have discovery pending. That discovery is
7   going to tell us the -- you know, or at least give us a
8   good number to estimate the size of the class, the number
9   of violations, which is what allows us to figure out what
10  our claim is, you know, and tether it to something in
11  reality other than just guesswork in our, as your Honor
12  put it, a $100 million guess on my part.
13           So, at the very least, you know, if the
14  Court is inclined to grant the second amended claims bar
15  date, we would ask that the automatic stay not apply to
16  this particular case, and only this particular case in the
17  Central District of California so that the discovery that
18  should have been answered even before this hearing today,
19  is actually answered. The current deadline is August 3rd,
20  so it would be a week away, and we can at least have the
21  ability to -- you know, with that discovery make a
22  reasonable claim before this Court and not something
23  that's pure guesswork.
24           THE COURT: Okay. Well, a few things, no
25  one has brought before me today any issues on the

5 (Pages 17 to 20)

Page 21

1  automatic stay, whether and to what extent it may apply to
2  the action you filed in the federal court in California,
3  so that's not before me today.
4        I will tell you that if the administrative
5  expense claim is litigated here, under Rule 9014 of the
6  Bankruptcy Rules, that becomes a contested matter, and
7  that brings in the discovery rules.  So, there will be a
8  mechanism in this Court to accomplish any discovery, and I
9  think you heard Mr. Battista even comment about the
10  O'Brien claim, and some discovery that they're doing now
11  on that.
12        So, your client would not be prejudiced in
13  any way by me granting the motion and setting the
14  administrative claims bar date, but let me hear from, let
15  me hear from Mr. Battista.
16        MR. BATTISTA:  Judge, thank you.
17        I think all of your comments are well taken.
18  First, we've not asserted a violation of the automatic
19  stay.  I understood -- and the debtor is represented by
20  Eckert Seamans in this lawsuit.  I understood that
21  initially there were prepetition violations alleged, but
22  are not being pursued.  So that's why you don't see an
23  automatic stay motion before you.
24        I understand that Mr. Sapan alleges that he
25  only received one postpetition text or call from --

Page 22

1  allegedly from the debtor.  I don't know if there are
2  others.  I don't even know who the class represents, and
3  who they may -- how many they may assert, but at least as
4  it relates to Mr. Sapan, that's what I understand the
5  complaint says, and that's why we've addressed this to
6  him.
7        If Mr. Sapan wants to file an administrative
8  expense claim motion here, we'll deal with it, as the
9  Court has observed, including discovery under 9014, but
10  what we're trying not to do is litigate this matter in two
11  different courts.
12        So, if Mr. Reichman wants to litigate in the
13  Central District of California, let's assume he litigates
14  to a $100 million claim, I'm going to use your number.
15  Well, that's, to my way of thinking, irrelevant as it
16  relates to this bankruptcy case, because he has to come
17  before you to have that claim allowed as a Chapter 11
18  administrative expense claim.
19        He may not appreciate this, but I'm trying
20  to do him a favor, to not waste his time in California
21  getting a judgment that he can't do anything with in this
22  bankruptcy case, because he has to come to you at some
23  point in time and prove his entitlement to an
24  administrative expense claim, even if he were to get a
25  judgment in California.

Page 23

1        So we're trying to shortcut that process as
2  best we can, and as Mr. Guso observed, and I opened, we're
3  simply seeking to establish a bar date.  Mr. Reichman can
4  then do what he wants to, that he finds is appropriate for
5  his client, and then we can take it from there.
6        Thank you, Judge.
7        THE COURT:  All right.  Thank you.
8        Okay.  Before me is the motion to establish
9  a second administrative claims bar date for certain
10  putative creditors to file motion seeking allowance and/or
11  payment of administrative expense claims, and to designate
12  the form and manner of notice of second administrative
13  claims bar date of our debtor, Liberty Power Holdings, at
14  ECF Number 735.
15        I have heard the argument of counsel for the
16  debtor in support of the motion, as well as counsel for
17  BETAM, who supports the motion, and the U.S. Trustee, as
18  well as the argument of counsel, Christopher Reichman, who
19  represents the putative class action plaintiffs known as
20  the Sapan class action plaintiffs.
21        Based upon the motion, the arguments of
22  counsel, and the record in this case, I'm going to
23  overrule Mr. Reichman's objection and grant the motion.
24  Mr. Battista, you may submit an order.
25        MR. BATTISTA:  Yes, sir.  Thank you, Judge.

Page 24

1  We actually had one attached to the motion, but we'll
2  upload it this afternoon.
3        THE COURT:  Okay.
4        MR. BATTISTA:  Judge, that brings us to the
5  last --
6        THE COURT:  Let me just --
7        MR. BATTISTA:  I'm sorry.
8        THE COURT:  Let me just say one thing.  So,
9  Mr. Reichman, just to make things clear so you understand
10  how it works, and I noted this to the O'Briens, and I
11  mentioned this in my colloquy with you, okay, but the way
12  it works here with administrative expense claims,
13  particularly for this case, is after I enter this order,
14  you and your client will have a 25-day deadline to file an
15  administrative expense claim.
16        I don't intend to take any action on any
17  administrative expense claims unless and until the debtor
18  or some other interested party asks me to, okay?  So it
19  will be treated more like a prepetition proof of claim.
20  In other words, you file it, you assert this is what we
21  are asserting, and then I'm going to let the debtor decide
22  when, where, and how they deal with those administrative
23  expense claims, because once you file it, one way or the
24  other, they need to deal with it, otherwise they can't
25  confirm a plan, okay?  But I'm not going to -- don't

6 (Pages 21 to 24)

Page 25

1  expect to file this, and then start litigating it here
2  unless and until the debtors are ready.
3        Okay.  This is a bankruptcy case.  The
4  debtor has limited resources, and they have other issues
5  to deal with.  Your case is not their only one.  There is
6  a collective proceeding to resolve all of their disputes,
7  okay?  So I just want to set your expectations, okay, sir?
8        MR. REICHMAN:  Thank you, your Honor.
9        If I may, though, the Court had -- to be
10 clear in what you earlier said, the Court is making no
11 opinion at this time as to the effectiveness of the
12 automatic stay, correct?
13        THE COURT:  That is not before me today.
14 The only thing before me today is the motion to set the
15 administrative expense claims' bar date, or the second bar
16 date, okay?
17        MR. REICHMAN:  Thank you very much,
18 your Honor.
19        THE COURT:  All right.  Thank you,
20 Mr. Reichman.
21        Okay.  Mr. Battista, on to the financing,
22 and before you --
23        MR. BATTISTA:  Yes, sir.
24        THE COURT:  And before you get into this,
25 so, Mr. Battista, I -- as you know, I very commonly set

Page 26

1  things on an expedited basis.  I try and accommodate
2  emergencies wherever I can, particularly in Chapter 11
3  cases.
4        You know, this was filed two days ago.  I
5  set it for today because we had a hearing.  I mean, this
6  is an issue you all should have seen coming, and I know
7  financing, you know, gets negotiated, and these things
8  sometimes come down to the wire, and I do think in this
9  case all interested parties are here and have been here,
10 but something like this, I would hope we could get a
11 little more advance notice in the future, particularly for
12 a continued or further extension.  I understand on the
13 first day of the case and emergencies.  So that was just
14 my comment before you get into your argument, but it's
15 here, I noticed it, I'll hear it.  I'll hear if anybody
16 has concerns about the short notice, and then we'll take
17 it up.
18        MR. BATTISTA:  Yes, sir.  Thank you, Judge,
19 and I am very familiar with this issue, and Mr. Guso and I
20 tried really hard to get this wrapped up long before
21 filing it on Monday.  There were a lot of moving parts.
22 We had to deal with the transition of customers from
23 ComEd, that are still ongoing, the dropping of customers
24 in Texas, a lot of things impacted the budget that we
25 could not finalize, as well as the third amendment that

Page 27

1  was attached to it.
2        We did not have an opportunity to have a
3  board meeting after getting an agreement with BETAM until
4  Monday, and so it was -- we did our best, and I apologize,
5  your Honor has been very accommodating from the beginning
6  of the case on expedited motions.
7        We didn't want to let the DIP loan mature
8  obviously on the 31st, but that's not your fault, it's my
9  fault.  We were trying to get this done sooner so you'd
10 have more notice, and I appreciate that.  Let me just tell
11 you that we were very mindful of that date, and really
12 tried to get it done sooner, but we could not finalize the
13 budget until a number of things fell in line based on
14 what's been happening over the past month in this case.
15 So, again, I apologize to the Court for that.
16        I do think, though, at the end of the day
17 this is mainly an issue between the debtor and BETAM, and
18 obviously BETAM is on the phone, and the fact that the
19 motion has been filed, I represent to the Court that BETAM
20 finds this acceptable, but let me go through it and sort
21 of outline to the Court as to where we are.
22        So, the Court knows that we had -- we have a
23 coming maturity of the DIP loan.  We did have, in the
24 existing order, two options to extend that maturity
25 through the end of August, and through the end of

Page 28

1  September, but because of a shift in the case where we are
2  transitioning from BETAM providing us any real financing
3  or credit support, which they've been doing throughout
4  this case, because we need them to be able to purchase
5  power and deliver it to our customers.  Now that we have
6  been working to transition all those customers out of the
7  debtor, including most recently Texas and Illinois, and by
8  the way in Illinois we're down to only 56 customers left
9  to be transitioned, I think they have taken your order
10 very seriously, and they'll have it done by the 29th, and
11 I'm very pleased about that, but it's a meaningful issue
12 because that means that the debtor will no longer be
13 serving power or load any to customers in the month of
14 August.  That has a reciprocal effect on whether or not we
15 have to go to BETAM to provide financing to acquire that
16 power.  If the Court has been watching the news, you can
17 see the heat wave throughout the world, including in
18 Texas.  I can tell you that the cost of power is spiking
19 again in Texas, several thousand dollars per megawatt
20 hour.  It's not as bad as Winter Storm Uri, but it's
21 pretty high, and what wraps into all of that is the debtor
22 and BETAM acquire hedges against purchasing power.
23        So the complexity of that, trying to figure
24 out when we can let the hedges go, when we'd have to
25 acquire hedges, all transition into whether or not we're

