**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 Cases |
| | |
| **LIBERTY POWER HOLDINGS, LLC,** | **Case No. 21-13797-SMG** |
| **LPT, LLC,** | **Case No. 21-15537-SMG** |
| **LIBERTY POWER MARYLAND, LLC,** | **Case No. 21-15539-SMG** |
| **LIBERTY POWER DISTRICT OF** | **Case No. 21-15540-SMG** |
| **COLUMBIA, LLC,** | |
| | **(Jointly administered 21-13797-SMG)** |

_____/

**DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY
CODE AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING
THE TERMS OF A SETTLEMENT BY AND AMONG THE DEBTORS, BOSTON
ENERGY TRADING AND MARKETING, LLC AND PETER S. KAUFMAN**

Liberty Power Holdings, LLC ("Holdings"), Liberty Power District of Columbia, LLC

("Liberty District of Columbia"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty

Maryland"), as debtors-in-possession (collectively, the "Debtors") in these chapter 11 cases (the

"Chapter 11 Cases"), by and through their undersigned counsel, hereby submit this motion (the

"Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the

"Approval Order"), pursuant to section 105(a) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving the terms of that certain Settlement Agreement, dated as of April

7, 2023 (the "Settlement Agreement")[1] attached hereto as Exhibit B, between and among the

Debtors and Boston Energy Trading and Marketing, LLC ("BETM") on one hand and Peter S.

Kaufman on the other hand ("Kaufman")(the Debtors, BETM and Kaufman are sometimes

individually referred to herein as a "Party" and collectively, as the "Parties").  In support of this

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Settlement Agreement.

Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' bankruptcy cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are section 105(a) of Bankruptcy Code and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

3.      On April 20, 2021 (the "Holdings Petition Date"), Holdings filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Since that time, Holdings has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      On June 4, 2021 (the "Subsidiary Petition Date"), each of Liberty District of Columbia, LPT and Liberty Maryland filed chapter 11 bankruptcy petitions, which bankruptcy cases were jointly administered with the chapter 11 case of Holdings, including to facilitate the sale of all or substantially all of the Debtors' assets, including without limitation, retail customer contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code.

5.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Bob Butler, Chief Restructuring Officer, in Support of the Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[ECF No. 10].

## RELEVANT BACKGROUND

6.      BETM is the Debtors' senior secured creditor and DIP lender in the Chapter 11 Cases as set forth in certain Orders entered by the Bankruptcy Court. [ECF Nos. 86, 153, 491].

7.      At all relevant times, David Hernandez ("Hernandez") was (i) the chief executive officer and a member of the Board of Managers of Holdings.  During March and April 2021, Kaufman asserts that he served as an unpaid, informal, advisor to Hernandez with respect to Hernandez's interests in Liberty Power Corp LLC ("LPC"), the Debtors' ultimate parent company.

8.      The Debtors and their professionals conducted an investigation into potential claims and causes of action that the Debtors might have against Kaufman, including taking certain Rule 2004 examinations.  Based on such investigation, the Debtors asserted certain claims and causes of action against Kaufman relating to his alleged conduct and omissions as an advisor to Hernandez (the "Kaufman Claims").

9.      Kaufman has denied any liability for or related to the Kaufman Claims, and has expressed his intention to aggressively defend any of the Kaufman Claims, which Kaufman Claims he asserts are entirely without legal or factual support, if commenced by the Debtors.

10.      In order to avoid the expense, delay and risk of litigation of the disputes between and among the Parties as set forth above, the Parties engaged in extended and good faith settlement negotiations for an extended period of time, including through a pre-suit mediation with Harley E. Riedel, Esq. (the "Mediator") in person on January 17-18, 2023 (the "Mediation").

11.      Based on and as a result of such settlement discussions and Mediation, the Parties entered into the Settlement Agreement to provide for the final compromise, resolution and settlement of any and all claims and disputes between and among them, including, but not limited to, those disputes related to the Kaufman and any and all other claims and causes of action that might exist between and among them all in accordance with the terms and conditions set forth in the Settlement Agreement.

