# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | **Chapter 11 Cases** |
| **LIBERTY POWER HOLDINGS, LLC,** | **Case No. 21-13797-SMG** |
| **LPT, LLC,** | **Case No. 21-15537-SMG** |
| **LIBERTY POWER MARYLAND, LLC,** | **Case No. 21-15539-SMG** |
| **LIBERTY POWER DISTRICT OF COLUMBIA, LLC** | **Case No. 21-15540-SMG** |
| Debtors. | **(Jointly administered 21-13797-SMG)** |
| _____/ | |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY**
**LIBERTY POWER HOLDINGS, LLC, LPT, LLC, LIBERTY POWER**
**MARYLAND, LLC AND LIBERTY POWER DISTRICT OF COLUMBIA, LLC**

**VENABLE, LLP**
Paul J. Battista, Esq.
Florida Bar No. 884162
Mariaelena Gayo-Guitian, Esq.
Florida Bar No. 813818
Heather L. Harmon, Esq.
Florida Bar No. 013192
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for the Debtors*

Dated: April 14, 2023

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARTICLE I.       DEFINITIONS AND RULES OF INTERPRETATION ............................... 2

    A.     Definitions............................................................................... 2

    B.     Rules of Interpretation ....................................................... 16

    C.     Exhibits ................................................................................ 17

    D     Computation of Time .......................................................... 17

    E     Governing Law ................................................................... 17

ARTICLE II.      ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, STATUTORY FEES AND BETM DIP FINANCING CLAIMS ........................................................... 17

    A.     Administrative Claims ....................................................... 17

    B.     Professional Fee Claims..................................................... 18

    C.     Priority Tax Claims............................................................ 18

    D.     Statutory Fees ..................................................................... 19

    E.     BETM's DIP Financing Claims.......................................... 19

ARTICLE III.     CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................................................................... 19

    A.     Summary of Classification................................................. 19

    B.     Class Categories................................................................. 20

ARTICLE IV      TREATMENT OF CLAIMS AND EQUITY INTERESTS ......................... 21

    A.     Treatment of Claims and Equity Interests......................... 21

        1. Class 1 – Allowed Other Priority Claims ...................... 21

        2. Class 2 – Allowed Secured Claim of The Hanover Insurance Company ....... 22

        3. Class 3 – Allowed Secured Claim of Eckert Seamans Cherin and Mellot, LLC (Eckert Seamans) ....................................................... 22

        4. Class 4 – Allowed Prepetition Secured Claim of BETM .............................. 23

        5. Class 5 – Allowed Secured Claim of Shell Energy North America (US), L.P. (Shell Energy) ....................................................... 23

        6. Class 6 – Allowed Secured Claim of the Mezzanine Lender(s) .................... 23

        7. Class 7 – Allowed General Unsecured Claims ............................................. 24

        8. Class 8 – Allowed Subordinated Unsecured Claim of the Office of the Illinois Attorney General (Holdings only) .................................................... 25

i

9. Class 9 – Allowed Equity Interests ................................................ 25

ARTICLE V.        ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR
                  WITHDRAWAL OF THE PLAN ................................................ 25

    A.    Classes Entitled to Vote ................................................ 25

    B.    Acceptance by Class of Claims and Equity Interests ................................................ 26

    C.    Nonconsensual Confirmation ................................................ 26

    D.    Revocation or Withdrawal; No Admissions ................................................ 26

    E.    Amendment of Plan and/or the Plan Documents ................................................ 27

    F.    Special Provision Governing Unimpaired Claims ................................................ 27

ARTICLE VI.       MEANS FOR IMPLEMENTATION OF THE PLAN ................................................ 27

    A.    Joint Chapter 11 Plan and Vesting of Property ................................................ 27

    B.    Source of Funding for Plan Distributions ................................................ 27

    C.    The BETM Plan Settlement Pursuant to Bankruptcy Rule 9019 ................................................ 27

    D.    Distributions ................................................ 30

    E.    Liquidation and Dissolution of Debtors ................................................ 30

    F.    Preservation and Abandonment of Records ................................................ 30

    G.    Deadline for Filing Application for Professional Fee Claims ................................................ 30

    H.    Disallowance of Claims Without Further Order of the Court ................................................ 30

    I.    Post-Effective Date Report and Fees ................................................ 31

    K.    Preservation of Causes of Action ................................................ 31

    L    Section 1146 Exemption from Certain Taxes and Fees ................................................ 32

    M.    Closing of the Chapter 11 Cases ................................................ 32

ARTICLE VII.      PROVISIONS GOVERNING DISTRIBUTIONS ................................................ 32

    A.    Manner of Cash Payments Under the Plan ................................................ 32

    B.    Delivery of Distributions ................................................ 33

    C.    Undeliverable and Unclaimed Distributions ................................................ 33

    D.    Compliance with Tax Requirements ................................................ 33

    E.    No Payments of Fractional Dollars ................................................ 34

    F.    Interest on Claims ................................................ 34

    G.    No Distribution in Excess of Allowed Amount of Claim ................................................ 34

    H.    Setoffs and Recoupment ................................................ 34

    I.    De Minimis Distributions ................................................ 35

J.     Distributions in Satisfaction; Allocation ........................................... 35

K.    No Distribution on Late-Filed Claims ............................................... 35

**ARTICLE VIII.   DISPUTED CLAIMS** .......................................................... 35

A.    Resolution of Disputed Claims ......................................................... 35

B.    Objection Deadline ........................................................................... 35

C.    Estimation of Claims ........................................................................ 36

D.    No Distributions Pending Allowance; Disputed Claims Reserve ....... 36

**ARTICLE IX.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................................................................... 36

A.    General Provisions ........................................................................... 36

B.    Notice of Deemed Rejection ............................................................. 37

**ARTICLE X.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ..................... 37

A.    Conditions Precedent to the Effective Date ....................................... 36

B.    Waiver of Conditions Precedent ....................................................... 37

**ARTICLE XI    EFFECT OF CONFIRMATION; INJUNCTION, EXCULPATION AND RELATED PROVISIONS** .............................................................. 38

A.    Settlement, Compromise, and Release of Claims and Equity Interests .............. 38

B.    Plan Injunction ................................................................................. 38

C.    All Distributions Received in Full and Final Satisfaction ................... 38

D.    No Discharge of Debtors ................................................................... 39

E.    No Modification of Res Judicata Effect ............................................. 39

F.    Exculpation ...................................................................................... 39

G.    Limitations on Exculpation ............................................................... 39

**ARTICLE XII.   RETENTION OF JURISDICTION BY BANKRUPTCY COURT** ............. 40

**ARTICLE XIII.  MISCELLANEOUS PROVISIONS** ............................................ 41

A.    Modification of Plan ......................................................................... 41

B.    Revocation of Plan ........................................................................... 41

C.    Binding Effect .................................................................................. 41

D.    Successors and Assigns ..................................................................... 42

E.    Governing Law ................................................................................. 42

F.    Severability ...................................................................................... 42

G.      Regulatory Approval .................................................................... 42

H.      Reservation of Rights .................................................................. 42

I.      Section 1125(E) Good Faith Compliance ........................................ 42

J.      Further Assurance ....................................................................... 42

K.      Service of Documents .................................................................. 43

L.      Filing of Additional Documents ................................................... 43

M.      No Stay of Confirmation Order ................................................... 43

N.      Bankruptcy Rule 9019 Request; Impact ........................................ 43

ARTICLE XIV    CONCLUSION ................................................................... 43

# INTRODUCTION

**LIBERTY POWER HOLDINGS, LLC** ("Holdings"), **LPT, LLC** ("LPT"), **LIBERTY POWER MARYLAND, LLC** ("Liberty MD") and **LIBERTY POWER DISTRICT OF COLUMBIA, LLC** ("Liberty DC") (collectively, the "Debtors"), as debtors-in-possession in the above-captioned cases, hereby propose this *Joint Chapter 11 Plan of Liquidation* under Bankruptcy Code section 1121 (including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Article I herein) (the "Defined Terms").

Although proposed jointly for administrative purposes, the Plan shall apply as a separate Plan for each of the Debtors and the classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors. The Debtors' bankruptcy Estates have not been substantively consolidated.

In summary, and subject to the more specific details provided herein, the Plan provides for (i) the Distribution of the Available Cash generated from the liquidation of the Debtors' Assets during the Chapter 11 Cases and the settlement of certain Causes of Action, including pursuant to the D&O Settlement Agreement and the Kaufman Settlement Agreement, and/or (ii) a reserve of a portion of the Available Cash for the prosecution of certain Causes of Action pursuant to the BETM Plan Settlement, all pursuant to the priorities mandated by the Bankruptcy Code as outlined in the Liquidation Analysis attached as **Exhibit 3** to the Disclosure Statement.

For a discussion of the Debtors' history, business, operations, assets and liabilities, for a summary and analysis of the Plan, settlement and preservation of Causes of Actions, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the *Joint Disclosure Statement for Joint Chapter 11 Plan of Reorganization*, dated as of April 14, 2023, as such disclosure statement may be amended, modified or supplemented (the "Disclosure Statement").

**THE ONLY CLASS OF CLAIMS OR EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN IS THE CLASS 4 ALLOWED SECURED CLAIM OF BOSTON ENERGY TRADING AND MARKETING, LLC.  ALL OTHER CLASSES OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN ARE EITHER UNIMPAIRED AND THEREFORE ARE CONCLUSIVELY PRESUMED TO HAVE VOTED TO ACCEPT THE PLAN UNDER SECTION 1126(F) OF THE BANKRUPTCY CODE, OR WILL NOT RECEIVE OR RETAIN ANY PROPERTY UNDER THE PLAN ON ACCOUNT OF SUCH CLAIMS OR EQUITY INTERESTS, AND THEREFORE ARE DEEMED TO HAVE REJECTED THE PLAN UNDER SECTION 1126(G) OF THE BANKRUPTCY CODE. FOR AVOIDANCE OF DOUBT, THE DEBTORS DO NOT INTEND TO SOLICIT VOTES FROM ANY CLASS OF CLAIMS OR EQUITY INTERESTS OTHER THAN FROM BOSTON ENERGY TRADING AND MARKETING, LLC ON ITS CLASS 4 ALLOWED SECURED CLAIM.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN**

**THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINITIONS AND RULES OF INTERPRETATION

### A.  Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      *"Adequate Protection Order"* shall mean the *Order Granting Debtors' Motion for Entry of Order Approving Stipulation With Boston Energy Trading and Marketing, LLC (I) Authorizing Continued Use of Cash Collateral, (II) Establishing Adequate Protection Obligation, and (III) Granting Adequate Protection In Connection Therewith and Related Relief* entered by the Bankruptcy Court on October 18, 2022 [ECF No. 801] granting, among other relief, approval of the Cash Collateral Stipulation.

