# EXHIBIT 5

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

In re:                                              **Chapter 11 Cases**

**LIBERTY POWER HOLDINGS, LLC,**                     **Case No. 21-13797-SMG**
**LPT, LLC,**                                         **Case No. 21-15537-SMG**
**LIBERTY POWER MARYLAND, LLC,**                     **Case No. 21-15539-SMG**
**LIBERTY POWER DISTRICT OF COLUMBIA, LLC**          **Case No. 21-15540-SMG**

       **Debtors.**                              **(Jointly administered 21-13797-SMG)**
_____/

### DECLARATION OF BOB BUTLER, CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF (A) APPROVAL OF THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT ON A FINAL BASIS, AND (B) CONFIRMATION OF THE CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY LIBERTY POWER HOLDINGS, LLC, LPT, LLC, LIBERTY POWER MARYLAND, LLC AND LIBERTY POWER DISTRICT OF COLUMBIA, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

I, Bob Butler, submit this declaration ("Declaration") pursuant to 28 U.S.C. § 1746 in support of confirmation of the *Joint Chapter 11 Plan of Liquidation Proposed by Liberty Power Holdings, LLC, LPT,LLC, Liberty Power Maryland, LLC and Liberty Power District of Columbia, LLC,* dated as of April 14, 2023 (as modified, amended and/or supplemented from time to time, the "Plan") [ECF No. 875],[1] and its accompanying *Joint Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by Liberty Power Holdings, LLC, LPT, LLC, Liberty Power Maryland, LLC and Liberty Power District of Columbia, LLC* [ECF No. 880], dated as of April 14, 2023 and filed on April 21, 2023 (as modified, amended and/or supplemented from time to time, the "Disclosure Statement"), and state as follows:

---

[1] Capitalized terms used herein and not otherwise defined shall have the same meaning as attributed to them in the Plan or, if not defined in the Plan, in the Disclosure Statement.

1

## INTRODUCTION

1.      I am over the age of 18 years and am competent to testify in connection with the matters set forth below.

2.      I am the Chief Restructuring Officer (the "CRO") of the Debtors.  I have served in my current role since being engaged on April 16, 2021.  The Bankruptcy Court entered Orders approving my engagement during these Chapter 11 Cases on May 14, 2021 and August 12, 2021 respectively [ECF Nos. 96, 313].  As a result, I am authorized to submit this Declaration of behalf of the Debtors.

3.      I am a Managing Director of Berkeley Research Group, LLC ("BRG") in Atlanta, Georgia and have almost 21 years of experience in the insolvency and restructuring field and 41 years of business experience.  BRG is a global consulting firm with offices around the world, specializing in, among other things, insolvency and restructuring matters, disputes and investigations, corporate finance, and performance improvement.  I hold a Bachelor of Science degree in Accounting from the University of Arizona. I am a Certified Public Accountant and a member of the American Institute of Certified Public Accountants.  I submit this Declaration in support of (a) final approval of the Disclosure Statement, and (b) confirmation of the Plan.

4.      Except as otherwise indicated, all facts set forth herein are based on my personal knowledge, my discussions with other members of the BRG team and the Debtors' advisors and professionals, my review of relevant documents and information concerning the Debtors' operations, financial affairs and restructuring initiatives, or my opinions based upon my experience and knowledge.

5.      I am familiar with the terms and provisions of the Plan and the Disclosure Statement, having participated in the negotiations and development thereof.  I am authorized to submit this Declaration in support of the approval of the Disclosure Statement and confirmation of the Plan.  I make the statements in this Declaration after consultation with Debtors' counsel regarding the requirements for confirmation of the Plan under Bankruptcy Code section 1129.  The statements set forth below are true and correct to the best of my knowledge and if called to testify to those statements, I would do so competently.

6.      As the CRO of the Debtors, I have been involved in all aspects of the Debtors' Chapter 11 Cases, including, without limitation: (i) an analysis of the Debtors' assets, liabilities, capital structure, financial operations and performance; (ii) negotiations with all of the major creditor constituencies in these Chapter 11 Cases; (iii) negotiations and consummation of the sale of substantially of the Debtors' Assets as set forth below; (iv) the review and termination or rejection of certain consumer and commercial contracts; (v) the investigation and settlement of third party litigation claims; (vi) the formulation and structuring of the Plan, including the BETM Plan Settlement; and (vii) the active involvement in the development of the Disclosure Statement, and all relevant exhibits and appendices attached thereto, including, but not limited to, the "Liquidation Analysis" attached to the Plan.  In addition, as a part of my duties, I have supervised and worked closely with the Debtors' professionals that have been involved in these Chapter 11 Cases.

**PART I**
**RELEVANT BACKGROUND**

7.      On April 20, 2021 (the "Holdings Petition Date"), Holdings filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (as now in effect or as hereafter amended, the "Bankruptcy Code") (the "Main Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). Since that time, Holdings has operated as a debtor-in-possession pursuant to section 1107 and 1008 of the Bankruptcy Code.

