

**ORDERED in the Southern District of Florida on June 21, 2023.**

Scott M. Grossman, Judge
United States Bankruptcy Court

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| **LIBERTY POWER HOLDINGS, LLC,** | **Case No. 21-13797-SMG** |
| **LPT, LLC,** | **Case No. 21-15537-SMG** |
| **LIBERTY POWER MARYLAND, LLC,** | **Case No. 21-15539-SMG** |
| **LIBERTY POWER DISTRICT OF COLUMBIA, LLC** | **Case No. 21-15540-SMG** |
| **Debtors.** | **(Jointly administered 21-13797-SMG)** |
| _____/ | |

### ORDER: (I) GRANTING DEBTORS' EXPEDITED MOTION TO MODIFY JOINT PLAN OF LIQUIDATION; (II) APPROVING JOINT DISCLOSURE STATEMENT ON A FINAL BASIS; (III) CONFIRMING JOINT PLAN OF LIQUIDATION; AND (IV) GRANTING RELATED RELIEF

**THIS CASE** came before the Court for an evidentiary hearing on **June 15, 2023 at 1:30 p.m.** (the "Confirmation Hearing") to consider: (i) the Debtors' *Expedited Motion to Modify Joint Plan of Liquidation* (the "Motion to Modify") [ECF No. 923]; (ii) final approval of the Debtors' *Joint Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by Liberty Power Holdings, LLC, LPT, LLC, Liberty Power Maryland, LLC and Liberty Power District of Columbia,*

*LLC* (as modified, amended and/or supplemented from time to time, the "Disclosure Statement")
[ECF No. 880]; and (iii) confirmation of the *Joint Chapter 11 Plan of Liquidation Proposed by*
*Liberty Power Holdings, LLC, LPT, LLC, Liberty Power Maryland, LLC and Liberty Power*
*District of Columbia, LLC,* dated as of April 14, 2023 (as modified, amended and/or supplemented
from time to time, the "Plan")[1] [ECF No. 875] proposed by LIBERTY POWER HOLDINGS, LLC
("Holdings"), LPT, LLC ("LPT"), LIBERTY POWER MARYLAND, LLC ("Liberty MD") and
LIBERTY POWER DISTRICT OF COLUMBIA, LLC ("Liberty DC") (collectively, the
"Debtors").

The Confirmation Hearing and related deadlines were set pursuant to this Court's *Order:*
*(A) Conditionally Approving Joint  Disclosure Statement; (B) Authorizing Solicitation of Votes on*
*Joint Plan of Liquidation; (C) Approving Solicitation Procedures; (D) Approving Additional Notice*
*Procedures; And (E ) Scheduling A Combined Hearing on Approval of the Joint Disclosure*
*Statement and Hearing On Confirmation of the Joint Plan of Liquidation* [ECF No. 884], entered
by the Court on April 27, 2023 (the "Disclosure Statement Order").

At the Confirmation Hearing, the Court considered: (i) the Motion to Modify; (ii) the Plan;
(iii) the Disclosure Statement; (iv) the *Certificate of Proponents of Joint Plan on Acceptance of*
*Joint Plan, Report on Amount to Be Deposited, Certificate of Amount Deposited and Payment of*
*Fees* (the "Ballot Report") [ECF No. 924], which was admitted into evidence as Debtors' Exhibit
4 at the Confirmation Hearing; and (v) the *Declaration of Bob Butler, Chief Restructuring*
*Officer, In Support of (A) Approval of the Adequacy of Debtors' Disclosure Statement on a Final*
*Basis and (B) Confirmation of the Chapter 11 Plan of Liquidation* dated June 9, 2023 (the "Butler
Declaration") [ECF No. 925], which Butler Declaration and the testimony of Mr. Butler contained

---

[1] Unless otherwise defined herein, all capitalized terms used in this Confirmation Order shall have the meanings
ascribed to them in the Plan.

therein were proffered and admitted into evidence at the Confirmation Hearing without objection. No party-in-interest sought to cross-examine Mr. Butler in connection with his testimony. In addition, no other party-in-interest introduced or proffered any evidence at the Confirmation Hearing. The Court also takes judicial notice of the main case docket of these Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed therein and orders entered thereon.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the above, as well as the record in these proceedings, and after due deliberation and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

I.    **Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**

A.    The Court has jurisdiction over these Chapter 11 Cases in accordance with 28 U.S.C. §§ 157 and 1334. Final approval of the Disclosure Statement, confirmation of the Plan, including the approval of the BETM Plan Settlement proposed therein, and consideration of the Motion to Modify are each a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court has jurisdiction to enter a final order with respect thereto. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proper debtors under section 109 of title 11 of the United States Code (the "Bankruptcy Code"), and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

---

[2] Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises*, 256 B.R. 377, 385 n.2 (Bankr. D. N.J. 2000); *In re Antar*, 122 B.R. 788, 789 (Bankr. S.D. Fla. 1990).

II.      **Oral Ruling; Findings of Fact and Conclusions of Law**.

B.      At the conclusion of the Confirmation Hearing, the Court announced its oral ruling approving the Disclosure Statement on a final basis, confirming the Plan and granting the Motion to Modify (the "Oral Ruling").  In connection therewith, the Court made a number of oral findings of fact and conclusions of law on the record, each of which is fully incorporated herein by reference in accordance with and pursuant to Bankruptcy Rule 7052(a).  Those findings and conclusions are supplemented by the findings of fact and conclusions of law contained in this Confirmation Order. The record of the Confirmation Hearing is closed.

III.     **Burden of Proof.**

C.      The Debtors, as proponents of the Plan, have met their burden of proving the elements of: (i) sections 1125, 1129(a) and (b) of the Bankruptcy Code in respect of the Plan and Disclosure Statement; (ii) Bankruptcy Rule 3019 in respect of the Motion to Modify, and (iii) Bankruptcy Rule 9019 in respect of the BETM Plan Settlement by clear and convincing evidence.

