# EXHIBIT 2

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. SHLOMO S. HAGLER** | PART **IAS MOTION 17EFM** |
| *Justice* | |

------------------------------------------------------------------------X

BLT STEAK LLC, BLT FISH LLC

INDEX NO. ___151293/2013___

MOTION DATE ___N/A___

Plaintiff,

MOTION SEQ. NO. ___011___

- v -

LIBERTY POWER CORP, L.L.C., LIBERTY POWER
HOLDINGS LLC,

**DECISION + ORDER ON MOTION**

Defendant.

------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 011) 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375

were read on this motion to/for _____MISCELLANEOUS_____.

Upon the foregoing documents, it is

ORDERED, that the motion is granted to the extent stated on the record today. Submit

Order.

| | |
|---|---|
| ___8/12/2020___ | ___SHLOMO S. HAGLER, J.S.C.___ |
| DATE | |

| CHECK ONE: | [ ] CASE DISPOSED | [X] NON-FINAL DISPOSITION | |
| | [ ] GRANTED [ ] DENIED | [X] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | [X] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

151293/2013 BLT STEAK LLC vs. LIBERTY POWER CORP, L.L.C.
Motion No. 011

Page 1 of 1

1

2   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK:   CIVIL TERM PART
3   - - - - - - - - - - - - - - - - - - - - X

4   BLT STEAK, LLC AND BLT FISH, LLC,

5                           Plaintiff,
                                                INDEX NUMBER:
6          - against -                           151293/13

7   LIBERTY POWER CORP., L.L.C. d/b/a
    LIBERTY POWER NEW YORK, and
8   LIBERTY POWER HOLDINGS, LLC.

9                           Defendants.

10  - - - - - - - - - - - - - - - - - - - - X
                            Teleconference
11                          New York, New York
                            August 12, 2020
12

13
    BEFORE:
14
                    HONORABLE SHLOMO HAGLER, Justice
15

16
    APPEARANCES:
17
        FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER
18      Attorney for the Plaintiffs
        One North Broadway
19      White Plains, New York 10601
        BY:   TODD GARBER, ESQ.,
20            BRADLEY SILVERMAN, ESQ.,

21
        GREENBERG TRAURIG LLP
22      Attorney for the Defendant
        54 State Street
23      Albany, New York 12207
        BY:   CYNTHIA NEIDL, ESQ.,
24
    APPEARANCES CONTINUED:
25

Proceedings

1

2          ECKERT, SEAMANS, CHERRIN & MELLOT
           Attorneys for the defendant
3          1717 Pennsylvania Avenue
           Washington, D.C. 20006
4          BY: ROBERT GAFTNER, ESQ.,

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22                              MONICA HORVATH
                            SENIOR COURT REPORTER
23

24

25

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM
NYSCEF DOC. NO. 379     Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 4 of 69

INDEX NO. 151293/2013
RECEIVED NYSCEF: 09/25/2020

3

Proceedings

1              MR. GARBER:  Your Honor, this is Todd Garber, from

2      Finkelstein, Blankinship, Frei-Pearson & Garber, for the

3      plaintiffs.  And with me in the room is my associate --

4      sorry -- my colleague, Bradley Silverman.

5              THE COURT:  Okay, who's going to be speaking for

6      the plaintiff?

7              MR. GARBER:  Mike Garber.

8              Me, Your Honor.

9              THE COURT:  Okay.

10             Counsel for the defendants?

11             MS. NEIDL:  Good morning, Your Honor.

12             This is Cynthia Neidl with Greenberg Traurig, for

13      the defendant.

14             THE COURT:  You are alone?

15             MR. GAFTNER:  Rob Gaftner, with Eckert Seaman, also

16      for the defendant.

17             THE COURT:  Okay, who is going to speak for the

18      defendant?

19             MS. NEIDL:  Cynthia Neidl will.

20             THE COURT:  Okay.

21             Anyone else on the phone?

22             Counsel, Mr. Garber, we have to start again.

23             Can you just give your name, spell it and also your

24      firm name and address?

25             MR. GARBER:  Yes, Your Honor.

Proceedings

1          Todd Garber, T-O-D-D, Garber, from Finkelstein,

2     Blankinship, B-L-A-N-K-I-N-S-H-I-P, Frei-Pearson,

3     F-R-E-I-P-E-A-R-S-O-N & Garber, we are located at One North

4     Broadway, in White Plains, New York, 10601.

5          THE COURT:  Does your colleague want to state his

6     appearance as well, Mr. Silverman?

7          MR. SILVERMAN:  Yes.

8          This is Bradley Silverman, B-R-A-D-L-E-Y, last

9     name, Silverman, S-I-L-V-E-R-M-A-N, same firm, also

10     representing plaintiffs.

11          THE COURT:  Okay.

12          Defendant's counsel, Miss Neidl, you want to also

13     give your information?

14          MS. NEIDL:  Sure.

15          Cynthia Neidl, N-E-I-D-L, with the law firm of

16     Greenberg, G-R-E-E-N-B-E-R-G, Traurig, T-R-A-U-R-I-G, LLP,

17     the address is 54 State Street, in Albany, New York, 12207.

18          THE COURT:  And your colleague?

19          MR. GAFTNER:  This is Rob Gaftner, also here on

20     behalf of the defendants.

21          I'm here on behalf of Eckert Seamans, as well.  My

22     law firm is spelt, E-C-K-E-R-T, S-E-A-M-A-N, Cherin,

23     C-H-E-R-I-N & Mellott, M-E-L-L-O-T-T.

24          My last name Gaftner is spelt G-A-F-T-N-E-R.  The

25     address is 1717 Pennsylvania Avenue, Washington, DC, 20006.

Proceedings

1               THE COURT:  Good morning.  Welcome everyone.

2               This is a motion for class certification by

3       plaintiff.

4               Mr. Garber, I guess you are going to proceed with

5       the motion?

6               MR. GARBER:  Yes, Your Honor.

7               THE COURT:  Please, proceed.

8               MR. GARBER:  Your Honor, few cases are more

9       appropriate for class certification than the present action.

10              Liberty Power sold electricity to the plaintiffs

11      and the other members of the class through uniformed

12      contracts which represent that Liberty Power's variable rate

13      will be based on an electricity market pricing.  We already

14      have evidence, evidence sufficient to defeat defendant's

15      motion for summary judgment that Liberty did not in fact

16      charge prices based on market pricing.

17              So this is going to be a common question for the

18      entire class; did Liberty breach the contract of its

19      variable rate customers by not charging rates based on the

20      electricity market; that is tried and true class

21      certification breach of contract.

22              Cases are legion certifying breach of contract

23      class actions based on uniform misrepresentations such as

24      the one alleged here.  All the requirements of CPLR 901 and

25      902 are plainly met.

Proceedings

1          Numerosity, is not even challenged with tens of

2     thousands of Liberty's customers affected by their breach of

3     contract.

4          Commonality, is met and it's a common question for

5     all the class members as to whether Liberty did in fact

6     breach the contract by failing to charge a market based

7     rate.

8          Typicality, is similarly met because the similar

9     course of conduct that affected the plaintiffs entering into

10    contracts with Liberty Power, which represented that they

11    would be charged a rate based on the market and Liberty not

12    in fact charging such a rate applies equally to all of the

13    other class members.

14         Similarly, adequacy is met here as plaintiffs have

15    diligently pursued these claims for upwards of seven years.

16    They have sat for multiple depositions, responded to

17    multiple rounds of discovery and retained counsel well

18    versed in these kinds of cases.

19         My firm is probably the leading firm in prosecuting

20    these cases on behalf of classes across the country against

21    these ESCO'S for similar conduct and Wachtel ESCO'S and

22    similarly Wachtel Missry, the other counsel in this case has

23    been pursuing these claims along with the plaintiffs for

24    over seven years.

25         The factors of 902 are met.

Proceedings

1          Similarly, the factors of 902, are met given the

2    impracticability of individual claims brought by tens of

3    thousands of Liberty's customers.

4          This case, Your Honor, is on all fours with the

5    Claridge case certified by the Honorable Judge Castiel of

6    the Southern District of New York and I should know because

7    I was counsel in that case.

8          Defendant attempts to speak to that case in their

9    papers on Page 37 stating that here unlike in Claridge,

10   Liberty Power -- plaintiffs, did not allege that Liberty

11   Power calculated its rate in a manner inconsistent with its

12   contract.

13         That's false, Your Honor.  That is the claim here,

14   that Liberty Power calculated its rate in a manner

15   inconsistent with its contract.  Identical to the

16   allegations in Claridge.

17         Similarly, defendants attempted to distinguish two

18   other ESCO cases cited by plaintiffs which received

19   certification at the settlement stage, that being the

20   Edwards case and the Hamlet case.  And defendants falsely

21   state that those cases did not involve breach of contract

22   claims, that this Court should disregard that.  That is

23   simply incorrect, and we point that out in our reply papers.

24         In fact, every case for which we are aware that

25   class certification has become an issue whether a contested

Proceedings

1    motion or at a settlement stage as it relates to breach of

2    contract claims against an ESCO such as Liberty Power a

3    court has certified the class.

4            And, similarly, as I mentioned earlier, Your Honor,

5    when you are dealing with uniform contracts, the cases that

6    certify class actions are legion.  So this Court would be

7    breaking new ground by not certifying a class.

8    Particularly, in light of the liberal reading given to

9    901 and 902 pursuant to New York case law based on the

10   legislative history when those statutes were enacted.  And

11   Your Honor recognized those -- that -- legislative history

12   and the liberal view of 901 and 902 in your Hamsa decision.

13           None of Liberty's arguments against certification

14   hold water; they are just black letter, you know, playbook;

15   oh, there's going to be unique defenses, it's going to be

16   too onerous because there's too many class members.

17   Your Honor, those are issues that defendants raise in every

18   case and nothing special -- you know, there's nothing

19   special here.

20           The defendants raise, you know, standing and

21   voluntary payment.  Those are issues that have already been

22   decided in this case and would apply in all class

23   certifications anyway.  So they are not a unique defendant,

24   they actually support class certification, Your Honor.

25           And Liberty's other main argument, Your Honor, is

MONICA S. HORVATH - SENIOR COURT REPORTER

Proceedings

1     that this Court should not certify a class because they

2     essentially scammed too many customers and the data is too

3     hard to get to so it would be too time consuming for them to

4     get the data for all the class members.  That would be a

5     slippery slope, Your Honor, if courts start endorsing that

6     defendants can avoid liability for their misdeeds based on

7     poor recordkeeping and based on their being very effective

8     in their breaches so that they affect tons and tons,

9     thousands and thousands of people.

10          Another argument that defendants raise that does

11    not defeat certification is defendants claim that it matters

12    in the manner in which class members signed up with

13    Liberty Power but it doesn't, Your Honor.  They say some

14    people signed up because there was telemarketing, some

15    people signed up door to door.  All that matters is that

16    eventually everyone was subjected to the same uniform

17    contract which required Liberty Power to calculate its rate

18    based on electricity market pricing and that Liberty Power

19    did not comply with that contract and breached it equally

20    for all class members.

21          So what's left at that point Your Honor is

22    calculating damages.  And plaintiffs set forth in the expert

23    declaration of Dr. Sinclair, two methodologies for

24    calculating damages.  One, based on the wholesale market

25    price plus a reasonable margin.  And, two, based on

Proceedings

1      comparison to the market supply charge which would be the

2      potluck utility.  Those are acceptable methodologies that

3      comport with the expert's standards.

4              Defendants attempt to backdoor a response not

5      moving to strike or putting in a sur reply five months late,

6      after the Court had already scheduled oral argument

7      attempting to further address plaintiff's experts knowing

8      that the plaintiff had fully addressed all the critiques

9      that defendants had raised in their original opposition.

10     All of which, Your Honor, don't go to the admissibility of

11     the plaintiffs expert, they go to the weight to be applied.

12     And notably even accepting the critique by the defendant's

13     expert it doesn't show that the methodology could not be

14     performed it would just make a different calculation at the

15     end.  But our expert surprisingly disagrees with the way in

16     which the defendants think that we should calculate damages.

17     So all of the standards of 901 and 902, are met.

18             And, finally, Your Honor, as set forth in our

19     papers when this Court certifies the class, this Court

20     should hold that the burden of the cost of the notice should

21     be borne by Liberty Power.

22             With that, I invite any questions that the Court

23     may have or I pass this on to defense counsel.

24             THE COURT:  Okay, opposition, please.

25             MS. NEIDL:  Thank you, Your Honor.

Proceedings

1          On this motion plaintiff's burden was to come

2     forward with evidence establishing each of the various

3     prerequisites for class certification.  And the argument

4     shows plaintiffs have come forward with nothing.

5          What they say is, look, a lot of courts have

6     certified classes like this against other ESCO'S involving

7     other claims involving other contract provisions and you

8     court would be wrong not to just blindly follow what those

9     court's did.

10          What is noticeable is that plaintiffs have failed

11     to come forward with an affidavit from a single Liberty

12     Power customer alleging that they understood that the rate

13     chart of Liberty Power's terms and conditions guaranteed

14     them a lower rate than what they were charged, a market

15     based rate or anything that would support an inference that

16     there is a class of aggrieved punitive plaintiffs out there.

17          In support of their motions, plaintiffs primarily

18     rely on other cases involving other ESCO'S and expert

19     testimony that's based on assumptions that are unsupported

20     and offering conclusions based on the expert's subjective

21     opinion that ESCO's variable rates should be lower.

22          This case is unlike any of the ESCO cases heavily

23     relied on by the plaintiff.  All the cases cited by

24     plaintiff involve main plaintiffs who are consumers.  None

25     involve a sophisticated commercial enterprise with inhouse

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM          INDEX NO. 151293/2013
NYSCEF DOC. NO. 379    Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 13 of 69    RECEIVED NYSCEF: 09/25/2020

12

Proceedings

1    counsel, a CFO, a building department and a class that is

2    inclusive of both consumers and commercial entities.

3         Here, the proposed class would include large

4    commercial entities; entities that negotiated a variable

5    rate and sophisticated consumers like Lowe's, JC Penny, IBM,

6    Verizon, Ryder Truck Rental, Dollar Tree Store.  Most of the

7    cases relied on by plaintiff involve allegations of

8    deceptive and misleading conduct.  And if a contract claim

9    were involved the allegations whether the ESCO failed to

10   charge rates that were calculated according to the agreed

11   upon factors that's not what they allege here.  There's no

12   dispute that the way that Liberty Power calculated the rate

13   was consistent with a contract.

14        Their expert uses the very same components that

15   Liberty Power used.  The difference is that the expert

16   cherry picks the lowest fictional rate that he can come up

17   with and says that's the rate that should have been charged

18   even though none of the punitive class members could have

19   gotten that rate anywhere either from another ESCO or from

20   the utility.  It's a fictional rate.

21        In all the other class cases and in particular

22   Claridge, which was cited, there there was a specific

23   calculation.  And through deposition testimony it was shown

24   that the method of calculating the rate was completely

25   different.  That's not what we have here.  This is just

Proceedings

1    plaintiff's attorneys and their expert saying, hey, the rate

2    should have been lower.

3          All but one of the class certification orders

4    relied on by the plaintiffs involved an unopposed motion for

5    certification of a settlement class, thus there were no

6    disputes concerning any of the factors, any of the

7    prerequisites, and there would be no trial.  Issues of

8    adequacy and management were simply nonexistent.

9          The plaintiff has defined the class as including

10   any New York Liberty Power customers subject to a variable

11   rate at any time between 2009 and the present which would

12   include tens of thousands of customers including residential

13   customers, small, medium, large, commercial customers and

14   industrial customers.  Plaintiffs claim the number is around

15   90,000 customers.

16         Now, most of these customers enrolled with

17   Liberty Power for a one to three year term and it was for a

18   fixed rate contract, so the rate every month would be the

19   same.  Towards the end of that fixed rate contract they were

20   told that if they failed to either reenroll for a new

21   contract or leave Liberty Power, or do something then at the

22   end of the term they would roll over to a variable rate.

23   There were no representations about what that rate was,

24   unlike Claridge and other cases.  Liberty Power just said

25   this is what's going to happen and encouraged customers to

Proceedings

1    reenroll in a fixed rate or take some other action.  Most

2    customers either reenrolled with Liberty Power at a fixed

3    rate or left.  Those that stayed on stayed on for various

4    reasons and including that they wanted to wait until the

5    rates dropped so that they can then get a fixed rate

6    contract or either their business was going out of business;

7    various reasons all stated in the record.  But most stayed

8    on or then switched or left after a few months.

9            Plaintiff did not allege -- I'm sorry -- plaintiffs

10    on the other hand -- the two named plaintiffs -- they didn't

11    follow this course.  They are nothing like the punitive

12    class members.

13            As you know, Your Honor -- you and I have been in

14    this case from the beginning and -- what they alleged at

15    first is that they were slammed, and then because of the

16    statute of limitations had run they changed it to a breach

17    of contract claim.  Yet they have never testified that they

18    were subject to a contract.  To the contrary, they claimed

19    that they never even saw a contract until after the

20    litigation commenced.  And when they did see the contract,

21    their representative interpreted the rate term as meaning

22    that the rate to be charged would move with the market.

23    Which is exactly what Liberty Power's rate did.

24            Now, the evidence establishes that individual

25    trials would be required for both liability and damages.  We

Proceedings

1    would have to determine what contract each individual or

2    class member was subject to and whether it included the rate

3    term or other relevant language.

4         I cited in our briefs and attached to my affidavit

5    various contracts that have different language or have the

6    type of language that sort of warns that the rates will

7    fluctuate and could be greater or lower than the utility.

8    You have to determine the interpretation of the agreement.

9    This is not a class of consumers where the courts found the

10   language of the contract to be misleading or vague.  To the

11   contrary, the language is straightforward based on market

12   pricing.  At the same time, we don't know whether each

13   customer saw the language or why they continued to stay with

14   Liberty Power after their term expired.

15        At trial, Liberty Power would be entitled to

16   establish any of its individual defenses against any class

17   member including waiver ratification, failure to mitigate

18   damages.  And while plaintiffs are too subject to some of

19   these defenses the facts that underlie these defenses are

20   completely different for the plaintiffs versus the rest of

21   the class.

22        Damages will also require an individual trial with

23   respect to each individual because individual's rates are

24   different depending on their usage, where they live, what

25   class they are; a number of factors and then there has to be

Proceedings

1    some serious damages that plaintiffs have yet to come up

2    with that follows their theory of the case and that would be

3    applied to each individual customer.  We are talking about

4    maybe 90,000 customers.  Damages will have to be calculated

5    with respect to each individual for each month over the

6    course of the period.

7              The record establishes that the punitive class as

8    defined by plaintiff would be subject to many different

9    contracts.  And if it's a medium or larger commercial

10   customer then they negotiated the agreement.  The classes

11   defined would include those large customers, Lowe's,

12   JC Penny, that negotiated the variable rate.  And the

13   agreements warned that the rates would fluctuate or be

14   higher than the utility rate.

15             Again, unlike Claridge, and similar ESCO cases,

16   it's not alleged that the terms and conditions describe a

17   particular method of calculating the rate.  And please do

18   read Claridge; it's not on all fours, it is entirely

19   distinguishable.

20             Here, it's not that we failed to calculate in a

21   manner in which we said we would, it's that the components

22   that we used were somehow too high, not based on comparison

23   to other ESCO'S or anything else.  Just, you know, in the

24   expert's opinion they were just too high.