7 (Pages 25 to 28)

Page 29

1  serving customers in August. So, that made the budgeting
2  very complex in terms of what's going to happen.
3          But right now we have every expectation that
4  we will have no customers come August 1st to serve load.
5  The motion now provides for effectively a wind down of the
6  estate. There is $100,000 of postpetition financing
7  available, that was just in case there were a couple of
8  stragglers that did not get transitioned by July 31st, but
9  we expect that's not going to be the case, and so we don't
10  expect to be borrowing, or having BETAM provide any credit
11  support to us under this facility going forward.
12          That leads us to a wind down and a
13  commencement of the repayment, or a continuation of the
14  repayment of the existing DIP loan and prebankruptcy loan,
15  and that leads to the budget that we attached.
16          As the Court observed, it's only a one-month
17  budget. I think BETAM wants to take this one month at a
18  time to see where we end up. This budget would go through
19  the end of August, we're asking for one-month extension.
20  There is a built-in option to go an additional month,
21  through the end of September, subject, of course, to
22  BETAM's consent to do so, and the budget is, of course, a
23  one-month budget.
24          It essentially provides for the collection,
25  billing and collection of receivables from June and July,

Page 30

1  principally July. It provides for the continued
2  reconciliation with NRG of the purchase price for the
3  contracts in the east. It provides for the collection of
4  some deposits, and a particular one, a very big one, just
5  over $1.4 million, from the utility in New Jersey, that we
6  understand is prepared to return that deposit to us.
7  We're trying to work that, they may need a court order, I
8  may be back to the Court on an agreed motion to get an
9  order to compel turnover, but I expect it to be agreed.
10          If that money were to come in, as we
11  projected, as the budget provides, we would then make a
12  $1.5 million paydown to BETAM in the third week of August.
13  We also had in here a built-in sweep of any excess cash
14  above 371,000, which is what we expect to have at the end
15  of the month.
16          Your Honor will see, and I apologize again,
17  with the speed of getting this done, we attached a prior
18  draft of the third amendment to the motion that was filed,
19  and this morning we filed a corrected and updated version
20  under a notice of filing. The only meaningful difference
21  between those two documents is in Section 8, there is a
22  reference to, in the one that's on file, a reference to a
23  weekly sweep of cash out of the debtors' account to BETAM.
24  As we worked through this over the weekend, Mr. Guso and
25  I, even though it was his wedding anniversary, and I

Page 31

1  appreciate him taking the time to do that --
2          (Laughter.)
3          MR. BATTISTA: -- we realized that that
4  sweep did not make any sense, and so we modified that
5  document to provide for essentially a sweep at the end of
6  the month.
7          So at the end of August, or actually
8  September 2nd, any cash we have above $371,000 will be
9  swept to BETAM to pay down the obligations.
10          Lastly, the third amendment requires that we
11  pay to BETAM, immediately upon the entry of this order, if
12  the Court approves it, an amount equal to $500,000, out of
13  the professional fee reserve that's sitting in my firm's
14  trust account, that's been funded throughout this case on
15  a weekly basis. We've done a reconciliation of that
16  account. We shared it with BETAM. We have come to an
17  agreement that we would disburse $500,000 of that money
18  back to BETAM. So under this proposed budget, BETAM would
19  get, we expect, just about two -- no, they would get
20  $2 million, plus any excess cash at the end of the month
21  over $371,000.
22          Otherwise, Judge, the relief here is to
23  continue using cash collateral to the extent we need a
24  little bit of financing, the $100,000 number is in there,
25  and we're going to go a month, and we're going to likely

Page 32

1  be back to the Court either with an agreed extension under
2  the same terms and a new budget, or something else, and
3  we'll see what that looks like as he heads down the path.
4          In the meantime, in addition to the debtors
5  continuing to wind down the estate and everything I just
6  told you, we're going to be continuing our investigation
7  in the notice of action. We have a couple of subpoenas
8  out to third parties that are going to be returning
9  documents to us shortly, and I am scheduled to take a
10  deposition of the lead lawyer from Mintz Levin, who
11  represented the debtor prebankruptcy -- actually
12  represented the debtor and Liberty Power Corp., and you
13  can figure out where that's going, on August 4th, and
14  that's going to be a continued investigation.
15          And ultimately we will, during the month of
16  August, bring all of that to the board, bring it all to
17  BETAM, and make some decisions as to what to do in respect
18  of prosecuting litigation claims. All of that would be
19  done in August, which of course will lead us to where
20  BETAM and the debtor will go come the end of August.
21          So that's a pretty detailed description, but
22  I wanted the Court to get a sense of what's been going on,
23  especially given the short notice that we gave you in
24  terms of this motion.
25          So, unless you have any questions, Judge,

8 (Pages 29 to 32)

Page 33

1  I'd ask the Court to approve this extension for one
2  additional month under the terms laid out in the motion,
3  and in the order we attached the budget and, of course,
4  the updated third amendment filed this morning.
5          THE COURT: Where does exclusivity stand?
6          MR. BATTISTA: Judge, I believe exclusivity
7  expires in mid-August. I'm going to look to Ms. Guitian,
8  but I think it's August 14th, if memory serves me
9  correctly, right around then, and of course the issue we
10  have is we're going to be up against our 18-month deadline
11  in October, and so if the Court -- if we were to seek
12  another extension, and the Court were to grant it, it
13  would only go through October.
14          At this point in time, Judge, given the
15  administrative expenses that have been asserted and need
16  to be dealt with, I frankly don't see any other party
17  coming in to file a plan, unless they want to pay a bunch
18  of money on administrative claims. So I think it's really
19  the debtor but, of course, we'll make a decision on the
20  extension, but even if we do, we can't go any further then
21  mid-October.
22          THE COURT: Okay. All right. Thank you
23  very much.
24          Mr. Guso.
25          MR. GUSO: Yes, sir.

Page 34

1          Your Honor, Mr. Battista's representations
2  to the Court are entirely accurate, including in
3  connection with the circumstances that led to the
4  regrettably late filing on Monday. There was a
5  significant amount of negotiation and discussion regarding
6  the terms of the budget and the third amendment. The fact
7  that we were a bit rushed towards the end, I think is
8  evidenced by the fact that a prior draft of the third
9  amendment was attached to the motion, your Honor.
10          The third -- the form of third amendment
11  that the debtors filed earlier today is accurate,
12  your Honor, and is acceptable to BETAM.
13          And, lastly, your Honor I join Mr. Battista
14  in apologizing to the Court for the late hour filing of
15  these papers. In the circumstances, it frankly could not
16  be avoided, and I also thank the Court for accommodating
17  the parties, not only in this case, but in other cases
18  that are before you. To your Honor's point earlier in
19  your remarks, I think the Court has endeavored to
20  accommodate parties and emergencies, particularly in
21  Chapter 11 cases where time is a big sensitivity.
22          So I apologize again, your Honor, and I
23  thank you for considering this today.
24          THE COURT: All right. Thank you, Mr. Guso.
25          Mr. Rodriguez.

Page 35

1          MR. RODRIGUEZ: Your Honor, we have no
2  objection to the relief.
3          THE COURT: Okay. Would anybody else like
4  to be heard with respect to this motion?
5          (No verbal response.)
6          THE COURT: Are there any objections to the
7  motion?
8          (No verbal response.)
9          THE COURT: Hearing no objections the motion
10  is granted. You may submit an order, Mr. Battista, and I
11  think you attached a proposed form of order, and it looked
12  -- I reviewed it, and it all looked fine to me. So --
13          MR. BATTISTA: Thank you, Judge.
14          THE COURT: -- that form of order is fine.
15  So you can go ahead and submit it, okay?
16          MR. BATTISTA: We will upload all three
17  orders from today, Judge. Thank you.
18          THE COURT: Very good.
19          Anything else we can do today then?
20          MR. BATTISTA: No, sir, again, other than to
21  thank you and to apologize.
22          THE COURT: No, no worries, and my time is
23  fine, I can make time to read stuff. I was, you know,
24  really concerned about other parties in interest, but
25  again, given where this case stands, I think it's a pretty

Page 36

1  small universe of active parties, but I also understand
2  that sometimes these things do get negotiated down to the
3  wire, I'm sensitive to that, I'm sensitive to the board
4  approval process and the other dynamics. So, not a
5  problem.
6          Okay, then that will conclude the hearing
7  today in Liberty. Court will be in recess. Thank you all
8  very much.
9          MR. BATTISTA: Thank you, your Honor. Have
10  a great day.
11          THE COURT: Thank you.
12          MS. GAYO-GUITIAN: Thank you, your Honor.
13
14
15
16          (Thereupon, the hearing was concluded.)
17
18
19
20
21
22
23
24
25

9 (Pages 33 to 36)

Page 37

```
 1
 2
 3                   CERTIFICATION
 4
 5   STATE OF FLORIDA      :
 6   COUNTY OF MIAMI-DADE  :
 7
 8          I, Cheryl L. Jenkins, RPR, RMR, Shorthand
 9   Reporter and Notary Public in and for the State of Florida
10   at Large, do hereby certify that the foregoing proceedings
11   were transcribed by me from a digital recording held on
12   the date and from the place as stated in the caption
13   hereto on Page 1 to the best of my ability.
14          WITNESS my hand this 3rd day of
15   August, 2022.
16
17
18       _____
19          CHERYL L. JENKINS, RPR, RMR
20          Court Reporter and Notary Public
            in and for the State of Florida at Large
21             Commission #HH 170910
                December 27, 2025
22
23
24
25
```

10 (Page 37)

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

**EXHIBIT**

**B**

**Battista, Paul**

| | |
|---|---|
| **From:** | Battista, Paul |
| **Sent:** | Friday, August 5, 2022 3:00 PM |
| **To:** | chrisr@prato-reichman.com |
| **Subject:** | Liberty Power |
| **Attachments:** | Second Admin Claim Bar Date Order. 7.29.22(8675520.1).pdf |

Good afternoon Chris. Thank you for your time today. Per our discussion, please find attached the Second Admin Claims Bar Date Order entered by the Court on 7/29/22.