## SUMMARY OF THE SETTLEMENT AGREEMENT

12.     By this Motion, the Debtors request that the Court enter the Approval Order

approving the Settlement Agreement pursuant to Bankruptcy Code section 105(a) and Bankruptcy

Rule 9019(b).[2]  Specifically, pursuant to the terms of the Settlement Agreement[3] and subject to the

approval of this Court, the Parties have agreed to the following:

> a.     **Settlement Payment**: Kaufman shall pay or cause to be paid to the Debtors the aggregate sum of Seventy-Six Thousand, Two Hundred and Fifty and 00/100 Dollars ($76,250.00) (the "Settlement Payment"), which Settlement Payment shall be paid in immediately available funds within three (3) business days after the date the Approval Order becomes final and non-appealable.

> b.     **Attorneys' Fees and Costs**: All Parties to the Settlement Agreement shall bear their own attorneys' fees and costs incurred in the Chapter 11 Cases, the Mediation, the Settlement Agreement and any and all legal proceedings related thereto.

> c.     **Cooperation in Litigation**:    Kaufman agrees to reasonably cooperate in good faith with the Debtors and their respective attorneys or other legal representatives in connection with the Debtors' prosecution and/or defense of any claim, cause of action or objection to claim that the Debtors have commenced or may commence or become involved in against or with any third party(ies) which arises out of events related to the Debtors or their operations, either before or after the Petition Date, including but not limited to, any claims or causes of action that the Debtors may have against Pre-Petition Professionals who represented the Debtors or any of them, or who provided services, including legal services, to the Debtors or any of them (collectively, the "Third Party Claims").

> The agreement to cooperate as set forth herein includes, but is not limited to, (a) meeting with the Debtors and/or their professionals by telephone, zoom or in person at mutually convenient times and places in order to provide truthful information and knowledge of matters at issue and recollection of events; (b) appearing at the Debtors and/or their attorneys' request (and, to the extent possible, at a time

---

[2] The Parties have separately entered into a Standstill and Tolling Agreement in order to toll and extend any and all statute of limitations periods, statutes of repose periods, claims of laches, waiver, and/or estoppel or other time based or similar defenses that are or might be applicable to the Kaufman Claims by virtue of  any state law, federal law or bankruptcy law or authority, whether statutory or common law, including under 11 U.S.C. §546 and/or §108 of the Bankruptcy Code, that bar or limit the Debtors from commencing, filing, and/or prosecuting any of the Kaufman Claims pending the Bankruptcy Court's ruling on this Motion.

[3] The description of the terms of the Settlement Agreement herein is in summary form.  All parties in interest are encouraged to read the Settlement Agreement in its entirety.  In the event of an inconsistency between the terms of the Settlement Agreement described in this Motion and the Settlement Agreement itself, the terms of the Settlement Agreement shall control.

convenient to each party that does not conflict with the needs or requirements of party's then-current employer) as a witness at depositions or trials, without necessity of a subpoena, in order to state truthfully each Parties' knowledge of matters at issue; and (c) signing at the Debtors and/or their attorneys' request declarations or affidavits that truthfully state matters of which each Party has knowledge. The Debtors shall promptly pay or reimburse Kaufman for reasonable out-of-pocket expenses with prior approval from the Debtors (including travel and lodging, but not legal fees and disbursements) incurred by him in providing such cooperation.

d.      **General Releases**:  As set forth in detail in the Settlement Agreement, the Debtors and BETM on the one hand and Kaufman and certain related parties on the other hand are exchanging mutual general releases.

e.      **Specific Exclusions from Releases; No Third-Party Beneficiaries of Releases**.      The releases being provided by the Debtor Releasing Parties expressly and specifically exclude any and all claims or causes of action, including the Third Party Claims, that the Debtor Releasing Parties have against any Pre-Petition Professionals who represented the Debtors or any of them, or who provided services, including legal services, to the Debtors or any of them.  In addition, nothing expressed or implied in the Settlement Agreement is intended or shall be construed to confer upon or give to any person or entity, other than the Parties hereto and the Released Parties, any rights, remedies or benefits under or by reason of the Settlement Agreement or the releases provided by the Debtor Releasing Parties therein.  For avoidance of doubt, the Pre-Petition Professionals shall not have any rights, remedies or benefits under or by reason of the Settlement Agreement or the releases provided by the Debtor Releasing Parties therein.