2.      *"Administrative Claim"* means a Claim, other than the DIP Financing Claim or a Professional Fee Claim, filed against one of more of the Debtors' Estates prior to the applicable Administrative Claims Bar Date and allowed by order of the Bankruptcy Court, and entitled to priority under Bankruptcy Code section 503(b), 507(a)(2), or 507(b), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving any Debtor's Estate and of operating the business of any Debtor; and (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code.  Any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claim and shall be paid in accordance with Article II.D of this Plan.  Professional Fee Claims are excluded from the definition of Administrative Claim and shall be paid in accordance with Article II.B of this Plan.  Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

3.      *"Administrative Claims Bar Date"* shall mean the First Administrative Claims Bar Date and the Second Administrative Claims Bar Date, which are the dates established by Final Order of the Bankruptcy Court as the last date to request payment of Administrative Claims, other than with respect to (a) Claims of Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any professional or any other Person for making a substantial contribution in the Chapter 11 Case), and (b) liabilities incurred by any Debtor other than in the ordinary course of business after the Administrative Claims Bar Date but before the Effective Date.

2

4.      "*Affiliate*" has the meaning assigned to such term in Bankruptcy Code section 101(2).

5.      "*Agreed Senior Claims*" shall have the meaning set forth in Article II(E) below.

6.      "*Allowed*" means, with respect to a Claim against or Equity Interest in the Debtors, (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules and any Final Order, (ii) if no Proof of Claim or Equity Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in an amount and not Disputed or contingent, as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or Order of the Bankruptcy Court, but only to the extent applicable, or as to which an objection has been interposed and such Claim or Equity Interest has been allowed in whole or in part by a Final Order, or (iii) a Claim or Equity Interest that is allowed by Final Order; provided, however, that (a) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (b) "Allowed Claim" does not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (c) "Allowed Claim" does not include any Claim subject to disallowance under Bankruptcy Code section 502(d).

7.      "*Assets*" means all property of the Estates, including, without limitation, all property and other interests identified in Bankruptcy Code section 541(a) wherever located and whether acquired prior to or after the Petition Date, including Cash, furniture, fixtures, equipment, contracts, intellectual property, Causes of Action, together with the proceeds and products, replacements, and accessions thereof, including, without limitation, the post-petition Collateral.

8.       "*Asset Purchase Agreement*" shall mean that certain Asset Purchase Agreement dated August 20, 2021, between the Debtors and NRG Energy, Inc., a fully executed copy of which is attached to *Debtors' Expedited Motion (I) To Approve Designation of Stalking Horse Bidder, (II) To Approve Asset Purchase Agreement and Related Bid Procedures, And (IV) For Related Relief* [ECF No. 324]  for the purchase and sale of the Debtors' book of business, namely all of the Debtor's residential customer contracts and a portion of the Debtors' commercial customer contracts.

9.      "*Assignment Case*" means the *Assignment for the Benefit of Creditors of Liberty Power Corp., LLC* Case No. CACE-21-010056 pending in the Seventeenth Judicial Circuit, In and For Broward County, Florida.

10.      "*Assignee*" refers to Philip J. Von Kahle, as Assignee in the Assignment Case.

11.      "*Available Cash*" means the sum of (i) Cash on hand as of the Effective Date, including, without limitation, Cash in the Debtors' bank accounts, the Professional Fee Escrow, and the retainers of Professionals, and (ii) proceeds from any prosecution and/or settlement of

Causes of Action, including pursuant to the D&O Settlement Agreement and the Kaufman Settlement Agreement.

12. "*Avoidance Actions*" means any Cause of Action to avoid or recover a transfer of property or an obligation incurred by the Debtors and any recovery, subordination, or other remedies that may be brought by or on behalf of any Debtor and its respective Estate under the Bankruptcy Code or applicable non-bankruptcy law, including under sections 502, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code.

13. "*Ballot*" means the form distributed to the holder of an impaired Claim on which it is to be indicated whether such holder accepts or rejects the Plan.

14. "*Bankruptcy Code*" means Articles 101 et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

15. "*Bankruptcy Court*" or "*Court*" means the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division.

16. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

17. "*Bar Date*" means as applicable (i) for Holdings, June 29, 2021, which was the date established by the Bankruptcy Court in that certain *Notice of Chapter 11 Bankruptcy Case* filed in the Holdings Chapter 11 Case as the deadline to file proofs of Claim or, with respect to Governmental Units, October 18, 2021, and (ii) for each Subsidiary Debtor, August 13, 2021, which was the date established by the Bankruptcy Court in that certain *Notice of Chapter 11 Bankruptcy Case* filed in the Chapter 11 Case for each Subsidiary Debtor as the deadline to file proofs of Claim or, with respect to Governmental Units, December 1, 2021.

18. "*BETM*" means Boston Energy Trading and Marketing LLC.

19. "*BETM Adequate Protection Obligation*" shall mean an amount equal to $11,515,000, which is the superpriority administrative expense claim granted to BETM pursuant to the Adequate Protection Order.

20. "*BETM Adequate Protection Superpriority Administrative Claim*" shall mean that certain superpriority administrative claim granted to BETM under section 507(b) of the Bankruptcy Code with respect to the BETM Adequate Protection Obligation pursuant to the Cash Collateral Stipulation.

21. "*BETM Replacement Liens*" shall mean those certain replacement Liens granted to BETM pursuant to the Adequate Protection Order to secure repayment of the BETM Adequate Protection Obligation.

22.    "*BETM Superpriority Administrative Claims*" shall mean, in order of priority, BETM's allowed superpriorty administrative expense claim on account of: (i) the DIP Financing Claims, and (ii) the BETM Adequate Protection Obligation.

23.    "*BETM Plan Settlement*" means that certain settlement and compromise between the Debtors and BETM that provides for Distributions to holders of Allowed Administrative and Priority Tax Claims and/or the reserve for the prosecution of Causes of Action, all pursuant to the terms and conditions set forth in Article VI.C below.

24.    "*Bid Procedures Motion*" shall mean that certain *Debtor's Expedited Motion for Entry of an Order (1) Approving Competitive Bidding Procedures for the Sale Of Substantially All of the Debtor's Assets, (2) Scheduling Dates To Conduct Auction and Sale Hearing, (3) Approving the Form and Manner of Notices, (4) Approving The Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (5) Approving Assumption and Assignment Procedures for Executory Contracts, and (6) Granting Related Relief* [ECF No. 98] as supplemented by the *Debtors' Expedited Motion for Entry of A Supplemental Order (I) Approving the Sale of Assets of the Subsidiary Debtors Through The Court 's Bid Procedures Order, (II) Approving Revised Form of Notices, (III) Authorizing Notice of Sale By Email and Publication, and (IV) Granting Related Relief* [ECF No. 98] seeking an order of the Bankruptcy Court approving, among other things, (i) certain bidding procedures for the solicitation of higher and/or better offers for the sale of certain executory contracts and unexpired leases, including the Debtors' contracts with its retail customers and a hearing on the approval of the sale thereof, (ii) certain bid protections to the Buyer, and (iii) authorizing the sale of the Contracts free and clear of all liens, claims, encumbrances and interests under sections 363 and 365 of the Bankruptcy Code to the highest and/or best bidder therefor.

25.    "*Bid Procedures Order*" means that certain *Order Granting Debtor's Expedited Motion for Entry of an Order (1) Approving Competitive Bidding Procedures for the Sale Of Substantially All of the Debtor's Assets, (2) Scheduling Dates To Conduct Auction and Sale Hearing, (3) Approving the Form and Manner of Notices, (4) Approving The Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (5) Approving Assumption and Assignment Procedures for Executory Contracts, and (6) Granting Related Relief* [ECF No. 156] entered by the Bankruptcy Court on May 28, 2021 (i) establishing bidding procedures for the solicitation of higher and/or better offers for the sale of the Contracts, including setting an auction, if applicable, and a hearing on the approval of the sale thereof and (ii) approving certain bid protections to the Buyer.

26.    "*Business Day*" means any day other than a Saturday, Sunday, or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

27.    "*Buyer*" means NRG Energy, Inc., the buyer of substantially all of the Debtors' Assets.

28.    "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

5

29.    "*Cash Collateral*" shall have the meaning set forth in Section 363(a) of the Bankruptcy Code, which is subject of a Lien securing, in order of priority: (i) the DIP Financing Claims, (ii) the BETM Adequate Protection Obligation, and (iii) the Allowed Class 4 Secured Claim of BETM.

30.    "*Cash Collateral Stipulation*" means that certain *Stipulation for Order (I) Authorizing Continued Use of Cash Collateral, And (II) Granting Adequate Protection and Related Relief dated September 27, 2022 by and between the Debtors and BETM* [ECF No. 792].

31.    "*Causes of Action*" means any and all claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Avoidance Actions) whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertible directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, and including, without limitation, those which are: (i) property of the bankruptcy Estates under and pursuant to section 541 of the Bankruptcy Code; (ii) for professional malpractice, breach of fiduciary duty, and/or negligent supervision or retention against any and all pre-petition professionals, including without limitation, law firms and lawyers, that represented or provided legal services to the Debtors or any of them, (iii) subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xi) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xii) which arise under or as a result of any section of the Bankruptcy Code; (xiii) for common law torts or aiding and abetting common law torts, including aiding and abetting breach of fiduciary duty; (xiv) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xv) for lender liability against any lender of any Debtor, including but not limited to claims for exerting excessive or unreasonable control over the Debtor, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on negligence, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing, (xvi) any rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by

6

the non-bankruptcy law of any relevant jurisdiction), and (xvii) any other direct or indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

32.      "*Chapter 11 Cases*" means the voluntary cases commenced under chapter 11 of the Bankruptcy Code by Holdings on April 20, 2021, and each of Liberty District of Columbia, Liberty Maryland and LPT on June 4, 2021, and jointly administered under case number 21-13797-SMG in the United States Bankruptcy Court for the Southern District of Florida.