8.     On June 4, 2021 (the "Subsidiary Petition Date"), LPDC, LPT and LPMD (collectively, the "Subsidiary Debtors"), who are wholly owned subsidiaries of Holdings, each filed a voluntary petition for relief under the Bankruptcy Code, which Chapter 11 cases were jointly administered with the Main Bankruptcy Case (collectively, the "Chapter 11 Cases"). Since that time, the Subsidiary Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

9.     The Debtors commenced the Chapter 11 Cases with the primary purpose of consummating the sale of substantially of their assets.  To that end, the Debtors conducted a fulsome marketing and sale process of the Debtors' assets pursuant to several orders of the Court [ECF Nos. 98, 156, 255, 264, 277, 282, 320, 323].  As a result, on August 20, 2021, the Debtors filed their *Expedited Motion (I) to Approve Designation of Stalking Horse Bidder, (II) to Approve Asset Purchase Agreement and Related Bid Protections, (III) to Clarify/Modify Bidding Procedures, and (IV) for Related Relief* [ECF No. 324] (the "Stalking Horse Motion"), which Stalking Horse Motion included a fully executed copy of that certain Asset Purchase Agreement, dated August 20, 2021, between the Debtors and NRG Energy, Inc., (the "Buyer"), which agreement was subsequently modified and filed with the Court on August 23, 2021 by that certain

4

*Notice of Filing Modifications to Stalking Horse Agreement* [ECF No. 339] (the "Stalking Horse Agreement").

10.     On August 26, 2021, the Court entered an *Order Granting the Stalking Horse Motion* [ECF No. 349] over certain objections filed by creditor BLT Fish, LLC, BLT Steak, LLC, [ECF No. 340] and Commonwealth of Massachusetts [ECF No. 342].

11.     On August 31, 2021, the Debtors selected the Buyer, NRG Energy, Inc., as the Successful Bidder for the Purchased Assets as noted in that certain *Notice of (I) Cancellation of Auction Scheduled for September 1, 2021 At 9:00 a.m., and (II) Designation of Stalking Horse Bidder As The Purchaser* [ECF No. 352] (the "Notice of Successful Bidder"). On September 10, 2021, the Court conducted an evidentiary hearing (the "Sale Hearing") on the proposed sale of the Purchased Assets to the Buyer.

12.     On September 14, 2021, the Court entered an *Order (I) Approving Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interest, (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Lease in Connection Therewith and (III) Granting Relief* ("Sale Order") [ECF No. 385], which Sale Order approved, among other things, the sale of a substantial portion of the Debtors' "book of business," namely all of the Debtors' residential customer contracts and a portion of the Debtors' commercial customer contracts as described more fully in the Stalking Horse Agreement (the "Purchased Assets") free and clear of liens, claims, encumbrances, and other interest and authorized the assumption and assignment of certain executory contracts and unexpired leases in connection therewith to the Buyer.  On September 22, 2021, the Debtors and the Buyer closed on the sale of

the Purchased Assets (as defined in the Sale Order) pursuant to the terms of the Stalking Horse

Agreement and the Sale Order.

13.     On April 14, 2023, the Debtors filed their Plan.  On April 21, 2023, the Debtors

filed their Disclosure Statement.  On April 27, 2023, the Court entered its *Order (A) Conditionally*

*Approving Joint Disclosure Statement; (B) Authorizing Solicitation Of Votes On Joint Plan Of*

*Liquidation; (C) Approving Solicitation Procedures; (D) Approving Additional Notice*

*Procedures; And (E) Scheduling A Combined Hearing On Approval Of The Joint Disclosure*

*Statement And Hearing On Confirmation Of The Joint Plan Of Liquidation* (the "Disclosure

Statement Order") [ECF No. 884], which, among other things: (a) conditionally approved the

adequacy of the Disclosure Statement; (b) (i) scheduled a combined hearing to approve the

adequacy of the Disclosure Statement on a final basis and confirmation of the Plan, (ii) established

June 8, 2023 as the deadline to file objections to the adequacy of the Disclosure Statement and/or

confirmation of the Plan, (iii) approved the solicitation procedures as described therein with

respect to the Plan, which included establishing June 1, 2023, as the Voting Deadline, approved

the form and manner of service of the Ballots, and (iv) approved the form and manner of service

of certain notices related to the Plan, and (c) granted related relief.

14.     As reflected in the certificates of service that have been filed with the Court, the

Debtors, with the assistance of their noticing agent, Stretto, solicited acceptances of the Plan

from BETM, and on April 23, 2023 provided notice of the date and time of the confirmation

hearing set forth in the Disclosure Statement Order on all creditors and parties in interest [ECF

No. 898].  To the best of my knowledge, the Debtors have complied in good faith with all

requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court and the solicitation procedures adopted by the Court in the Disclosure Statement Order.

15.     The primary purpose of the Plan is to effectuate the orderly wind down of the Debtors' affairs by distributing the Assets of the Estates based in large part on the previously approved sale of substantially all of the Debtors' Assets.  Notably, the Plan provides for, *inter alia*, the BETM Plan Settlement, whereby Boston Energy Trading and Marketing, LLC ("BETM") has agreed to subordinate its right to receive a Distribution on account of its DIP Financing Claims, the BETM Adequate Protection Obligation, and the BETM Class 4 Allowed Secured Claim, so as to enable the Debtors to use the Available Cash (i) to pay the Agreed Senior Claims in connection with confirmation of the Plan, and/or (ii) to pay for the prosecution of Causes of Action on terms acceptable to the Debtors and BETM.

16.     On June 9, 2023, the Debtors filed the *Debtors' Expedited Motion to Modify Joint Chapter 11 Plan Of Liquidation Dated April 14, 2023* [ECF No. 923] (the "Modification Motion"), which Modification Motion seeks to modify certain provisions of the Plan pursuant to Section 1127 of the Bankruptcy Code related to (i) the procedures for approving settlements and compromises of Causes of Action after the Effective Date, and (ii) adding a condition to the occurrence of the Effective Date.  I understand that BETM supports the Modification Motion.