IV.      **Transmittal and Mailing of Materials; Notice.**

D.      Pursuant to the Disclosure Statement Order, as evidenced by the *Certificate of Service* filed on May 16, 2023 [ECF No. 898] by the Debtors' noticing agent, the Debtors served:

> a.   The Plan, Disclosure Statement, Disclosure Statement Order and Ballot to Boston Energy Trading and Marketing LLC ("BETM") as the Holder of the Class 4 Allowed Secured Claim (All Debtors);
>
> b.   The Plan, Disclosure Statement and Disclosure Statement Order to the Internal Revenue Service, the United States Trustee and the Securities and Exchange Commission pursuant to Bankruptcy Rule 3017(a);
>
> c.   The Notice of Non-Voting Status (Exhibit A to ECF No. 881) and

Disclosure Statement Order to all Holders of Claims and Interests that are not entitled to vote on the Plan; and

    d.  The Notice of Confirmation Hearing (Exhibit B to ECF No. 881) and Disclosure Statement Order to all other parties in interest.

E.      On June 9, 2023, the Debtors served the Motion to Modify and the Notice of Hearing [ECF No. 926] to (i) all persons requesting electronic notice via CM/ECF; (ii) all parties on the Master Service List via US Mail and/or e-mail, as indicated, and (iii) all parties on the Official Court Matrix via US Mail [ECF Nos. 927 & 928].

F.      Adequate and sufficient notice of the Confirmation Hearing, other dates and hearings described in the Disclosure Statement Order, and approval of the compromises and settlements incorporated into the Plan, including the BETM Plan Settlement, was provided in compliance with the Bankruptcy Rules and the Disclosure Statement Order. Further, adequate and sufficient notice of the Modify to Motion and the Notice of Hearing related thereto were provided pursuant to Bankruptcy Rules 2002 and 3019. No other or further notice is or shall be required. All parties in interest have been afforded a full, fair and adequate opportunity to be heard in respect of final approval of the Disclosure Statement, confirmation of the Plan (including approval of the BETM Plan Settlement), and the Motion to Modify, and to present and prosecute any objections thereto.

**V.    Solicitation.**

F.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, and all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations.

Specifically, the solicitation materials approved by the Court in the Disclosure Statement Order (including, without limitation, the Disclosure Statement, the Plan, the Ballot and the Disclosure Statement Order) were transmitted to and served on BETM as the only member of an impaired class entitled to vote on the Plan.  Such transmittal and service were adequate and sufficient, and no further notice is or shall be required.  All procedures used to distribute the solicitation materials as set forth above were fair and the distribution of solicitation materials was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and all other applicable rules, laws and regulations.

## VI.    Ballot Report.

G.    As evidenced by the Ballot Report, one (1) Ballot was filed on or before the deadline of June 1, 2023 set by the Disclosure Statement Order.  Pursuant to the Ballot Report:

(a)    Class 1 (Allowed Other Priority Claims – All Debtors), Class 2 (Secured Claim of Hanover Insurance Company – All Debtors) and Class 3 (Secured Claim of Eckert Seamans Cherin & Mellot – Holdings Only) are each Unimpaired under the Plan and are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As such, Classes 1, 2 and 3 were not solicited to vote on the Plan.

(b)    Class 4 (Secured Claim of Boston Energy Trading and Marketing LLC – All Debtors) is Impaired under the Plan and has voted to accept the Plan.

(c)    Class 5 (Secured Claim of Shell Energy North America (US), L.P. – All Debtors), Class 6 (Secured Claims of David Hernandez and Martin Halpern – Mezzanine Lenders – Insider Claims – All Debtors), Class 7 (General Unsecured Claims – All Debtors), Class 8 (Subordinated Unsecured Claim

of The Illinois Attorney General – Holdings Only) and Class 9 (Equity Interests – All Debtors) are Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because the Holders therein are not receiving or retaining any property under the Plan.  As such, Classes 5, 6, 7, 8 and 9 were not solicited to vote on the Plan.

H.      All procedures used to tabulate the Ballots were fair and reasonable, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of Florida and all other applicable rules, laws and regulations.

**VII.    Adequacy of the Disclosure Statement.**

I.      The Disclosure Statement contains:  (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations; (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein; and (c) specific descriptions of releases and injunctions related thereto in accordance with Rule 3016(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

**VIII.   Motion to Modify.**

J.      After May 16, 2023 (the "Solicitation Date"), the Debtors made certain modifications to the Plan and filed the Motion to Modify.  Pursuant to the Motion to Modify, the Debtors seek to modify the Plan as follows:

(i)      Article X(A)(c) of the Plan (Conditions Precedent to the Effective Date) to add the language in italics set forth below:

>"(c) All asserted Priority Claims and Priority Tax Claims, *and pending Objections to Priority Claims and Priority Tax Claims [ECF Nos. 903, 904, 905]*, other than the Settled Priority Tax Claims, shall have been resolved by a Final Order of the Court in a manner acceptable to BETM;"

(ii)    Article XII(v) of the Plan (Retention of Jurisdiction) to add the language in italics set forth below:

>"(v)   decide, adjudicate or resolve any motions, contested or litigated matters and any other matters, including all Causes of Action, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or filed after the Effective Date, *provided*, *however, that, after the Effective Date and except as otherwise expressly provided herein, the Debtors shall not be required to seek Court approval of a compromise or settlement of a Cause of Action under Bankruptcy Rule 9019*;"

(iii)    To add the following language to the end of Article IV(J):