25             The damages models that plaintiffs have come

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM
NYSCEF DOC. NO. 379
INDEX NO. 151293/2013
RECEIVED NYSCEF: 09/25/2020
Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 18 of 69

17

Proceedings

1     forward use a fictional rate based upon the same components

2     used by Liberty Power.  That is unheard of in the industry.

3     The plaintiff's expert doesn't say that that -- that his

4     method of calculating damages or even coming up with this

5     fictional rate comes in anywhere except in cases like these

6     for plaintiffs who want to establish maximum damages.

7               Plaintiffs in this case are anything but typical.

8     They are sophisticated commercial customers with inhouse

9     counsel, a building department, a CFO.  They have used

10    ESCO's in the past and continue to use them for related

11    affiliates.

12              They claim they never saw any contract.  They claim

13    they did not know Liberty Power was their provider.  They

14    also while they were still customers of Liberty Power,

15    reached out to Liberty Power and said, hey, why are rates so

16    high.  And when they called a second time, Liberty Power,

17    said, well, you are not subject to any contract so you can

18    terminate and go to a fixed rate or leave.  And they chose

19    not to do so.

20              The rest of the class includes residential

21    consumers who were sold a fixed rate contract and told that

22    they would go to a variable rate at the end of the term.

23              Commercial and industrial customers may have been

24    sold a fixed or variable rate.  They might have negotiated a

25    variable rate, and they would have knowledge of what would

Proceedings

1        happen at the end of the term. The record establishes that

2        the majority of commercial customers in this industry use a

3        broker or specialized department that negotiate energy

4        contracts.

5               And there are many defenses that would defeat class

6        certifications because they would threaten to become the

7        focus of the litigation and such that the named plaintiff

8        would not act in the best interest of absent class members.

9               So, Your Honor, you have decided motions to

10       dismiss and a motion for summary judgement.  Contrary to

11       what was said earlier their claims have not established,

12       what you found were questions of fact.  So I don't think

13       there has ever been an ESCO case like this or maybe even any

14       class action where the named plaintiff hasn't even

15       established that they were subject to the contract on which

16       they are basing the class claims.

17              You found that it could be the contract to which

18       they originally signed, it could be the terms and conditions

19       of the lower rate class, it could be some sort of agreement

20       based in fact we billed on and they paid but that's a

21       question of fact.

22              And the Court has also not determined whether there

23       has been a breach of the contract because the contract

24       hasn't been -- the court hasn't identified what contract is

25       applicable.

Proceedings

1          The Voluntary Payment Doctrine hasn't been decided.

2     There's a question of fact about that.  That will be

3     litigated at trial.

4          And, here, again -- the Court has heard this before

5     but -- the plaintiff paid for seven years and the question

6     is, well, did they know what they needed to know.

7          In his affidavit, Chris Lamano said to the court

8     that after an investigation they understood they had been

9     overcharged.  It was essentially conceded that it doesn't

10    take some sophisticated expert to figure out that they were

11    overcharged.  And the amount of overcharge is irrelevant to

12    a voluntary payment defense.  They knew they were

13    overcharged just by looking at what affiliates were billed

14    by other ESCO'S or by the utility.  And standing has not

15    been decided.  Standing is still an issue.  So all of these

16    are atypical defenses.

17          I think I heard that "these are raised all the

18    time."  I don't know that they are raised all the time.  I

19    don't believe that they are raised all the time.  These are

20    very unique defenses because this case has been going on for

21    seven years but none of the cases cited by the plaintiffs

22    has ever been a class certification after seven years of

23    litigation of individual claims.

24          We also addressed adequacy of representation in our

25    papers.  All that the plaintiffs have put in is a

20

Proceedings

1     boilerplate seven paragraph affidavit from the plaintiff's

2     CFO that is contradicted by his prior testimony.  He says,

3     oh, we will talk to the lawyers; I will talk to the lawyers;

4     I will keep an eye on them.  He testified at trial that he

5     is not involved in that at all.

6               There's no response to the fact that plaintiffs

7     have litigated for years in this case without seeking to add

8     class claims.  So, how does that wash out at the end if

9     there's a settlement or there's a trial?

10              Obviously, the plaintiffs will be interested in

11    recouping those funds but in a normal class situation they

12    wouldn't be entitled to that.  They may be entitled to a

13    $5,000 named plaintiff award.

14              So obviously the plaintiffs are inspired to win on

15    their claims but not necessarily with respect to the class.

16    They are so differently situated in the class.  The class

17    extent goes from 2009 to the present.

18              Plaintiffs stopped being Liberty Power customers in

19    2012.  The evidence establishes that Liberty Power's method

20    of calculating rates changed over time.

21              Now, in this case, the main focus was on the margin

22    that was charged by Liberty Power; the plaintiff said that

23    it was too high.  And they also complained that it was

24    static.

25              Well, they dropped the argument that being static

MONICA S. HORVATH - SENIOR COURT REPORTER

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM    INDEX NO. 151293/2013
NYSCEF DOC. NO. 379 Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 22 of 69 RECEIVED NYSCEF: 09/25/2020

21

Proceedings

1    was impermissible since their own expert says, no, I'm going

2    to use a static margin in that they say it is still too

3    high.

4            THE COURT:  Counsel?

5            MS. NEIDL:  Yes.

6            I'm just going through my notes.

7            THE COURT:  Oh, I thought I lost you for a second.

8            MS. NEIDL:  No, I am still here.

9            THE COURT:  I have a few questions once you have

10    concluded.

11            MS. NEIDL:  Okay.

12            I'm going to skip because I have been going a

13    while.

14            Because I haven't addressed certain things doesn't

15    mean that I am now abandoning them or waiving them.  I agree

16    with the --

17            THE COURT:  No.

18            I have read all the papers.

19            MS. NEIDL:  I am sure that you did.

20            And, so, if I can just add, the one more important

21    thing is the management of the class action.

22            Plaintiffs, you know, they concede that we are

23    going to have to look at each of the 90,000 -- or whatever

24    it is -- individual customers; what they were billed, try to

25    figure out damages.  This isn't a Labor Law case.  We are

Proceedings

1    required to keep records for purposes of a class

2    certification motion.

3            The way that we store the data was, let's say for

4    example someone came in and they were a fixed rate customer

5    and their term expired and they went on the rollover rate

6    for three months, and then they went back on a fixed rate

7    program, I'm not sure what the records would show.  They

8    would probably show that they were a fixed rate customer

9    throughout that period or it could show that they were on

10   the rollover for three months, and they also might be

11   credited for whatever they paid during that three months

12   depending on what action Liberty Power took.

13           So just because there are a lot of class members

14   but just in the nature of what the claims are it raises a

15   lot of issues.  It will take a long time to figure out what

16   contract governs each customer, what they were charged, what

17   their usage was in figuring out damages.  That goes to the

18   management.

19           And, with that, I understand you have questions.

20           THE COURT:  Yes.

21           Okay, thank you very much.

22           And, obviously, plaintiff will have a chance to

23   reply, but I just have a number of questions.

24           Numerosity.

25           You challenged the first prong of numerosity.

Proceedings

1              MS. NEIDL:  Well, let me say this, so the class is

2         defined as "any customer in New York that was on the

3         variable rate plan from 2009 to the present", and I believe

4         that that number would be around 90,000 or you know

5         somewhere over 40, so to that extent I don't challenge it,

6         but I think that the class definition is way overly broad.

7         And it was plaintiff's burden to come forward with some

8         class definition that was reasonable and they haven't done

9         that.  As far as I'm concerned, it's a class of two,

10        plaintiffs BLT and plaintiff BLT.

11             THE COURT:  Okay.

12             So, thank you.

13             Let's move on to the second element, commonality.

14             Plaintiff, I believe, makes a simple argument in

15        terms of what commonality is; that there was a breach of

16        contract due to the failure to provide market based pricing.

17        And I'm just summing it up; it's more complicated than that

18        but I'm trying to make it as simple as possible.  Why isn't

19        that sufficient for a class action?

20             MS. NEIDL:  I think that's a very simple as you

21        said superficial understanding of the facts of the case.

22        And their job is to present this as, you know, as simple as

23        possible.  But that's just not what the facts are.

24             There's multiple different contracts over a period

25        of time when the rates changed and the method of calculating

24

Proceedings

1    the rate changed or where the components were the same.

2            And, again, I have to say if you look at the cases

3    they rely on, the allegation is that the contract said that

4    the ESCO would calculate in a particular manner, and there

5    was no dispute that they didn't calculate it in that manner.

6            Here, we did exactly what the contract says.

7            What they are now arguing is that, yeah, you did

8    what it says but you should have charged less.  You should

9    have -- that's totally different from any other case.  So

10   that goes to, well, who believes that we should have charged

11   less?  No customers have come forward to say that.

12           THE COURT:  So, now, you are getting into the

13   merits and we know that the Appellate Division found that

14   there is questions of fact as you alluded to in your oral

15   argument.  I don't want to get into that; that was summary

16   judgment.  We went through that several years ago; I don't

17   remember the exact date.  I know the decision came down in

18   2019.  Actually, I have the case.  Yes.  So, I issued my

19   decision in 2018 under -- yes, I will give you the official

20   citation of the Appellate Division -- BLT Stake, LLC versus

21   Liberty Power Corp., 172 AD3d 458.  It affirmed my decision

22   which is 2018 West Law 1316790.  And I don't want to go

23   through that now because we all know that decision.

24           Later, I will go through that, but I want to just

25   clarify one point.  You are not alleging that there were

Proceedings

1      differences in the context as to how you are going to charge

2      based upon the market based pricing; is that correct or

3      incorrect?

4              MS. NEIDL:  That's incorrect.

5              And I have -- there's at least two different types

6      -- well, three.

7              So, first, there is language where the contract

8      might say that but it also might warn that the rate will

9      fluctuate; not a guaranteed price.  Something like that.

10             THE COURT:  That's not my questions.  That's not my

11     question.

12             I understand you are saying that it fluctuates, but

13     it's all based upon market based pricing.

14             Is that incorrect or is it correct?

15             You are correct in saying that this is not a

16     situation where there is fraud that's being alleged like in

17     some of the other cases that were cited by plaintiff's

18     counsel in which you distinguished.  However, the

19     commonality of this case is that they are saying all the

20     contracts that Liberty entered into with its customers had a

21     market based price component due to the either a default

22     variable rate or going after a fixed rate contract.

23             MR. GARBER:  That's correct, Your Honor.

24             MS. NEIDL:  Your Honor?

25             THE COURT:  Yes.

MONICA S. HORVATH - SENIOR COURT REPORTER

Proceedings

1            MS. NEIDL:  If I could point you to Page 14 of my

2       brief, at the bottom of the page.

3            THE COURT:  Which brief?

4            MS. NEIDL:  It's the opposition brief

5       Docket Number 357; Page 14, at the bottom of the page.

6            THE COURT:  I have to comment about the volume of

7       the brief; fifty-one pages is a little long, I must admit.

8       I had to read the briefs of this case and I had to spend I

9       can't tell you how many hours.  I finally finished it about

10      12:30 a.m. last night.

11           MS. NEIDL:  It's a motion for class certification.

12           THE COURT:  I understand that.

13           I said your briefs were very long.

14           MS. NEIDL:  There's a lot of issues, so.

15           But, I'm sorry, so, we are at Page 14, at the

16      bottom.

17           I cite from a rate provision from a variable rate

18      contract.  It has the language.

19           THE COURT:  Page 14?

20           Let me get to there.

21           MS. NEIDL:  It is 22 of 51.

22           THE COURT:  Okay.

23           That's what I'm getting to.

24           Okay, I have it.

25           "The contract provides as follows"; is that what

Proceedings

1    you want me to look at?

2              MS. NEIDL:  No.

3              At the bottom of the page, you will see the

4    "Liberty Power Flex Plan includes."

5              THE COURT:  Yes, I see.

6              MS. NEIDL:  Okay.

7              That wasn't used by Liberty Powers during the term

8    of the punitive class.

9              THE COURT:  How is it different?

10             MS. NEIDL:  It doesn't say anything about market

11   rate.  It's entirely different.

12             THE COURT:  How would they be charged; there would

13   be a percentage; you would fill in the blank where it says,

14   "the rate per kilowatt of electricity services" and it is

15   just set at a certain amount?

16             MS. NEIDL:  Correct.

17             THE COURT:  Okay, so then that won't be applicable.

18   Fine.

19             We're talking about their response to market rate.

20   Why is this an aberration; this may not be part of the class

21   then.

22             MR. GARBER:  That's right, Your Honor.

23             THE COURT:  So, basically, that would not be part

24   of -- so, you hit it on the head.  The only people that

25   would be on this class action were those based upon market

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM
INDEX NO. 151293/2013
NYSCEF DOC. NO. 379
Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 29 of 69
RECEIVED NYSCEF: 09/25/2020

28

Proceedings

1    rate pricing.  That's the commonality.  And that's why I

2    made it simple, because it's a very long argument but I like

3    breaking it down to the least common denominator and every

4    single member of the class would be subject to that issue.

5    And if it doesn't then they are not part of the class.

6              MS. NEIDL:  Well, that's not how the class is

7    defined.

8              The class includes anyone on a variable rate.  It

9    doesn't say anything about subject to that rate provision.

10             So there are companies -- most are appliances --

11   that one time were companies who would negotiate what could

12   be either a fixed or a variable rate.

13             THE COURT:  So maybe we just have to make this

14   more, more defined that a variable rate plan that's applied

15   to a market based pricing.

16             Would that satisfy you?

17             MS. NEIDL:  Well, on what issue?

18             I mean, I don't know.  I don't think that cures

19   their motion, which I think is --

20             THE COURT:  I think it does.  I think it does.

21             MR. GARBER:  We didn't think that these were part

22   of the class anyway.  So if we need to tweak the class

23   definition then that absolutely should ally any concerns by

24   the Court.

25             What we are getting at is exactly what the Court is

Proceedings

1    stating.  All the contracts that apply to variable rate in

2    which the contract said that the variable rate would be

3    based upon electricity market pricing.

4         I didn't think that the Liberty Power Flex Plan

5    customers were in the class either.  So defendants are just

6    trying to muddying up the record by throwing it in there.

7    So, the Court just hit it right on the head regarding which

8    part should be part of the class and the intention of the

9    plaintiff's brief.

10         THE COURT:  I can read that as well.

11         I thought it was based upon market rate pricing but

12    maybe we can clarify.  I think it is just a little bit of a

13    tweak.  I think that was the cluster.  But that's exactly a

14    matter of fact.

15         If you look at Page 1, the introduction of the

16    memorandum in support of the motion, counsel says it very

17    clearly -- and I will read if you get to the first page --

18    let me give you a minute to get there -- it's the paragraph

19    -- the first paragraph and it's maybe about 9, 10 lines down

20    and I will read the paragraph:

21         "All these contracts have a common provision:

22         Liberty is to charge a rate based upon electricity

23         marked pricing, however in violation of that provision

24         Liberty actually charged rates that bear no

25         resemblance to electricity market prices."

Proceedings

1          That is the introduction and everything flows

2     therefrom.

3          Okay, let's move on.

4          Let's go to typicality.

5          Why isn't that sufficient to meet the typicality

6     component which only requires that the plaintiff's claims

7     arise from the same practice or course of conduct that gave

8     rise to the claims of other class members; and it's based

9     upon the same legal theory.  And that's the standard.  And

10    it's the same thing it's similar to commonality.  You don't

11    look at whether or not the entity had $100 million worth of

12    assets versus the consumer that is a residential consumer

13    that has $1,000 in the bank for instance.  That is not the

14    way you look at typicality.  It is whether or not the same

15    acts as a course of conduct which gives rise to the claim

16    and is based on the same legal theory.

17          Isn't that typicality?

18          MS. NEIDL:  Well, I think the record reflects that

19    the way that Liberty Power deals with different types of

20    customers is very different and that these plaintiffs are

21    different from the entire punitive class because they claim

22    not to even had known that they were enrolled with Liberty

23    Power.  So I think that there is a distinction.  And since

24    this is a contract claim, I think that you do treat

25    sophisticated entities quite different than you might treat

MONICA S. HORVATH - SENIOR COURT REPORTER

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM
INDEX NO. 151293/2013
NYSCEF DOC. NO. 379
Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 32 of 69
RECEIVED NYSCEF: 09/25/2020

31

Proceedings

1    a consumer.

2              THE COURT:  Can you show me a case that says that;

3    which case did you point to that fact?

4              I didn't see one in your papers.

5              MR. COHEN:  Well, no one -- I think that in all of

6    the ESCO cases they are consumers.  They never tried this

7    before.

8              So you would be the first to say, sure, a

9    sophisticated commercial company is typical of a residential

10   consumer under these circumstances.

11             I think in securities cases, certain cases maybe

12   that could work, but in a breach of contract case,

13   absolutely not.

14             THE COURT:  Which case stands for that proposition?

15             I pulled a lot of cases and I read through them --

16   it took me hours -- I didn't see one which made that

17   argument.

18             Which case made that argument for you?

19             MS. NEIDL:  It is because this is the first one

20   where a plaintiff has been a sophisticated company moving on

21   behalf of a residential consumer.

22             THE COURT:  Okay, let's move on to adequacy.

23             As you heard, counsel for plaintiff stated that at

24   least the -- Mr. Garber, mentioned that he was the attorney

25   on the Claridge versus North American Power and Gas.  His

Proceedings

1    firm represented the movant, the claimant, and the case is

2    under 2016 West Law 7009062.  It is a Southern District,

3    New York case from 2016.

4           And then there are several others, where counsel

5    represented the claimants against energy service company's

6    ESCO'S.

7           Why wouldn't he be adequate to lead as counsel?

8           MS. NEIDL:  If you look at our brief, we didn't

9    challenge Mr. Garber's firm.  What we challenged was the

10   plaintiff's adequacy as well as the law firm of Wachtel.

11          THE COURT:  Oh, okay, fine.  I wasn't sure.

12          I apologize.

13          I thought you had some problems as well.  Maybe, I

14   misread it.

15          So what is the harm to have a firm that is quite

16   frankly the firm that has been leading in these areas

17   against energy service companies be together with a trial

18   litigation firm?

19          MS. NEIDL:  Well, I think that you have to find

20   each are adequate.  And the reasons stated in our brief with

21   respect to ourself militate against them being an adequate

22   representative.

23          THE COURT:  Okay.

24          Let's move on to superiority; is the last

25   component.

33

Proceedings

1          Why do you think that ninth count individual case

2     being brought from Albany to Syracuse to Kings County to

3     New York County and everywhere in between would be a better

4     place than having one venue try all of the cases together?

5          MS. NEIDL:  Well, that, that presupposes that there

6     are 90,000 customers who feel they are aggrieved.  Which I

7     think the evidence shows that there aren't.

8          There are two plaintiffs and they are the named

9     plaintiffs, but the fact that there is an alternative non

10    litigation alternative, militates against this being a

11    superior action.

12         Why should it be in the Southern District of

13    New York when it's people across the country?

14         Someone in Albany who was with Liberty Power, you

15    know, a year ago or whatever could file a claim here and get

16    a quick decision and they would get 100 percent of whatever

17    it was that they sought as opposed to giving a third or more

18    of it to plaintiff's counsel.

19         THE COURT:  So you are stating that Liberty would

20    prefer to handle however many cases there are -- I heard

21    40,000 to 90,000 possible -- people in the class -- let's

22    round it and make it 50,000 -- let's even make it 40,000;

23    let's make it a lower number just to satisfy the plaintiff's

24    need to reduce the class -- so you would prefer to have

25    40,000 administrative proceedings or 40,000 cases in Albany,

Proceedings

1    Syracuse, New York County, everywhere in between and

2    administrative cases than having in one place here in

3    New York County.

4              Is that correct?

5              MS. NEIDL:  Liberty Power, would be happy to

6    entertain any administrative case that's brought by a

7    consumer who feels aggrieved.  There are none.