Thanx
Paul

Paul J. Battista, Esq. | Shareholder
Main 305.349.2300 | Direct 305.372.2457 | Fax 305.428.8801 | Cell
305.812.8030
pbattista@gjb.law | gjb.law | vCard
100 SE 2nd Street, Suite 4400 | Miami, Florida 33131
Miami | Ft. Lauderdale | Tampa



**EXHIBIT**
**C**

Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Violation(s) of Telephone Consumer Protection Act of 1991** |
| LIBERTY POWER CORP, L.L.C., LIBERTY POWER SUPER HOLDINGS, LLC, LIBERTY POWER HOLDINGS, LLC, | |
| Defendants. | **Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs

- 1 -

Complaint

and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendants, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.     Plaintiff is, and at all times herein mentioned was, a resident of the County of Los Angeles, but has recently moved to the County of Orange, State of California.

2.     Defendant LIBERTY POWER CORP, L.L.C. is, and at all times herein mentioned was, a Delaware Limited Liability Company, located in Florida doing business in the County of Orange, State of California.

3.     Defendant LIBERTY POWER SUPER HOLDINGS, LLC is, and at all times herein mentioned was, a Delaware Limited Liability Company, located in Florida doing business in the County of Orange, State of California.

4.     Defendant LIBERTY POWER HOLDINGS, LLC is, and at all times herein mentioned was, a Delaware Limited Liability Company, located in Florida doing business in the County of Orange, State of California.

5.     Plaintiff is informed and believes and alleges on that information and belief that Defendant LIBERTY POWER CORP, L.L.C is ultimately the parent corporation of Defendant LIBERTY POWER SUPER HOLDINGS, LLC and Defendant LIBERTY POWER HOLDINGS, LLC (all collectively referred to herein as "liberty Power" or "Defendants").

6.     This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a

common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.     At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

8.     At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION AND CLASS DEFINITION

9.     Plaintiffs bring this class action against Defendants for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 22, 2021 to the present, including up to and through trial.*

10.     Defendants, in their combined business, are an electric power reseller whose primary business was the solicitation of retail electricity customers.

11.     Defendants did this in pertinent part by telemarketing, either directly or by use of agent call centers working on their behalf.

12.     Defendants' telemarketing did not respect the National Do Not Call Registry and illegally and intentionally made sales calls to residential numbers on the Do Not Call Registry including the named Plaintiff's and many others.

Complaint

## **FACTUAL SUMMARY FOR NAMED PLAINTFF**

13.　Defendants made twenty-eight (28) live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their electricity reseller services between October 5, 2020 and June 15, 2021.

14.　Mr. Sapan made a log of all the calls he received from Defendants with the date and time sent and the Caller ID information in a spreadsheet, which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

15.　Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

16.　Mr. Sapan never gave any of the Defendants express written permission to call him, nor does he have an established business relationship nor personal relationship with any Defendant.

17.　In fact, Mr. Sapan repeatedly told Defendants' representatives during the calls he was not interested in their services yet they persisted in calling him.

18.　And Defendants were very persistent, illegally calling him as many as seven times in one day.

19.　In each call Mr. Sapan answered Defendants' boiler room callers either identified themselves as being with Liberty Power or used the same Caller ID Number as another call in which they identified themselves.

20.　While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

## **PLAINTIFF CLASS IS ONLY FOR CALLS MADE AFTER THE FILING OF BANKRUPTCY AT THIS TIME**

Complaint

21.     On April 20, 2021 DEFENDANT LIBERTY POWER CORP, L.L.C. appears to have filed for Chapter 11 reorganization in the Southern District of Florida Bankruptcy Court even though it is a Delaware company.  (S.D. Fla. Bankr. Case No. 21-13797-PDR).  None of the other subsidiary defendant entities have provided bankruptcy filing notice to Plaintiff to date.

22.     However, as alleged above, Defendants' illegal calling campaign continued postpetition, with at least one of their calls coming more than a month after the filing on June 15, 2021.

23.     The Supreme Court recently reiterated that each claim is separate and distinct for jurisdictional and other purposes.  *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021).

24.     The current class is for post-petition calls only.

25.     Plaintiff does foresee some possibility that all the calls may be found to be nondischargeable as willful and malicious injuries.  11 U.S.C 523(a)(6), and amendment could be later requested to include all the calls, but that is not pleaded at this time.

## LIABILITY OF ALL DEFENDANTS

26.     Plaintiff alleges on information and belief that LIBERTY POWER CORP, L.L.C., is the ultimate parent corporation of LIBERTY POWER SUPER HOLDINGS, LLC and LIBERTY POWER HOLDINGS, LLC.

27.     Plaintiff alleges on information and belief that LIBERTY POWER CORP, L.L.C. provides "management and operating services" to LIBERTY POWER SUPER HOLDINGS, LLC and LIBERTY POWER HOLDINGS, LLC. And that the primary purpose of the subsidiaries is to be the purchasers of the electricity and limit LIBERTY POWER CORP, L.L.C. liability exposure to those wholesalers.

Complaint

28.     Plaintiff alleges on information and belief that LIBERTY POWER CORP, L.L.C., directs all actions of LIBERTY POWER SUPER HOLDINGS, LLC and LIBERTY POWER HOLDINGS, LLC, including those pertinent to this Complaint.

29.     Plaintiff alleges on information and belief that the reseller electricity being telemarketed is a combined product/service of the electrical power of the subsidiar(ies) and the management and operating services of the parent.

## ACTUAL HARM & WILFUL AND INTENTIONAL CONDUCT

30.     Plaintiff pleads on information and belief that for all calls he did not answer, Defendants called him in order to pitch their mortgage refinancing consultation services.

31.     Plaintiff alleges on information and belief that Defendants also transmitted the other calls, which went unanswered, in order to pitch their mortgage refinancing consultation services.

32.     Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

33.     During at least one of the unanswered calls at issue Mr. Sapan wanted to make an outgoing call at the same time and was not able to do so, being involuntarily disposed of the use of his phone by Defendants' illegal calls.

34.     Defendants made the calls described above intentionally, in the sense that Defendants intended to call each number they called in pitching their services regardless of whether it was on the National Do Not Call Registry and that the call was made knowing it would invade the victim's privacy.

Complaint

35.     Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

36.     Defendants have been caught before for using unscrupulous and illegal telemarketing.  *See*, Bill Heltzel, "*Liberty Power Agrees To Refund Customers For Unscrupulous Tactics*", Westchester & Fairfield County Business Journals, April 12, 2018 (https://westfaironline.com/101417/liberty-power-agrees-to-refund-customers-for-unscrupulous-tactics/).

37.     Defendants have been sued recently for other TCPA violations.  See, e.g., *Katz v. Liberty Power Corp, LLC* (D. Mass. Case No. 1:18-cv-10506-ADB).

38.     Mr. Sapan sent Defendants a formal demand letter on February 1, 2021, which their counsels responded to, and Defendants still kept making illegal calls to Mr. Sapan thereafter including up through June 15, 2021.

## CLASS ACTION ALLEGATIONS

39.     **Description of the Class**:  Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 22, 2021 to the present, including up to and through trial.

Complaint

40.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

41.     Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

42.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendants, Plaintiffs believe that the total number of Class members is at least in the thousands and members and the members are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendants' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

43.     **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.     Whether Defendants transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b.     Whether Defendants transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

Complaint

c.      Whether the transmission of these calls was done willfully or knowingly by Defendants.

44.      **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since Defendants' have repeatedly called the Class to sell their products and/or services.

45.      **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with experience in handling complex litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

46.      **Superiority of a Class Action**:  Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

Complaint

47.     Adjudication of individual class member's claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

48.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

49.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

50.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

51.     At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

52.     Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full

Complaint

discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

53. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

- 11 -

Complaint

1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);

2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3. For compensatory damages according to proof;

4. For punitive damages;

On the THIRD CAUSE OF ACTION:

5. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

6. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

7. For costs of suit herein incurred; and

8. For such further relief as the Court deems proper.

DATED: August 13, 2021         **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN

EXHIBIT

**D**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
Email: Jmprato@gmail.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LIBERTY POWER CORP, L.L.C., LIBERTY POWER SUPER HOLDINGS, LLC, LIBERTY POWER HOLDINGS, LLC, <br><br> Defendants. | Case No.: 8:21-cv-01749-MEMF-KES <br><br> [Discovery Document: Referred to Magistrate Judge Karen E. Scott] <br><br> **NOTICE OF MOTION AND MOTION FOR JOINT DISCOVERY DISPUTE RESOLUTION** <br><br> Hon. Judge Karen E. Scott <br> Hearing Date: September 27, 2022 <br> Hearing Time: 10:00 AM |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that in the United States District Court for the Central District of California, at 411 West 4th Street, Court Room 6D, Santa Ana, CA 92701-4516, on September 27, 2022 at 10:00 AM, Plaintiffs Paul Sapan and the putative class will and hereby do move the Court to compel the Defendants,

- 1 -

LIBERTY POWER HOLDINGS, LLC to respond to Plaintiff's Interrogatories and Request for Production. This motion is based on the declarations, exhibits and Joint Stipulation pursuant to Local Rule 37-2 and all other filings made in this case.

DATED: August 29, 2022              **PRATO & REICHMAN, APC**

                                     ___/s/ Justin Prato_____
                                     By: Justin Prato, Esq.
                                     **Prato & Reichman, APC**
                                     Attorneys for Plaintiff
                                     Paul Sapan, and the putative class

EXHIBIT
E

**Battista, Paul**

| | |
|---|---|
| **From:** | chrisr@prato-reichman.com |
| **Sent:** | Friday, September 2, 2022 2:14 PM |
| **To:** | Battista, Paul |
| **Cc:** | Guitian, Mariaelena; Harmon, Heather; 'Charles A. Zdebski'; 'Annemarie DiNardo Cleary' |
| **Subject:** | RE: In re Liberty Power Holdings, LLC |

Dear Mr. Battista,

I believe you are under the misapprehension that that Prato & Reichman is either Florida attorneys or bankruptcy attorneys. We are not. I did not appear on Mr. Sapan's behalf at your surprise July 27, 2022 motion hearing, wherein no notice of the motion was ever served on Mr. Sapan. I stated my appearance as the lead class counsel in the civil case that was the subject of your motion. I never represented Mr. Sapan in any Florida court nor in any bankruptcy court whatsoever. And I never agreed to accept service on anyone's behalf in any matter in which I am not their formal legal counsel. And I do not agree with your implication that service on my office constitutes service on Mr. Sapan generally nor in any matter in which I do nto formally represent him. I am not aware of any service statute which deems service effective if made on an attorney who is not representing the client in the matter at issue. As I recall, when we exchanged emails and spoke after your hearing, I was unequivocal in stating that I am not a bankruptcy attorney and would not represent Mr. Sapan in any bankruptcy matter. For all the foregoing reasons, I must politely disagree with your assertion that Mr. Sapan was properly served anything from your office.