## RELIEF REQUESTED

13.      By this Motion, the Debtors request that the Court enter the Approval Order (a) approving the Settlement Agreement pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(b), which provides for, among other things, the final compromise, resolution and settlement of any and all claims and disputes between the Debtors and BETM on the one hand and Kaufman on the other hand, all in accordance with the terms and conditions set forth in Settlement Agreement.

## BASIS FOR RELIEF

**A.      The Settlement Agreement Should be Approved.**

14.     Fed. R. Bankr. P. 9019(a) provides that: "*On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct*." Fed. R. Bankr. P. 9019(a). Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the rights and powers afforded to a trustee serving in a chapter 11 case. *See* 11 U.S.C. § 1107(a). Furthermore, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). Accordingly, it is within the scope of this Court's authority to grant the Motion.

15.     "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Fed. R. Bankr. P. 9019(a) grants the bankruptcy court the power to approve settlements and compromises. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005). Compromises and settlements are looked upon favorably in bankruptcy cases because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Motors Liquidation Co*., 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017) ("Compromises are favored in bankruptcy.").

16.     Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). When considering compromises or settlements for approval, the bankruptcy court is to "determine whether the proposed settlement

is fair and equitable." *In re Air Safety Int'l, L.C.*, 336 B.R. at 852.  The standards for approval are well settled and require the Court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983); *Fla. Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).  The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness.  *See W.T. Grant Co*., 699 F.2d at 608.

17.     In the Eleventh Circuit, the Court must consider the following factors in determining whether to approve the settlement: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, 498 U.S. 959 (1990) (establishing the legal standard for approval of settlements).

18.      In evaluating the settlement, the Court "need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised … rather, the Court may, and should, make a pragmatic decision on the basis of all equitable factors." *In re Holywell Corp*., 93 B.R. 291 (Bankr. S.D. Fla. 1988) (emphasis in original, citations omitted).

### B.    Application of Relevant Factors to the Settlement Agreement.

19.     The Settlement Agreement is the product of arms' length, good faith negotiations between the Parties with the assistance of a sophisticated mediator.  Other than the terms set forth in the Settlement Agreement, there are no side agreements, arrangements, or understandings

between the Parties.  Moreover, there is no novel or innovative mechanism proposed or required to faithfully carry out the terms of the Settlement Agreement.  No such mechanics are necessary because the Settlement Agreement calls for nothing more than the settlement of a litigation claim, payment of a Settlement Payment and the exchange of mutual releases between the Parties, with certain express language preserving claims against other parties.

20.    As applied to the circumstances presented by this case, the Debtors submit that the *Justice Oaks* Factors weigh heavily in favor of approval of the Settlement Agreement.

21.    ***The Probability of Success in Litigation; Complexity.***  First, approval of the Agreement will allow the parties to avoid costly, time-consuming, and distracting litigation. Without the Settlement Agreement, the Debtors would be required to commence litigation in respect of the Kaufman Claims, which involve complex factual and legal issues and would involve expert testimony on certain issues.  Kaufman is represented by sophisticated counsel, has raised several defenses to the Kaufman Claims, and has expressed his intention to aggressively defend the Kaufman Claims. As a result, the Debtors recognize that litigation risks exist in pursuing the Kaufman Claims.  Therefore, the Debtors cannot guarantee that they will prevail on the underlying litigation, and even if they did, there is no question that substantial costs must be incurred to do so, not the least of which are time and legal fees.  In addition, if the Debtors pursue their claims through to judgment, such litigation would take considerable time, and would most likely involve potential appeals.  Therefore, this *Justice Oaks* factor heavily favors approval of the Settlement Agreement.

22.    ***The Collection Factor***.  The Settlement Agreement provides for the payment of an amount equal to $76,250.00 in immediately available funds.  In reaching the Settlement Agreement, the Debtors have had to consider the collection risk in pursuing Kaufman to collect

on any judgment that might be obtained.  The Debtors do not have financial information on Kaufman other than what is available in the public domain.  As a result, there is uncertainty about the Debtors' ability to collect on any meaningful judgment. Therefore, this *Justice Oaks* factor heavily favors approval of the Settlement Agreement.