33.      "*Claim*" has the meaning assigned to such term in Bankruptcy Code section 101(5).

34.      "*Claims Agent*" means Stretto, which was appointed by the Bankruptcy Court to receive, maintain, docket, and otherwise administer the proofs of Claim filed in the Chapter 11 Cases.

35.      "*Class*" means a category of Claims or Equity Interests described in Article III herein and pursuant to section 1122(a) of the Bankruptcy Code.

36.      "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

37.      "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

38.      "*Confirmation Order*" means the order of the Bankruptcy Court (i) confirming this Plan pursuant to Bankruptcy Code section 1129, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith, and (ii) approving the BETM Plan Settlement, in form and substance reasonably satisfactory to the Debtors and BETM.

39.      "*Creditor*" means any Person holding a Claim against the Debtors or, pursuant to Bankruptcy Code section 102(2), against property of the Debtors, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtors of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i).

40.      "*Customers*" means any end-use residential, commercial or industrial, or governmental customer of electricity of the Debtors.

41.      "*Customer Contracts*" means those certain retail electricity contracts (and the associated accounts) between the Debtors and the Customers.

42.      "*Debtors*" means Liberty Power Holdings LLC, LPT, LLC, Liberty Power Maryland, LLC and Liberty Power District of Columbia, LLC as debtors-in-possession in these Chapter 11 Cases.

7

43. "*Debtors in Possession*" means the Debtors in their capacity as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

44. "*Deficiency Claim*" means that portion of any Allowed Claim held by a Secured Creditor that exceeds the value of the Assets securing such Allowed Claim.

45. "*D&O Parties*" means David Hernandez and Martin Halpern.

46. "*D&O Settlement Agreement*" means that certain Global Settlement and Release Agreement, dated as of April 7, 2023, by and between the Debtors and each of the D&O Parties.

47. "*D&O Settlement Motion*" means that certain *Motion Pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019 for Entry of an Order Approving the Terms of a Settlement* by and Between the Debtors and the D&O Parties [ECF No. 871].

48. "*DIP Financing/Cash Collateral Orders*" shall mean those certain interim and final orders entered by the Bankruptcy Court as follows: *Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3), 364(D) And 364(E) And Bankruptcy Rules 2002, 4001, 6004 And 9014 (I) Authorizing Debtor To (A) Use Cash Collateral, And (B) Obtain Senior Secured Post-Petition Financing, (II) Granting Related Relief, And (III) Scheduling Final Hearing* [ECF No. 86]; and *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364 and 507(B) and Bankruptcy Rules 2002, 4001, 6004 And 9014 (I) Authorizing Debtor to (A) Use Cash Collateral, and (B) Obtain Senior Secured Post-Petition Financing, and (II) Granting Related Relief* [ECF No. 153], in each case authorizing the Debtors, as applicable, to (a) use the Cash Collateral of BETM, and (b) obtain secured post-petition financing from BETM up to the aggregate amount of $40,000,000.00, as such Orders were extended, amended or modified, including as extended by the Court on December 6, 2021 [ECF No. 491] and March 30, 2022 [ECF No. 610].

49. "*DIP Lender*" means Boston Energy Trading and Marketing, LLC.

50. "*DIP Loan Documents*" means that certain Debtor-in-Possession Supply and Services Agreement, dated May 27, 2021 (the "Supply Agreement"), and (ii) a certain Amendment to ISDA Master Agreement, dated May 27, 2021 (the "ISDA Amendment"). In addition, each of Holdings, LPT, Liberty MD and Liberty DC4 entered into (i) a certain Debtor-in-Possession Pledge and Security Agreement, dated May 27, 2021 with the DIP Lender (the "Pledge Agreement"), (ii) that certain First Amendment to The Debtor-In-Possession Supply and Services Agreement (the "First Amendment"), (iii) that certain Second Amendment to The Debtor-In-Possession Supply and Services Agreement (the "Second Amendment") and (iv) that certain Third Amendment to the Debtor-In-Possession Supply and Services Agreement (the "Third Amendment").

51. "*DIP Financing Claims*" means the Allowed, post-petition secured financing claims of BETM in an amount that is not less than $5,068,566, as approved by the Court pursuant

to the DIP Financing/Cash Collateral Orders, Extension Orders, DIP Loan Documents and Cash Collateral Stipulation.

52.  "*Disallowed*" with respect to a Claim shall mean any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a no Proof of Claim has been timely filed by the applicable Bar Date, deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law; or (iii) is not listed on the Schedules and as to which no Proof of Claim has been timely filed by the applicable Bar Date or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law. "Disallow" and "Disallowance" shall have correlative meanings.

53.  "*Disclosure Statement*" means the joint disclosure statement for the Plan and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court under Bankruptcy Code section 1125.

54.  "*Disclosure Statement Order*" shall mean that certain order of the Bankruptcy Court, dated April ___, 2023, [ECF No. ____] conditionally approving, among other things, the Disclosure Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code, and setting various deadlines in connection with Confirmation of the Plan.

55.  "*Disputed*" means, with respect to a Claim against or Equity Interest in the Debtors, the extent to which the allowance of such Claim or Equity Interest is the subject of a timely objection, complaint, or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise not yet Allowed or is disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice or determined by a Final Order.

56.  "*Distribution*" means the distributions of Cash to be made in accordance with the Plan.

57.  "*Distribution Agent*" means the Debtors or the Reorganized Debtors, as applicable, who will be responsible for making Distributions under the Plan.

58.  "*Distribution Date*" means the date on which a Distribution is made or to be made to holders of Allowed Claims under this Plan after the satisfaction or waiver as applicable of the conditions set forth in Article X.

59.  "*Effective Date*" means ten (10) business days after the satisfaction or waiver as applicable of the conditions set forth in Article X.  Within three (3) Business Days of the Effective Date, the Debtors shall file a notice of the Effective Date with the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Debtors reserve the right to waive the requirement of the Confirmation Order becoming a Final Order and shall have the right to proceed with the Effective Date despite the Confirmation Order not being a Final Order at such time.

60.     "*Entity*" has the meaning assigned to such term in Bankruptcy Code section 101(15).

61.     "*Equity Interest*" means the interests of any holder of an equity security as defined in Bankruptcy Code section 101(16) of any Debtor represented by any issued and outstanding any membership interest, partnership interest, shares of common stock or preferred stock, or other instrument evidencing a present ownership interest in such Debtor, including any option, warrant, or right, contractual or otherwise.

62.     "*Estate*" or "*Estates*" means, individually or collectively, the estate or estates of the Debtors created under Bankruptcy Code section 541.

63.     "*Extension Orders*" means the three orders entered by the Court [ECF Nos. 491, 610, 753] approving three amendments to the DIP Loan Documents that, among other things, extended the Maturity Date through and including March 31, 2022.

64.     "*Exculpated Parties*" shall mean (a) each of Stephen Gray, Jay Goldman and Louis Martinsen as certain of the Debtors' respective present and former managers, (b) Bob Butler as the Debtors' chief restructuring officer, (c) Michael Brown, as the Debtor's chief financial officer, (d) each of the Debtors' employees who were employed by the Debtors from and after the Petition Date; (e) all Professionals (including ordinary course professionals) whose employment has been approved by the Bankruptcy Court in the Chapter 11 Cases, including Genovese Joblove & Battista, P.A., Venable LLP and Berkeley Research Group, LLC, and each of their respective attorneys, paraprofessionals and employees, and (f) BETM and all its managers, members, professionals and representatives, including Berger Singerman LLP and Eversheds Sutherland, and each of their respective attorneys, paraprofessionals and employees.

65.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

66.     "*Final Order*" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument, or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

67.     "*First Administrative Claims Bar Date*" means February 9, 2022, as the deadline set by the Court pursuant to the *Order Granting Debtors' Expedited Motion (I) To Establish Bar Date for the Filing of Motions Seeking the Allowance and/or Payment of Administrative Expense*

10

*Claims, and (II) To Designate The Form and Manner of Notice of Administrative Claims Bar Date* [ECF No. 526] for the filing of an appropriate motion or application seeking the allowance and/or payment of an administrative expense claim under section 503(b) of the Bankruptcy Code.

68.     "*General Unsecured Claim*" means any Unsecured Claim against any Debtor that is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, or Equity Interest, provided, however, that, notwithstanding anything to the contrary herein, to the extent that a Holder of a General Unsecured Claim against a Debtor holds any joint and several liability Claims, guarantee Claims, or other similar Claims against any other Debtor arising from or relating to the same obligations or liability as such General Unsecured Claim, such Holder shall only be entitled to a distribution on one General Unsecured Claim against the Debtors in full and final satisfaction of all such General Unsecured Claims.

69.     "*Governmental Unit*" has the meaning assigned to such term in Bankruptcy Code section 101(27).

70.     "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code and applicable decisional law, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

71.     "*IRS*" means the Internal Revenue Service of the United States of America.

72.     "*ISDA*" means that certain International Swap and Derivatives Association, Inc. 2002 Agreement by and among Boston Energy Trading and Marketing, LLC., and Liberty Power Holdings, LLC dated as of July 6, 2020.

73.     "*Intercreditor Agreement*" means that certain Intercreditor Agreement by and among Boston Energy Trading and Marketing, LLC., David Hernandez, Martin Halpern, Shell Energy North America (US), L.P., Liberty Power Holdings, LLC, and the other Grantors party thereto dated as of July 6, 2020.

74.     "*Kaufman*" shall mean Peter S. Kaufman.