## PART II
## OBJECTIONS TO CONFIRMATION AND RESOLUTION

17.     I understand that there were no formal objections filed to confirmation of the Plan before the June 8, 2023 deadline imposed by the Bankruptcy Court in the Disclosure Statement Order.

7

18.     However, I am aware that counsel to the Assignee for the Benefit of Creditors for Liberty Power Corp., Philip Von Kahle, raised an informal objection with counsel to the Debtors in respect of the extent of the releases being proposed under the BETM Plan Settlement.  In the event the Court confirms the Plan, then I understand that counsel to the Debtors and counsel to the Assignee have agreed to add the following language to the proposed confirmation order in order to resolve the informal objection to the Plan asserted by the Assignee:  "Nothing in the Plan or this Confirmation Order releases, enjoins, or shall be deemed to release or enjoin any claims of (a) Liberty Power Corp., LLC; or (b) Philip J. von Kahle as Assignee for Liberty Power Corp., LLC against the BETM Released Parties; provided however that nothing in this provision constitutes an acknowledgement that such claims exist or restricts or releases any defense against same, and provided further that this provision shall not limit or affect the release being provided by the Debtors under the Plan to the BETM Released Parties for any claims of the Debtors that exist and may be brought by, through or under the Debtors."

### PART III
### COMPLIANCE WITH SECTION 1129(a) REQUIREMENTS

19.     I have worked with the Debtors' Professionals in connection with the wind down of the Debtors' affairs.  I participated in the development of and negotiations on the Plan.  Counsel to the Debtors has informed me that the Debtors must demonstrate that the Plan satisfies section 1129 of the Bankruptcy Code in order for the Plan to be confirmed.  Based on my understanding of the Plan and discussions that I have had with Debtors' counsel regarding various orders entered in these Chapter 11 Cases and the requirements of the Bankruptcy Code and applicable law, I

understand and believe as set forth below that the Plan satisfies the confirmation requirements of sections 1129(a) and (b) of the Bankruptcy Code and should be confirmed.

20.     The Plan groups the Debtors together solely for the purposes of describing treatment under the Plan, confirmation of the Plan, and making Distributions in accordance with the Plan in respect of Claims against, and Equity Interests in, the Debtors under the Plan. Notwithstanding such groupings, the Plan constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan is not premised upon, and will not cause, the substantive consolidation of any of the Debtors.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

**A.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1) of the Bankruptcy Code.**

**Section 1122**

**(i)     The Classifications in the Plan are proper under 11 U.S.C. §1122.**

21.     Section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

22.     Counsel to the Debtors has informed me that the classifications in the Plan are proper and in accordance with the standards set forth in section 1122 of the Bankruptcy Code. Specifically, Article III of the Plan provides for the separate classification into nine (9) Class of Claims and Equity Interests as follows: (a) Class 1 (Allowed Other Priority Claims) – All Debtors; (b) Class 2 (Secured Claim of Hanover Insurance Company – All Debtors); (c) Class 3 (Secured Claim of Eckert Seamans Cherin & Mellot – Holdings only); (d) Class 4 (Secured Claim of Boston

9

Energy Trading and Marketing LLC- All Debtors; (e) Class 5 (Secured Claim of Shell Energy North America (US), L.P- All Debtors; (f) Class 6 (Secured Claims of David Hernandez and Martin Halpern - Mezzanine Lenders (Insider Claims))- All Debtors; (g) Class 7 (General Unsecured Claims) – All Debtors; (h) Class 8 (Subordinated Unsecured Claim of The Illinois Attorney General) (Holdings Only); and (i) Equity Interest – All Debtors.  The Administrative Claims, Professional Fee Claims, Priority Tax Claims and United States Trustee Fees are unclassified and their treatment is described in Article II of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

23.      In each instance of separate classification, the Plan classifies Claims based upon their different rights and attributes. As such, valid business, factual, and legal reasons exist for classifying separately the various Classes of Claims and Equity Interests created under the Plan. Additionally, each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Accordingly, I believe that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

**(ii)**      **The Plan complies with the mandatory requirements under the Bankruptcy Code (11 U.S.C. §1123(a)).**

**Section 1123(a)**

24.      Section 1123(a) mandates that a plan: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; (e) provide adequate means for the plan's implementation; (f) provide for the

10

prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy.

25. Counsel to the Debtors has informed me that section 1123(a) of the Bankruptcy Code sets forth seven requirements applicable to a corporate debtor's plan. Based on my understanding of the requirements of section 1123(a), I believe that the Plan complies with each of the following seven (7) requirements:

a. 11 U.S.C. § 1123(a)(1). In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan designates nine (9) different classes of Claims and Equity Interests consistent with the requirement of section 1122.

b. 11 U.S.C. § 1123(a)(2). In accordance with section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies that Claims in Class 1 (Allowed Other Priority Claims), Class 2 (Secured Claim of Hanover Insurance Company) and Class 3 (Secured Claim of Eckert Seamans Cherin & Mellot) are unimpaired under the Plan.

c. 11 U.S.C. § 1123(a)(3). In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies that Claims in Class 4 (Secured Claim of Boston Energy Trading and Marketing LLC), Class 5 (Secured Claim of Shell Energy North America (US), L.P., Class 6 (Secured Claims of David Hernandez and Martin Halpern - Mezzanine Lenders (Insider Claims), Class 7 (General Unsecured Claims), Class 8 (Subordinated Unsecured Claim of The Illinois Attorney General) (Holdings Only); and Class 9 (Equity Interest) are impaired under the Plan and provides the treatment for each Class.