>"*Notwithstanding anything herein or in the Disclosure Statement to the contrary, from and after the Effective Date, the Reorganized Debtors may, without the prior written consent of BETM, settle or compromise any Cause of Action and with BETM's consent shall not be required to seek Court approval of a compromise or settlement of a Cause of Action under Bankruptcy Rule 9019.*"

The modifications to the Plan as set forth in the Motion to Modify and above, and any further modifications to the Plan made on the record at the Confirmation Hearing (collectively referred herein as the "Modifications"), are consistent with the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125 and 1127 of the Bankruptcy Code.  None of the Modifications adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), none of the Modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  Moreover, the filing of the Modifications prior to the conclusion of the Confirmation Hearing, in the Motion to Modify and as set forth herein constitutes due and sufficient notice of any and all of

such Modifications under the Bankruptcy Code.  In accordance with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Modifications and this Confirmation Order.  All Modifications to the Plan are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan as modified by the Modifications and this Confirmation Order shall be and constitute the Plan confirmed by the Court for all purposes pursuant to this Confirmation Order.  Any and all references in this Confirmation Order to "Plan" shall mean and include the Plan as modified by the Modifications.

## IX.    The BETM Plan Settlement.

K.    The Plan constitutes a motion for approval under Bankruptcy Rule 9019 of a settlement and compromise between the Debtors and BETM that provides for Distributions to holders of Agreed Senior Claims and/or the reserve for the prosecution of Causes of Action, all pursuant to the terms and conditions set forth in Article VI.C of the Plan (the "BETM Plan Settlement").  Specifically, subject to and conditioned on confirmation of the Plan and the Plan becoming effective, BETM has agreed to subordinate its right to receive a Distribution on account of: (a) the DIP Financing Claims, (b) the BETM Adequate Protection Obligation, and (c) the BETM Class 4 Allowed Secured Claim, so as to enable the Debtors to use the Available Cash (i) to pay the Agreed Senior Claims in connection with confirmation of the Plan, and/or (ii) to pay for the prosecution of Causes of Action on terms acceptable to the Debtors and BETM.  In exchange for and as a material inducement to BETM's agreement to the BETM Plan Settlement and to allow the Debtors to use such Available Cash, effective automatically on the Effective Date, each of the Debtors, on behalf of themselves and their bankruptcy estates, and anyone claiming by, through,

or under them (collectively, the "Debtor Releasing Parties"), shall be deemed to have fully and forever remised, released, acquitted, waived, disclaimed, surrendered, satisfied, and discharged BETM each of its present and former managers (including Jay Goldman and Louis Martinsen), members, officers, directors, employees, attorneys, affiliates, direct and indirect subsidiaries, direct and indirect parent companies, accountants, financial advisors, agents and representatives, (collectively, the "BETM Released Parties") of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Releasing Parties ever had, now has or hereafter can, shall or may have against any of the BETM Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, the Chapter 11 Cases, the Prepetition Secured Claim, the Prepetition Secured Loan Documents, the DIP Financing Claims and the DIP Loan Documents. Nothing contained in this release shall release BETM from its agreements set forth in the Plan. Accordingly, the Debtors seek the Court's authority to approve the BETM Plan Settlement.

      L.     Substantially all of the Debtors' Assets are encumbered by properly perfected first priority liens in favor of BETM. BETM also holds allowed superpriority administrative on account

of the BETM Adequate Protection Obligation.   Absent BETM's consent to use the Debtors' use of Available Cash pursuant to the terms of the BETM Plan Settlement, the Debtors would not be able to confirm the Plan and make Distributions to the holders of Agreed Senior Claims.  In fact, the Debtors would be required to turnover all Available Cash to BETM and then either convert these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code or seek dismissal of these Chapter 11 Cases.   In either situation, without the BETM Plan Settlement, no other creditors, namely the Settled Administrative Claims, would receive any Distribution.  The approval of the BETM Plan Settlement and confirmation of the Plan as set forth herein resolves all such issues to the benefit of the Debtors, Holders of Claims and Interests and other parties-in-interest.

M.      The Court finds that the BETM Plan Settlement is fair, equitable, reasonable and in the best interests of the Debtors' Estates.  See *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Se. Banking Corp.*, 314 B.R. 250, 272 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable").  The Court also finds that the BETM Plan Settlement falls well above the lowest point of the range of reasonableness. *See In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983).  Lastly, the Court finds that the BETM Plan Settlement satisfies each of the four factors required by the Eleventh Circuit Court of Appeals in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

## X.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.

N.      As detailed below, each of the Plan and Disclosure Statement complies with, and the Debtors have complied with, all applicable provisions of sections 1125, 1129(a) and 1129(b) of the Bankruptcy Code, including without limitation, as follows:

11

      **(a)**       **Section 1129(a)(1) --- Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

          (i)       Sections 1122 and 1123(a)(1) - Proper Classification.

The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.   Article III of the Plan provides for the classification of Claims and Equity Interests into separate Classes based on differences in the legal nature or priority of such Claims and Equity Interests (other than Administrative Claims, Professional Fee Claims, Priority Tax Claims and United States Trustee's Fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan establishes separate Classes for holders of Claims against and Equity Interests in the Debtors, as more specifically set forth in the Ballot Report, based on their different rights and attributes.  As such, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests.  Additionally, each of the Claims or Equity Interests in a particular Class is substantially similar to the other Claims or Equity Interests in such Class, as required by section 1122(a) of the Bankruptcy Code.

          (ii)      Section 1123(a)(2) - Specification of Unimpaired Classes.

Articles III and IV of the Plan specify the Classes of Claims and Interests that are Unimpaired under the Plan.  As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

          (iii)     Section 1123(a)(3) - Specification of Treatment of Impaired Classes.