8              So those administrative procedures are here for

9    consumers.  And they are much quicker than a class action in

10   the Southern District of New York.

11             THE COURT:  You believe that it would be superior

12   because in those administrative hearings the consumer would

13   not have counsel present because they may not get one?

14             MS. NEIDL:  I think in the administrative

15   proceedings that I have been a part of then the PSE acts as

16   a -- you know -- an advocate for the consumer.

17             I don't think that that's an issue.

18             THE COURT:  Okay.

19             Anything else you want to add to the record -- I

20   may have reply -- because I need to get to another case.

21             We just delayed the next case to 11:45.  I have to

22   be off the phone by 11:45.

23             So, counsel, anything further?

24             MS. NEIDL:  Nothing further from the defendant.

25             THE COURT:  Counsel, reply.

Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 36 of 69

Proceedings

 1             MR. GARBER:  Thank you, Your Honor.

 2             Your Honor hit a lot of our arguments right on the

 3     head, so I will keep this brief and simply address a few of

 4     Miss Neidl's comments that the Court did not outwardly

 5     address.

 6             Just the matter with the customers that were not

 7     told about the variable rates because this is a breach of

 8     contract case.  So all of Miss Neidl's arguments about

 9     enrollment and what customers were told are irrelevant.

10             Miss Neidl faults plaintiffs for not coming forward

11     with an affidavit from a class member about how they were

12     told that they were guaranteed a lower rate?

13             Again, Your Honor, this is a breach of contract

14     case.  It doesn't matter what an absent class member was

15     told.  And that's the point of the class action mechanism,

16     Your Honor; that these people can remain absent and that the

17     class representative has picked up the baton for the entire

18     class.

19             Once again, Miss Neidl similar to in her papers

20     misstates what this case is about.

21             This case is about Liberty Power calculating its

22     rate in a manner inconsistent with the contract.  It is not

23     about simply plaintiffs saying that they charged a rate that

24     was too high.  And Miss Neidl referenced a fictional rate

25     that we are talking about.  No, Your Honor, it's right there

Proceedings

1    in the expert report that we are going to use the utility

2    rate as a comparison calculating what the damages are based

3    on their representations of a rate based on a market based

4    rate.  That's one of the two ways in which we can calculate

5    damages.

6            Miss Neidl, says that you'd have to calculate the

7    individual rates for each individual class member.  Yes,

8    that's what happens in a class action, Your Honor.  And the

9    fact that an individual was charged a different rate;

10   of course, they were, Your Honor.  There's different utility

11   zones.  Just because one person was charged, you know,

12   fifty cents and one person was charged forty cents, the

13   manner in which that rate was calculated is identical and

14   therefore the experts who calculated the overcharge for

15   those individuals doesn't alter the case in and of itself.

16           Finally, as this Court is familiar, individual

17   damages does not preclude class certification.  That's the

18   Maddock case from the Court of Appeals.

19           And that is all I have, Your Honor.

20           Thank you.

21           THE COURT:  Thank you all.

22           Normally, given the heated litigation between the

23   parties, I would write a hopefully eight page decision but

24   since this case has been on my calendar starting in late

25   2019, and it is now August of 2020 -- it's been eight months

Proceedings

1   on my calendar.  Unfortunately, this was delayed due to the

2   pandemic -- I will issue a decision from the bench.

3          As counsel for plaintiff alluded, I had written an

4   exhaustive decision on class certification in Ansah,

5   A-N-S-A-H v A.W.I. Security and Investigation, Inc.; I

6   believe it's attached as an exhibit to the reply papers --

7   give me one moment --

8          MR. GARBER:  Silverman 1, Your Honor, I believe, or

9   Silverman 2.

10          THE COURT:  I'm sorry?

11          MR. GARBER:  Exhibit 1 to the Silverman

12   affirmation.

13          THE COURT:  I'm looking for the number -- one

14   second -- yes, it was NYSCEF 362 -- the Index Number in New

15   York County is 151033 of 2012.  The decision is dated March

16   15, 2017.

17          In this decision, this Court reviewed the standards

18   for class certification.

19          CPLR 901 (a) provides that:

20          "One or more members of a class may sue or be sued

21          as representative party on behalf of all if:

22          One, the class is so numerous that joinder of all

23          members rather otherwise required or permitted is

24          impracticable.

25          Two, there are questions of law or fact common to

38

Proceedings

1           the class which predominates over any question

2           affecting only individual members.

3               Three, the claims or defenses of the representative

4           parties are typical of the claims or defenses of the

5           class.

6               Four, the representative party will fairly and

7           adequately protect the interests of the class.

8               And, finally,

9               Five, a class action is superior to other available

10          methods for fair and efficient adjudication of the

11          controversy."

12              "Plaintiffs bear the burden of establishing these

13          criteria by providing an evidentiary basis for class

14          certification.  Citing to Kudinov, K-U-D-I-N-O-V, v

15          Kell, K-E-L-L-Tech, T-E-C-H Construction Inc.,

16          65 AD3d, 481, First Department, 2009.

17              "Whether a particular loss is qualified as a class

18          action rep would be in the sound discretion of the

19          trial court, in exercising its discretion, a court

20          must be mindful about holding that the class

21          certification statute should be liberally construed."

22               "Class action certification is not appropriate if

23          on the surface there appears to be a cause of action

24          which is not a sham."  Citing to Pludeman,

25          P-L-U-D-E-M-A-N v Northern Leasing Systems Inc.,

INDEX NO. 151293/2013

Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 40 of 69 RECEIVED NYSCEF: 09/25/2020

Proceedings

1            74 AD3d, 420 at Page 422, First Department, 2010."

2                 The first element is known as "numerosity."

3                 There is no mechanical test to determine whether

4       numerosity has been met.  Nor is there a set rule for

5       the number or perspective class members which must

6       exist before a class is certified."  Citing to Friar,

7             F-R-I-A-R v Van Guard Holding Corp., 72 AD2d 83 at

8             Page 96, Second Department, 1980.

9                 "It has been held that the threshold for

10             impracticality of joining needs to be around 40."

11            Citing to Dornberger, D-O-R-N-B-E-R-G-E-R v

12            Metropolitan Life Insurance Co., 182 FRD 72 at

13            Page 77, Southern District, New York, 1998.  As

14            amended, 1999.

15                Also, Globe Surgical Supply v GEICO Insurance Co.,

16            59 AD3d, 129, at Page 138, Second Department, 2008.

17                In this case, for all intents and purposes, counsel

18      has not challenged the numerosity element.  There has

19            been an estimate of the class to be between 40,000 to

20            90,000. Counsel in opposition today believes that it's

21            a class of two, however that is not really the case.

22            It is estimated to be much larger. Therefore,

23            plaintiff has met the burden with regard to the first

24            element of numerosity.

25                With regard to commonality, it requires,

MONICA S. HORVATH - SENIOR COURT REPORTER

40

Proceedings

1    "predominant not identity or unanimity among class

2    members." Citing to Cherr, C-H-E-R-R v Resource

3    America Inc., 15 AD3d, 1013, Fourth Department, 2005.

4         Here, plaintiff has clearly stated that there is

5    commonality which is amongst all class members. I read from

6    the introduction of the memoire on Page 1. All contracts

7    have a common provision. Liberty is to charge a rate based

8    upon electricity market pricing. However, in violation of

9    that provision Liberty actually charges rates where it knows

10   went to the electricity market prices.

11        So the commonality among the class is tied to

12   market based pricing, and the class is stated also on

13   Page 1, consisting of all of defendant's customers that were

14   on a variable rate plan for the provision of electricity in

15   New York State at any point from June 29, 2009 to the

16   present including all customers charged Liberty defaults the

17   variable rate.

18        And in Foot Note Two, they exclude the class of a

19   small number of very large customers that had variable rate

20   contract that included a negotiated market cap that limited

21   Liberty's markup -- and I will add another exclusion, which

22   is -- it must be based upon -- the variable rate -- must be

23   based upon market based pricing. Which I think is clear,

24   but I think that I want it to be understood that we are not

25   talking about plans where as was mentioned by counsel where

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM       INDEX NO. 151293/2013
NYSCEF DOC. NO. 379  Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 42 of 69   RECEIVED NYSCEF: 09/25/2020

41

Proceedings

1    there is a fixed rate within the variable rate.  I think

2    that's clear from the memorandum and the arguments made in

3    the memorandum as well as here in oral argument.

4         Let's move on to the next element, "typicality."

5         With respect to typicality, "if it is shown that

6         plaintiff's claims derive from the same practice or

7         course of conduct that gave rise to remaining claims

8         of other class members and is based upon the same

9         legal theory, the typicality requirement is

10        satisfied."  Citing to Pludeman, P-L-U-D-E-M-A-N,

11        74 AD3d at 423.

12        Here, again, the named plaintiffs alleged that all

13    the class members were subject to the failure to comply with

14    the market based pricing.  Therefore, plaintiff's claims are

15    typical of a class since they arise out of the same course

16    of conduct.

17        This Court rejects out of hand that there may be a

18    distinguishing factor in this case like no other case in

19    that the class members themselves may be divergent in their

20    assets.

21        I don't believe that is the standard.  The standard

22    is if it's the same practice or course of conduct.  And,

23    here, the typicality component is met because there is based

24    upon the breach of contract due to the market based variable

25    rate which was not complied with a market based pricing.  It

Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 43 of 69

42

Proceedings

1    has nothing to do with the members themselves.  And counsel

2    has not cited a case where that's to be the case.

3            This Court will stick with the case law since it

4    involved the same practice and course of conduct that would

5    give rise to a typicality of the class and therefore the

6    plaintiffs have met their burden with respect to typicality.

7            The next element is "adequacy of representation."

8            With respect to adequacy of representation, the

9    Court considered the following factors:

10           One, whether there is a conflict of interest

11   between the representative and the class members.

12           The representative's background and personal

13   character.

14           The representative's familiarity with the lawsuit.

15           The confidence, experience and vigor of class

16   counsel.

17           And, five, the financial resources available to

18   prosecute the action.  Citing to Pruitt, P-R-U-I-T-T v

19   Rockefeller Center Properties, 167 AD2d, 14 at Page 24,

20   First Department, 1991.

21           The First Department has noticed that an "obvious

22           function of the class action representative is to act

23           as a check on the attorneys as additional assurance

24           that in any settlement or other disposition of the

25           interest of the members of a class will take

Proceedings

1         precedence over those of the attorney."  Citing to

2     Panzer, P-A-N-Z-E-R v Turbodyne, T-U-R-B-O-D-Y-N-E

3     Corp., 68 AD2d, 614 at Page 620, First Department, 1979.

4         There is no evidence of any conflict of interest

5     between main plaintiffs and the class members.

6         Here, the plaintiffs possessed more than required

7     general awareness of claims at issue.  Citing to Seko 121

8     AD3d at 542.

9         In this case the plaintiffs had litigated for many

10    years uncovered the allegation that there is a breach of

11    contract on variable rate due to market based pricing.

12    There could be no better plaintiff representative.  There is

13    no conflict of interest.  And the representatives are

14    familiar with the lawsuit.  Counsel is competent and

15    experienced and has vigorously litigated this case and the

16    financial resources available to prosecute the action by

17    plaintiff and their firm is sufficient.  Therefore,

18    plaintiff has met the burden of adequate representation.

19        The next element is "superiority."

20        This Court holds that a class action is the secure

21    method of resolving this dispute.  Indeed, the First

22    Department has recognized that "a class action is the best

23    method of adjudicating this controversy in light of the

24    small amounts of potential recovery for each individual.

25    Most of the individual differences can be resolved by

44

Proceedings

1    documentary evidence.  Pesantez, P-E-S-A-N-T-E-Z v Boyle

2    Environmental Services, 251 AD2d 11 at Page 12, First

3    Department, 1998.

4         I will cite to also the case that Mr. Garber's firm

5    litigated, Claridge v North American Power and Gas LLC,

6    2016 West Law 7009062, Southern District, 2016.

7         In that case the Southern District Court justice,

8    US District Judge Castiel found that this was also superior.

9    It makes no sense to have 40,000 to 90,000 cases in all

10   parts of the state; it would be more sufficient to do it

11   here.

12        Counsel states that there is a remedy in that class

13   members can go and have their cases heard administratively.

14   In the case of Nawrocki, N-A-W-R-O-C-K-I v Proto, P-R-O-T-O

15   Construction and Development Corp., 82 AD2d 534, First

16   Department, 2011.

17        The court rejected the very argument.

18        In that case they argued that they failed to

19   exhaust administrative remedy in the Labor Law and the court

20   found that plaintiff's argument was without merit.

21        Moving on to the other parts of the standard.

22        Even if the prerequisites are satisfied, the court

23   must act as to the facts as set forth.

24        CPLR 902:

25        "One, the interest of the members of the class

Proceedings

1          individually controlling the prosecution or defense of

2          separate action.

3               Two, the impracticality or inefficiency of

4          prosecuting defendant's separate action.

5               Three, the extent and nature of any litigation

6          concerning the controversy already commenced by or

7          against the members of the class.

8               The desirability or undesirability of

9          concentrating, the litigation of the claim in a

10         particular forum.

11              And,

12              Five, the difficulties likely to be incurred in the

13         management of a class action."

14              In this case, the plaintiffs have met the first

15    element, consideration.  And the second element it would be

16    impractical and/or inefficient of prosecuting separate

17    actions.

18              It's clear here it makes more sense to have

19    seasoned counsel who have prosecuted these types of cases

20    rather than having them go improperly lawyer less to an

21    administrative proceeding without knowing their rights.

22    These cases have been prosecuted in other venues and there

23    have been significant settlements with the ESCO'S.

24              The extent and nature of the litigation concerning

25    the controversy already commenced by the members of the

Proceedings

1    class is considerable.  There have been years of litigation.

2    There have been several Appellate cases that have reviewed

3    this Court's decision going back now seven years.

4         This Court already has opined that it is more

5    desirable to have this case in this forum rather than it

6    being spread out throughout the states.

7         The last element is whether or not difficulties

8    like the account in the management of class actions; I

9    believe that class counsel is adequately able to manage the

10   class.

11        Counsel for Liberty's argument that it would be

12   difficult for them to get the information in order to

13   identify the class members would defeat the purpose of class

14   actions.  It is Liberty's duty to provide the documents.

15   Quite frankly, it is able to communicate with their clients

16   to obtain -- the clients are able to communicate in order to

17   provide and obtain the notice required under the class.  The

18   defense would eviscerate the whole motion of class action.

19        Let's move on to the defenses.

20        Counsel argues that this will be the first case

21   where a breach of contract case with regard to the ESCO'S.

22   That is not the case; Claridge v North American Power and

23   Gas is a breach of contract case.

24        There are many cases cited by counsel.  Edwards v

25   North American Power and Gas is a breach of contract case.

Proceedings

1    And citation is 2018 West Law 3715273, US District Court,

2    District of Connecticut, 2018.  Silvis v Ambit Energy LP,

3    326 FRD 419, Eastern District, Pennsylvania, 2018.

4         I'm not going to cite more but there were more in

5    the brief.  But this is not the first case wherein there was

6    a class action dealing with breach of contract.  There are

7    many.  This would not be the first.

8         Let's move on to other defenses.

9         Counsel argues that there are unique defenses by

10   plaintiff that could not be the same for the other class

11   members.

12        I just want to cite to the Appellate Division's

13   affirmance of this Court's order at 172 AD3d 458.

14        In this case the Court already had stated that

15   plaintiffs contend that defendants violated the contractual

16   terms applicable such as the buyers continue to be charged a

17   default variable rate set by the defendants as to the

18   expiration of the contract.  That too gives rise to

19   commonality of what the plaintiff class wants to certify.

20        The Appellate Division further stated the motion

21   court directly found issues of fact exist as to whether

22   there is an enforceable contract between the parties with

23   applicable terms and conditions covering the variable rate.

24        Further issues of fact exist as to whether

25   defendants breached any of these terms and conditions by

Proceedings

1     charging an exorbitant hidden margin fee not provided in the

2     rate term.

3            The Court correctly rejects defendant's arguments

4     that the evidence demonstrates that plaintiff lacked

5     standing to bring the breach of contract claim.  The

6     Appellate Division has spoken.

7            With regard to the Voluntary Payment Doctrine, the

8     Appellate Division found that the record does not

9     demonstrate that plaintiffs made the payments with full

10    knowledge of the facts that would have enabled them to

11    conclude that they were being overcharged by defendants due

12    to a hidden margin fee.  That too is the res judicata and

13    the holding of the Appellate Division.

14           It seems that the voluntary payment doctrine is the

15    same for all class members.  It would not be unique, it

16    would actually be the same rather than a distinguishing

17    feature.  So that would not be a reason to reject the class

18    action.

19           With respect to damages.

20           The damages will all be dealt with pursuant to the

21    same method of calculating the rates pursuant to the utility

22    rate.  That too must wait for another day.  Remember that

23    standard is lower than in the Federal Court.  And in Federal

24    Court at least three ESCO'S have had class actions due to

25    breach of contract.  The standard is lower here.  The

Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 50 of 69

Proceedings

1    Appellate Division has already ruled that there is an at

2    least triable issue of fact; there is merit to the cause of

3    action.  Therefore this Court will certify the class as

4    modified today in this Court's decision.

5              Let's talk now to costs.

6              I don't think I had the parties address that.

7              Plaintiff's counsel.

8              MR. GARBER:  Thank you, Your Honor.

9              As set forth in our briefing given the disparity of

10   resources between the two sides and the case law as cited in

11   our briefs, we believe it is appropriate for this Court to

12   order that Liberty Power be required to bear the costs of

13   the notice to the class in this case.

14             THE COURT:  Do you know what the cost should be; an

15   estimate, please?

16             MR. GARBER:  I do not, Your Honor.

17             Your Honor, I'm guessing that -- let's say the

18   class -- you want to say 50,000 --

19             THE COURT:  Let's say 50,000.  That's a good round

20   number.

21             MR. GARBER:  Let's say 50,000, Your Honor.  It is

22   going to be a bulk postcard rate most likely.  We can do it

23   via postcard for efficiency purposes.  So I don't know what

24   the postcard rate would be from the administrator.  I'm

25   guessing it would be twenty-three cents maybe per postcard,

Proceedings

1    you know, plus the administration fees for the claims

2    administrator to administratively set up the website, that

3    also has a long important notice on it and the like.

4         Typically, in the settlement context, let's say in

5    a settlement context for a similar postcard notice that I

6    just did that had 118,000 class members, the claims

7    administrator figured that notice going in would cost about

8    $220,000 but you cut that at least in half given the size of

9    the class here and then you also would cut that further

10   because that estimate included the administration of the

11   settlement itself, so they would be getting the postcard

12   sent back, they would have class members submit claims and

13   then they have to administer on the back end.

14        Here, at least in the first instance we were just

15   talking about the providing of the notice via postcard, and

16   the establishment of a website and, you know, a 1-800

17   number, so, you know, on the back of the envelope, I would

18   say, 100,000 or so.

19             THE COURT:  Okay.

20             And you wish the defendant to pay the costs?

21             MR. GARBER:  Yes, Your Honor.

22             THE COURT:  Okay.

23             Anything further?

24             MR. GARBER:  No, Your Honor.

25             THE COURT:  Counsel in opposition.

Proceedings

1          MS. NEIDL:  Uh, yeah.

2          We would oppose that request.

3          The plaintiffs have come forward with no evidence

4     that the plaintiffs themselves are unable to pay for the

5     request.