I also must disagree with your notion that the order you obtained without serving any notice of motion and motion papers on Mr. Sapan directly or even sending a timely courtesy copy to my office could somehow extinguish the competent jurisdiction of the civil court absent some statutory authority. As your bankruptcy Judge said during your hearing, he was not imposing any stay or other impediment on the post-petition California civil proceeding in which I do formally represent Mr. Sapan and the putative class. As the language quoted in your email states, "Any holder of an Administrative Claim who fails to comply with the terms of this Order shall be and is hereby barred from pursuing ==such Administrative Claim== in these chapter 11 cases or otherwise." Plaintiff in the California civil case Sapan v. Liberty Power Corp. LLC, et. al., CACD Case No. 8:21-cv-01749-MEMF-KES is not pursuing any "Administrative Claim" whatsoever. The U.S. District Court for the Central District of California is not a bankruptcy court, not the bankruptcy court the bankruptcy is pending in, and therefore no "Administrative Claim" within the meaning of the plain language of your order could possibly be pursued in that venue. That is post-petition civil case subject to the primary jurisdiction of the U.S. District Court for the Central District of California and Judge Ewusi-Mensah Frimpong. Your own bankruptcy judge disclaimed any assertion of jurisdiction to impose a stay or otherwise attempt to impair the jurisdiction of the civil court. I think it is obvious your "or otherwise" language is limited by the "such Administrative Claim" language and is limited to barring bankruptcy claims. Since the civil case is not an bankruptcy "Administrative Claim", it does not apply.

Accordingly, we must respectfully indicate that your request to dismiss a civil case which you are not a party to is without legal authority. As for your threat to impose sanctions, I am unaware of how that could be done since I do not think the bankruptcy court could exercise jurisdiction over Mr. Sapan or Prato & Reichman that in any way comports with due process. Neither of us has ever been legally hailed into to that Court. I am not aware of any constitutional principle or federal statute that would allow an Article III court to impose sanctions on a non-party or attorney who is not representing a party in a case before said court.

Sincerely,

Chris Reichman
Prato & Reichman, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
D: 619-683-7971
F: 619-241-8309

ChrisR@Prato-Reichman.com

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, attorney work product or exempt from disclosure under applicable Federal or State Law. If you are not the intended recipient of this message, or the employee or agent responsible for delivering this message to the intended recipient, you may not disclose, print, copy or disseminate this information in any manner. Unauthorized interception of this e-mail is a violation of Federal Law. If you have received this communication in error, please notify us immediately by e-mail or telephone. Thank you.

**From:** Battista, Paul <pbattista@gjblaw.com>
**Sent:** Friday, September 2, 2022 5:27 AM
**To:** chrisr@prato-reichman.com
**Cc:** Guitian, Mariaelena <mguitian@gjblaw.com>; Harmon, Heather <hharmon@gjblaw.com>; Charles A. Zdebski <CZdebski@eckertseamans.com>; Annemarie DiNardo Cleary <acleary@eckertseamans.com>
**Subject:** In re Liberty Power Holdings, LLC

Good morning Chris. As you know, we represent Liberty Power Holdings, LLC (the "Debtor") and its subsidiaries in their chapter 11 bankruptcy proceedings (the "Chapter 11 Cases) pending in the United States Bankruptcy Court for the Southern District of Florida (the Bankruptcy Court"). I am writing to you in connection with your representation of Paul Sapan and your continued prosecution of litigation against, among others, the Debtor, in a case pending in the United States District Court for the Central District of California (Case No. 21-cv-01749-MEMF-KES) (the "Sapan Action"). As you know, in the Sapan Action, you are asserting on behalf of Mr. Sapan claims against the Debtor under the TCPA Act based on one alleged phone call made to him by the Debtor after the filing of the Debtor's bankruptcy proceedings on April 20, 2021. You have confirmed to me and the Bankruptcy Court that you are not prosecuting any claims against the Debtor that arose prior to the Debtor's Chapter 11 Cases.

As you also know, on July 13, 2022, we filed a Motion with the Bankruptcy Court asking for the establishment of a second administrative claims bar date in the Chapter 11 Cases directed specifically at Mr. Sapan and the Sapan Action. The Motion was heard by the Bankruptcy Court on July 27, 2022. You attended the hearing on behalf of Mr. Sapan and objected to the Debtor's effort to establish a second administrative claims bar date. Judge Grossman overruled your objection and invited you to file a motion or application for an administrative expense claim based on the claims you were asserting in the Sapan Action before the bar date that he was setting by granting the Motion. On July 29, 2022, the Bankruptcy Court entered its Order establishing a second administrative claims bar date, which date was August 23, 2022 (25 days from the date of the Bankruptcy Court's Order). The Order was then served on you as counsel to Mr. Sapan at two different addresses. I would note that you confirmed to me on the phone a few days later on August 5th that those addresses were in fact for your law offices. In addition, during our call on August 5, 2022, you requested that I also email the Order to you, which I did on that day.

As you also know, you did not file a motion or application for an administrative claim in the Chapter 11 Cases before the August 23, 2022 bar date.  However, you have continued to prosecute the Sapan Action, forcing the Debtor to continue incurring substantial legal fees and costs defending it.

The Bankruptcy Court's Order (another copy attached) establishing the August 23rd bar date for the filing of administrative claims is very clear.   Pursuant to paragraph 3 of the Order:

"Any holder of an Administrative Claim who fails to comply with the terms of this Order shall be and is hereby barred from pursuing such Administrative Claim in these chapter 11 cases or otherwise.  In addition, any such Administrative Claim not subject of an appropriate motion by the Second Administrative Claims Bar Date shall be and is hereby denied with prejudice."

The Order applies to Mr. Sapan in that Mr. Sapan is asserting an administrative claim against the Debtor in the Sapan Action because such claim allegedly arises after the filing of the Chapter 11 Cases.  Mr. Sapan received notice of the August 23rd bar date through you as his counsel.  Mr. Sapan did not file a request or motion for an administrative claim prior to that bar date.  As result, Mr. Sapan (and you) are "barred" from pursuing any such claim, whether in the Chapter 11 Cases "or otherwise."  Moreover, because Mr. Sapan failed to file a request or motion by the bar date, his claim "is hereby denied with prejudice."

Based on the above, Mr. Sapan and you are in violation of the Bankruptcy Court's Order by continuing with the Sapan Action and trying to obtain a judgment against the Debtor therein for alleged post-petition actions.  As a result, demand is made on Mr. Sapan and you to immediately dismiss the Sapan Action as against the Debtor.  If you fail and refuse to do so within ten (10) days of this email (September 12, 2022), then we will have no choice but to seek relief from the Bankruptcy Court enforcing its Order and seeking sanctions against Mr. Sapan and you for your willful violation of the Order.

I am hoping that we do not need to proceed in that manner.

Please let me know if you have any questions.

Paul

Paul J. Battista, Esq. | Shareholder
Main 305.349.2300 | Direct 305.372.2457 | Fax 305.428.8801 | Cell 305.812.8030
pbattista@gjb.law | gjb.law | vCard
100 SE 2nd Street, Suite 4400 | Miami, Florida 33131
Miami | Ft. Lauderdale | Tampa



EXHIBIT
F

Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-886-0252
Email: jmprato@gmail.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br>   vs.<br><br>LIBERTY POWER CORP, L.L.C., LIBERTY POWER SUPER HOLDINGS, LLC, LIBERTY POWER HOLDINGS, LLC,<br><br>          Defendants. | Case No.: 8:21-cv-01749-MEMF-KES<br><br>**OBJECTION TO AND OPPOSITION TO MOTION TO REQUEST TO RESCHEDULE HEARING DATE *EX PARTE* APPLICATION OF DEFENDANT LIBERTY POWER HOLDINGS, LLC TO CONTINUE HEARING ON MOTION TO COMPEL** |

## OBJECTION

The Plaintiff, Paul Sapan ("Plaintiff") hereby files this objection and opposition to the Ex Parte application filed by the Defendant, Liberty Power Holdings, LLC ("Defendant" or "Liberty Power") to reschedule the hearing set for September 27, 2022.  Plaintiff believes the Court should deny the application for the following reasons:

# PLAINTIFF NEVER AGREED TO DELAY THE MOTION TO COMPEL INDEFINITELY

Liberty Power falsely claims that there was an agreement to have the motion to compel discovery responses heard after the motion to stay. Plaintiff never made any such agreement nor anything close to it. Defendant can point to no email or writing evidencing any such agreement. Nowhere in any of the emails provided by the Defendant in their exhibits does counsel for Plaintiff generally agree to have the motion to compel heard after the motion to stay. Plaintiff did not and would not have agreed to that. What Plaintiff did agree to is exactly what was asked by Mr. Zdebski which was, "We will agree to reset the hearing on the motion to stay to September 22nd if plaintiff will agree not to seek to set a hearing on his motion to compel prior to September 22nd". [Defendant Exhibit 3]. Plaintiff did not schedule the compel motion prior to September 22nd. Plaintiff also did not agree to putting off the filing indefinitely. Plaintiff now objects to having a hearing on this issue in late November and for very good reason.

# HOLDING THE HEARING IN NOVEMBER IS A HUGE DISCOVERY DELAY AND VERY PREJUDICIAL TO THE PLAINTIFF'S ABILITY TO COMPLY WITH THE COURT'S SCHEDULE

The only defendant to answer is Liberty Power Holdings, LLC.[1] Defendant has refused to answer in any discovery in this case on the basis that they might get a stay. To be clear, as of the writing of this opposition, this Court has issued no stay in this case and no theory of a motion to stay was raised in the scheduling conference as a reason for any discovery delay. And this case involves only post-

---

[1] There are actually three Liberty Power entities named as defendants in this case. Two of the other Liberty Power entities have defaulted apparently in hopes that the appearing defendant will defend for them.