23.     ***Paramount Interests of Creditors***.  The Settlement Agreement is in the paramount interest of stakeholders in these cases. BETM is a party to the Settlement Agreement and therefore supports the approval of this Motion and the Settlement Agreement.  Based on the economics of these Chapter 11 Cases, BETM is the primary beneficiary of the recoveries under the Settlement Agreement.  Therefore, this factor weighs in favor of approval of the Settlement Agreement

24.     Furthermore, it is self-evident that, by agreeing to the Settlement Agreement, the Debtors believe that the Settlement Agreement is fair and favorable.  This belief is a sound exercise of the Debtors' business judgment, formed after lengthy discussions with the Debtors' advisors. Given the uncontroverted reasonableness of the Debtors' business judgment, the Court may give weight to the Debtors' opinion that the settlement is fair and equitable. The Debtors respectfully submit that an exercise of discretion to do so is warranted for purposes of this Motion.

25.     In consideration of the foregoing factors, the Debtors respectfully submit that the settlement and compromise contained in the Settlement Agreement falls well above the lowest point in the "range of reasonableness," and satisfies the legal standard set forth in *Justice Oaks*. While the professionals for each of the Parties all feel strongly about their respective litigation positions, it is in the best interests of the bankruptcy estates to seek approval of the Settlement Agreement under the facts and circumstances of these cases.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Approval Order attached hereto as Exhibit A (i) approving the terms of the Settlement Agreement, and (ii) granting

such other relief as the Court deems appropriate under the circumstances.

**Dated: April 10, 2023.**                    Respectfully Submitted,


                                              **VENABLE, LLP.**
                                              *Counsel for Debtors-in-Possession*
                                              100 Southeast Second Street, Suite 4400
                                              Miami, Florida 33131
                                              Telephone: (305) 349-2300
                                              Facsimile: (305) 349-2310

                                              By: ____ /s/ *Paul J. Battista* ____
                                                      Paul J. Battista, Esq.
                                                      Florida Bar No. 884162
                                                      pjbattista@venable.com
                                                      Mariaelena Gayo-Guitian, Esq.
                                                      Florida Bar No. 813818
                                                      mguitian@venable.com
                                                      Heather L. Harmon, Esq.
                                                      Florida Bar No. 13192
                                                      hlharmon@venable.com

**EXHIBIT "A"**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Chapter 11 Cases

**LIBERTY POWER HOLDINGS, LLC,**          **Case No. 21-13797-SMG**
**LPT, LLC,**                                         **Case No. 21-15537-SMG**
**LIBERTY POWER MARYLAND, LLC,**          **Case No. 21-15539-SMG**
**LIBERTY POWER DISTRICT OF**             **Case No. 21-15540-SMG**
**COLUMBIA, LLC,**

                                                       **(Jointly administered 21-13797-SMG)**

_____/

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND FED. R. BANKR. P. 9019 TO APPROVE THE TERMS OF
A SETTLEMENT BY AND AMONG THE DEBTORS, BOSTON ENERGY TRADING
AND MARKETING, LLC AND PETER S. KAUFMAN**

      **THIS MATTER** came before the Court on April ___, 2023 __am/pm (the "Hearing") upon

the motion (the "Motion") of the above-captioned debtors and debtors in possession (the

"Debtors") for entry of an Order, pursuant to Bankruptcy Code section 105(a) and Bankruptcy

Rule 9019, approving the terms of that certain Settlement Agreement, dated as of April 7, 2023,

attached to the Motion as Exhibit B (the "Settlement Agreement"),[1] between and among the

Debtors and Boston Energy Trading and Marketing, LLC ("BETM") on one hand and Peter S.

Kaufman on the other hand ("Kaufman"); and the Court having jurisdiction to consider the Motion

pursuant to 28 U.S.C. §§ 157(a) and 1334; having found that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; having found that the relief requested in the Motion is in

the best interests of the Debtors' estates, their creditors, and other parties in interest; and having

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Settlement Agreement.