75.     "*Kaufman Settlement Agreement*" means that certain Global Settlement and Release Agreement, dated as of April 7, 2023, by and between the Debtors and each of the D&O Parties

76.     "*Kaufman Settlement Motion*" means that certain *Motion Pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019 for Entry of an Order Approving the Terms of a Settlement* by and Between the Debtors and BETM on the one hand and Kaufman on the other hand [ECF No. 872].

77.     "*Lien*" means, collectively, any and all security interests, liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security

agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

78.      "*LPC*" means Liberty Power Corp, LLC., the parent company of Holdings.

79.      "*Mezzanine Lenders*" means David Hernandez and Martin Halpern as the holders of that certain $10 million second-tier mezzanine loan to Holdings.

80.      "*Mezzanine Loan*" means that certain $10 million second-tier mezzanine loan made by the Mezzanine Lenders to Holdings on or about July 6, 2020.

81.      "*Net Sales Proceeds*" shall mean the proceeds from the sale to the Buyer of the Customer Contracts, after (A) payment of (i) all closing costs and other obligations required to be paid by the Debtors under the terms of the Asset Purchase Agreement, (ii) all prorations required to be paid by the Debtors under the Asset Purchase Agreement, and (ii) any break-up fees and/or expense reimbursements approved by the Bankruptcy Court and required to be paid from the proceeds of the sale of the Customer Contracts, and (B) funding of any reserves or similar obligations required of the Debtors under the Asset Purchase Agreement from the proceeds of the sale.

82.      "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

83.      "*Person*" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or Governmental Unit or subdivision thereof or other Entity.

84.      "*Petition Date*" means April 21, 2021 for Holdings, and June 4, 2021 for each of the Subsidiary Debtors.

85.      "*Plan*" means this Joint Chapter 11 Plan of Liquidation and any exhibits annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

86.      "*Plan Documents*" means the documents, if any, that aid in effectuating the Plan, including, without limitation, all addenda, exhibits, schedules, which documents (as may be amended, modified or supplemented from time to time).

87.      "*Pledge Agreement*" means the Pledge and Security Agreement, by and among Liberty Power Holdings, LLC, Liberty Power District of Columbia, LLC, Liberty Power Maryland, LLC, LPT, LLC and Liberty Power Super Holdings, LLC and Boston Energy Trading and Marketing LLC, dated as of July 6, 2020.

88.      "*Prepetition Liens*" means the properly perfected and duly enforceable first priority security interest held by BETM on substantially all of the assets of and equity interests in Holdings

and its subsidiaries, perfected through the filing of that certain UCC-1 Financing Statement with the Delaware Secretary of State (U.C.C. Initial Filing No. 2020 4653442).

89.      "*Prepetition Secured Claim*" means all obligations owed by the Debtors to BETM under the Prepetition Secured Loan Documents, which total an amount that is not less than $15,707,362.40.

90.      "*Prepetition Secured Loan Documents*" means (i) that certain Supply and Service Agreement, by and among Boston Energy Trading and Marketing LLC, and Liberty Power Holdings LLC, dated as of July 6, 2020 (the "Supply and Services Agreement"); (ii) ISDA (International Swap and Derivatives Association, Inc.) 2002 Master Agreement by and among Boston Energy Trading and Marketing LLC, and Liberty Power Holdings LLC, dated as of July 6, 2020; (iii) Pledge and Security Agreement, by and among Liberty Power Holdings LLC, Liberty Power District of Columbia LLC, Liberty Power Maryland LLC, LPT, LLC, and Liberty Power Super Holdings LLC, and Boston Energy Trading and Marketing LLC, dated as of July 6, 2020 (the "Pledge Agreement"); (iv) Parent Agreement, by and between Liberty Power Holdings LLC, Liberty Power Super Holdings LLC, and Boston Energy Trading and Marketing LLC, dated as of July 6, 2020; (v) Consent and Acknowledgement Letter, by and between Liberty Power Holdings, LLC and Boston Energy Trading and Marketing LLC, dated July 6, 2020; and (v) Intercreditor Agreement by and among Boston Energy Trading and Marketing LLC, David Hernandez, Martin Halpern, Shell Energy North America (US), L.P., Liberty Power Holdings LLC, and the other Grantors party hereto dated as of July 6, 2020 (the "Intercreditor Agreement").

91.      "*Prepetition Shell Loan*" means all obligations owed by Debtors to Shell Energy North America (US), L.P under that certain third-tier note in the amount of $63,492,663.

92.      "*Priority Tax Claim*" means a Claim or a portion of a Claim of a Governmental Unit against any Debtor that is entitled to priority in payment under Bankruptcy Code sections 502(i) and 507(a)(8).

93.      "*Professional Fee Claim*" means any Claim of a Professional for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant to Bankruptcy Codes sections 327, 328, 330, 331, 503(b), or 1103(a), plus any fees and expenses related to the final fee application of a Professional.

94.      "*Professionals*" means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to Bankruptcy Code sections 327, 328, or 1103, including Berkeley Research Group, LLC, Bob Butler, Genovese, Joblove & Battista, P.A., Venable, LLP and Stretto, and excluding any ordinary course professionals.

95.      "*Professional Fee Escrow*" means that certain escrow maintained in the attorneys' trust account of Venable, LLP and containing monies funded under and approved by the Court in connection with the DIP Financing/Cash Collateral Orders to pay the compensation and expenses of Professionals retained by the Debtors, including Berkeley Research Group, LLC, Bob Butler, Genovese, Joblove & Battista, P.A., Venable, LLP and Stretto as such compensation and expenses may be awarded by the Court pursuant to Section 328, 330 or 331 of the Bankruptcy Code.

96.     "*Proof of Claim*" shall mean a proof of claim filed by a holder of a Claim in the Bankruptcy Court's claim register evidencing the basis and/or amount of a Claim.

97.     "*Pro Rata*" means, in connection with a particular Allowed Claim and in connection with any Distribution, the ratio between the amount of such Allowed Claim and the aggregate amount of all Allowed Claims in such Class or Classes entitled to such Distribution.

98.     "*Record Date*" means the date that the Disclosure Statement is conditionally approved by the Bankruptcy Court.

99.     "*Reorganized Debtors*" shall mean the Debtors from and after the Effective Date.

100.    "*REP*" means a retail energy provider.

101.    "*Rejection/Termination Orders*" means the separate Orders entered by the Bankruptcy Court approving the motions to reject and/or terminate certain of the Debtors' customer accounts not sold to the Buyer [ECF Nos. 431, 459, 460, 525, 590, 691 and 729].

102.    "*Sale Order*" means that certain "*Order (I) Approving Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and (III) Granting Related Relief* [ECF No. 385] entered by the Bankruptcy Court on September 14, 2021.

103.    "*Scheduled Claim*" means a Claim that is listed in the Debtors' Schedules.

104.    "*Schedules*" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs, and other schedules and statements filed by the Debtors pursuant to Bankruptcy Rule 1007, and any amendments thereto.

105.    "*Second Administrative Expense Claims Bar Date*" means August 23, 2022, as the deadline set by the Court pursuant to the *Order Granting Debtors' Expedited Motion (I) To Establish Second Administrative Claims Bar Date for Certain Putative Creditors To Tile (I) Motions Seeking the Allowance and/or Payment of Administrative Expense Claims, and (II) To Designate The Form and Manner of Notice of Second Administrative Claims Bar Date* [ECF No. 752] for the filing of an appropriate motion or application seeking the allowance and/or payment of an administrative expense claim under section 503(b) of the Bankruptcy Code.

106.    "*Secured Claim*" means a Claim secured by a Lien, including, but not limited to, a judicial lien as that term is defined in Bankruptcy Code section 101(36), against any property of the Estates, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to Bankruptcy Code section 506(a) and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in any Debtor's interest in such property.

107.    "*Secured Creditor*" means the holder of a Secured Claim.

108. "*Settled Administrative Claims*" means the Allowed Administrative Claims of (i) The Commonwealth of Massachusetts Department of Energy Resources in the amount of $475,000 [ECF No. 751] (ii) State of Connecticut Public Utilities Regulatory Authority in the amount of $275,000 [ECF No. 800]; (iii) The City of New York Department of Finance in the amount of $26,000 [ECF No. 810], and (iv) Postal Center International in the amount of $11,726 [ECF No. 450].

109. "*Settled Priority Tax Claims*" means the Allowed Priority Tax Claims of (i) The State of Connecticut Public Utilities Regulatory Authority in the amount of $425,000 [ECF No. 800], and (ii) The City of New York Department of Finance in the amount of $425,000 [ECF No. 810].

110. "*Stamp or Similar Tax*" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes or fees imposed or assessed by any Governmental Unit.

111. "*Statutory Fees*" means all fees for which the Debtors are obligated pursuant to 28 U.S.C. § 1930(a)(6), together with interest, if any, pursuant to 31 U.S.C. § 3717.

112. "*Stalking Horse Motion*" means the *Expedited Motion (I) to Approve Designation of Stalking Horse Bidder, (II) to Approve Asset Purchase Agreement and Related Bid Protections, (III) to Clarify/Modify Bidding Procedures, and (IV) for Related Relief* [ECF No. 324] which Stalking Horse Motion attached a fully executed copy of that certain Asset Purchase Agreement, dated August 20, 2021, between the Debtors and the Buyer, which agreement was subsequently modified and filed with the Court on August 23, 2021 by that certain Notice of Filing Modifications to Stalking Horse Agreement [ECF No. 339].

113. "*Stalking Horse Order*" means the Order entered on August 26, 2021, granting the Stalking Horse Motion [ECF No. 349].

114. "*Subordinate Secured Parties*" means collectively, David Hernandez, Martin Halpern, and Shell Energy.

115. "*Subsidiary Debtors*" shall mean collectively LPT, LLC, Liberty Power Maryland and Liberty Power District of Columbia, LLC, each a wholly-owned subsidiary of Holdings.

116. "*Supplemental Bid Procedures Motion*" means that certain *Debtors' Expedited Motion for Entry of a Supplemental Order (I) Approving the Sale of Assets of the Subsidiary Debtors Through the Court's Bid Procedures Order, (II) Approving Revised Form of Notices, (III) Authorizing Notice of Sale by Email and Publication, and (IV) Granting Related Relief* dated July 9, 2021 [ ECF No. 255] seeking an order of the Bankruptcy Court approving, among other things,

15

extending the bidding and sale procedures, and related relief set forth in the Bid Procedures Order, to the sale of the assets of the Subsidiary Debtors.