d. 11 U.S.C. § 1123(a)(4). In accordance with section 1123(a)(4) of the Bankruptcy Code, under Article IV of the Plan, each Claim against or Equity Interest in the Debtors in each respective Class is the same as the treatment of every other Claim or Equity Interest in such Class, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment for such Claim or Equity Interest.

e. 11 U.S.C § 1123(a)(5). In accordance with section 1123(a)(5) of the Bankruptcy Code, Article VI of the Plan sets forth adequate means for implementation of the Plan, and contemplates, among other things: (a) the approval of a settlement and compromise between the Debtors and BETM related to the use of Available Cash; (b) the liquidation of

the remaining Debtors' Assets on or after the Effective Date of the Plan; (c) the Distributions of Available Cash on hand as of and generated after the Effective Date as set forth on the Liquidation Analysis attached as *Exhibit "3"* to the Disclosure Statement, all in accordance with the BETM Plan Settlement; (d) the dissolution of the Debtors, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor is formed without further order of the Bankruptcy Court or without the need for any corporate action; and (e) preservation of Causes of Action not otherwise released under the Plan.

f.      <u>11 U.S.C § 1123(a)(6)</u>. In accordance with section 1123(a)(6) of the Bankruptcy Code, and as set forth in Article VI of the Plan, as of the Effective Date, all Equity Interests in each Debtor shall be deemed retired, cancelled, extinguished and/or discharged and of no further force and effect.  As such the Debtors will not be issuing securities under the Plan.

g.      <u>11 U.S.C. §1123(a)(7)</u>.  In accordance with section 1123(a)(7) of the Bankruptcy Code, and as set forth in Article VI of the Plan, from and after the Effective Date, the Debtors shall continue to exist on or after the Effective Date solely for the purposes of satisfying the Debtors' obligations under the Plan, including making Distributions as required under the Plan and effectuating the wind down of the Debtors. Because the Plan is a plan of liquidation, it does not provide for the appointment of officers, directors, and trustees.  Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules of the Bankruptcy Court providing for earlier closure of the Chapter 11 Cases, when the Debtors' Available Cash has been distributed in accordance with the Plan, or at such earlier time as the Debtors deem appropriate, the Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

26.     Based upon the foregoing, I understand and believe that the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code (as well as other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules) and, thus, satisfies the requirements of section 1129(a)(1).

iii.    **<u>The Plan contains certain provisions permitted under the Bankruptcy Code (11 U.S.C. § 1123(b)).</u>**

27.     Counsel to the Debtors has informed me that section 1123(b) of the Bankruptcy Code sets forth provisions that may be included in a chapter 11 plan. I believe each of the provisions described below and included in the Plan are permissible under section 1123(b):

a.      11 U.S.C. §1123(b)(1). As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan specifies that Claims in Class 1 (Allowed Other Priority Claims), Class 2 (Secured Claim of Hanover Insurance Company) and Class 3 (Secured Claim of Eckert Seamans Cherin & Mellot) are unimpaired because the Plan leaves unaltered the legal, equitable and contractual rights of the holders of Claims within such Classes. Conversely, Class 4 (Secured Claim of Boston Energy Trading and Marketing LLC), Class 5 (Secured Claim of Shell Energy North America (US), L.P., Class 6 (Secured Claims of David Hernandez and Martin Halpern - Mezzanine Lenders (Insider Claims), Class 7 (General Unsecured Claims), Class 8 (Subordinated Unsecured Claim of The Illinois Attorney General) (Holdings Only); and Class 9 (Equity Interest) are impaired under the Plan.

b.      11 U.S.C. §1123(b)(2). As permitted by section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides that all executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, (ii) has expired or otherwise terminated pursuant to its terms, or (iii) is the subject of a separate assumption motion filed by one of the Debtors under Bankruptcy Code section 365.  Any party to an executory contract or unexpired lease that was previously rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code and failed to timely file a Claim for damages from such rejection pursuant to the deadlines established in the Rejection/Termination Orders shall be deemed to have waived any Claim in connection with the rejection and/or termination of such contract or lease.

c.      11 U.S.C. §1123(b)(3)(A). As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, the settlements contemplated in the Plan, including the BETM Plan Settlement described in Article VI of the Plan, has been proposed in good faith and represents a good faith compromise and settlement.

d.      11 U.S.C. §1123(b)(3)(B). As permitted by section 1123(b)(3)(B) of the Bankruptcy Code, the Plan contemplates the retention of Causes of Action, subject to the releases, injunctions and exculpations contained in Article XI of the Plan and the BETM Plan Settlement.

13

e.      11 U.S.C. §1123(b)(5). As permitted by Section 1123(b)(5) of the Bankruptcy Code, in accordance with section 1123(b)(5) of the Bankruptcy Code, Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Equity Interests in each Class.

f.      11 U.S.C. §1123(b)(6). As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions, such as releases, exculpation and injunction provisions that are consistent with the provisions of the Bankruptcy Code.

**B.      The Debtors have Complied with Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**

**Section 1129(a)(2)**

28.      As the plan proponents, the Debtors have sought to comply with Section 1129(a)(2) by conducting themselves in accordance with Chapter 11 of the Bankruptcy Code, including without limitation: (a) conducting the solicitation of votes on the Plan in a manner consistent with the Disclosure Statement Order and with Section 1126 of the Bankruptcy Code; (b) obtaining conditional approval of the Disclosure Statement, (c) complying with all orders of the Court; and (d) operating the Debtors' businesses within the confines established by the Bankruptcy Code and all Orders of the Court.