Article IV of the Plan specifies the treatment of each Impaired Class under the Plan.  As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

(iv)    <u>Section 1123(a)(4) - No Discrimination.</u>

Article IV of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

(v)    <u>Section 1123(a)(5) - Implementation of the Plan.</u>

In Article VI of the Plan, the Debtors have complied with Section 1123(a)(5) by providing adequate means for the Plan's implementation, including, but not limited to, payment of Agreed Senior Claims from Available Cash pursuant to the terms of the Plan, the BETM Plan Settlement, preservation of Causes of Action and winding up the Debtors' affairs, as each specifically set forth in the Plan.  Therefore, Section 1123(a)(5) of the Bankruptcy Code has been satisfied.

(vi)    <u>Section 1123(a)(6) - Voting Power of Equity Securities.</u>

Article VI of the Plan also provides that the Debtors shall continue to exist on or after the Effective Date solely for the purposes of satisfying the Debtors' obligations under the Plan, including making Distributions as required under the Plan and effectuating the wind down of the Debtors.  In addition, all Equity Interests in the Debtors shall be cancelled on the Effective Date. Therefore, Section 1123(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

(vii)    <u>Section 1123(a)(7) - Selection of Officers and Directors.</u>

Because the Plan is a plan of liquidation, it does not provide for the appointment of proposed officers and directors of the Reorganized Debtors or continuance of officers and

directors.  Instead, the Plan calls for the eventual dissolution of the Debtors.  Therefore, section 1123(a)(7) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

      (viii)   <u>Section 1123(b) – Additional Plan Provisions.</u>

In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides for the assumption or rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court.

Pursuant to section 1123(b)(3) a plan may provide for the retention and enforcement by the debtor, trustee or representative of the estate any such claim or interest.   Under Article VI of the Plan, the Debtors will retain and enforce any claims, rights and Causes of Action that the Debtors or the Estates may hold against any entity, to the extent not expressly released under the Plan or by any Final Order of the Court.

The settlements and compromises under the Plan, including, among other things, the BETM Plan Settlement, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code.  Pursuant to Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The Court finds that the settlement and compromises under the Plan are a valid exercise of the Debtors' business judgment, are fair, equitable and reasonable and in the best interests of the Debtors' Estates based on the following factors: (a) the probability of success of the litigation being settled; (b) the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay and possible problems

collecting a judgment; (c) the interest of creditors with proper deference to their reasonable views; and (d) the extent to which the settlement is truly the product of arm's length negotiations.

In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides, among other things, that, except with respect to the Released Parties or any other beneficiary of the injunctions, and exculpations contained in Article XI, the Debtors shall have, retain, reserve and be entitled to assert all Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had immediately prior to the Confirmation Date. The Plan is sufficiently specific with respect to the Causes of Action to be retained by the Debtors, and the Plan provides meaningful disclosure with respect to the potential Causes of Action that the Debtors may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. After the Effective Date, the Debtors shall have the exclusive right to institute, prosecute, abandon, settle or compromise all Causes of Action in their sole discretion without further notice to or action, order or approval of the Court.

In accordance with section 1123(b)(5) of the Bankruptcy Code, Articles III and IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class.

Pursuant to Section 1123(b)(6), a plan may include any other appropriate provision not inconsistent with the application provisions of section 1123. The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code such as exculpation and injunction provisions contained in Article XI of the Plan. Specifically, the Plan exculpates the Debtors and any Professionals engaged by the Debtors from any liability relating to the Chapter 11 Cases and acts and occurrences for any act taken or omission made in connection with the filing, negotiating, prosecuting, administering, formulating, implementing,

confirming or consummating the Plan or the Assets to be distributed under the Plan (the "Exculpation").  Further, the Exculpated Parties (defined in the Plan) shall not incur any liability to the Debtors, the Holders of Claims, the Holders of Interests or to any other person or entity for any act or failure to act in furtherance of the rights and obligations under the Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud; provided further, that nothing contained in this Confirmation Order shall preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.

**(b)      Section 1129(a)(2) --- Compliance by the Debtors with the Applicable Provisions of the Bankruptcy Code**

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 1123, 1125, 1126 and 1127 of the Bankruptcy Code and Bankruptcy Rules 3016, 3017, 3018, 3019, 3020 and 9019.  As a result, the Debtors have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code with respect to the Plan.

**(c)      Section 1129(a)(3) --- The Plan was Proposed in Good Faith.**

The Plan is the result of extensive arms'-length negotiations among the Debtors and BETM regarding the best means for completing the liquidation of the remaining Assets, winding down the Debtors' affairs, and maximizing the value of the Estates and the return to creditors.  The Plan formulation process was conducted in good faith with all participants in that process represented by experienced and competent counsel.  The Debtors have prosecuted these Chapter 11 Cases with an honest belief that liquidation pursuant to chapter 11 of the Bankruptcy Code is fair and appropriate under the circumstances of this case and that the Plan is the best alternative available to Holders of Claims and Interests.

The Debtors and BETM's good faith is evident from the record of these Chapter 11 Cases, including the Disclosure Statement, the Plan, and the record of the Confirmation Hearing. The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code. The Debtors and BETM and each of their officers, directors, employees, advisors and professionals: (a) acted in good faith in negotiating, formulating and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions and transfers contemplated thereby, including the BETM Plan Settlement, and (b) will be acting in good faith in proceeding to (i) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers and documentation contemplated thereby, including the BETM Plan Settlement, and (ii) take any actions authorized, directed or contemplated by this Order or the Plan. Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**(d)      Section 1129(a)(4) --- Payments to Professionals.**

The Plan provides that all payments made or to be made by the Debtors for services or for costs or expenses incurred in connection with the Chapter 11 Cases, including all of the Allowed Professional Fee Claims, are subject to approval of this Court as reasonable. In particular, Article III(B) of the Plan provides for the payment of all Allowed Professional Fee Claims in full, in Cash in such amounts as may be Allowed by this Court (a) as soon as practicable following the later of the Effective Date or the date upon which this Court enters a Final Order allowing any such Professional Fee Claim, (b) as otherwise provided in the Bankruptcy Code or approved by this Court, or (c) as may be agreed upon between the holder of any such Professional Fee Claim and the Debtors. Allowed Professional Fee Claims shall be paid from (a) first from any retainers held by such Professional(s), with any excess retainers being deposited into the Professional Fee

17

Escrow; (b) second from the Professional Fee Escrow, and (c) third if the Professional Fee Escrow is insufficient to pay the full amount of Allowed Professional Fee Claims, then the remaining unpaid the Allowed Professional Fee Claims shall be paid by the Debtors from Available Cash.