6          As we noted in our papers it is a sophisticated

7     enterprise operating multiple restaurants and at least one

8     restaurant is still going.

9          I have asked for since the beginning of the lawsuit

10    information relating to the restaurant and I have never

11    gotten that.  So I would propose that before the Court rule

12    on it, plaintiffs make available information from which the

13    Court and defendants could judge whether they have the

14    wherewithal to absorb that cost.

15          THE COURT:  Okay, what if I have a compromise and I

16    do what they did in Volker, V-O-L-K-E-R v Empire Blue Cross

17    and Blue Shield, 155 AD2d, 229, First Department, 1989?

18          In that case the court had the defendants bear half

19    the costs and then at the conclusion of the trial for

20    reapportionment of the cost pursuant to CPLR 904 (d)(I).

21          Anyone have a problem with that?

22          MR. GARBER:  No, not from plaintiffs, Your Honor.

23          MS. NEIDL:  For defendants, yes, we would object to

24    that.

25          THE COURT:  Okay, at this juncture, the Court will

Proceedings

1    order half the cost of disseminating the class mail without

2    prejudice to either party making application at the

3    conclusion of trial for reapportionment of the cost pursuant

4    to CPLR Section 904 (d)(I).

5         So, I basically did a Solomonic approach.

6         At this stage, I would prefer that both parties

7    including the plaintiffs have some skin in the game; I want

8    them to pay something, and, also, I think it's unfair to

9    have them bear the entire costs, so I have Liberty bear half

10    the cost and plaintiff bear the other half of the cost.  I

11    think that would be the best approach in this case given the

12    circumstances.

13         Is there anything else that you have to discuss

14    today?

15         MR. GARBER:  Yes, Your Honor.

16         As you are familiar, we had discussed and this

17    Court granted additional discovery post this Court

18    potentially which this Court has now granted class

19    certification, and we just want to make sure that the Court

20    is aware of that and we are prepared to get on the phone

21    with defendants as early as tomorrow or certainly by the end

22    of this week to discuss the production of those additional

23    documents so that the case can continue to move forward.

24         THE COURT:  Okay.

25         So, I just have one request.

Proceedings

1          Since I did this order from my chair and my

2     chambers, and I did not write a decision, I would actually

3     ask you to submit an order that would memorialize the

4     decision stated on the record today.

5          I would like to see the class definition and the

6     certification of the class.  That was changed a little bit,

7     correct?

8          MR. GARBER:  Yes, Your Honor.

9          We will immediately -- I will endeavor to try to

10    get the court reporter's name and get the transcript as soon

11    as possible.  So as soon as we get the transcript and even

12    before that, we will start preparing a proposed order and

13    share that with defense counsel, so hopefully the parties

14    submit an agreed upon proposed order to the Court and then

15    we can move on to discovery such as the list of the class

16    members provided by defendants and other documents which we

17    provided them a list of the stuff that we were going to ask

18    for after class certification.  So they have been aware of

19    the information that we want for over a year now.

20          THE COURT:  Counsel, I just want to make it clear,

21    that I certified the class, I appointed plaintiff as class

22    representative, I appointed plaintiff's attorney as class

23    counsel.  And I'm ordering Liberty to provide a complete

24    list of all the class members.  And I'm ordering Liberty to

25    pay for half of the cost of the notice to class, and that is

Proceedings

1          the five parts of the relief -- five branches -- of the

2          relief that you are seeking in your motion.

3                    MR. GARBER:  Yes, Your Honor.

4                    Understood.

5                    THE COURT:  And then we have to set a discovery.

6                    Do you want to do that now or you will do it among

7          yourselves?

8                    MR. GARBER:  Your Honor, we are hopeful that we can

9          do this among ourselves, and given the Court issuing the

10         order from the bench, given the age of the case, we are

11         prepared to move as expeditiously as possible and we will

12         bring any disputes to the Court in an expedited matter as

13         soon as possible.

14                   We are hopeful again given that the parties had

15         outlined the additional discovery that we were going to seek

16         should the Court grant the class certification that

17         defendants are aware and that we can work through that and

18         that it is just a matter of how long it will take them to

19         get us that information.

20                   THE COURT:  Okay.

21                   So is there anything else to discuss because I have

22         to get to my next conference which is in about five minutes?

23                   MS. NEIDL:  Your Honor, from the defendants, we are

24         obviously going to appeal Your Honor's ruling.  I would ask

25         for a stay during the interim.

Proceedings

1          THE COURT:  You have to make a motion and I'm

2     denying any oral stays.  I will more than likely not issue a

3     stay, so you may have to just go to the Appellate Division.

4     I don't normally stay my own decisions because then why

5     would I issue my own decision.

6               So I respect your request for a stay but given the

7     circumstances that this case has been delayed for eight

8     months and this case is three years old, this Court denies

9     any oral application for a stay, and more than likely, I

10    will deny a written application for a stay as well.

11              So I would suggest humbly that if you wish a stay

12    of my own order that you go to the Appellate Division and

13    seek redress there.

14              MS. NEIDL:  Understood.

15              Thank you.

16              THE COURT:  Anything else from counsel?

17              MR. GARBER:  Nothing from plaintiff, Your Honor.

18              THE COURT:  I just want to add one more point which

19    I think I did not add, and I think I failed on one issue --

20    let me just get my notes.  I am doing this from my desk -- I

21    just wanted to clarify that with regard to damages, that the

22    need to conduct individualized damage increase does not

23    obviate the utility of the class mechanism for this action

24    given predominant common issues of liability.

25              I want to add that to my decision.  And I am

56

Proceedings

1    quoting Borden, B-O-R-D-E-N v 400 East 55th Street

2    Associates LP.

3                Off the record.

4                (Whereupon, there was a discussion held off the

5                                        record.)

6                Back on the record.

7                The citation is 105 AD3d, 630, First Department,

8    2013.

9                I wish you all the best.  Be safe and healthy.

10               Please, order the transcript and submit an order.

11               MR. GARBER:  Thank you, Your Honor.

12               THE COURT:  Thank you.

13               Have a good day.

14               MR. GARBER:  Thank you, Your Honor.

15                          *        *        *

16

17

18

19

20

21

22

23

24

25

1

2                    THE ABOVE IS CERTIFIED TO BE
                     A TRUE AND ACCURATE TRANSCRIPT
3                    OF THE PROCEEDING RECORDED BY ME

4

                     _____
5                    MONICA HORVATH
                     SENIOR COURT REPORTER
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM
INDEX NO. 151293/2013
NYSCEF DOC. NO. 379
Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 59 of 69
RECEIVED NYSCEF: 09/25/2020

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM    INDEX NO. 151293/2013
NYSCEF DOC. NO. 379    Case 21-13797-SMG    Doc 948-2    Filed 06/30/23    Page 60 of 69    RECEIVED NYSCEF: 09/25/2020

1

**$**

**$1,000** [1] - 30:13
**$100** [1] - 30:11
**$220,000** [1] - 50:8
**$5,000** [1] - 20:13

**1**

**1** [5] - 29:15, 37:8, 37:11, 40:6, 40:13
**1-800** [1] - 50:16
**10** [1] - 29:19
**100** [1] - 33:16
**100,000** [1] - 50:18
**1013** [1] - 40:3
**105** [1] - 56:7
**10601** [2] - 1:19, 4:4
**11** [1] - 44:2
**118,000** [1] - 50:6
**11:45** [2] - 34:21, 34:22
**12** [2] - 1:11, 44:2
**121** [1] - 43:7
**12207** [2] - 1:23, 4:17
**129** [1] - 39:16
**12:30** [1] - 26:10
**1316790** [1] - 24:22
**138** [1] - 39:16
**14** [5] - 26:1, 26:5, 26:15, 26:19, 42:19
**15** [2] - 37:16, 40:3
**151033** [1] - 37:15
**151293/13** [1] - 1:6
**155** [1] - 51:17
**167** [1] - 42:19
**1717** [2] - 2:3, 4:25
**172** [2] - 24:21, 47:13
**182** [1] - 39:12
**1979** [1] - 43:3
**1980** [1] - 39:8
**1989** [1] - 51:17
**1991** [1] - 42:20
**1998** [2] - 39:13, 44:3
**1999** [1] - 39:14

**2**

**2** [1] - 37:9
**20006** [2] - 2:3, 4:25
**2005** [1] - 40:3
**2008** [1] - 39:16
**2009** [5] - 13:11, 20:17, 23:3, 38:16, 40:15
**2010** [1] - 39:1
**2011** [1] - 44:16
**2012** [2] - 20:19, 37:15
**2013** [1] - 56:8

**2016** [4] - 32:2, 32:3, 44:6
**2017** [1] - 37:16
**2018** [5] - 24:19, 24:22, 47:1, 47:2, 47:3
**2019** [2] - 24:18, 36:25
**2020** [2] - 1:11, 36:25
**22** [1] - 26:21
**229** [1] - 51:17
**24** [1] - 42:19
**251** [1] - 44:2
**29** [1] - 40:15

**3**

**326** [1] - 47:3
**357** [1] - 26:5
**362** [1] - 37:14
**37** [1] - 7:9
**3715273** [1] - 47:1

**4**

**40** [1] - 23:5, 39:10
**40,000** [6] - 33:21, 33:22, 33:25, 39:19, 44:9
**400** [1] - 56:1
**419** [1] - 47:3
**420** [1] - 39:1
**422** [1] - 39:1
**423** [1] - 41:11
**458** [2] - 24:21, 47:13
**481** [1] - 38:16

**5**

**50,000** [4] - 33:22, 49:18, 49:19, 49:21
**51** [1] - 26:21
**534** [1] - 44:15
**54** [2] - 1:22, 4:17
**542** [1] - 43:8
**55th** [1] - 56:1
**59** [1] - 39:16

**6**

**614** [1] - 43:3
**620** [1] - 43:3
**630** [1] - 56:7
**65** [1] - 38:16
**68** [1] - 43:3

**7**

**7009062** [2] - 32:2, 44:6
**72** [2] - 39:7, 39:12

**74** [2] - 39:1, 41:11
**77** [1] - 39:13

**8**

**82** [1] - 44:15
**83** [1] - 39:7

**9**

**9** [1] - 29:19
**90,000** [8] - 13:15, 16:4, 21:23, 23:4, 33:6, 33:21, 39:20, 44:9
**901** [5] - 5:24, 8:9, 8:12, 10:17, 37:19
**902** [7] - 5:25, 6:25, 7:1, 8:9, 8:12, 10:17, 44:24
**904** [2] - 51:20, 52:4
**96** [1] - 39:8

**A**

**a.m** [1] - 26:10
**A.W.I** [1] - 37:5
**abandoning** [1] - 21:15
**aberration** [1] - 27:20
**able** [3] - 46:9, 46:15, 46:16
**ABOVE** [1] - 56:16
**absent** [3] - 18:8, 35:14, 35:16
**absolutely** [2] - 28:23, 31:13
**absorb** [1] - 51:14
**acceptable** [1] - 10:2
**accepting** [1] - 10:12
**according** [1] - 12:10
**account** [1] - 46:8
**ACCURATE** [1] - 56:16
**act** [3] - 18:8, 42:22, 44:23
**action** [28] - 5:9, 14:1, 18:14, 21:21, 22:12, 23:19, 27:25, 33:11, 34:9, 35:15, 36:8, 38:9, 38:18, 38:22, 38:23, 42:18, 42:22, 43:16, 43:20, 43:22, 45:2, 45:4, 45:13, 46:18, 47:6, 48:18, 49:3, 55:23
**actions** [6] - 5:23, 8:6, 45:17, 46:8, 46:14, 48:24
**acts** [2] - 30:15, 34:15

**AD2d** [6] - 39:7, 42:19, 43:3, 44:2, 44:15, 51:17
**AD3d** [9] - 24:21, 38:16, 39:1, 39:16, 40:3, 41:11, 43:8, 47:13, 56:7
**add** [7] - 20:7, 21:20, 34:19, 40:21, 55:18, 55:19, 55:25
**additional** [4] - 42:23, 52:17, 52:22, 54:15
**address** [7] - 3:24, 4:17, 4:25, 10:7, 35:3, 35:5, 49:6
**addressed** [2] - 10:8, 19:24, 21:14
**adequacy** [7] - 6:14, 13:8, 19:24, 31:22, 32:10, 42:7, 42:8
**adequate** [4] - 32:7, 32:20, 32:21, 43:18
**adequately** [2] - 38:7, 46:9
**adjudicating** [1] - 43:23
**adjudication** [1] - 38:10
**administer** [1] - 50:13
**administration** [2] - 50:1, 50:10
**administrative** [8] - 33:25, 34:2, 34:6, 34:8, 34:12, 34:14, 44:19, 45:21
**administratively** [2] - 44:13, 50:2
**administrator** [3] - 49:24, 50:2, 50:7
**admissibility** [1] - 10:10
**admit** [1] - 26:7
**advocate** [1] - 34:16
**affect** [1] - 9:8
**affected** [2] - 6:2, 6:9
**affecting** [1] - 38:2
**affidavit** [5] - 11:11, 15:4, 19:7, 20:1, 35:11
**affiliates** [2] - 17:11, 19:13
**affirmance** [1] - 47:13
**affirmation** [1] - 37:12
**affirmed** [1] - 24:21
**age** [1] - 54:10
**aggrieved** [2] - 11:16, 33:6, 34:7
**ago** [2] - 24:16, 33:15
**agree** [1] - 21:15
**agreed** [2] - 12:10,

53:14
**agreement** [3] - 15:8, 16:10, 18:19
**agreements** [1] - 16:13
**Albany** [5] - 1:23, 4:17, 33:2, 33:14, 33:25
**allegation** [2] - 24:3, 43:10
**allegations** [3] - 7:16, 12:7, 12:9
**allege** [3] - 7:10, 12:11, 14:9
**alleged** [5] - 5:24, 14:14, 16:16, 25:16, 41:12
**alleging** [2] - 11:12, 44:25
**alluded** [2] - 24:14, 37:3
**ally** [1] - 28:23
**alone** [1] - 3:14
**alter** [1] - 36:15
**alternative** [2] - 33:9, 33:10
**Ambit** [1] - 47:2
**amended** [1] - 39:14
**America** [1] - 40:3
**American** [4] - 31:25, 44:5, 46:22, 46:25
**amount** [2] - 19:11, 27:15
**amounts** [1] - 43:24
**AND** [2] - 1:4, 56:16
**Ansah** [1] - 37:4
**ANSAH** [1] - 37:5
**anyway** [2] - 8:23, 28:22
**apologize** [1] - 32:12
**appeal** [1] - 54:24
**Appeals** [1] - 36:18
**appearance** [1] - 4:6
**APPEARANCES** [2] - 1:16, 1:24
**Appellate** [11] - 24:13, 24:20, 46:2, 47:12, 47:20, 48:6, 48:8, 48:13, 49:1, 55:3, 55:12
**appliances** [1] - 28:10
**applicable** [4] - 18:25, 27:17, 47:16, 47:23
**application** [3] - 52:2, 55:9, 55:10
**applied** [3] - 10:11, 16:3, 28:14
**applies** [1] - 6:12
**apply** [2] - 8:22, 29:1
**appointed** [1] - 53:21,

53:22
approach [2] - 52:5, 52:11
appropriate [3] - 5:9, 38:22, 49:11
areas [1] - 32:16
argued [1] - 44:18
argues [2] - 46:20, 47:9
arguing [1] - 24:7
argument [14] - 8:25, 9:10, 10:6, 11:3, 20:25, 23:14, 24:15, 28:2, 31:17, 31:18, 41:3, 44:17, 44:20, 46:11
arguments [5] - 8:13, 35:2, 35:8, 41:2, 48:3
arise [2] - 30:7, 41:15
assets [2] - 30:12, 41:20
associate [1] - 3:3
Associates [1] - 56:2
assumptions [1] - 11:19
assurance [1] - 42:23
attached [2] - 15:4, 37:6
attempt [1] - 10:4
attempted [1] - 7:17
attempting [1] - 10:7
attempts [1] - 7:8
Attorney [2] - 1:18, 1:22
attorney [3] - 31:24, 43:1, 53:22
attorneys [2] - 13:1, 42:23
Attorneys [1] - 2:2
atypical [1] - 19:16
August [2] - 1:11, 36:25
available [4] - 38:9, 42:17, 43:16, 51:12
Avenue [2] - 2:3, 4:25
avoid [1] - 9:6
award [1] - 20:13
aware [4] - 7:24, 52:20, 53:18, 54:17
awareness [1] - 43:7

**B**

backdoor [1] - 10:4
background [1] - 42:12
bank [1] - 30:13
based [46] - 5:13, 5:16, 5:19, 5:23, 6:6,

6:11, 8:9, 9:6, 9:7, 9:18, 9:24, 9:25, 11:15, 11:19, 11:20, 15:11, 16:22, 17:1, 18:20, 23:16, 25:2, 25:13, 25:21, 27:25, 28:15, 29:3, 29:11, 29:22, 30:8, 30:16, 36:2, 36:3, 40:7, 40:12, 40:22, 40:23, 41:8, 41:14, 41:23, 41:24, 41:25, 43:11
basing [1] - 18:16
basis [1] - 38:13
baton [1] - 35:17
BE [1] - 56:16
bear [7] - 29:24, 38:12, 49:12, 51:18, 52:9, 52:10
become [2] - 7:25, 18:6
BEFORE [1] - 1:13
beginning [2] - 14:14, 51:9
behalf [5] - 4:20, 4:21, 6:20, 31:21, 37:21
believes [2] - 24:10, 39:20
bench [2] - 37:2, 54:10
best [4] - 18:8, 43:22, 52:11, 56:9
better [2] - 33:3, 43:12
between [9] - 13:11, 33:3, 34:1, 36:22, 39:19, 42:11, 43:5, 47:22, 49:10
billed [3] - 18:20, 19:13, 21:24
bit [2] - 29:12, 53:6
black [1] - 8:14
blank [1] - 27:13
BLANKINSHIP [2] - 1:17, 4:2
Blankinship [2] - 3:2, 4:2
blindly [1] - 11:8
BLT [5] - 1:4, 23:10, 24:20
Blue [2] - 51:16, 51:17
boilerplate [1] - 20:1
Borden [1] - 56:1
BORDEN [1] - 56:1
borne [1] - 10:21
bottom [4] - 26:2, 26:5, 26:16, 27:3
Boyle [1] - 44:1
Bradley [2] - 3:4, 4:8
BRADLEY [2] - 1:20, 4:8

branches [1] - 54:1
breach [21] - 5:18, 5:21, 5:22, 6:2, 6:6, 7:21, 8:1, 14:16, 18:23, 23:15, 31:12, 35:7, 35:13, 41:24, 43:10, 46:21, 46:23, 46:25, 47:6, 48:5, 48:25
breached [2] - 9:19, 47:25
breaches [1] - 9:8
breaking [2] - 8:7, 28:3
brief [9] - 26:2, 26:3, 26:4, 26:7, 29:9, 32:8, 32:20, 35:3, 47:5
briefing [1] - 49:9
briefs [4] - 15:4, 26:8, 26:13, 49:11
bring [2] - 48:5, 54:12
broad [1] - 23:6
Broadway [1] - 1:18, 4:4
broker [1] - 18:3
brought [3] - 7:2, 33:2, 34:6
building [2] - 12:1, 17:9
bulk [1] - 49:22
burden [7] - 10:20, 11:1, 23:7, 38:12, 39:23, 42:6, 43:18
business [2] - 14:6
buyers [1] - 47:16
BY [4] - 1:19, 1:23, 2:4, 56:17