OBJECTION AND OPPOSITION TO EX PARTE

bankruptcy petition activity so there is automatic bankruptcy stay and the bankruptcy court does not have jurisdiction to impose any other stay. Thus, the Defendant's entire argument here really boils down to their claim that they do not need to participate in discovery until some motion they want to make has been heard in the future. As this Court knows, courts rarely ever stay discovery just because a motion is pending. Allowing such a broad pre-stay before a stay motion is even heard is not only detrimental to this case but sets a bad precedent in any case. All a Defendant would need to do to evade discovery is file a motion to stay no matter how meritless and would thus be able to upset any scheduling order.

Plaintiff has a very good reason for objecting to this months-long discovery delay scheme. The scheduling order requires Plaintiff must file his Motion for Class Certification by March 16, 2023. [Dckt. No. 45 pg 3]. If the Defendant's ex parte is granted, that will leave only three months including the Christmas holiday for Plaintiff to conduct all of its class discovery, assuming the stay is not granted, which is the likely outcome since it is predicated on a bankruptcy theory but outside the stay allowed for in the bankruptcy code. Plaintiff would have to ask for revisions to the scheduling order which certainly is not efficient for the Court or the parties who agreed to the Scheduling Order dates in a Revised Scheduling Chart filed on June 2, 2022. [Dckt. No. 43].

Defendant's complaints are of their own making. Liberty Power elected to set aside the default against them in order to engage in this case rather than address default judgment collections in the bankruptcy milieu. [Dckt. No. 18]. Engaging in a civil case necessarily requires discovery compliance. The Defendant failed to raise any issue of a stay motion during the 26(f) process, much less any argument Liberty Power should be excused from making any discovery responses at all. The Defendants also waited until August 5, 2022 to file their request for a stay. [Dckt. No. 47]. That is almost three months after they filed their answer in this case. [Dckt. No. 33]. Liberty Power then elected to delay filing its stay motion until

OBJECTION AND OPPOSITION TO EX PARTE

after its discovery responses were due—and this after requesting a stipulated extension to the production date. This delay was unnecessary and is made performed in bad faith since Defendants have exhibited a consistent pattern of attempting to delay and frustrate this civil case with references to a bankruptcy proceeding which has not invoked any stay.

Additionally, Plaintiff would like to point out that for all the complaints of the Defendant about resources available to defend this action, that did not stop them from filing a completely frivolous counter claim which was voluntarily dismissed by Defendant when Plaintiff indicated it would file an Anti-SLAPP motion during an L.R. 7-3 conference. [Dckt. No. 46]. Liberty Power has shown it does not lack for resources when going on the attack, they only complain about resources when it comes to participating in good faith in normal procedures such as discovery.

## THE BANKRUPTCY COURT DID NOT AND DOES NOT HAVE THE POWER TO EXTINGUISH PLAINTIFF'S POST-PETITION CLASS ACTION CLAIM

The primary gist of Liberty Power's ex parte application appears to be a inchoate argument that the bankruptcy proceeding and Defendant's hope that the bankruptcy court will disallow an Administrative Claim by Plaintiff will somehow for some unknown reason moot this case and thus a stay would be no harm. The argument is fuzzy at best because Liberty Power can point to no law, statute, or authority that requires Plaintiff to even make an Administrative Claim for a post-petition lawsuit, much less that any authority that would support slowing or stopping such a post-petition lawsuit. Liberty Power is intentionally evading the simple fact that a Chapter 11 bankruptcy is a **reorganization**, not a dissolution and any a post-petition debt such as a judgment in this lawsuit is likely non-

OBJECTION AND OPPOSITION TO EX PARTE

dischargeable in that proceeding, whether Plaintiff files an Administrative claim or not. This is why Liberty Power cannot cite to any law, statute, or authority requiring the relief they seek.

Specifically, the Defendant states, "Because Plaintiff failed to timely file an administrative claim in the bankruptcy court, any potential judgment that he might obtain in this Court will not be collectable from the bankruptcy estate of Liberty Power.." [Ex Parte, pg. 2 ln. 16-18]. Reading this statement, the Defendant seems to be contending that the Plaintiff can no longer pursue his claim in any court. That may be true as to an Administrative Claim **in the bankruptcy court**. Plaintiff does not care about an Administrative Claim in the bankruptcy court. Plaintiff wishes to pursue his post-petition case in civil court and get a civil judgement. And this is clearly his right and no law, statute, or authority bars Plaintiff's post-petition claim from proceeding. Plaintiff can collect against the reorganized entity or against the defaulted non-bankrupt defendant Liberty Power Super Holdings LLC.

The lack of any law, statute, or authority is why the bankruptcy court has not issued an automatic stay nor any stay on its own merits and why this Court should follow suit. Liberty Power's Chapter 11 reorganization filing before the TCPA violations alleged in this case does not entitle it to any stay, automatic or otherwise.

Additionally, the Defendant infers that it plans on going out of business after the bankruptcy. However, that is not what a Chapter 11 does, the Defendant would have to file a Chapter 7 in order to dissolve the company. If the company is really going to be out of business, and the Defendant converted their Chapter 11 to a Chapter 7, then the new petition date would include this case, and so an automatic stay would issue. *See*, Fed. R. Bankr. P. 1019 ("Conversion of a Chapter 11 Reorganization Case"). Plaintiff would then have to file an Administrative Claim in bankruptcy court or have its debt discharged. However, the Liberty Power has

- 5 -

OBJECTION AND OPPOSITION TO EX PARTE

chosen not to file a Chapter 7 bankruptcy or convert their Chapter 11. This casts extreme doubt on their claims that Liberty Power will in fact be out of business after the bankruptcy and their claims that there are no assets of any value.

## THE DEFENDANT'S APPLICATION SHOULD BE DENIED

Defendant certainly has not met the standard of it will suffer irreparable prejudice if the requested relief is not granted on an ex parte basis. Most if not all of Liberty Power's arguments about the irreparable prejudice has to due with spending time and money on discovery when the case **might** be stayed if they win a motion later down the line. That assumes the case will be stayed. This is an assumption, and not even a very good one where there is no law, statute, or authority on point requiring any stay, and Defendant's own briefing tacitly admits it. Just like the future stay motion, this ex parte application is without merit. Defendant cannot claim any irreparable harm because there is none. At worst it will cost Defendant the small modicum of time to answer exactly sixteen (16) tightly limited document inspection requests and four (4) interrogatories. Just as Plaintiff stated in its opposition to Defendant's motion to stay, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). And it is equally true here that there is no irreparable prejudice in simply having to answer limited discovery like any other civil defendant.

DATED: September 6, 2022   **PRATO & REICHMAN, APC**

           ___/s/ Justin Prato_____
           By: Justin Prato, Esq.
           **Prato & Reichman, APC**
           Attorneys for Plaintiff
           Paul Sapan, and the putative class

EXHIBIT
G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-01749-MEMF-KES                Date: September 14, 2022

Title: PAUL SAPAN v. LIBERTY POWER CORP, LLC, et al.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

Jazmin Dorado                              Not Present
Courtroom Clerk                            Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFF:                              DEFENDANT:
None Present                            None Present

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING Plaintiff's
                              Motion to Compel Discovery [Dkt. 57]

Before the Court is Plaintiff's motion to compel discovery. (Dkt. 57.) The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. The hearing noticed for September 27, 2022 is ordered OFF CALENDAR.

I.    Background.

In October 2021, Plaintiff Paul Sapan filed this putative class action against multiple defendants including Liberty Power Holdings, LLC ("Defendant"), the only defendant to answer. (Dkt. 1, 33.) Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA") by repeatedly calling his home phone number even though it was on the national "Do Not Call" registry.

Procedural developments relevant to the instant discovery dispute are as follows:

• In May 2022, the parties filed a Rule 26(f) Report. (Dkt. 40.) That filing explains, "Plaintiff's Complaint notes that twenty-seven (27) of the calls were made before two of the three Liberty Power defendants filed for bankruptcy protection, but the final call was made weeks after the bankruptcy filings and is the actionable call in this

Case No. 8:21-cv-01749-MEMF-KES                    Date: September 14, 2022
                                                   Page 2

class action case." (Id. at 2.)  The parties advised the Court, "No specific discovery disputes are anticipated at this time." (Id. at 10.)  While they disagreed over the sequencing and deadlines, both parties proposed proceeding with discovery. (Id. at 10-11.)  The parties subsequently agreed to provide initial disclosures in June 2022 with a fact discovery cutoff in January 2023. (Dkt. 43.)

• On June 14, 2022, the Court issued a scheduling order establishing a class certification discovery cutoff date of January 13, 2023 and a fact discovery cutoff date of September 29, 2023. (Dkt. 45.)

• On June 17, 2022, Plaintiff served written discovery consisting of interrogatories ("Rogs") and Requests for Production ("RFPs"). (Dkt. 57-2 ¶¶ 2-5.)  The Rogs contained four questions asking Defendant to identify third-party service providers it used and phone numbers called by Defendant or on Defendant's behalf. (Dkt. 57-3.)  There were 16 RFPs seeking various documents, including call logs, prior complaints, internal "Do Not Call" lists, TCPA-related policies, and third-party service agreements. (Dkt. 57-4.)

• On August 3, 2022, Defendant served responses to this discovery. (Dkt. 57-3 [Rogs]; Dkt. 57-4 [RFPs].)  Defendant raised numerous objections, but objected on one particular ground to every discovery request (the "Disproportionality Objection"):

> ... ice vague and ambiguous.
>
> LPH also objects to this interrogatory on the basis that the request is not proportional to the needs of this case.  The interrogatory seeks information from a party under the protections of the bankruptcy code and should be conducted through an adversary action in LPH's bankruptcy case. The Complaint asserts only one post-petition claim that is asserted against property of the bankruptcy estate (11 USC 362(a)(3)).  The importance of bankruptcy protections for LPH are outweighed by Plaintiff's (or the class's) interest in pursuing the stated claim in this court. LPH's resources and records are constrained by the bankruptcy code and the orders of the bankruptcy court.