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and having reviewed the Motion and heard the statements in support of the relief requested therein at the Hearing; and having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, it is

**ORDERED THAT:**

1.      The Motion is **GRANTED** in its entirety.

2.      The Settlement Agreement is approved pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(b) in its entirety.

3.      Nothing expressed or implied in the Settlement Agreement shall, or shall be, construed to confer upon or give to any person or entity, including specifically the Pre-Petition Professionals, any rights, remedies or benefits under or by reason of the Settlement Agreement or the releases provided by the Debtor Releasing Parties therein.

4.      The Debtors are authorized and empowered to take such actions as may be reasonably necessary to implement and effectuate the terms of the Settlement Agreement.

5.      This Court shall retain jurisdiction with respect to all matters, claims, rights, and obligations arising from or related to the implementation of this Order.

###

**Submitted By:**
Paul J. Battista, Esq.
Venable, LLP
*Counsel for Debtors-in-Possession*
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
pjbattista@venable.com
**Copies to:**
Paul J. Battista, Esq. [Attorney Battista is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the court within 3 days]

**EXHIBIT "B"**
**(KAUFMAN/BETM SETTLEMENT AGREEMENT)**

## GLOBAL SETTLEMENT AND RELEASE AGREEMENT

**THIS GLOBAL SETTLEMENT AND RELEASE AGREEMENT** (this "Agreement") is made and entered into as of the 7th day of April, 2023, by and between Liberty Power Holdings, LLC ("Holdings"), Liberty Power District Of Columbia, LLC ("Liberty DC"), LPT, LLC ("LPT") and Liberty Power Maryland, LLC ("Liberty MD") (collectively, the "Debtors") each a debtor and debtor-in-possession in the Chapter 11 Cases (as defined below), Boston Energy Trading and Marketing LLC ("BETM"), and Peter S. Kaufman ("Kaufman") (the Debtors, BETM, and Kaufman are sometimes individually referred to herein as a "Party" and collectively, as the "Parties").

### Recitals

A.     On April 20, 2021, Holdings filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") under Case No. 21-13797-SMG (the "Holdings Chapter 11 Case").

B.     On June 4, 2021, each of Liberty DC, LPT and Liberty MD (collectively, the "Subsidiary Debtors") filed chapter 11 bankruptcy petitions in the Bankruptcy Court under Case Nos. 21-15550-SMG, 21-15537-SMG and 21-15539-SMG, which bankruptcy cases were jointly administered with the Holdings Chapter 11 Case (collectively with the Holdings Chapter 11 Case, the "Chapter 11 Cases").

C.     BETM is the Debtors' senior secured creditor and DIP lender in the Chapter 11 Cases by virtue of certain Orders entered by the Bankruptcy Court in the Chapter 11 Cases.

D.     During March and April 2021, Kaufman asserts that he served as an unpaid, informal, advisor to David Hernandez, one of the Debtors' managers ("Hernandez"), with respect to Hernandez's interests in Liberty Power Corp LLC ("LPC"), the Debtors' ultimate parent company.

E.     The Debtors have asserted certain claims and causes of action against Kaufman, including in connection with his alleged advisory services to Hernandez (the "Kaufman Claims").

F.     Kaufman has denied any liability for or related to the Kaufman Claims, and has expressed his intention to aggressively defend any of the Kaufman Claims if commenced by the Debtors.

G.     In order to avoid the expense, delay and risk of litigation of the various disputes referred to above, the Parties engaged in extended and good faith settlement negotiations for an extended period of time, including through a pre-suit mediation with Harley E. Riedel, Esq. (the "Mediator") in person on January 17-18, 2023 (the "Mediation"), which Mediation continued through the date hereof and resulted in the settlement contained herein.