117.    "*Supplemental Bid Procedures Order*" means that certain Order entered by the Court on July 15, 2021, granting the Supplemental Bid Procedures Motion [ECF No. 264].

118.    "*Supply and Service Agreement*" means that Supply and Service Agreement, by and among Boston Energy Trading and Marketing LLC, and Liberty Power Holdings, LLC dated as of July 6, 2020.

119.    "*U.S. Trustee*" means the Office of the United States Trustee for Region 21.

120.    "*Unclaimed Distribution*" means any Distribution that remains unclaimed after ninety (90) days following any Distribution Date, including, without limitation, (i) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (ii) funds representing checks that have not been paid, and (iii) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a valid address.

121.    "*Unimpaired*" means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code and applicable decisional law, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

122.    "*Warn Act*" means the Worker Adjustment and Retraining Notification Act, codified at 29 U.S.C. § § 2101-2109.

## B.    Rules of Interpretation

(i)    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(ii)    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.    **Exhibits**

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan will be filed with the Clerk of the Bankruptcy Court not later than three (3) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtor's counsel by a written request sent to the following address:

**VENABLE, LLP.**
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: 305-349-2300
ATTN: Paul J. Battista, Esq. pjbattista@venable.com
Mariaelena Gayo-Guitian, Esq., mguitian@venable.com
Heather Harmon, Esq**.** hlharmon@venable.com

D.    **Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

E.    **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**ARTICLE II**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, STATUTORY FEES AND BETM DIP FINANCING CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, DIP Financing Claims and Statutory Fees have not been classified and, thus, are excluded from the classification of Claims and Equity Interests set forth in Article III below.

A.    **Administrative Claims.**

All Allowed Administrative Claims shall be paid in full, in Cash in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as agreed by the holder of any such Administrative Claim. If any Disputed Administrative Claim exists on the Effective Date, then the Debtors shall hold and maintain Cash in a segregated account in an amount equal to all outstanding Disputed Administrative Claims until such dispute is resolved consensually or by Final Order. Pursuant to the BETM Plan Settlement, BETM shall waive any Distribution on the BETM Adequate Protection Obligation and the BETM Adequate Protection Superpriority Administrative Claim.

Unless otherwise ordered by the Bankruptcy Court, any holder of an Administrative Claim (including a holder of a Claim for postpetition federal, state or local taxes) that did not file an application, motion, request or other Bankruptcy Court-approved pleading by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Claim against the Debtors, or their respective assets, and such holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Claim.

### B.    Professional Fee Claims

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing. All Allowed Professional Fee Claims shall be paid in full, in Cash in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Professional Fee Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as may be agreed upon between the holder of any such Professional Fee Claim and the Debtors. Allowed Professional Fee Claims shall be paid from (a) first from any retainers held by such Professional(s), with any excess retainers being deposited into the Professional Fee Escrow; (b) second from the Professional Fee Escrow, and (c) third if the Professional Fee Escrow is insufficient to pay the full amount of Allowed Professional Fee Claims, then the remaining unpaid the Allowed Professional Fee Claims shall be paid by the Debtors from Available Cash.

### C.    Priority Tax Claims.

Unless otherwise ordered by the Bankruptcy Court or agreed to by the Holder of an Allowed Priority Tax Claim, the Holders of Allowed Priority Tax Claims against the Estates shall be paid 100% of their Allowed Priority Tax Claims from Available Cash upon the later of: (i) the Effective Date, or as soon thereafter as is practicable, (ii) the date on which such Priority Tax Claim is Allowed pursuant to a Final Order, or (iii) after such Holder has exercised any and all rights and remedies in respect of any Lien on the Debtors' Assets securing such Priority Tax Claim, thereby reducing any such Allowed Priority Tax Claims. Notwithstanding anything herein to the contrary, the Settled Priority Tax Claims shall only be paid if and when the Debtors have paid in full all allowed claims of BETM.

18

### D.    Statutory Fees.

Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fourteen (14) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the monthly operating reports for the relevant periods, indicating the cash disbursements for the relevant period.  The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, post-confirmation quarterly operating reports indicating all the cash disbursements for the relevant period.

### E.    BETM's DIP Financing Claims.

The DIP Financing Claims constitute Allowed Senior Secured Claims and Allowed Superpriority Administrative Expense Claims against the Debtors and their estates.  Pursuant to the BETM Plan Settlement, and subject to the occurrence of the Effective Date of the Plan, the DIP Financing Claims of BETM, including based on the BETM DIP Liens, the BETM Replacement Liens and the BETM Superpriority Expense Claim, shall be subordinated (i) first to the payment from Available Cash of Statutory Fees, (ii) second to the payment from Available Cash of all Allowed Professional Fee Claims, (iii) third to the payment from Available Cash of the Settled Administrative Claims, (iv) fourth to the payment from Available Cash of any other Allowed Administrative Claims approved by BETM, and (v) fifth to the payment from Available Cash of Allowed Other Priority Claims and Allowed Priority Tax Claims approved by BETM (collectively, the "Agreed Senior Claims").  Following payment of the Agreed Senior Claims, all Available Cash and proceeds of Causes of Action (whether now existing or hereafter arising) shall be distributed by the Reorganized Debtors to BETM until each of (a) the DIP Financing Claims, (b) the BETM Adequate Protection Obligation, and (c) the Prepetition Secured Claim have been paid in full.  In the event the Available Cash is not sufficient to pay the Agreed Senior Claims in full, then BETM shall waive a Distribution on its DIP Financing Claims.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A.    Summary of Classification.

The Plan groups the Debtors together solely for the purposes of describing treatment under the Plan, confirmation of the Plan, and making Distributions in accordance with the Plan in respect of Claims against, and Equity Interests in, the Debtors under the Plan. Notwithstanding such groupings, the Plan constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan

19

is not premised upon, and will not cause, the substantive consolidation of any of the Debtors. For brevity and convenience, the classification and treatment of Claims and Equity Interests have been arranged into one chart. Such classification shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

### B. Class Categories.

All Claims and Equity Interests, except for Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, DIP Financing Claims, and Statutory Fees, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Class Designation | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | Allowed Other Priority Claims (All Debtors) | Unimpaired | Presumed to Accept the Plan under Section 1126(f) of the Bankruptcy Code |
| Class 2 | Secured Claim of Hanover Insurance Company (All Debtors) | Unimpaired | Presumed to Accept the Plan under Section 1126(f) of the Bankruptcy Code |
| Class 3 | Secured Claim of Eckert Seamans Cherin & Mellot (Holdings only) | Unimpaired | Presumed to Accept the Plan under Section 1126(f) of the Bankruptcy Code |
| Class 4 | Secured Claim of Boston Energy Trading and Marketing LLC (All Debtors) | Impaired | Entitled to Vote |
| Class 5 | Secured Claim of Shell Energy North America (US), L.P (All Debtors) | Impaired | Deemed to Reject the Plan under Section 1126(g) of the Bankruptcy Code |

| Class 6 | Secured Claims of David Hernandez and Martin Halpern - Mezzanine Lenders (Insider Claims) (All Debtors) | Impaired | Deemed to Reject the Plan under Section 1126(g) of the Bankruptcy Code |
|---------|------|------|------|
| Class 7 | General Unsecured Claims (All Debtors) | Impaired | Deemed to Reject the Plan under Section 1126(g) of the Bankruptcy Code |
| Class 8 | Subordinated Unsecured Claim of The Illinois Attorney General (Holdings Only) | Impaired | Deemed to Reject the Plan under Section 1126(g) of the Bankruptcy Code |
| Class 9 | Equity Interests (All Debtors) | Impaired | Deemed to Reject the Plan under Section 1126(g) of the Bankruptcy Code |

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.     Treatment of Claims and Equity Interests

The following treatment of and consideration to be received by holders of Allowed Claims and Equity Interests under this Plan shall be in full settlement, release, and discharge of such Allowed Claims and Equity Interests except to the extent less favorable treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

### 1.     Class 1 – Allowed Other Priority Claims

(a)     *Classification*: Class 1 consists of all Allowed Other Priority Claims against each Debtor.

(b)     *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim and the applicable Debtor prior to the Effective Date, or after the Effective Date, such holder and the applicable Reorganized Debtor, agree to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, payment in full, in Cash, of the

21

unpaid portion of its Allowed Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable.

(c)     *Voting*:  Class 1 is Unimpaired under the Plan. Accordingly, each holder of an Allowed Other Priority Claim in this Class 1 is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**2.     Class 2 – Allowed Secured Claim of The Hanover Insurance Company ("Hanover").**

(a)     *Classification*: Class 2 consist of the Allowed Secured Claim of The Hanover Insurance Company.  Hanover filed a Proof of Claim in the amount of $6,355,073, of which $2,700,000 was secured by a certain letter of credit issued by JP Morgan Chase Bank, N.A. on behalf of the Debtors (the "Hanover Letter of Credit").

(b)     *Treatment*:     The Allowed Secured Claim of Hanover Insurance has been fully paid and satisfied based on Hanover drawing on the Hanover Letter of Credit during the Chapter 11 Cases.  Pursuant to section 506(a) of the Bankruptcy Code, the remainder of the Allowed Claim of Hanover shall be included in and treated as an Allowed General Unsecured Claim in accordance with Class 7.

(c)     *Voting*: Class 2 is Unimpaired under the Plan.  Accordingly, Hanover Insurance is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**3.     Class 3 – Allowed Secured Claim of Eckert Seamans Cherin and Mellot, LLC ("Eckert Seamans")**

(a)     *Classification*:    Class 3 consist of the Allowed Secured Claim of Eckert Seamans.