29.      The Disclosure Statement Order set May 16, 2023 as the deadline for the Debtors to serve the Solicitation Documents.  On or before May 16, 2023, I understand that the Debtors, with the assistance of their noticing agent, Stretto, solicitated acceptances of the Plan and provided notice of the date and time of the Confirmation Hearing set forth in the Disclosure Statement Order on all creditors and parties in interest on May 16, 2023, as evidenced by the Certificate of Service filed on May 23, 2023 [ECF No. 898].

30.     To the best of my knowledge and belief, the Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by the Bankruptcy Court in connection with these Chapter 11 Cases.  I further understand and believe that good, sufficient, and timely notice of the Confirmation Hearing and all other hearings in these Chapter 11 cases have been provided to all holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been provided.

31.     To the best of my knowledge and belief, the Debtors have complied with the requirements of section 1126 of the Bankruptcy Code.  Claims in Class 1 (Allowed Other Priority Claims), Class 2 (Secured Claim of Hanover Insurance Company) and Class 3 (Secured Claim of Eckert Seamans Cherin & Mellot) are not impaired under the Plan and as a result, I understand that those Classes are conclusively deemed to have accepted the Plan pursuant to section 11246(f) of the Bankruptcy Code. As such, I understand that they have not been solicited to vote.  I further believe Class 5 (Secured Claim of Shell Energy North America (US), L.P., Class 6 (Secured Claims of David Hernandez and Martin Halpern - Mezzanine Lenders (Insider Claims), Class 7 (General Unsecured Claims), Class 8 (Subordinated Unsecured Claim of The Illinois Attorney General) (Holdings Only); and Class 9 (Equity Interest) are impaired under the Plan and will not receive any Distribution or retain any property under the Plan on account of their Claims and are therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, I understand that Classes 5-9 were not solicited to accept or reject the Plan in

accordance with the Disclosure Statement Order.  Only Class 4 (BETM) was solicited to vote and as such received a copy of the Plan, Disclosure Statement, Confirmation Order and Ballot.

## Section 1129(a)(3)

32.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  The Plan is based upon arms'-length negotiations among the Debtors and BETM regarding the best means for completing the liquidation of the remaining Assets, winding down the Debtors' affairs, and maximizing the value of the Estates and the return to creditors.  The Plan formulation process was conducted in good faith with all participants in that process represented by experienced and competent counsel.  I believe that the acceptance of the Plan by the only impaired voting Class and the fact that no objections have been filed challenging the Debtors' good faith supports the Debtors' good faith in the process.

## Section 1129(a)(4)

33.    To comply with Section 1129(a)(4), the Debtors have provided that all payments made or to be made by the Debtors for services or for costs or expenses incurred in connection with the Chapter 11 Cases, including all of the Allowed Professional Fee Claims, are subject to approval of the Court as reasonable.  Among other things, the Plan contains appropriate procedures for filing applications for final allowance of compensation by Professionals.  As such, I understand and believe that the requirements of section 1129(a)(4) have been satisfied with respect to the Plan.

## Section 1129(a)(5)

34.     Section 1129(a)(5)(A) of the Bankruptcy Code requires that, prior to confirmation, the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors and that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. In addition, section 1129(a)(5)(B) requires a plan proponent to disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider."

35.     Because the Plan is a plan of liquidation, it does not provide for the appointment of proposed officers and directors of the Reorganized Debtors or continuance of officers and directors.  Instead, the Plan call for the eventual dissolution of the Debtors.  As the Debtors' CRO, I am charged with consummating the provisions of the Plan upon and after confirmation thereof. As such, I believe the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

## Section 1129(a)(6)

36.     Section 1129(a)(6) of the Bankruptcy Code requires governmental and regulatory approval of any rate change implemented under the terms of a plan.   I understand that Bankruptcy Code section 1129(a)(6) is inapplicable to these Chapter 11 Cases because the Debtors are winding down their affairs and no longer charging rates that are the subject of any governmental or regulatory oversight.

### Section 1129(a)(7)

37.     Section 1129(a)(7) of the Bankruptcy Code requires a determination that the Plan is in the best interests of the holders of impaired claims that have not voted to accept the Plan.  It is my understanding that the best interests test requires that each holder of a claim or interest either accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

38.     The Debtors, with the assistance of BRG and Debtors' Counsel, prepared the Liquidation Analysis attached to the Disclosure Statement as Exhibit "3". The Liquidation Analysis sets forth the Cash in the Debtors' bank accounts, the Professional Fee Escrow, the retainers of Professionals, and proceeds from the prosecution and/or settlement of Causes of Action before and after the Effective Date, including pursuant to the D&O Settlement Agreement and the Kaufman Settlement Agreement.  I am familiar with the methods used, and the conclusions reached, in the preparation of the Liquidation Analysis and believe the same is true and accurate.

39.     Each holder of a Claim or Equity Interest that is impaired under the Plan has accepted the Plan or, based on the Liquidation Analysis, will receive a distribution under the Plan that is not less than the amount that such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code unless they agreed to a lesser treatment.  Specifically, the Liquidation Analysis is based, in part, on approval of the BETM Plan Settlement which provides, among other things, on BETM's agreement to subordinate its right to receive a Distribution on account of: (a) the DIP Financing Claims, (b) the BETM Adequate Protection Obligation, and (c)

18

the BETM Class 4 Allowed Secured Claim, so as to enable the Debtors to use the Available Cash (i) to pay the Agreed Senior Claims in connection with confirmation of the Plan, and/or (ii) to pay for the prosecution of Causes of Action on terms acceptable to the Debtors and BETM. The approval of the BETM Plan Settlement will allow for the holders of Administrative Claims, Priority Tax Claims and Creditors in Class 1 to receive more under the Plan than such holders would receive in a liquidation under chapter 7 of the Bankruptcy Code. In addition, holders of Claims in Class 2, 3 and 5-9 will receive no less under the Plan than they would in a chapter 7 liquidation.