From and after the Confirmation Date until the Effective Date, the Debtors, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period. As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied with respect to the Plan.

**(e)    Section 1129(a)(5) --- Disclosure of Identity of Proposed Management and Compensation of Insiders.**

Section 1129(a)(5)(A) of the Bankruptcy Code requires that, prior to confirmation, the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors and that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. In addition, section 1129(a)(5)(B) requires a plan proponent to disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider." Because the Plan is a plan of liquidation, it does not provide for the appointment of proposed officers and directors of the Reorganized Debtors or continuance of officers and directors. Instead, the Plan call for the eventual dissolution of the Debtors. Therefore, these disclosures satisfy section 1123(a)(5) of the Bankruptcy Code.

**(f)    Section 1129(a)(6) – No Government Regulation of Rates.**

Because the Debtors are winding down their affairs and no longer charging rates that are the subject of any governmental or regulatory oversight, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

18

**(g)      Section 1129(a)(7) - Best Interests Test**

As required by section 1129(a)(7) of the Bankruptcy Code, with respect to each Impaired

Class, each holder of a Claim or Interest in such Class has either accepted the Plan or will receive

or retain under the Plan on account of such Claim property of a value, as of the Effective Date,

that is not less than the amount such holder would receive or retain if the Debtors were liquidated

on the Effective Date under Chapter 7 of the Bankruptcy Code.

The Liquidation Analysis attached to the Disclosure Statement as Exhibit 3 and the other

evidence related thereto that was proffered or adduced at the Confirmation Hearing, (a) is

reasonable; (b) utilizes reasonable methodologies and assumptions; (c) has not been controverted

by other evidence; and (d) establishes that the approval of the BETM Plan Settlement will allow

for the holders of the Agreed Senior Claims to receive more under the Plan than such holders

would receive in a liquidation under chapter 7 of the Bankruptcy Code.  In addition, Holders of

Claims and Interests in Classes 5, 6, 7, 8 and 9 will receive no less under the Plan than they would

in a chapter 7 liquidation and no class of claims or equity interest holders that is junior to the

foregoing classes shall receive or retain any property under the Plan.   Thus, the Plan satisfies the

requirements of section 1129(a)(7) of the Bankruptcy Code.

**(h)      Section 1129(a)(8) - Acceptance by Each Class of Claims or Interests.**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests

must either accept the plan or be unimpaired under the plan. An unimpaired class is conclusively

presumed to accept the plan pursuant to section 1126(f) of the Bankruptcy Code.  The Ballot

Report sets forth the Impaired and Unimpaired Classes under the Plan.  Classes 4, 5, 6, 7, 8 and 9

are Impaired under the Plan.  Classes 1, 2 and 3 are Unimpaired under the Plan.  As such, Classes

1, 2 and 3 are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy

Code.  Class 4 has accepted the Plan.  Classes 5, 6, 7, 8 and 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and therefore are subject to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.  As more fully set forth below, the Debtors have satisfied the provisions of section 1129(b) with respect to Classes 5, 6, 7, 8 and 9.  Therefore, the Debtors have satisfied the requirements of section 1129(a)(8) of the Bankruptcy Code.

**(i)      Section 1129(a)(9) --- Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under Section 507(a) receive specified cash payments under the Plan.  Articles II and III of the Plan provides for the payment, or otherwise resolution of, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, DIP Financing Claims and Statutory Fees in accordance with section 1129(a)(9) of the Bankruptcy Code.   As a result thereof, the requirements of section 1129(a)(9) of the Bankruptcy Code have been satisfied with respect to such Classes.

**(j)      Section 1129(a)(l0) - Acceptance by At Least One Impaired Class.**

Section 1129(a)(10) of the Bankruptcy Code is an alternative requirement to Section 1129(a)(8)'s requirement that each class of claims or interests must either accept the Plan or be unimpaired under the Plan. Section 1129(a)(10) provides that to the extent there is an Impaired Class of Claims, at least one Impaired Class of Claims must accept the Plan, excluding acceptance by any Insider.   As is outlined herein and in more detail in the Ballot Report, the Debtors have one (1) Impaired Class that has voted to accept the Plan.  As a result of the votes, the requirement of Section 1129(a)(10) has been met because at least one Impaired Class of Claims, excluding insiders, has accepted the Plan.

**(k)      Section 1129(a)(l1) --- Feasibility of the Plan.**

Section 1129(a)(11) of the Bankruptcy Code requires the Court to conclude that the Plan is "feasible," in that confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors, and that the Plan has a reasonable probability of success because it proposes a liquidation and distribution of the remaining assets of the Debtors.   The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in affidavits and declarations filed in connection with the Confirmation Hearing establish that the Debtors have the Available Cash to pay all Agreed Senior Claims in full and expects to be able to comply with its financial commitments in accordance with the Plan. Thus, the Plan satisfies 1129(a)(11).