**C**

calculate [7] - 9:17, 10:16, 16:20, 24:4, 24:5, 36:4, 36:6
calculated [7] - 7:11, 7:14, 12:10, 12:12, 16:4, 36:13, 36:14
calculating [10] - 9:22, 9:24, 12:24, 16:17, 17:4, 20:20, 23:25, 35:21, 36:2, 48:21
calculation [2] - 10:14, 12:23
calendar [2] - 36:24, 37:1
cap [1] - 40:20
case [73] - 6:22, 7:4, 7:5, 7:7, 7:8, 7:20, 7:24, 8:9, 8:18, 8:22, 11:22, 14:14, 16:2,

17:7, 18:13, 19:20, 20:7, 20:21, 21:25, 23:21, 24:9, 24:18, 25:19, 26:8, 31:2, 31:3, 31:12, 31:14, 31:18, 32:1, 32:3, 33:1, 34:6, 34:20, 34:21, 35:8, 35:14, 35:20, 35:21, 36:15, 36:18, 36:24, 39:17, 39:21, 41:18, 42:2, 42:3, 43:9, 43:15, 44:4, 44:7, 44:14, 44:18, 45:14, 46:5, 46:20, 46:21, 46:22, 46:23, 46:25, 47:5, 47:14, 49:10, 49:13, 51:18, 52:11, 52:23, 54:10, 55:7, 55:8
cases [32] - 5:8, 5:22, 6:18, 6:20, 7:18, 7:21, 8:5, 11:18, 11:22, 11:23, 12:7, 12:21, 13:24, 16:15, 17:5, 19:21, 24:2, 25:17, 31:6, 31:11, 31:15, 33:4, 33:20, 33:25, 34:2, 44:9, 44:13, 45:19, 45:22, 46:2, 46:24
Castiel [2] - 7:5, 44:8
Center [1] - 42:19
cents [3] - 36:12, 49:25
certain [3] - 21:14, 27:15, 31:11
certainly [1] - 52:21
certification [24] - 5:2, 5:9, 5:21, 7:19, 7:25, 8:13, 8:24, 9:11, 11:3, 13:3, 13:5, 19:22, 22:2, 26:11, 36:17, 37:4, 37:18, 38:14, 38:21, 38:22, 52:19, 53:6, 53:18, 54:16
certifications [2] - 8:23, 18:6
certified [5] - 7:5, 8:3, 11:6, 39:6, 53:21
CERTIFIED [1] - 56:16
certifies [1] - 10:19
certify [4] - 8:6, 9:1, 47:19, 49:3
certifying [2] - 5:22, 8:7
CFO [3] - 12:1, 17:9, 20:2
chair [1] - 53:1
challenge [2] - 23:5,

32:9
challenged [4] - 6:1, 22:25, 32:9, 39:18
chambers [1] - 53:2
chance [1] - 22:22
changed [5] - 14:16, 20:20, 23:25, 24:1, 53:6
character [1] - 42:13
charge [7] - 5:16, 6:6, 10:1, 12:10, 25:1, 29:22, 40:7
charged [16] - 6:11, 11:14, 12:17, 14:22, 20:22, 22:16, 24:8, 24:10, 27:12, 29:24, 35:23, 36:9, 36:11, 36:12, 40:16, 47:16
charges [1] - 40:9
charging [3] - 5:19, 6:12, 48:1
chart [1] - 11:13
check [1] - 42:23
Cherin [1] - 4:22
CHERIN [1] - 4:23
Cherr [1] - 40:2
CHERR [1] - 40:2
CHERRIN [1] - 2:2
cherry [1] - 12:16
chose [1] - 17:18
Chris [1] - 19:7
circumstances [3] - 31:10, 52:12, 55:7
citation [3] - 24:20, 47:1, 56:7
cite [4] - 26:17, 44:4, 47:4, 47:12
cited [9] - 7:18, 11:23, 12:22, 15:4, 19:21, 25:17, 42:2, 46:24, 49:10
citing [9] - 38:14, 38:24, 39:6, 39:11, 40:2, 41:10, 42:18, 43:1, 43:7
CIVIL [1] - 1:2
claim [13] - 7:13, 9:11, 12:8, 13:14, 14:17, 17:12, 30:15, 30:21, 30:24, 33:15, 45:9, 48:5
claimant [1] - 32:1
claimants [1] - 32:5
claimed [1] - 14:18
claims [23] - 6:15, 6:23, 7:2, 7:22, 8:2, 11:7, 18:11, 18:16, 19:23, 20:8, 20:15, 22:14, 30:6, 30:8, 38:3, 38:4, 41:6,

41:7, 41:14, 43:7, 50:1, 50:6, 50:12

**Claridge** [10] - 7:5, 7:9, 7:16, 12:22, 13:24, 16:15, 16:18, 31:25, 44:5, 46:22

**clarify** [1] - 24:25, 29:12, 55:21

**class** [151] - 5:2, 5:9, 5:11, 5:18, 5:20, 5:23, 6:5, 6:13, 7:25, 8:3, 8:6, 8:7, 8:16, 8:22, 8:24, 9:1, 9:4, 9:12, 9:20, 10:19, 11:3, 11:16, 12:1, 12:3, 12:18, 12:21, 13:3, 13:5, 13:9, 14:12, 15:2, 15:9, 15:16, 15:21, 15:25, 16:7, 17:20, 18:5, 18:8, 18:14, 18:16, 18:19, 19:22, 20:8, 20:11, 20:15, 20:16, 21:21, 22:1, 22:13, 23:1, 23:6, 23:8, 23:9, 23:19, 26:11, 27:8, 27:20, 27:25, 28:4, 28:5, 28:6, 28:8, 28:22, 29:5, 29:8, 30:8, 30:21, 33:21, 33:24, 34:9, 35:11, 35:14, 35:15, 35:17, 35:18, 36:7, 36:8, 36:17, 37:4, 37:18, 37:20, 37:22, 38:1, 38:5, 38:7, 38:9, 38:13, 38:17, 38:20, 38:22, 39:5, 39:6, 39:19, 39:21, 40:1, 40:5, 40:11, 40:12, 40:18, 41:8, 41:13, 41:15, 41:19, 42:5, 42:11, 42:15, 42:22, 42:25, 43:5, 43:20, 43:22, 44:12, 44:25, 45:7, 45:13, 46:1, 46:8, 46:9, 46:10, 46:13, 46:17, 46:18, 47:6, 47:10, 47:19, 48:15, 48:17, 48:24, 49:3, 49:13, 49:18, 50:6, 50:9, 50:12, 52:1, 52:18, 53:5, 53:6, 53:15, 53:18, 53:21, 53:22, 53:24, 53:25, 54:16, 55:23

**classes** [3] - 6:20, 11:6, 16:10

**clear** [4] - 40:23, 41:2,

45:18, 53:20

**clearly** [2] - 29:17, 40:4

**clients** [2] - 46:15, 46:16

**cluster** [1] - 29:13

**Co** [2] - 39:12, 39:15

**COHEN** [1] - 31:5

**colleague** [3] - 3:4, 4:5, 4:18

**coming** [2] - 17:4, 35:10

**commenced** [3] - 14:20, 45:6, 45:25

**comment** [1] - 26:6

**comments** [1] - 35:4

**commercial** [9] - 11:25, 12:2, 12:4, 13:13, 16:9, 17:8, 17:23, 18:2, 31:9

**common** [7] - 5:17, 6:4, 28:3, 29:21, 37:25, 40:7, 55:24

**commonality** [10] - 6:4, 23:13, 23:15, 25:19, 28:1, 30:10, 39:25, 40:5, 40:11, 47:19

**communicate** [2] - 46:15, 46:16

**companies** [3] - 28:10, 28:11, 32:17

**company** [2] - 31:9, 31:20

**company's** [1] - 32:5

**comparison** [3] - 10:1, 16:22, 36:2

**competent** [1] - 43:14

**complained** [1] - 20:23

**complete** [1] - 53:23

**completely** [2] - 12:24, 15:20

**complicated** [1] - 23:17

**complied** [1] - 41:25

**comply** [2] - 9:19, 41:13

**component** [4] - 25:21, 30:6, 32:25, 41:23

**components** [4] - 12:14, 16:21, 17:1, 24:1

**comport** [1] - 10:3

**compromise** [1] - 51:15

**concede** [1] - 21:22

**conceded** [1] - 19:9

**concentrating** [1] -

45:9

**concerned** [1] - 23:9

**concerning** [3] - 13:6, 45:6, 45:24

**concerns** [1] - 28:23

**conclude** [1] - 48:11

**concluded** [1] - 21:10

**conclusion** [2] - 51:19, 52:3

**conclusions** [1] - 11:20

**conditions** [5] - 11:13, 16:16, 18:18, 47:23, 47:25

**conduct** [10] - 6:9, 6:21, 12:8, 30:7, 30:15, 41:7, 41:16, 41:22, 42:4, 55:22

**conference** [1] - 54:22

**confidence** [1] - 42:15

**conflict** [3] - 42:10, 43:4, 43:13

**Connecticut** [1] - 47:2

**considerable** [1] - 46:1

**consideration** [1] - 45:15

**considered** [1] - 42:9

**consistent** [1] - 12:13

**consisting** [1] - 40:13

**Construction** [2] - 38:15, 44:15

**construed** [1] - 38:21

**consumer** [8] - 30:12, 31:1, 31:10, 31:21, 34:7, 34:12, 34:16

**consumers** [7] - 11:24, 12:12, 12:5, 15:9, 17:21, 31:6, 34:9

**consuming** [1] - 9:3

**contend** [1] - 47:15

**contested** [1] - 7:25

**context** [3] - 25:1, 50:4, 50:5

**continue** [3] - 17:10, 47:16, 52:23

**continued** [1] - 15:13

**CONTINUED** [1] - 1:24

**contract** [57] - 5:18, 5:21, 5:22, 6:3, 6:6, 7:12, 7:15, 7:21, 8:2, 9:17, 9:19, 11:7, 12:8, 12:13, 13:18, 13:19, 13:21, 14:6, 14:17, 14:18, 14:19, 14:20, 15:1, 15:10, 17:12, 17:17, 17:21, 18:15, 18:17, 18:23, 18:24, 22:16, 23:16,

24:3, 24:6, 25:7, 25:22, 26:18, 26:25, 29:2, 30:24, 31:12, 35:8, 35:13, 35:22, 40:20, 41:24, 43:11, 46:21, 46:23, 46:25, 47:6, 47:18, 47:22, 48:5, 48:25

**contracts** [11] - 5:12, 6:10, 8:5, 15:5, 16:9, 18:4, 23:24, 25:20, 29:1, 29:21, 40:6

**contractual** [1] - 47:15

**contradicted** [1] - 20:2

**contrary** [3] - 14:18, 15:11, 18:10

**controlling** [1] - 45:17

**controversy** [4] - 38:11, 43:23, 45:6, 45:25

**Corp** [4] - 24:21, 39:7, 43:3, 44:15

**CORP** [1] - 1:7

**correct** [7] - 25:2, 25:14, 25:15, 25:23, 27:16, 34:4, 53:7

**correctly** [1] - 48:3

**cost** [10] - 10:20, 49:14, 50:7, 51:14, 51:20, 52:1, 52:3, 52:10, 53:25

**costs** [5] - 49:5, 49:12, 50:20, 51:19, 52:9

**counsel** [39] - 3:10, 3:22, 4:12, 6:17, 6:22, 7:7, 10:23, 12:1, 17:9, 21:4, 25:18, 29:16, 31:23, 32:4, 32:7, 33:18, 34:13, 34:23, 34:25, 37:3, 39:17, 39:20, 40:25, 42:1, 42:16, 43:14, 44:12, 45:19, 46:9, 46:11, 46:20, 46:24, 47:9, 49:7, 50:25, 53:13, 53:20, 53:23, 55:16

**count** [1] - 33:1

**country** [2] - 6:20, 33:13

**County** [5] - 33:2, 33:3, 34:1, 34:3, 37:15

**COUNTY** [1] - 1:2

**course** [10] - 6:9, 14:11, 16:6, 30:7, 30:15, 36:10, 41:7, 41:15, 41:22, 42:4

**Court** [41] - 7:22, 8:6,

9:1, 10:6, 10:19, 10:22, 18:22, 19:4, 28:24, 28:25, 29:7, 35:4, 36:16, 36:18, 37:17, 41:17, 42:3, 42:9, 43:20, 44:7, 46:4, 47:1, 47:14, 48:3, 48:23, 48:24, 49:3, 49:11, 51:11, 51:13, 51:25, 52:17, 52:18, 52:19, 53:14, 54:9, 54:12, 54:16, 55:8

**COURT** [63] - 1:2, 2:22, 3:5, 3:9, 3:14, 3:17, 3:20, 4:5, 4:11, 4:18, 5:1, 5:7, 10:24, 21:4, 21:7, 21:9, 21:17, 22:20, 23:11, 24:12, 25:10, 25:25, 26:3, 26:6, 26:12, 26:19, 26:22, 27:5, 27:9, 27:12, 27:17, 27:23, 28:13, 28:20, 29:10, 31:2, 31:14, 31:22, 32:11, 32:23, 33:19, 34:11, 34:18, 34:25, 36:21, 37:10, 37:13, 49:14, 49:19, 50:19, 50:22, 50:25, 51:15, 51:25, 52:24, 53:20, 54:5, 54:20, 55:1, 55:16, 55:18, 56:12, 56:19

**court** [12] - 8:3, 11:8, 18:24, 19:7, 38:19, 44:17, 44:19, 44:22, 47:21, 51:18, 53:10

**Court's** [3] - 46:3, 47:13, 49:4

**court's** [1] - 11:9

**courts** [3] - 9:5, 11:5, 15:9

**covering** [1] - 47:23

**CPLR** [5] - 5:24, 37:19, 44:24, 51:20, 52:4

**credited** [1] - 22:11

**criteria** [1] - 38:13

**critique** [1] - 10:12

**critiques** [1] - 10:8

**Cross** [1] - 51:16

**cures** [1] - 28:18

**customer** [8] - 11:12, 15:13, 16:3, 16:10, 22:4, 22:8, 22:16, 23:2

**customers** [31] - 5:19, 6:2, 7:3, 9:2, 13:10, 13:12, 13:13, 13:14,

**FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM**
INDEX NO. 151293/2013
NYSCEF DOC. NO. 379
Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 63 of 69
RECEIVED NYSCEF: 09/25/2020

4

13:15, 13:16, 13:25,
14:2, 16:4, 16:11,
17:8, 17:14, 17:23,
18:2, 20:18, 21:24,
24:11, 25:20, 29:5,
30:20, 33:6, 35:6,
35:9, 40:13, 40:16,
40:19
**cut** [2] - 50:8, 50:9
**CYNTHIA** [1] - 1:23
**Cynthia** [3] - 3:12,
3:19, 4:15

## D

**d)(l)** [2] - 51:20, 52:4
**D.C** [1] - 2:3
**d/b/a** [1] - 1:7
**damage** [1] - 55:22
**damages** [19] - 9:22,
9:24, 10:16, 14:25,
15:18, 15:22, 16:1,
16:4, 16:25, 17:4,
17:6, 21:25, 22:17,
36:2, 36:5, 36:17,
48:19, 48:20, 55:21
**data** [3] - 9:2, 9:4, 22:3
**date** [1] - 24:17
**dated** [1] - 37:15
**DC** [1] - 4:25
**dealing** [2] - 8:5, 47:6
**deals** [1] - 30:19
**dealt** [1] - 48:20
**deceptive** [1] - 12:8
**decided** [4] - 8:22,
18:9, 19:1, 19:15
**decision** [17] - 8:12,
24:17, 24:19, 24:21,
24:23, 33:16, 36:23,
37:2, 37:4, 37:15,
37:17, 46:3, 49:4,
53:2, 53:4, 55:5,
55:25
**decisions** [1] - 55:4
**declaration** [1] - 9:23
**default** [2] - 25:21,
47:17
**defaults** [1] - 40:16
**defeat** [4] - 5:14, 9:11,
18:5, 46:13
**defendant** [8] - 2:2,
3:13, 3:16, 3:18, 7:8,
8:23, 34:24, 50:20
**Defendant** [1] - 1:22
**defendant's** [6] - 4:12,
5:14, 10:12, 40:13,
45:4, 48:3
**defendants** [24] -
3:10, 4:20, 7:17,
7:20, 8:17, 8:20, 9:6,

9:10, 9:11, 10:4,
10:9, 10:16, 29:5,
47:15, 47:17, 47:25,
48:11, 51:13, 51:18,
51:23, 52:21, 53:16,
54:17, 54:23
**Defendants** [1] - 1:9
**defense** [5] - 10:23,
19:12, 45:1, 46:18,
53:13
**defenses** [12] - 8:15,
15:16, 15:19, 18:5,
19:16, 19:20, 38:3,
38:4, 46:19, 47:8,
47:9
**defined** [6] - 13:9,
16:8, 16:11, 23:2,
28:7, 28:14
**definition** [4] - 23:6,
23:8, 28:23, 53:5
**delayed** [3] - 34:21,
37:1, 55:7
**demonstrate** [1] - 48:9
**demonstrates** [1] -
48:4
**denies** [1] - 55:8
**denominator** [1] -
28:3
**deny** [1] - 55:10
**denying** [1] - 55:2
**department** [3] - 12:1,
17:9, 18:3
**Department** [13] -
38:16, 39:1, 39:8,
39:16, 40:3, 42:20,
42:21, 43:3, 43:22,
44:3, 44:16, 51:17,
56:7
**deposition** [1] - 12:23
**depositions** [1] - 6:16
**derive** [1] - 41:6
**describe** [1] - 16:16
**desirability** [1] - 45:8
**desirable** [1] - 46:5
**desk** [1] - 55:20
**determine** [3] - 15:1,
15:8, 39:3
**determined** [1] - 18:22
**Development** [1] -
44:15
**difference** [1] - 12:15
**differences** [2] - 25:1,
43:25
**different** [17] - 10:14,
12:25, 15:5, 15:20,
15:24, 16:8, 23:24,
24:9, 25:5, 27:9,
27:11, 30:19, 30:20,
30:21, 30:25, 36:9,
36:10

**differently** [1] - 20:16
**difficult** [1] - 46:12
**difficulties** [2] - 45:12,
46:7
**diligently** [1] - 6:15
**directly** [1] - 47:21
**disagrees** [1] - 10:15
**discovery** [5] - 6:17,
52:17, 53:15, 54:5,
54:15
**discretion** [2] - 38:18,
38:19
**discuss** [3] - 52:13,
52:22, 54:21
**discussed** [1] - 52:16
**discussion** [1] - 56:4
**dismiss** [1] - 18:10
**disparity** [1] - 49:9
**disposition** [1] - 42:24
**dispute** [3] - 12:12,
24:5, 43:21
**disputes** [2] - 13:6,
54:12
**disregard** [1] - 7:22
**disseminating** [1] -
52:1
**distinction** [1] - 30:23
**distinguish** [1] - 7:17
**distinguishable** [1] -
16:19
**distinguished** [1] -
25:18
**distinguishing** [2] -
41:18, 48:16
**District** [11] - 7:6,
32:2, 33:12, 34:10,
39:13, 44:6, 44:7,
44:8, 47:1, 47:2,
47:3
**divergent** [1] - 41:19
**Division** [9] - 24:13,
24:20, 47:20, 48:6,
48:8, 48:13, 49:1,
55:3, 55:12
**Division's** [1] - 47:12
**Docket** [1] - 26:5
**Doctrine** [2] - 19:1,
48:7
**doctrine** [1] - 48:14
**documentary** [1] -
44:1
**documents** [3] -
46:14, 52:23, 53:16
**Dollar** [1] - 12:6
**done** [1] - 23:8
**door** [1] - 9:15
**Dornberger** [1] - 39:11
**DORNBERGER** [1] -
39:11
**down** [3] - 24:17, 28:3,