• On August 5, 2022, Defendant moved to stay this case "pending resolution of [Plaintiff's] claim in [Defendant's] bankruptcy case currently in Florida," citing principles of judicial economy. (Dkt. 47 at 2.)  That motion has been briefed. (Dkt. 52 [opposition]; Dkt. 56 [reply].)  The Court rescheduled the hearing for November 17, 2022. (Dkt. 55.)

• On August 29, 2022, Plaintiff filed a motion to compel Defendant to respond to the Rogs and RFPs. (Dkt. 57.)  The Court construes the motion as seeking to adjudicate the validity of the Disproportionality Objection, because Plaintiff's portion of the Joint Stipulation does not address Defendant's other objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-01749-MEMF-KES                    Date: September 14, 2022
                                                    Page 3

• On September 13, 2022, both parties filed supplemental briefs.  (Dkt. 61 [Defendant]; Dkt. 62 [Plaintiff].)

## II.    Legal Standard.

Civil litigants can obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Proportionality is evaluated "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  (Id.)  If the requesting party demonstrates relevance, then the burden shifts to the party resisting discovery to show disproportionality with competent evidence.  Masimo Corp. v. Apple Inc., No. SA CV 20-00048 JVS-JDE, 2022 U.S. Dist. LEXIS 104554, at *9 (C.D. Cal. Mar. 21, 2022).

## III.   Summary of the Parties' Arguments.

Plaintiff argues Defendant's bankruptcy does not excuse Defendant from responding to discovery in this case.  While the Bankruptcy Code 11 U.S.C. § 362(a) imposes an automatic stay on some civil litigation against a debtor, it does not apply to this case, because Plaintiff's claims involve post-petition activities.  (Dkt. 57-1 at 5.) Plaintiff further argues that Defendant's blanket assertion of the Disproportionality Objection, without any reference to the type of discovery requested or a particularized explanation of the resources required to respond, does not carry Defendant's burden as the party resisting discovery.  (Id. at 6.)

Defendant first argues that even if Plaintiff's lawsuit is not subject to the automatic stay, Plaintiff's discovery requests are.  Defendant reasons:

> [T]he automatic stay does prohibit "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3). [Defendant's] assets, including its documents and information, are property of the bankruptcy estate and are therefore constrained by the proceedings in the Bankruptcy Court.

(Dkt. 57-1 at 12.)

Next, Defendant argues that it has adequately supported its Disproportionality Objection.  Defendant contends that it lacks "resources (i.e., employees) to search for, identify, and produce documents and information in response to Plaintiff's discovery."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01749-MEMF-KES                    Date: September 14, 2022
                                                                       Page 4

(Id. at 13.)  As supporting evidence, Defendant cites bankruptcy court records purporting to demonstrate that (1) Defendant's senior secured lender, BETM, controls its assets and (2) Defendant and its co-debtors have about $371,000 in available cash.  (Id.; Dkt. 61.)  Finally, Defendant contends that the burden of responding to the discovery outweighs its likely benefit, because even if the discovery responses would enable Plaintiff to obtain a judgment, "it is unlikely that there will be assets available" to satisfy that judgment.  (Id. at 14.)

## IV.    Discussion.

The Court rejects Defendant's first argument.  Defendant has not cited any case holding that propounding discovery in civil litigation that is not subject to the automatic bankruptcy stay is an act "to obtain possession of property of the [debtor's] estate" or "to exercise control over property of the estate."  Providing *copies* of documents to the opposing party via civil discovery does not deprive the debtor of possession or control over the documents.  Similarly, Defendant has not demonstrated that information it might provide in Rog responses is "property" of its bankruptcy estate, or that it would lose "possession" or "control" over such information by disclosing it to Plaintiff.  See 11 U.S.C. § 541 (defining property of the estate).

Regarding disproportionality, the Court rejects the argument that the benefit of discovery (however great) is outweighed by its burden (however minimal) if the plaintiff is unlikely to collect on any eventual judgment.  Such an argument, if credited, would turn every discovery dispute into an evaluation of the responding defendant's assets.  Moreover, Defendant has not adequately demonstrated that its reorganization will make it impossible to pay any resulting judgment, no matter the size or payment structure.  To the extent Defendant contends that it lacks authority to allocate any resources to responding to discovery, Defendant will need to raise that concern with the bankruptcy court.  It is apparent that Defendant has been able to allocate assets to date to litigate issues in this case.

Defendant also argues that Plaintiff cannot prevail in this case, because Plaintiff twice missed the deadline for filing an "administrative claim" in the bankruptcy court, which somehow bars Plaintiff's recovery in this action.  (Dkt. 61 at 3-4.)  First, it is not clear why Plaintiff's TCPA claim would be characterized as an "administrative claim." [1]

---

[1] "Under the Bankruptcy Code, certain types of claims are entitled to administrative claim status.  These expenses include 'the actual, necessary costs and expenses of preserving the estate' and are accorded top-tier priority for payment, even ahead of most other 'priority' claims.  11 U.S.C. § 507(a)(1)(C) and (2).  The theory behind this … is that the services rendered to a debtor, which help preserve the value of the estate, whether for continuation of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-01749-MEMF-KES                    Date: September 14, 2022
                                                   Page 5

But even if it were, Defendant must raise this argument to the bankruptcy court. If the bankruptcy court rules that Plaintiff's TCPA claim is barred by some missed deadline in that court, then Defendant can use that ruling here.

Essentially, the Disproportionality Objection is an effort by Defendant to grant itself a stay, even though the bankruptcy court has not imposed one and the District Judge is still considering the issue. Defendant contends that if its stay motion cannot be heard earlier, then it will lose the relief it seeks. But the general rule is that when a party moves for a stay, the litigation is not stayed unless and until the stay motion is granted. Defendant has not even asked the District Judge to advance the hearing on its stay motion. The District Judge controls the pre-trial calendar, and the Magistrate Judge cannot prejudice the Plaintiff by allowing discovery to stall until November when the class certification discovery cutoff date is in January 2023 (Dkt. 45 at 3) and Defendant agreed to proceed with discovery in the Rule 26(f) Report, despite knowing about its bankruptcy proceedings.

For these reasons, the Disproportionality Objection is OVERRULED. **Within twenty-one (21) days,** Defendant shall produce documents and serve amended written responses to the Rogs and RFPs that do not rely on Defendant's pending stay motion or bankruptcy proceedings as a reason to object. Defendant shall reconsider its other objections and only assert those which it believes in good faith apply. It must be clear from Defendant's written responses if Defendant is withholding responsive documents on the basis of a particular objection. Fed. R. Civ. P. 34(b)(2)(C). If Defendant is going to withhold responsive documents due to privilege, then Defendant must provide a privilege log with its amended responses.

Initials of Deputy Clerk <u>JD</u>

---

business or immediate liquidation, benefit all of the pre-petition creditor body." <u>In re First Magnus Fin. Corp.</u>, 390 B.R. 667, 673 (Bankr. D. Ariz. 2008).

EXHIBIT
H

# Prato & Reichman, APC

3675 Ruffin Road   •   Suite 220   •   San Diego, CA 92123
Phone (619) 516-3300 •   www.prato-reichman.com   •   Fax (619) 241-8309

November 4, 2022

**Sent Via Electronic Mail To:**
Michael A DiNardo, Esq.
YK LAW LLP
445 S Figueroa St, Suite 2280
Los Angeles, CA 90071
Email: MDiNardo@yklaw.us

RE:    Discovery Dispute Letter Concerning Liberty Power Holdings, LLC's
          Amended Responses to Plaintiff's First Set of Written Discovery in
          *Sapan v. Liberty Power Corp, LLC*, et. al., 8:21-cv-01749-MEMF-KES

Dear Mr. DiNardo,

In accordance with Local Rule 37-1 and the Chambers Rules of Magistrate Judge Karen E. Scott this letter is to set a time and date to meet and confer over the Defendant's amended responses to Plaintiff's first set of discovery, namely Request for Production Set 1 and Interrogatories Set 1 to which the amended responses were received via email on October 5, 2022.  Specifically, Plaintiff alleges to following deficiencies in the responses:

**Deficiency as All Interrogatories and Document Requests**

Liberty Power Holdings, LLC ("LPH") in item number 2 of a section titled 'Specific Objections To Definitions and Instructions' in both responses objects to the defined term YOU and/or YOUR as including agents and wholly owned subsidiaries. LPH states that it will only respond to all interrogatories "on its own behalf and not on behalf of any other entity."  This does not comport with clear black letter law as to subsidiaries and parent corporations.  Cases in Ninth Circuit district courts interpreting Federal Rules of Civil Procedure ("FRCP") 33 and 34 consistently require an

interrogatory to respond as to all wholly-owned members of the corporate family and document production including all documents in the possession of wholly-owned subsidiaries and parents. *See*, *e.g.*, In re ATM Fee Litigation, 233 F.R.D 542 (N.D. Cal. Dec. 5, 2005) ("federal law requires that a parent respond to an interrogatory under FRCP Rule 33 with information from a subsidiary if it has access to that information and if the information is relevant and not privileged."); *AFL Telecom's LLC v. SurplusEQ.com,* 2012 WL 2590557 (D. Ariz. July 5, 2012) (wholly owned subsidiary must produce documents in possession of parent company); *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 2018 WL 6175982, at *2 (N.D. Cal. Nov. 26, 2018); Valdez v. Genesis Healthcare LLC, 2021 WL 5989963, at *8 ("A parent corporation is deemed to have possession, custody or control over documents possessed by a subsidiary that the parent corporation owns or wholly controls."); & etc. **Plaintiff demands that Defendant supplement its responses to include any responsive non-privileged information and documents retained by or pertaining to its wholly-owned subsidiary Liberty Power Corp. L.L.C. and/or its parent corporation Liberty Power Super Holdings, LLC.**.

## Deficiencies as to the Interrogatories

Interrogatory No. 1

The response does not actually answer the question asked. The interrogatory asks LPH to identify by name all companies that provided any kind of telecommunications services. The LPH response that it claims without a shred of evidence that it "did not engage in any outbound, cold calling" is non-responsive argument. Call logs from the telecommunication vendors will establish the facts of what calls were made and/or received. The offer of production of the telesales vendors is also not responsive since it fails to identify which carriers provided phone service to LPH and its call center(s). **Plaintiff demands that Defendant**

**supplement its response with an actual response to the question in the interrogatory identifying all telecommunications providers**.