H.     Based on and as a result of the Mediation and the settlement discussions in connection therewith, the Parties desire to enter into this Agreement to provide for the final

12044833-3

compromise, resolution and settlement of any and all claims and disputes between the Debtors and BETM, on the one hand, and Kaufman, on the other hand, including, but not limited to, those disputes related to the Kaufman Claims, all in accordance with the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual promises, agreements, covenants, and releases contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, with the intention of being legally bound, hereby agree as follows:

1.      Recitals: The above Recitals are true and correct and incorporated herein.

2.      Bankruptcy Court Approval: This Agreement is subject to approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the entry of an Order by the Bankruptcy Court approving this Agreement and the terms hereof in the Chapter 11 Cases (the "Approval Order"). Within three (3) business days after the full execution of this Agreement by the Parties, the Debtors shall file with the Bankruptcy Court a motion seeking approval of this Agreement (the "Settlement Motion"), which Settlement Motion shall be reasonably acceptable to Kaufman and BETM. Thereafter, the Parties agree to cooperate with each other in seeking the entry of the Approval Order. In the event the Bankruptcy Court denies the Settlement Motion, then the terms of this Agreement shall become null and void, and the Parties shall be returned to their *status quo ante*.

3.      Settlement Payment: Subject to and in accordance with the terms hereof, Kaufman shall pay or cause to be paid to the Debtors the aggregate sum of Seventy-Six Thousand, Two Hundred and Fifty and 00/100 Dollars ($76,250.00) (the "Settlement Payment"), which Settlement Payment shall be paid in immediately available funds within three (3) business days after the date the Approval Order becomes final and non-appealable. The Settlement Payment shall be made payable to the attorneys' trust account of Venable, LLP, bankruptcy counsel for the Debtors.

4.      Attorneys' Fees and Costs: All Parties to this Agreement shall bear their own attorneys' fees and costs incurred in connection with the Chapter 11 Cases, the Mediation, this Agreement and any and all proceedings related thereto.

5.      General Release by Kaufman: As one of the material inducements to the Debtors and BETM to enter into this Agreement, effective automatically on the date the Debtors receive the Settlement Payment (the "Effective Date"), Kaufman, on behalf of himself and each and every of his heirs, agents, attorneys, legal representatives, controlled affiliates, and assigns and anyone claiming by, through, or under him (collectively, the "Releasing Parties"), hereby fully and forever remises, releases, acquits, waives, disclaims, surrenders, satisfies, and discharges each of the Debtors, their respective bankruptcy estates and BETM, together with each of the respective present and former managers (including Stephen Gray, Jay Goldman and Louis Martinsen), members, officers (including Bob Butler as the chief restructuring officer), directors, employees, attorneys, affiliates, direct and indirect subsidiaries, accountants, financial advisors, agents and representatives of each of the Debtors, their respective bankruptcy estates and BETM (collectively, the "Debtor Released Parties") of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations,

2

12044833-3

covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Releasing Parties ever had, now has or hereafter can, shall or may have against any of the Debtor Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, BETM, the Chapter 11 Cases, and the Kaufman Claims. Nothing contained in this Section or elsewhere in this Agreement shall release any of the Debtor Released Parties from their respective obligations set forth in this Agreement.

6.    General Release by the Debtors and BETM: As a material inducement to Kaufman to enter into this Agreement, effective automatically on the Effective Date, each of the Debtors and BETM, on behalf of themselves and the bankruptcy estates of the Debtors, their respective agents, attorneys, legal representatives, subsidiaries (direct and indirect), successors and assigns, and anyone claiming by, through, or under them (collectively, the "Debtor Releasing Parties"), hereby fully and forever remises, releases, acquits, waives, disclaims, surrenders, satisfies, and discharges Kaufman, any entity (an "Affiliate") of which he is an officer or that employs him, and the officers and employees of, and any direct or indirect owners (corporate, individual or otherwise) of, any such entity  (in each case "Affiliate Representatives") (collectively, the "Released Parties") of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Releasing Parties ever had, now has or hereafter can, shall or may have against any of the Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, BETM, the Chapter 11 Cases, and the Kaufman Claims. Nothing contained in this Section or elsewhere in this Agreement shall release Kaufman from his obligations set forth in this Agreement.  Notwithstanding anything herein to the contrary and for avoidance of doubt, the releases provided by the Debtor Releasing Parties herein do not and shall not release any claim or cause of action, including the Third Party Claims (as defined below), that the Debtor Releasing Parties have against any pre-petition professionals who represented the Debtors or any of them, or who provided services, including legal services, to the Debtors or any of them, excluding, however, the Affiliates and the Affiliate Representatives (the "Pre-Petition Professionals").  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give to any person or entity, other than the Parties hereto and the Released Parties, any rights, remedies or benefits under or by reason of this Agreement or the releases provided by the Debtor Releasing Parties hereunder.  For avoidance of doubt, the Pre-Petition Professionals shall not have any rights, remedies or benefits under or by reason of the Settlement Agreement or the releases provided by the Debtor Releasing Parties herein. Kaufman represents and warrants to