(b)     *Treatment*: Eckert Seaman's filed a Proof of Claim in Holdings asserting a claim for unpaid pre-petition legal services in the amount of $253,882.16 (the "Eckert Seamans Claim").  The Eckert Seamans Claim is comprised of a Secured Claim in the amount of $13,442.87 and General Unsecured Claim in the amount of $240,439.29.  The Class 3 Secured Claim of Eckert Seamans is secured by that certain pre-petition retainer held by Eckert Seamans in the amount of $13,442.87 (the "Retainer").  The Allowed Class 3 Secured Claim of Eckert Seamans shall be satisfied in full by the application of the Retainer to the Secured Claim in the amount of $13,442.87.  The balance of the Eckert Seamans Claim shall be included in and treated as an Allowed General Unsecured Claim in accordance with Class 7.

(c)     *Voting*:  Class 3 is Unimpaired under the Plan.  Accordingly, Eckert Seamans is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

4. **Class 4 – Allowed Prepetition Secured Claim of BETM**

(a) *Classification*: Class 4 consists of the Allowed Prepetition Secured Claim of BETM against each of the Debtors (the "BETM Secured Claim").

(b) *Treatment:* Following payment of (i) first, the Agreed Upon Claims, (ii) second, the DIP Financing Claims, and (iii) third, the BETM Adequate Protection Obligation pursuant and in accordance with this Plan, the Debtors shall make additional Distributions to BETM on account of the Class 4 Allowed Secured Claim of BETM in accordance with the BETM Plan Settlement from Available Cash and proceeds of Causes of Action (whether now existing or hereafter arising) until such time as the BETM Secured Claim is paid in full . The balance of the BETM Secured Claim after such Distributions shall be included in and treated as an Allowed General Unsecured Claim in accordance with Class 7.

(c) *Voting*: Class 4 is Impaired and BETM is entitled to vote to accept or reject the Plan as the holder of the Allowed Class 4 Secured Claim.

5. **Class 5- Allowed Secured Claim of Shell Energy North America (US), L.P ("Shell Energy")**

(a) *Classification*: Class 5 consists of the Secured Claim of Shell Energy against each of the Debtors. Shell Energy filed a Proof of Claim in each of these Chapter 11 Case asserting a total claim as of the Petition Date in the aggregate amount of $79,594,326.84 (the "Shell Claim").

(b) *Treatment*: As of the Petition Date, the rights of Shell Energy in respect of the Shell Claim were subject to the terms of the Intercreditor Agreement. Among other things, the Intercreditor Agreement provides that the Liens and Claims of Shell Energy are fully subject and subordinate to the Liens and Claims of BETM in all respects. The proceeds from the sale and liquidation of the Debtors' Assets were not sufficient to satisfy in full the DIP Financing Claims and the BETM Secured Claim. Accordingly, pursuant to section 506(a) of the Bankruptcy Code and the terms of the Intercreditor Agreement, the entirety of the Shell Claim is a General Unsecured Claim which shall be included in and treated as an Allowed General Unsecured Claim in accordance with Class 7.

(c) *Voting*: Class 5 is Impaired. Since the Class 5 Allowed Secured Claim of Shell Energy will not receive any Distribution or retain any property under the Plan on account of such Allowed Secured Claim, Shell Energy, as the holder of the Class 5 Allowed Secured Claim, shall be deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

6. **Class 6 – Allowed Secured Claim of the Mezzanine Lenders**

(a)     *Classification*: Class 6 consists of the Allowed Secured Claim of the Mezzanine Lenders against each of the Debtors. The Mezzanine Lenders each filed a Proof of Claim in Holdings in the amount of $5,179,166.67 (the "<u>Mezzanine Lender Claims</u>").

(b)     *Treatment:*  As of the Petition Date, the rights of the Mezzanine Lenders respect of the Mezzanine Lender Claims were subject to the terms of the Intercreditor Agreement.   Among other things, the Intercreditor Agreement provides that the Liens and Claims of the Mezzanine Lenders are fully subject and subordinate to the Liens and Claims of BETM in all respects.  The proceeds from the sale and liquidation of the Debtors' Assets were not sufficient to satisfy in full the DIP Financing Claims and the BETM Secured Claim.   In addition, the Mezzanine Lenders are parties to the D&O Settlement Agreement, which is the subject of the D&O Settlement Motion.  If the Bankruptcy Court grants the D&O Settlement Motion, then (i) each Mezzanine Lender shall have provided a general release in favor of the Debtors of any and all Claims, including the Mezzanine Lender Claims, and (ii) the Mezzanine Lender Claims shall be deemed satisfied in full.  Alternatively, in the event the Bankruptcy Court does not grant the D&O Settlement Motion, then pursuant to section 506(a) of the Bankruptcy Code and the terms of the Intercreditor Agreement, the entirety of each Mezzanine Lender Claim is a General Unsecured Claim which shall be included in and treated as an Allowed General Unsecured Claim in accordance with Class 7.

(c)     *Voting*: Class 6 is Impaired.  Since the Class 6 Allowed Secured Claim of each Mezzanine Lender will have either been released pursuant to the D&O Settlement Motion, or will not receive any Distribution or retain any property under the Plan on account of such Allowed Secured Claim, each Mezzanine Lender, as the holder of a Class 6 Allowed Secured Claim, shall no longer have a Mezzanine Lender Claim or shall be deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

7.     **Class 7 – Allowed General Unsecured Claims**

(a)     *Classification:* Class 7 consists of the Allowed General Unsecured Claims against each of the Debtors.

(b)     *Treatment:* Each holder of a General Unsecured Claim shall not receive any Distribution or property under the Plan on account of their Allowed General Unsecured Claims.

(c)     *Voting*: Class 7 is Impaired.  Since the holders of the Class 7 Allowed General Unsecured Claim will not receive any Distribution or retain any property under the Plan on account of such Allowed General Unsecured Claims, such holders shall be deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

8. **Class 8 - Allowed Subordinated Unsecured Claim of the Office of the Illinois Attorney General** (Holdings only).

(a) *Classification:* Class 8 consists of the Allowed Subordinated Unsecured Claim of the Office of the Illinois Attorney General against Holdings in the amount of $77,191,092.00, which was approved by the Court pursuant to that certain *Agreed Order Granting Ex-Parte Joint Motion and Stipulation for Entry of An Agreed Order Resolving Objection to Claim of the Illinois Attorney General's Office* entered on September 7, 2022 [ECF No. 783].

(b) *Treatment:* The Illinois Attorney General, as the holder of the Class 8 Allowed Subordinated Unsecured Claim, will not receive any Distribution or retain any property under the Plan on account of such Claim.

(c ) *Voting*: Class 8 is Impaired. Since The Illinois Attorney General, as the holder of the Class 8 Allowed Subordinated Unsecured Claim, will not receive any Distribution or retain any property under the Plan on account of such Claim, The Illinois Attorney General shall be deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

9. **Class 9 – Allowed Equity Interests.**

(a) *Classification*: Class 9 consist of all Allowed Equity Interests.

(b) *Treatment:* As of the Effective Date, all Equity Interests in each Debtor shall be deemed retired, cancelled, extinguished and/or discharged and of no further force and effect.

(c) *Voting*: Class 9 is Impaired. Since the holders of Equity Interests in each Debtor shall not receive any Distribution or retain any property under the Plan on account of such Equity Interests, such holders shall be deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

## ARTICLE V
## ACCEPTANCE, REJECTION, AMENDMENT AND
## REVOCATION OR WITHDRAWAL OF THE PLAN

A. **Classes Entitled to Vote**

Each holder of a Claim or Equity Interest who it to receive a Distribution or retain property on account of such Claim or Equity Interest under the Plan, as of the Record Date, in an Impaired Class shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law. Each of Class 1, 2 and 3 are Unimpaired and therefore are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Class 4 is Impaired and is entitled to vote to accept or reject the Plan. Classes 5 through 9 are Impaired and will not receive a Distribution or retain any property under the Plan on account of such Claims.

25

As a result, Classes 5 through 9 are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

### B.    Acceptance by Class of Claims and Equity Interests

Under the Bankruptcy Code, Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.  For purposes of any Claim in any Impaired Class that is Disputed as to its amount only, the holder of such claim shall be entitled to vote on the Plan as if such holder held an Allowed Claim in an amount equal to the undisputed portion of such Claim.

Pursuant to Section 1126(f) of the Bankruptcy Code, holders of Allowed Claims and Equity Interests who are Unimpaired under the Plan are deemed to have accepted the Plan.  As set forth above, Classes 1, 2, and 3 under the Plan are Unimpaired and therefore all such Classes are deemed to have voted in favor of the Plan.

### C.    Nonconsensual Confirmation

In the event that any Class of Claims or Equity Interests entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1126 of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Article XIII.

As set forth above, Classes 5 through 9 of the Plan are Impaired and are deemed to have rejected the Plan pursuant to Section 1126(g) because the holders therein will not receive any Distribution or retain any property under the Plan on account of their respective Claims or Equity Interests.  As a result, the Debtors intend to exercise the right to seek confirmation of the Plan through a "cramdown" on Classes 5 through 9 of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

### D.    Revocation or Withdrawal; No Admissions

*Right to Revoke or Withdraw*.  The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors in their sole discretion.

*Effect of Withdrawal or Revocation; No Admissions*.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any

26

admission or statement against interest by the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### E. Amendment of the Plan and/or the Plan Documents

From and after the Effective Date, the Debtors shall have the authority to amend, modify, or supplement the Plan, the Exhibits to the Plan and any documents attached to such Plan and Exhibits to the Plan as provided in the Plan, the Exhibits to the Plan and the Bankruptcy Code.

### F. Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

### A. Joint Chapter 11 Plan and Vesting of Property.

The Plan is a joint chapter 11 plan for each Debtor, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor. The Debtors shall continue to exist on or after the Effective Date solely for the purposes of satisfying the Debtors' obligations under the Plan, including making distributions as required under the Plan and effectuating the wind down of the Debtors.

Except as provided for herein, pursuant to Sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of the Estates shall vest in the applicable Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances for all purposes under and subject to the terms of this Plan. All privileges with respect to the property of the Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may only be asserted by and/or waived on behalf of, the applicable Reorganized Debtor.