40.    Additionally, the amounts that would be available for satisfaction of the Allowed Claims under the Plan would be reduced significantly by the costs and expenses of a chapter 7 trustee and his professionals, as well as additional Administrative Claims and other priority Claims that might result from the chapter 7 case. Based on the Liquidation Analysis, I believe that the Plan satisfies the so-called "best interests tests" under section 1129(a)(7) of the Bankruptcy Code.

### Section 1129(a)(8)

41.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept the plan or be unimpaired under the plan. An unimpaired class is conclusively presumed to accept the plan. The Certificate of Plan Proponent being filed by the Debtors contemporaneously herewith sets forth the impaired and unimpaired Classes under the Plan. Under the Plan, Classes 1-3 are unimpaired, and thus are conclusively deemed to have accepted the Plan. Class 4 (BETM) is impaired and has voted in favor of the Plan and Classes 5-9 are impaired under the Plan and will not receive any Distribution or retain any property under

the Plan on account of their claims and therefore are deemed to have rejected the Plan. Accordingly, I understand and believe that the requirements of section 1129(a)(8) of the Bankruptcy Code have been met.

### Section 1129(a)(9)

42.     Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under Section 507(a) receive specified cash payments under the Plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code generally requires the plan to satisfy administrative and priority tax claims in full in cash.  In accordance with section 1129(a)(9)(A) and (B), I understand that Article II of the Plan provides for all Agreed Senior Claims (which include Statutory Fees, Allowed Professional Fee Claims, Settled Administrative Claims, other Allowed Administrative Claim, Allowed Priority Tax Claims and Allowed Other Priority Claims approved by BETM) to be paid in full, in Cash in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as agreed by the holder of any such Agreed Senior Claim. I also understand that the Debtors will reserve the full amount sought in connection with the request for allowance and payment of an administrative expense claim by Shawn and Lydia O'Brien in the event such claim is allowed by the Court.

43.     Accordingly, it is my understanding that, based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code, including because the Plan cannot go effective unless and until persons holding claims entitled to priority under Section

507(a) receive specified cash payments under the Plan or have otherwise agreed to a different treatment.

### Section 1129(a)(10)

44.     Section 1129(a)(10) of the Bankruptcy Code is an alternative requirement to Section 1129(a)(8)'s requirement that each class of claims or interests must either accept the Plan or be unimpaired under the Plan. Section 1129(a)(10) provides that to the extent there are Impaired Classes of Claims, then at least one Impaired Class of Claims must accept the plan, without counting the acceptance of such plan by any insider of the Debtor.   As is outlined herein and in more detail on the Certificate of Plan Proponent, the Debtors have one (1) Impaired Class (Class 4 BETM) that has voted to accept the Plan.   As a result, the requirement of Section 1129(a)(10) has been met because at least one Impaired Class of Claims, excluding Insiders, has accepted the Plan.

### Section 1129(a)(11)

45.     Section 1129(a)(11) of the Bankruptcy Code requires the Court to conclude that the Plan is "feasible," in that confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors, and the Plan has a reasonable probability of success. I understand that the Plan is feasible because the Debtors will be able to satisfy all conditions precedent to the Effective Date and will have sufficient funds to make the payments required under the Plan in a manner consistent with the Liquidation Analysis.   Accordingly, I believe that the Plan is feasible as the term is used in connection with confirmation of a liquidating chapter 11 plan.   In

addition, the Plan provides for the liquidation of the Assets of the Debtors and therefore there will not be a need for a further reorganization of the Debtors after confirmation of the Plan.

### Section 1129(a)(12)

46.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.   It is my understanding that as of the date of this Declaration, the Debtors are current with chapter 11 statutory and operating fees required to be paid during these Chapter 11 Cases.   Moreover, pursuant Article II of the Plan, on the Effective Date, and thereafter as required, the Debtors agree to pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fourteen (14) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the monthly operating reports for the relevant periods, indicating the cash disbursements for the relevant period.   The Reorganized Debtors further agree to pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, post-confirmation quarterly operating reports indicating all the cash disbursements for the relevant period.   Therefore, I

understand and believe that the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

## Section 1129(a)(13)

47.     Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits occasioned by way of collective bargaining agreement continue to be paid post-confirmation at any levels established in accordance with Section 1114 of the Bankruptcy Code.  The Debtors have no retiree benefits and the 401(k) Plan, and any other pension programs, as the same have been cancelled or terminated, or will be cancelled or terminated prior to the Effective Date.  Therefore, I believe that section 1129(a)(13) of the Bankruptcy Code does not apply and is deemed satisfied.

## Sections 1129(a)(14)-(16)

48.     Sections 1129(a)(14), (15) & (16) of the Bankruptcy Code requires the payment of certain domestic support obligations; the Debtors have none and, therefore, section 1129(a)(14) is inapplicable and deemed satisfied. Section 1129(a)(15) of the Bankruptcy Code imposes certain payment obligations on individual Debtor; the Debtors are not individuals and, therefore, section 1129(a)(15) is inapplicable here.  Section 1129(a)(16) of the Bankruptcy Code applies to transfers by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16).  Counsel to the Debtors has advised me that Bankruptcy Code sections 1129(a)(14), (15) & (16) are not applicable to the Debtors.

## Section 1129(d)

49.     The Plan has not been filed for the purpose of the avoidance of taxes or the application of Section 5 of the Securities Act of 1933, as amended.