**(l)** **Section 1129(a)(l2) - Payment of Bankruptcy Fees**.

Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  To date, the Debtors have paid all fees due and owing to the Office of the United States Trustee, and the Debtors or Reorganized Debtors, as applicable, anticipate paying all such fees through Confirmation of the Plan and thereafter as provided herein.  Therefore, the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

**(m)** **Sections 1129(a)(l3) - Retiree Benefits.**

The Debtors do not have any obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**(n)** **Sections 1129(a)(l4), (15), and (16) --- Domestic Support Obligations; Unsecured Claims Against Individual Debtor; Transfers by Nonprofit Organizations.**

The Debtors do not have domestic support obligations, are not an individual and are not a nonprofit organization. Therefore, sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**(o)      Section 1129(b)(2)- Confirmation of Plan Over Non-Acceptance of Impaired Classes – Cramdown.**

Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of Section 1129(a) are met with respect to a plan, other than subparagraph 8 thereof, then the Court shall confirm the plan if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the plan.  As set forth above, Class 4 is the only Impaired Class entitled to vote on the Plan and has accepted the Plan.  Classes 5-9 are impaired under the Plan and will not receive any Distribution or retain any property under the Plan on account of their claims and therefore are deemed to have rejected the Plan.  As a result, at the Confirmation Hearing, the Debtors proceeded with a "cramdown" on the holders of Claims and Equity Interests in Classes 5-9 under section 1129(b).

The Claims in Classes 5-8 of the Plan are Unsecured and Class 9 contains the Equity Interests in the Debtors. With respect to the Unsecured Claims in Classes 5-8 of the Plan, the Court finds that provisions of section 1129(b)(2)(B) are satisfied because "the holder of a claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property …."  With respect to the Equity Interests in Class 9 of the Plan, the Court finds that provisions of section 1129(b)(2)(C) are satisfied because "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property."

Therefore, the Debtors have satisfied the provisions of Section 1129(b) of the Bankruptcy Code with respect to Classes 5-9 of the Plan.

**(p)      Section 1129(c) --- Only One Plan.**

Other than the Plan, no other plans have been filed in these Chapter 11 Cases.  As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**(q)**    **Section 1129(d) --- Principal Purpose of the Plan Is Not Avoidance of Taxes.**

No Governmental Unit has requested that the Court deny Confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. As evidenced by the other findings contained in this Confirmation Order, the principal purpose of the Plan is not such avoidance. As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**XI.    Satisfaction of Confirmation Requirements.**

O.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in sections 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

**XI.    Executory Contracts and Leases.**

P.    The Plan provides that all executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, (ii) has expired or otherwise terminated pursuant to its terms, or (iii) is the subject of a separate assumption motion filed by one of the Debtors under Bankruptcy Code section 365.  Any party to an executory contract or unexpired lease that was previously rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code and failed to timely file a Claim for damages from such rejection pursuant to the deadlines established in the Rejection/Termination Orders shall be deemed to have waived any Claim in connection with the rejection and/or termination of such contract or lease.

**XII.    Retention of Jurisdiction.**

Q.    This Court may properly, and shall, retain jurisdiction over, and shall hear and determine the matters set forth in section 1142 of the Bankruptcy Code and all matters arising in, arising under, or related to these Chapter 11 Cases as set forth in Article XII of the Plan.

## XIII.   Implementation of Other Necessary Documents and Agreements.

R.    All documents and agreements necessary to implement the Plan is in the best interests of the Debtors, the Reorganized Debtors and Holders of Claims and Interests.   The Debtors have exercised sound and reasonable business judgment in determining to enter into all such documents and agreements and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements are fair and reasonable and are hereby approved.  The Debtors are authorized, without any further notice to or action, order or approval of the Court, to execute and deliver all agreements, documents, instruments and certificates relating thereto and perform all of its obligations thereunder.

## XIV.   Exculpation, General Injunction, and Preservation of Claims.

S.    The exculpation provisions in Article XI of the Plan are reasonable and appropriate under applicable law, including because it is part of a plan that was proposed in good faith, is vital to the plan formulation process, and is appropriately limited in scope. The exculpation provision, including the carve-out for fraud, gross negligence and willful misconduct, is entirely consistent with established practice in this jurisdiction and others.

T.    The injunction provisions in Article XI of the Plan are necessary to protect the Debtors and their Estates from any potential litigation from prepetition creditors after the Effective Date, without which there would be no mechanism to enforce the provisions of the Plan. Therefore, the injunction provisions set forth in Article XI of the Plan are necessary to preserve and enforce the provisions of the Plan and are narrowly tailored to achieve that purpose.

U.     The Court thus finds that each of the exculpation and injunction provisions set forth in Article XI of the Plan is narrowly tailored and: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates and the Holders of Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.  The compelling facts of these Chapter 11 Cases, as established in the record of the Confirmation Hearing and throughout these Chapter 11 Cases, are more than sufficient to support the exculpation and injunction provisions contained in Article XI of the Plan.

V.     Article VI(J) of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates and Holders of Claims and Interests.  On the Effective Date and except as expressly released under the Plan, the Causes of Action shall be preserved, including, without limitation, any and all Causes of Action the Debtors or the Estates may have or assert under Bankruptcy Code, including under sections 502, 510, 522(f), 522(h), 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a).

W.     The Causes of Actions that are preserved under the Plan include the Debtors' prosecution and/or defense of any Claim, Cause of Action or objections to Claim that the Debtors have commenced, may commence or become involved in against, or with, any Person or Entity

which arises out of events related to the Debtors or their operations, either before or after the Petition Date, including but not limited to, any Claims or Causes of Action that the Debtors may have against pre-petition professionals, including law firms and lawyers, who represented the Debtors, provided services to the Debtors or were otherwise involved with the Debtors.