29:19
**Dr** [1] - 9:23
**dropped** [2] - 14:5,
10:25
**due** [7] - 23:16, 25:21,
37:1, 41:24, 43:11,
48:11, 48:24
**during** [3] - 22:11,
27:7, 54:25
**duty** [1] - 46:14

## E

**early** [1] - 52:21
**East** [1] - 56:1
**Eastern** [1] - 47:3
**ECKERT** [2] - 2:2,
4:22
**Eckert** [2] - 3:15, 4:21
**Edwards** [2] - 7:20,
46:24
**effective** [1] - 9:7
**efficiency** [1] - 49:23
**efficient** [1] - 38:10
**eight** [3] - 36:23,
36:25, 55:7
**either** [8] - 12:19,
13:20, 14:2, 14:6,
25:21, 28:12, 29:5,
52:2
**electricity** [11] - 5:10,
5:13, 5:20, 9:18,
27:14, 29:3, 29:22,
29:25, 40:8, 40:10,
40:14
**element** [10] - 23:13,
39:2, 39:18, 39:24,
41:4, 42:7, 43:19,
45:15, 46:7
**Empire** [1] - 51:16
**enabled** [1] - 48:10
**enacted** [1] - 8:10
**encouraged** [1] -
13:25
**end** [8] - 10:15, 13:19,
13:22, 17:22, 18:1,
20:8, 50:13, 52:21
**endeavor** [1] - 53:9
**endorsing** [1] - 9:5
**Energy** [1] - 47:2
**energy** [3] - 18:3,
32:5, 32:17
**enforceable** [1] -
47:22
**enrolled** [2] - 13:16,
30:22
**enrollment** [1] - 35:9
**entered** [1] - 25:20
**entering** [1] - 6:9
**enterprise** [2] - 11:25,

51:7
**entertain** [1] - 34:6
**entire** [4] - 5:18,
30:21, 35:17, 52:9
**entirely** [2] - 16:18,
27:11
**entities** [4] - 12:2,
12:4, 30:25
**entitled** [2] - 15:15,
20:12
**entity** [1] - 30:11
**envelope** [1] - 50:17
**Environmental** [1] -
44:2
**equally** [2] - 6:12, 9:19
**ESCO** [9] - 7:18, 8:2,
11:22, 12:9, 12:19,
16:15, 18:13, 24:4,
31:6
**ESCO's** [2] - 11:21,
17:10
**ESCO'S** [10] - 6:21,
11:6, 11:18, 16:23,
19:14, 32:6, 45:23,
46:21, 48:24
**ESQ** [4] - 1:19, 1:20,
1:23, 2:4
**essentially** [2] - 9:2,
19:9
**establish** [2] - 15:16,
17:6
**established** [2] -
18:11, 18:15
**establishes** [4] -
14:24, 16:7, 18:1,
20:19
**establishing** [2] -
11:2, 38:12
**establishment** [1] -
50:16
**estimate** [3] - 39:19,
49:15, 50:10
**estimated** [1] - 39:22
**eventually** [1] - 9:16
**everywhere** [2] - 33:3,
34:1
**evidence** [10] - 5:14,
11:2, 14:24, 20:19,
33:7, 43:4, 44:1,
48:4, 51:3
**evidentiary** [1] - 38:13
**eviscerate** [1] - 46:18
**exact** [1] - 24:17
**exactly** [4] - 14:23,
24:6, 28:25, 29:13
**example** [1] - 22:4
**except** [1] - 17:5
**exclude** [1] - 40:18
**exclusion** [1] - 40:21
**exercising** [1] - 38:19

**exhaust** [1] - 44:19
**exhaustive** [1] - 37:4
**Exhibit** [1] - 37:11
**exhibit** [1] - 37:6
**exist** [3] - 39:6, 47:21, 47:24
**exorbitant** [1] - 48:1
**expedited** [1] - 54:12
**expeditiously** [1] - 54:11
**experience** [1] - 42:15
**experienced** [1] - 43:15
**expert** [12] - 9:22, 10:11, 10:13, 10:15, 11:18, 12:14, 12:15, 13:1, 17:3, 19:10, 21:1, 36:1
**expert's** [3] - 10:3, 11:20, 16:24
**experts** [2] - 10:7, 36:14
**expiration** [1] - 47:18
**expired** [2] - 15:14, 22:5
**extent** [4] - 20:17, 23:5, 45:5, 45:24
**eye** [1] - 20:4

## F

**fact** [18] - 5:15, 6:5, 6:12, 7:24, 18:12, 18:20, 18:21, 19:2, 20:6, 24:14, 29:14, 31:3, 33:9, 36:9, 37:25, 47:21, 47:24, 49:2
**factor** [1] - 41:18
**factors** [6] - 6:25, 7:1, 12:11, 13:6, 15:25, 42:9
**facts** [5] - 15:19, 23:21, 23:23, 44:23, 48:10
**failed** [6] - 11:10, 12:9, 13:20, 16:20, 44:18, 55:19
**failing** [1] - 6:6
**failure** [3] - 15:17, 23:16, 41:13
**fair** [1] - 38:10
**fairly** [1] - 38:6
**false** [1] - 7:13
**falsely** [1] - 7:20
**familiar** [3] - 36:16, 43:14, 52:16
**familiarity** [1] - 42:14
**far** [1] - 23:9
**faults** [1] - 35:10

**feature** [1] - 48:17
**Federal** [2] - 48:23
**fee** [2] - 48:1, 48:12
**fees** [1] - 50:1
**few** [4] - 5:8, 14:8, 21:9, 35:3
**fictional** [5] - 12:16, 12:20, 17:1, 17:5, 35:24
**fifty** [2] - 26:7, 36:12
**fifty-one** [1] - 36:12
**figure** [3] - 19:10, 21:25, 22:15
**figured** [1] - 50:7
**figuring** [1] - 22:17
**file** [1] - 33:15
**fill** [1] - 27:13
**finally** [4] - 10:18, 26:9, 36:16, 38:8
**financial** [2] - 42:17, 43:16
**fine** [2] - 27:18, 32:11
**finished** [1] - 26:9
**Finkelstein** [2] - 3:2, 4:1
**FINKELSTEIN** [1] - 1:17
**firm** [14] - 3:24, 4:9, 4:15, 4:22, 6:19, 32:1, 32:9, 32:10, 32:15, 32:16, 32:18, 43:17, 44:4
**First** [10] - 38:16, 39:11, 42:20, 42:21, 43:3, 43:21, 44:2, 44:15, 51:17, 56:7
**first** [14] - 14:15, 22:25, 25:7, 29:17, 29:19, 31:8, 31:19, 39:2, 39:23, 45:14, 46:20, 47:5, 47:7, 50:14
**FISH** [1] - 1:4
**five** [7] - 10:5, 38:9, 42:17, 45:12, 54:1, 54:22
**fixed** [14] - 13:18, 13:19, 14:1, 14:2, 14:5, 17:18, 17:21, 17:24, 22:4, 22:6, 22:8, 25:22, 28:12, 41:1
**Flex** [2] - 27:4, 29:4
**flows** [1] - 30:1
**fluctuate** [3] - 15:7, 16:13, 25:9
**fluctuates** [1] - 25:12
**focus** [2] - 18:7, 20:21
**follow** [2] - 11:8, 14:11
**following** [1] - 42:9

**follows** [2] - 16:2, 26:25
**Foot** [1] - 40:18
**forth** [4] - 9:22, 10:18, 44:23, 49:9
**forty** [1] - 36:12
**forum** [2] - 45:10, 46:5
**forward** [9] - 11:2, 11:4, 11:11, 17:1, 23:7, 24:11, 35:10, 51:3, 52:23
**four** [1] - 38:6
**fours** [2] - 7:4, 16:18
**Fourth** [1] - 40:3
**frankly** [2] - 32:16, 46:15
**fraud** [1] - 25:16
**FRD** [2] - 39:12, 47:3
**Frei** [2] - 3:2, 4:2
**FREI** [1] - 1:17
**Frei-Pearson** [2] - 3:2, 4:2
**FREI-PEARSON** [1] - 1:17
**FREIPEARSON** [1] - 4:3
**Friar** [1] - 39:6
**FRIAR** [1] - 39:7
**full** [1] - 48:9
**fully** [1] - 10:8
**function** [1] - 42:22
**funds** [1] - 20:11

## G

**G-A-F-T-N-E-R** [1] - 4:24
**GAFTNER** [2] - 2:4, 3:15, 4:19
**Gaftner** [3] - 3:15, 4:19, 4:24
**game** [1] - 52:7
**GARBER** [26] - 1:17, 1:19, 3:1, 3:7, 3:25, 5:6, 5:8, 25:23, 27:22, 28:21, 35:1, 37:8, 37:11, 49:8, 49:16, 49:21, 50:21, 50:24, 51:22, 52:15, 53:8, 54:3, 54:8, 55:17, 56:11, 56:14
**Garber** [9] - 3:1, 3:2, 3:7, 3:22, 4:1, 4:3, 5:4, 31:24
**Garber's** [2] - 32:9, 44:4
**Gas** [4] - 31:25, 44:5, 46:23, 46:25
**GEICO** [1] - 39:15
**general** [1] - 43:7

**given** [11] - 7:1, 8:8, 36:22, 49:9, 50:8, 52:11, 54:9, 54:10, 54:14, 55:6, 55:24
**Globe** [1] - 39:15
**governs** [1] - 22:16
**grant** [1] - 54:16
**granted** [2] - 52:17, 52:18
**greater** [1] - 15:7
**Greenberg** [2] - 3:12, 4:16
**GREENBERG** [2] - 1:21, 4:16
**ground** [1] - 8:7
**guaranteed** [3] - 11:13, 25:9, 35:12
**Guard** [1] - 39:7
**guess** [1] - 5:4
**guessing** [2] - 49:17, 49:25

## H

**HAGLER** [1] - 1:14
**half** [6] - 50:8, 51:18, 52:1, 52:9, 52:10, 53:25
**Hamlet** [1] - 7:20
**Hamsa** [1] - 8:12
**hand** [2] - 14:10, 41:17
**handle** [1] - 33:20
**happy** [1] - 34:5
**hard** [1] - 9:3
**harm** [1] - 32:15
**head** [3] - 27:24, 29:7, 35:3
**healthy** [1] - 56:9
**heard** [5] - 19:4, 19:17, 31:23, 33:20, 44:13
**hearings** [1] - 34:12
**heated** [1] - 36:22
**heavily** [1] - 11:22
**held** [2] - 39:9, 56:4
**hidden** [2] - 48:1, 48:12
**high** [6] - 16:22, 16:24, 17:16, 20:23, 21:3, 35:24
**higher** [1] - 16:14
**history** [2] - 8:10, 8:11
**hit** [3] - 27:24, 29:7, 35:2
**hold** [2] - 8:14, 10:20
**holding** [2] - 38:20, 48:13
**Holding** [1] - 39:7
**HOLDINGS** [1] - 1:8

**holds** [1] - 43:20
**Honor** [48] - 3:1, 3:8, 3:11, 3:25, 5:6, 5:8, 7:4, 7:13, 8:4, 8:11, 8:17, 8:24, 8:25, 9:5, 9:13, 9:21, 10:10, 10:18, 10:25, 14:13, 18:9, 25:23, 25:24, 27:22, 35:1, 35:2, 35:13, 35:16, 35:25, 36:8, 36:10, 36:19, 37:8, 49:8, 49:16, 49:17, 49:21, 50:21, 50:24, 51:22, 52:15, 53:8, 54:3, 54:8, 54:23, 55:17, 56:11, 56:14
**Honor's** [1] - 54:24
**Honorable** [1] - 7:5
**HONORABLE** [1] - 1:14
**hopeful** [2] - 54:8, 54:14
**hopefully** [2] - 36:23, 53:13
**HORVATH** [2] - 2:22, 56:19
**hours** [2] - 26:9, 31:16
**humbly** [1] - 55:11

## I

**IBM** [1] - 12:5
**identical** [2] - 7:15, 36:13
**identified** [1] - 18:24
**identify** [1] - 46:13
**identity** [1] - 40:1
**immediately** [1] - 53:9
**impermissible** [1] - 21:1
**important** [2] - 21:20, 50:3
**impracticability** [1] - 7:2
**impracticable** [1] - 37:24
**impractical** [1] - 45:16
**impracticality** [2] - 39:10, 45:3
**improperly** [1] - 45:20
**Inc** [4] - 37:5, 38:15, 38:25, 40:3
**include** [2] - 12:3, 13:12, 16:11
**included** [3] - 15:2, 40:20, 50:10
**includes** [3] - 17:20, 27:4, 28:8
**including** [6] - 13:9,

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM       INDEX NO. 151293/2013
NYSCEF DOC. NO. 379       Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 65 of 69       RECEIVED NYSCEF: 09/25/2020

6

**involve** [4] - 7:21, 11:24, 11:25, 12:7
**involved** [1] - 12:9, 13:4, 20:5, 42:4
**involving** [3] - 11:6, 11:7, 11:18
**irrelevant** [2] - 19:11, 35:9
**IS** [1] - 56:16
**issue** [11] - 7:25, 19:15, 28:4, 28:17, 34:17, 37:2, 43:7, 49:2, 55:2, 55:5, 55:19
**issued** [1] - 24:18
**issues** [8] - 8:17, 8:21, 13:7, 22:15, 26:14, 47:21, 47:24, 55:24
**issuing** [1] - 54:9
**itself** [2] - 36:15, 50:11

**J**

**JC** [2] - 12:5, 16:12
**job** [1] - 23:22
**joinder** [1] - 37:22
**joining** [1] - 39:10
**Judge** [2] - 7:5, 44:8
**judge** [1] - 51:13
**judgement** [1] - 18:10
**judgment** [2] - 5:15, 24:16
**judicata** [1] - 48:12
**juncture** [1] - 51:25
**June** [1] - 40:15
**justice** [1] - 44:7
**Justice** [1] - 1:14

**K**

**K-E-L-L-Tech** [1] - 38:15
**keep** [3] - 20:4, 22:1, 35:3
**Kell** [1] - 38:15
**kilowatt** [1] - 27:14
**kinds** [1] - 6:18
**Kings** [1] - 33:2
**knowing** [2] - 10:7, 45:21
**knowledge** [2] - 17:25, 48:10
**known** [2] - 30:22, 39:2
**knows** [1] - 40:9
**Kudinov** [1] - 38:14
**KUDINOV** [1] - 38:14

**L**

**L.L.C** [1] - 1:7
**Labor** [2] - 21:25, 44:19
**lacked** [1] - 48:4
**Lamano** [1] - 19:7
**language** [8] - 15:3, 15:5, 15:6, 15:10, 15:11, 15:13, 25:7, 26:18
**large** [4] - 12:3, 13:13, 16:11, 40:19
**larger** [1] - 16:9, 39:22
**last** [5] - 4:8, 4:24, 26:10, 32:24, 46:7
**late** [2] - 10:5, 36:24
**Law** [6] - 21:25, 24:22, 32:2, 44:6, 44:19, 47:1
**law** [7] - 4:15, 4:22, 8:9, 32:10, 37:25, 42:3, 49:10
**lawsuit** [3] - 42:14, 43:14, 51:9
**lawyer** [1] - 45:20
**lawyers** [1] - 20:3
**lead** [1] - 32:7
**leading** [2] - 6:19, 32:16
**Leasing** [1] - 38:25
**least** [8] - 25:5, 28:3, 31:24, 48:24, 49:2, 50:8, 50:14, 51:7
**leave** [2] - 13:21, 17:18
**left** [3] - 9:21, 14:3, 14:8
**legal** [3] - 30:9, 30:16, 41:9
**legion** [2] - 5:22, 8:6
**legislative** [2] - 8:10, 8:11
**less** [3] - 24:8, 24:11, 45:20
**letter** [1] - 8:14
**liability** [3] - 9:6, 14:25, 55:24
**liberal** [2] - 8:8, 8:12
**liberally** [1] - 38:21
**Liberty** [56] - 5:10, 5:12, 5:15, 5:18, 6:5, 6:10, 6:11, 7:10, 7:14, 8:2, 9:13, 9:17, 9:18, 10:21, 11:11, 11:13, 12:12, 12:15, 13:10, 13:17, 13:21, 13:24, 14:2, 14:23, 15:14, 15:15, 17:2, 17:13, 17:14, 17:15,
17:16, 20:18, 20:19, 20:22, 22:12, 24:21, 25:20, 27:4, 27:7, 29:4, 29:22, 29:24, 30:19, 30:22, 33:14, 33:19, 34:5, 35:21, 40:7, 40:9, 40:16, 49:12, 52:9, 53:23, 53:24
**LIBERTY** [3] - 1:7, 1:7, 1:8
**Liberty's** [7] - 6:2, 7:3, 8:13, 8:25, 40:21, 46:11, 46:14
**Life** [1] - 39:12
**light** [2] - 8:8, 43:23
**likely** [4] - 45:12, 49:22, 55:2, 55:9
**limitations** [1] - 14:16
**limited** [1] - 40:20
**lines** [1] - 29:19
**list** [3] - 53:15, 53:17, 53:24
**litigated** [5] - 19:3, 20:7, 43:9, 43:15, 44:5
**litigation** [10] - 14:20, 18:7, 19:23, 32:18, 33:10, 36:22, 45:5, 45:9, 45:24, 46:1
**live** [1] - 15:24
**LLC** [5] - 1:4, 1:8, 24:20, 44:5
**LLP** [2] - 1:21, 4:16
**located** [1] - 4:3
**look** [8] - 11:5, 21:23, 24:2, 27:1, 29:15, 30:11, 30:14, 32:8
**looking** [2] - 19:13, 37:13
**loss** [1] - 38:17
**lost** [1] - 21:7
**Lowe's** [2] - 12:5, 16:11
**lower** [9] - 11:14, 11:21, 13:2, 15:7, 18:19, 33:23, 35:12, 48:23, 48:25
**lowest** [1] - 12:16
**LP** [2] - 47:2, 56:2

**M**

**M-E-L-L-O-T-T** [1] - 4:23
**Maddock** [1] - 36:18
**mail** [1] - 52:1
**main** [4] - 8:25, 11:24, 20:21, 43:5
**majority** [1] - 18:2