Interrogatory No. 2

The response refers to the response for Interrogatory No. 1 above, and suffers the same defect.  **Plaintiff demands that Defendant supplement its response with an actual response to the question in the interrogatory identifying all telemarketing lead vendors**.

Interrogatory No. 3

The response refers to the response for Interrogatory No. 1 above, and suffers the same defect.  **Plaintiff demands that Defendant supplement its response with an actual response to the question in the interrogatory identifying all outbound numbers called by LPH for solicitation without qualification (e.g., whether for residential or any other solicitation purpose)**.

Interrogatory No. 3

The response refers to the response for Interrogatory No. 1 above, and suffers the same defect.  Furthermore, the interrogatory does not ask what calls LPH in its own subjective opinion may or may not have authorized, it asks for the phone numbers for all persons called for solicitation purposes by LPH's lead vendors.  **Plaintiff demands that Defendant supplement its response with an actual response to the question in the interrogatory identifying all outbound numbers called by LPH lead vendors and/or all inbound numbers from warm transfer calls**.

/ / /

/ / /

**Deficiencies as to the Requests for Production**

Request No. 4

The request is for any documentation of communications between any Liberty Power company (see general objection to "YOU" dispute above) and any lead vendor.  This would most definitely include call records of inbound warm transfers, which LPH admits they received in addition to emails, invoices, & etc. Since LPH admits it received warm transfers and had telephones to receive them on, there must be call logs.  **Plaintiff demands the Defendant supplement its responses by producing call logs for its call centers as well as ALL communications with its lead vendors including emails, invoices, & etc.**

Request No. 5, 6, 13, 14, 15

The response is imprecise and breezily says there "there are no documents responsive to this request".  The first problem is that this was conditioned on the objection to YOU including all Liberty Power companies above.  The second problem is a possible failure to understand the requirement for a "reasonably inquiry" and investigation under FRCP 26 and that documents in LPH's "possession, custody, *or* control", is stated in the disjunctive so actual possession of a document or thing is not required if it is within Respondent's custody or control.  FRCP. 34(a)(1) [emphasis added], *see also*, *In re Bankers Trust Co*., 61 F3d 465, 469 (6th Cir. 1995).  The third problem is that it fails to state whether responsive documents existed in the past but have been discarded or destroyed. For documents which LPH knows or knew existed at one point, but are no longer in its possession, custody, or control, LPH must state it is 'unable to comply' and state the reason, e.g. the document was destroyed, lost, etc.  *See*, *Searock v. Stripling*, 736 F.2d 650, 653-654 (11th Cir. 1984).

These are significant problems because it is almost certain that responsive documents do or did exist and that responsive documents are within LPH's control if they did proper investigation and requested them from vendors.  For example, billing and financial documents evidencing payment to lead vendors almost certainly exist (RFP No. 5), call logs or lead data sheets showing the leads being transferred would have been a part of what LPH bought from the lead agents they admit they employed (RFP No. 6), and call records for all outbound and inbound calling undoubtedly were part of the invoicing from carriers/vendors (RFP No. 13, 14, 15).  **If Respondent knows of a document that it can obtain, it must produce it, and if Defendant knows documents did in the pass exist it must state that and the reason they are no longer extant.**

Request No. 8

The proportionality objection based on cost is incorrect and incomplete.  The objection fails to address relevance which is exceptionally high given that there are only 10 search terms and really only 6 since four of them are variations on "TCPA" and all of the terms are distinctly specialized terms specific to telemarketing and TCPA compliance ("telemarketing", "cold call", "lead agent", "warm transfer", "Do-Not-Call Registry" "Do Not Call", "Telephone Consumer Protection Act", "telephone consumer protection act", "TCPA", "tcpa", OR "TCPA compliance").  The only term arguably subject to general use is "Do Not Call" which Plaintiff specifically restricted to only the capitalized words to limit general use overlap, and Plaintiff is willing to narrow the documents if the search cannot distinguish between capitalized and uncapitalized words.  All of the others can really only relate to the activity at issue in this lawsuit.  Defendant's objection does not address in any way the extremely high relevance and importance to the case of these highly on-point documents.

And the alleged cost estimate is devoid of any actual evidence to support it and is seriously inflated.  LPH's sole arguable piece of evidence is that they performed the searches and found 14,000 documents, but they do not provide any affidavit giving any actual facts regarding these searches.  LPH then jumps from confusingly saying they performed the searches and came up with 14,000 documents to also saying they are somehow incomplete to estimating the total will exceed 20,000 documents.  Since LPH will not or cannot say how the completed search is incomplete, their much higher 20,000 estimate is unsupportable.  Also, LPH's review rate of 60 document per hour for initial review in addition to higher level review is inflated.  Standard review rates cited by document review vendors for simple reviews of emails, correspondence, and the like not containing databases, formulas, or other coded information range from 100 documents per hour (https://percipient.co/electronic-discovery-and-esi-document-review-calculator/) for traditional review to over 200 documents per hour for more advance AI-assisted document review (Hilgers Graben, https://hilgersgraben.com/services/discovery-counsel/, PDF containing 200 document per hour estimate available at page 20 of :https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwiih63XjPL6AhUaK0QIHdVBBPwQFnoECCEQAQ&url=https%3A%2F%2Fhilgersgraben.com%2Fwp-content%2Fuploads%2F2020%2F02%2FWho-Actually-Is-Reviewing-My-Documents.pdf&usg=AOvVaw3CfLXJn79wJwsoGQv4sl5c).  There is no indication that the documents to be reviewed are coded databases or scientific formulas and it is almost certain they are not given the search terms, so we can expect a review rate of roughly double Defendant's 60 document per minute estimate.  A total of 14,000 documents reviewed at 120 pages per hour which is less than half the median point in the more realistic rates we cited above equals 116 document review hours, which even at the excessively high $105/hr rate cited by

Defendant is only $12,250.  And the actual cost will be considerably less since it does not take into account duplicates, which usually reduces the total documents number by 30-40% for exact duplicates and can go significantly higher for content duplication where the digital data is different but the content is the same, which in turn would bring the price down to $8,000 or less.  Frankly prices in this range and even those in Defendant's overinflated estimate are fully in line with discovery responsibilities in complex class action litigation and LPH did agree the Manual for Complex Litigation section for class actions should apply to this case in the Joint Scheduling Report.  And this price is not unduly burdensome given the likelihood of very high relevance since the search terms are quite specialized as discussed above.  **Plaintiff demands production of all responsive documents.**

Request No. 11

> The request is limited in scope to only government actions taken against Defendant during the class period.  It is not narrowed as to content of the adversarial governmental actions because Plaintiff cannot determine without seeing such documents whether the complaint speaks directly or indirectly to issues in the case.  For a pertinent example, Plaintiff is aware that Defendant has a number of state attorney general actions against it that have to do with claims of sales deception and misrepresentation and some or all of those happened via illegal telephone calls.  *See*, *e.g*., *People of the State of Illinois v. Liberty Power Holdings LLC*, Case No. 2020CH01954, Complaint, para. 31, 35, 59, 70, 73, 75-76 (alleging count under Illinois Telephone Solicitations Act, 815 ILCS 413/15), 140-156 (detailing 16 recorded telemarketing calls to Illinois residents), *see also*, *In re Liberty Power Holdings, LLC Bankruptcy Litigation*, Case No. 21-13797-SMG, Dckt No. 273 (describing Massachusetts Attorney General investigation ongoing since 2015 into the same sort of deceptive sales tactics as the Illinois Attorney General action noting no complaint has been filed but stipulations to extend tolling

of the statute of limitations have been agreed); "A.G. Schneiderman Announces
$550,000 Settlement With Energy Service Company That Illegally Deceived New
York Consumers", New York State Office of the Attorney General press release
dated April 11, 2018, available ar: https://ag.ny.gov/press-release/2018/ag-
schneiderman-announces-550000-settlement-energy-service-company-illegally
(Beginning in 2012, Liberty conducted door-to-door sales and telemarketing to
New York residential customers…" [emphasis added]).

　　　Any adversarial government actions within the class period are be
discoverable since they may well speak to Defendant's expansive use of illegal
telemarketing whether that is the primary gravamen of the action or ancillary to
complaints about deceptive or otherwise illegal practices because we already know
such actions exist like the example above.  While the instant case is not about
misrepresentation it is most certainly about illegal calls making all of these
documents likely to lead to admissible evidence since we already know some are in
fact highly relevant.  For any adversarial government actions wherein the case
documents are a matter of freely accessible public record Plaintiff is willing to
accept the case name, number, and year designation and will gather the public
documents himself.  **Plaintiff demands production of all responsive documents.**


Request No. 12

　　　Defendant uses the same boilerplate objection it used to number 11 claiming
the request is "without limitation as to scope", but this must be a mistake.  Request
number 11 was not limited by content of the adversarial government proceedings
documents, but Request number 12 is most definitely limited to private-party
complaints "concerning telemarketing practices".  The objection is without merit
as are all others since complaints about illegal calling are directly relevant to a case
about illegal calling.  **Plaintiff demands production of all responsive
documents.**

**Request for Sanctions**

Plaintiff intends on requesting attorney's fees sanctions if our meet and confer cannot amicably resolve these issues and he has to file a motion to compel.

**Request to Meet and Confer**

Plaintiff request to meet and confer over the above issues pursuant to Local Rule 37-1.  Plaintiff requests available times the week of October 10-14, 2022 for an in-person or telephonic discussion of these disputes.  Please provide available dates by November 9, 2022  At this time Plaintiff, suggests using the Magistrate's informal telephonic conference process to resolve this dispute and would like to discuss use of this informal process at the meet and confer.

Sincerely,

/s/Christopher J. Reichman, Esq.
Christopher J. Reichman, Esq.,
Attorney for Plaintiff & Class
Direct phone: (619) 683-7971

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument as well as all attached documents were served upon all counsel of record in the above entitled and numbered cause on the date listed below.