3

the Debtors that the Affiliates and Affiliate Representatives (who are being released pursuant to this Agreement) do not include any law firm or lawyer that provided legal services or legal representation to any of the Debtors.

7.      Cooperation in Litigation:  Kaufman agrees to reasonably cooperate in good faith with the Debtors and their respective attorneys or other legal representatives in connection with the Debtors' prosecution and/or defense of any claim, cause of action or objection to claim that the Debtors have commenced or may commence or become involved in against or with any third party(ies) which arises out of events related to the Debtors or their operations, either before or after the Petition Date, including but not limited to, any claims or causes of action that the Debtors may have against pre-petition professionals (excluding any Released Parties) who represented the Debtors or any of them, or who provided services, including legal services, to the Debtors or any of them (collectively, the "Third Party Claims"). The agreement to cooperate as set forth herein includes, but is not be limited to, (a) meeting with the Debtors and/or their professionals by telephone, zoom or in person at mutually convenient times and places in order to provide truthful information and knowledge of matters at issue and recollection of events; (b) appearing at the Debtors and/or their attorneys' request (and, to the extent possible, at a time convenient to each party that does not conflict with the needs or requirements of party's then-current employer) as a witness at depositions or trials, without necessity of a subpoena, in order to state truthfully each Parties' knowledge of matters at issue; and (c) signing at the Debtors and/or their attorneys' request declarations or affidavits that truthfully state matters of which each Party has knowledge.  The Debtors shall promptly pay or reimburse Kaufman for the reasonable out-of-pocket expenses with prior approval by the Debtors (including travel and lodging, but not legal fees and disbursements) incurred by him in providing such cooperation. The obligations of this Section 7 shall expire two years from the Effective Date.

8.      No Admission of Liability: Each Party hereto expressly acknowledges and agrees this Agreement is being entered into for the purpose of avoiding expenses associated with litigating any issues related to the matters being released herein, and that the Parties individually and collectively deny any wrongdoing or liability.

9.      Confidentiality. The Parties agree that they may disclose the existence and terms of this Agreement only (i) in connection with and as required or advisable in the Chapter 11 Cases, by the Bankruptcy Court, by the Bankruptcy Code, by the Bankruptcy Rules or by the Local Rules of the Bankruptcy Court, which includes, without limitation, seeking and obtaining the Approval Order, filing this Agreement in the Chapter 11 Cases, referencing this Agreement in any disclosure statement, and reporting the receipt of the Settlement Payment, and (ii) to such Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers and board of directors, and (iii) as required by law or order of court.

10.     Section Headlines:  The section headings as used herein are for convenience of reference only and shall not be deemed to vary the content of this Agreement or the covenants, agreements or representations set forth herein, or limit the provisions or scope of any section herein.

4

12044833-3

11.    Amendment: No amendment or modification of this Agreement shall be valid or effective unless it expressly refers to this Agreement and is in writing and signed by the Parties.

12.    Severability: This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations.  If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

13.    Entire Agreement: This Agreement constitutes the full and entire agreement and understanding between the Debtors and BETM, on the one hand, and Kaufman, on the other hand, with respect to the subject matter hereof and there are no agreements, representations, warranties, or promises except as specifically set forth herein. It is understood that the effectiveness of this Agreement is not contingent upon the effectiveness of the Parallel Agreement. .

14.    Binding Effect: This Agreement shall be binding upon and inure to the benefit of each Party hereto, its successors and assigns.