### B. Source of Funding for Plan Distributions.

The Distributions to be made in Cash under the terms of this Plan shall be funded from the Available Cash on hand as of and generated after the Effective Date as set forth on the Liquidation Analysis attached as **Exhibit "3"** to the Disclosure Statement, which includes, without limitation, Cash in the Debtors' bank accounts, the Professional Fee Escrow, the retainers of Professionals, and proceeds from the prosecution and/or settlement of Causes of Action, including pursuant to the D&O Settlement Agreement and the Kaufman Settlement Agreement. Pursuant to the BETM Plan Settlement, and subject to the occurrence of the Effective Date, BETM has agreed to allow the Debtors to use the Available Cash to pay the Agreed Senior Claims pursuant to the terms of the Plan.

### C. The BETM Plan Settlement pursuant to Bankruptcy Rule 9019.

27

The Plan shall constitute a motion for approval of a settlement and compromise under Bankruptcy Rule 9019 between the Debtors and BETM related to the use of Available Cash (whether now existing or hereafter arising) in connection with confirmation of the Plan (the "BETM Plan Settlement"). Specifically, subject to and conditioned on confirmation of the Plan and the Plan becoming effective, BETM has agreed to subordinate its right to receive a Distribution on account of: (a) the DIP Financing Claims, (b) the BETM Adequate Protection Obligation, and (c) the BETM Class 4 Allowed Secured Claim, so as to enable the Debtors to use the Available Cash (i) to pay the Agreed Senior Claims in connection with confirmation of the Plan, and/or (ii) to pay for the prosecution of Causes of Action on terms acceptable to the Debtors and BETM. In exchange for and as a material inducement to BETM's agreement to the BETM Plan Settlement and to allow the Debtors to use such Available Cash, effective automatically on the Effective Date, each of the Debtors, on behalf of themselves and their bankruptcy estates, and anyone claiming by, through, or under them (collectively, the "Debtor Releasing Parties"), shall be deemed to have fully and forever remised, released, acquitted, waived, disclaimed, surrendered, satisfied, and discharged BETM each of its present and former managers (including Jay Goldman and Louis Martinsen), members, officers, directors, employees, attorneys, affiliates, direct and indirect subsidiaries, direct and indirect parent companies, accountants, financial advisors, agents and representatives, (collectively, the "BETM Released Parties") of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Releasing Parties ever had, now has or hereafter can, shall or may have against any of the BETM Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, the Chapter 11 Cases, the Prepetition Secured Claim, the Prepetition Secured Loan Documents, the DIP Financing Claims and the DIP Loan Documents. Nothing contained in this release shall release BETM from its agreements set forth in this Plan.

Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the rights and powers afforded to a trustee serving in a chapter 11 case. *See* 11 U.S.C. § 1107(a). Furthermore, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). Accordingly, it is within the scope of this Court's authority to approve the BETM Plan Settlement.

When considering whether to approve a compromise or settlement under Rule 9019, a bankruptcy court must determine if the proposed compromise or settlement is fair, equitable, reasonable and in the best interests of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Se. Banking*

28

*Corp.*, 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable"). Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). A bankruptcy court is not required to decide the merits of claims, but is to assess the probability of succeeding on those claims. *See In re Vazquez*, 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005). "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Compromises and settlements are looked upon favorably in bankruptcy cases because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017) ("Compromises are favored in bankruptcy.").

The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983).

The United States Court of Appeals for the Eleventh Circuit has set forth four factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. These factors are as follows:

     a. the probability of success in the litigation;
     b. the difficulties, if any, to be encountered in the matter of collection;
     c. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
     d. the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990). *See also Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498, 504 (11th Cir. 2007) (setting forth *Justice Oaks* factors and affirming bankruptcy court's approval of settlement agreement).

Appellate courts review a bankruptcy court's approval of a settlement or compromise to determine whether there is a clear showing that the bankruptcy court abused its discretion. *In re Van Diepen, P.A.*, 236 Fed. Appx. at 504; *In re Bicoastal Corp.*, 164 B.R. at 1016 (stating "the Bankruptcy Court has broad discretion to approve a compromise."). Moreover, "[t]he bankruptcy court is not required to rule on the merits, and must look only to the probabilities." *Id.* Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

The Debtors believe and submit that as applied to the BETM Plan Settlement herein, the *Justice Oaks* factors weigh heavily in favor of approval of the terms and conditions of the BETM Plan Settlement. First, with regard to the "probability of success in litigation" and the "complexity of the litigation" factors, the Debtors, without the consent of BETM to use the Available Cash on

which BETM has senior Liens and Claims, the Debtors would not succeed in any litigation to compel BETM to allow such use.  As to the "collection factor," the Debtors do not believe it is relevant to the analysis of the BETM Plan Settlement.

With regard to the final factor of "paramount interests of creditors," the Debtors assert that it weighs heavily in favor of approving the BETM Plan Settlement and confirming the Plan. Without the BETM Plan Settlement, the Debtors would not be able to confirm the Plan and make Distributions to the holders of Agreed Senior Claims.  In fact, the Debtors would be required to turnover all Available Cash to BETM and then either convert these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or seek dismissal of these Chapter 11 Cases.  In either situation, without the BETM Plan Settlement, no other creditors, namely the Settled Administrative Claims, would receive any Distribution.

For the foregoing reasons, the Debtors submit that the BETM Plan Settlement satisfies the applicable *Justice Oaks* factors, falls well above the lowest point in the range of reasonableness, is fair and equitable, is in the best interest of all Creditors and, accordingly, should be approved upon and in connection with confirmation of the Plan.

### D.    Distributions

The Distributions will be made in accordance with the Plan by the Debtors, as applicable and as set forth herein.

### E.    Liquidation and Dissolution of Debtors.

On or after the Effective Date, the Reorganized Debtors shall have the power and authority to take any actions necessary in his discretion to dissolve the Debtors, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor is formed without further order of the Bankruptcy Court or without the need for any corporate action.

### F.    Preservation and Abandonment of Records.

After the Effective Date, the Debtors shall be authorized to preserve or abandon (with or without destruction) the Debtors' books and records as deemed appropriate by the CRO in the exercise of his reasonable business judgment and without further order of the Court.

### G.    Deadline for Filing Applications for Professional Fee Claims.

All parties seeking payment of Professional Fee Claims must file with the Bankruptcy Court a final application and/or an application for payment of reasonable fees and expenses under Bankruptcy Code section 503(b), as applicable, pursuant to the Court's Disclosure Statement Order.

### H.    Disallowance of Claims Without Further Order of the Court.

As of the Effective Date, any Scheduled Claim designated as disputed, contingent, or unliquidated in amount and for which a Proof of Claim has not been filed by the Creditor by the

applicable Bar Date shall be deemed Disallowed and expunged. All Scheduled Claims that correspond to a Proof of Claim filed by a particular Creditor by the applicable Bar Date shall be deemed to have been superseded by such later filed Proof of Claim, and the Scheduled Claim, regardless of priority, shall be expunged from the Claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Article VIII.

### I.     Post-Effective Date Reports and Fees.

Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fourteen (14) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the monthly operating reports for the relevant periods, indicating the cash disbursements for the relevant period. The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code, and the Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, post-confirmation quarterly operating reports indicating all the cash disbursements for the relevant period.

### J.     Preservation of Causes of Action.

Except as otherwise provided in this Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b), all Claims and Causes of Action that the Debtors or the Estates may have against any Person or Entity are preserved on and from and after the Effective Date, including, without limitation, any and all Causes of Action the Debtors, the Estates, or other appropriate party in interest may have or assert under Bankruptcy Code sections 502, 510, 522(f), 522(h), 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a).

The Causes of Actions include the Debtors' prosecution and/or defense of any Claim, Cause of Action or objections to Claim that the Debtors have commenced, may commence or become involved in against, or with, any Person or Entity which arises out of events related to the Debtors or their operations, either before or after the Petition Date, including but not limited to, any Claims or Causes of Action that the Debtors may have against pre-petition professionals, including law firms and lawyers, who represented the Debtors, provided services to the Debtors or were otherwise involved with the Debtors.

**UNLESS SPECIFICALLY PROVIDED FOR HEREIN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE DEBTORS.** Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims. As such,

Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan.  It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of Debtors' Estates. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action.  Nothing in the Plan operates as a release of any Cause of Action.

The Estates shall remain open, even if the Chapter 11 Cases shall have been closed, as to any and all objections to Claims and Causes of Action until such time as all objections to Claims and the Causes of Action have been fully administered and the recoveries therefrom have been received.

### K.    Section 1146 Exemption from Certain Taxes and Fees.

Pursuant to and to the extent set forth in Bankruptcy Code section 1146(a), any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with this Plan shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under this Plan.

### L.    Closing of the Chapter 11 Cases.

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules of the Bankruptcy Court providing for earlier closure of the Chapter 11 Cases, when the Debtors' Available Cash has been distributed in accordance with the Plan, or at such earlier time as the Debtors deem appropriate, the Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Manner of Cash Payments Under the Plan.

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtors (or their respective agent(s)), as applicable, into

the United States mail, or paid by wire transfer. At the option of the Debtors any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtors by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim or Allowed Equity Interest and the Debtors. Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

### B.   Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims and Equity Interests shall be made by the Distribution Agent at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no Proof of Claim is filed or if the Debtors, as applicable, have not been notified in writing of a change of address.

### C.   Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim made by the Debtors, as applicable is returned as undeliverable, the Debtors, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Debtors, as applicable, have determined the then current address of such holder; *provided, however*, that all Distributions to holders of Allowed Claims made by the Debtors, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim against the Debtors, as applicable, or their property. Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the particular Debtor, as applicable, and re-distributed in accordance with the terms of this Plan. The Debtors shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred.