23

## **Section 1129(b)**

50.     Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of Section 1129(a) are met with respect to a plan, other than subparagraph 8 thereof, then the Court shall confirm the plan if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the plan.  As set forth above, one (1) impaired Class (Class 4 BETM) has voted in favor of the Plan.  Classes 1-3 are unimpaired, and thus are conclusively deemed to have accepted the Plan.  Classes 5-9 are impaired under the Plan and will not receive any Distribution or retain any property under the Plan on account of their claims and therefore are deemed to have rejected the Plan.  As a result, the Debtors are required to proceed with a "cramdown" on the holders of Claims and Equity Interests in Classes 5-9 under section 1129(b).

51.     To that end, the Claims in Classes 5-8 of the Plan are Unsecured and Class 9 contains the Equity Interests in the Debtors. With respect to the Unsecured Claims in Classes 5-8 of the Plan, I understand that the provisions of section 1129(b) are satisfied if "the holder of a claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property …."  I understand that a similar provision exists in section 1129(b) for the Class 9 Equity Interests under the Plan.

52.     As set forth in the Plan, no holder of a Claim of Equity Interest in Classes 5-9 of the Plan will receive or retain any property under the Plan.  Accordingly, I understand and believe that the requirements of section 1129(b) of the Bankruptcy Code have been met with respect to Classes 5-9 under the Plan.

24

## PART IV
## <u>ADDITIONAL PLAN PROVISIONS</u>

**A.    The Injunction, Exculpation and Related Provisions under the Plan Should be Approved.**

53.    Article XI of the Plan contains certain exculpation and injunctive provisions, each of which is narrowly tailored and reasonable.  Further, the provisions specifically exclude acts of fraud, willful misconduct, or gross negligence.  Such provisions are critical components of the Plan and appropriate in the Debtors' business judgment.  Counsel to the Debtors has informed me that section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."

### i.    The Exculpation Provision is Appropriate and Narrowly Tailored

54.    I understand that Article XI of the Plan (the "<u>Exculpation Provision</u>") complies with the requirements of the Bankruptcy Code and applicable law. For purposes in the Plan, "Exculpated Parties" shall mean and include (a) each of Stephen Gray, Jay Goldman and Louis Martinsen as certain of the Debtors' respective present and former managers, (b) Bob Butler as the Debtors' chief restructuring officer, (c) Michael Brown, as the Debtor's chief financial officer, (d) each of the Debtors' employees who were employed by the Debtors from and after the Petition Date; (e) all Professionals (including ordinary course professionals) whose employment has been approved by the Bankruptcy Court in the Chapter 11 Cases, including Genovese Joblove & Battista, P.A., Venable LLP and Berkeley Research Group, LLC, and each of their respective attorneys, paraprofessionals and employees, and (f) BETM and all its managers, members,

25

professionals and representatives, including Berger Singerman LLP and Eversheds Sutherland, and each of their respective attorneys, paraprofessionals and employees.

55. The Exculpation Provision, which excludes gross negligence, willful misconduct, or fraud is appropriate and important because it provides protection to those parties who served as fiduciaries during the chapter 11 process or made substantial and critical contributions to the settlements contained in the Plan. It is my understanding that the Exculpation Provision helps to prevent future collateral attacks that, if otherwise permitted, may have caused the parties that are to be exculpated under the Plan to have been reluctant to cooperate with the negotiations and formulation of the Plan. Lastly, the Exculpation Provision only applies to acts or omissions that occurred after the Petition Date and does not apply to any pre-petition acts of omissions. Accordingly, I believe that the Exculpation Provision in the Plan is appropriate and should be approved.

### ii. The Plan Injunction Provision is Appropriate

56. I understand that the injunctions in Article XI of the Plan (the "Plan Injunction") are necessary to protect the Debtors and their Estates from any potential litigation from prepetition creditors after the Effective Date. I further understand that, without the Plan Injunction, there would be no mechanism to enforce the provisions of the Plan. As a result, the Debtors, who are liquidating and have limited wind down funds, could be faced with numerous lawsuits in various jurisdictions related to Claims that are treated under the Plan. Accordingly, I believe that the Plan Injunction is appropriate and should be approved.

## PART V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

57.     During the course of the Chapter 11 Cases, the Debtors conducted a full review of their executory contract and unexpired leases in connection with the sale of their Assets.  I understand that section 1123(b)(2) of the Bankruptcy Code allows a plan, subject to section 365, to provide for the assumption, rejection or assignment of an executory contract or unexpired leases not previously assumed or rejected under the Bankruptcy Code section 365.  Article IX of the Plan provides that all executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, (ii) has expired or otherwise terminated pursuant to its terms, or (iii) is the subject of a separate assumption motion filed by one of the Debtors under Bankruptcy Code section 365.

58.     Any party to an executory contract or unexpired lease that was previously rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code and failed to timely file a Claim for damages from such rejection pursuant to the deadlines established in the Rejection/Termination Orders shall be deemed to have waived any Claim in connection with the rejection and/or termination of such contract or lease.

## PART VI
## THE BETM PLAN SETTLEMENT SHOULD BE APPROVED

59.     The Plan shall constitute a motion for approval of a settlement and compromise under Bankruptcy Rule 9019 between the Debtors and BETM related to the use of Available Cash

(whether now existing or hereafter arising) in connection with confirmation of the Plan (the "BETM Plan Settlement"). Specifically, subject to and conditioned on confirmation of the Plan and the Plan becoming effective, BETM has agreed to subordinate its right to receive a Distribution on account of: (a) the DIP Financing Claims, (b) the BETM Adequate Protection Obligation, and (c) the BETM Class 4 Allowed Secured Claim, so as to enable the Debtors to use the Available Cash (i) to pay the Agreed Senior Claims in connection with confirmation of the Plan, and/or (ii) to pay for the prosecution of Causes of Action on terms acceptable to the Debtors and BETM.