**NOW, THEREFORE, BASED ON THE FOREGOING, INCLUDING THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED AS FOLLOWS:**

1.      Pursuant to 11 U.S.C. § 1125(b) and Bankruptcy Rule 30l7(b), the Disclosure Statement is approved on a final basis.  All objections and reservations of rights to the final approval of the Disclosure Statement that have not been withdrawn, waived or settled, are overruled in all respects.

2.      The Motion to Modify is granted in all respects.

3.      The Plan, as amended by the Motion to Modify and the Modifications, is approved and confirmed in every respect pursuant to Section 1129 of the Bankruptcy Code.  All votes previously cast with respect to the Plan are hereby deemed to constitute acceptances of the Plan as modified.  The terms of the Plan and the exhibits thereto, including, without limitation, any amendments, modifications, or supplements to the documents at any time prior to the Effective Date as may be agreed upon by the Debtors and the non-Debtors parties thereto, are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.  Further, following entry of this Confirmation Order, the Debtors shall be authorized to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan without further order of this Court.  All objections and

26

reservations of rights to the Plan that have not been withdrawn, waived, settled or otherwise resolved by the terms of this Confirmation Order, are overruled in all respects.

4.      If there is any conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control. Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

5.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors, except for voting purposes.

6.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, and subject to the occurrence of the Effective Date, the terms of the Plan are approved and shall be binding upon and enforceable against: (i) the Debtors, the Debtors' Estates, all property of the Debtors and the Debtors' Estates and all property to be distributed pursuant to the Plan; (ii) all holders of Claims and Interests, irrespective of whether or not the Claims or Interests are Impaired under the Plan, whether or not the holders thereof have voted to accept or reject the Plan, and whether or not such holders have filed proofs of Claim or proofs of Interests in the Chapter 11 Cases or otherwise made an appearance in these Chapter 11 Cases; (iii) each person or entity acquiring property under the Plan; (iv) any other party in interest in these Chapter 11 Cases,

27

including any party in interest who had notice of these Chapter 11 Cases; and (v) for each category above, each of the respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, managers, members, partners, agents, representatives, attorneys, beneficiaries or guardians of the foregoing.  In no event shall this Confirmation Order limit or be deemed to limit in any way the scope of the binding nature of the Plan, which shall be as broad as possible as provided in and pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code.

7.      Pursuant to section 1142(b) of the Bankruptcy Code, on the Effective Date, subject only to satisfaction of the conditions precedent set forth in the Plan, the Debtors are each authorized to consummate the Plan and each of the transactions contemplated under the Plan in accordance with the terms and conditions of the Plan, including the BETM Plan Settlement.  The Debtors and their successors under the Plan are authorized to execute, acknowledge and deliver any documents necessary to perform the terms and provisions of the Plan, and all transactions and agreements related thereto and contemplated thereunder.

8.      The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety as modified in this Confirmation Order.

9.      This BETM Plan Settlement is approved in all respects, and this Confirmation Order constitutes the approval in all respects of the BETM Plan Settlement under Bankruptcy Rule 9019.   On the Effective Date,  each of the Debtors, on behalf of themselves and their bankruptcy estates, and anyone claiming by, through, or under them (collectively, the "Debtor Releasing Parties"), shall be deemed to have fully and forever remised, released, acquitted, waived,

disclaimed, surrendered, satisfied, and discharged the BETM Released Parties of and from any and all manner of claims, debts, equity or ownership interests, rights, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Releasing Parties ever had, now has or hereafter can, shall or may have against any of the BETM Released Parties, from the beginning of the world until the Effective Date, for or by reason of any matter, cause, omission, or thing whatsoever, including, but not limited to, any matter, cause, omission, or thing related to, arising out of or in connection with the Debtors, the Chapter 11 Cases, the Prepetition Secured Claim, the Prepetition Secured Loan Documents, the DIP Financing Claims and the DIP Loan Documents. Nothing contained in this release shall release BETM from its agreements set forth in the Plan.

10.     Nothing in the Plan or this Confirmation Order releases, enjoins, or shall be deemed to release or enjoin any claims of (a) Liberty Power Corp., LLC; or (b) Philip J. von Kahle as Assignee for Liberty Power Corp., LLC against the BETM Released Parties; provided however that nothing in this provision constitutes an acknowledgement that such claims exist or restricts or releases any defense against same, and provided further that this provision shall not limit or affect the release being provided by the Debtors under the Plan to the BETM Released Parties for any claims of the Debtors that exist and may be brought by, through or under the Debtors.

11.    All executory contracts and unexpired leases not previously assumed or rejected by the Debtors under 11 U.S.C. § 365 with the prior approval of the Court are hereby rejected by the Debtors.  Any party to an executory contract or unexpired lease that was previously rejected pursuant to an order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code and failed to timely file a Claim for damages from such rejection pursuant to the deadlines established in the Rejection/Termination Orders shall be deemed to have waived any Claim in connection with the rejection and/or termination of such contract or lease.  **ANY CLAIM FOR DAMAGES ARISING FROM ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE REJECTED BY VIRTUE OF THIS ORDER MUST BE FILED WITHIN 30 DAYS AFTER THE MAILING OF NOTICE OF THE ENTRY OF THE CONFIRMATION ORDER OR SUCH CLAIM SHALL BE FOREVER BARRED, SHALL NOT BE ENFORCEABLE AGAINST THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, OR ANY OF THE ASSETS OF THE DEBTORS' ESTATES, AND SHALL RECEIVE NO DISTRIBUTION UNDER THIS PLAN OR OTHERWISE ON ACCOUNT OF SUCH CLAIM.**

12.    As of the Effective Date, unless otherwise provided in the Plan or this Confirmation Order, the Reorganized Debtors may use, acquire, and dispose of property, employ and pay professionals and settle and compromise Claims, Interests and Causes of Action (except as otherwise set forth in the Plan) without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

13.    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective

Date, on account of any Claim or Equity Interest, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, their Estates and their successors and assigns and its assets and properties; (ii) enforcing, determining, attaching, collecting or recovering by any manner or means any liability, claim, judgment, award, decree or order against the Debtors and their Estates, and their successors and assigns and their assets and properties; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, and their Estates and their successors and assigns and their assets and properties; and (iv) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder, *provided however*, that nothing in the Plan or Confirmation Order shall constitute a waiver of any rights or defenses of such persons with respect to such actions, provided, further, that such injunction shall neither bar any entity from asserting any defense in an action commenced by or on behalf of the Debtors, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan; provided, furthermore, that nothing contained in the Plan or Confirmation Order shall preclude the IRS from pursuing an action against any entity, or preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.  Nothing herein shall be construed as enjoining any party's prosecution or defense of any appeal of any order entered by the Bankruptcy Court in these Chapter 11 Cases.