**manage** [1] - 46:9
**management** [5] - 13:8, 21:21, 22:18, 45:13, 46:8
**manner** [8] - 7:11, 7:14, 9:12, 16:21, 24:4, 24:5, 35:22, 36:13
**March** [1] - 37:15
**margin** [5] - 9:25, 20:21, 21:2, 48:1, 48:12
**marked** [1] - 29:23
**market** [32] - 5:13, 5:16, 5:20, 6:6, 6:11, 9:18, 9:24, 10:1, 11:14, 14:22, 15:11, 23:16, 25:2, 25:13, 25:21, 27:10, 27:19, 27:25, 28:15, 29:3, 29:11, 29:25, 36:3, 40:8, 40:10, 40:12, 40:20, 40:23, 41:14, 41:24, 41:25, 43:11
**markup** [1] - 40:21
**matter** [5] - 29:14, 35:6, 35:14, 54:12, 54:18
**matters** [2] - 9:11, 9:15
**maximum** [1] - 17:6
**ME** [1] - 56:17
**mean** [2] - 21:15, 28:18
**meaning** [1] - 14:21
**mechanical** [1] - 39:3
**mechanism** [2] - 35:15, 55:23
**medium** [2] - 13:13, 16:9
**meet** [1] - 30:5
**MELLOTT** [1] - 2:2
**Mellott** [1] - 4:23
**member** [5] - 15:2, 15:17, 28:4, 35:11, 35:14, 36:7
**members** [36] - 5:11, 6:5, 6:13, 8:16, 9:4, 9:12, 9:20, 12:18, 14:12, 18:8, 22:13, 30:8, 37:20, 37:23, 38:2, 39:5, 40:2, 40:5, 41:8, 41:13, 41:19, 42:1, 42:11, 42:25, 43:5, 44:13, 44:25, 45:7, 45:25, 46:13, 47:11, 48:15, 50:6, 50:12, 53:16, 53:24
**memoire** [1] - 40:6

13:12, 14:4, 15:17, 40:16, 52:7
**inclusive** [1] - 12:2
**inconsistent** [3] - 7:11, 7:15, 35:22
**incorrect** [4] - 7:23, 25:3, 25:4, 25:14
**increase** [1] - 55:22
**incurred** [1] - 45:12
**indeed** [1] - 43:21
**INDEX** [1] - 1:5
**Index** [1] - 37:14
**individual** [18] - 7:2, 14:24, 15:1, 15:16, 15:22, 15:23, 16:3, 16:5, 19:23, 21:24, 33:1, 36:7, 36:9, 36:16, 38:2, 43:24, 43:25
**individual's** [1] - 15:23
**individualized** [1] - 55:22
**individually** [1] - 45:1
**individuals** [1] - 36:15
**industrial** [2] - 13:14, 17:23
**industry** [2] - 17:2, 18:2
**inefficiency** [1] - 45:3
**inefficient** [1] - 45:16
**inference** [1] - 11:15
**information** [6] - 4:13, 46:12, 51:10, 51:12, 53:19, 54:19
**inhouse** [2] - 11:25, 17:8
**inspired** [1] - 20:14
**instance** [2] - 30:13, 50:14
**Insurance** [2] - 39:12, 39:15
**intention** [1] - 29:8
**intents** [1] - 39:17
**interest** [6] - 18:8, 42:10, 42:25, 43:4, 43:13, 44:25
**interested** [1] - 20:10
**interests** [1] - 38:7
**interim** [1] - 54:25
**interpretation** [1] - 15:8
**interpreted** [1] - 14:21
**introduction** [3] - 29:15, 30:1, 40:6
**Investigation** [1] - 37:5
**investigation** [1] - 19:8
**invite** [1] - 10:22

FILED: NEW YORK COUNTY CLERK 09/25/2020 12:12 PM INDEX NO. 151293/2013
NYSCEF DOC. NO. 379   Case 21-13797-SMG   Doc 948-2   Filed 06/30/23   Page 66 of 69   RECEIVED NYSCEF: 09/25/2020

7

memorandum [3] - 29:16, 41:2, 41:3
memorialize [1] - 53:3
mentioned [3] - 8:4, 31:24, 40:25
merit [2] - 44:20, 49:2
merits [1] - 24:13
met [13] - 5:25, 6:4, 6:8, 6:14, 6:25, 7:1, 10:17, 39:4, 39:23, 41:23, 42:6, 43:18, 45:14
method [8] - 12:24, 16:17, 17:4, 20:19, 23:25, 43:21, 43:23, 48:21
methodologies [2] - 9:23, 10:2
methodology [1] - 10:13
methods [1] - 38:10
Metropolitan [1] - 39:12
might [5] - 17:24, 22:10, 25:8, 30:25
Mike [1] - 3:7
militate [1] - 32:21
militates [1] - 33:10
million [1] - 30:11
mindful [1] - 38:20
minute [1] - 29:18
minutes [1] - 54:22
misdeeds [1] - 9:6
misleading [2] - 12:8, 15:10
misread [1] - 32:14
misrepresentations [1] - 5:23
Miss [7] - 4:12, 35:4, 35:8, 35:10, 35:19, 35:24, 36:6
Missry [1] - 6:22
misstates [1] - 35:20
mitigate [1] - 15:17
models [1] - 16:25
modified [1] - 49:4
moment [1] - 37:7
MONICA [2] - 2:22, 56:19
month [2] - 13:18, 16:5
months [7] - 10:5, 14:8, 22:6, 22:10, 22:11, 36:25, 55:8
morning [2] - 3:11, 5:1
most [7] - 12:6, 13:16, 14:1, 14:7, 28:10, 43:25, 49:22
motion [15] - 5:2, 5:5, 5:15, 8:1, 11:1, 13:4,

18:10, 22:2, 26:11, 28:19, 29:16, 46:18, 47:20, 54:2, 55:1
motions [2] - 11:17, 18:9
movant [1] - 32:1
move [11] - 14:22, 23:13, 30:3, 31:22, 32:24, 41:4, 46:19, 47:8, 52:23, 53:15, 54:11
moving [3] - 10:5, 31:20, 44:21
MR [28] - 3:1, 3:7, 3:15, 3:25, 4:7, 4:19, 5:6, 5:8, 25:23, 27:22, 28:21, 31:5, 35:1, 37:8, 37:11, 49:8, 49:16, 49:21, 50:21, 50:24, 51:22, 52:15, 53:8, 54:3, 54:8, 55:17, 56:11, 56:14
MS [35] - 3:11, 3:19, 4:14, 10:25, 21:5, 21:8, 21:11, 21:19, 23:1, 23:20, 25:4, 25:24, 26:1, 26:4, 26:11, 26:14, 26:21, 27:2, 27:6, 27:10, 27:16, 28:6, 28:17, 30:18, 31:19, 32:8, 32:19, 33:5, 34:5, 34:14, 34:24, 51:1, 51:23, 54:23, 55:14
muddying [1] - 29:6
multiple [4] - 6:16, 6:17, 23:24, 51:7
must [7] - 26:7, 38:20, 39:5, 40:22, 44:23, 48:22

N

name [5] - 3:23, 3:24, 4:9, 4:24, 53:10
named [5] - 14:10, 18:7, 18:14, 20:13, 33:8, 41:12
nature [3] - 22:14, 45:5, 45:24
Nawrocki [1] - 44:14
NAWROCKI [1] - 44:14
necessarily [1] - 20:15
need [4] - 28:22, 33:24, 34:20, 55:22
needed [1] - 19:6
needs [1] - 39:10
negotiate [2] - 18:3,

28:11
negotiated [5] - 12:4, 16:10, 16:12, 17:24, 40:20
NEIDL [37] - 1:23, 3:11, 3:19, 4:14, 4:15, 10:25, 21:5, 21:8, 21:11, 21:19, 23:1, 23:20, 25:4, 25:24, 26:1, 26:4, 26:11, 26:14, 26:21, 27:2, 27:6, 27:10, 27:16, 28:6, 28:17, 30:18, 31:19, 32:8, 32:19, 33:5, 34:5, 34:14, 34:24, 51:1, 51:23, 54:23, 55:14
Neidl [8] - 3:12, 3:19, 4:12, 4:15, 35:10, 35:19, 35:24, 36:6
Neidl's [2] - 35:4, 35:8
never [5] - 14:17, 14:19, 17:12, 31:6, 51:10
new [2] - 8:7, 13:20
NEW [3] - 1:2, 1:2, 1:7
New [19] - 1:11, 1:19, 1:23, 4:4, 4:17, 7:6, 8:9, 13:10, 23:2, 32:3, 33:3, 33:13, 34:1, 34:3, 34:10, 37:14, 39:13, 40:15
next [5] - 34:21, 41:4, 42:7, 43:19, 54:22
night [1] - 26:10
ninth [1] - 33:1
non [1] - 33:9
none [5] - 8:13, 11:24, 12:18, 19:21, 34:7
nonexistent [1] - 13:8
normal [1] - 20:11
normally [2] - 36:22, 55:4
North [6] - 1:18, 4:3, 31:25, 44:5, 46:22, 46:25
Northern [1] - 38:25
notably [1] - 10:12
Note [1] - 40:18
noted [1] - 51:6
notes [1] - 21:6, 55:20
nothing [7] - 8:18, 11:4, 14:11, 34:24, 42:1, 55:17
notice [1] - 10:20, 46:17, 49:13, 50:3, 50:5, 50:7, 50:15, 53:25
noticeable [1] - 11:10
noticed [1] - 42:21

Number [2] - 26:5, 37:14
NUMBER [1] - 1:5
number [10] - 13:14, 15:25, 22:23, 23:4, 33:23, 37:13, 39:5, 40:19, 49:20, 50:17
numerosity [7] - 6:1, 22:24, 22:25, 39:2, 39:4, 39:18, 39:24
numerous [1] - 37:22
NYSCEF [1] - 37:14

O

object [1] - 51:23
obtain [2] - 46:16, 46:17
obviate [1] - 55:23
obvious [1] - 42:21
obviously [4] - 20:10, 20:14, 22:22, 54:24
OF [4] - 1:2, 1:2, 56:17
offering [1] - 11:20
official [1] - 24:19
old [1] - 55:8
once [2] - 21:9, 35:19
one [28] - 5:24, 9:24, 13:3, 13:17, 21:20, 24:25, 26:7, 28:11, 31:4, 31:5, 31:16, 31:19, 33:4, 34:2, 34:13, 36:4, 36:11, 36:12, 37:7, 37:13, 37:20, 37:22, 42:10, 44:25, 51:7, 52:25, 55:18, 55:19
One [2] - 1:18, 4:3
onerous [1] - 8:16
operating [1] - 51:7
opined [1] - 46:4
opinion [2] - 11:21, 16:24
oppose [1] - 51:2
opposed [1] - 33:17
opposition [5] - 10:9, 10:24, 26:4, 39:20, 50:25
oral [5] - 10:6, 24:14, 41:3, 55:2, 55:9
order [13] - 46:12, 46:16, 47:13, 49:12, 52:1, 53:1, 53:3, 53:12, 53:14, 54:10, 55:12, 56:10
ordering [2] - 53:23, 53:24
orders [1] - 13:3
original [1] - 10:9
originally [1] - 18:18

otherwise [1] - 37:23
ourself [1] - 32:21
ourselves [1] - 54:9
outlined [1] - 54:15
outwardly [1] - 35:4
overcharge [2] - 19:11, 36:14
overcharged [4] - 19:9, 19:11, 19:13, 48:11
overly [1] - 23:6
own [4] - 21:1, 55:4, 55:5, 55:12

P

Page [15] - 7:9, 26:1, 26:5, 26:15, 26:19, 29:15, 39:1, 39:8, 39:13, 39:16, 40:6, 40:13, 42:19, 43:3, 44:2
page [5] - 26:2, 26:5, 27:3, 29:17, 36:23
pages [1] - 26:7
paid [3] - 18:20, 19:5, 22:11
pandemic [1] - 37:2
Panzer [1] - 43:2
PANZER [1] - 43:2
papers [9] - 7:9, 7:23, 10:19, 19:25, 21:18, 31:4, 35:19, 37:6, 51:6
paragraph [4] - 20:1, 29:18, 29:19, 29:20
PART [1] - 1:2
part [7] - 27:20, 27:23, 28:5, 28:21, 29:8, 34:15
particular [5] - 12:21, 16:17, 24:4, 38:17, 45:10
particularly [1] - 8:8
parties [7] - 36:23, 38:4, 47:22, 49:6, 52:6, 53:13, 54:14
parts [3] - 44:10, 44:21, 54:1
party [3] - 37:21, 38:6, 52:2
pass [1] - 10:23
past [1] - 17:10
pay [4] - 50:20, 51:4, 52:8, 53:25
payment [2] - 8:21, 19:12, 48:14
Payment [2] - 19:1, 48:7
payments [1] - 48:9

**PEARSON** [1] - 1:17
**Pearson** [2] - 3:2, 4:2
**Pennsylvania** [3] - 2:3, 4:25, 47:3
**Penny** [2] - 12:5, 16:12
**people** [7] - 9:9, 9:14, 9:15, 27:24, 33:13, 33:21, 35:16
**per** [2] - 27:14, 49:25
**percent** [1] - 33:16
**percentage** [1] - 27:13
**performed** [1] - 10:14
**period** [3] - 16:6, 22:9, 23:24
**permitted** [1] - 37:23
**person** [2] - 36:11, 36:12
**personal** [1] - 42:12
**perspective** [1] - 39:5
**Pesantez** [1] - 44:1
**PESANTEZ** [1] - 44:1
**phone** [3] - 3:21, 34:22, 52:20
**picked** [1] - 35:17
**picks** [1] - 12:16
**place** [2] - 33:4, 34:2
**plainly** [1] - 5:25
**Plains** [2] - 1:19, 4:4
**plaintiff** [31] - 3:6, 5:3, 10:8, 11:23, 11:24, 12:7, 13:9, 14:9, 16:8, 18:7, 18:14, 19:5, 20:13, 20:22, 22:22, 23:10, 23:14, 31:20, 31:23, 37:3, 39:23, 40:4, 43:12, 43:17, 43:18, 47:10, 47:19, 48:4, 52:10, 53:21, 55:17
**Plaintiff** [1] - 1:5
**plaintiff's** [17] - 10:7, 11:1, 13:1, 17:3, 20:1, 23:7, 25:17, 29:9, 30:6, 32:10, 33:18, 33:23, 41:6, 41:14, 44:20, 49:7, 53:22
**Plaintiffs** [1] - 1:18
**plaintiffs** [52] - 3:3, 4:10, 5:10, 6:9, 6:14, 6:23, 7:10, 7:18, 9:22, 10:11, 11:4, 11:10, 11:16, 11:17, 11:24, 13:4, 13:14, 14:9, 14:10, 15:18, 15:20, 16:1, 16:25, 17:6, 17:7, 19:21, 19:25, 20:6, 20:10, 20:14, 20:18, 21:22,

23:10, 30:20, 33:8, 33:9, 35:10, 35:23, 38:12, 41:12, 42:6, 43:5, 43:6, 43:9, 45:14, 47:15, 48:9, 51:3, 51:4, 51:12, 51:22, 52:7
**plan** [3] - 23:3, 28:14, 40:14
**Plan** [2] - 27:4, 29:4
**plans** [1] - 40:25
**playbook** [1] - 8:14
**Pludeman** [2] - 38:24, 41:10
**PLUDEMAN** [2] - 38:25, 41:10
**plus** [2] - 9:25, 50:1
**point** [8] - 7:23, 9:21, 24:25, 26:1, 31:3, 35:15, 40:15, 55:18
**poor** [1] - 9:7
**possessed** [1] - 43:6
**possible** [6] - 23:18, 23:23, 33:21, 53:11, 54:11, 54:13
**post** [1] - 52:17
**postcard** [7] - 49:22, 49:23, 49:24, 49:25, 50:5, 50:11, 50:15
**potential** [1] - 43:24
**potentially** [1] - 52:18
**potluck** [1] - 10:2
**Power** [41] - 5:10, 6:10, 7:10, 7:11, 7:14, 8:2, 9:13, 9:17, 9:18, 10:21, 11:12, 12:12, 12:15, 13:10, 13:17, 13:21, 13:24, 14:2, 15:14, 15:15, 17:2, 17:13, 17:14, 17:15, 17:16, 20:18, 20:22, 22:12, 24:21, 27:4, 29:4, 30:19, 30:23, 31:25, 33:14, 34:5, 35:21, 44:5, 46:22, 46:25, 49:12
**POWER** [3] - 1:7, 1:7, 1:8
**Power's** [4] - 5:12, 11:13, 14:23, 20:19
**Powers** [1] - 27:7
**practice** [4] - 30:7, 41:6, 41:22, 42:4
**precedence** [1] - 43:1
**preclude** [1] - 36:17
**predominant** [2] - 40:1, 55:24
**predominates** [1] - 38:1
**prefer** [3] - 33:20,

33:24, 52:6
**prejudice** [1] - 52:2
**prepared** [2] - 52:20, 54:11
**preparing** [1] - 53:12
**prerequisites** [3] - 11:3, 13:7, 44:22
**present** [5] - 5:9, 13:11, 20:17, 23:3, 23:22, 34:13, 40:16
**presupposes** [1] - 33:5
**price** [3] - 9:25, 25:9, 25:21
**prices** [3] - 5:16, 29:25, 40:10
**pricing** [18] - 5:13, 5:16, 9:18, 15:12, 23:16, 25:2, 25:13, 28:1, 28:15, 29:3, 29:11, 29:23, 40:8, 40:12, 40:23, 41:14, 41:25, 43:11
**primarily** [1] - 11:17
**problem** [1] - 51:21
**problems** [1] - 32:13
**procedures** [1] - 34:8
**proceed** [2] - 5:4, 5:7
**proceeding** [1] - 45:21
**PROCEEDING** [1] - 56:17
**proceedings** [2] - 33:25, 34:15
**production** [1] - 52:22
**program** [1] - 22:7
**prong** [1] - 22:25
**Properties** [1] - 42:19
**propose** [1] - 51:11
**proposed** [3] - 12:3, 53:12, 53:14
**proposition** [1] - 31:14
**prosecute** [2] - 42:18, 43:16
**prosecuted** [2] - 45:19, 45:22
**prosecuting** [3] - 6:19, 45:4, 45:16
**prosecution** [1] - 45:1
**protect** [1] - 38:7
**Proto** [1] - 44:14
**PROTO** [1] - 44:14
**provide** [4] - 23:16, 46:14, 46:17, 53:23
**provided** [3] - 48:1, 53:16, 53:17
**provider** [1] - 17:13
**provides** [2] - 26:25, 37:19
**providing** [2] - 38:13,

50:15
**provision** [7] - 26:17, 28:9, 29:21, 29:23, 40:7, 40:9, 40:14
**provisions** [1] - 11:7
**Pruitt** [1] - 42:18
**PRUITT** [1] - 42:18
**PSE** [1] - 34:15
**pulled** [1] - 31:15
**punitive** [6] - 11:16, 12:18, 14:11, 16:7, 27:8, 30:21
**purpose** [1] - 46:13
**purposes** [3] - 22:1, 39:17, 49:23
**pursuant** [5] - 8:9, 48:20, 48:21, 51:20, 52:3
**pursued** [1] - 6:15
**pursuing** [1] - 6:23
**put** [1] - 19:25
**putting** [1] - 10:5

## Q

**qualified** [1] - 38:17
**questions** [8] - 10:22, 18:12, 21:9, 22:19, 22:23, 24:14, 25:10, 37:25
**quick** [1] - 33:16
**quicker** [1] - 34:9
**quite** [3] - 30:25, 32:15, 46:15
**quoting** [1] - 56:1

## R

**raise** [3] - 8:17, 8:20, 9:10
**raised** [4] - 10:9, 19:17, 19:18, 19:19
**raises** [1] - 22:14
**rate** [90] - 5:12, 5:19, 6:7, 6:11, 6:12, 7:11, 7:14, 9:17, 11:12, 11:14, 11:15, 12:5, 12:12, 12:16, 12:17, 12:19, 12:20, 12:24, 13:1, 13:11, 13:18, 13:19, 13:22, 13:23, 14:1, 14:3, 14:5, 14:21, 14:22, 14:23, 15:2, 16:12, 16:14, 16:17, 17:1, 17:5, 17:18, 17:21, 17:22, 17:24, 17:25, 18:19, 22:4, 22:5, 22:6, 22:8, 23:3, 24:1, 25:8, 25:22, 26:17,