__X__  Via Electronic Mail/US Mail

Michael A DiNardo, Esq.
YK LAW LLP
445 S Figueroa St, Suite 2280
Los Angeles, CA 90071
Email: MDiNardo@yklaw.us

DATED: November 11, 2022                    **PRATO & REICHMAN, APC**


                                            /s/Justin Prato, Esq.
                                            By: Justin Prato, Esq.
                                            **Prato & Reichman, APC**
                                            Attorneys for Plaintiff

**From:** Justin Prato <jmprato@gmail.com>
**Sent:** Monday, November 14, 2022 2:44 PM
**To:** Charles A. Zdebski <CZdebski@eckertseamans.com>
**Subject:** [EXTERNAL] list of names of persons of interest for depositions

EXHIBIT

I

Charles,

Here are the names of the people that I would potentially like to
depose in addition to the PMK.


Shantel Wallace
Shane McDonald
Gary Donaldson
Amine Leon
Jackie Garcia-Culp
Ray Oliver Cajiling
Kevin Gailling
Alberto Daire
Harris Rusen

As we discussed, if you could send me the last known contact
information for anyone who no longer is under the control of or
employment of Liberty Power that would be great.  Thanks.

I will have the deposition notice for the PMK to you late today or
early tomorrow as discussed.

--


--Justin Prato Esq.
Prato & Reichman
3675 Ruffin Road, Suite 220
San Diego CA 92123
TEL: (619) 886-0252
FAX: (619) 241-8309


CONFIDENTIALITY NOTICE: This communication with its contents may
contain confidential and/or legally privileged information. It is
solely for the use of the intended recipient(s). If you are not the
intended recipient of this message, or the employee or agent
responsible for delivering this message to the intended recipient, you
may not disclose, print, copy or disseminate this information in any
manner. Unauthorized interception, review, use or disclosure is
prohibited and may violate applicable laws including the Electronic
Communications Privacy Act. If you are not the intended recipient,
please contact the sender and destroy all copies of the communication.

**EXHIBIT J**

Christopher J. Reichman SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
Email: chrisr@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, | Case No.:8:21-cv-01749-MEMF-KES |
| Plaintiff, | **NOTICE OF DEPOSITION TO DEFENDANT LIBERTY POWER HOLDINGS L.L.C. DEPOSITION OF PERSON MOST KNOWLEDGEABLE** |
| vs. | |
| LIBERTY POWER CORP, L.L.C., LIBERTY POWER SUPER HOLDINGS, LLC, LIBERTY POWER HOLDINGS, LLC, | |
| Defendants. | |

<u>NOTICE OF TAKING DISPOSITION UPON ORAL EXAMINATION</u>

///

- 1 -

TO:   Michael A. DiNardo
      **YK LAW, LLP**
      Attorneys for Defendant
      Liberty Power Holdings, LLC

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6) and 45 Plaintiff will take the depositions upon oral examination, to be recorded by stenographic means and by an officer authorized by law to administer oaths. Such deposition will be taken pursuant to agreement via a Zoom using the link provided to counsel upon confirmation of the deposition. Plaintiff's counsel will be located at the offices of Shelburne Sherr Court Reporters, 550 W C Street, Suite 700 San Diego, CA 92101. Plaintiff is demanding that Defendant, Liberty Power Holdings LLC ("LPH") designate the person or persons most knowledgeable ("PMK") and that they are prepared to testify on behalf of LPH concerning the subject matter described on Attachment A hereto. Finally, the Plaintiff and LPH agree that the deposition will be conducted under the guidelines agreed upon in Attachment B. The deposition(s) will commence at December 8, 2022 9:00 am PST and for the maximum amount of time permitted. If necessary, each deposition will be adjourned until completed

DATED: November 18, 2022            **PRATO & REICHMAN, APC**


                                    /s/Justin Prato, Esq.
                                    By: Justin Prato, Esq.
                                    **Prato & Reichman, APC**
                                    Attorneys for Plaintiff,
                                    Paul Sapan

Attachment A

<u>PMK Description:</u>

The person most knowledgeable regarding sales of services or products of LPH via telemarketing including telemarketing practices and oversight of such activities, including but not limited to, compliance with the do-not-call provisions of the Telephone Consumer Protection Act.  It would also include knowledge of hiring or retaining of agents or representatives regarding telemarketing, including the purchasing of leads from lead agents.

Deposition Notice

Attachment B

Pursuant to Rules 29 and 30(b)(4) of the Federal Rules of Civil Procedure, the parties jointly move for the Court to enter the following stipulated deposition protocol for the deposition of Plaintiff Paul Sapan ("Plaintiff"), which will be taken by Defendant, LPH and through their attorneys of record, on December 8, 2022. (subject to schedule modifications, if necessary, agreed upon by counsel for both parties):

1.      Based on agreement, the deposition of Plaintiff will proceed with the deponent and/or attorneys for the parties being in separate, remote locations.  The deposition agent and counsel for Plaintiff may be in the same room. The deposition will be conducted by video through the use of a Zoom-based program called Remote Counsel, which will be operated by Shelburne Sherr Court Reporters & Videography ("Shelburne Sherr"), located at Shelburne Sherr Court Reporters, 550 W C Street, Suite 700 San Diego, California 92101.

2.      On the day of the deposition the deponent, and Plaintiff's counsel, and Defendant's counsel will connect to the video feed by clicking on the provided link, and will connect to audio by dialing by phone into a conference line, that will be e-mailed to them by Shelburne Sherr at least 24 business hours prior to the deposition.  Attendees must not forward the link they receive by e-mail, or allow anyone else to use the link sent to them.  Attendees who are not speaking may choose not to receive the video feed by dialing in by phone only.

3.      Plaintiff, Plaintiff's counsel, and Defendant's counsel are each responsible for having all necessary equipment, and high-speed internet access, in good working order to enable Defendant's counsel to depose Plaintiff by

- 4 -

Deposition Notice

the means specified in the deposition notice and in an environment reasonably free of distraction and interference.

4.      Exhibits may be: (1) uploaded to Remote Counsel during or prior to the deposition, to be held confidentially by Shelburne Sherr until introduced by counsel during the deposition, when a copy of the exhibit will be made available electronically to all attendees; (2) transmitted to the parties during or prior to the deposition by a file transfer service (e.g., USAfx); (3) e-mailed to the Defendant's counsel prior to the deposition to be produced to the deponent.

5.      Exhibits may be marked during or prior to the deposition. The official copies of the exhibits will be provided to the court reporter at the conclusion of the deposition.

6.      During the deposition, the deponent, Plaintiff's counsel, and Defendant's counsel must be on-camera at all times that the deposition is on the record.  All other attendees will not be on camera and will not speak on the record or otherwise disrupt the deposition, and must keep their audio connection on mute to avoid unintentional noise.

7.      The parties agree to not use the "chat" feature to communicate with the deponent during the deposition with the exception of the facilitation of displaying and viewing exhibits, in which case any "chat" messages will be sent to "everyone."

8.      Any private communication, such as via e-mail, telephone, private chat, text message, or other electronic or virtual means, between the deponent and counsel is strictly prohibited while the deposition is in session.

9.      While the deposition is on the record, no person may communicate with the deponent off the record, except regarding the application of privilege when it is stated on the record that such communications are taking place.

10.     Any attorney-client conversations should be held outside the presence of the audio/video interface.

11.     No one else is to be in the same room as the deponent while the deposition is on the record.  If somebody enters the room while the deposition is ongoing the deponent will immediately advise all counsel.

12.     During the deposition, the deponent will not use, consult, or refer to any document or writing in any form including, but not limited to, handwriting, typewriting, transmitting by e-mail or facsimile, and every other means of recording upon any tangible thing, any form or communication, including letters, words, pictures, sounds, or symbols, other than the exhibits Plaintiff is given during the deposition.  Nor will the deponent speak with any person during the course of the deposition concerning the subject matter of this case, other than their counsel.  While the deposition is on the record, they will not use a cell phone; tablet, laptop, or desktop computer; or any other electronic device to communicate with any person.  If the deponent needs technical assistance during the course of the deposition, the individual providing the assistance will be announced at the earliest opportunity.

13.     Because the court reporter will not be physically present in the same room as the deponent, the oath will be administered and the stenographic record will be taken remotely.  In lieu of an oath administered in-person, the deponent will orally declare their testimony in this matter under penalty of perjury as directed by the remote court reporter.

14.     In the event of technological difficulties or other interruptions affecting the deposition, it shall be suspended for an appropriate length of time.  In the event of technological difficulties or other interruptions affecting other attendees the deposition will continue.

15.     In the event that progress at the deposition is slowed by technological limitations, the parties may stipulate to extend the deposition beyond seven hours or to resume the deposition the following day.

16.     Should technical issues prevent the court reporter from reliably hearing or transcribing the testimony at the deposition and such technical issue cannot be remedied in a timely manner, counsel for the parties shall meet, confer, and cooperate with one another regarding the rescheduling of the deposition in person.

17.     All objections to the use and admissibility of the transcript of the deposition taken pursuant to this request based on the fact that the deposition was taken by remote means are deemed waived.

18.     Unless otherwise stated, all other rules contained in the Federal Rules of Civil Procedure and the Civil Local Rules govern the deposition.

19.     Nothing in this agreement waives the rights of any Party to seek any appropriate relief from the Court.

20.     Nothing in this agreement constitutes a consent to proceed in any subsequent depositions via videos or a waiver of any request for an in person deposition.

Deposition Notice

## AFFIDAVIT OF SERVICE

 I, Justin Prato., declare that I am a resident of the State of California and I am over the age of eighteen years and not a party to the action.  My business address is 3675 Ruffin Road, Suite 220, San Diego CA 92123.  On the date of signing this affidavit reflected below, I served the forgoing instrument on the interested parties in this case.  I did this by placing a true copy of such documents, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California, addressed to the following recipients:

Michael A. DiNardo
YK Law LLP
455 S. Figueroa St., Suite 2280
Los Angeles, CA 90071


I declare under penalty of perjury under the laws of the State of California that the above is true and correct, and that this document is executed in San Diego, California on the date below.


DATED: November 18, 2022                    **PRATO & REICHMAN, APC**


                                            /s/Justin Prato, Esq.
                                            By: Justin Prato, Esq.
                                            **Prato & Reichman, APC**
                                            Attorneys for Plaintiff

- 8 -

Deposition Notice