15.    Counterpart Execution: This Agreement may be executed in counterparts, and/or by the execution of counterpart signature pages which may be attached to one or more counterparts of this Agreement, and all so executed shall constitute one Agreement binding on all of the Parties hereto, notwithstanding that all of the Parties are not signatories to the original or the same counterpart.  In addition, any counterpart signature page may be executed by any Party wherever such Party is located, and may be delivered by telephone facsimile transmission or electronic mail, and any such facsimile or electronic mail transmitted signature pages may be attached to one or more counterparts of this Agreement, and such faxed or e-mailed signature(s) shall have the same force and effect, and be as binding, as if original signatures executed and delivered in person.

16.    No Waiver: No waiver of any breach or default hereunder shall be considered valid unless it references this Agreement and is in writing and signed by the Party giving such waiver, and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

17.    Choice of Law and Venue: Any and all disputes, claims and controversies arising out of, or relating to, this Agreement (including the interpretation, breach or validity thereof) shall be settled in the United States Bankruptcy Court for the Southern District of Florida (Ft. Lauderdale Division). The Parties consent to such venue and jurisdiction and waive any claims that such venue is an inconvenient forum.

18.    Consultation with Counsel:  Each Party has had the opportunity to consult with, and has in fact consulted with, such professionals, experts and legal counsel of its choice as such Party may have desired with respect to all matters settled and resolved herein; (ii) each Party has participated fully in the negotiation and preparation of this Agreement; and (iii) each Party has carefully reviewed this Agreement and is entering into same freely. Accordingly, this Agreement shall not be more strictly construed against any Party.

12044833-3

19.     <u>No Assignment of Claims</u>: Each Party represents and warrants that it has the full right, power, and authority to enter into this Agreement. The person signing this Agreement on behalf of such Party has the full authority to do so and to so bind the Party on whose behalf this Agreement is signed. Each Party represents and warrants that it is the sole owner of and has not transferred, assigned, or hypothecated any of the claims, rights, duties, demands, or causes of action released by it herein, and that no other person or entity owns, holds, or has any interest in any of the claims, rights, duties, and demands, or causes of action released by herein.

20.     <u>Further Assurances</u>: Each of the Parties hereby covenants that, from time to time after the date hereof, at any other Party's reasonable request and without further consideration, it will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all such further acts and things and to execute and deliver such additional documents and instruments as may be reasonably required to consummate, evidence or confirm this Agreement.

12044833-3

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered as of the date and year first above written by a duly authorized officer or representative of each Party hereto, as the case may be.

**Liberty Power Holdings, LLC**

By: _Bob Butler_
Name: Bob Butler
Title: Chief Restructuring Officer

**LPT, LLC**

By: _Bob Butler_
Name: Bob Butler
Title: Chief Restructuring Officer

**Liberty Power Maryland, LLC**

By: _Bob Butler_
Name: Bob Butler
Title: Chief Restructuring Officer

**Liberty Power District of Columbia, LLC**

By: _Bob Butler_
Name: Bob Butler
Title: Chief Restructuring Officer

**Boston Energy Trading and Marketing LLC**

By: _____
Name:
Title:

_____
**Peter S. Kaufman**

7

12044833-3

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered as of the date and year first above written by a duly authorized officer or representative of each Party hereto, as the case may be.

**Liberty Power Holdings, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**LPT, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**Liberty Power Maryland, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**Liberty Power District of Columbia, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer

**Boston Energy Trading and Marketing LLC**

*Reem Fahey*
By: Reem Fahey (Apr 10, 2023 09:29 EDT)
Name:   Reem Fahey
Title:   CEO


_____

**Peter S. Kaufman**

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered as of the date and year first above written by a duly authorized officer or representative of each Party hereto, as the case may be.

**Liberty Power Holdings, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**LPT, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**Liberty Power Maryland, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer


**Liberty Power District of Columbia, LLC**

By: _____
Name: Bob Butler
Title: Chief Restructuring Officer

**Boston Energy Trading and Marketing LLC**


By: _____
Name:
Title:

_____
**Peter S. Kaufman**

7

12044833-3