### D.   Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors shall comply with all federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan. The Debtors may withhold from any Distributions under and pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Debtors required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement; provided, however, that the Debtors shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing such holder an opportunity to object. All such amounts

33

withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims and/or Equity Interests. The Debtors shall be authorized to collect such tax information from the holders of Claims and/or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all holders of Claims and Equity Interests will need to identify themselves to the Debtors and provide all tax information the Debtors deem appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). The Debtors may refuse to make a Distribution to any holder of a Claim or Equity Interest that fails to furnish such information within the time period specified by the Debtors, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Debtors fail to withhold in respect of amounts received or distributable with respect to any such holder and the Debtors are later held liable for the amount of such withholding, such holder shall reimburse the Debtors for such liability. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim or Allowed Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

### E.      No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### F.      Interest on Claims

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date. Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided in any Plan or in an order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

### G.      No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### H.      Setoffs and Recoupment

The Debtors, as applicable, may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that such Debtor, as applicable, or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under such Plan shall constitute a waiver or release by such Debtor, as applicable, or such Estate of any right of setoff

or recoupment that any of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in any Plan to the contrary, nothing herein or in a Plan shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; *provided, however*, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtors, as applicable, and the Estates with respect thereto are reserved.

### I.        De Minimis Distributions

Notwithstanding anything to the contrary in the Plan, the Debtors shall not be required to make a Distribution to any Creditor if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.

### J.        Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtors and their Estates, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

### K.        No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was required to be filed and was first filed after the applicable bar date in these Chapter 11 Cases, including, without limitation, the General Bar Date and any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Debtors, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

## ARTICLE VIII
## DISPUTED CLAIMS

### A.        Resolution of Disputed Claims

The Debtors, as applicable, shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

### B.        Objection Deadline

All objections to Claims shall be filed no later than the date set by the Disclosure Statement Order, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice

only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

### C.     Estimation of Claims

At any time, each Debtor, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether such Debtor or Reorganized Debtor, as applicable, has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the respective Debtor or Reorganized Debtor, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims' objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### D.     No Distributions Pending Allowance; Disputed Claims Reserve

Notwithstanding any other provision in the Plan, no Distributions shall be made under the Plan on account of any Disputed Claim until it becomes an Allowed Claim.  To protect the interests of holders of Disputed Claims, the Debtors shall reserve an amount that represents the Disputed Claim (or portion thereof) that would otherwise be distributed to the holder of each Disputed Claim (or portion thereof) if such Disputed Claim was Allowed in the amount set forth on the holder's Proof of Claim or as estimated by the Bankruptcy Court.  As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive from a Distribution in an amount equal to the Distribution that such holder would have received had such Disputed Claim been an Allowed Claim on the Effective Date. If and when a Disputed Claim or any portion thereof becomes a Disallowed Claim, the Distributions that would otherwise be made thereon shall be available for Distribution to holders of Allowed Claims or Equity Interests pursuant to the Plan.

### ARTICLE IX
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     General Provisions.

All executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, (ii) has expired or otherwise terminated pursuant to its terms, or (iii) is the subject of a separate assumption motion filed by one of the Debtors under Bankruptcy Code section 365.

**B.      Notice of Deemed Rejection.**

Any party to an executory contract or unexpired lease that was previously rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code and failed to timely file a Claim for damages from such rejection pursuant to the deadlines established in the Rejection/Termination Orders shall be deemed to have waived any Claim in connection with the rejection and/or termination of such contract or lease.

## ARTICLE X
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent to the Effective Date**.

The Effective Date shall not occur and no obligations under the Plan shall come into existence unless each of the following conditions is met or, alternatively, are waived by the Debtors.

(a)      The Confirmation Order shall have become a Final Order and such order shall not have been amended, modified, vacated, stayed, or reversed;

(b)      All asserted Administrative Claims, other than the Settled Administrative Claims, shall have been resolved by a Final Order of the Court in a manner acceptable to BETM;

(c)      All asserted Priority Claims and Priority Tax Claims, other than the Settled Priority Tax Claims, shall have been resolved by a Final Order of the Court in a manner acceptable to BETM;

(d)      All documents contemplated by this Plan to be executed and delivered on or before the Effective Date shall have been executed and delivered;

(e)      There shall be no stay or injunction in effect with respect to the Confirmation Order; and

(f)      The Plan Documents shall be in a form and substance reasonably acceptable to the Debtors, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments, may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

**B.      Waiver of Conditions Precedent**.

Notwithstanding the foregoing conditions, the Debtors reserve, in their sole discretion, but with the consent of BETM as applicable, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation

Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE XI
## EFFECT OF CONFIRMATION; INJUNCTION, EXCULPATION
## AND RELATED PROVISIONS

### A.      Settlement, Compromise, and Release of Claims and Equity Interests

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

### B.      Plan Injunction.

**Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, their Estates and their successors and assigns and its assets and properties; (ii) enforcing, determining, attaching, collecting or recovering by any manner or means any liability, claim, judgment, award, decree or order against the Debtors and their Estates, and their successors and assigns and their assets and properties; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, and their Estates and their successors and assigns and their assets and properties; and (iv) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder, *provided however*, that nothing in the Plan or Confirmation Order shall constitute a waiver of any rights or defenses of such persons with respect to such actions, provided, further, that such injunction shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtors, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan; provided, furthermore, that nothing contained in the Plan or Confirmation Order shall preclude the IRS from pursuing an action against any entity, or preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.  Nothing herein shall be construed as enjoining any party's prosecution or defense of any appeal of any order entered by the Bankruptcy Court in these Chapter 11 Cases.**

### C.      All Distributions Received in Full and Final Satisfaction.

Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Claims) shall be received

38

in full and final satisfaction, settlement, and release of the Estates' obligations for such Claims as against the Debtors and their property and the Estates.

### D. No Discharge of Debtors.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtors; *provided, however*, that no Holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against any of the Estates, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

### E. No Modification of Res Judicata Effect.

The provisions of this Article XI are not intended, and shall not be construed, to modify the *res judicata* effect of any order entered in the Chapter 11 Cases, including, without limitation, the Confirmation Order, the DIP Financing/Cash Collateral Orders, and any order finally determining Professional Fee Claims to any Professional.

### F. Exculpation.

**Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any and all Claims and Causes of Action arising on or after the Petition Date up through the time these Chapter 11 Cases are closed, involving or relating to any act taken or omitted to be taken in connection with, or related to, prosecuting these Chapter 11 Cases, formulating, negotiating, preparing, disseminating, implementing, or administering any aspect of these Chapter 11 Cases, including the sale of property of the Estate, distributing property of the Estate or related in any way to any other contract, instrument, release or other agreement or document created or entered into in connection with these Chapter 11 Cases, the Plan or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the administration of the Estate; provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any person that results from any such act or omission that is determined to have constituted gross negligence, willful misconduct, or fraud; provided further, that nothing contained in the Confirmation Order shall preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.**

### G. Limitations on Exculpation.

**Nothing in this Plan shall be construed to release or exculpate any Person from, or require indemnification of, any Person against losses arising from criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or limit the liability of the professionals of the Debtors to the Debtors pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("<u>Limiting Liability for Malpractice</u>").**

39

## ARTICLE XII
## RETENTION OF JURISDICTION BY BANKRUPTCY COURT

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Persons and Entities with respect to all matters related to these Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against or liability of the Debtors, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(ii)    grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in these Chapter 11 Cases by the Debtors for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii)   resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(iv)    ensure that Distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtors' entitlement to recover assets held by third parties;

(v)     decide, adjudicate or resolve any motions, contested or litigated matters and any other matters, including all Causes of Action, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or filed after the Effective Date;

(vi)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(vii)   issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(viii)  enforce Articles within this Plan;

(ix)    resolve any cases, controversies, suits or disputes with respect to the exculpation, injunction and other provisions contained in Article XI, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

       (x)    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

       (xi)    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

       (xii)    enter an order and a Final Decree closing these Chapter 11 Cases.

# ARTICLE XIII
# MISCELLANEOUS PROVISIONS

## A.    Modification of Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right in their sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## B.    Revocation of Plan

The Debtors reserve the right in their sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; and (2) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of either of the Debtors or any other Entity; or (c) constitute an admission of any sort by either of the Debtors or any other Entity.

## C.    Binding Effect

On the Effective Date, the provisions herein shall bind any holder of a Claim against, or present or former direct or indirect holder of an Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is

Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

### D.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### E.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

### F.    Severability.

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

### G.    Regulatory Approval.

No regulatory approval is necessary for confirmation of this Plan.

### H.    Reservation of Rights

The Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

### I.    Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtors have acted in "good faith" under sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

### J.    Further Assurances

The Debtors, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and

take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### K.  Service of Documents

Any pleading, notice or other document required herein to be served on or delivered to the Debtors shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**To the Debtors:**       **VENABLE, LLP**
Attn:  Paul J. Battista, Esq.
Attn:  Mariaelena Gayo-Guitian, Esq.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Email: pjbattista@venable.com
Email: mguitian@venable.com

### L.  Filing of Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### M.  No Stay of Confirmation Order

The Debtors shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

### N.  Bankruptcy Rule 9019 Request; Impact

The Plan, including the Plan Documents or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtors hereby request approval of all compromises and settlements included in the Plan, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

**ARTICLE XIV**
**CONCLUSION**

The Debtors assert that confirmation of the Plan is in the best interests of all holders of Allowed Claims and Equity Interests and urge all such holders to review the Plan and the Disclosure Statement in their entirety and then to vote to accept the Plan.

Dated: April 14, 2023

**Liberty Power Holdings, LLC**
By: */s/ Bob Butler*
Chief Restructuring Officer
Liberty Power Holdings, LLC

**LPT, LLC**
By: */s/ Bob Butler*
Chief Restructuring Officer
LPT, LLC

**Liberty Power Maryland, LLC**
By: */s/ Bob Butler*
Chief Restructuring Officer
Liberty Power Maryland, LLC

**Liberty Power District of Columbia, LLC**
By: */s/ Bob Butler*
Chief Restructuring Officer
Liberty Power District of Columbia, LLC

**VENABLE, LLP.**
*Attorneys for the Debtors*
100 S.E. Second Street,
44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
By: */s/ Paul J. Battista*
Paul J. Battista, Esq. Fla.
Bar No. 884162
Email: pjbattista@venable.com
Mariaelena Gayo-Guitian, Esq.
Fla. Bar No. 0813818
Email: mguitian@venable.com
Heather L. Harmon, Esq.
Fla. Bar No. 013192
mlheather@venable.com