60.      In exchange for and as a material inducement to BETM's agreement to the BETM Plan Settlement and to allow the Debtors to use such Available Cash, effective automatically on the Effective Date, each of the Debtors, on behalf of themselves and their bankruptcy estates, and anyone claiming by, through, or under them (collectively, the "Debtor Releasing Parties"), shall be deemed to have fully and forever remised, released, acquitted, waived, disclaimed, surrendered, satisfied, and discharged BETM each of its present and former managers (including Jay Goldman and Louis Martinsen), members, officers, directors, employees, attorneys, affiliates, direct and indirect subsidiaries, direct and indirect parent companies, accountants, financial advisors, agents and representatives, (collectively, the "BETM Released Parties") of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether

disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Releasing Parties ever had, now has or hereafter can, shall or may have against any of the BETM Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, the Chapter 11 Cases, the Prepetition Secured Claim, the Prepetition Secured Loan Documents, the DIP Financing Claims and the DIP Loan Documents. Nothing contained in this release shall release BETM from its agreements set forth in the Plan.

61.     I understand that Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). I further understand that Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the rights and powers afforded to a trustee serving in a chapter 11 case. *See* 11 U.S.C. § 1107(a). Still further, I understand that Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). Accordingly, the Debtors are seeking the Court's authority to approve the BETM Plan Settlement.

62.     I understand that when considering whether to approve a compromise or settlement under Rule 9019, a bankruptcy court must determine if the proposed compromise or settlement is fair, equitable, reasonable and in the best interests of the debtor's estate. *See*

29

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Se. Banking Corp.*, 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable"). Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). A bankruptcy court is not required to decide the merits of claims, but is to assess the probability of succeeding on those claims. *See In re Vazquez*, 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005). "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Compromises and settlements are looked upon favorably in bankruptcy cases because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); 10 *Collier on Bankruptcy* ¶ 9019.01 (16th ed. 2017) ("Compromises are favored in bankruptcy.").

63.     I also understand that the inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983).

64.     I also understand that the United States Court of Appeals for the Eleventh Circuit has set forth four factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. These factors are as follows:

    a.   the probability of success in the litigation;

    b.   the difficulties, if any, to be encountered in the matter of collection;

    c.   the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

    d.   the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

*See also Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498, 504 (11th Cir. 2007) (setting forth *Justice Oaks* factors and affirming bankruptcy court's approval of settlement agreement).

65.    Lastly, I understand that appellate courts review a bankruptcy court's approval of a settlement or compromise to determine whether there is a clear showing that the bankruptcy court abused its discretion. *In re Van Diepen, P.A.*, 236 Fed. Appx. at 504; *In re Bicoastal Corp.*, 164 B.R. at 1016 (stating "the Bankruptcy Court has broad discretion to approve a compromise."). Moreover, "[t]he bankruptcy court is not required to rule on the merits, and must look only to the probabilities." *Id.* Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

66.    On behalf of the Debtors, I believe and submit that as applied to the BETM Plan Settlement herein, the *Justice Oaks* factors weigh heavily in favor of approval of the terms and conditions of the BETM Plan Settlement.  First, with regard to the "probability of success in litigation" and the "complexity of the litigation" factors, I believe that without the consent of BETM to use the Available Cash on which BETM has senior Liens and Claims, the Debtors would

not succeed in any litigation to compel BETM to allow such use. As to the "collection factor," I do not believe it is relevant to the analysis of the BETM Plan Settlement.

67. With regard to the final factor of "paramount interests of creditors," I believe on behalf of the Debtors that it weighs heavily in favor of approving the BETM Plan Settlement and confirming the Plan. Without the BETM Plan Settlement, the Debtors would not be able to confirm the Plan and make Distributions to the holders of Agreed Senior Claims. In fact, the Debtors would be required to turnover all Available Cash to BETM and then either convert these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or seek dismissal of these Chapter 11 Cases. In either situation, without the BETM Plan Settlement, no other creditors, namely the Settled Administrative Claims, would receive any Distribution.

68. For the foregoing reasons, I submit on behalf of the Debtors submit that the BETM Plan Settlement satisfies the applicable *Justice Oaks* factors, falls well above the lowest point in the range of reasonableness, is fair and equitable, is in the best interest of all Creditors and, accordingly, should be approved upon and in connection with confirmation of the Plan.

## PART VII
## CONCLUSION

69. In summary, and without limiting any of the conclusions and opinions expressed above, based upon my education, experience, analysis, underlying assumptions and understandings as set forth above, it is my opinion that (i) the Debtors have complied fully with the requirements of Section 1129 of the Bankruptcy Code; (ii) the Plan has been proposed in good faith as required pursuant to Section 1129(a)(3) of the Bankruptcy Code; (iii) confirmation of the Plan will enable the Debtors to wind down the Debtors' business and liquidate the Debtors' Assets

in an orderly fashion for the benefit of all stakeholders, and (iv) the Plan satisfies the best interests of the creditors, as that concept is treated in section 1129(a)(7) of the Bankruptcy Code.

## 28 U.S.C. § 1746 DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this 9th day of June 2023 in Miami, Florida.

          /s/ *Bob Butler*                 
By:    Bob Butler
        Chief Restructuring Officer

33