14.     The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fourteen (14) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the monthly operating reports for the relevant periods, indicating the cash disbursements for the relevant period.  The Reorganized Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28

U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, post-confirmation quarterly operating reports indicating all the cash disbursements for the relevant period.

15.     Pursuant to Bankruptcy Rule 3020(c), the following provisions related to exculpation from liability set forth in Article XI of the Plan are hereby approved and authorized in all respects as follows:

(a)     **Exculpation**

**Notwithstanding anything in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any and all Claims and Causes of Action arising on or after the Petition Date up through the time these Chapter 11 Cases are closed, involving or relating to any act taken or omitted to be taken in connection with, or related to, prosecuting these Chapter 11 Cases, formulating, negotiating, preparing, disseminating, implementing, or administering any aspect of these Chapter 11 Cases, including the sale of property of the Estate, distributing property of the Estate or related in any way to any other contract, instrument, release or other agreement or document created or entered into in connection with these Chapter 11 Cases, the Plan or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the administration of the Estate; provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any person that results from any such act or omission that is determined to have constituted gross negligence, willful misconduct, or fraud; provided further, that nothing contained in the Confirmation Order shall preclude any governmental entity from pursuing a criminal, police or regulatory action against any entity.**

(b)     **Limitations on Exculpation**

**Nothing in the Plan shall be construed to release or exculpate any Person from, or require indemnification of, any Person against losses arising from criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or limit**

32

**the liability of the professionals of the Debtors to the Debtors pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").**

16.     The consummation of the Plan shall not, unless the Debtors and BETM expressly agree in writing, constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract or agreement in effect on the Effective Date and to which any of the Debtors is a party.

17.     Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by any of the Plan, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtors or their Estates pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by this Order, be directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

18.     The Debtors and the Reorganized Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state or local recording officer, and such officer (or any person or entity with authority over any of the foregoing) shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage or other similar

tax. Such notice (a) shall have the effect of an Order of this Court, (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

19. Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors are authorized to consummate the Plan after entry of this Confirmation Order, in accordance with the terms and conditions of the Plan and this Confirmation Order. The Debtors are authorized to execute, acknowledge, and deliver any documents and to take other such actions as may be reasonably necessary to perform the terms and provisions of the Plan, and all transactions and agreements related thereto.

20. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan, and any other acts and transactions referred to in or contemplated by the Plan.

21. The provisions of this Confirmation Order and of the Plan are hereby deemed non-severable and mutually dependent. Within three (3) business days after the Effective Date, the Debtors shall file notice of the occurrence of the Effective Date with this Court. Such notice shall be adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice of the Effective Date is necessary. Notwithstanding anything herein to the contrary, the Debtors reserve the right to waive the requirement of the Confirmation Order becoming a Final Order and shall have the right to proceed with the Effective Date despite the Confirmation Order not being a Final Order at such time. On the Effective Date, all property of the Estates of the

Debtors shall vest in the Reorganized Debtors, free and clear of all Claims, Interests, liens, charges and other encumbrances, except as otherwise provided herein or in the Plan.

22.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

23.    The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

24.    This Confirmation Order is a final order.  For the reasons stated on the record at the Confirmation Hearing, the 14-day stay of the effectiveness of this Confirmation Order imposed by Rule 3020(e) is hereby waived for good cause shown.

25.    This Confirmation Order is and shall be deemed to be a separate order with respect to each Debtor.

26.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Debtors and their counsel; (b) BETM and its counsel; (c) the United States Trustee; and (d) any party known to be directly affected by the relief sought.

27.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, and subject to applicable law, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant

to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction over those matters set forth in Article XII of the Plan. Any document related to the Plan that refers to a plan of liquidation or reorganization of the Debtors other than the Plan confirmed by this Confirmation Order shall be, and it hereby is, deemed to be modified such that the reference to a plan of liquidation or reorganization of the Debtors in such document shall mean the Plan confirmed by this Confirmation Order.

28.    The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code continues to be in effect until the occurrence of the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order, the Plan, and sections 524 and 1141 of the Bankruptcy Code.

29.    All provisions of the Plan, to the extent they are not incorporated above, are valid and in full force and effect upon the entry of this Confirmation Order.

30.    The Court will conduct a post-confirmation status conference on **September 6, 2023 at 1:30 p.m.**, before the Honorable Scott M. Grossman at United States Bankruptcy Court, 299 E. Broward Blvd., Courtroom 308, Fort Lauderdale, Florida 33301 to determine whether the Debtors have complied with the provisions of this Confirmation Order.

###

Submitted by:
Paul J. Battista, Esq.
VENABLE LLP
Counsel to Debtors-in-Possession
100 SE 2nd Street, 44th Floor
Miami, Florida 33131
305-349-2300 (p)
305-349-2310 (f)
pjbattista@venable.com

Copy to: Paul J. Battista, Esq.
(Attorney Battista is directed to serve a conformed copy of this Order on all parties in interest)