27:11, 27:14, 27:19, 28:1, 28:8, 28:9, 28:12, 28:14, 29:1, 29:2, 29:11, 29:22, 35:12, 35:22, 35:23, 35:24, 36:2, 36:3, 36:4, 36:9, 36:13, 40:7, 40:14, 40:17, 40:19, 40:22, 41:1, 41:25, 43:11, 47:17, 47:23, 48:2, 48:22, 49:22, 49:24
**rates** [15] - 5:19, 11:21, 12:10, 14:5, 15:6, 15:23, 16:13, 17:15, 20:20, 23:25, 29:24, 35:7, 36:7, 40:9, 48:21
**rather** [4] - 37:23, 45:20, 46:5, 48:16
**ratification** [1] - 15:17
**reached** [1] - 17:15
**read** [8] - 16:18, 21:18, 26:8, 29:10, 29:17, 29:20, 31:15, 40:5
**reading** [1] - 8:8
**really** [1] - 39:21
**reapportionment** [2] - 51:20, 52:3
**reason** [1] - 48:17
**reasonable** [2] - 9:25, 23:8
**reasons** [3] - 14:4, 14:7, 32:20
**received** [1] - 7:18
**recognized** [2] - 8:11, 43:22
**record** [14] - 14:7, 16:7, 18:1, 29:6, 30:18, 34:19, 48:8, 53:4, 56:3, 56:5, 56:6
**RECORDED** [1] - 56:17
**recordkeeping** [1] - 9:7
**records** [2] - 22:1, 22:7
**recouping** [1] - 20:11
**recovery** [1] - 43:24
**redress** [1] - 55:13
**reduce** [1] - 33:24
**reenroll** [2] - 13:20, 14:1
**reenrolled** [1] - 14:2
**referenced** [1] - 35:24
**reflects** [1] - 30:18
**regard** [5] - 39:23, 39:25, 46:21, 48:7,

55:21
**regarding** [1] - 29:7
**reject** [1] - 48:17
**rejected** [1] - 44:17
**rejects** [2] - 41:17,
48:3
**related** [1] - 17:10
**relates** [1] - 8:1
**relating** [1] - 51:10
**relevant** [1] - 15:3
**relied** [3] - 11:23,
12:7, 13:4
**relief** [2] - 54:1, 54:2
**rely** [2] - 11:18, 24:3
**remain** [1] - 35:16
**remaining** [1] - 41:7
**remedy** [2] - 44:12,
44:19
**Rental** [1] - 12:6
**rep** [1] - 38:18
**reply** [6] - 7:23, 10:5,
22:23, 34:20, 34:25,
37:6
**report** [1] - 36:1
**REPORTER** [2] - 2:22,
56:19
**reporter's** [1] - 53:10
**represent** [1] - 5:12
**representation** [4] -
19:24, 42:7, 42:8,
43:18
**representations** [2] -
13:23, 36:3
**representative** [10] -
14:21, 32:22, 35:17,
37:21, 38:3, 38:6,
42:11, 42:22, 43:12,
53:22
**representative's** [2] -
42:12, 42:14
**representatives** [1] -
43:13
**represented** [3] - 6:10,
32:1, 32:5
**representing** [1] -
4:10
**request** [4] - 51:2,
51:5, 52:25, 55:6
**require** [1] - 15:22
**required** [7] - 9:17,
14:25, 22:1, 37:23,
43:6, 46:17, 49:12
**requirement** [1] - 41:9
**requirements** [1] -
5:24
**requires** [2] - 30:6,
39:25
**res** [1] - 48:12

resemblance [1] -
29:25
**residential** [5] - 13:12,
17:20, 30:12, 31:9,
31:21
**resolved** [1] - 43:25
**resolving** [1] - 43:21
**Resource** [1] - 40:2
**resources** [3] - 42:17,
43:16, 49:10
**respect** [9] - 15:23,
16:5, 20:15, 32:21,
41:5, 42:6, 42:8,
48:19, 55:6
**responded** [1] - 6:16
**response** [3] - 10:4,
20:6, 27:19
**rest** [2] - 15:20, 17:20
**restaurant** [2] - 51:8,
51:10
**restaurants** [1] - 51:7
**retained** [1] - 6:17
**reviewed** [2] - 37:17,
46:2
**rights** [1] - 45:21
**rise** [5] - 30:8, 30:15,
41:7, 42:5, 47:18
**Rob** [2] - 3:15, 4:19
**ROBERT** [1] - 2:4
**Rockefeller** [1] - 42:19
**roll** [1] - 13:22
**rollover** [2] - 22:5,
22:10
**room** [1] - 3:3
**round** [2] - 33:22,
49:19
**rounds** [1] - 6:17
**rule** [2] - 39:4, 51:11
**ruled** [1] - 49:1
**ruling** [1] - 54:24
**run** [1] - 14:16
**Ryder** [1] - 12:6

# S

**safe** [1] - 56:9
**sat** [1] - 6:16
**satisfied** [2] - 41:10,
44:22
**satisfy** [2] - 28:16,
33:23
**saw** [3] - 14:19, 15:13,
17:12
**scammed** [1] - 9:2
**scheduled** [1] - 10:6
**SEAMAN** [1] - 4:22
**Seaman** [1] - 3:15
**Seamans** [1] - 4:21
**SEAMANS** [1] - 2:2
**seasoned** [1] - 45:19

**second** [5] - 17:16,
21:7, 23:13, 37:14,
45:15
**Second** [2] - 39:8,
39:16
**Section** [1] - 52:4
**secure** [1] - 43:20
**securities** [1] - 31:11
**Security** [1] - 37:5
**see** [6] - 14:20, 27:3,
27:5, 31:4, 31:16,
53:5
**seek** [2] - 54:15, 55:13
**seeking** [2] - 20:7,
54:2
**Seko** [1] - 43:7
**SENIOR** [2] - 2:22,
56:19
**sense** [2] - 44:9, 45:18
**sent** [1] - 50:12
**separate** [3] - 45:2,
45:4, 45:16
**serious** [1] - 16:1
**service** [2] - 32:5,
32:17
**Services** [1] - 44:2
**services** [1] - 27:14
**set** [9] - 9:22, 10:18,
27:15, 39:4, 44:23,
47:17, 49:9, 50:2,
54:5
**settlement** [8] - 7:19,
8:1, 13:5, 20:9,
42:24, 50:4, 50:5,
50:11
**settlements** [1] -
45:23
**seven** [6] - 6:15, 6:24,
19:5, 19:21, 19:22,
20:1, 46:3
**several** [3] - 24:16,
32:4, 46:2
**sham** [1] - 38:24
**share** [1] - 53:13
**Shield** [1] - 51:17
**SHLOMO** [1] - 1:14
**show** [5] - 10:13, 22:7,
22:8, 22:9, 31:2
**shown** [2] - 12:23,
41:5
**shows** [2] - 11:4, 33:7
**sides** [1] - 49:10
**signed** [4] - 9:12,
9:14, 9:15, 18:18
**significant** [1] - 45:23
**SILVERMAN** [3] -
1:20, 4:7, 4:9
**Silverman** [7] - 3:4,
4:6, 4:8, 4:9, 37:8,
37:9, 37:11

**Silvis** [1] - 47:2
**similar** [6] - 6:8, 6:21,
16:15, 30:10, 35:19,
50:5
**similarly** [6] - 6:8,
6:14, 6:22, 7:1, 7:17,
8:4
**simple** [5] - 23:14,
23:18, 23:20, 23:22,
28:2
**simply** [4] - 7:23, 13:8,
35:3, 35:23
**Sinclair** [1] - 9:23
**single** [2] - 11:11, 28:4
**situated** [1] - 20:16
**situation** [2] - 20:11,
25:16
**size** [1] - 50:8
**skin** [1] - 52:7
**skip** [1] - 21:12
**slammed** [1] - 14:15
**slippery** [1] - 9:5
**slope** [1] - 9:5
**small** [3] - 13:13,
40:19, 43:24
**sold** [3] - 5:10, 17:21,
17:24
**Solomonic** [1] - 52:5
**someone** [2] - 22:4,
33:14
**somewhere** [1] - 23:5
**soon** [3] - 53:10,
53:11, 54:13
**sophisticated** [8] -
11:25, 12:5, 17:8,
19:10, 30:25, 31:9,
31:20, 51:6
**sorry** [4] - 3:4, 14:9,
26:15, 37:10
**sort** [2] - 15:6, 18:19
**sought** [1] - 33:17
**sound** [1] - 38:18
**Southern** [7] - 7:6,
32:2, 33:12, 34:10,
39:13, 44:6, 44:7
**speaking** [1] - 3:5
**special** [2] - 8:18, 8:19
**specialized** [1] - 18:3
**specific** [1] - 12:22
**spell** [1] - 3:23
**spelt** [2] - 4:22, 4:24
**spend** [1] - 26:8
**spoken** [1] - 48:6
**spread** [1] - 46:6
**stage** [3] - 7:19, 8:1,
52:6
**Stake** [1] - 24:20
**standard** [6] - 30:9,
41:21, 44:21, 48:23,
48:25

**standards** [3] - 10:3,
10:17, 37:17
**standing** [4] - 8:20,
19:14, 19:15, 48:5
**stands** [1] - 31:14
**start** [3] - 3:22, 9:5,
53:12
**starting** [1] - 36:24
**STATE** [1] - 1:2
**state** [3] - 4:5, 7:21,
44:10
**State** [3] - 1:22, 4:17,
40:15
**states** [2] - 44:12, 46:6
**static** [3] - 20:24,
20:25, 21:2
**stating** [3] - 7:9, 29:1,
33:19
**statute** [2] - 14:16,
38:21
**statutes** [1] - 8:10
**stay** [8] - 15:13, 54:25,
55:3, 55:4, 55:6,
55:9, 55:10, 55:11
**stayed** [3] - 14:3, 14:7
**stays** [1] - 55:2
**STEAK** [1] - 1:4
**stick** [1] - 42:3
**still** [5] - 17:14, 19:15,
21:2, 21:8, 51:8
**stopped** [1] - 20:18
**Store** [1] - 12:6
**store** [1] - 22:3
**straightforward** [1] -
15:11
**Street** [3] - 1:22, 4:17,
56:1
**strike** [1] - 10:5
**stuff** [1] - 53:17
**subject** [10] - 13:10,
14:18, 15:2, 15:18,
16:8, 17:17, 18:15,
28:4, 28:9, 41:13
**subjected** [1] - 9:16
**subjective** [1] - 11:20
**submit** [4] - 50:12,
53:3, 53:14, 56:10
**sue** [1] - 37:20
**sued** [1] - 37:20
**sufficient** [5] - 5:14,
23:19, 30:5, 43:17,
44:10
**suggest** [1] - 55:11
**summary** [3] - 5:15,
18:10, 24:15
**summing** [1] - 23:17
**superficial** [1] - 23:21
**superior** [4] - 33:11,
34:11, 38:9, 44:8
**superiority** [2] - 32:24,

43:19
**supply** [1] - 10:1
**Supply** [1] - 39:15
**support** [4] - 8:24, 11:15, 11:17, 29:16
**SUPREME** [1] - 1:2
**sur** [1] - 10:5
**surface** [1] - 38:23
**Surgical** [1] - 39:15
**surprisingly** [1] - 10:15
**switched** [1] - 14:8
**Syracuse** [2] - 33:2, 34:1
**Systems** [1] - 38:25

## T

**Tech** [1] - 38:15
**TECH** [1] - 38:15
**Teleconference** [1] - 1:10
**telemarketing** [1] - 9:14
**tens** [3] - 6:1, 7:2, 13:12
**term** [10] - 13:17, 13:22, 14:21, 15:3, 15:14, 17:22, 18:1, 22:5, 27:7, 48:2
**TERM** [1] - 1:2
**terminate** [1] - 17:18
**terms** [7] - 11:13, 16:16, 18:18, 23:15, 47:16, 47:23, 47:25
**test** [1] - 39:3
**testified** [2] - 14:17, 20:4
**testimony** [3] - 11:19, 12:23, 20:2
**THE** [63] - 1:2, 3:5, 3:9, 3:14, 3:17, 3:20, 4:5, 4:11, 4:18, 5:1, 5:7, 10:24, 21:4, 21:7, 21:9, 21:17, 22:20, 23:11, 24:12, 25:10, 25:25, 26:3, 26:6, 26:12, 26:19, 26:22, 27:5, 27:9, 27:12, 27:17, 27:23, 28:13, 28:20, 29:10, 31:2, 31:14, 31:22, 32:11, 32:23, 33:19, 34:11, 34:18, 34:25, 36:21, 37:10, 37:13, 49:14, 49:19, 50:19, 50:22, 50:25, 51:15, 51:25, 52:24, 53:20, 54:5, 54:20, 55:1, 55:16, 55:18, 56:12,
56:16, 56:17
**themselves** [3] - 41:19, 42:1, 51:4
**theory** [4] - 16:2, 30:9, 30:16, 41:9
**therefore** [6] - 36:14, 39:22, 41:14, 42:5, 43:17, 49:3
**therefrom** [1] - 30:2
**third** [1] - 33:17
**thousands** [5] - 6:2, 7:3, 9:9, 13:12
**threaten** [1] - 18:6
**three** [10] - 13:17, 22:6, 22:10, 22:11, 25:6, 38:3, 45:5, 48:24, 49:25, 55:8
**threshold** [1] - 39:9
**throughout** [2] - 22:9, 46:6
**throwing** [1] - 29:6
**tied** [1] - 40:11
**TO** [1] - 56:16
**today** [4] - 39:20, 49:4, 52:14, 53:4
**Todd** [2] - 3:1, 4:1
**TODD** [2] - 1:19, 4:1
**together** [2] - 32:17, 33:4
**tomorrow** [1] - 52:21
**tons** [2] - 9:8
**took** [2] - 22:12, 31:16
**totally** [1] - 24:9
**towards** [1] - 13:19
**TRANSCRIPT** [1] - 56:16
**transcript** [3] - 53:10, 53:11, 56:10
**TRAURIG** [2] - 1:21, 4:16
**Traurig** [2] - 3:12, 4:16
**treat** [2] - 30:24, 30:25
**Tree** [1] - 12:6
**triable** [1] - 49:2
**trial** [10] - 13:7, 15:15, 15:22, 19:3, 20:4, 20:9, 32:17, 38:19, 51:19, 52:3
**trials** [1] - 14:25
**tried** [2] - 5:20, 31:6
**Truck** [1] - 12:6
**true** [1] - 5:20
**TRUE** [1] - 56:16
**try** [3] - 21:24, 33:4, 53:9
**trying** [2] - 23:18, 29:6
**TURBODYNE** [1] - 43:2
**Turbodyne** [1] - 43:2
**tweak** [2] - 28:22,
29:13
**twenty** [1] - 49:25
**twenty-three** [1] - 49:25
**two** [12] - 7:17, 9:23, 9:25, 14:10, 23:9, 25:5, 33:8, 36:4, 37:25, 39:21, 45:3, 49:10
**Two** [1] - 40:18
**type** [1] - 15:6
**types** [3] - 25:5, 30:19, 45:19
**typical** [4] - 17:7, 31:9, 38:4, 41:15
**typicality** [6] - 6:8, 30:4, 30:5, 30:14, 30:17, 41:4, 41:5, 41:9, 41:23, 42:5, 42:6
**typically** [1] - 50:4

## U

**unable** [1] - 51:4
**unanimity** [1] - 40:1
**uncovered** [1] - 43:10
**under** [4] - 24:19, 31:10, 32:2, 46:17
**underlie** [1] - 15:19
**understood** [5] - 11:12, 19:8, 40:24, 54:4, 55:14
**undesirability** [1] - 45:8
**unfair** [1] - 52:8
**unfortunately** [1] - 37:1
**unheard** [1] - 17:2
**uniform** [3] - 5:23, 8:5, 9:16
**uniformed** [1] - 5:11
**unique** [5] - 8:15, 8:23, 19:20, 47:9, 48:15
**unlike** [4] - 7:9, 11:22, 13:24, 16:15
**unopposed** [1] - 13:4
**unsupported** [1] - 11:19
**up** [10] - 9:12, 9:14, 9:15, 12:16, 16:1, 17:4, 23:17, 29:6, 35:17, 50:2
**upwards** [1] - 6:15
**US** [2] - 44:8, 47:1
**usage** [2] - 15:24, 22:17
**uses** [1] - 12:14
**utility** [9] - 10:2,
12:20, 15:7, 16:14, 19:14, 36:1, 36:10, 48:21, 55:23

## V

**vague** [1] - 15:10
**Van** [1] - 39:7
**variable** [28] - 5:12, 5:19, 11:21, 12:4, 13:10, 13:22, 16:12, 17:22, 17:24, 17:25, 23:3, 25:22, 26:17, 28:8, 28:12, 28:14, 29:1, 29:2, 35:7, 40:14, 40:17, 40:19, 40:22, 41:1, 41:24, 43:11, 47:17, 47:23
**various** [4] - 11:2, 14:3, 14:7, 15:5
**venue** [1] - 33:4
**venues** [1] - 45:22
**Verizon** [1] - 12:6
**versed** [1] - 6:18
**versus** [4] - 15:20, 24:20, 30:12, 31:25
**via** [2] - 49:23, 50:15
**view** [1] - 8:12
**vigor** [1] - 42:15
**vigorously** [1] - 43:15
**violated** [1] - 47:15
**violation** [2] - 29:23, 40:8
**Volker** [1] - 51:16
**VOLKER** [1] - 51:16
**volume** [1] - 26:6
**Voluntary** [2] - 19:1, 48:7
**voluntary** [3] - 8:21, 19:12, 48:14

## W

**Wachtel** [3] - 6:21, 6:22, 32:10
**wait** [2] - 14:4, 48:22
**waiver** [1] - 15:17
**waiving** [1] - 21:15
**wants** [1] - 47:19
**warn** [1] - 25:8
**warned** [1] - 16:13
**warns** [1] - 15:6
**wash** [1] - 20:8
**Washington** [2] - 2:3, 4:25
**water** [1] - 8:14
**ways** [1] - 36:4
**website** [2] - 50:2, 50:16
**week** [1] - 52:22
**weight** [1] - 10:11
**welcome** [1] - 5:1
**West** [4] - 24:22, 32:2, 44:6, 47:1
**wherein** [1] - 47:5
**wherewithal** [1] - 51:14
**White** [2] - 1:19, 4:4
**whole** [1] - 46:18
**wholesale** [1] - 9:24
**win** [1] - 20:14
**wish** [3] - 50:20, 55:11, 56:9
**worth** [1] - 30:11
**write** [2] - 36:23, 53:2
**written** [2] - 37:3, 55:10

## Y

**year** [3] - 13:17, 33:15, 53:19
**years** [16] - 6:15, 6:24, 19:5, 19:21, 19:22, 20:7, 24:16, 43:10, 46:1, 46:3, 55:8
**YORK** [3] - 1:2, 1:2, 1:7
**York** [19] - 1:11, 1:19, 1:23, 4:4, 4:17, 7:6, 8:9, 13:10, 23:2, 32:3, 33:3, 33:13, 34:1, 34:3, 34:10, 37:15, 39:13, 40:15
**yourselves** [1] - 54:7

## Z

**zones** [1] - 36:11